John G. Balestriere
Jillian L. McNeil
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:   (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
jillian.mcneil@balestrierefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **HILLARY LAWSON, KRISTINA HALLMAN,** and **STEPHANIE CALDWELL,** | Case No.: 1:17-cv-06404 |
| Plaintiffs, | |
| – against – | **PLAINTIFFS' RICO CASE STATEMENT** |
| **HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR,  STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC,** and the **DOE COMPANY.** | |
| Defendants. | |

---

Plaintiffs Hillary Lawson, Kristina Hallman, and Stephanie Caldwell hereby file their initial Racketeer Influenced and Corrupt Organizations Act ("RICO") case statement. Note that all party abbreviations and definitions included herein are as defined in Plaintiffs' complaint.

## PLAINTIFFS' RICO CASE STATEMENT

1. **State whether the alleged unlawful conduct is in violation of Title 18, United States Code, Sections 1962(a), (b), (c), and/or (d). If you allege violations of more than one subsection of Section 1962, each must be treated or should be pleaded as a separate RICO claim.**

Defendants have acted in violation of 18 U.S.C. § 1962(c) to the detriment of Plaintiffs.

Defendants have acted in violation of 18 U.S.C. § 1962(d) by conspiring to violate U.S.C. § 1962(c) to the detriment of Plaintiffs.

2. **List each defendant, and separately state the misconduct and basis of liability of each defendant.**

Rubin, Powers, Shon, Schnur, John Doe, Blue Icarus, and the Doe Company all associated with one another to engage in a systematic and extensive series of illegal acts that form a pattern and practice of racketeering activity. The Defendants associated to assault, batter, falsely imprison, intentionally inflict emotional distress, traffic, and tamper with its victims. Additionally, the Defendants associated to launder money and obstruct criminal investigations. These predicate acts include human trafficking in violation of 18 U.S.C. § 1591(a)(1); wire fraud in violation of 18 U.S.C. § 1343; laundering of monetary instruments in violation of 18 U.S.C § 1956; transportation for illegal sexual activity in violation of 18 U.S.C. § 2422; obstruction of criminal investigations in

2

violation of 18 U.S.C. § 1512(d)(2); tampering with a witness through intimidation in violation of 18 U.S.C. § 1512(b)(1)(A); and potentially other improper acts.

All eight Defendants are "persons," as defined by 18 U.S.C. § 1961(3), participate in, manage, and operate a pattern of racketeering activity that injured at least Plaintiffs in their business and property.

I. **Rubin**

    a. **Defendant Rubin:** Howard "Howie" Rubin is an individual. Upon information and belief, he is the manager of the Doe Company. Rubin resides in New York, New York. Rubin is a person under 18 U.S.C. § 1961(3).

    b. **Misconduct of Rubin:** Rubin, individually and as manager of the Doe Company, an entity created and/or utilized in furtherance of the Enterprise's scheme, coordinated the illegal activities of the Enterprise. Rubin utilized the companies and the other members of the Enterprise to convince the Enterprise's victims to come to his New York Penthouse under the false belief that the victims would be paid for fetish photoshoots and companionship. Rubin conspired with the other members of the Enterprise to cover up the fact that the true purpose of the victims coming to the Penthouse was to engage in forceful sexual misconduct and criminal abuse of the victims. Rubin rented the Penthouse from Blue Icarus; used Powers and Shon to contact the victims and convince the victims that Rubin's offer was safe and that the victims would be

3

permitted to leave if they felt uncomfortable; directed Schnur to threaten and coerce the victims into remaining quiet following the incidents; and managed the Doe Company to pay the employees of the Enterprise and the victims that Rubin abused.

c. **Basis of Liability of Rubin:** Rubin participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least the Plaintiffs Hallman, Lawson, and Caldwell.

## II. **Powers**

a. **Defendant Powers:** Jennifer Powers is an individual who works with Rubin and, upon information and belief, is an employee of the Doe Company. Powers resides in New York, New York. Powers is a person under 18 U.S.C. § 1961(3).

b. **Misconduct of Powers:** Powers, as Rubin's conduit between himself and the victims, influenced, advised, strategized, aided, and oversaw the day-to-day operations of the Enterprise. Powers contacted victims on behalf of Rubin and the Enterprise, transferred them funds on behalf of Rubin and the Enterprise, and paid for and transferred plane tickets to victims on behalf of Rubin and the Enterprise. Powers also convinced victims that they would be safe and that Rubin would obey the victims' wishes if they chose to leave at any time. Powers also aided the Enterprise in covering up Rubin's acts by paying victims off following their encounters with

4

Rubin, paying for victims to see physicians after Rubin physically injured the victims, and paying for legal services for at least Hallman. Powers was once one of the victims that Rubin abused but eventually joined his Enterprise in order to exploit other victims.

c. **Basis of Liability of Powers:** Powers participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least Plaintiffs Hallman, Lawson, and Caldwell.

III. **Shon**

a. **Defendant Shon:** Stephanie Shon is an individual who works with or formerly worked with Rubin and, upon information and belief, is or was an employee of the Doe Company. Shon resides in New York, New York. Powers is a person under 18 U.S.C. § 1961(3).

b. **Misconduct of Shon:** Shon initially contacted Plaintiffs Hallman and Lawson through Instagram on behalf of Rubin in an effort to convince them to travel to New York to meet Rubin, including through messages on social media and through telephone calls. Shon initially made the offer to the victims to pay for them to fly to New York and gave the victims the initial terms of the agreement: $2,000 to meet Rubin and an additional $3,000 if Rubin "liked" them.

c. **Basis of Liability of Shon:** Shon participated and conspired to participate in the predicate acts that form the pattern of racketeering activity that injured at least the Plaintiffs Hallman, Lawson, and Caldwell.

IV. **Schnur**

    a. <u>**Defendant Schnur:**</u> Yifat Schnur is an individual who is an attorney for Rubin. Schnur resides in Edison, New Jersey. Schnur is a person under 18 U.S.C. § 1961(3).

    b. <u>**Misconduct of Schnur:**</u> Schnur drafted the non-disclosure agreement all of the victims signed before meeting Rubin. Schnur also drafts all of the legal documents to cover up the activities and crimes of the Enterprise as well as to prevent the victims from exposing the Enterprise's secrets. Additionally, Schnur has offered to defend Hallman in the criminal action that was brought against her because of her involvement with the Enterprise in an effort to ensure Hallman does not disclose anything about the Enterprise.

    c. <u>**Basis of Liability of Schnur:**</u> Schnur participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least the Plaintiffs Hallman, Lawson, and Caldwell.

V. <u>**John Doe**</u>

    a. <u>**Defendant John Doe**</u>: John Doe is an individual, or individuals, who hacked the accounts of the Plaintiffs and Plaintiffs' family members.

    b. <u>**Misconduct of John Doe**</u>: John Doe hacked the Facebook, Apple, and Google accounts of Plaintiffs and Plaintiffs' family members in an effort to gain information regarding Plaintiffs' impending lawsuit and financial

information on behalf of the Enterprise. John Doe hacked at least one of Plaintiffs' Apple accounts and accessed and altered the billing information.

c. **Basis of Liability of John Doe**: John Doe participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least the Plaintiffs Hallman, Lawson, and Caldwell.

## VI. <u>Blue Icarus</u>

a. **Defendant Blue Icarus:** Blue Icarus, LLC is a limited liability corporation registered in New York and located at 501 Madison Avenue, 14th Floor, New York, New York 10022. Blue Icarus owns the Penthouse located at 146 West 57th Street, 76th Floor, New York, New York 10019.

b. **Misconduct of Blue Icarus:** Blue Icarus is the company which owns the Penthouse where Rubin assaults the victims. Upon information and belief, Blue Icarus was formed solely to own the Penthouse as Blue Icarus was incorporated on November 30, 2010, and just over two months later, on February 7, 2011, the deed to the Penthouse was transferred to Blue Icarus.

c. **Basis of Liability of Blue Icarus:** Blue Icarus participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least the Plaintiffs Hallman, Lawson, and Caldwell.

VIII.   **The Doe Company**

     a.  **Defendant the Doe Company**: Upon information and belief, the Doe Company is located in New York, New York. The Doe Company is the vehicle through which the Enterprise operates, and through which Rubin pays his employees—like Powers—as well as the victims, including Plaintiffs Hallman, Lawson, and Caldwell.

     b.  **Misconduct of The Doe Company**: The Doe Company, upon information and belief, is the entity that pays the members of the Enterprise, as well as the victims the Enterprise lures to the Penthouse under false pretenses. The Doe Company transfers money to Powers who uses the funds to pay for the victims to fly to New York and also transfers money to the victims of the Enterprise as compensation for their time and to pay for any damage done by Rubin.

     c.  **Basis of Liability of the Doe Company:** The Doe Company participated and conspired to participate in the predicate acts that form the pattern of racketeering activity which injured at least the Plaintiffs Hallman, Lawson, and Caldwell.

   **3. List the alleged wrongdoers, other than the defendants listed above, and separately state the misconduct of each wrongdoer.**

I.  **Robert Aloi**: Robert Aloi is a third-party who is attempting to utilize the information he has regarding the facts at issue in the related Complaint to extort a settlement of his own against Rubin. Aloi was Plaintiffs' acquaintance and saw

the aftermath of injuries sustained by the Plaintiffs, however Plaintiffs have no continued contact with Aloi at the time of this filing.

II. **John Doe II:** Doe II is the end beneficial owner of Blue Icarus through a series of trusts.

III. **Irvin Morgan a/k/ Irv Gotti**: Morgan is an associate of Aloi and has contacted the Plaintiffs in an effort to convince them to contact Aloi's attorneys, Brennan McCarthy & Associates.

**4. List the victims, and separately state when and how each victim was injured.**

I. **Plaintiff Hallman**: On or around August 23, 2016, Hallman first met Rubin. On this occasion, she was beaten unconscious, sustained bruises on her breasts and ribcage, and forcefully penetrated. On September 24, 2016, Hallman met Rubin for the second time. Hallman was tied up with rope around her mouth, breasts, and hands. She was beaten and sustained severe bruising on her face, breasts, back, and buttock. Hallman's clothing was cut with scissors by Rubin.

II. **Plaintiff Lawson**: On or around August 23, 2016, Lawson first met Rubin. She was tied up, forcefully beaten and slapped, and sustained bruises on her breasts and ribcage. In late December, Lawson met Rubin for the second time. On this occasion, Lawson was bound at the hands and feet, gagged, forcibly penetrated by multiple objects and then Rubin himself, and shocked with a cattle prod. Lawson sustained severe bruising to her face and breasts, causing her left breast to capsulate and scar, tears and trauma to her vagina, and depression and anxiety.

IV.  **Plaintiff Caldwell**: Caldwell first met Rubin in early September, 2016. During this meeting, Rubin slapped Caldwell across her face. On September 24, 2016, Caldwell met with Rubin for the second time. Caldwell was tied with rope around her mouth, breasts and hands. She was beaten unconscious, forcefully penetrated by an object and then Rubin, and sustained severe bruising on her face, breasts, back, and buttock. Caldwell's clothing was cut with scissors by Rubin. Caldwell's breasts were damaged so badly that her right implant flipped and the backside faced outwards, the closure for her implant was fully exposed and visible, and her right areola was damaged.

V.  **Zoe Cacciola**: In October 2016, Zoe Cacciola first met Rubin. Cacciola became a victim of the Enterprise after Hallman was at the Penthouse and became ill and Cacciola came to assist in caring for Hallman. Cacciola sustained bruises and physical injuries and was visibly distraught after her interactions with Rubin. These interactions and the ensuing altercation between her and Hallman resulted in the police coming to the Penthouse and the criminal action against Hallman. The criminal action against Hallman is for assault and battery against Cacciola because the police saw the marks left on Cacciola by Rubin and presumed Hallman was the one that left those marks.

VI.  **Potential Other Victims**: The Enterprise potentially has dozens of additional victims, each likely too afraid to come forward.

5. **Describe in detail the pattern of racketeering activity or collection of an unlawful debt for each RICO claim. A description of the pattern of racketeering activity shall:**

   a. **List the predicate acts and the specific statutes violated by each predicate act.**

|   | Date | Statute Violated | Description |
|---|---|---|---|
| 1. | 1996-09-01 (at the latest) continuing on to today | 18 U.S.C. § 1591(a)(1) (Human trafficking) | Members of the Enterprise recruit and transport victims to New York from other states and countries, knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, and/or coercion would be used by Rubin to engage in a commercial sex act. Upon information and belief, this predicate act is repeated dozens of times beyond that which is specified herein from at least 1996 through today. |
| 2. | 1996-09-01 (at the latest) continuing on to today | 18 U.S.C. § 1343 (Wire fraud) | Members of the Enterprise pay the victims referenced above. Upon information and belief, this predicate act is repeated dozens of times beyond that which is specified herein from at least 1996 through today. |
| 3. | TBD in Discovery | 18 U.S.C. § 1591(a)(2) (Human trafficking) | Rubin or the Doe Company pays Shon to violate 18 U.S.C. § 1591(a)(1). Upon information and belief, this predicate act is repeated numerous times beyond that which is specified herein. |
| 4. | TBD in Discovery | 18 U.S.C. § 1591(a)(2) (Human trafficking) | Rubin or the Doe Company pays Powers to violate 18 U.S.C. § 1591(a)(1). Upon information and belief, this predicate act is repeated numerous times beyond that which is specified herein. |
| 5. | 2010-11-30 | 18 U.S.C. § 1596(a)(1) (Laundering of monetary instruments) | Blue Icarus is formed with the assistance of attorney, Richard Ortoli. |
| 6. | TBD in Discovery | 18 U.S.C. § 1596(a)(1) (Laundering of monetary instruments) | Rubin forms the Doe Company with the intent to promote the carrying on of Rubin's unlawful activity and in order to conceal the location and ownership of Rubin's unlawful activity. |
| 7. | 2011-02-07 | 18 U.S.C. § 1596(a)(1) (Laundering of monetary instruments) | Blue Icarus purchases the Penthouse located at 146 West 57th Street, Nos. 76A & 76B, New York, New York, 10019 with the intent to promote the carrying on of Rubin's unlawful activity and in order to conceal the location and ownership of Rubin's unlawful activity |
| 8. | August of 2016 | 18 U.S.C. § 1343 (Wire fraud) | Shon, on behalf of Rubin and Powers, makes misrepresentations to Hallman through Instagram direct message. |
| 9. | August of 2016 | 18 U.S.C. § 1343 (Wire fraud) | Shon, on behalf of Rubin and Powers, makes misrepresentations to Lawson through Instagram direct message. |

| 10. | August of 2016 | 18 U.S.C. § 1343 (Wire fraud) | Powers makes misrepresentations to Hallman on a phone call. |
|---|---|---|---|
| 11. | August of 2016 | 18 U.S.C. § 1343 (Wire fraud) | Powers makes misrepresentations to Lawson on a phone call. |
| 12. | August of 2016 | 18 U.S.C. § 1343 (Wire fraud) | Powers makes misrepresentations to Hallman via WhatsApp. |
| 13. | August of 2016 | 18 U.S.C. § 1343 (Wire fraud) | Powers makes misrepresentations to Lawson via WhatsApp. |
| 14. | August of 2016 | 18 U.S.C. § 1591(a)(1) (Human trafficking) | The Enterprise recruits Hallman. |
| 15. | August of 2016 | 18 U.S.C. § 2422 (Transportation for illegal sexual activity) | The Enterprise knowingly persuades, induces, entices, or coerces Hallman from Florida to New York with the intent that Hallman engage in prostitution. |
| 16. | August of 2016 | 18 U.S.C. § 1591(a)(1) (Human trafficking) | The Enterprise recruits Lawson. |
| 17. | August of 2016 | 18 U.S.C. § 2422 (Transportation for illegal sexual activity) | The Enterprise knowingly persuades, induces, entices, or coerces Lawson from Florida to New York with the intent that Lawson engage in prostitution. |
| 18. | August of 2016 | 18 U.S.C. § 1591(a)(1) (Human trafficking) | The Enterprise recruits Caldwell. |
| 19. | August and September of 2016 | 18 U.S.C. § 2422 (Transportation for illegal sexual activity) | The Enterprise knowingly persuades, induces, entices, or coerces Caldwell from Florida to New York with the intent that Caldwell engage in prostitution. |
| 20. | August or September of 2016 | 18 U.S.C. § 1512(d)(2) (Obstruction of criminal investigations) | Members of the enterprise intentionally harass Caldwell and thereby hinders, delays, prevents, and dissuades Caldwell from reporting to a law enforcement officer the possible commission of a Federal offense. |
| 21. | October of 2016 | 18 U.S.C. § 1510(a) (Obstruction of criminal investigations) | Powers intimidates Hallman into claiming responsibility for injury caused by Rubin. |
| 22. | October of 2016 | 18 U.S.C. § 1512(b)(1)(A) (Tampering with a witness through intimidation) | Powers to Hallman regarding Hallman's criminal case associated with Hallman claiming responsibility for injury caused by Rubin. |
| 23. | August or September of 2016 | 18 U.S.C. § 1512(b)(1)(A) (Tampering with a witness through intimidation) | Rubin to Hallman regarding Hallman's criminal case associated with Hallman claiming responsibility for injury caused by Rubin. |

     **b. State the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding each predicate act.**

*See* the Predicate Acts table above.

     **c. If the RICO claim is based upon the predicate offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under Title 11, United States Code, the "circumstances constituting fraud or mistake shall be stated with particularity," Federal Rule of Civil Procedure 9(b).  Identify the time, place, and contents of the misrepresentation or omissions, and the identity of persons to whom and by whom the misrepresentations or omissions were made.**

**I.**   **<u>Who Made the Statements or Omitted to Speak?</u>** Rubin, Powers, and Shon made fraudulent statements and omitted to speak.

**II.**   **<u>What are the False Statements or Omissions?</u>**

     **a. <u>Reason for Contacting Plaintiffs</u>**: Rubin, Powers, and Shon conspired to contact and contacted the Plaintiffs to encourage Plaintiffs to travel to New York to meet Rubin under the false assurance that the victims would be safe, that they would be partaking in a consensual fetish photoshoot and be providing companionship to Rubin, and that the victims could leave whenever they desired.

     **b. <u>Actual Reason for Contacting Plaintiffs</u>**: Rubin, Powers, and Shon omitted the actual reason they were contacting Plaintiffs, such that Rubin could force the victims into the sexual misconduct that Rubin wanted.

    **c.** **Ability to Leave**: Rubin, Powers, and Shon also omitted that the Plaintiffs would be bound and gagged and therefore unable to convey that they wished to leave at any given time. Moreover, even when the Plaintiffs managed to articulate this to Rubin, Rubin ignored their wishes.

**III.** **When and Where did the Speakers Make the False Statements or Omit to Speak?** Rubin, Powers, and Shon omitted to speak and made fraudulent statements while inducing Plaintiffs to travel to New York via social media messages, WhatsApp messages, and phone calls. Rubin, Powers, and Shon were located in at least New York, New York, while Plaintiffs were located in Fort Lauderdale and Daytona Beach, Florida.

    Rubin, Powers, and Shon omitted to speak or made fraudulent statements to the Plaintiffs throughout the time they were attempting to convince Plaintiffs to travel to New York to meet Rubin, from at least August 23, 2016, through August 18, 2017, and likely has continued with other victims. Moreover, Rubin lied to the Plaintiffs immediately prior to and while he was attacking them, telling them they could go whenever they chose to leave but tying them down and gagging them such that they could not leave or articulate their will to leave.

**IV.** **To Whom did the Speakers Make the False Statements or Omit to Speak?** Rubin, Powers, and Shon omitted to speak and made fraudulent statements to at least Hallman, Lawson, and Caldwell, regarding at least the true reason the Enterprise was contacting the Plaintiffs, the reason for the Plaintiffs' trip to New York, and Plaintiffs' ability to leave the premises whenever they desired.

V. **Why were Statements or Omissions False or Misleading?** Rubin, Powers, and Shon were aware that Rubin wanted the victims in New York so that he could sexually abuse the victims, physically beat the victims, falsely imprison the victims, and more, and not that Rubin simply wanted a fetish photoshoot. Rubin, Powers, and Shon omitted telling the victims the true reason for their trip to New York and instead fraudulently told the victims they were only going for a fetish photoshoot.

VI. **Why Was It Reasonable for Plaintiff to Believe the False Statements or to Not Question the Omissions?** Rubin, Powers, and Shon took advantage of the Plaintiffs' past experiences in their professions where they had previously participated in fetish photoshoots. Moreover, upon entering the Penthouse, Plaintiffs saw pictures of Rubin on the wall with other women in their profession that they either knew on a personal level or were aware of in the profession, easing potential worries Plaintiffs had upon entering the Penthouse. Moreover, Plaintiffs did not question the omission that they would potentially be tortured, beaten, sexually assaulted, and drugged as this is not appropriate nor expected behavior in normal circumstances.

VII. **The Common Course of Conduct of Fraud and Reliance Upon It**: Rubin, Powers, and Shon repeatedly misled and convinced the Plaintiffs to travel to New York, and have done the same to other victims, and will continue doing the same until they are held accountable for their actions. Rubin, Powers, and Shon worked together to accomplish their fraud of convincing victims to travel to New

15

York to unknowingly satisfy Rubin's desire to commit sexual misconduct. Plaintiffs traveled to New York under the impression that they would be taking part in a legal, agreeable fetish photoshoot based on the representations of Rubin, Powers, and Shon. Plaintiffs justifiably relied on Rubin, Powers, and Shon's statements that they would be conducting a fetish photoshoot, that they would be permitted to leave at any time if they felt uncomfortable, and that they would not be harmed in any way.

**a. State whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity.**

Upon information and belief, there have been no criminal convictions for any of the predicate acts/incidents of criminal activity articulated in this RICO statement or in the Complaint.

**b. Describe in detail the perceived relationship that the predicate acts bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or "part of a common plan."**

The predicate acts of human trafficking, wire fraud, laundering of monetary instruments, transportation for illegal sexual activity, obstruction of criminal investigations, tampering with a witness through intimidation, and any other improper acts, date back to at least September 1, 1996, and have continued to at least August 18, 2017. These predicate acts are related in the common purpose and scheme to fraudulently induce victims to travel to New York, including at least Plaintiffs, to be drugged, sexually assaulted, physically beaten, and tortured. Moreover, the Defendants have a common plan to cover up the activities of the Enterprise through intimidation,

16

payments, and other means.

    **c.** **Explain how the predicate acts amount to or pose a threat of continued criminal activity.**

The specific Enterprise detailed here represents open-ended continuity, where the criminal conduct will be repeated and will extend indefinitely into the future, which will continue to generate a pattern of racketeering activity for the foreseeable future. The Defendants have never been held accountable for their actions and until they are, they likely will continue such violations, as they have for the better part of the last two decades.

**6. State whether the existence of the "enterprise" is within the meaning of 18 U.S.C. § 1961(4).**

Rubin, Powers, Shon, Schnur, Doe, Blue Icarus, and the Doe Company constitute groups of "person(s)" under 18 U.S.C. § 1961(3), who associated in fact to form an Enterprise to induce victims to travel to New York under the false pretense of fetish photoshoots and/or meeting Rubin. The Defendants utilized their Enterprise by association in fact to then conspire to commit a pattern of racketeering activity, including the predicate acts of at least human trafficking, wire fraud, laundering of monetary instruments, transportation for illegal sexual activity, obstruction of criminal investigations, and tampering with a witness through intimidation which proximately caused injuries to at least the Plaintiffs Hallman, Lawson, and Caldwell.

**7. Describe in detail the enterprise for each RICO claim. A description of the enterprise shall:**

The Enterprise, an association in fact Enterprise by Rubin, Powers, Shon, Schnur, Blue Icarus, and the Doe Company, is the same Enterprise for each violation of 18 U.S.C. § 1962.

**a. State the names of the individuals, partnerships, corporations, associations, or other entities constituting the enterprise.**

Defendants Rubin, Powers, Shon, Schnur, Doe, Blue Icarus, and the Doe Company had an ongoing business relationship that constituted an "association in fact" Enterprise within the meaning of 18 U.S.C. § 1961(4) that was engaged in, or the activities of which affected, interstate or foreign commerce. The members of the Enterprise have defined roles, and the Enterprise as a whole had structures and hierarchies.

**b. Describe the structure, purpose, roles, function, and course of conduct of the enterprise.**

I. **Structure and Roles**: Rubin is the manager and owner of the Doe Company. Rubin hired Powers and Shon to convince the victims to travel to New York, pay the victims, and ensure the victims did not say anything about the events that took place in the Penthouse. The Penthouse is owned by Blue Icarus. Schnur drafted the non-disclosure agreement signed by all of the victims and attempted to represent at least one victim after her relationship with the Enterprise resulted in her being criminally charged. Schnur has also attempted to convince victims to sign agreements after they have been assaulted by Rubin to keep them quiet.

Blue Icarus and the Doe Company are, upon information and belief, funded by Rubin. The Doe Company, upon information and belief, pays the other members of the Enterprise and is the entity that payment to the victims, including the Plaintiffs, travels through. The Doe Company pays Powers, who then uses that money to purchase plane tickets for victims to New York and to pay the victims the agreed upon amount. Powers also pays victims for any medical services required following the victims' encounters with Rubin or any potential legal representation any of the victims may need.

II. **Purpose and Function**: The members of the Enterprise created the Enterprise and come together to convince victims to travel to New York to meet with Rubin in the Penthouse.

III. **Course of Conduct**: The Enterprise engaged in and conspired to engage in a fraudulent course of conduct when convincing at least Plaintiffs to travel to New York to meet Rubin. By fraudulently inducing the victims to travel to New York and covering up the same, the Enterprise engaged in predicate acts enumerated by RICO. The violation of the predicate acts created a pattern of racketeering activity whereby the Enterprise convinced at least Hallman, Lawson, and Caldwell to travel to New York under false pretenses and injured Hallman, Lawson, and Caldwell.

**c. State whether any defendants are employees, officers, or directors of the enterprise.**

The Enterprise is an associated in fact enterprise, not a legal entity, and, therefore, none of the Defendants are employees, officers, or directors of the Enterprise.

**d. State whether any defendants are associated with the enterprise, and if so, how.**

All Defendants are associated with the Enterprise's common purpose and also with its conspiracy to commit at least human trafficking, wire fraud, laundering of monetary instruments, transportation for illegal sexual activity, obstruction of criminal investigations, tampering with a witness through intimidation, and a pattern of racketeering activity that injured at least Plaintiffs.

- Defendant Rubin is the manager of the Enterprise and provides all of the money to the Enterprise through the Doe Company.

- Defendant Powers contacted and paid the victims at Rubin's direction.

- Defendant Shon contacted and paid the victims at Rubin's direction.

- Defendant Schnur drafted legal documents to keep the victims quiet and issued threats when necessary to avoid exposure of the Enterprise.

- Defendant Doe hacked the Plaintiffs accounts after the Plaintiffs began speaking with attorneys about filing suit against Rubin in order to gain insight for the Enterprise on the Plaintiffs' prospective claims.

- Defendant Blue Icarus, LLC owns the Penthouse where Rubin assaults the victims.

- Defendant the Doe Company pays the other members of the Enterprise and the victims.

   **e. Explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise.**

I. <u>**Rubin**</u>: Rubin participated in the direction and conduct of the Enterprise by funneling money through the Doe Company, Powers, and Shon to pay victims to travel to the Penthouse, and creating or having a third-party create Blue Icarus to own the Penthouse. Rubin also committed assault, battery, and false imprisonment in furtherance of the Enterprise's goals.

II. <u>**Powers**</u>: Powers participated in the direction and conduct of the Enterprise by initially contacting the victims of the Enterprise, offering and paying for their travel, consoling the victims after the attack, and ultimately paying the victims to ensure they do not disclose the activities of the Enterprise.

III. <u>**Shon**</u>: Shon participated in the direction and conduct of the Enterprise by initially contacting the victims of the Enterprise, offering and paying for their travel, consoling the victims after the attack, and ultimately paying the victims to ensure they do not disclose the activities of the Enterprise.

IV. <u>**Schnur**</u>: Schnur participated in the direction and conduct of the Enterprise by drafting legal documents to protect the Enterprise and further threatening legal action against the Enterprise's victims if they were to come forward with the activities of the Enterprise.

V.   **Doe**: Doe participated in the direction and conduct of the Enterprise by hacking into Plaintiffs' and Plaintiffs' families accounts in order to attempt to access information regarding this lawsuit.

VI.   **Blue Icarus**: Blue Icarus participated in the direction and conduct of the Enterprise by owning the Penthouse where all of the victims were brought.

VII.   **The Doe Company**: The Doe Company participated in the direction and conduct of the Enterprise by providing the company through which Rubin supplied the funds to the Enterprise's employees to pay for the victims' travel and compensation following Rubin's attacks.

   f.   **State whether you allege**

   (i)   **that the defendants are individuals or entities separate from the enterprise, or**

Not Applicable.

   (ii)   **that the defendants are the enterprise itself, or**

Not Applicable.

   (iii)   **that the defendants are members of the enterprise; and**

All eight Defendants associated in fact to create the Enterprise with the common purpose of bringing victims to New York, New York to entertain Rubin. The Enterprise engaged in a pattern of racketeering activity to injure at least Plaintiffs.

      **g.  if you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the racketeering activity.**

Plaintiff does not allege that any Defendant is the Enterprise itself. All Defendants together are perpetrators of the racketeering activity.

**8.  State whether you allege, and describe in detail, how the pattern of racketeering and the enterprise are separate or have merged into one entity.**

The pattern of racketeering activity committed by the Enterprise and the Enterprise's legitimate business functions are separate. The eight Defendants associated in fact to create the Enterprise to provide victims for entertainment purposes to Rubin. The pattern of racketeering the Enterprise engaged in separately refers to the Enterprise's fraudulent and tortious acts against at least Plaintiffs by assaulting, battering, falsely imprisoning, and covering up the same. This pattern, predicated on at least human trafficking, wire fraud, laundering of monetary instruments, transportation for illegal sexual activity, obstruction of criminal investigations, and tampering with a witness through intimidation, if not other criminal activities, constitutes the pattern of racketeering that the Enterprise separately engaged in.

**9.  Describe the relationship between the activities and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The usual and daily activities of the Enterprise are providing victims for entertainment to Rubin and his associates. The racketeering activity is different from these daily and usual activities. Plaintiffs had an agreement with Powers and Rubin that Rubin would pay for Plaintiffs to come to New York City, compensate Plaintiffs $2,000

for their time, and compensate Plaintiffs an additional $3,000 if Plaintiffs stayed after meeting Rubin. Furthermore, Plaintiffs agreed with Powers and Rubin that Plaintiffs could leave at any time if they felt uncomfortable. By conspiring to drug, assault, batter, falsely imprison the victims, and cover-up the same, the Enterprise engaged in a pattern of racketeering activity. The racketeering activity to assault, batter, and falsely imprison the victims was different from the usual and daily activities of the Enterprise to provide victims to Rubin and his associates for entertainment purposes.

**10. Describe what benefits, if any, the enterprise and each defendant received from the pattern of racketeering activity.**

The pattern of racketeering activity damaged at least the Plaintiffs by at least $ 9 million before trebling.

I. **Rubin**: Rubin received victims to his apartment which he then assaulted and raped to fulfill his sexual desires.

II. **Powers**: Powers was paid by Rubin to acquire the victims, arrange transportation for the victims to the Penthouse, and keep the victims calm and unsuspecting of what would ultimately happen to them.

III. **Shon**: Shon was paid by Rubin to acquire the victims, arrange transportation for the victims to the Penthouse, and keep the victims calm and unsuspecting of what would ultimately happen to them.

IV. **Schnur**: Schnur was paid by Rubin to draft non-disclosure agreements for the victims to sign while being privy to the illegal activity taking place in the apartment. Schnur further aided the conspiracy, and was paid for the same, by

attempting to cover up any wrong doing after the victims were harmed by drafting documents for the victims to sign to prevent them from filing a lawsuit.

V. **John Doe:** John Doe received compensation for assisting the Enterprise in hacking the computers of the Plaintiffs' and Plaintiffs' families.

VI. **Blue Icarus**: Blue Icarus received rent payments from Rubin as the management company of the Penthouse and willingly accepted financial benefit.

VII. **The Doe Company**: The Doe Company acted as a financial intermediary for Rubin.

**11. Describe the effect of the enterprise's activities on interstate or foreign commerce.**

The Enterprise's human trafficking activities transported victims from at least Florida to New York, and likely involved other states, if not other countries. Rubin, Powers, Shon, Blue Icarus, and the Doe Company are all New York residents which utilized PayPal, a financial institution engaged in interstate commerce, to pay Lawson, Hallman, and Caldwell.

The Enterprise used interstate electronic wires to send writings, signs, signals, pictures, or sounds, including WhatsApp Messages and e-mails, in at least the states of New York (the location of Rubin, Powers, Shon, Blue Icarus, and the Doe Company), Florida (the location of the Plaintiffs), and New Jersey (the location of Schnur). The Enterprise also used electronic wires to hack the accounts of Plaintiffs in at least Florida, and likely originating in New York (the likely location of Doe).

The Enterprise also utilized air travel both to and from the states of New York and Florida by paying and arranging for the Plaintiffs to fly to New York and back to Florida.

12. **If the complaint alleges a violation of Title 18, United States Code, Section 1962(a), provide the following information: (a) State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and, (b) Describe the use or investment of such income.**

Not Applicable.

13. **If the complaint alleges a violation of Title 18, United States Code, Section 1962(b) provide the following information: (a) Describe in detail the acquisition or maintenance of any interest in or control of the enterprise; and, (b) State whether the same entity is both the liable "person" and the "enterprise" under section 1962(b).**

Not Applicable.

14. **If the complaint alleges a violation of Title 18, United States Code, Section 1962(c) or provide the following information:**

   a. **State who is employed by or associated with the enterprise; and**,

Rubin, Powers, Shon, Schnur, Doe, Blue Icarus, and the Doe Company all associated to form the Enterprise.

   b. **State whether the same entity is both the liable "person" and the "enterprise" under section 1962(c).**

Each of the eight Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3). At all times relevant, each Defendant was a person associated with the Enterprise and conducted or participated, directly or indirectly, in the operation and management of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

26

**15.** **If the complaint alleges a violation of Title 18, United States Code, Section 1962(d), describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement.**

<u>Conspirators:</u> Rubin, Powers, Shon, Schnur, and Doe conspired to use their companies, Blue Icarus and the Doe Company, to create a human trafficking ring and assault victims of the same.

<u>Period of Conspiracy and Agreement to Conspire:</u> The conspiracy to assault victims began on at least November 2010, when Blue Icarus was incorporated and later, on February 7, 2011, when Blue Icarus purchased the Penthouse, but possibly as far back as 1996, as Rubin told Plaintiff Hallman that the conspiracy began over two decades ago. The conspiracy continues to this day, likely having involved other victims, and through the Enterprise paying at least one of the Plaintiffs as recently as the summer of 2017.

<u>Object of the Conspiracy:</u> The conspiracy attempted to assault, batter, falsely imprison, inflict emotional distress, and traffic victims across state lines. Many individuals and companies hire models to come to private events, parties, spend time with them, and take photographs. The Enterprise tricked at least the Plaintiffs into believing they would be performing typical modeling for the Enterprise when in fact the Enterprise's goal was to assault the Plaintiffs and then pay them off such that they would not tell anyone about what happened.

<u>Overt Acts in Furtherance of the Conspiracy:</u> Every predicate act committed by the Enterprise was in furtherance of the conspiracy. Specifically, Blue Icarus furthered the conspiracy by purchasing the Penthouse; Powers and Shon furthered the conspiracy by

convincing the Plaintiffs to come to New York and lying to them that they would be safe; Schnur furthered the conspiracy by drafting legal documents in an effort to prevent the conspiracy from being exposed; Rubin furthered the conspiracy when he instructed the other members of the conspiracy to act and by assaulting the victims; and the Doe Company furthered the conspiracy by transferring money to the other Defendants to attempt to pay the Plaintiffs off.

**Enterprise's Knowledge that the Predicate Acts Constituted a Pattern of Racketeering Activity:**   Rubin, Powers, Shon, and Schnur made all victims of the Enterprise sign NDAs in an effort to keep the activities of the Enterprise private. The Defendants were aware that if the Plaintiffs, or any other victims, were to tell people about what happened to them, the Defendants would be exposed to both civil and criminal liability.

Powers instructed Hallman to lie to the police when they came to the Penthouse one day by saying it was not Rubin's apartment but rather either it was Powers's or a third-party's apartment not named in this lawsuit, and not to say anything about what happens there. As a result, Hallman has been in criminal court.

Rubin and Schnur attempted to have Schnur represent Hallman in her criminal matter out of fear that Hallman would expose the Enterprise, either to her attorney, to the court, or both.

Powers and Rubin told the victims not to tell their physicians how they were actually inured out of fear that the doctors would expose the Enterprise.

**16. Describe the injury to business or property.**

At least the Plaintiffs, as a direct and proximate cause of the Enterprise's predicate acts constituting at least wire fraud and human trafficking, have been harmed in their business and property. The Plaintiffs, as models, rely on their appearance in conducting their business, something they cannot do when they are injured, bruised, or maimed. Moreover, the emotional injuries caused by the Enterprise have resulted in psychological care and medication, harming the Plaintiffs' abilities to work.

I.     **The Business**: The Plaintiffs are all models who take on private contracts with modeling agencies, such as Playboy, and work at clubs in similar roles. The Plaintiffs all reside in Florida and do some of their work in Florida as well as other work wherever they are hired to travel.

II.    **The Injuries**: The predicate acts injured Plaintiffs in their business and ability to conduct business by at least $9 million prior to trebling. These predicate acts damaged Plaintiffs in their business as they have not been able to work since the injuries occurred and will need surgery prior to returning to work.

**17. Describe the nature and extent of the relationship between the injury and each separate RICO violation.**

But for the existence of the predicate acts by Defendants, at least Plaintiffs would not have suffered any injuries. There is a direct causal relationship between the injuries and the pattern of racketeering activity. If not for Defendants' conspiracy, in violation of 18 U.S.C. § 1962(d), Defendants would not have engaged in the pattern of racketeering activity that damaged Plaintiffs. Once the conspiracy was set, the Defendants, in

violation of 18 U.S.C. § 1962(c), engaged in the predicate acts of at least human trafficking, wire fraud, laundering of monetary instruments, transportation for illegal sexual activity, obstruction of criminal investigations, and tampering with a witness through intimidation which allowed the Enterprise to continue assaulting, battering, falsely imprisoning, and inflicting emotional distress on at least Plaintiffs and thus damage Plaintiffs in their business.

**18. For each claim under a subsection of Title 18, United States Code, Section 1962, list the damages sustained by reason of each violation, indicating the amount for which each defendant is liable.**

The Defendants violated 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). Their pattern of racketeering activity damaged Plaintiffs in an amount to be determined at trial. All eight Defendants, as a whole, are liable to Plaintiffs for an amount to be determined at trial trebled, as well as the cost of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c). Defendants conspired and acted together to assault, batter, falsely imprison, and inflict emotional distress on Plaintiffs and, therefore, the liability for injuries to the Plaintiffs is assignable to the Enterprise as a whole.

**19. Detail when Plaintiff was noticed of the damages sustained by reason of Defendants' violation of Title 18, United States Code, Section 1962.**

During the Plaintiffs original trip to New York, none of the Plaintiffs were aware of the Enterprise's scheme to lure them there to be assaulted, battered, falsely imprisoned, and to inflict emotional distress. The Enterprise's motives were not discovered until after the Plaintiffs left New York and the Enterprise began its attempts to cover up what had happened in a methodical and calculated way, including

30

threatening the Plaintiffs if they were to go to the police or an attorney. At the earliest, Plaintiffs discovered the damages sustained by reason of the Defendants' violations of Title 18, United States Code, Section 1962 on or about August 24, 2016, the day after Plaintiffs Hallman and Lawson traveled to New York City the first time.

**20. Provide any additional information you feel would be helpful to the Court in processing your RICO claim.**

Plaintiffs believe that further investigation and future discovery will reveal essential information regarding potential additional victims as well as the possibility of additional Defendants, the extent of complicity and tortious activities engaged in by the Enterprise, as well as more information regarding the role of certain Defendants. Plaintiffs intend to seek leave to amend this RICO Statement as such information becomes available.

Dated: New York, New York
        November 2, 2017

By: */s/ John G. Balestriere*                      
    John G. Balestriere
    Jillian L. McNeil
    **BALESTRIERE FARIELLO**
    225 Broadway, 29th Floor
    New York, New York 10007
    Telephone:     (212) 374-5401
    Facsimile:      (212) 208-2613
    john.balestriere@balestrierefariello.com
    jillian.mcneil@balestrierefariello.com
    *Attorneys for Plaintiff*