John G. Balestriere
Jillian L. McNeil
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:    (212) 374-5401
Facsimile:    (212) 208-2613
john.balestriere@balestrierefariello.com
jillian.mcneil@balestrierefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HILLARY LAWSON, KRISTINA HALLMAN,** and **STEPHANIE CALDWELL,**<br><br>                    Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC,** and the **DOE COMPANY.**<br><br>                    Defendants. | Case No.: 1:17-cv-06404<br><br>**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

    I.   PLAINTIFFS ARE ENTITLED TO A PROTECTIVE ORDER AS VICTIMS OF SEXUAL ASSAULT UNDER N.Y. CIVIL RIGHTS LAW § 50-b. .......................... 5

    II.  PLAINTIFFS SHOULD BE PERMITTED TO BRING CLAIMS ANONYMOUSLY AS COURTS IN THIS CIRCUIT REGULARLY PERMIT PLAINTIFFS TO BRING CLAIMS UNDER PSEUDONYMS OR FICTITIOUS NAMES WHERE THE PLAINTIFFS' CLAIMS ARE HIGHLY SENSITIVE AND OF A PERSONAL NATURE. .............................................................. 6

    III. PLAINTIFFS' NEED FOR ANONYMITY GREATLY OUTWEIGHS ANY PUBLIC INTEREST IN THIS MATTER. ................................................................... 7

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Doe No. 2 v. Kolko*,
    242 F.R.D. 193 (E.D.N.Y. 2006) .................................................................................. 5

*Doe v. Blue Cross & Blue Shield United of Wisc.*,
    112 F.3d 869 (7th Cir. 1997) ...................................................................................... 5

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2nd Cir. 2016) .................................................................................... 6, 7

*Doe v. Menefee*,
    391 F.3d 147 (2nd Cir. 2004) ..................................................................................... 7

*Doe v. Montefiore Med. Ctr.*,
    No. 12 CIV. 686 CM, 2013 WL 624688 (S.D.N.Y. Feb. 19, 2013), *aff'd*, 598 F. App'x 42
    (2nd Cir. 2015) ........................................................................................................... 6

*Doe v. New York Univ.*,
    786 N.Y.S.2d 892 (N.Y. Cnty Sup. Ct. 2004) ........................................................ 6, 7

*Doe v. Pataki*,
    120 F.3d 1263 (2nd Cir. 1997), *as amended on denial of rehg* (Sept. 25, 1997) ....... 6

*Grottano v. The City of New York*,
    No. 15-CIV-9242RMBKNF, 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016) .......... 8, 9, 10, 11

*Sealed Plaintiff v. Sealed Defendant*,
    537 F.3d 185 (2nd Cir. 2008) ..................................................................................... 8

*Smith v. Edwards*,
    175 F.3d 99 (2nd Cir. 1999) ....................................................................................... 6

**Statutes**

N.Y. Civil Rights Law § 50-b ....................................................................... 1, 5, 6, 12

**PRELIMINARY STATEMENT**

Plaintiffs Hillary Lawson ("Lawson"), Kristina Hallman ("Hallman"), and Stephanie Caldwell ("Caldwell")[1] bring this motion seeking a protective order as victims of sexual assault against Jennifer Powers ("Powers"), Howard Rubin ("Rubin"), Yifat Schnur ("Schnur"), Stephanie Shon ("Shon"), John Doe ("Doe"), Blue Icarus, LLC ("Blue Icarus"), and the Doe Company (the "Doe Company"), to not reveal Plaintiffs' true identities and allow Plaintiffs to bring their Complaint under pseudonyms. The names utilized by Plaintiffs in this action are pseudonyms[2] to protect the identity of Plaintiffs during the pendency of this suit. Plaintiffs, as victims of sexual assault, should be anonymous under N.Y. Civil Rights Law § 50-b, and relevant authority in the Second Circuit. Defendants are already aware of the legal names of Plaintiffs in this suit as the Parties have been in pre-filing discussions since September 19, 2017. The Plaintiffs have provided Defendants with draft complaints containing their legal names, and one Defendant, Rubin, has already signed a tolling agreement where Plaintiffs were named by their legal names.

One of the Plaintiffs has a small child, another Plaintiff is raising children, and all Plaintiffs have careers putting them in the public spotlight and will lose income if their names are revealed. Thus, Plaintiffs should be permitted to file this action using

---

[1] Plaintiffs are not attempting to hide their real identities from the Court or the Defendants in this matter. Plaintiffs are willing to reveal their true identities to the Court in camera or during a closed hearing and Defendants are already aware of Plaintiffs' true identities. Plaintiffs are also willing to file supplemental declarations, if the Court requests such, outlining their true identities and any facts the Court deems necessary in such declarations.

[2] Such pseudonyms were selected at random via an online random name generator.

1

pseudonyms as opposed to their real names to prevent the highly sensitive, personal information contained in the Complaint from becoming public and interfering with their families and careers. The details of the Complaint and what will likely be lengthy and personal discovery in this action are disturbing and involve the commission of crimes, including sexual assault, of which Plaintiffs are victims, and Plaintiffs have already been victimized enough by Defendants. They should not have to publicly endure the litigation of this matter in order to obtain the remedies they are entitled.

## STATEMENT OF FACTS

Defendant Rubin, with the assistance of the remaining Defendants formed an association in fact enterprise (the "Enterprise") to trick women to travel to New York City for alleged photoshoots and companionship. (Complaint, dated November 2, 2017, Dkt. No. 1 ("Compl."), ¶¶ 1–2.) Upon the Plaintiffs' arrival at a penthouse apartment (the "Penthouse") leased by Rubin in New York, the Enterprise—Powers specifically— would have the women sign non-disclosure agreements, which the Plaintiffs are told are standard, are not permitted to keep copies, and are not permitted to consult an attorney regarding. (Compl. ¶¶ 103–108.)

Following the Plaintiffs signing what they were told was a standard non-disclosure agreement; they would meet Rubin for drinks or dinner, often at the Viceroy, which is located next to the Penthouse. (Compl. ¶ 109.) Once dinner or drinks concluded, Rubin would bring the Plaintiffs back to the Penthouse, order them to change into BDSM attire, and prepare drinks for the Plaintiffs out of their sight. (Compl.

¶ 112.) At least one Plaintiff believes something was added to her drink to increase her intoxication. (Compl. ¶¶ 112, 117.)

After having a few drinks, Rubin would bring the Plaintiffs into his Dungeon which had dildos labeled A–Z, ropes, chains, machines with straps, benches, face masks with zippers, metal hooks, and other apparatuses the victims did not recognize. (Compl. ¶¶ 115–116.) Rubin used these apparatuses and other items on the Plaintiffs after they were tied down, gagged, and intoxicated. (Compl. ¶¶ 118, 122–127.) Rubin then proceeded to beat the Plaintiffs, punching them in the back of the head so hard that the Plaintiffs would fall in and out of consciousness, beating their breasts, and slapping and punching their ribcages. (Compl. ¶¶ 128–131, 175–178.) After the Plaintiffs had been tied down and beaten, Rubin then raped them, both with objects and with himself; Rubin raped the Plaintiffs so brutally that he caused tears in their vaginas. (Compl. ¶¶ 131–132, 180.)

As if this was not enough, Rubin also the raped the women with devices that were not intended for sexual pleasure—regardless of consent—by raping one of the Plaintiffs with a cattle prod, shocking her on the outside of her vagina before penetrating one of the Plaintiffs with the cattle prod and having it shock her on the inside of her vagina as well. (Compl. ¶¶ 232–233.)

After these incidents, the Plaintiffs required surgery to fix the damage done by Rubin. (Compl. ¶¶ 3, 191, 267–268.) The Enterprise willingly paid for this surgery and even requested the Plaintiffs get a different type of implant—which was sturdier—so that if the Plaintiffs came back, Rubin could beat their breasts and would not have to

3

pay for future surgery. (Compl. ¶¶ 200, 203.) In order for the Enterprise to pay for the surgery, Defendant Schnur drafted a stack of papers that Plaintiffs were not permitted to review or take with them. (Compl. ¶ 199.)

Moreover, one of the Plaintiffs is currently being criminally prosecuted in New York for acts of violence because the Enterprise scared her into taking the blame for the crimes of Rubin. (Compl. ¶¶ 218–225.) The Enterprise agreed to pay for the Plaintiff's criminal attorney so that she would not reveal the real nature of the crimes. (Compl. ¶ 225.) However, the Enterprise grew concerned that this Plaintiff would confide in the third-party defense counsel the true nature of the incidents surrounding the alleged crime committed by Plaintiff, sp the Enterprise offered to substitute Defendant Schnur in Plaintiff's current criminal counsel's place. (Compl. ¶¶ 287–295.) This Plaintiff did in fact reveal the scope of the Enterprise to her criminal defense attorney. (Compl. ¶ 258.) When the Enterprise grew even more paranoid, it offered to pay this Plaintiff $80,000 to switch criminal defense attorneys to Defendant Schnur in an effort to ensure she would not reveal the nature of the Enterprise. (Compl. ¶ 288.)

Defendants have engaged in assault, battery, false imprisonment, human trafficking, wire fraud, obstruction of justice, witness tampering, and transportation for illegal sexual activity, all at the expense of Plaintiffs' lives, jobs, bodily integrity, and mental well-being. (Compl. ¶ 313.)

4

## **ARGUMENT**

I. **PLAINTIFFS ARE ENTITLED TO A PROTECTIVE ORDER AS VICTIMS OF SEXUAL ASSAULT UNDER N.Y. CIVIL RIGHTS LAW § 50-b.**

The Plaintiffs in this action are entitled to a protective order and to proceed in this suit under pseudonyms as victims of sexual assault under N.Y. Civ. Rights Law § 50-b. Under N.Y. Civ Rights Law § 50-b(1), "[t]he identity of any victim of a sex offense, as defined [by the penal law], or of an offense involving the alleged transmission of the human immunodeficiency virus, shall be confidential." N.Y. Civ. Rights Law § 50-b has also been applied to civil cases where the plaintiff is a victim of sexual assault as "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (permitting a plaintiff to proceed anonymously where he alleged sexual assault took places years ago). Moreover, federal courts throughout the United States have agreed that victims of sexual assault are entitled to anonymity in bringing civil claims against their assailants. *Id*. ("[t]he Seventh Circuit, which disfavors the use of fictitious names, has recognized that sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity.") (citing *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses")).

Plaintiffs here were beaten, sexually assaulted, raped, and potentially drugged. Plaintiffs identities must be concealed from the public (not from the Court or the

5

Defendants) in order to not deter others from coming forward in the future with similar claims of sexual assault. Plaintiffs in this action should be permitted to remain anonymous as victims of sexual assault under N.Y. Civ. Rights Law § 50-b.

## II. PLAINTIFFS SHOULD BE PERMITTED TO BRING CLAIMS ANONYMOUSLY AS COURTS IN THIS CIRCUIT REGULARLY PERMIT PLAINTIFFS TO BRING CLAIMS UNDER PSEUDONYMS OR FICTITIOUS NAMES WHERE THE PLAINTIFFS' CLAIMS ARE HIGHLY SENSITIVE AND OF A PERSONAL NATURE.

Plaintiffs should be permitted to bring their claims under pseudonyms as courts in the Second Circuit regularly permit plaintiffs to bring claims anonymously where the claims are highly sensitive and personal in nature. A "[p]laintiff['s] anonymity should be permitted where a substantial privacy interest is involved. Embarrassment or economic harm to the plaintiffs is insufficient, but factors to consider as to whether plaintiffs' situation is compelling, involving highly sensitive matters including social stigmatization." *Doe v. New York Univ.*, 786 N.Y.S.2d 892, 903 (N.Y. Cnty Sup. Ct. 2004) (internal quotation marks omitted). Courts in this circuit have permitted the use of pseudonyms where plaintiff is entitled to privacy. *See Doe v. Montefiore Med. Ctr.*, No. 12 CIV. 686 CM, 2013 WL 624688, at *2 (S.D.N.Y. Feb. 19, 2013), *aff'd*, 598 F. App'x 42 (2nd Cir. 2015) (permitting plaintiff to proceed under pseudonym where plaintiff alleged defendant physician sexually assaulted her); *Smith v. Edwards*, 175 F.3d 99, 107 (2nd Cir. 1999) ("For the sake of the privacy of plaintiff's child, pseudonyms for plaintiff and his family are employed throughout this opinion"); *Doe v. Pataki*, 120 F.3d 1263, 1265 (2nd Cir. 1997), *as amended on denial of rehg* (Sept. 25, 1997) (three sex offenders proceeding under pseudonyms to challenge Megan's law); *Doe v. Columbia Univ.*, 831 F.3d 46, 48

6

(2nd Cir. 2016) (student accused of sexual assault permitted to use pseudonym during litigation against university for violation of Title IX in investigation of sexual assault); *Doe v. Menefee*, 391 F.3d 147, 149, n. 1 (2nd Cir. 2004) (trial court granted ex parte motion for plaintiff to proceed under pseudonym but order not challenged in this decision).

As was the case in all of the above cited cases, Plaintiffs in this matter have the right to proceed pseudonymously as the allegations in the Complaint are of a highly sensitive nature and include social stigmatizations. Moreover, one of the Plaintiffs has a young child and another is raising older children, all of which will be affected by use of Plaintiffs' real names. The nature of the crimes alleged in the Complaint are likely to result in social stigmatization, both within Plaintiffs' communities and families, as well as within Plaintiffs professional network. Because substantial privacy interests are involved here, Plaintiffs should be permitted to bring their claims under pseudonyms.

### III. PLAINTIFFS' NEED FOR ANONYMITY GREATLY OUTWEIGHS ANY PUBLIC INTEREST IN THIS MATTER.

The Plaintiffs' need for anonymity greatly outweighs any public interest in this matter and any potential prejudice to the Defendants. "Granting the party the right to proceed anonymously, on the other hand, is not the equivalent of sealing records and does not prevent the public from accessing records." *New York Univ.*, 786 N.Y.S.2d at 902–03. Courts in the Second Circuit utilize ten factors in balancing plaintiffs' interest in anonymity and the public interest in disclosure of the plaintiffs' identity as well as prejudice to the defendant:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature;

7

(2) whether identification poses a risk of retaliatory physical or mental harm to the party [seeking to proceed anonymously] or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiffs identify;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential;

(8) whether the public's interest in the litigation is furthered by the plaintiff to disclose his identity;

(9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Grottano v. The City of New York*, No. 15-CIV-9242RMBKNF, 2016 WL 2604803, at *2 (S.D.N.Y. Mar. 30, 2016) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2nd Cir. 2008)).

All but the third factor — which is neutral — weighs in favor of permitting Plaintiffs to proceed anonymously.

8

The first factor weighs in favor of Plaintiffs remaining anonymous. The first factor in the balancing test is "whether the litigation involves matters that are highly sensitive and [of a] personal nature." *Grottano*, 2016 WL 2604803, at *2. Matters of sexual assault are highly sensitive and of a personal nature. *Id*. (finding sexual assault "allegations involve matters that are highly sensitive and of a personal nature.") Plaintiffs in this action were likely drugged, beaten, and brutally raped and the Defendants utilized non-disclosure agreements, obstruction of justice, and tampering with witnesses to cover it up. The first factor weighs in favor of keeping Plaintiffs anonymous in this action.

The second factor also weighs in favor of keeping Plaintiffs anonymous in this action. The second factor is "whether identification poses a risk of retaliatory physical or mental harm to the party [seeking to proceed anonymously] or even more critically, to innocent non-parties" *Id*. Two Plaintiffs here have children, who are innocent non-parties, which will be subject to retaliatory mental harm if the Plaintiffs' legal names are revealed. Children should not have to read about, and potentially live the rest of their lives knowing about the events that took place against their mothers. Children are particularly vulnerable to negative information regarding their parents and should not have deal with the stigmas associated with it. Factor two weighs in favor of keeping Plaintiffs anonymous.

The fourth factor also weighs in favor of Plaintiffs remaining anonymous. The fourth factor is "whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age." *Id*. While Plaintiffs themselves are not

9

vulnerable due to their age, two of the Plaintiffs have children, one of which is young. These children are vulnerable to harms of disclosure. The Fourth fcator weighs in favor of Plaintiffs proceeding anonymously.

The fifth, sixth, and seventh factors weigh in favor of keeping Plaintiffs' name anonymous in this action. The Fifth factor is "whether the suit is challenging the actions of the government or that of private parties"; the sixth factor is "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court"; and the seventh factor is "whether the plaintiff's identity has thus far been kept confidential." *Id*. Here, the Plaintiffs are challenging a private party that is not prejudiced in any way by the suit being brought under a pseudonym. The Defendants have already been apprised of the legal names of the actual Plaintiffs so as to not prejudice the Defendants and in an attempt to keep the overall suit confidential by contemplating a pre-filing settlement. However, Plaintiffs remain fully anonymous outside of the Parties in this action. Factors five, six, and seven all weigh in favor of keeping Plaintiffs anonymous.

Finally, the eighth, ninth, and tenth factors also weigh in favor of keeping Plaintiffs anonymous in this action. The eighth factor is "whether the public's interest in the litigation is furthered by the plaintiff to disclose his identity"; the ninth factor is "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and the tenth factor is "whether there are any alternative mechanisms for protecting the

confidentiality of the plaintiff." *Grottano*, 2016 WL 2604803, at *2. There is no viable public interest in knowing the identity of Plaintiffs as victims of sexual assault. Knowledge of the Plaintiffs' names will not put anyone on notice or protect them from Defendants' Enterprise. Rather, there is an atypically weak public interest in that Plaintiffs are victims and revealing Plaintiffs' true identities may prevent further victims of this Enterprise, or other sexual assaults, from coming forward out of fear of having their names made public. There is no other alternative—aside from permitting Plaintiffs to use pseudonyms—to protect the privacy of the Plaintiffs. The eighth, ninth, and tenth factors all weigh in favor of keeping Plaintiffs anonymous.

Only the third factor does not weigh in favor of permitting the Plaintiffs to proceed anonymously. The third factor is "whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiffs identify." *Grottano*, 2016 WL 2604803, at *2. The third factor is neutral in this action: Plaintiffs' injuries will not be incurred as a result of disclosure but Plaintiffs' injuries may worsen as a result of disclosure. The third factor is the only factor not in favor of the Plaintiffs proceeding anonymously; the Plaintiffs should be permitted to proceed anonymously as nine of the ten factors favor proceeding under pseudonyms.

Nine of the ten factors weigh in favor of Plaintiffs remaining anonymous.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for a protective order should be granted permitting Plaintiffs to remain anonymous in all public Court filings and

preventing Defendants from revealing the true identity of Plaintiffs to anyone outside the scope of this litigation. N.Y. Civil Rights Law § 50-b mandates that victims of sexual assault have their identities remain anonymous, and that precedent has been carried over to civil matters as well. Courts in the Second Circuit regularly permit victims of sexual assault to bring their claims anonymously as the claims are of a highly sensitive and personal nature. Nine of the ten factors analyzed to determine whether Plaintiffs' rights outweigh the public interest and any potential prejudice to Defendants weigh in favor of the Plaintiffs. Plaintiffs are entitled to remain anonymous in this action.

Dated: New York, New York
November 2, 2017

By: _____
John G. Balestriere
Jillian L. McNeil
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:	(212) 374-5401
Facsimile:	(212) 208-2613
john.balestriere@balestrierefariello.com
jillian.mcneil@balestrierefariello.com
*Attorneys for Plaintiff*