

**JOHN G. BALESTRIERE**
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5401
F: +1-212-208-2613
john.balestriere@balestrierefariello.com
www.balestrierefariello.com

December 4, 2017

**VIA ECF**
Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Lawson et al. v. Rubin et al.*
                 No. 1:17-cv-06404-BMC

Dear Judge Cogan:

    I represent Plaintiffs and write in response to Defendants' request for a pre-motion conference regarding Defendants' anticipated motions to dismiss. (Dkt. Nos. 32 and 34). Plaintiffs consent to the schedule proposed in Defendants' pre-motion conference letter. (Dkt. No. 34.) Plaintiffs will oppose Defendants' proposed motions to dismiss. Each of Defendants' seven arguments fails.

### Defendants Proximately Caused Plaintiffs' Injuries

    The injuries suffered by Plaintiffs were proximately caused by Defendants' racketeering activity. A RICO plaintiff must prove that defendants proximately caused plaintiff's injuries through "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 259 (1992). Plaintiffs have alleged here that they have sustained injury which was proximately caused by Defendants' racketeering activity. (Complaint, dated November 2, 2017, Dkt. No. 1 ("Compl.") ¶¶ 249-71.)  But for Defendants' wire fraud, human trafficking, and witness tampering, Plaintiffs would not have sustained physical injury and damage to their businesses as models. (*Id.*) Defendants knew—and, in fact, sought out Plaintiffs because—Plaintiffs were models who made their livings in part, from their physical appearance. (Compl. ¶¶ 66-74.)  Likewise, Defendants knew that the conduct in which they were engaged would cause injury to Plaintiffs and could harm their ability to do their jobs. (Compl. ¶¶ 66-74, 194-199.) Thus, such injury was reasonably foreseeable as a natural consequence of Defendants' racketeering scheme.

### Plaintiffs' Injuries Are Economic

    Plaintiffs' injuries are economic as personal injuries that result in economic damages are compensable under RICO. RICO permits a claim for "[a]ny person injured in his business or



property." 18 U.S.C. § 1964(d). By causing physical injury to Plaintiffs, who Defendants at all times knew worked as models, Defendants directly caused economic damages to Plaintiffs. One Plaintiff lost her job as a direct result of the injuries caused by Defendants' scheme. (Compl. ¶ 194.) The other Plaintiffs were unable to work for months following their encounters with the enterprise, due to the damage to their faces and bodies. Moreover, courts consider prosthetics designed for implantation as property. *See Pfizer, Inc. v. Stryker Corp.*, No. 02 CIV. 8613 LAK, 2003 WL 21660339, at *2 (S.D.N.Y. July 15, 2003) ("property sold by Pfizer—prosthetic devices intended for implantation in human beings"). Separate from any injuries directly to their bodies, all Plaintiffs have sustained extensive damage to their breast implants. (Compl. ¶¶ 350, 383, 409). These are economic injuries, such that Defendants' arguments regarding Plaintiffs' injuries fail.

### Plaintiffs Plead a Cognizable Enterprise

Plaintiffs plead a cognizable enterprise among the Defendants for the purpose of bringing victims to New York for Rubin to assault. RICO dictates that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiffs have alleged that the purpose of the enterprise is "to bring women to New York to provide companionship and entertainment for Defendant Rubin." (Compl. ¶ 309.) This is distinct from the illegal purposes of the enterprise, which is to violate a series of federal statutes (Compl. ¶ 313), and cover up the enterprise's crimes. (Compl. ¶¶ 272-298.) Plaintiff pleads relationships amongst Defendants: Rubin managed the enterprise, using Powers and Shon to find victims and conduct the logistics of the enterprise, Schnur to cover-up the acts of the enterprise, Blue Icarus to own and rent the apartment to the enterprise, and the Doe Company to provide the necessary funds and avenues for payment. (*See, e.g.* Compl. ¶¶ 17-23.) Finally, the enterprise, which began in some form at least seven years ago when Rubin rented the Penthouse from Blue Icarus, has sufficient longevity. (Compl. ¶ 36.) These allegations meet all three requirements for pleading a RICO enterprise.

### Defendant Powers Was Aware of the Coercion

Defendant Powers was aware of the coercion and aided in both obtaining victims for the enterprise and in ensuring the victims remained silent. The Complaint alleges a myriad of claims against Powers, all of which impute knowledge. (Compl. ¶¶ 59, 103, 108, 139.) Powers was aware of exactly what took place in the Penthouse, having the Plaintiffs sign non-disclosure agreements, hearing what occurred to the Plaintiffs, paying for medical services and to silence Plaintiffs, and preventing Plaintiffs from having copies of the non-disclosure agreements (which Defendants have never produced) (Compl. ¶¶ 56-59.) Moreover, Defendant Powers was a key figure in covering up the enterprise's actions, and directly coordinating the enterprise's attempts to interfere with Plaintiffs' right to counsel. (Compl. ¶¶ 59, 290-295.)

### Plaintiffs Plead a "Threat of Continuing Activity"

Defendants' conduct is likely to continue. To demonstrate open-ended continuity, a plaintiff must show "the racketeering acts themselves include a specific threat of repetition

www.balestrierefariello.com    225 Broadway, 29th Floor    New York, New York 10007



extending indefinitely into the future." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989). Defendants' scheme, which Plaintiffs pleaded has been ongoing for at least seven years (Compl. ¶¶ 34, 46, 52), and which has likely affected dozens of victims (*Id.*), also meets the requirements for closed ended continuity. *See Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (finding that a "substantial period of time" for closed-ended continuity is generally more than two years). This is sufficient to withstand a motion to dismiss.

### Defendants' Arguments Regarding the CFAA, TVPA, and State Law Claims Fail

Plaintiffs have adequately pleaded (1) damages under the CFAA, (2) that Plaintiffs' conduct was coerced, and (3) the state law tort claims are not untimely. Under the CFAA "the term 'loss' means any reasonable cost to any victim including the cost of responding to an offense, conducting a damage assessment." 18 U.S.C. § 1030(e) (11). Plaintiffs were required to have their attorneys investigate the hacking of their devices in order to determine whether any confidential information was taken, resulting in more than $5,000 in attorneys' fees. (Compl. ¶¶ 331-335.)

Plaintiffs have also alleged that they were trafficked through both fraud and coercion in violation of 18 U.S.C. § 1591(a) (the "TVPA"). All Defendants participated in this venture knowing that means of force, threats of force, fraud, and coercion would be used to cause Plaintiffs to engage in commercial sex acts. (Compl. ¶ 341.) Defendants lied to Plaintiffs in order to convince them to come to New York under false pretenses, and then proceeded to threaten them after their encounters, such that Plaintiffs acted out of fear. (*See, e.g.*, Compl. ¶¶ 89, 95, 143, 198-199). Plaintiffs have sufficiently pleaded that Defendants used fraud and coercion.

Defendants have failed to articulate any reasons why the state law claims are untimely or do not state a cause of action.

### The Claims Against Schnur Are Adequately Pleaded

Both causes of action against Defendant Schnur are viable as Schnur provided more than simple legal services to the enterprise.[1] Attorneys may be subject to RICO liability where they participate in the operation and management of the enterprise. *See JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06 CIV. 6095 (JGK), 2007 WL 1159637, at *8 (S.D.N.Y. Apr. 18, 2007). The Complaint alleges that Schnur was involved in the operation and management of the enterprise, aiding in obstructing justice and intimidating witnesses. (Compl. ¶ 65). Such conduct is actionable.

Respectfully submitted,

John G. Balestriere

cc:   Counsel of Record

---

[1] Schnur was properly served by substitute service on November 8, 2017. (Dkt. No. 16 at 4.)

3