**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

HILLARY LAWSON, KRISTINA HALLMAN,
and STEPHANIE CALDWELL,

                                    *Plaintiffs*,

                    *-against-*

HOWARD RUBIN, JENNIFER POWERS,
YIFAT SCHNUR, STEPHANIE SHON, JOHN
DOE, BLUE ICARUS, LLC, and the DOE
COMPANY,

                                    *Defendants*.

Case No.: 1:17-CV-06404 (BMC)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT HOWARD RUBIN

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ....................................................................................... 3

    A.    Hallman And Lawson Are Solicited To Come To New York .............................. 3

    B.    Hallman And Lawson Meet Rubin In New York In August ................................ 4

    C.    Hallman Solicits Caldwell To Go To New York .................................................. 4

    D.    Hallman And Caldwell Go To New York A Second Time ................................... 5

    E.    Hallman Goes To New York Again, With Another Woman ............................... 5

    F.    Lawson Goes To New York In December 2016 .................................................. 6

    G.    Additional Allegations ...................................................................................... 6

ARGUMENT ........................................................................................................ 7

POINT I  THERE IS NO VENUE IN THIS DISTRICT FOR THE RICO CAUSES OF
        ACTION.  THOSE CAUSES OF ACTION ALSO FAIL BECAUSE THEY
        DO NOT ALLEGE A QUALIFYING RICO INJURY, A PATTERN OF
        RACKETEERING ACTIVITY, OR A RICO ENTERPRISE................................. 8

    A.    There Is No Venue In This District For The RICO Causes Of Action ................. 8

    B.    The Complaint Alleges Only Physical Injuries, Which Are Not
        Compensable Under RICO, And Which Were Not Proximately Caused By
        The Alleged Racketeering Acts ....................................................................... 10

        1.    Plaintiffs' Alleged Injuries Are Not Injuries To Plaintiffs'
            "Business or Property" ........................................................................ 10

        2.    The Complaint Does Not Allege That Any Racketeering Act
            Proximately Caused Plaintiffs' Injuries ................................................ 12

    C.    The Alleged Racketeering Acts Are Defectively Pled And, In Any Event,
        Do Not Constitute A Pattern Of Racketeering Activity ..................................... 13

        1.    The Allegations About The Alleged Racketeering Acts Are Fatally
            Defective ........................................................................................... 13

        2.    The Complaint Does Not Allege A Pattern Of Racketeering
            Activity ............................................................................................. 14

    D.    The Complaint Does Not Allege A RICO Enterprise ......................................... 16

    E.    The Complaint Fails To Allege A RICO Conspiracy .......................................... 18

POINT II  THE THIRD CAUSE OF ACTION, FOR VIOLATION OF THE
        COMPUTER FRAUD AND ABUSE ACT, MUST BE DISMISSED
        BECAUSE THERE ARE NO WELL-FOUNDED ALLEGATIONS THAT
        ANY DEFENDANT HACKED INTO ANY PLAINTIFF'S COMPUTER .......... 18

# TABLE OF CONTENTS
(continued)

**Page**

POINT III  THE FOURTH, NINTH, AND FOURTEENTH CAUSES OF ACTION WHICH ALLEGE VIOLATIONS OF THE HUMAN TRAFFICKING LAW, 18 U.S.C. § 1591(A), MUST BE DISMISSED BECAUSE VENUE IS NOT PROPER IN THIS COURT, AND THEY FAIL TO STATE A CLAIM ...... 20

POINT IV  THE STATE LAW CAUSES OF ACTION ARE ALL BASED ON ACTS IN MANHATTAN, SO VENUE DOES NOT LIE IN THIS DISTRICT; AND THE COMPLAINT ITSELF ESTABLISHES CONSENT .................................... 22

A.  There Is No Venue In This District For The State Law Causes Of Action. ........ 23

B.  The Complaint Makes Clear That Plaintiffs Consented To The Conduct At Issue In The State Law Causes Of Action, And Therefore, They Fail To State A Claim. ................................................................................................... 23

CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey House Media, Inc. v. Apple Inc.*,
  No. 14 Civ. 2000, 2016 WL 297720 (S.D.N.Y. Jan. 22, 2016), *aff'd sub nom.*,
  *Abbey House Media, Inc. v. Simon & Schuster, Inc.*, 869 F.3d 53 (2d Cir.
  2017) ....................................................................................................................................20

*Aronov v. Mersini*,
  No. 14-cv-7998, 2015 WL 1780164 (S.D.N.Y. Apr. 20, 2015) ............................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................7

*Banana Distrib., Inc. v. United Fruit Co.*,
  269 F.2d 790 (2d Cir.1959).....................................................................................................8

*Bast v. Cohen, Dunn & Sinclair*,
  59 F.3d 492 (4th Cir. 1995) ...................................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................7, 23

*Bistline v. Jeffs*,
  No. 2:16-CV-788, 2017 WL 108039 (D. Utah Jan. 11, 2017) ..............................................21

*Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*,
  584 F. Supp. 36 (S.D.N.Y. 1983) ............................................................................................8

*Burch v. Pioneer Credit Recovery, Inc.*,
  551 F.3d 122 (2d Cir. 2008).....................................................................................................7

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999)..............................................................................................15, 18

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*,
  762 F. Supp. 2d 543 (E.D.N.Y. 2011) .....................................................................................7

*Coopersmith v. Gold*,
  172 A.D.2d 982 (3d Dep't 1991)............................................................................................23

*Daniel v. Am. Bd. of Emergency Medicine*,
  428 F.3d 408 (2d Cir. 2005).............................................................................................9, 21

*Davidson v. City of N.Y.*,
  65 N.Y.S.3d 520 (1st Dep't 2017) .........................................................................................23

*DeFalco v. Bernas,*
    244 F.3d 286 (2d Cir. 2001)............................................................................14

*Doe v. Roe,*
    958 F.2d 763 (7th Cir. 1992) ........................................................................11

*Drake v. B.F. Goodrich Co.,*
    782 F.2d 638 (6th Cir. 1986) ........................................................................11

*Fedele v. Harris,*
    18 F. Supp. 3d 309 (E.D.N.Y. 2014) ..............................................................7

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004)............................................................................16

*Gates v. Wilkinson,*
    No. 01 Civ. 3145, 2003 WL 21297296 (S.D.N.Y. June 4, 2003)........................8, 9

*Genty v. Resolution Tr. Corp.,*
    937 F.2d 899 (3d Cir. 1991)............................................................................11

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.,*
    67 F.3d 463 (2d Cir. 1995)..............................................................................15

*Grogan v. Platt,*
    835 F.2d 844 (11th Cir. 1988) ......................................................................11

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005), *aff'd sub nom., Gulf Ins. Co. v. Caldor Corp.,*
    273 F. App'x 90 (2d Cir. 2008) .....................................................................9

*H.J. Inc. v. N.W. Bell Tel. Co.,*
    492 U.S. 229 (1989)........................................................................................15

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital*
    *Markets, LLC,*
    07-cv-8139, 2008 WL 3925175, *aff'd,* 347 F. App'x 711 (2d Cir. 2009) ...............12

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990)..............................................................................12

*Hemi Grp. LLC v. City of N.Y.,*
    559 U.S. 1 (2010)............................................................................................12

*Int'l Bhd. of Teamsters v. Carey,*
    297 F. Supp. 2d 706 (S.D.N.Y. 2004), *aff'd sub nom., Int'l Bhd. of Teamsters*
    *v. Blitz,* 124 F. App'x 41 (2d Cir. 2005) .....................................................16

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*,
731 F.3d 556 (6th Cir. 2013) ...............................................................11

*Jaquith v. Newhard*,
No. 91 Civ. 7503, 1993 WL 127212 (S.D.N.Y. Apr. 20, 1999) ...............................23

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ...............................................................23

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) ...............................................................10

*Le Paw v. BAT Indus. P.L.C.*,
No. 96 Civ. 4373, 1997 WL 242132 (E.D.N.Y. Mar. 6, 1997) ...............................12

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003), *jdmt. aff'd in part, vacated in part*, 459 F.3d 273
(2d Cir. 2006) ...............................................................13

*Mandavia v. Columbia Univ.*,
912 F. Supp. 2d 119 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014) .................20

*Motorola Credit Corp. v. Uzan*,
322 F.3d 130 (2d Cir. 2003) ...............................................................12

*N.Y. State Catholic Health Plan, Inc. v. Academy O&P Assocs.*,
312 F.R.D. 278 (E.D.N.Y. 2015) ...............................................................8

*Ong v. Chipotle Mexican Grill, Inc.*,
No. 16 Cuv. 141, 2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ...............................20

*Padwa v. Hadley*,
981 P.2d 1234 (N.M. Ct. App. 1999) ...............................................................23

*Pelt v. City of New York*,
No. 11 Civ. 5633, 2013 WL 4647500 (E.D.N.Y. Aug. 28, 2013) ...............................20

*Pincione v. D'Alfonso*,
10 Civ. 3618, 2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011), *aff'd*, 506 F.
App'x 22 (2d Cir. 2012) ...............................................................8, 9

*Quirk v. Gilsenan*,
No. 94 Civ. 3446, 1994 WL 537137 (S.D.N.Y. Oct. 3, 1994) ...............................9

*Rose v. Goldman*,
No. 02 Civ. 5370, 2009 WL 4891810 (E.D.N.Y. Dec. 9, 2009) ...............................20

*Rothstein v. Carriere*,
   41 F. Supp. 2d 381 (E.D.N.Y. 1999) .........................................................................7

*Smallwood v. Lupoli*,
   No. 04-CV-0686, 2007 WL 2713841 (E.D.N.Y. Sept. 14, 2007), *aff'd*, No. 07
   Civ. 4445, 2009 WL 579419 (2d Cir. Mar. 4, 2009) ..........................................15, 16

*Spinale v. United States*,
   No. 03 Civ. 1704, 2004 WL 50873 (S.D.N.Y. Jan. 9, 2004).....................................10

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)......................................................................................15

*Stein v. World-Wide Plumbing Supply Inc.*,
   71 F. Supp. 3d 320, 327 (E.D.N.Y. 2014) ..............................................16, 17, 18

*United States v. Zagari*,
   111 F.3d 307 (2d Cir. 1997)......................................................................................13

*United States v. Thai*,
   29 F.3d 785 (2d Cir. 1994)........................................................................................14

*United States v. Walls*,
   784 F.3d 543 (9th Cir.2015) .....................................................................................21

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
   No. 03 Civ. 8606, 2004 WL 2187069 (S.D.N.Y. Sep. 29, 2004) ..............................7

*Williams v. Dow Chemical Co.*,
   255 F. Supp. 2d 219 (S.D.N.Y. 2003)........................................................................11

*Wood v. Incorporated Vill. of Patchogue*,
   311 F. Supp. 2d 344 (E.D.N.Y. 2004) .......................................................................17

**Statutes/Other Authority**

18 U.S.C. § 1030(a)(5)(B) ...............................................................................................19

18 U.S.C. § 1030(c)(4)(A)(i) ...........................................................................................19

18 U.S.C. § 1030(c)(4)(A)(i)(I) .......................................................................................19

18 U.S.C. § 1030(g) .........................................................................................................19

18 U.S.C. § 1591 ..............................................................................................................20

18 U.S.C. § 1591(a) .........................................................................................................21

18 U.S.C. § 1595.............................................................................................................21

18 U.S.C. § 1956(a) ........................................................................................14

18 U.S.C. § 1964(c) ........................................................................................10

18 U.S.C. § 1965(a) .....................................................................................8, 10

28 U.S.C. § 1391 ..........................................................................................9, 19

Restatement (Second) of Torts § 892A (1979) .............................................23

Defendant Howard Rubin respectfully submits this Memorandum of Law in support of his motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). The Complaint alleges 18 causes of action against Rubin, but venue is improper for each of them, and none of them states a claim upon which relief can be granted.

The Complaint alleges that in August 2016, the Defendants promised to pay Plaintiffs Hallman and Lawson to come from Florida to an apartment in Manhattan to meet Rubin for sexual relations. Once Plaintiffs were in the apartment, Rubin allegedly committed acts of assault against them and had sex with them against their will. The next month, according to the Complaint, Plaintiff Hallman introduced Plaintiff Caldwell to the Defendants. According to the Complaint, Hallman "told [Caldwell] everything about her previous experience with Rubin," after which Caldwell travelled to Manhattan to meet with Rubin. The Complaint alleges three occasions, from August-December 2016, on which Rubin allegedly committed acts of sexual assault. The Complaint alleges each of the Plaintiffs continued to meet with Rubin after these incidents.

Each of the causes of action must be dismissed for multiple, independently sufficient, reasons. The first is that this case is in the wrong court: the Eastern District of New York is not the correct venue. The Complaint alleges that the Defendants reside in Manhattan and New Jersey, and all of the actions relevant to this case – including, most importantly, the encounters between Rubin and the Plaintiffs – took place in Manhattan. The only connection to the Eastern District of New York alleged in the Complaint is that Plaintiffs took flights from Florida to New York, and thus passed through an airport in the Eastern District. As demonstrated below, transit through the district is not a sufficient predicate for venue in a civil lawsuit, and on this ground alone, each of the causes of action must be dismissed.

In addition to their fatal venue problems, the first two causes of action, for violations of the RICO statute, must be dismissed because the Complaint alleges Plaintiffs suffered personal injuries, not injury to their "business or property" within the meaning of 18 U.S.C. § 1964(c), nor does it allege that it was the purported racketeering activity – as opposed to the alleged physical assault – that proximately caused Plaintiffs' injuries.  The Complaint also fails to plead either a "pattern of racketeering activity" or a proper RICO enterprise.

The Third Cause of Action, for alleged violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a)) must also be dismissed.  Again, venue is improper as there is no alleged connection to the Eastern District of New York.  Moreover, there is no well-founded allegation that any Defendants hacked into any of Plaintiffs' personal accounts.  The Complaint avers that the accounts were hacked, and, while the Complaint implies that Defendants were responsible for the hacking, it pleads no facts that would support the inference.

Plaintiffs' causes of action for violation of the human trafficking statute (18 U.S.C. § 1591(a), the Fourth, Ninth and Fourteenth Causes of Action) must be dismissed because the Eastern District is not the proper venue.  In addition, although the Complaint alleges in conclusory fashion that Rubin "benefitted, financially, or by receiving something of value" from participating in the alleged trafficking, it pleads no facts to support this.  Furthermore, the statute requires the use of force, fraud or coercion to cause a person to engage in a commercial sex act, but the Complaint alleges that each of the Plaintiffs willingly came to New York to engage in commercial sex acts.  The gravamen of the Complaint is that, during those acts, more force was used than they had anticipated or agreed to, but such allegations do not support a cause of action under 18 U.S.C. §1591.

It is clear that all of the federal causes of action must be dismissed.  This Court should decline to exercise pendent jurisdiction over the state law causes of action as well.  Each of the state law claims – for assault, battery, false imprisonment, and intentional infliction of emotional harm (Causes of Action 5-8, 10-13, 15-18) – are once again in the wrong court because the alleged wrongdoing took place in Manhattan, not in the Eastern District.  And, Plaintiffs' consent to most of the behavior giving rise to the causes of action is evident on the face of the Complaint.

## Statement of Facts

The Complaint alleges that Defendant Rubin engaged in sadomasochistic sexual relations with Plaintiffs on three occasions between August and December 2016.  The other named individual Defendants are allegedly associates of Rubin who, according to the Complaint, interacted with Plaintiffs by contacting them and, in some instances, arranging for them to meet Rubin.  The Complaint alleges that Defendant Schnur acted as an attorney for Rubin.  Plaintiffs are models or dancers who reside in Florida.

### A.    Hallman And Lawson Are Solicited To Come To New York

The Complaint alleges that the events relevant to this case began in August 2016, when Defendant Shon, on behalf of Rubin, contacted Plaintiff Hallman whom, Shon said, Rubin had seen on Instagram.  Shon asked Hallman to come to New York to "meet and spend time with Rubin" for $2,000, and said that if Rubin liked her then she would receive another $3,000.  *See* Compl. ¶¶ 75-80.  Defendant Powers also contacted Hallman on Rubin's behalf, and told Hallman that if she felt uncomfortable with Rubin she would be able to leave at any time.  *See id.* ¶¶ 81-90.

Hallman accepted the offer on the condition that she could bring a friend with her, and Hallman contacted Plaintiff Lawson to come with her to New York to meet Rubin.  *See id.* ¶¶ 85-87.  Lawson had been contacted by Shon and Powers, independently of Hallman's reaching out to

Lawson.  They made the same representations to her that they had made to Hallman.  *See id.* ¶¶ 91-97.

### B.    Hallman And Lawson Meet Rubin In New York In August

The Complaint alleges that Hallman and Lawson travelled to New York on August 23, 2016, and went to an apartment in Manhattan.  There they signed agreements, *see id.* ¶¶ 99-107, which provided that they "voluntarily agreed to engage in sexual activity with (Rubin) including sadomasochistic (SM) activity that can be hazardous and on occasion cause injury to my person . . . ."[1]

Hallman, Lawson and Rubin had drinks and dinner at a rooftop bar next door to the apartment, and then, back at the apartment, Rubin paid them each $5,000.  The Complaint alleges that Rubin then restrained both women, gagged them, beat them, and penetrated Hallman.  *See* Compl. ¶¶ 99-132.  Rubin then left, and the women stayed in the apartment for the rest of the night, leaving for Florida the next day with tickets that had been purchased for them.  *See id.* ¶ 140.

### C.    Hallman Solicits Caldwell To Go To New York

The Complaint alleges that "[s]hortly thereafter," Hallman "told Caldwell everything about her previous experience with Rubin," and put Caldwell in touch with Powers.  *See id.* ¶¶ 143, 146.  Caldwell, who wished to "supplement her income," travelled to New York to meet Rubin "in early September 2016," signed a Confidentiality Agreement and Release, and had dinner with Rubin.  The Complaint alleges that Rubin "slapped Caldwell across the face," but did not restrain her or have sex with her.  He paid her $2,000 and left the apartment.  Caldwell spent the night there, with Shon, and left the next day.  *See id.* ¶¶ 147-58.

---

[1]       These agreements, which are referred to in the Complaint as Non-Disclosure Agreements or NDAs, are attached to the accompanying Declaration of Benjamin Rose as Exhibits 1-3, and are titled "Confidentiality Agreement and Release."

**D.      Hallman And Caldwell Go To New York A Second Time**

The Complaint alleges Hallman and Caldwell flew to New York on September 24, 2016, went out to dinner with Rubin, and then went to his apartment. *See id.* ¶¶ 162-67.  The Complaint alleges Rubin was extremely intoxicated, but he "tied each female up with rope" and penetrated Caldwell. *See id.* ¶¶ 168-80. The Complaint alleges Caldwell's mouth was bound, but does not allege that Hallman's mouth was bound, or that she was penetrated.  It further alleges that Rubin paid Caldwell $5,000 in cash, and he caused $5,000 to be sent to Hallman in the morning. *See id.* ¶¶ 183, 190.  Both women suffered severe bruising to their breasts. *See id.* ¶¶ 185-89.

Caldwell contacted Rubin and Powers and asked them to pay for her medical expenses arising out of her interaction with Rubin on the night of September 24. *See id.* ¶¶ 191-95.  To that end, Caldwell again travelled to Rubin's apartment in New York on October 4.  The Complaint does not allege that Rubin and Caldwell engaged in any physical activities.  Rubin agreed to pay $20,000 for Caldwell's medical bills, which he did by August 2017. *See id.* ¶¶ 199-206, 248.  The Complaint alleges that, on October 4, Caldwell signed a "stack of papers."  On that date, Caldwell signed a "General Release Agreement" that provides, among other things, that "in exchange for, and as a condition to, receipt of payments . . . you agree to and do release and forever discharge Mr. Rubin from any and all claims, causes of action . . . that you have or may have to date arising out of your engagement in physical relations with Mr. Rubin on the nights of September 24 & 25, 2016 . . . ."[2]

**E.      Hallman Goes To New York Again, With Another Woman**

Hallman travelled to Rubin's apartment again, in October 2016, with another woman, Nancy Santi.  An acquaintance of Hallman's, Zoe Cacciola, was also present in the apartment.

---

[2]      Rubin moves to dismiss all of Caldwell's causes of action based on this release, a copy of which is attached to the accompanying Rose Declaration as Exhibit 4.

Hallman fell ill, and went to the hospital with Santi and Cacciola.  When she returned at 2:00 or 3:00 a.m., there were "multiple individuals" in the apartment.  *See* Compl. ¶¶ 207-14.  Hallman and Cacciola fought; the police came to the apartment and arrested Hallman for assaulting Cacciola.  *See id.* ¶¶ 215-24.

### F.    Lawson Goes To New York In December 2016

Lawson travelled to the apartment in New York again in December 2016, where Rubin tied her, gagged her, and penetrated her.  Lawson then stayed at a hotel for the night, and flew back to Florida the next day.  She received $5,000.  *See id.* ¶¶ 227-38.

### G.    Additional Allegations

The Complaint alleges that Rubin "continued to communicate with Hallman, and, on occasion, Caldwell," and that Caldwell refused Rubin's requests that she come to New York again. The Complaint further alleges that Hallman, Caldwell, Rubin and another man had dinner in Miami, Florida, and that Rubin paid each woman $500 for that.  *See id.* ¶¶ 241-48.  It also recounts the injuries allegedly suffered by Hallman, Lawson, and Caldwell:  broken ribs; bruising of breasts, buttocks, and faces; depression, anxiety, emotional distress, and inability to sleep; vaginal tears and trauma.  *See id.* ¶¶ 249-71.

The Complaint alleges that Hallman has had continued contact with Defendants, and that Rubin and Powers have "threatened" each of the Plaintiffs that "something bad could happen if they were to expose the Enterprise."  It further alleges that Rubin has paid for a lawyer for Hallman to represent her in the criminal case alleging her assault of Cacciola, has paid for her travel to court appearances, and has asked her, in exchange, to "keep quiet" about Rubin's alleged misconduct.  *See id.* ¶¶ 272-85.  The Complaint also alleges that Rubin attempted to meet with Hallman, and threatened to cease paying for her lawyer, if she refused to meet with him.  *See id.* ¶¶ 286-95.

Finally, the Complaint alleges that on September 19, 2017, Plaintiffs' counsel contacted Defendant Schnur and notified her of the impending lawsuit. *See id.* ¶ 296. On October 5, 8 and 10, 2017, Apple, Google, or Facebook accounts belonging to Hallman, Caldwell, and Hallman's brother were allegedly hacked. The Complaint alleges in conclusory fashion that this was at the instigation of Defendants. *See id.* ¶¶ 299-304.

## <u>Argument</u>

On a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), "the plaintiff bears the burden of establishing that venue is proper." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011). In a case involving multiple claims, the plaintiff bears the burden of establishing proper venue with respect to each cause of action asserted. *See Rothstein v. Carriere*, 41 F. Supp. 2d 381, 386 (E.D.N.Y. 1999); *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014).

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (*per curiam*). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Courts must be especially vigilant in analyzing civil RICO claims. "It has been suggested that the civil provisions of RICO are the most misused statues in the federal corpus of law," and "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 WL 2187069, at *5 (S.D.N.Y. Sep. 29, 2004) (internal

quotations omitted); *see also N.Y. State Catholic Health Plan, Inc. v. Academy O&P Assocs.*, 312

F.R.D. 278, 298 (E.D.N.Y. 2015) (same).

## POINT I

### THERE IS NO VENUE IN THIS DISTRICT FOR THE RICO CAUSES OF ACTION.  THOSE CAUSES OF ACTION ALSO FAIL BECAUSE THEY DO NOT ALLEGE A QUALIFYING RICO INJURY, A PATTERN OF RACKETEERING ACTIVITY, OR A RICO ENTERPRISE

Plaintiffs' RICO claims, the First and Second Causes of Action, are fatally defective

because they are in the wrong Court, they fail to plead an injury that is cognizable under RICO or

that was proximately caused by the purported racketeering activity, and they fail adequately to

allege either a RICO pattern or a RICO enterprise.

### A.      There Is No Venue In This District For The RICO Causes Of Action

Title 18 U.S.C. Section 1965(a) provides that a civil RICO action may be instituted in the

district court "for any district in which [a defendant] resides, is found, has an agent, or transacts

his affairs."  Courts in this Circuit have held that the Section 1965 "transacts his affairs" language

is synonymous with the requirement in the Clayton Act, 15 U.S.C. Section 22, that a party

"transact[] business" in the venue.  *See, e.g.*, *Pincione v. D'Alfonso*, 10 Civ. 3618, 2011 WL

4089885, at *4-5 (S.D.N.Y. Sept. 13, 2011), *aff'd*, 506 F. App'x 22 (2d Cir. 2012); *Gates v.

Wilkinson*, No. 01 Civ. 3145, 2003 WL 21297296, at *1-2 (S.D.N.Y. June 4, 2003); *Bulk Oil (USA)

Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 39 (S.D.N.Y. 1983)).  Under this definition, "transact

business" means "the practical, everyday business or commercial concept of doing business or

carrying on business of any substantial character."  *Gates*, 2003 WL 21297296, at

*1 (citing *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948)); *Banana Distrib., Inc. v.

United Fruit Co.*, 269 F.2d 790, 794 (2d Cir. 1959)).  "For a defendant to transact business of any

substantial character, there must be some amount of business continuity and certainly more than a

few isolated and peripheral contacts with the particular judicial district." *Id.* Occasional acts such as telephoning or mailing letters into the district does not satisfy this definition. *Pincione*, 2011 WL 4089885, at *5. "[V]enue under § 1965(a) requires that a defendant transact his affairs in the district *at the time the complaint is filed*." *Gates*, 2003 WL 21297296, at *2 (emphasis added).

Section 1965(a) is not the exclusive venue provision for RICO claims; venue may also be predicated on the federal code's general venue statute, 28 U.S.C. 1391. *See, e.g.*, *Quirk v. Gilsenan*, No. 94 Civ. 3446, 1994 WL 537137, at *1 n.1 (S.D.N.Y. Oct. 3, 1994). Section 1391(b)(2) provides that an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[3] The use of the word "substantial" is intended to be "take[n] seriously." *See Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 431-32 (2d Cir. 2005) (internal citations omitted). "[S]ignificant events material to the plaintiff's claim must have occurred in the district in question" in order for venue to lie. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005), *aff'd sub nom.*, *Gulf Ins. Co. v. Caldor Corp.*, 273 F. App'x 90 (2d Cir. 2008). In determining whether venue is proper, courts first identify the nature of the claims and the acts giving rise to those claims, and second, determine whether a substantial part of those acts occurred in the district in question. *See Daniel*, 428 F.3d at 432.

The only allegation in the Complaint that in any way relates to the Eastern District of New York is the allegation that Defendants arranged for Plaintiffs to fly from Florida to New York and

---

[3]      The other provisions of the general venue statute, 28 U.S.C. § 1391, are inapplicable. Section 1391(b)(1) provides that venue may lie in a judicial district in which any defendant resides, if all defendants reside in the state in which the district is found, but no defendant resides in the Eastern District of New York. Section 1391(b)(3) provides that "if there is no district in which an action may otherwise be brought," then venue may lie in any district in which any defendant is subject to the Court's personal jurisdiction; but venue would in all likelihood lie in the Southern District of New York.

therefore travelled from an airport in Queens, NY to Manhattan. *See* Compl. ¶ 6.[4]  This allegation

does not satisfy the "transacts . . . affairs" prong of § 1965.  That Plaintiffs passed through an

airport in this District on the way to meeting Rubin does not mean that any of Defendants

"transact[ed] affairs" in the District at the time, much less that they did when the Complaint was

filed.  That conclusion is not changed by the allegation that Defendants purchased the tickets for

Plaintiffs.  There is no allegation in the Complaint that Defendants had any connection with the

District at the time the Complaint was filed.

  For the same reasons, the allegations in the Complaint do not satisfy § 1391(b)(2).

Plaintiffs' travel through the District is not by any stretch of the imagination "a substantial part of

the events or omissions giving rise to the [RICO] claim."

**B.**  **The Complaint Alleges Only Physical Injuries, Which Are Not Compensable Under RICO, And Which Were Not Proximately Caused By The Alleged Racketeering Acts**

  The Complaint fails to allege an injury to Plaintiffs' "business or property" as is required

under § 1964(c).  The Complaint also fails to allege that Plaintiffs' injuries were proximately

caused by the alleged racketeering acts.

  1.  Plaintiffs' Alleged Injuries Are Not Injuries to Plaintiffs' "Business or Property"

  Title 18 U.S.C. § 1964(c) provides that a person "injured in his business or property" by

reason of a RICO violation may seek recovery.  Damages for personal injuries are not recoverable

under civil RICO.  *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d

229, 241 (2d Cir. 1999) ("injuries [that] are personal in nature" do not constitute injury to "business

or property" as those terms are used in RICO); *Spinale v. United States*, No. 03 Civ. 1704, 2004

---

[4]  The Complaint alleges that three of the Defendants (Rubin, Powers, and Shon) reside in "New York, New York," that defendant John Doe, Inc., is located in New York, New York, and that Defendant Schnur resides in New Jersey.  *See id.* ¶¶ 17-20, 23.  It further alleges that Defendant Blue Icarus is located on Madison Avenue, *id.* ¶ 21, and it provides no venue-related information about Defendant John Doe, *id.* ¶ 22.  The Complaint does not allege that any Defendant is found or has an agent in this District.

WL 50873, at *10 (S.D.N.Y. Jan. 9, 2004) ("Courts have uniformly held that damages for personal injuries and emotional distress are not recoverable under RICO"); *Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries"). Plaintiffs allege physical and emotional injuries, personal in nature. *See* Compl. ¶¶ 249-71. None of these is an injury to business or property within the meaning of the RICO statute.

Plaintiff Caldwell alleges that her physical injuries caused her to lose work, *see id.* ¶ 267; the other two Plaintiffs make no similar allegation. That allegation does not convert Caldwell's claim to one for damages to "business or property." Such losses are derivative of physical injuries, and are thus not compensable under RICO. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564 (6th Cir. 2013) (*en banc*) ("[T]hose regional circuits that have construed the phrase 'business or property' have uniformly recognized that the ordinary meaning of the phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom.") (internal quotations and citations omitted); *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) ("An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'") (internal citation omitted); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) ("Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO."); *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 918 (3d Cir. 1991) (medical expenses not recoverable); *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("[T]he phrase 'injured in his business or property' excludes personal injuries, including the pecuniary losses therefrom."); *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir. 1986) (wrongful-death

damages not recoverable); *Le Paw v. BAT Indus. P.L.C.*, No. 96 Civ. 4373, 1997 WL 242132, at

*2 (E.D.N.Y. Mar. 6, 1997).  This type of claimed injury is also too speculative to support a RICO

action.  *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) ("a cause of action

does not accrue under RICO until the amount of damages becomes clear and definite"); *Harbinger*

*Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*, 07-cv-8139, 2008 WL

3925175, at *4, *aff'd*, 347 F. App'x 711 (2d Cir. 2009) ("Plaintiffs lack statutory standing to sue

under RICO, for their damages have yet to become 'clear and definite' and are thus unripe.")

> 2.      The Complaint Does Not Allege That Any Racketeering Act Proximately Caused
> Plaintiffs' Injuries

In a single paragraph (¶ 313), the Complaint identifies the alleged predicate acts that

purportedly constitute a pattern of racketeering activity:

> Defendants engaged in activities which constitute "racketeering activity," including
> **[1]** wire fraud (18 U.S.C. § 1343), **[2]** human trafficking (18 U.S.C. § 1591(a)), **[3]**
> money laundering (18 U.S.C. § 1596(a)), **[4]** transportation for illegal sexual
> activity (18 U.S.C. § 2422), **[5]** obstruction of criminal investigations (18 U.S.C. §
> 1510(a)), and **[6]** tampering with a witness through intimidation (18 U.S.C. §§
> 1512(b) and 1512(d)), within the meaning of 18 U.S.C. § 1961(1).

There are numerous flaws with how these racketeering acts are pleaded, and those flaws, in and of

themselves, constitute a ground for the dismissal of the RICO claims, *see infra* Point I.C.   But

even leaving those flaws aside, the RICO claim is fatally defective because none of the

racketeering activities proximately caused Plaintiffs' alleged injuries.

All of Plaintiffs' alleged injuries were caused by Rubin's alleged physical assaults on

Plaintiffs.  *See* Compl. ¶¶ 249, 259, 266 ("As a result of Rubin's abuse, [Plaintiffs] suffered

significant injuries.").   None of the alleged racketeering acts caused the injuries.   As a

consequence, the RICO claim fails, for a RICO plaintiff must allege that a RICO predicate offense

is the proximate cause of injury, requiring a direct relation between the injury and the predicate

offense.  *See Hemi Grp. LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010); *see also Hecht v. Commerce*

*Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990) (injury must be proximately caused by RICO pattern or acts; defendant is not liable for injury caused by conduct other than that prohibited by RICO); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) ("The RICO statute requires that the pattern or racketeering activity or the individual predicate acts impose a direct injury on plaintiffs"; injury sustained by non-predicate violation or injury incidental to RICO pattern are insufficient), *jdmt. aff'd in part, vacted in part*, 459 F.3d 273 (2d Cir. 2006).

**C.    The Alleged Racketeering Acts Are Defectively Pled And, In Any Event, Do Not Constitute A Pattern Of Racketeering Activity**

1.    The Allegations About The Alleged Racketeering Acts Are Fatally Defective

The Complaints' allegations about the alleged racketeering acts are set forth in paragraph 313 of the Complaint, and above.  They are inadequately pled for the following reasons:

[1]    **Wire fraud (18 U.S.C. § 1343)** requires "money or property as the object of the scheme." *United States v. Zagari*, 111 F.3d 307, 327 (2d Cir. 1997) (internal quotations and alterations omitted).  The Complaint does not allege such an objective.[5]

[2]    **Human trafficking (18 U.S.C. § 1591(a)) –** This statute requires proof that that force, fraud or coercion was used to compel an individual to engage in commercial sex.  Here, it is clear that the Plaintiffs agreed to engage in commercial sex, willingly travelling to New York and signing the Confidentiality Agreement and Releases.  *See* Rose Decl. Exs. 1-3. What the Plaintiffs complain of is that they were subjected, during the three meetings with Rubin, to more force than they anticipated, and that does not constitute a violation of § 1591(a).  Further, the statute is intended to prevent trafficking for commercial gain, which

---

[5]    Nor does the Complaint allege wire fraud with requisite specificity under Rule 9(b).  *See, e.g.* *Aronov v. Mersini*, No. 14-cv-7998, 2015 WL 1780164, at *3-4 (S.D.N.Y. Apr. 20, 2015) (RICO predicate fraud allegations subject to Rule 9(b)'s heightened pleading standard).

the Complaint does not allege, and the injuries Plaintiffs allegedly sustained were proximately caused by the alleged assault and battery, not any violation of § 1591(a).

**[3]**     **Money laundering (18 U.S.C. § 1956(a))** requires a "property involved in a financial transaction [that] represents the proceeds of some form of unlawful activity."   The Complaint alleges only that Blue Icarus purchased a property and rented it to the purported enterprise.  *See* Compl. ¶¶ 35, 43.  It fails to allege the subject property was purchased or rented with any illicit proceeds.

**[4]**     **Transportation for illegal sexual activity (18 U.S.C. § 2422)** prohibits travel to engage in prostitution or sexual activity for which a person can be charged with a criminal offense. Even if the Plaintiffs could establish a violation of this provision, it is not unlawful travel that caused their claimed injuries, but rather the alleged physical assaults.

**[5]**     **Obstruction (18 U.S.C. § 1510(a))** prohibits bribery to obstruct the provision of information to a federal criminal investigator in relation to investigation of a federal criminal violation.  The Complaint makes no reference to a federal investigation or the involvement of a federal investigator, nor does it allege that anyone was bribed to obstruct an investigation.

**[6]**     **Witness tampering (18 U.S.C. §§ 1512(b)(2)(a) and (d)(2))** similarly relate only to conduct in relation to an "official proceeding," which, in relevant part, is defined as a federal proceeding, 18 U.S.C. § 1515(a)(1).  The Complaint fails to allege the existence of any such "official proceeding."

2.     The Complaint Does Not Allege A Pattern Of Racketeering Activity

To state a claim, Plaintiffs must allege a "pattern" of ongoing "racketeering activity" that is "related to the enterprise's activities."  *United States v. Thai*, 29 F.3d 785, 800, 815, 817 (2d Cir. 1994); *see DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).  "'Continuity' is both a closed-

and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct

that by its nature projects into the future with a threat of repetition . . . ."  *H.J. Inc. v. N.W. Bell*

*Tel. Co.*, 492 U.S. 229, 242-43 (1989); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d

229, 242 (2d Cir. 1999).  Plaintiffs fail to meet either requirement.

  *Closed ended* – The Complaint identifies three instances in in which one or more of the

plaintiffs travelled from Florida to New York and were sexually assaulted by Rubin.  *See* Compl.

¶¶ 99-140, 162-90, 207-40.  This is too short a period, involving too few instances, to constitute a

"closed period of repeated conduct."  A closed-ended period of conduct requires activities that are

neither isolated nor sporadic, and that extends for a substantial period of time.  *See Smallwood v.*

*Lupoli*, No. 04-CV-0686, 2007 WL 2713841, at *9 (E.D.N.Y. Sept. 14, 2007), *aff'd*, No. 07 Civ.

4445, 2009 579419 (2d Cir. Mar. 4, 2009).  "Since the Supreme Court decided *H.J., Inc.*, [the

Second Circuit has] has never held a period of less than two years to constitute a 'substantial period

of time.'"  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (internal

quotations and citations omitted).

  Plaintiffs attempt to extend the period by alleging that "Defendants' actions lead all

Plaintiffs to believe that the Enterprise has been in existence for many years, potentially with

members beyond current Defendants."  *See* Compl. ¶ 46; *see also id.* ¶ 273 ("Hallman is aware of

multiple women who have complained about Rubin's abuse and Power[s'] misrepresentations.")

But the Complaint alleges no facts that would support Plaintiffs' belief or Hallman's

"aware[ness]."

  *Open ended* – The alleged acts were completed at the end of each trip, and there is nothing

in the "nature" of the acts that "projects into the future with a threat of repetition."  *Cf. GICC*

*Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463 (2d Cir. 1995) (recognizing that purported

scheme to loot assets was inherently terminable once all assets were looted); *Int'l Bhd. of Teamsters v. Carey*, 297 F. Supp. 2d 706,715-18 (S.D.N.Y. 2004) ("Once the election occurred, the schemes, and their alleged sponsoring enterprise, necessarily came to an end."), *aff'd sub nom.*, *Int'l Bhd. of Teamsters v. Blitz*, 124 F. App'x 41 (2d Cir. 2005).  The physical abuse alleged in the Complaint cannot plausibly have continued once Plaintiffs left Rubin's presence.

The Complaint states (in a heading, at page 40) that "The Enterprise Continues to Engage In Misconduct to this Day, and Is Likely To Continue Unless Stopped By the Court," and it alleges that "Rubin and the Enterprise continue this misconduct to this day," Compl. ¶ 272.  Merely asserting an enterprise is ongoing, without presenting any evidence to support the allegation, fails to establish open ended continuity.  *See Smallwood*, 2007 WL 2713841, at *10 ("Here, plaintiffs assert that the alleged enterprise is currently ongoing; however, plaintiffs present absolutely no evidence to support this allegation.").  Plaintiffs plead no facts to establish that there is any threat of continued racketeering activity beyond the alleged acts occurring from August to December 2016.

### D.    The Complaint Does Not Allege A RICO Enterprise

A plaintiff alleging an association-in-fact enterprise must proffer allegations establishing "solid information regarding the 'hierarchy, organization, and activities' of the alleged enterprise" so the court may "fairly conclude that its members functioned as a unit."  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (quoting *United States v. Coonan*, 938 F.2d 1553, 1560-61 (2d Cir. 1991)).  The enterprise must be "separate from the pattern of racketeering activity" in which it purportedly engages.  *See id.* at 173.  "[A] RICO enterprise that is coterminous with the pattern of racketeering activity in which it engages . . . is not actionable."  *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 327 (E.D.N.Y. 2014) (Cogan, J.).  Any association of individuals existing only for the purpose of conducting the

racketeering activity is not a "'discrete economic association existing separately.'"  *See id.*; *see also Wood v. Incorporated Vill. of Patchogue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004) ("the enterprise must have some sort of existence independent of the commission of the predicate acts") (internal quotations and citation omitted).

The Complaint fails to allege that the enterprise maintains an existence independent from the commission of the RICO predicate acts.  Indeed, it alleges that the enterprise's sole aim was "exploiting women from around the United States . . . [by] luring them across the country to assault them as part of a pattern of criminal sexual misconduct."  *See* Compl. ¶¶ 1-2.[6]  Thus, it does not have an "existence independent of the commission of the predicate acts."

This Court's decision in *Stein* is instructive.  In that case, the Court dismissed a complaint alleging a RICO violation arising out of the efforts of several family members to obtain forced labor from the plaintiff, who was married to one of them.  The Court found that an "association of individuals existing only for the purpose of obtaining forced labor from plaintiff is not a discrete economic association existing separately from the racketeering activity."  *Stein*, 71 F. Supp. 3d at 327 (internal quotations and citations omitted).  So too here:  Plaintiffs' allegations that Defendants formed an association only for the purpose of transporting women to New York to be abused by Rubin do not state a discrete economic association.   Accordingly, the RICO claims warrant dismissal.

---

[6]   Attempting to avoid the obvious defect in their pleading, Plaintiffs allege that the "Enterprise" had a "legitimate objective of . . . pay[ing] and transport[ing] women to New York to serve as companions and entertainment for Rubin and, at times, his associates," as well as the illegitimate objective of "cover[ing] up Rubin's sexual misconduct and criminal abuse of the women, and [serving] as cover for his wide-ranging human trafficking scheme."  *See id.* ¶¶ 49, 51.  But there are no allegations that the association actually ever performed the separate "legitimate objective" of providing companionship and entertainment for Mr. Rubin.

**E.      The Complaint Fails To Allege A RICO Conspiracy**

Because the substantive RICO claims fail, the RICO conspiracy claim (Second Cause of Action) fails too. *See, e.g.*, *Cofacredit*, 187 F.3d at 244-45 (failure to establish substantive RICO violation warranted reversal of RICO conspiracy liability); *Stein*, 71 F. Supp. 3d at 327 ("Plaintiff must adequately allege a substantive RICO violation in order to sufficiently plead a RICO conspiracy claim . . . .").

## POINT II

### THE THIRD CAUSE OF ACTION, FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, MUST BE DISMISSED BECAUSE THERE ARE NO WELL-FOUNDED ALLEGATIONS THAT ANY DEFENDANT HACKED INTO ANY PLAINTIFF'S COMPUTER

The Third Cause of Action alleges that Defendants Powers, Rubin and Doe violated the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a). *See* Compl. ¶¶ 299-304, 325-36. In support of this cause of action, the Complaint alleges that Rubin directed Doe to "access[] Plaintiffs' and Plaintiffs' families Apple, Facebook, and Google accounts, changing the passwords and billing information in an attempt to interfere with evidence saved under Plaintiffs' accounts." *See id.* ¶ 299.  The Complaint does not allege any facts that would support the inference that Powers or Rubin (or any other Defendant) accessed the accounts.  The Complaint merely asserts that the hacking occurred on October 5, 2017 (Hallman's Apple account), October 8, 2017 (Hallman's Apple account and Caldwell's Facebook account), and October 10, 2017 (Hallman's brother's Google account and Hallman's Facebook account), all of which were after "Defendants and Defendants' counsel were contacted regarding this matter and notifying them of the impending lawsuits."  *See id.* ¶¶ 301-02.  The Complaint alleges Plaintiffs were damaged because they incurred "legal fees in excess of $5,000 within a one-year period, in order for Plaintiffs to protect their accounts, information, the attorney-client privilege, and bank and credit card records," *see id.*

¶ 331, and they were "further damaged . . . in that Plaintiffs' financial records and credit card statements have been compromised and Plaintiffs must repair such damages as necessary," *see id.* ¶ 332.

The CFAA (18 U.S.C. § 1030(g)) provides, in relevant part, that one may bring a civil action for damages and injunctive relief against a person or persons who "intentionally accesses a protected computer, without authorization, and as a result of such conduct recklessly causes damage," 18 U.S.C. §§ 1030(a)(5)(B), (c)(4)(A)(i), and thereby causes loss "aggregating at least $5,000 in value" in a one-year period, 18 U.S.C. § 1030(c)(4)(A)(i)(I).  Damages for such a violation "are limited to economic damages."  18 U.S.C. § 1030(g).

The Third Cause of Action must be dismissed for two reasons.  First, there is no venue for the cause of action.  Venue here must be predicated on 28 USC § 1391, which, as noted above, requires "a substantial part of the events or omissions giving rise to the claim" to have occurred in this district, or that a "substantial part of property that is subject of the action is situated" here. The Complaint fails to make any allegations sufficient to establish venue in the Eastern District of New York.  The Complaint asserts simply that Rubin "directed someone" to hack into Apple, Facebook, and Google accounts of Plaintiffs and third parties.  *See* Compl. ¶ 299.  There is no allegation that this hacking was directed or performed from the Eastern District of New York, that any of the involved parties were located in the Eastern District of New York, or that the hacking affected computers or accounts that are situated here.

Second, the cause of action is inadequately pleaded, as there is absolutely no basis to support the Complaint's allegation that Defendants Powers or Rubin hacked into Plaintiffs' Apple, Google, and Facebook accounts.  The Complaint alleges that the hackers in question "obtained financial information and records as well as credit card information."  *See* Compl. ¶ 327.  This

19

type of information is a common target of hackers across the globe, and the Complaint alleges no

facts from which one could reasonably infer that any of the defendants – as distinct from persons

entirely unrelated to this case – hacked Plaintiffs' accounts or caused them to be hacked.  The only

support the Complaint cites for the proposition that it was Defendants who hacked into their

accounts is the fact that the accounts were hacked after Defendants allegedly knew of Plaintiffs'

impending lawsuit.  *See* Compl. ¶ 301.  But the inference *post hoc, ergo propter hoc* is not

sufficient to withstand the pleading requirements.[7]

## POINT III

### THE FOURTH, NINTH, AND FOURTEENTH CAUSES OF ACTION WHICH ALLEGE VIOLATIONS OF THE HUMAN TRAFFICKING LAW, 18 U.S.C. § 1591(a), MUST BE DISMISSED BECAUSE VENUE IS NOT PROPER IN THIS COURT, AND THEY FAIL TO STATE A CLAIM

The Complaint alleges causes of action for violations of the federal human trafficking law,

18 U.S.C. § 1591(a) (Causes of Action 4, 9, and 14, respectively).  That statute makes it a criminal

offense to (a) "recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[],

patronize[], or solicit[]" a person (b) knowing or recklessly disregarding that (c) "means of force,

fraud, [or] coercion," will be used to (d) cause the person to engage in a commercial sex act.  Title

---

[7]       *See Ong v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 141, 2017 WL 933108, at *11 (S.D.N.Y. Mar. 8, 2017) (granting motion to dismiss complaint alleging securities fraud:  "Plaintiffs argue awareness [of a risk] from the mere fact that the later events transpired, but such *post hoc, ergo propter hoc* pleading has been repeatedly rejected by the courts . . . .") (citing authority); *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 133 (S.D.N.Y. 2012) (granting motion to dismiss retaliation claim:  "Plaintiff appears to offer little more than a highly speculative argument that because Columbia's immigration-related action occurred later in time than his first EEOC Complaint, the Court should infer retaliatory motive. This argument does not suffice."), *aff'd*, 556 F. App'x 56 (2d Cir. 2014); *Abbey House Media, Inc. v. Apple Inc.*, No. 14 Civ. 2000, 2016 WL 297720, at *10 (S.D.N.Y. Jan. 22, 2016) ("correlation in time is insufficient to show causation"), *aff'd sub nom.*, *Abbey House Media, Inc. v. Simon & Schuster, Inc.*, 869 F.3d 53 (2d Cir. 2017); *Pelt v. City of New York*, No. 11 Civ. 5633, 2013 WL 4647500, at *5 (E.D.N.Y. Aug. 28, 2013) (argument "relies on the logical fallacy that any injuries suffered after [action] must have been caused by [action].  The Court declines to adopt such *post hoc ergo propter hoc* reasoning"); *Rose v. Goldman*, No. 02 Civ. 5370, 2009 WL 4891810, at *13 (E.D.N.Y. Dec. 9, 2009) (rejecting *post hoc ergo propter hoc* reasoning to demonstrate that adverse action was retaliatory).

18 U.S.C. § 1595(a) provides that a person who is a victim of a violation of § 1591(a) has a private cause of action against "the perpetrator or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which the person knew or should have known has" violated § 1591(a).

As with the other causes of action, venue for these claims is not proper in the Eastern District of New York, and accordingly, they must be dismissed.  Once again, the Complaint's only reference to the Eastern District or any location in it is the statement that "[v]enue is appropriate in the Eastern District of New York as the Plaintiffs were transported into and out of airports located in the Eastern District."  *See* Compl. ¶ 6.  Such "coincidental contacts" with the forum are insufficient to establish venue in the Eastern District.  *See Daniel*, 428 F.3d at 434.

Even if venue were proper, however, these causes of action must be dismissed because the human trafficking law is aimed at those who engage in trafficking and the business of prostitution for commercial gain.  *See United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) ("The TVPA is part of a comprehensive regulatory scheme that criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking *for commercial gain* . . . .") (emphasis added).  The statute is inapplicable here, because there is no allegation that Rubin sought or received commercial gain.

The Complaint premises the § 1595 claims on the bald allegation that Rubin "benefitted, financially or by receiving something of value from participation in" trafficking.  *See* Compl. ¶¶ 340, 370, 399.  But that allegation is belied by the balance of the 63-page Complaint, which does not plead that Rubin was engaged in the business of human trafficking or obtained any commercial gain, which is what the statute is meant to address.  *See Walls*, 784 F.3d at 548; *Bistline v. Jeffs*, No. 2:16-CV-788, 2017 WL 108039, at * 10 (D. Utah Jan. 11, 2017) (dismissing civil lawsuit filed

pursuant to 18 USC § 1595 because the claim requires defendants to have "participated in a venture[,]" with the word "venture" generally meaning "a speculative commercial enterprise.") (internal citations and quotations omitted).

The Complaint also fails to allege, as the statute requires, that "means of force, fraud, [or] coercion" were used to compel Plaintiffs to engage in commercial sex. The Complaint alleges that Plaintiffs willingly travelled to New York to meet with Rubin, and were then asked to, and did, sign Confidentiality and Release Agreements that stated they would be participating in sexual activities with Rubin. *See* Rose Decl. Exs. 1-3. It further alleges that each Plaintiff, following her first encounter with Rubin, returned to meet with him again. The Complaint does not establish that Plaintiffs were forced or tricked into participating in the sex trade; it alleges, rather, that Plaintiffs willingly engaged in the sex trade, but then experienced more force than they anticipated in connection with their sexual relations with Rubin. This is not a sufficient basis to support a human trafficking claim.

## POINT IV

## THE STATE LAW CAUSES OF ACTION ARE ALL BASED ON ACTS IN MANHATTAN, SO VENUE DOES NOT LIE IN THIS DISTRICT; AND THE COMPLAINT ITSELF ESTABLISHES CONSENT

The Complaint alleges state law causes of action for assault (Causes of Action 5, 10, and 15), battery (6, 11, 16), false imprisonment (7, 12, 17), and intentional infliction of emotional harm (8, 13, 18). The Complaint further alleges that the Defendants' actions giving rise to the claims took place in Manhattan. *See* Compl. ¶¶ 12, 112, 118, 170, 172, 230. The Complaint alleges that the actions that led to these causes of action took place on or about August 23, 2016 (Hallman & Lawson), September 24, 2016 (Hallman, Lawson & Caldwell), and late December 2016 (Lawson). *See id.* ¶¶ 227, 344, 350, 353, 357, 362, 374, 380, 383, 387, 391, 403, 409, 414, 418.

**A.**     <u>**There Is No Venue In This District For The State Law Causes Of Action**</u>

The state law claims must be dismissed because, once again, venue for these pendent claims is not proper in the Eastern District of New York.  The state law causes of action are governed by the general venue statute, 28 U.S.C. § 1391.  *See Jaquith v. Newhard*, No. 91 Civ. 7503, 1993 WL 127212, at *19 (S.D.N.Y. Apr. 20, 1999) (state law claims based on diversity governed by 28 U.S.C. § 1391).  For the reasons set forth above, venue does not lie in the Eastern District of New York.

**B.**     <u>**The Complaint Makes Clear That Plaintiffs Consented To The Conduct At Issue In The State Law Causes Of Action, And Therefore, They Fail To State A Claim**</u>

To survive dismissal, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*, 550 U.S. at 570.  "Plausibility . . . depends on a host of considerations:  the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

Consent is a defense to intentional torts, such as assault, battery, false imprisonment and the intentional infliction of emotional distress.  *See* Restatement (Second) of Torts § 892A (1979); *Coopersmith v. Gold*, 172 A.D.2d 982, 984 (3d Dep't 1991) (consent to sexual intercourse established failure to state a claim for battery); *Davidson v. City of N.Y.*, 65 N.Y.S.3d 520, 521 (1st Dep't 2017) (consent barred claim of false arrest); *see also Padwa v. Hadley*, 981 P.2d 1234, 1239 (N.M. Ct. App. 1999) (dismissing claim for intentional infliction of emotional distress:  "As a general rule, engaging in consensual sexual relations . . . does not rise to the level of extreme and outrageous conduct that justifies an action in tort.").  The Complaint establishes that Plaintiffs knowingly and willingly came to New York to engage in the conduct of which they now complain

in their state law claims.  Plaintiffs' consent is inferable from the fact that they each returned to meet Rubin even after their initial meetings with him.   Thus:

- **Caldwell** chose to meet with Rubin after having been fully informed as to exactly what to expect.  *See* Compl. ¶ 146.  And even though in Caldwell's first meeting with Rubin he allegedly slapped her, *see id.* ¶ 147, Caldwell still chose to return to meet with Rubin again on September 24, 2016, *see id.* ¶¶ 162, 403, 409, 414.

- **Hallman**, after travelling to New York and experiencing purported abuse in August 2016, nevertheless chose to board a flight and come back to New York to meet with Rubin, not once, but twice more.  *See id.* ¶¶ 99, 118-32, 162, 207.

- **Lawson** travelled to New York in August 2016, where she was purportedly abused alongside Hallman.  *See id.* ¶¶ 99, 118-32.  She too chose to meet Rubin again in December 2016.  *See id.* ¶ 228.

Moreover, as stated above, each Plaintiff signed a Confidentiality Agreement and Release stating that they "voluntarily agreed to engage in sexual activity with (Rubin) including sadomasochistic (SM) activity that can be hazardous and on occasion cause injury to my person . . . ."  *See* Rose Decl. Exs. 1-3.  It is impossible to conclude that Plaintiffs did not knowingly and willingly come to New York to engage in the conduct underlying their state law claims.

<u>**Conclusion**</u>

For the reasons set forth above, as well as the reasons set forth in the memoranda in support of the motions to dismiss of the other Defendants, which Rubin adopts to the extent applicable to him, the Complaint should be dismissed, with prejudice, in its entirety.

Date:   February 9, 2018                 Respectfully submitted,
        New York, NY

                                         /s/ Edward A. McDonald
                                         Edward A. McDonald
                                         Benjamin E. Rosenberg
                                         Michael J. Gilbert
                                         Benjamin M. Rose

                                         Dechert LLP
                                         1095 Avenue of the Americas
                                         New York, NY 10036
                                         Phone: (212) 698-3672
                                         Fax: (212) 698-3599

                                         *Attorneys for Howard Rubin*