**Duane Morris, LLP**
**A DELAWARE LIMITED LIABILITY PARTNERSHIP**

Eric R. Breslin
Melissa S. Geller
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102-5429
Tel.: (973) 424 2000
Fax: (973) 424 2001
erbreslin@duanemorris.com
msgeller@duanemorris.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HILLARY LAWSON, KRISTINA HALLMAN, AND STEPHANIE CALDWELL, | : : : |
| Plaintiffs, | : : |
| v. | : CIVIL ACTION NO. : 1:17-cv-06404 (BMC) |
| HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC, and the DOE COMPANY, | : : : |
| Defendants. | : : |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF YIFAT SCHNUR'S**
**MOTION TO DISMISS THE COMPLAINT**

Yifat Schnur submits this supplemental memorandum of law in support of her motion to

dismiss the Complaint against her in accordance with the Court's order of February 21, 2018.

Ms. Schnur incorporates all arguments from her motion to dismiss and supporting documents,

filed on February 8, 2018 (ECF No. 59).

On February 20, 2018, Plaintiffs filed an Amended Complaint (the "Amended Complaint") and an Amended RICO Statement.  As concerns Ms. Schnur, Plaintiffs' Amended Complaint and Amended RICO Statement offer little in the way of substantive differences from their first set of pleadings.

**The First Cause of Action: RICO**:  Plaintiffs' amendments focus on the predicate acts. First, Plaintiffs have abandoned their groundless allegations that Ms. Schnur obstructed justice by interfering with a criminal investigation (18 U.S.C. § 1510).  *See* Amended Compl., ¶ 549. Second, Plaintiffs have attempted to clarify the basis for their allegation of witness tampering (18 U.S.C. §. 1512) by asserting that Ms. Schnur tampered with witnesses by drafting a "stock" nondisclosure agreement, that she drafted a general release form allegedly provided to one of the Plaintiffs, and that she was considered as potential replacement counsel in Ms. Caldwell's criminal matter.  *See id.*  Finally, Plaintiffs allege for the first time that Ms. Schnur committed three violations of the Trafficking Victims Protection Reauthorization Act (18 U.S.C. § 1591)[1] by knowingly receiving remuneration from a venture that she knew or should have known had violated the TVRPA.

**The Second Cause of Action: RICO Conspiracy**:  Plaintiffs have not added new allegations with regard to Ms. Schnur's alleged involvement in a RICO conspiracy.  However, we note that both the original and the Amended Complaint confine the conspiracy allegations to

---

[1] Although Plaintiffs refer to the Trafficking Victims Protection Act throughout the Amended Complaint, their cause of action is actually in the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA").  The TVPA, passed in 2000, is located at Title 22, Chapter 78, and does not provide a private right of action.  *See* 22 U.S.C. § 7101, *et seq.* (the TVPA).  It was the passage of the TVPRA in 2003, and amended in 2008 that provided a private cause of action for violations of human trafficking laws.  *See Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012) (describing the history of the private right of action under the TVPA and TVPRA); 15 U.S.C §1595 (providing for a private right of action).

DM1\8498375.12

February 2017 to the present, and do not extend the conspiracy allegations to cover all wrongful

conduct alleged.  *See* Amended Compl., ¶ 567.

**The Third Cause of Action: Violations of the Human Trafficking Laws**:  Plaintiffs

have added one cause of action, a claim for damages under the TVPRA, 18 U

The inclusion of these new, but still untenable claims change nothing.   No credible

allegations are made that Ms. Schnur had any knowledge of any of the alleged activity by the so-

called "Enterprise."  Rather, the amendments are just more of the same conclusory, contradictory

and unsupported hyperbole that so marked Plaintiffs' original Complaint.  *See, e.g.,* Amended

Compl., ¶ 45 (alleging that Ms. Schnur provided "NDAs" knowing they would be used to "cover

up [the Enterprise's] conspiracy); ¶ 61 (alleging, without factual support, that Ms. Schnur

"participated in the direction or conduct of the affairs of the Enterprise by serving as an advisor

to the Enterprise, counseling the Enterprise how to best cover up its crimes for the express

purpose of hindering or delaying Plaintiffs and other victims"); ¶ 515 (alleging "Schnur agreed to

represent Hallman, despite obvious conflicts of interest, and violations of her duties as an

attorney"); *see also* Amended RICO Statement, p. 4 (alleging, with no factual support, that

Rubin "directed Schnur to threaten and coerce the victims into remaining quiet following the

incidents); *id.*, p. 51 (alleging that Schnur drafted documents for victims to sign after they were

allegedly assaulted by Mr. Rubin).    While the above allegations are pled, there are zero facts of

any kind which support them.

Plaintiffs still do not allege that Ms. Schnur ever had any contact, of any kind, with any

of the Plaintiffs (either the original three or the four additional).  This glaring absence now

renders some of their new allegations knowingly and affirmatively false.  *See, e.g.,* Amended

RICO Statement, p. 47 (alleging, despite knowledge to the contrary, that Ms. Schnur "issued

3

threats when necessary to avoid exposure of the Enterprise"); *id.*, p. 48 (alleging that Schnur threatened legal action against the Plaintiffs if they were to disclose the activities of the Enterprise, despite knowing that Ms. Schnur had no contact with Plaintiffs); *id.*, p. 46 (alleging, without any factual support, that "Schnur has also attempted to convince victims to sign agreements after they have been assaulted by Rubin to keep them quiet"); *id.* p. 55 (alleging, despite knowledge to the contrary, that Ms. Schnur made victims sign Confidentiality Agreements).  How were these things to have happened given the absence of any conduct?  How could any of these allegations ever be possible given the complete absence of any averment that Ms. Schnur ever met, spoke to, corresponded with or interacted with any of the Plaintiffs?  This central question—cited to in our first brief-- remains a complete and utter mystery.

For these new, but still conclusory allegations, Ms. Schnur relies upon the *Twombly /Iqbal* arguments from her opening Memorandum of Law, and incorporates those arguments here by reference.  *See* Schnur Memorandum of Law in Support, pp. 5-8.

I.     **Plaintiffs Fail to Allege that Ms. Schnur Ever Tampered With Witnesses.**

The Amended Complaint attempts to offer allegations that are slightly more specific as to the RICO predicate allegedly done by Ms. Schnur.  While more specific, they are still legally inadequate, conclusory, and without factual support.  First, Plaintiffs allege that Ms. Schnur tampered with witnesses by drafting a "stock non-disclosure agreement" sometime in or around 2015.  Amended Compl., ¶ 549(a).   Second, Plaintiffs allege that Ms. Schnur tampered with witnesses by drafting a general release of liability with regard to alleged payments to Ms. Caldwell in connection with a physical injury.  *Id.*, ¶ 549(c).  Finally, Plaintiffs allege that Ms. Schnur tampered with a witness by "attempting to persuade Plaintiff Hallman to hire Schnur to represent her in a criminal action. . .when Hallman was already represented by defense

counsel."[2]   Amended Compl., ¶ 549(e).

The amended witness tampering allegations, while slightly more defined, do not differ to any significant degree from the initial Complaint.  Ms. Schnur incorporates the argument from her initial Memorandum of Law.  *See* Schnur Memorandum of Law in Support. p. 10

It is worth noting that Plaintiffs concede that the Confidentiality Agreement and Releases (the "Confidentiality Agreement"; referred to by Plaintiffs as "NDAs") are "stock" documents, supposedly drafted once in or about 2015, and then copied.  *See, e.g.*, Amended Compl., ¶ 549(a), (b); ¶¶ 445-46 (alleging that Ms. Hallman watched Mr. Rubin remove money and documents, which she later learned to be a copy of a Confidentiality Agreement, from a safe in a room in the Penthouse).  At best, therefore, the Amended Complaint identifies three discrete "witness tampering" activities alleged to have been undertaken by Ms. Schnur from 2015 to 2017: (1) drafting of the Confidentiality Agreements, (2) drafting a general release of liability, and (3) agreeing to meet with a potential client in a criminal case.[3]

None of these actions, in and of themselves, constitute anything illegal.  For Plaintiffs to prevail, a criminal gloss would have to be applied to perfectly legitimate, even routine legal work.  There is nothing unusual about speaking with an attorney about a case.  Even if Ms. Schnur might have suspected that legal work product was being misused (and no allegation supports that she ever did), none of her actions constitute the "use or attempted use of

---

[2] The Amended Complaint makes clear that Ms. Hallman's first criminal defense attorney, Jeremy Saland, Esq. was also paid for by Mr. Rubin.  Amended Compl., ¶ 520.

[3] Plaintiffs still fail to explain why there would have been any conflict of interest on the part of Ms. Schnur, even if this representation had come to pass.  Mr. Rubin was not an adverse party in the criminal action, nor were his legal rights and interests implicated by the criminal action.  There was no legal impediment to Ms. Schnur taking on the representation of Ms. Hallman.  Had Ms. Schnur done so, and then acted to protect Mr. Rubin's interests at the expense of her client, then that might arguably have had ethical implications.  *See* R.P.C. 1.7, 1.18. But that is not alleged here.  Further, by Plaintiffs' own admission, Ms. Schnur refused to speak with Ms. Hallman without permission by Mr. Saland, further undermining any allegation of unethical conduct.  *See* Compl., ¶ 522.

intimidation, physical force, threat, or misleading conduct toward another person." *United States v. King*, 762 F.2d 232, 237 (2d Cir. 1985) (internal quotations omitted) (noting that "§ 1512 does not purport to reach all forms of "tampering with" a witness, but only tampering by specified means). Because of this, and because there was no relevant contemplated judicial proceeding, Ms. Schnur did not tamper with any witnesses. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 707-08 (2005) (holding that the intent requirement of § 1512 necessitates a showing that a proceeding is contemplated or foreseen).

## II.     Plaintiffs Fail to Allege Violations of the TVPRA.

Plaintiffs further allege three violations of the TVPRA as predicate RICO acts under the First Cause of Action, and for damages under the substantive statute in the Third Cause of Action. Plaintiffs that Ms. Schnur accepted remuneration for legal work done for the Enterprise, with knowledge that the Enterprise had committed violations of the TVPRA. For Plaintiffs to prevail, they must establish that Ms. Schnur acted with knowledge of the alleged sex trafficking scheme when she received payment. *See Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 328 (E.D.N.Y. 2014) (Cogan, D.J.). As in this Court's decision in *Stein*, "there are nothing but conclusory allegations to suggest that [Ms. Schnur] knew of the scheme" to force women to engage in commercial sex acts. *Id.*

Even if Plaintiffs could establish that Ms. Schnur drafted the Confidentiality Agreement, drafted the general release, and agreed to represent Ms. Hallman, none of these facts impute to Ms. Schnur knowledge of any illegal conduct by the alleged Enterprise. Two consenting adults can agree to engage in BDSM activities and people can rely on confidentiality agreements to protect their privacy. The same is true for a general release of liability, which common civilians lawfully enter into every day. Further it is not unusual for a criminal defense attorney to consider representing a client, even when that client is represented by another lawyer.

6

Ms. Schnur cannot be held liable under 18 U.S.C. § 1591.  Thus, the First Cause of Action should be dismissed because Plaintiffs have failed to identify any RICO predicate act, and the Third Cause of Action should be dismissed for failure to state a claim.

**III.    Plaintiffs Fail to State a RICO Conspiracy in the Second Cause of Action**

As argued in our opening brief, Plaintiffs have failed to state a substantive RICO violation, and therefore cannot state a RICO conspiracy.  *Stein*, 71 F. Supp. 3d at 327.  Aside for hurling salacious conclusory falsehoods about conduct by Ms. Schnur that never occurred, Plaintiffs' Amended Complaint adds little in the way of relevant substance.

Additionally, in the Second Cause of Action, Plaintiffs allege a RICO conspiracy dating from February 2017 to the present.  These allegations must therefore relate only to Ms. Schnur's alleged legal representation of Ms. Hallman, as all other allegations against her pre-date 2017. Plaintiffs cannot allege that Ms. Schnur participated in a RICO conspiracy based on the sole fact that she may have agreed to speak with a potential client's current legal counsel.

The Amended Complaint and Amended RICO Statement adds no relevant substance, and adds nothing to support of the allegations against Ms. Schnur.  The Amended Complaint and Amended RICO Statement are just as defective as the originals, if not more so because Plaintiffs filed it after the motions to dismiss, and after Plaintiffs had additional time for investigation and reflection.  For all the reasons stated in Ms. Schnur's opening memorandum of law, and for all the reasons stated here, Ms. Schnur respectfully requests that the Court dismiss the Amended Complaint against her.

DM1\8498375.12

Dated:  March 6, 2018
        Newark, New Jersey

By:    /s/ Eric R. Breslin                 .
       Eric R. Breslin
       Melissa S. Geller
       **DUANE MORRIS** LLP
       **A Delaware Limited Liability Partnership**
       One Riverfront Plaza
       1037 Raymond Blvd., Suite 1800
       Newark, NJ 07102-5429
       Telephone: +1 973 424 2000
       Fax: +1 973 424 2001
       *Attorneys for Yifat Schnur*