UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON and LAUREN FULLER,

*Plaintiffs*,

-*against*-

HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC, and the DOE COMPANY,

*Defendants*.

Case No.: 1:17-CV-06404 (BMC)

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OF DEFENDANT HOWARD RUBIN**

Howard Rubin respectfully submits this memorandum of law pursuant to the Court's order of February 21, 2018 (ECF Doc. 67) to supplement his motion to dismiss. In his original Memorandum of Law in Support of Motion to Dismiss (ECF Doc. 61-1, the "Opening Brief"), Rubin demonstrated that the Complaint was riven with fatal defects. The Amended Complaint does nothing to remedy the defects as they relate to the original Plaintiffs. Those same deficiencies plague the claims asserted on behalf of the newly added Plaintiffs. In fact the claims of the new Plaintiffs are even more glaringly infirm: three of the four newly added Plaintiffs allege that they had long-term and involved relationships with Rubin, undermining their contention that they were forced, coerced or deceived into participating in the conduct they allege caused them injury. Without rehashing all of the arguments in the Opening Brief – which apply with equal force to the Amended Complaint – we review below the fundamental problems that lead inexorably to the conclusion that this case must be dismissed.

*RICO* – In his Opening Brief, Rubin demonstrated that there was no venue in the Eastern District of New York for the RICO claims (the First and Second Causes of Action in both the original Complaint and the Amended Complaint) because no Defendant "resides, is found, has an agent, or transacts his affairs" in the Eastern District, and the original Plaintiffs did not allege that a "substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District. *See* 18 U.S.C. § 1965(a); 28 U.S.C. § 1391(b)(2); Opening Br. at 8-10.

The Amended Complaint cures neither defect. With regard to venue, paragraph 6 of the Amended Complaint asserts as the sole basis for venue that "Plaintiffs were transported into and out of airports located in the Eastern District." For the reasons explained in Rubin's Opening Brief, this does not satisfy the legal requirements.

The Amended Complaint sets forth the Plaintiffs' alleged injuries in greater detail than did the original Complaint, but, like the original Complaint, the Amended Complaint alleges Plaintiffs sustained physical injuries or losses derivative to physical injury, not injury to their "business or property," as RICO requires. As in the original Complaint, the Amended Complaint does not establish that the claimed injuries were proximately caused by the racketeering acts: all of the injuries were caused by the alleged assault and battery, state law claims that are not RICO predicates. *See* Am. Compl. ¶¶ 164-68, 226-31, 257-61, 294-301, 470-78, 487-505. These flaws were fatal to the original Complaint and similarly doom the Amended Complaint. *See* Opening Br. at 10-12.

The only difference in this regard between the original Complaint and the Amended Complaint is that the Amended Complaint newly alleges that Rubin provided some of the Plaintiffs with a controlled substance (oxycodone or cocaine) in violation of 21 U.S.C. § 812. *See* Am. Compl. ¶¶ 543 f (Hathaway, an "unidentified narcotic"), g (same), j (Peterson, oxycodone), k (same), l (same), p (Fuller, cocaine), x (Fuller, oxycodone), aa (Hallman, oxycodone), ee (Lawson, oxycodone). This does not change the fact that the alleged injuries are physical or emotional, not direct, tangible and concrete financial losses to "business or property," and that they are the result of alleged assault and battery, not narcotics distribution. *Cf. Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 886-88 (10th Cir. 2017) (plaintiff adequately stated RICO injury from alleged odorous nuisance and diminished property value *directly* caused by controlled-substance racketeering activity at adjacent marijuana grow facility).

*18 U.S.C. § 1591(a)* – The Amended Complaint's cause of action arising from the sex trafficking statute (the Third Cause of Action in the Amended Complaint) fails for the same reasons that the parallel causes of action asserted in the original Complaint (the Fourth, Ninth and

Fourteenth Causes of Action in the original Complaint) failed: (1) there is no venue; (2) there is no allegation that Rubin benefitted financially from the allegedly wrongful activities; and (3) there is no allegation that Rubin caused any Plaintiff to travel in interstate commerce knowing that force, fraud or coercion would be used to compel them to engage in commercial sex – rather, as the Amended Complaint repeatedly alleges, each of the Plaintiffs willingly engaged in commercial sex; indeed the Amended Complaint alleges that was the express purpose for which they came to New York on multiple occasions: to engage in sexual conduct with Rubin in exchange for money. *See* Am. Compl. ¶¶ 95, 104, 106, 110, 114, 121-22, 170, 173, 204, 253, 281, 305-06, 311-12, 341, 373-75, 385, 390, 413, 419, 436, 456, 467, 543 a-b, d-e, h-i, n-o, r, t-w, y-z, cc-dd, gg-hh, jj-kk, nn.

*18 U.S.C. § 1030(a)* – The Amended Complaint's allegations as to the Computer Fraud and Abuse Act ("CFAA") are, once again, in the wrong venue: there is simply no connection between those allegations and the Eastern District.

Moreover, there is no connection between Rubin (or any of the Defendants) and the alleged hacking that was purportedly suffered by some of the Plaintiffs and their family members. The Amended Complaint acknowledges that the Plaintiffs' accounts were not secret, but were "easily determined by plugging in variations of Plaintiffs' true names," Am. Compl. ¶ 539, so Rubin had no special access to, or knowledge of, the accounts. The Amended Complaint notes (¶ 538) that one account was improperly accessed from "North Tonawanda, New York," as if that points to one of the Defendants; but it actually suggests the opposite. None of the Defendants is alleged to have any connection to North Tonawanda, which is near Buffalo, New York, approximately 400 miles from New York City.

3

The Amended Complaint also alleges that it is fair to infer that Defendants Powers, Rubin and Doe hacked into the accounts because the hacks occurred "during a time period in which Defendants knew litigation was impending." Am. Compl. ¶ 585; *see also id.* ¶ 537. As Rubin demonstrated in his Opening Brief, the allegation that hacking occurred when litigation was "impending" is plainly insufficient to support this cause of action. There is simply no allegation connecting Rubin to hacking. Moreover, the Amended Complaint does not allege any facts that would establish that Rubin knew or had reason to know Plaintiffs Peterson and Fuller were contemplating litigation against Rubin at the time their accounts were allegedly hacked on December 16, 2017 and February 8, 2018, months or weeks before Rubin could have known of their involvement in this litigation.

Given that there is no allegation any of the Defendants had ever engaged in hacking before, it is purely speculative that they were responsible for any hacking of Plaintiffs' accounts. The Plaintiffs' claims must be more than conceivable, they must be plausible. *See Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007); *Citizens United v. Schneiderman*, No. 16-3310, 2018 WL 891276, at *3 (2d Cir. Feb. 15, 2018) (citing *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013)). Indeed, a plaintiff cannot allege "sheer possibility, otherwise known as conjecture," to state a claim under the CFAA – those are "precisely the sort of speculative, 'naked assertions' that do not suffice to survive a motion to dismiss." *See JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 525-26 (S.D.N.Y. 2013) (plaintiffs' belief of possibility that defendants hacked, even where spyware and malware were alleged to have been found, was "not enough to state a claim").

4

The Amended Complaint still "stop[s] short of the line between possibility and plausibility." *Id.* at 526 (internal quotations and alterations omitted).[1]

*State law causes of action* – Plaintiffs allege the same state law causes of action – assault, battery, false imprisonment, and intentional infliction of emotional distress – as were asserted in the original Complaint. They fail for the same reasons that the original ones did.

First, if there were any such cognizable causes of action, they arose in the Southern District, not the Eastern District. All of the allegedly tortious activity occurred in Manhattan.

Second, the new allegations in the Amended Complaint make clear and unambiguous that each of the Plaintiffs consented to the conduct about which they now complain. The Amended Complaint alleges that six of them had rough sex with Rubin repeatedly, even after they were allegedly assaulted by him, in exchange for money:

- **Caldwell** chose to meet with Rubin after having been fully informed as to exactly what to expect. *See* Am. Compl. ¶¶ 374-75. And even though in Caldwell's first meeting with Rubin he allegedly slapped her, *see id.* ¶ 384, Caldwell still chose to return to meet with Rubin again on September 24, 2016, *see id.* ¶ 390.

- **Hallman**, after travelling to New York and experiencing purported abuse in August 2016, nevertheless chose to board a flight and come back to New York to meet with Rubin, not once, but twice more. *See id.* ¶¶ 388-90, 436.

- **Hathaway** travelled to New York to have consensual sex with Rubin for money from "late 2009 or early 2010" through June 2017, *see id.* ¶¶ 94, 121, 127-28, 131-34, 136-40, 142, 144, 155, and, on at least one occasion, bought $800 worth of sex toys, for the couple's

---

[1] The Amended Complaint tries to skate by, "[o]n information and belief," Am. Compl. ¶ 536, but "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United*, 2018 WL 891276, at *6.

5

use, *see id.* ¶ 112. Moreover, the Amended Complaint in paragraphs 162-63 specifically references text exchanges between Rubin and Hathaway following what the Amended Complaint describes as Hathaway's last encounter with Rubin. Given these references, the text exchanges should be deemed incorporated in the Amended Complaint[2] and we have provided the Court, in the Declaration of Benjamin M. Rose in Support of Supplemental Memorandum of Law in Support of Motion to Dismiss of Howard Rubin ("Supp. Rose Decl."), a complete set of the text messages in our possession which reflect communication between Rubin and Hathaway during this period. As the Court will readily see, these exchanges reveal in no uncertain terms that *Hathaway repeatedly requested to see Rubin* following the June meeting and *specifically requested to engage in rough sex with him*. In addition, the exchanges show that, contrary to the description in paragraph 163, it was Hathaway, not Rubin, who initiated the exchange "on or around October 31." *See* Supp. Rose Decl. Ex. 1.

- **Lawson** travelled to New York in August 2016, where she was purportedly abused alongside Hallman. *See* Am. Compl. ¶¶ 326, 345-59. She too chose to meet Rubin again in December 2016. *See id.* ¶¶ 456-57.

---

[2] *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d Cir. 2010) ("Because DiFolco referred in her complaint to her e-mails . . . the District Court could deem them incorporated in the complaint and therefore subject to consideration in its review of the adequacy of the complaint."); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) ("the parties' text messages … fall[] within the recognized categories of documents that the Court may consider on a Rule 12(b)(6) motion. In this regard, [the plaintiff] quoted various portions of these text messages in the amended complaint. The alleged contents of these messages also form the basis of the Plaintiff's claims . . . the Court finds it reasonable to conclude that they are both incorporated by reference in and integral to the amended complaint."); *Jones v. Halstead Mgmt. Co.*, 81 F. Supp. 3d 324, 331-32 (S.D.N.Y. 2015) ("When the document reflects a factual issue (such as an email correspondence) and the complaint specifically refers to the contents of the email communication, the Court can deem the e-mail incorporated in the complaint and therefore subject to consideration in its review of the adequacy of the allegations in the complaint.") (internal citations and quotation marks omitted); *White v. City of New York*, 206 F. Supp. 3d 920, 929 (S.D.N.Y. 2016) (same).

6

- **Peterson** met Rubin in 2011, although it appears that they did not have any sexual relations at that time. Some years later, Peterson "reach[ed] out to Rubin to give him another chance." *Id.* ¶ 184. They communicated by email, and "Rubin stated that Peterson would be beaten and bound and would be black and blue." *Id.* ¶ 186. Peterson then engaged in a consensual relationship with Rubin in which he saw her monthly "for a span of a few months." *Id.* ¶ 206.

- **Speight** made monthly trips to New York to have consensual sex with Rubin from May through September 2016. *Id.* ¶¶ 281, 293.

- Only **Fuller** had a single encounter with Rubin, but that encounter was not instigated by Rubin and ceased when Fuller protested. According to the Amended Complaint, in March 2016, Fuller was "contacted by one of her girlfriends, who invited her to come . . . to New York to meet her friend, Rubin." *Id.* ¶ 232. She alleges that she, her friend, and Rubin had sex together, and that while Rubin initially ignored her invocation of their agreed-upon "safe word," when she continued to protest he ceased having sex with her. *Id.* ¶¶ 246-47.

Each Plaintiff – including the newly added Plaintiffs – signed a Confidentiality Agreement and Release stating that they ". . . voluntarily agreed to engage in sexual activity with (Rubin) including sadomasochistic (SM) activity that can be hazardous and on occasion cause injury to my person . . . ." *See* Rose Decl. Exs. 1-3; Supp. Rose Decl. Exs. 2-5. There is no allegation that any Plaintiff was forced to sign the Release or was provided with incorrect information about the Release.

In light of the allegations in the Amended Complaint, it is implausible to conclude that Plaintiffs did not knowingly and willingly come to New York to engage in sadomasochistic sexual activity with Rubin.

## **Conclusion**

For the reasons set forth in Rubin's Opening Brief and above, as well as the reasons set forth in the memoranda and supplemental memoranda in support of the other Defendants' motions to dismiss, which Rubin adopts to the extent applicable to him, the Amended Complaint should be dismissed, with prejudice, in its entirety.

Date:  March 6, 2018  
       New York, NY

Respectfully submitted,

/s/ Edward A. McDonald  
Edward A. McDonald  
Benjamin E. Rosenberg  
Michael J. Gilbert  
Benjamin M. Rose

Dechert LLP  
1095 Avenue of the Americas  
New York, NY 10036  
Phone: (212) 698-3672  
Fax: (212) 698-3599

*Attorneys for Howard Rubin*