John G. Balestriere
Jillian L. McNeil
Brian L. Grossman
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:   (212) 374-5401
Facsimile:   (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON,** and **LAUREN FULLER,**<br><br>　　　　　　　　　　　Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC,** and the **DOE COMPANY.**<br><br>　　　　　　　　　　　Defendants. | Case No.: 1:17-cv-06404 (BMC)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT YIFAT SCHNUR'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT .....................................................................................................1

STATEMENT OF FACTS ..............................................................................................................3

LEGAL STANDARD .....................................................................................................................5

ARGUMENT ...................................................................................................................................5

   I.   VENUE IS PROPER IN THE EASTERN DISTRICT OF NEW YORK ...............................5

   II.   PLAINTIFFS ADEQUATELY PLEAD THAT SCHNUR WAS AN ACTIVE PARTICIPANT IN THE RICO ENTERPRISE, SUCH THAT THE COURT SHOULD NOT DISMISS PLAINTIFFS' 18 U.S.C. § 1962(c) CLAIM AGAINST SCHNUR.............10

      A.  Plaintiffs Adequately Plead an Association-in-Fact Enterprise Between Rubin, Powers, Shon, Schnur, Blue Icarus, the Doe Company, and John Doe. ..........................................10

      B.  Plaintiffs Adequately Plead a Pattern of Racketeering, Lasting for a Period of at Least Six Years and Continuing Today .......................................................................................10

      C.  Plaintiffs Plead That Schnur Engaged In at Least Six RICO Predicate Acts, Including Violations of 18 U.S.C. § 1512 (witness tampering) and 18 U.S.C. § 1591 (sex trafficking by force, fraud, or coercion) .............................................................................11

      D.  Schnur, Who Was Not Simply Rubin's Lawyer, but an Active Member of the Enterprise, Participated in the Affairs of the Enterprise and is Liable Under RICO ........11

      E.  Plaintiffs Properly Plead Damages Which are Compensable Under RICO ......................12

   III.  PLAINTIFFS ADEQUATELY PLEAD THAT SCHNUR KNOWINGLY JOINED A RICO CONSPIRACY UNDER SECTION 1962(D) ............................................................12

   IV.  SCHNUR DOES NOT CONTEST PLAINTIFFS' ADEQUATELY PLEAD THEIR TVPA CLAIM AGAINST SCHNUR .....................................................................................13

CONCLUSION ..............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Arabi v. Javaherian*,
　No. 13 Civ. 456 (ERK) (CLP), 2014 WL 3892098 (E.D.N.Y. May 1, 2014) ............................ 7

*Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*,
　584 F. Supp. 36 (S.D.N.Y. Aug. 11, 1983) ................................................................................ 8

*City of New York v. Cyco.Net, Inc.*,
　383 F. Supp. 2d 526 (S.D.N.Y. 2005) .................................................................................... 6, 7

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
　801 F.Supp. 2d 64 (E.D.N.Y. 2011) ........................................................................................ 12

*CutCo Indus. v. Naughton*,
　806 F.2d 631 (2d Cir. 1986) ...................................................................................................... 7

*Dandong Old North-East Agriculture & Animal Husbandry Co. v. Hu*,
　No. 15 Civ. 10015 (KPF), 2017 WL 3328239 (S.D.N.Y. Aug. 3, 2017) .................................. 7

*DeFalco v. Bernas*,
　244 F.3d 286 (2d Cir. 2001) .................................................................................................... 11

*Doe v. New York*,
　No. 10 CV 1792 RJD VVP, 2012 WL 4503409 (E.D.N.Y. Sept. 28, 2012) ............................. 8

*Equinox Gallery Ltd. v. Dorfman*,
　No. 17 CIV. 230 (GBD), 2018 WL 745707 (S.D.N.Y. Jan. 25, 2018) .................................... 10

*Ferri v. Berkowitz*,
　678 F. Supp. 2d 66 (E.D.N.Y. 2009) ....................................................................................... 12

*Gates v. Wilkinson*,
　No. 01 Civ. 3145 (GBD), 2003 WL 21297296 (S.D.N.Y. June 4, 2003) ................................. 8

*Gulf Ins. v. Glasbrenner*,
　417 F.2d 353, 357 (2d Cir. 2005) .............................................................................................. 6

*Gulf Ins. v. Glasbrenner*,
　417 F.3d 353 (2d Cir. 2005) ...................................................................................................... 8

*Henry Avocado Corp. v. Z.J.D. Brother, LLC*,
　No. 17-CV-4559 (ARR), 2017 WL 6501864 (E.D.N.Y. Dec. 19, 2017) ................................ 13

*JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*,
  No. 06 CIV. 6095 (JGK), 2007 WL 1159637 (S.D.N.Y. Apr. 18, 2007) ................................. 12

*McGowan v. Smith*,
  52 N.Y.2d 268 (N.Y. 1981) ........................................................................................................ 7

*Minnette v. Time Warner*,
  997 F.2d 1023 (2d Cir. 1993) .................................................................................................... 9

*Pincione v. D'Alfonso*,
  No. 10 Civ. 3618 (PAC), 2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011) ................................. 7

*Quirk v. Gilsenan*,
  No. 94 Civ. 3446 (JSM), 1994 WL 537137 (S.D.N.Y. Oct. 3, 1994) ....................................... 8

*United States v. Pizzonia*,
  577 F.3d 455 (2d Cir. 2009) .................................................................................................... 12

*United States v. Zichettello*,
  208 F.3d 72 (2d Cir. 2000) ...................................................................................................... 13

**Statutes**

18 U.S.C. § 1512 .............................................................................................................................. 11

18 U.S.C. § 1591 .............................................................................................................................. 11

18 U.S.C. § 1962(c) ......................................................................................................................... 10

18 U.S.C. § 1962(d) ......................................................................................................................... 12

18 U.S.C. § 1964(d) ......................................................................................................................... 13

18 U.S.C. § 1965(a) ........................................................................................................................... 7

28 U.S.C. § 1391(b) ........................................................................................................................... 6

28 U.S.C. § 1406(a) ........................................................................................................................... 9

# PRELIMINARY STATEMENT[1]

Plaintiffs adequately plead claims against Defendant Yifat Schnur ("Schnur") for violations of RICO and the TVPA.

Plaintiffs Hillary Lawson, Kristina Hallman, Stephanie Caldwell, Moira Hathaway, Macey Speight, Rosemarie Peterson, and Lauren Fuller sue alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Trafficking Victims Protection Act ("TVPA"), the Computer Fraud and Abuse Act ("CFAA"), as well as state law torts for assault, battery, false imprisonment, and intentional infliction of emotional distress against Defendants Howard Rubin ("Rubin"), Jennifer Powers ("Powers"), Schnur, Stephanie Shon ("Shon"), John Doe ("Doe"), Blue Icarus, LLC ("Blue Icarus"), and the Doe Company (together "Defendants" or the "Enterprise"). In their five motions to dismiss, Defendants present nothing warranting dismissal of any of Plaintiffs' claims. Each of Defendants' motions should be denied.

This case arises out of Defendants' pattern of human trafficking racketeering activity and crimes, through which the Enterprise, led by Defendant Rubin, coerced Plaintiffs and other women to travel to New York City under the guise of payments for modeling, fetish photography, and companionship. However, the Enterprise's hidden agenda was to transport women to Rubin across state lines so that Rubin could intoxicate, drug, beat, and rape them, and so that the other Defendants could profit from the Enterprise's criminal activity. In advancing this venture, the Enterprise committed dozens of RICO predicate acts identified in 18 U.S.C. § 1961(a), including coercion and enticement, witness tampering, repeated violations of the TVPA, dealing in controlled substances, obstruction of criminal investigations, and wire fraud.

---

[1] Unless otherwise noted, all definitions are as defined in Plaintiffs Opposition to Defendant Rubin's Motion to Dismiss and Plaintiffs' Amended Complaint, dated February 20, 2018, Dkt. No. 66 ("AC"). Some terms are redefined herein for the Court's convenience.

1

*Schnur Actively Participated in the Enterprise*

Schnur had an active role in the Enterprise: to advise and promote the Enterprise's illicit conduct and in her attempts to cover-up the Enterprise's wrongdoing.

In her role as an advisor of the Enterprise, Schnur committed the predicate acts of witness tampering and violating the TVPA. Schnur created a form non-disclosure agreement that purported to grant perennial consent for Rubin to assault, batter, and rape his victims. (AC ¶ 549(a).) Moreover, Schnur violated the TVPA by financially benefiting from her drafting of the NDAs and from drafting the settlement agreement—or general release—that was supposedly signed by Plaintiff Caldwell. (AC ¶ 549(b), (c).) Schnur also attempted to interfere with Plaintiff Hallman's criminal defense in an effort to cover-up the Enterprise's activities and protect herself from potential prosecution. (AC ¶ 549(e).)

Schnur tampered with Plaintiff Hallman when requesting to represent Hallman in her criminal action, an action where Hallman had a clear conflict with Defendant Rubin. (*Id.*) Despite this, and despite Schnur's knowledge of the conflict, as well as the facts that gave rise to the criminal action, Schnur should have declined representation of Hallman. Instead, Schnur attempted to coerce Hallman to allowing her to represent Hallman and further cover-up the Enterprise's illegal activity. (AC ¶ 549(e).) Schnur's goal was to prevent Hallman from implicating Rubin in the criminal action and telling the criminal court the true events that transpired in Blue Icarus's apartment. This would have led to federal investigations for TVPA violations, racketeering acts, and tort claims.

*Schnur Was an Active Member of the Enterprise*

Schnur actively participated in advising the Enterprise and in covering-up the Enterprise's wrongdoing. Schnur assisted the Enterprise in the best practice to keep their illegal

activities hidden, such as forcing the Plaintiffs to sign non-disclosure agreements (AC ¶ 549(a)), paying off the Plaintiffs (AC ¶ 429), paying for Plaintiffs' injuries sustained from Rubin's beatings (AC ¶ 428), and attempting to represent Plaintiffs in criminal matters to avoid the Enterprise being ousted. (AC ¶ 549(e).) Schnur actively participated in the Enterprise, making her liable under RICO.

### *Schnur Does Not Dispute That She Violated the TVPA*

As Schnur does not dispute—and thus concedes—she violated the TVPA by benefitting financially from the other Defendants' acts when Schnur was aware that the money was coming from the TVPA violations. (AC ¶¶ 549(b), (d), (f).) As TVPA violations are predicate acts under RICO, Schnur also fails to contest that she committed at least two predicate acts.

This is sufficient to withstand Defendants' Motions to Dismiss.

### **STATEMENT OF FACTS**[2]

Defendant Yifat Schnur is an attorney who worked as an advisor for the Enterprise. (AC ¶¶ 23, 61.) Schnur is a former prosecutor with extensive knowledge of criminal law. (AC ¶ 74.) Schnur's role was to counsel the Enterprise as to how to best cover-up the illicit activities of the Enterprise. (AC ¶¶ 61.) In this role, Schnur committed at least six predicate acts of witness tampering and violations of the TVPA. (AC ¶ 549.)

### *Schnur Drafted Legal Documents and Attempted to Represent at Least One Plaintiff*

Schnur created form non-disclosure agreements for victims of the Enterprise to sign in order to prevent victims from coming forward about the actions of the Enterprise. (AC ¶ 549(a).) Schnur also drafted an unenforceable General Release Agreement between Defendant Rubin and Plaintiff Caldwell that purports to prevent Defendant Caldwell from communicating the illegal

---

[2] Plaintiffs respectfully incorporate by reference their Statement of Facts in Opposition to Defendant Rubin's Motion to Dismiss.

3

activities of Rubin to law enforcement and courts. (AC ¶ 549(c).) Further, Schnur attempted to persuade Plaintiff Hallman to hire Schnur as Hallman's criminal defense attorney in an effort to prevent Hallman from revealing the Enterprise to law enforcement and the criminal court. (AC ¶ 549(e).) Schnur did this despite Hallman already being represented by her own criminal defense attorney. (AC ¶ 549(e).) Schnur attempted to represent Hallman despite a conflict of interest between Hallman and Rubin. (AC ¶ 549(e).)

Schnur interfered with Hallman and her attorney's attorney-client relationship by having Hallman send her criminal attorney a message, drafted by Schnur and given to Hallman by Powers, to Hallman's criminal attorney, giving Schnur access to all of the information regarding Hallman's criminal case. (AC ¶ 522.) Schnur was aware that this was a violation of her ethical duties, a breach of the attorney-client privilege, and witness tampering, and had the Enterprise offer Hallman $80,000 if Hallman signed a retainer agreement with Schnur and a confidentiality agreement. (AC¶ 522.) Hallman's criminal defense attorney was unaware of these communications with his client and was also unaware of a planned meeting between Hallman, Schnur, Powers, and Rubin. (AC ¶ 522.) Once Hallman's attorney was informed of this planned meeting, he contacted Schnur to inform her that she was not to speak to his client due to Schnur's ethical conflict because of her interest in protecting Rubin. (AC ¶ 523.)

### *Schnur Financially Benefitted*

In addition to Schnur's witness tampering, Schnur also violated, and financially benefited from the violation of the TVPA. (AC ¶¶ 549(b), (d), (f).) Schnur benefitted financially from the Enterprise's violations of the TVPA by receiving fees for work in association with transporting, harboring, enticing, and preventing victims from coming forward regarding the TVPA violations. (AC ¶ 549(b).) Schnur also benefitted by drafting the General Release Agreement for the TVPA

4

claims that Caldwell was forced to sign. (AC ¶ 549(d).) Lastly, Schnur benefitted by attempting to represent Plaintiff Hallman in her criminal matter—despite obvious conflicts of interest—by attempting to cover-up the Enterprise's violations of the TVPA. (AC ¶ 549(f).)

### *Schnur's Role as an Advisor*

Schnur acted as an advisor for the Enterprise prior to this lawsuit being filed but after being informed Plaintiffs intended to file this lawsuit. (AC ¶¶ 530–531.) Schnur was attempting to negotiate settlements—purportedly—on behalf of all Defendants in this action. (AC ¶ 531–32.) However, Schnur was intentionally stalling all such negotiations to give Rubin and the Enterprise's co-conspirators time to hack into the Plaintiffs' accounts in an attempt to delete evidence of the Enterprise's crimes. (AC ¶ 531.)

Schnur's role in the Enterprise as an advisor is designed to cover up the wrongdoing of the Enterprise by any means necessary, including through tampering with witnesses. (AC ¶ 549 (a), (c), (e), 568.)

### **LEGAL STANDARD**

Plaintiffs respectfully incorporate by reference the legal standard included in their Opposition to Defendant Rubin's Motion to Dismiss.

### **ARGUMENT**[3]

**I. VENUE IS PROPER IN THE EASTERN DISTRICT OF NEW YORK**

Venue is proper in the Eastern District of New York because a central part of Defendants' wrongdoing—the transporting of Plaintiffs to New York for them to be raped—took place here. Venue is proper for all remaining claims under supplemental jurisdiction.

---

[3] Plaintiffs respectfully incorporate all arguments made in each of their Oppositions to Defendants' respective Motions to Dismiss.

5

### A. A Substantial Part of the Events Giving Rise to Plaintiffs Claims Occurred in this District

Venue for Plaintiffs' RICO and TVPA claims is proper under the federal venue statute. Venue for RICO claims may be found under either the standard federal venue provision or under the RICO venue provision. *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 543–44 (S.D.N.Y. 2005). Under the federal venue statute, venue is proper in any district where a "substantial part" of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b); *see Gulf Ins. v. Glasbrenner*, 417 F.2d 353, 357 (2d Cir. 2005) ("substantial part" test met where "significant events material to those claims" occurred in district). Where multiple venues are proper, an action may be brought in any of them. *See Gulf Ins.*, 417 F.3d at 356.

Here, Plaintiffs plead that Defendants arranged and paid for each Plaintiff to travel through airports located in this District solely to advance the Enterprise and its acts, as well of violations of the TVPA. (AC ¶ 466 (Lawson); *id.* ¶ 305 (Hallman); *id.* ¶ 373 (Caldwell); *id.* ¶ 155 (Hathaway); *id.* ¶ 263 (Speight); *id.* ¶ 543(h) (Peterson); *id.* ¶ 543(n) (Fuller).)

This contact was not incidental. It directly resulted in numerous RICO predicate acts (AC ¶¶ 53, 543(a), (b), (d), (e), (h), (i), (n), (o), (r), (t)–(v), (w), (y), (z), (cc), (dd), (gg), (hh), (jj), (kk), (nn), (oo), (qq), (rr), (eee), (fff)) and is an element of a TVPA violation (*id.* ¶ 573). Plaintiff's transportation was central to the Enterprise's scheme, which was limited to out-of-state victims who likely would not have traveled to Rubin's apartment had the Enterprise not directly arranged transport. (*See, e.g.,* AC ¶¶ 53, 543(a), (b), (d), (e), (h), (i), (n), (o), (r), (t)–(v), (w), (y), (z), (cc), (dd), (gg), (hh), (jj), (kk), (nn), (oo), (qq), (rr), (eee), (fff).) Indeed, the legitimate purpose of the Enterprise was to "pay and transport women to New York." (AC ¶ 50.) This purpose would not have been achieved without Defendants' repeated utilizations of airports

in this District. A substantial part of the events giving rise to this action took place in the Eastern District of New York, and venue here is proper for Plaintiffs' RICO and TVPA claims.

### B. Venue Is Also Proper Under the RICO Venue Provision, Which Is More Lenient than the Federal Venue Statute, Because Defendants Transacted Business in This District By Arranging and Paying for Plaintiffs to Travel to Airports in Queens County

Even if Defendants' contacts with the Eastern District did not rise to a "substantial part" of the events giving rise to this action—which they do—Defendants at a minimum transacted business underlying Plaintiff's RICO claims in this District, which is sufficient to create venue for a RICO action. The RICO venue provision allows venue in any district where a defendant "transacts his affairs." 18 U.S.C. § 1965(a). Courts within this Circuit have repeatedly held that this makes the test for RICO venue the same as the test for personal jurisdiction under New York's long-arm statute. *Dandong Old North-East Agriculture & Animal Husbandry Co. v. Hu*, No. 15 Civ. 10015 (KPF), 2017 WL 3328239, at *6 (S.D.N.Y. Aug. 3, 2017) (holding "transacts his affairs" requirement of § 1965(a) to be "co-extensive" with test for personal jurisdiction under CPLR 302(a)) (quoting *Arabi v. Javaherian*, No. 13 Civ. 456 (ERK) (CLP), 2014 WL 3892098, at *8 (E.D.N.Y. May 1, 2014)); *Cyco.Net*, 383 F. Supp. 2d 526 at 544 (same).

Under such standard, a person "transacts business" in New York when he "purposely avails" himself of the "privilege of conducting activities" within the state, thus "invoking the benefits and protections of its laws. *Pincione v. D'Alfonso*, No. 10 Civ. 3618 (PAC), 2011 WL 4089885, at *6 (S.D.N.Y. Sept. 13, 2011) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 631, 365 (2d Cir. 1986)). In addition, there must be an "articulable nexus" between the business transacted and the claims at issue. *Id.* (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (N.Y. 1981)).

None of Rubin's cited cases state otherwise. Instead, each of Defendants' cases finding no venue under the RICO venue statute concern situations where, unlike here, the defendants did

7

not have *any* relevant contacts with the challenged venue. *Pincione*, 2011 WL 4089885, at *4–11 (finding no personal jurisdiction over foreign defendants who lacked sufficient contacts with New York); *Gates v. Wilkinson*, No. 01 Civ. 3145 (GBD), 2003 WL 21297296, at *2–4 (S.D.N.Y. June 4, 2003) (granting motion to transfer venue where only basis for venue was defendants' maintaining brokerage accounts in district).[4]

That is not the case here. Rubin directly or indirectly assisted each Plaintiff in arranging flights into JFK and paid for each Plaintiffs' travel expenses on multiple occasions. (AC ¶¶ 109, 116, 265–66, 326, 388.) Rubin specifically chose an airport located in this District. (AC ¶ 327.) Rubin's repeated, focused contacts with the Eastern District rise, at a minimum, to the level of transacting business in here. Venue for Plaintiffs' RICO claims is proper is this District.

### C. Because this Court Has Pendent Venue Over Plaintiffs' State Law Claims, Venue for those Claims Is Also Proper

This Court has pendent venue over the Plaintiffs' state law and CFAA claims, and therefore venue for those claims is proper. Once a court finds that primary venue is proper for any claim, pendent venue is proper for all claims sharing the same common nucleus of facts. *Doe v. New York*, No. 10 CV 1792 RJD VVP, 2012 WL 4503409, at *2 (E.D.N.Y. Sept. 28, 2012).

Plaintiffs' other claims all share a common nucleus of operative facts with Plaintiffs' RICO and TVPA claims. Plaintiffs' state law claims arise from the Enterprise's violations of the TVPA and RICO, as Plaintiffs would not have been assaulted, battered, falsely imprisoned, or emotionally distressed but for Rubin's violations of the TVPA and RICO. (AC ¶¶ 543(e), (i), (o),

---

[4] *See also Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 421, 423, 428 (2d Cir. 2005) (affirming dismissal for lack of personal jurisdiction where plaintiffs conceded insufficient contacts under CPLR 302); *Quirk v. Gilsenan*, No. 94 Civ. 3446 (JSM), 1994 WL 537137, at *1–2 (S.D.N.Y. Oct. 3, 1994) (all defendants resided in Connecticut, engaged in "[o]ccasional trips" to New York; not reaching whether venue lay in district); *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 38–40, 41–42 (S.D.N.Y. Aug. 11, 1983) (finding no New York personal jurisdiction over any defendants). The other authority that Defendants rely upon here actually found that the facts at issue were sufficient to lay venue. *Gulf Ins. v. Glasbrenner*, 417 F.3d 353, 357–58 (2d Cir. 2005) ("submission, approval, and issuance" of relevant insurance policy sufficient for venue).


(u), (kk), (oo), 569) Plaintiffs' claims for violation of the CFAA stem from the initiation of this action in this District, as their devices and accounts were hacked only after Rubin became aware that the Plaintiffs were bringing a lawsuit for violation of the TVPA and RICO in the Eastern District of New York. (AC ¶¶ 534–541.) Venue is proper in this District for all of Plaintiffs' claims.

### D. Even If Venue Was Not Proper in this District—Which It Is—The Proper Remedy Is Transfer to the Southern District of New York, Not Dismissal

Even if the Court does not find, as it should, that venue in this District is proper, it should transfer this action to the Southern District of New York, rather than dismiss it. Where a court finds that venue is improper but that venue exists in another District, then transfer is the proper remedy. 28 U.S.C. § 1406(a); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). A court may transfer venue sua sponte, provided the Parties have had an opportunity to be heard. *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 737 (S.D.N.Y. 1996) While venue is proper here, it would also be proper in the Southern District of New York. The Defendants reside in the Southern District and many of the facts at issue occurred in the Southern District. (AC ¶¶ 20–24, 49.) Indeed, Rubin admits repeatedly that proper venue exists in the Southern District. (Rubin's Motion to Dismiss, Dkt. No. 61-1, at 9 n.3 ("venue would in all likelihood lie in the Southern District of New York"); Rubin's Supplemental Motion to Dismiss, Dkt. No. 79 at 5 ("if there were any such cognizable causes of action, they arose in the Southern District, not the Eastern District"); Defendants' Motion to Stay Discovery, Dkt. No. 71, at 1 ("[a]ll of the relevant events took place in Manhattan; all of the claimed injuries were sustained in Manhattan").) If this Court does find that venue does not exist in this District then it should, as Rubin requested, transfer this action to the Southern District of New York.

## II. PLAINTIFFS ADEQUATELY PLEAD THAT SCHNUR WAS AN ACTIVE PARTICIPANT IN THE RICO ENTERPRISE, SUCH THAT THE COURT SHOULD NOT DISMISS PLAINTIFFS' 18 U.S.C. § 1962(c) CLAIM AGAINST SCHNUR

Plaintiffs adequately plead that Schnur was an active participant in the Enterprise, such that the Court should not dismiss the RICO claims against Schnur. It is unlawful for any person that is associated or employed by an enterprise, whether directly or indirectly, to commit two or more predicate racketeering acts. *See Equinox Gallery Ltd. v. Dorfman*, No. 17 CIV. 230 (GBD), 2018 WL 745707, at *6 (S.D.N.Y. Jan. 25, 2018) (citing 18 U.S.C. § 1962(c)). Defendant Schnur engaged in at least six known predicate acts when she attempted to cover up the racketeering activity through witness tampering and violations of the TVPA. (AC ¶ 549.) Schnur attempted to interfere with the attorney-client relationship of at least one Plaintiff by attempting to represent the Plaintiff in her criminal matter, despite clear conflicts of interest, in an effort to prevent the Plaintiff from telling the criminal court what happened to her, which would have led to an investigation of all of the Defendants in this action. (AC ¶¶ 520–529.) Plaintiffs adequately plead that Schnur is an active participant in the RICO Enterprise.

### A. Plaintiffs Adequately Plead an Association-in-Fact Enterprise Between Rubin, Powers, Shon, Schnur, Blue Icarus, the Doe Company, and John Doe.

Plaintiffs respectfully incorporate by reference Section II(A) of their Opposition to Defendant Rubin's Motion to Dismiss, detailing the association-in-fact Enterprise between Defendants, including Defendant Schnur.

### B. Plaintiffs Adequately Plead a Pattern of Racketeering, Lasting for a Period of at Least Six Years and Continuing Today

Plaintiffs respectfully incorporate by reference Section II(B)(2) of their Opposition to Defendant Rubin's Motion to Dismiss, regarding both closed- and open-ended continuity.

### C. Plaintiffs Plead That Schnur Engaged In at Least Six RICO Predicate Acts, Including Violations of 18 U.S.C. § 1512 (witness tampering) and 18 U.S.C. § 1591 (sex trafficking by force, fraud, or coercion)

Plaintiffs plead Schnur engaged in at least six predicate acts in furtherance of the Enterprise. Racketeering activity—predicate acts—includes violations of 18 U.S.C. § 1512 (witness tampering) and 18 U.S.C. § 1591 (sex trafficking by force, fraud, or coercion). 18 U.S.C. § 1961(1). Plaintiffs adequately plead that Schnur violated the witness tampering and sex trafficking statutes. (AC ¶ 549.) Plaintiffs alleged that Schnur tampered with witnesses by drafting a stock non-disclosure agreement designed to hinder, delay, or prevent victims from informing law enforcement of the Enterprise's illegal acts. (AC ¶ 549(a).) Plaintiffs further allege Schnur drafted a General Release Agreement for the same purposes as the stock non-disclosure agreement. (AC ¶ 549(c).) Plaintiffs also allege Schnur violated the witness tampering statute by attempting to represent Plaintiff Hallman in her criminal action, despite conflicts of interest. (AC ¶ 549(e).) Lastly, Plaintiffs plead that Schnur benefitted financially on every occasion that she was paid by Rubin to draft agreements or represent Plaintiff Hallman. (AC ¶¶ 549(b), 549(d), 49(f).) Plaintiffs plead Schnur engaged in at least six predicate acts.

### D. Schnur, Who Was Not Simply Rubin's Lawyer, but an Active Member of the Enterprise, Participated in the Affairs of the Enterprise and is Liable Under RICO

Schnur is an active member of the Enterprise that maintained sufficient operational control over the affairs of the Enterprise and not just an attorney for Rubin. A plaintiff must allege that a defendant participates in the operation or management of the enterprise, has a part in directing the affairs of the enterprise, and exerts some control over the enterprise. *DeFalco v. Bernas*, 244 F.3d 286, 312 (2d Cir. 2001). Attorneys may be subject to RICO liability where they participate in the operation and management of the enterprise. *See JSC Foreign Econ. Ass'n Technostroyexport v. Weiss*, No. 06 CIV. 6095 (JGK), 2007 WL 1159637, at *8 (S.D.N.Y. Apr.

11

18, 2007). Schnur drafted non-disclosure agreements in order to protect the Enterprise from law enforcement and courts. (AC ¶ 549.) Schnur further attempted to represent at least Plaintiff Hallman—despite clear conflicts of interest—in order to prevent Hallman from disclosing the existence of the Enterprise to her criminal defense attorney, to the criminal court, or to law enforcement. (AC ¶ 549.) Schnur is an active member of the Enterprise and not solely Rubin's attorney.

### E. Plaintiffs Properly Plead Damages Which are Compensable Under RICO

Plaintiffs respectfully incorporate by reference Section II(C) of their Opposition to Defendant Rubin's Motion to Dismiss, regarding Plaintiffs damages, which are compensable under RICO.

### III. PLAINTIFFS ADEQUATELY PLEAD THAT SCHNUR KNOWINGLY JOINED A RICO CONSPIRACY UNDER SECTION 1962(D)

As Plaintiffs properly plead a substantive violation of RICO, Plaintiffs' RICO conspiracy claim is also proper. It is unlawful for any person to conspire to violate the RICO statute. 18 U.S.C. § 1962(d). To plead a RICO conspiracy, a plaintiff must first plead a proper RICO substantive claim. *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 75 (E.D.N.Y. 2009). Plaintiffs have properly pleaded a substantive RICO claim (*see* discussion *supra* § II), and thus may plead a violation of Section 1962(d).

Defendant Schnur is likewise wrong in arguing that Plaintiffs failed to plead that Schnur knowingly joined a RICO conspiracy. A RICO conspiracy claim requires an allegation that the defendant agreed to participate in an "enterprise's affairs' through a pattern of racketeering, 'not a conspiracy to commit predicate acts." *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F.Supp. 2d 64, 89 (E.D.N.Y. 2011) (quoting *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009). The "'operation or management' test, however, does not apply to RICO conspiracy."

12

*Id.* "Assuming that a RICO enterprise exists, [one] must prove only that the defendants . . . know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual roles." *Id.* (quoting *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000)). Here, Plaintiffs plead that Schnur was generally aware of the conspiracy and its reaches beyond her own involvement (*see* AC ¶¶ 51, 75-76) and agreed to participate in the Enterprise's affairs through a pattern of racketeering activity (*See* AC ¶¶ 61, 74-76). This is sufficient to make a claim of conspiracy under 18 U.S.C. § 1964(d).

### IV. SCHNUR DOES NOT CONTEST PLAINTIFFS' ADEQUATELY PLEAD THEIR TVPA CLAIM AGAINST SCHNUR

Schnur fails to contest that Plaintiffs adequately plead their TVPA claims against her. Courts "must credit the facts in the plaintiff's well-pleaded complaint as true and draw all plausible inferences in the plaintiff's favor." *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559 (ARR), 2017 WL 6501864, at *6 (E.D.N.Y. Dec. 19, 2017). As Defendant Schnur does not contest that the TVPA claim was adequately pleaded against her, this claim may not be dismissed. Moreover, as Plaintiffs allege Schnur violated the TVPA on more than two occasions, and as the TVPA is a predicate act, Schnur admits that Plaintiffs have adequately pleaded at least two predicate acts on behalf of Schnur.

### CONCLUSION

For the above reasons and those stated in Plaintiffs' oppositions to the four other Defendants' motions, Schnur's Motion to Dismiss should be denied.

14

Dated: New York, New York            Respectfully,
       March 14, 2017


                                                */s/ John G. Balestriere*
                                                John G. Balestriere
                                                Jillian L. McNeil
                                                Brian L. Grossman
                                                Matthew W. Schmidt
                                                **BALESTRIERE FARIELLO**
                                                225 Broadway, 29th Floor
                                                New York, New York 10007
                                                Telephone:    (212) 374-5401
                                                Facsimile:     (212) 208-2613
                                                john.balestriere@balestrierefariello.com
                                                *Attorneys for Plaintiff*