John G. Balestriere
Jillian L. McNeil
Brian L. Grossman
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:     (212) 374-5401
Facsimile:     (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON,** and **LAUREN FULLER,**<br><br>                                    Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR,  STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC,** and the **DOE COMPANY.**<br><br>                                    Defendants. | Case No.: 1:17-cv-06404 (BMC)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT STEPHANIE SHON'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................1

STATEMENT OF FACTS ..........................................................................................................4

LEGAL STANDARD..................................................................................................................6

ARGUMENT ...............................................................................................................................7

   I.   PLAINTIFFS ADEQUATELY STATE A RICO CLAIM AGAINST SHON, PLEADING THAT SHON ENGAGED IN AT LEAST THIRTEEN RICO PREDICATE ACTS ........................................................................................................7

      A.   Violations of 18 U.S.C. § 1343 (Wire Fraud)................................................................7

      B.   Violations of 18 U.S.C. § 1591 (Sex Trafficking By Force, Fraud, Or Coercion).......8

      C.   Violations of 18 U.S.C. § 2422 (Coercion and Enticement) ........................................9

   II.   PLAINTIFFS ADEQUATELY PLEAD THAT SHON VIOLATED THE TVPA ...........9

      A.   Shon Recruited Speight, Hallman, and Lawson .........................................................10

      B.   Shon Benefitted Financially from Her Involvement in the Sex Trafficking Venture. 10

      C.   Shon Was Aware that Rubin Would Use Means of Force and Coercion to Cause Plaintiffs to Engage in Commercial Sex .....................................................................11

   III.  PLAINTIFFS ADEQUATELY STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST SHON ...................................11

CONCLUSION..........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014) ................................................................................ 8

*Frydman v. Verschleiser*,
  172 F. Supp. 3d 653 (S.D.N.Y. 2016) ............................................................................... 7

*Pepe v. Maklansky*,
  67 F. Supp. 2d 186 (S.D.N.Y. 1999) ............................................................................... 11

*Porcelli v. United States*,
  404 F.3d 157 (2d Cir. 2005) ............................................................................................. 7

*United States v. Binday*,
  804 F.3d 558 (2d Cir. 2015) ......................................................................................... 7, 8

*United States v. Cramer*,
  602 F. App'x 837 (2d Cir. 2015) .................................................................................... 10

*United States v. Cramer*,
  602 F. Appx. 837 (2d Cir. 2015) ...................................................................................... 9

*United States v. Weaver*,
  No. 13-CR-120 (JMA), 2016 WL 3906494 (E.D.N.Y. June 10, 2016), aff'd, 860 F.3d 90
  (2d Cir. 2017), and aff'd, 698 F. App'x 629 (2d Cir. 2017) ............................................. 8

**Statutes**

18 U.S.C. § 1343 ..................................................................................................................... 7

18 U.S.C. § 1591 ............................................................................................................ 7, 8, 10

18 U.S.C. § 1591(a)(1) ...................................................................................................... 9, 11

18 U.S.C. § 1591(a)(2) ...................................................................................................... 9, 10

18 U.S.C. § 1595(a) .............................................................................................................. 10

18 U.S.C. § 2422 ................................................................................................................. 7, 9

18 U.S.C. § 2422(a) ................................................................................................................ 9

# **PRELIMINARY STATEMENT**[1]

Plaintiffs adequately plead claims against Defendant Stephanie Shon ("Shon") for violations of RICO, the TVPA, and intentional infliction of emotional distress

Plaintiffs Hillary Lawson, Kristina Hallman, Stephanie Caldwell, Moira Hathaway, Macey Speight, Rosemarie Peterson, and Lauren Fuller sue alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Trafficking Victims Protection Act ("TVPA"), the Computer Fraud and Abuse Act ("CFAA"), as well as state law torts for assault, battery, false imprisonment, and intentional infliction of emotional distress against Defendants Howard Rubin ("Rubin"), Jennifer Powers ("Powers"), Yifat Schnur ("Schnur"), Shon, John Doe ("Doe"), Blue Icarus, LLC ("Blue Icarus"), and the Doe Company (together "Defendants" or the "Enterprise"). In their five motions to dismiss, Defendants present nothing warranting dismissal of any of Plaintiffs' claims. Each of Defendants' motions should be denied.

This case arises out of Defendants' pattern of human trafficking racketeering activity and crimes, through which the Enterprise, led by Defendant Rubin, coerced Plaintiffs and other women to travel to New York City under the guise of payments for modelling, fetish photography, and companionship. However, the Enterprise's hidden agenda was to transport women to Rubin across state lines so that Rubin could intoxicate, drug, beat, and rape them, and so that the other Defendants could profit from the Enterprise's criminal activity. In advancing this venture, the Enterprise committed dozens of RICO predicate acts identified in 18 U.S.C. § 1961(a), including coercion and enticement, witness tampering, repeated violations of the TVPA, dealing in controlled substances, obstruction of criminal investigations, and wire fraud.

---

[1] Unless otherwise noted, all definitions are as defined in Plaintiffs Opposition to Defendant Rubin's Motion to Dismiss and Plaintiffs' Amended Complaint, dated February 20, 2018, Dkt. No. 66 ("AC"). Some terms are redefined herein for the Court's convenience.

1

Defendant Shon was a necessary member of the Enterprise, serving as a key recruiter. Shon's specific role was to recruit and befriend women in order to gain Plaintiff's trust so that she could assist in transporting them to Rubin. Shon at all times knew—or at the very minimum acted in reckless disregard of the fact—that Rubin would use means of force and coercion to cause Plaintiffs to engage in commercial sex acts. Shon contacted multiple Plaintiffs over the course of years, even befriending one, Plaintiff Speight, in order to gain personal information about her that Rubin could use while he tortured her. Shon convinced the same Plaintiff to provide her with naked pictures to send to Rubin, which Shon later posted on Instagram in order to further threaten Plaintiff. Shon is a key part of the Enterprise.

### *Shon's Predicate Acts*

Shon committed at least thirteen predicate acts under RICO of wire fraud, sex trafficking, and transportation. (AC ¶ 547.) Shon committed these predicate acts while recruiting at least three victims to the Enterprise by contacting the victims through interstate wires and assisting in trafficking and transporting the victims to New York City. (AC ¶¶ 302, 318.) Shon then lied to the Plaintiffs regarding the nature of her contact, telling the Plaintiffs she wanted them to travel to New York for modeling and companionship. (AC ¶¶ 306, 322.) Shon even told Plaintiffs that Rubin was a nice guy and would let the Plaintiffs leave if they did not feel comfortable. (AC ¶¶ 311, 322, 324.) This was all a lie. Shon would then assist Powers in trafficking the Plaintiffs to New York where they would be transported to Blue Icarus's apartment and assaulted.

Shon was paid a finder's fee when she convinced a victim to meet with Rubin and travel to New York, thus profiting from the affairs of the Enterprise. All available evidence points to Shon as just one of a handful of recruiters at her level, assisting Rubin in the recruitment of

2

unsuspecting victims. Shon played in integral role in the Enterprise's operations. But for Shon's recruitment of Plaintiffs, those Plaintiffs would not have suffered the injuries they sustained.

### *Shon Violated the TVPA*

Shon violated the TVPA when she recruited the Plaintiffs to engage in commercial sex acts with Rubin. (AC ¶¶ 547(b), (c), (e), (g), (i), (k), (m).) Shon was aware that Rubin would use force, fraud, and coercion to force the Plaintiffs to engage in commercial by paying them after drugging, beating, and raping them. (AC ¶¶ 547(b), (c), (e), (g), (i), (k).) Shon was aware of why she was recruiting the Plaintiffs and what would happen to the Plaintiffs upon their arrival at Blue Icarus's apartment. (AC ¶ 58.) Shon was paid for her role in this regard, and therefore financially benefitted from her role in recruiting Plaintiffs into sex trafficking. (AC ¶ 58.)

### *Shon Intentionally Inflicted Emotional Distress*

Shon was aware that her recruitment of Plaintiffs would lead to their sexual assault, including any number of potential injuries, both psychological and physical. (AC ¶ 58.) Shon failed to inform the Plaintiffs of what would actually happen when the Plaintiffs met with Rubin—that Rubin would drug, beat, and rape them in the Dungeon. (AC ¶ 58.) Shon knew that if she informed Plaintiffs of this, Plaintiffs would not have gone to meet with Rubin, and Shon would not have been paid. However, Shon still recruited Plaintiffs in order to earn her finder's fee from Rubin, despite the likelihood that Plaintiffs would become emotionally distraught following these incidents. (AC ¶ 58.)

Shon took her position with the Enterprise seriously, becoming so close to one of the Plaintiffs that she learned that Plaintiff had been sexually abused as a child. (AC ¶ 287.) Shon told Rubin this information so that Rubin could use this information during the rape and beatings, which he did. (AC ¶ 287.) Shon also requested that the same Plaintiff provide Shon

3

with naked pictures to show Rubin prior to her trip to New York City. (AC ¶ 272.) After the Plaintiff provided the pictures, Shon posted them on a public Instagram account pretending to be the Plaintiff in order to intentionally cause emotional distress. (AC ¶ 272.)

Shon's arguments in her motion to dismiss do not alter any of this, warranting denial of the motion.

## STATEMENT OF FACTS[2]

Shon works below both Rubin and Powers in the Enterprise and her primary role is recruiting victims of the Enterprise. (AC ¶ 58.) Shon used her similar age to the victims to make them feel comfortable and to trust her. (AC ¶ 58.) Shon referred to Rubin as her "boss." (AC ¶ 20.)

Shon was often the first point of contact for many of the Enterprise's victims, introducing them to Rubin for a finder's fee. (AC ¶ 58.) There are multiple other individuals who hold the same or similar positions as Shon. (AC ¶ 59.)

Shon recruited and met with Plaintiffs Speight, Hallman, Lawson, and Caldwell from 2016 to 2017. (AC ¶¶ 262, 302, 318, & 378.) In recruiting Plaintiffs, Shon committed at least 13 predicate acts of coercion and enticement, violation of the TVPA, and wire fraud. (AC ¶ 547.) Shon convinced Plaintiffs Speight, Hallman, and Lawson to travel from Georgia and Florida to New York to meet Rubin. (AC ¶ 547(a), (f), & (j).) Shon knew—or at a minimum recklessly disregarded the fact—that Rubin would cause Plaintiffs to engage in commercial sex acts. (AC ¶ 547(b)–(c), (e), (g), (i), (k), & (m).) Shon sent text messages and emails to Plaintiffs Speight, Hallman, and Lawson introducing them to Rubin, and representing to Plaintiffs that Rubin was a

---

[2] Plaintiffs respectfully incorporate by reference their Statement of Facts in Opposition to Defendant Rubin's Motion to Dismiss.

4

nice man who was simply looking to spend time with and potentially date a model. (AC ¶ 547(d), (h), & (l).)

Shon further intentionally caused Plaintiffs emotional distress. (AC ¶¶ 604–609, 624–629, 645–650, 665–670, 689–694, 712–717, & 732–737.) Shon knew, or was at least recklessly indifferent, to what Rubin would do to the women upon meeting them but lied to the Plaintiffs in order to get them to Rubin. (AC ¶ 547(d), (h), (l).)

### *Hillary Lawson*

Hallman was first contacted by Shon through a direct Instagram message. (AC ¶ 302.) In that message, Shon told Hallman she was contacting her on behalf of Rubin, and Rubin had seen pictures of Hallman online and wanted to meet her. (AC ¶ 302.) Shon told Hallman that Rubin would pay her $2,000 to meet and spend time with him. (AC ¶ 305.) Shon further explained that Rubin would pay an additional $3,000 if Rubin "liked" Hallman. (AC ¶ 306.) Shon told Hallman that Rubin was willing to pay this money because he loved spending time with Playboy models. (AC ¶ 306.) Hallman relied on Shon's representations and traveled to New York City to meet Rubin. (AC ¶ 312.)

### *Kristina Hallman*

Lawson was first contacted by Shon through a direct message on Instagram. (AC ¶ 318.) However, Lawson initially ignored Shon as people frequently contact Lawson on Instagram for illegitimate job offers. (AC ¶ 319.) Once Lawson learned that Hallman had also been contacted, Lawson agreed to have a phone call with Shon and Powers to get as much information as possible about the arrangement. (AC ¶ 321.) Shon told Lawson Rubin was not threatening and was a wealthy man that liked to take care of women. (AC ¶ 322.)

5

*Macey Speight*

Shon met Speight when Speight was working as a cocktail waitress in Atlanta, Georgia. (AC ¶ 262.) Shon told Speight about Rubin and explained that Rubin would fly Speight to New York City and give her a nice place to stay while she was there. (AC ¶ 263.) Relying on Shon's representation that Rubin was a nice guy, Speight flew to New York City to meet Rubin. (AC ¶ 263–246.) Speight met with Shon and Rubin once in New York, and after signing the non-disclosure agreement drafted by Defendant Schnur. (AC ¶ 271.)

Shon informed Rubin of Plaintiff Speight's past sexual abuse. (AC ¶ 287.) Moreover, Shon posted naked pictures of Plaintiff Speight on Instagram that Speight had sent Shon for Rubin. (AC ¶ 272.)

*Stephanie Caldwell*

Caldwell met Shon for the first time when she was in New York City on a planned trip to meet Rubin. (AC ¶ 547(m).) Caldwell had dinner with Rubin and Shon during that trip. (AC ¶ 547(m).) After dinner, Caldwell, Shon, and Rubin went back to Blue Icarus's Penthouse. (AC ¶ 381.) Caldwell asked Shon to stay at the Penthouse with her because she was nervous about being alone with Rubin but Shon refused. (AC ¶ 381–382.) Shon later returned after Caldwell messaged her and Shon stayed the night with Caldwell at the Penthouse. (AC ¶ 386.)

## **LEGAL STANDARD**

Plaintiffs respectfully incorporate by reference the legal standard included in their Opposition to Defendant Rubin's Motion to Dismiss.

## ARGUMENT[3]

### I. PLAINTIFFS ADEQUATELY STATE A RICO CLAIM AGAINST SHON, PLEADING THAT SHON ENGAGED IN AT LEAST THIRTEEN RICO PREDICATE ACTS

Plaintiffs adequately state a RICO claim against Shon, pleading that Shon engaged in at least thirteen predicate acts, including wire fraud, sex trafficking, and transportation. Wire fraud (18 U.S.C. § 1343), sex trafficking (18 U.S.C. § 1591), and transportation (18 U.S.C. § 2422), are all predicate RICO acts. Plaintiffs plead that Shon contacted at least four Plaintiffs and made fraudulent statements to them in order to convince them to travel to New York. Shon made such statements to coerce Plaintiffs into engaging in commercial sex acts—when Plaintiffs were unaware that they would be engaging in commercial sex acts—and assisted in transporting the Plaintiffs to New York from at least Florida and Georgia.

#### A. Violations of 18 U.S.C. § 1343 (Wire Fraud)

Shon violated 18 U.S.C. § 1343 (wire fraud)—which is a predicate act under RICO. It is illegal to use interstate wires to transmit fraudulent or false writings. 18 U.S.C. § 1343. A defendant "does not need to literally 'obtain' money or property to violate the statute." *Porcelli v. United States*, 404 F.3d 157, 162 (2d Cir. 2005). Instead, a person commits wire fraud simply by causing a victim to be deprived of property or by lying to a victim about the economic risk of a transaction. *Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 670 (S.D.N.Y. 2016); *United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015) (violation of Section 1343 where a person's "misrepresentations foreseeably concealed economic risk or deprived the victim of the ability to make an informed economic decision").Where fraud associated with mail or wires is in regards to profitability or projected earnings, plaintiffs have a tangible injury. *United States v. Weaver*, No. 13-CR-120 (JMA), 2016 WL 3906494, at *9 (E.D.N.Y. June 10, 2016), aff'd, 860 F.3d 90

---

[3] Plaintiffs respectfully incorporate all arguments made in each of their Oppositions to Defendants' respective Motions to Dismiss.

7

(2d Cir. 2017), and aff'd, 698 F. App'x 629 (2d Cir. 2017) (acts are unlawful under wire fraud statute "where the falsity of the representations is shown to be capable of influencing [the victim's] assessment of the value of the bargain to him or there is a suggestion of material benefits which the customer might expect from the transaction beyond the inherent utility of the goods"). Therefore there is "intent to defraud when a defendant's misrepresentations and omissions concern 'potentially valuable economic information, affected the victim's economic calculus, or exposed the victim to unexpected economic risk." *Id*. Pleadings of wire fraud must, under Federal Rule of Civil Procedure ("Rule") 9(b), state (i) the "contents" of the communication at issue, (ii) "who was involved," along with "where and when" the communication occurred, (iii) and "why" the communications were fraudulent. *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014).

Here, Defendant Shon's intentional omissions regarding the true reasons she was contacting the Plaintiffs and what the Plaintiffs were agreeing to partake in with Rubin, deprived the Plaintiffs "of the ability to make an informed economic decision." *See Binday*, 804 F.3d at 578. Plaintiffs agreed to be paid $2,000 for their travel to New York on the understanding that they would be meeting and spending time with Rubin; an individual that liked spending time with Playboy models. (AC ¶ 305–306.) Plaintiffs further understood that they would get an additional $3,000 if Rubin "liked" them. (AC ¶ 306.) Plaintiffs were deprived of their ability to make an informed economic decision as to whether it was worth $5,000 for them to travel to New York and be beaten and raped because of Shon's misrepresentations. Shon violated the wire fraud statute.

### B. Violations of 18 U.S.C. § 1591 (Sex Trafficking By Force, Fraud, Or Coercion)

Shon violated 18 U.S.C. § 1591 (Sex Trafficking By Force, Fraud, Or Coercion)—which is a predicate act under RICO. It is illegal to entice an individual to engage in a commercial sex

8

act when it is known, or in reckless disregard of the fact, that means or threats of force, fraud, or coercion will be used to engage in such commercial sex act. 18 U.S.C. § 1591(a)(1). Moreover, it is illegal to benefit financially from participating in the same. 18 U.S.C. § 1591(a)(2). Recruiting victims for sex trafficking through social networking sites is a violation of the TVPA. *United States v. Cramer*, 602 F. Appx. 837, 840 (2d Cir. 2015).

Defendant Shon recruited Plaintiffs through their Instagram accounts, finding Plaintiffs that Rubin would "like" and requesting that they travel to New York in exchange for a fee. (AC ¶¶ 302, 318, 547(h), (l).) Shon was aware that after recruiting the Plaintiffs, Rubin would use means of force, fraud, and coercion to cause Plaintiffs to engage in commercial sex acts. (AC ¶ 547(b), (c), (e), (g), (i), (k), (m).) Shon also benefitted financially when she received her "finder's fee" for recruiting the women for Rubin. (AC ¶ 547(c), (g), (k).) Shon violated the sex trafficking statute.

### C. Violations of 18 U.S.C. § 2422 (Coercion and Enticement)

Shon violated 18 U.S.C. § 2422 (Coercion and enticement)—which is a predicate act under RICO. It is illegal to "persuade[], induce[], entice[], or coerce[]" a victim to travel between states to engage in prostitution. 18 U.S.C. § 2422(a). Plaintiffs plead that Shon coerced them into traveling format Florida and Georgia to New York to engage in prostitution and that Shon knew that Plaintiffs would be engaging in prostitution. (AC ¶ 547(a), (f), (j).) Shon violated the coercion and enticement of prostitution statute.

### II. PLAINTIFFS ADEQUATELY PLEAD THAT SHON VIOLATED THE TVPA

Plaintiffs plead that Shon violated the TVPA by recruiting three Plaintiffs and benefitting financially while knowing that Rubin would use means of force, fraud, and coercion to cause Plaintiffs to engage in commercial sex acts. A person that knowingly benefits from participating in a human trafficking ring and knows, or should know that they are engaged in the human

9

trafficking ring, is liable under the TVPA. 18 U.S.C. § 1595(a). For all of the same reasons that Shon violated 18 U.S.C. § 1591 as a predicate act, she also independently violated 18 U.S.C. § 1591. Defendant Shon was aware that her actions would lead three of the Plaintiffs to engage in commercial sex acts against their will. Shon benefitted by receiving payment for every victim she brought to the Enterprise.

### A. Shon Recruited Speight, Hallman, and Lawson

Shon recruited Plaintiffs Speight, Hallman, and Lawson to engage in commercial sex acts. Under the TVPA, it is illegal to entice an individual to engage in a commercial sex act when it is known, or in reckless disregard of the fact, that means or threats of force, fraud, or coercion will be used to engage in such commercial sex act. 18 U.S.C. § 1591(a)(1). This includes recruiting individuals through social media platforms. *United States v. Cramer*, 602 F. App'x 837, 840 (2d Cir. 2015). Shon recruited Plaintiffs Speight, Hallman, and Lawson to travel to New York to meet Rubin. (AC ¶ 547(b), (e), (i), (k).) Shon did so through Instagram messages to the Plaintiffs as well as in person. (AC ¶¶ 262–264, 302, 318, 547(h), (l).) Shon recruited Plaintiffs Speight, Hallman, and Lawson.

### B. Shon Benefitted Financially from Her Involvement in the Sex Trafficking Venture

Shon benefitted financially from her involvement in the sex trafficking venture by receiving a finder's fee for each victim she recruited to the venture. It is illegal to benefit financially from participating in the same. 18 U.S.C. § 1591(a)(2). Plaintiffs alleged that Shon received finder's fees for recruiting the Plaintiffs for Defendant Rubin. (AC ¶ 547(c), (g), (k).) Shon benefitted financially from her involvement in the sex trafficking venture.

### C. Shon Was Aware that Rubin Would Use Means of Force and Coercion to Cause Plaintiffs to Engage in Commercial Sex

Shon knew—or at least recklessly disregarded the fact that—that Rubin would use means of force and coercion to cause Plaintiffs to engage in commercial sex acts. It is illegal to entice an individual to engage in a commercial sex act when it is known, or in reckless disregard of the fact, that means or threats of force, fraud, or coercion will be used to engage in such commercial sex act. 18 U.S.C. § 1591(a)(1). Shon knew, or was at least recklessly in different, that Rubin would use fraud and coercion to cause Plaintiffs Speight, Hallman, and Lawson to engage in commercial acts. (AC ¶¶ 547(b), 547(c), 547(e), 547(g), 547(i), 547(k), 547(m).) Shon knew Plaintiffs would be caused to engage in commercial acts.

### III. PLAINTIFFS ADEQUATELY STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST SHON

Plaintiffs adequately state a claim for intentional infliction of emotional distress against Defendant Shon. To state a claim for intentional infliction of emotional distress, a plaintiff must plead (1) extreme and outrageous conduct by the defendant, (2) the defendant intended to cause severe emotion distress, (3) a connection between the conduct and the plaintiff's injury, and (4) severe emotional distress. *Pepe v. Maklansky*, 67 F. Supp. 2d 186, 187 (S.D.N.Y. 1999). Shon engaged in extreme and outrageous conduct by recruiting Plaintiffs to be beat, raped and drugged. (AC ¶¶ 668, 692, 715.) Shon knew that rape, beatings, and drugging would result in severe emotional distress. (AC ¶ 58.) But for Shon recruiting the Plaintiffs, the Plaintiffs would not have been injured. The Plaintiffs all have severe emotional distress as a result of Shon's actions. (AC ¶¶ 299, 362, 493.) Moreover, and specifically in regards to Defendant Speight, Shon received naked pictures of Speight and subsequently published those pictures on Instagram to cause severe emotional distress to Speight. (AC ¶ 272.) This conduct was extreme and

11

outrageous, Shon intended to post these pictures and was aware that the posting of these pictures would result in Speight's emotional distress, and Speight has severe emotional distress from the posting of such pictures. (AC ¶ 299.)

## CONCLUSION

For the above reasons and those stated in Plaintiffs' oppositions to the four other Defendants' motions, Shon's Motion to Dismiss should be denied.

Dated:  New York, New York
       March 14, 2017

Respectfully,

       */s/ John G. Balestriere*
       John G. Balestriere
       Jillian L. McNeil
       Brian L. Grossman
       Matthew W. Schmidt
       **BALESTRIERE FARIELLO**
       225 Broadway, 29th Floor
       New York, New York 10007
       Telephone:     (212) 374-5401
       Facsimile:     (212) 208-2613
       john.balestriere@balestrierefariello.com
       *Attorneys for Plaintiff*