John G. Balestriere
Jillian L. McNeil
Brian L. Grossman
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:     (212) 374-5401
Facsimile:      (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON,** and **LAUREN FULLER,**<br><br>Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR,  STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC,** and the **DOE COMPANY.**<br><br>Defendants. | Case No.: 1:17-cv-06404 (BMC)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT BLUE ICARUS'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iv

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 4

LEGAL STANDARD .................................................................................................................. 5

ARGUMENT ................................................................................................................................ 5

   I.  PLAINTIFFS ADEQUATELY PLEAD THAT BLUE ICARUS WAS AN ACTIVE PARTICIPANT IN THE RICO ENTERPRISE, SUCH THAT THE COURT SHOULD NOT DISMISS PLAINTIFFS' 18 U.S.C. § 1962(c) CLAIM AGAINST BLUE ICARUS . 5

      A.  Plaintiffs Adequately Plead an Association-in-Fact Enterprise Between Rubin, Powers, Shon, Schnur, Blue Icarus, the Doe Company, and John Doe ........................... 5

      B.  Plaintiffs Adequately Plead a Pattern of Racketeering, Lasting for a Period of at Least Six Years and Continuing Today ..................................................................................... 6

      C.  Plaintiffs Plead That Blue Icarus Engaged In at Least Sixty-Two RICO Predicate Acts, All of Which Are Violations of 18 U.S.C. § 1591 (sex trafficking by force, fraud, or coercion) ........................................................................................................... 7

          1.  Blue Icarus Benefitted Financially From Participation in the Sex Trafficking Venture, Receiving $18,000 Per Month in Rent for Nearly Six Years ..................... 8

          2.  Blue Icarus Harbored Plaintiffs and Other Victims of the Enterprise on Dozens of Occasions Over a Period of Nearly Six Years ......................................................... 8

          3.  Blue Icarus Knew or, at Best, Acted in Reckless Disregard of the Fact that, Rubin Would Use Means of Force and Coercion to Cause Plaintiffs to Engage in Commercial Sex ........................................................................................................ 9

      D.  Blue Icarus Exercised Sufficient Participation in the Enterprise to Be Found Liable Under 18 U.S.C. § 1962(c) ............................................................................................ 10

      E.  Plaintiffs Properly Plead Damages Which are Compensable Under RICO .................. 10

   II.  PLAINTIFFS ADEQUATELY PLEAD THAT BLUE ICARUS KNOWINGLY—OR AT LEAST RECKLESSLY—JOINED A RICO CONSPIRACY UNDER SECTION 1962(d) ............................................................................................................................... 10

   III.  BLUE ICARUS DOES NOT CONTEST THAT PLAINTIFFS' ADEQUATELY PLEAD THEIR TVPA CLAIM AGAINST BLUE ICARUS ....................................................... 11

CONCLUSION ............................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Cases**

*Cedric Kushner Promotions Ltd. v. King*,
533 U.S. 158 (2001) ............................................................................................................... 6

*City of New York v. Gordon*,
155 F. Supp. 3d 411 (S.D.N.Y. 2015) .................................................................................... 6

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999) ................................................................................................... 7

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
801 F.Supp. 2d 64 (E.D.N.Y. 2011) ..................................................................................... 11

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ................................................................................................. 10

*Ferri v. Berkowitz*,
678 F. Supp. 2d 66 (E.D.N.Y. 2009) .................................................................................... 10

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) .................................................................................... 6

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ............................................................................................................... 7

*Henry Avocado Corp. v. Z.J.D. Brother, LLC*,
No. 17-CV-4559 (ARR), 2017 WL 6501864, (E.D.N.Y. Dec. 19, 2017) ............................. 11

*Jean-Charles v. Perlitz*,
937 F. Supp. 2d 276 (D. Conn. 2013) .................................................................................... 8

*Riverwoods Chappaqua corp. v. Marine Midland Bank*,
30 F.3d 339 (2d Cir. 1994) ..................................................................................................... 5

*State of New York v. Shore Realty Corp.*,
759 F.2d 1032 (2d Cir. 1985). ................................................................................................ 9

*United States v. Aulicino*,
44 F.3d 1102 (2d Cir. 1995) ................................................................................................... 7

*United States v. Pizzonia*,
577 F.3d 455 (2d Cir. 2009) .................................................................................................. 11

*United States v. Turkette*,
452 U.S. 576 (1981) .................................................................................................................. 6

*United States v. Zichettello*,
208 F.3d 72 (2d Cir. 2000) ..................................................................................................... 11

*Watral v. Silvernails Farms, LLC*,
177 F. Supp. 2d 141 (E.D.N.Y. 2001) ................................................................................. 6, 7

**Statutes**
18 U.S.C. § 1591 ................................................................................................................ 7, 8, 9

18 U.S.C. § 1595(a) ............................................................................................................... 7, 8

18 U.S.C. § 1961 ......................................................................................................................... 6

18 U.S.C. § 1962 ................................................................................................................... 7, 10

18 U.S.C. § 1964 ....................................................................................................................... 12

# **PRELIMINARY STATEMENT**[1]

Plaintiffs adequately plead claims against Defendant Blue Icarus, LLC ("Blue Icarus") for violations of RICO, the TVPA, the CFAA, and intentional infliction of emotional distress

Plaintiffs Hillary Lawson, Kristina Hallman, Stephanie Caldwell, Moira Hathaway, Macey Speight, Rosemarie Peterson, and Lauren Fuller sue alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Trafficking Victims Protection Act ("TVPA"), the Computer Fraud and Abuse Act ("CFAA"), as well as state law torts for assault, battery, false imprisonment, and intentional infliction of emotional distress against Defendants Howard Rubin ("Rubin"), Jennifer Powers ("Powers"), Yifat Schnur ("Schnur"), Stephanie Shon ("Shon"), John Doe ("Doe"), Blue Icarus, and the Doe Company (together "Defendants" or the "Enterprise"). In their five motions to dismiss, Defendants present nothing warranting dismissal of any of Plaintiffs' claims. Each of Defendants' motions should be denied.

This case arises out of the Enterprise's human trafficking racketeering activity, which coerced victims to get them to travel to New York City under the guise of payments for modelling, fetish photography, and companionship. However, the Enterprise's hidden agenda was to transport women to Rubin across state lines so that Rubin could intoxicate, drug, beat, and rape them. Rubin and his co-conspirators found their victims through the women's social media accounts, as all were models and utilize social media extensively for marketing purposes. In advancing this endeavor, the Enterprise committed dozens of RICO predicate acts including coercion and enticement, witness tampering, violations of the TVPA, dealing in controlled substances, obstruction of criminal investigations, and wire fraud.

---

[1] Unless otherwise noted, all definitions are as defined in Plaintiffs Opposition to Defendant Rubin's Motion to Dismiss and Plaintiffs' Amended Complaint, dated February 20, 2018, Dkt. No. 66 ("AC"). Some terms are redefined herein for the Court's convenience.

### *Blue Icarus's Involvement with the Enterprise*

Defendant Blue Icarus willfully turned a blind eye to the Enterprise's illicit activities, choosing income in excess of $1.5 million over a six-year period over preventing the other members of the Enterprise from assaulting, battering, and raping women. Blue Icarus was aware of the "Dungeon" or "Red Room" that Rubin had permanently installed in the Penthouse. Indeed representatives or owners of Blue Icarus even met one of Rubin's victims at the Penthouse *after* she had been beaten and raped, showing signs of physical trauma, and still did nothing. (AC ¶ 40.) If this were not enough, ambulances and police were called to the Penthouse on at least two occasions after this, which Blue Icarus failed to investigate. (AC ¶ 41.) A non-recklessly indifferent owner would have been concerned about potential liability regarding injury or criminal acts that occurred on its property but Blue Icarus instead either did not care or failed to monitor its investment once it was paid by Rubin.

Any non-reckless owner of the Penthouse would not want illegal activities taking place on their property unless they willfully turned a blind-eye in order to profit handsomely. For the first year of rent Rubin paid Blue Icarus $18,000 a month *up front*, in its entirety. That is, Rubin gave Blue Icarus a check for at least $216,000 (there likely was also a security deposit) within months of Blue Icarus purchasing the investment property. (AC ¶ 551(h).) Following that payment, Blue Icarus received $18,000 from the Enterprise on a monthly basis for the following six years (2011-2017). (AC ¶¶ 60, 551(h).)  Each rental payment constitutes a violation of the TVPA, and another predicate act in furtherance of the Enterprise's pattern of racketeering. Blue Icarus immediately started making a return on its property such that it did not care what Rubin was doing in the Penthouse as long as he kept paying.

### *Blue Icarus Benefitted from TVPA Violations*

Blue Icarus financially benefitted from the Enterprise's violations of the TVPA. After Rubin, Powers, or Shon, or some combination of the three, convinced Plaintiffs to travel to New York, Blue Icarus harbored each Plaintiff at the Penthouse it owned for at least one night while the Defendants forced Plaintiffs, through fraud, force, and coercion to engage in commercial sex acts. (AC ¶ 551.) Blue Icarus was rewarded for harboring the Plaintiffs by Rubin in the amount of over $1.5 million over the course of approximately six years. (AC ¶ 551(h).)

Blue Icarus acted knowingly or at least in reckless disregard of the fact that its property was being used for forced commercial sex acts. As the owner of the Penthouse, Blue Icarus is liable for any illicit activity that takes place therein. However, Blue Icarus was also aware of the activity taking place in the Penthouse, as there were numerous warning signs that Blue Icarus turned a blind eye to: Blue Icarus ignored visits from the police and paramedics (AC ¶¶ 41, 44), Blue Icarus ignored seeing a recently battered young woman sitting in the Penthouse (*see* AC ¶ 40), Blue Icarus ignored that there was a room set up as a sex dungeon in the Penthouse that was not there when it rented the Penthouse to Rubin (AC ¶ 48), and Blue Icarus ignored the constant influx on new people to the Penthouse that were leaving looking battered and bruised. The owner or representative of Blue Icarus saw a woman in distress in Penthouse after she beaten and raped and ignored her. (*See* AC ¶ 40.) While each of these instances may not be enough on its own to put Blue Icarus on notice of what was occurring on its property, all of these things taken in their entirety were certainly enough to put Blue Icarus—or a reasonably responsible landlord—on inquiry notice.

Defendant Blue Icarus's motion to dismiss must be denied.

## **STATEMENT OF FACTS[2]**

Defendant Blue Icarus, LLC is a limited liability corporation in New York. (AC ¶ 24.) Blue Icarus was incorporated on November 30, 2010. (AC ¶ 36.) Blue Icarus's registered address is 501 Madison Avenue, 14th Floor, New York, New York 10022, with the Department of State, the same address as Ortoli Rosenstadt LLP, Blue Icarus's attorneys in this case. (AC ¶ 36.) Blue Icarus purchased the Penthouse located at 146 West 57th Street, 76th Floor, New York, New York, 10019, on February 7, 2011, which it rented to Rubin for $18,000 immediately that same month, with the entire first year paid up front. (AC ¶¶ 60, 551(h).) Blue Icarus began renting the Penthouse to Rubin in February of 2011 and Rubin ceased renting the property in September of 2017, only after counsel for Plaintiffs contacted counsel for Blue Icarus and counsel for Rubin. (AC ¶ 24.)

Representatives of Blue Icarus have been to the Penthouse since the installation of the "Dungeon" or "Red Room" and were introduced to at least one Plaintiff as the owners of the Penthouse. (AC ¶¶ 40, 48.) The Dungeon included BDSM-type instruments and devices and was designed solely for the purposes of the Enterprise. (AC ¶ 48.)

There were at least two separate incidents at the Penthouse that Blue Icarus failed to investigate that included an ambulance coming to the Penthouse and police coming to the Penthouse. (AC ¶¶ 41–44.) Blue Icarus did not even inquire about the incidents. (AC ¶ 44.) Even if Blue Icarus was unaware of the incidents, Blue Icarus failed to monitor its property and was recklessly indifferent to crimes and injuries occurring on its premises. (AC ¶ 45.)

Blue Icarus engaged in at least sixty-two predicate acts, all of which are violations of the TVPA. (AC ¶ 551.) Blue Icarus harbored all of the Plaintiffs while Rubin used means of force,

---

[2] Plaintiffs respectfully incorporate by reference their Statement of Facts in Opposition to Defendant Rubin's Motion to Dismiss.

4

threats of force, fraud, and coercion to cause Plaintiffs to engage in a commercial sex acts. (AC ¶¶ 551(a)–(g).) Blue Icarus also received rent over a six-year period in which—aside from the first year's rent that was paid upfront—rent was paid on at least 55 separate occasions. (AC ¶ 551(h).) Blue Icarus thereby benefitted financially from the Enterprise's activities and was rewarded for harboring the Plaintiffs. (AC ¶ 551(h).) At a minimum, Blue Icarus acted—or failed to act—in reckless disregard of the Enterprise and the Enterprise's illicit activities. (AC ¶ 551.)

## LEGAL STANDARD

Plaintiffs respectfully incorporate by reference the legal standard included in their Opposition to Defendant Rubin's Motion to Dismiss.

## ARGUMENT[3]

### I. PLAINTIFFS ADEQUATELY PLEAD THAT BLUE ICARUS WAS AN ACTIVE PARTICIPANT IN THE RICO ENTERPRISE, SUCH THAT THE COURT SHOULD NOT DISMISS PLAINTIFFS' 18 U.S.C. § 1962(c) CLAIM AGAINST BLUE ICARUS

Plaintiffs adequately plead that Blue Icarus is an active participant in the Enterprise, such that the Court should not dismiss the RICO claim against Blue Icarus.

#### A. Plaintiffs Adequately Plead an Association-in-Fact Enterprise Between Rubin, Powers, Shon, Schnur, Blue Icarus, the Doe Company, and John Doe

Plaintiffs adequately plead an association-in-fact Enterprise between the Defendants. An enterprise is a group of individuals or organizations that are associated in fact but not a legal entity. 18 U.S.C. § 1961(4). A civil RICO claim arises under 18 U.S.C. § 1962(c) when a RICO "person" participates in the conduct of a RICO "enterprise" through a pattern of racketeering. See 18 U.S.C. § 1962(c). The "person" and "enterprise" in a civil RICO action must be distinct. *See Riverwoods Chappaqua corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994). In

---

[3] Plaintiffs respectfully incorporate all arguments made in each of their Oppositions to Defendants' respective Motions to Dismiss.

other words, a RICO claim requires at least two separate and distinct entities. *See Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001) (requiring "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name"). There are two types of RICO enterprises: "'legal entities' such as corporations and partnerships, and 'any union or group of individuals associated in fact although not a legal entity.'" *Gross v. Waywell*, 628 F. Supp. 2d 475, 497 (S.D.N.Y. 2009) (quoting 18 U.S.C. § 1961(4)). The latter enterprise, known as an "association-in-fact" enterprise, applies here where the RICO enterprise is comprised of the at least seven RICO persons: five individual Defendants (Rubin, Powers, Shon, Schnur, and John Doe) and two legal-entity defendants (Blue Icarus and the Doe Company). An enterprise-in-fact is evidenced by "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Plaintiffs sufficiently plead that Defendants Rubin, Powers, Shon, Schnur, Blue Icarus, the Doe Company, and John Doe—or any combination thereof—constitute an enterprise under 18 U.S.C. § 1961(4) that has existed since at least 2011, if not before. (AC ¶ 60.) Plaintiffs have adequately alleged a separate and distinct Enterprise from the pattern of racketeering activity.

### B. Plaintiffs Adequately Plead a Pattern of Racketeering, Lasting for a Period of at Least Six Years and Continuing Today

Plaintiffs adequately plead a pattern of racketeering activity for at least six years. An enterprise can be either closed or open-ended. *City of New York v. Gordon*, 155 F. Supp. 3d 411, 424 (S.D.N.Y. 2015). In order to demonstrate open-ended continuity, a plaintiff must show "a threat of continuing criminal activity 'extending indefinitely into the future.'" *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 149 (E.D.N.Y. 2001), aff'd sub nom. *Watral v. Silvernails Farm LLC.*, 51 Fed. Appx. 62 (2d Cir. 2002) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*,

6

492 U.S. 229, 242 (1989)). Where an enterprise is engaged in "inherently unlawful" acts, there is a threat of continuing criminal activity and open-ended continuity exists. *Watral,* 177 F. Supp. 2d at 149 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). Narcotics trafficking and obstruction of justice are inherently unlawful. *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) (finding open ended continuity established where acts of enterprise are "inherently unlawful," including "obstruction of justice" and "narcotics trafficking").

Plaintiffs plead both closed and open-ended continuity as the Plaintiffs have alleged predicate acts dating back more than six years as well as a likelihood that the predicate acts will continue indefinitely into the future. (AC ¶¶ 49, 53.) Plaintiffs plead closed-ended continuity by alleging the Enterprise began in February of 2011, when Blue Icarus purchased the apartment and Rubin leased the apartment. (AC ¶¶ 24, 37, 49.) Plaintiffs plead open-ended continuity by alleging obstruction of justice and narcotics trafficking. (AC ¶ 53.) Plaintiffs adequately plead a pattern of racketeering activity that is both closed and open-ended.

### C. Plaintiffs Plead That Blue Icarus Engaged In at Least Sixty-Two RICO Predicate Acts, All of Which Are Violations of 18 U.S.C. § 1591 (sex trafficking by force, fraud, or coercion)

Plaintiffs plead that Blue Icarus engaged in dozens of RICO predicate acts, all of which are violations of the sex trafficking statutes. Sex trafficking is a RICO predicate act. 18 U.S.C. § 1962(a). A person that knowingly benefits from participating in a human trafficking ring and knows, or should know, that they are engaged in the human trafficking ring, is liable under the TVPA. 18 U.S.C. § 1595(a). On every occasion that Blue Icarus received rent from Rubin, it committed a violation of 18 U.S.C. § 1591.

7

### 1. Blue Icarus Benefitted Financially From Participation in the Sex Trafficking Venture, Receiving $18,000 Per Month in Rent for Nearly Six Years

Blue Icarus benefited financially from its participation in the Enterprise's sex trafficking, receiving rent for nearly six years from Rubin. A person that benefits financially that knows, or should have known, that the financial benefit is coming from illegal acts is liable under 18 U.S.C. § 1595(a). At least one court in this Circuit has found that providing lodging to victims under the TVPA in exchange for money, where there is a plausible inference of knowledge, is enough to state a claim against the individual with such knowledge and the individual's employer. *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013) (denying motion to dismiss TVPA claims against individual defendant and defendant's employer where plaintiff plead that "the vulnerable Haitian boys residing at PPT had no place to sleep except PPT" and where co-defendant "instructed PPT administrators to deny [victims] requests for financial assistance so they would have to appeal to" the co-defendant). Blue Icarus entered the Penthouse on numerous occasions to give it enough information that it should have known that the Penthouse was being used for sex trafficking. (AC ¶¶ 40, 41, 44, 48.) There is a plausible inference that Blue Icarus was aware of the sex trafficking victims that were harbored in its Penthouse. Blue Icarus financially benefitted from its participation in the sex trafficking venture.

### 2. Blue Icarus Harbored Plaintiffs and Other Victims of the Enterprise on Dozens of Occasions Over a Period of Nearly Six Years

Blue Icarus harbored Plaintiffs and other victims of the Enterprise on dozens of occasions over a period of almost six years. Anyone who knowingly harbors sex trafficking victims is liable under 18 U.S.C. § 1591(a)(1). A plausible inference of knowledge of harboring sex trafficking victims is enough to survive a motion to dismiss. *Jean-Charles*, 937 F. Supp. 2d at 288. Blue Icarus, its employees, contractors, and representatives, were in the Penthouse on

numerous occasions that would have led a reasonable landlord to believe that the Penthouse was harboring sex trafficking victims. (AC ¶¶ 40, 41, 44, 48.) On at least one occasion individuals were in the Penthouse the morning after one Plaintiff was beaten and raped and met the Plaintiff, introduced themselves as the owner of Blue Icarus, and saw Plaintiff in a state of physical distress following the events of the previous night. (AC ¶¶ 41–44.) Moreover, there was a built-in sex dungeon in the Penthouse that Blue Icarus owned. (AC ¶ 48.) Blue Icarus harbored victims of sex trafficking, including Plaintiffs, on dozens of occasions over the last six years.

### 3. Blue Icarus Knew or, at Best, Acted in Reckless Disregard of the Fact that, Rubin Would Use Means of Force and Coercion to Cause Plaintiffs to Engage in Commercial Sex

Blue Icarus either knew, or was recklessly indifferent of the fact that its tenant—Rubin—would use means of force, fraud, and coercion to cause Plaintiffs to engage in commercial sex acts. A defendant is liable under 18 U.S.C. § 1591 if it acts in reckless disregard of means of force, fraud, or coercion are being used and the defendant benefits financially from such reckless disregard. A property owner may be "subject to liability for either a public or private nuisance on its property" where it knew or should have known of such nuisance. *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1050 (2d Cir. 1985). If Blue Icarus did not act knowingly, it acted in reckless disregard of the fact that Rubin was using means of force, fraud, and coercion to force Plaintiffs into engaging in commercial sex acts. (AC ¶ 551.) Moreover, Blue Icarus often entered the Penthouse to conduct repairs or renovations and even met one of the Plaintiffs in the Penthouse on an occasion when she was showing signs of a recent beating and rape by Rubin. (AC ¶ 40.) Lastly, Blue Icarus failed to investigate any incidents that required emergency personnel, police and an ambulance, to enter the Penthouse on separate occasions. (AC ¶¶ 41–44.) Even if Blue Icarus was not aware of these incidents, it should have been as it has a duty to monitor its property and not allow its property to be used for illegal activities. Blue Icarus either

9

knew or was recklessly indifferent of the fact that Rubin would use means of force, fraud, and coercion to force Plaintiffs to engage in commercial sex acts.

### D. Blue Icarus Exercised Sufficient Participation in the Enterprise to Be Found Liable Under 18 U.S.C. § 1962(c)

Blue Icarus exercised sufficient operational and management control over the Enterprise to be liable under RICO. A plaintiff must allege that a defendant participates in the operation or management of the enterprise, has a part in directing the affairs of the enterprise, and exerts some control over the enterprise. *DeFalco v. Bernas*, 244 F.3d 286, 312 (2d Cir. 2001). Without Blue Icarus, the Enterprise would have no location to conduct their racketeering activity and human trafficking ring. Blue Icarus willfully neglected the actions of the other Defendants because Blue Icarus was being paid such high rent and was being paid that rent upfront, in its entirety. (AC ¶ 551(h).) Blue Icarus exercised sufficient participation in the Enterprise to be found liable under 18 U.S.C. § 1962(c).

### E. Plaintiffs Properly Plead Damages Which are Compensable Under RICO

Plaintiffs respectfully incorporate by reference Section II(C) of their Opposition to Defendant Rubin's Motion to Dismiss, outlining their compensable damages under RICO.

## II. PLAINTIFFS ADEQUATELY PLEAD THAT BLUE ICARUS KNOWINGLY— OR AT LEAST RECKLESSLY—JOINED A RICO CONSPIRACY UNDER SECTION 1962(d)

As Plaintiffs adequately plead a substantive RICO violation, Plaintiffs also properly allege a RICO conspiracy. To plead a RICO conspiracy, a plaintiff must first plead a proper RICO substantive claim. *Ferri v. Berkowitz*, 678 F. Supp. 2d 66, 75 (E.D.N.Y. 2009). Plaintiffs have properly pleaded a substantive RICO claim, as demonstrated *supra* in Section I. Plaintiffs plead numerous facts showing the existence of a RICO conspiracy, that began as early as

February 2011. (*See, e.g.,* AC ¶¶ 564–71.) Plaintiffs have sufficiently pleaded a RICO conspiracy claim.

### III. BLUE ICARUS DOES NOT CONTEST THAT PLAINTIFFS' ADEQUATELY PLEAD THEIR TVPA CLAIM AGAINST BLUE ICARUS

Blue Icarus fails to contest that Plaintiffs adequately plead their TVPA claims against it. Courts "must credit the facts in the plaintiff's well-pleaded complaint as true and draw all plausible inferences in the plaintiff's favor." *Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559 (ARR), 2017 WL 6501864, at *6 (E.D.N.Y. Dec. 19, 2017). As Defendant Blue Icarus does not contest that the TVPA claim was adequately plead against it, this claim may not be dismissed. Moreover, as Plaintiffs allege Blue Icarus violated the TVPA on more than two occasions, and as the TVPA is a predicate act, Blue Icarus admits that Plaintiffs have adequately pleaded at least two predicate against it, warranting the denial of Blue Icarus's motion to dismiss the RICO claims against it.

Defendant Blue Icarus is likewise wrong in arguing that Plaintiffs failed to plead that Blue Icarus knowingly joined a RICO conspiracy. A RICO conspiracy claim requires an allegation that the defendant agreed to participate in an "enterprise's affairs' through a pattern of racketeering, 'not a conspiracy to commit predicate acts." *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F.Supp. 2d 64, 89 (E.D.N.Y. 2011) (quoting *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009). The "'operation or management' test, however, does not apply to RICO conspiracy." *Id.* "Assuming that a RICO enterprise exists, [one] must prove only that the defendants . . . know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual roles." *Id.* (quoting *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000)). Here, Plaintiffs plead that Blue Icarus was generally aware of the conspiracy and its reaches beyond its own involvement (*see* AC ¶ 39) and agreed to participate in the Enterprise's

11

affairs through a pattern of racketeering activity (*See* AC ¶ 60). This is sufficient to make out of claim of conspiracy under 18 U.S.C. § 1964(d).

## **CONCLUSION**

For the above reasons and those stated in Plaintiffs' oppositions to the four other Defendants' motions, Blue Icarus's Motion to Dismiss should be denied.

Dated: New York, New York  Respectfully,
      March 14, 2017

                                              /s/_____
                                            John G. Balestriere
                                            Jillian L. McNeil
                                            Brian L. Grossman
                                            **BALESTRIERE FARIELLO**
                                            225 Broadway, 29th Floor
                                            New York, New York 10007
                                            Telephone:    (212) 374-5401
                                            Facsimile:     (212) 208-2613
                                            john.balestriere@balestrierefariello.com
                                            *Attorneys for Plaintiff*