UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON, and LAUREN FULLER, | : : : : : |  |
| Plaintiffs, | : : |  |
| v. | : : | CIVIL ACTION NO. 1:17-cv-06404 (BMC) |
| HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC, and the DOE COMPANY, | : : : : : |  |
| Defendants. | : |  |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF YIFAT SCHNUR'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

**DUANE MORRIS LLP**
**A DELAWARE LIMITED LIABILITY PARTNERSHIP**

Eric R. Breslin
Melissa S. Geller
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102-5429
Tel.: (973) 424 2000
Fax: (973) 424 2001
erbreslin@duanemorris.com
msgeller@duanemorris.com
*Attorneys for Yifat Schnur*

# TABLE OF CONTENTS

I. **Plaintiffs Fail to Allege Violations of the TVPA / TVPRA.**............................................1

II. **Plaintiffs Fail to Allege Witness Tampering as a Predicate Act.**..................................2

III. **Plaintiffs Fail to State a Cause of Action for RICO or RICO Conspiracy.**.................4

    A. Plaintiffs Lack Standing Because They Fail to Assert a RICO Injury. ................... 4

    B. Plaintiffs Fail to Allege That Ms. Schnur Had Any Operational Or Management Control. ............................................................................................... 5

    C. Plaintiffs fail to allege a common purpose and a course of racketeering conduct. ..................................................................................................................... 6

    D. Plaintiffs fail to allege a RICO Conspiracy. ........................................................... 7

IV. **Ms. Schnur Withdraws Her Opposition to Venue.**.........................................................7

**CONCLUSION** ............................................................................................................................8

ii

## **TABLE OF AUTHORITIES**

**Cases**

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ............................9

*Gause v. Philip Morris*, No. 99-cv-6226. 2000 WL 34016343 (E.D.N.Y. Aug. 8, 2000) ...........................................................................................................................6

*Gotlin ex rel. Cty. of Richmond v. Lederman*, 483 F. Appx. 583 (2d Cir. 2012) .............................6

*Hecht v. Commerce Clearing House, Inc.*, 897 F. 2d 21 (2d Cir. 1990) ..........................................7

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258 (1992) ....................................................................7

*Madanes v. Madanes*, 981 F. Supp. 241 (S.D.N.Y. 1997) ................................................................9

*Pfizer v. Stryker*, No. 02-cv-8613. 2003 WL 21660339 (S.D.N.Y. Jul. 15, 2003) ...........................7

**Statutes**

18 U.S.C. § 1512(b) ..........................................................................................................................5

18 U.S.C. § 1512(d) ..........................................................................................................................5

18 U.S.C. § 1591 ..............................................................................................................................4

Yifat Schnur submits this reply memorandum of law in further support of her motion to dismiss the Amended Complaint.[1] In their opposition, Plaintiffs do little more than reiterate the baseless and conclusory claims asserted in the Amended Complaint. The Amended Complaint should be dismissed entirely.

It is difficult to conjure up a more ill-conceived complaint than the Amended Complaint as directed at Ms. Schnur. Plaintiffs had the opportunity to document the factual support underpinning their allegations and to explain their theory of liability in their opposition to the motions to dismiss. They utterly failed to do so, despite the fact that their amendment afforded them additional time. Instead, they do little more than repeat the same tired allegations from the Amended Complaint, asserting conclusory, even contradictory facts. Where those facts are insufficient, Plaintiffs misstate Ms. Schnur's arguments, or create new facts. They offer no analysis of the legal theories underpinning their allegations, and no support with citations to pertinent law. Simply to say, as plaintiffs do repeatedly, that they are entitled at this procedural moment in time, to have their allegations deemed "true" really begs the question as to why nothing coherent is set forth. Their rote reliance on the motion to dismiss standard itself speaks volumes and is the traditional last refuge of deeply flawed causes of action.

We will go a step further. So inadequate is Plaintiffs' opposition, that it almost merits no reply. Yet, reply Ms. Schnur must, if only to highlight, yet again, the glaring inadequacies of the Amended Complaint, and address the most serious misrepresentations of her arguments.

**I.     Plaintiffs Fail to Allege Violations of the TVPA / TVPRA.**

First, Plaintiffs claim that Ms. Schnur failed to move to dismiss Count Three, alleging

---

[1] For the Court's reference, Ms. Schnur's opening Memorandum of Law in Support is at ECF 59-1, and her Supplemental Memorandum of Law in Support is at ECF 74.

violations of the TVPA and the TVPRA.  Schnur Opp., pp. 3, 13.[2]  This is, not surprisingly, blatantly false.  Ms. Schnur explicitly and expressly moved to dismiss Count Three.  Schnur Supplemental Mem., p. 7 (stating "Ms. Schnur cannot be held liable under 18 U.S.C. § 1591.  Thus. . .the Third Cause of Action should be dismissed for failure to state a claim.); *see also id.*, p. 1 (stating that she moves to dismiss the Complaint); *id.*, p. 6 (stating, in heading, that "Plaintiffs fail to allege violations of the TVPRA"); *id.*, p. 7 (requesting relief in the form of dismissal of the Amended Complaint).

Plaintiffs offer almost no defense of their TVPA / TVPRA claims, as RICO predicates or stand-alone claims.  Plaintiffs simply state, in conclusory fashion, that Ms. Schnur benefitted financially and therefore violated the TVPA / TVPRA.  Schnur Opp., pp. 4, 13.  Plaintiffs do not address the *Twombly / Iqbal* arguments raised by Ms. Schnur, nor engage in substantive arguments.  As Plaintiffs offer no opposition to Ms. Schnur's attack on their TVPA / TVPRA allegations, Ms. Schnur refers the Court to her argument set forth in her Supplemental Memorandum.  The TVPA / TVPRA claims as RICO predicates and substantive allegations should be dismissed as they are profoundly without merit.

**II.     Plaintiffs Fail to Allege Witness Tampering as a Predicate Act.**

Plaintiffs continue to allege that Ms. Schnur engaged in witness tampering by taking three actions: drafting a "stock" Confidentiality Agreement, drafting a general release of liability, and by allegedly agreeing to meet with Ms. Hallman about Ms. Hallman's criminal case.  *See* Schnur Opp., p. 11.  Notable by its absence is any analysis, legal argument, or authority

---

[2] As Plaintiffs incorporate several arguments by reference to Mr. Rubin's brief, Plaintiffs' opposition briefs will be cited by reference to the defendant.  For example, the Opposition to Ms. Schnur's Motion to Dismiss will be cited as the "Schnur Opposition," while the Opposition to Mr. Rubin's Motion to Dismiss will be cited as the "Rubin Opposition."

2

supporting this unique theory of witness tampering. Plaintiffs devote just thirteen lines to their argument in support, consisting entirely of a restatement of their allegations from the Amended Complaint. *See id.* Those allegations, as Ms. Schnur set forth in detail in her moving papers, consist of nothing more than conclusory, bare assertions, lacking even a scintilla of the factual support required by Rule 8.

Even if Plaintiffs assertions could satisfy the *Twombly / Iqbal* standard, they still fail to state a claim for witness tampering as a matter of law. Witness tampering requires, at a minimum, a showing that the defendant harassed, intimidated, coerced, corruptly persuaded, or threatened a witness in connection with a pending or contemplated federal judicial proceeding. *See* 18 U.S.C. § 1512(b) (witness tampering by intimidation, threats, or corrupt persuasion); 18 U.S.C. § 1512(d) (witness tampering by harassment). Plaintiffs fail to point to any threat, coercion, intimidation, harassment, or even persuasion (much less corrupt persuasion), by Ms. Schnur. Plaintiffs do not allege any facts demonstrating the existence of any contact at all between Ms. Schnur and the Plaintiffs, so how she could have possibly engaged in witness tampering remains a mystery.

The closest Plaintiffs get to alleging contact between Ms. Schnur and any Plaintiff is the email allegedly drafted by Ms. Schnur that Ms. Powers gave to Ms. Hallman for Ms. Hallman to send to her criminal attorney.[3] This communication undercuts Plaintiffs' entire theory and contradicts the Amended Complaint. Plaintiffs' argument is that Ms. Schnur was attempting to

---

[3] In their statement of facts, Plaintiffs now assert that Ms. Schnur "had the Enterprise offer Hallman $80,000 if Hallman signed a retainer agreement with Schnur." Schnur Opp., p. 4. This allegation is not in the Amended Complaint. The Amended Complaint alleges that the *enterprise* sought to pay Ms. Hallman $80,000 and says nothing about Ms. Schnur being the driving force or even being involved. *See* Amended Compl., ¶ 522. This allegation is outside the four corners of the pleading and should be disregarded. Additionally, it is purely speculative, tossed into the Schnur Opposition for the improper purpose of bolstering Plaintiffs fatally weak allegations.

undermine Ms. Hallman's criminal counsel. Amended Compl., ¶ 522. If that were the case, Ms. Schnur would not have informed Ms. Hallman's counsel of her plans to talk with Ms. Hallman or have advised him of her involvement. In any event, it is still unclear how Plaintiffs can allege with straight faces that Ms. Schnur "agreed to represent" or "attempted to represent" Ms. Hallman from the one lonely allegation that Ms. Schnur agreed to a meeting.

Finally, Plaintiffs do not even bother to address the lack of a pending or contemplated federal proceeding at the relevant time. Plaintiffs have literally failed to allege any element of the witness tampering statute. These allegations cannot serve as RICO predicates.

### III. Plaintiffs Fail to State a Cause of Action for RICO or RICO Conspiracy.

#### A. Plaintiffs Lack Standing Because They Fail to Assert a RICO Injury.

First, Plaintiffs attempt to convert their personal injuries into property or business injury by claiming that their business was damaged by their physical injuries. Lost income as a result of physical injury, however, does not convert a personal injury into a property loss. *See, e.g., Gotlin ex rel. Cty. of Richmond v. Lederman*, 483 F. Appx. 583, 586 (2d Cir. 2012) (holding "monetary losses incidental to [] personal injuries [] cannot be constitute injuries to 'property' as required to state a RICO claim."); *Gause v. Philip Morris*, No. 99-cv-6226. 2000 WL 34016343, *4 (E.D.N.Y. Aug. 8, 2000) (Seybert, D.J.) (holding that "loss of income [] is not considered a 'loss of property') (citing *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992). Nor do Plaintiffs offer any real support for their proposition that physical injury becomes a business injury simply because the plaintiffs are "sole proprietors."

Second, the proximate cause of Plaintiffs' injuries, as alleged, are the non-RICO predicate torts of assault and battery. Plaintiffs argue that, but for the alleged RICO predicates, Plaintiffs would not have suffered injury. The Supreme Court has categorically rejected "but for" causation in the RICO context on more than one occasion. *See, e.g., Holmes v. Sec. Inv'r*

4

*Prot. Corp.*, 503 U.S. 258, 266-268 (1992) (holding that "but for" causation is insufficient to state a RICO injury); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F. 2d 21, 23 (2d Cir. 1990) (noting that "[b]y itself, factual causation (e.g., "cause-in-fact" or "but-for" causation) is not sufficient" to state a RICO injury). As the Supreme Court stated, "proximate cause is [] required." *Holmes*, 503 U.S. at 268. The proximate causes of Plaintiffs alleged injuries were the alleged assaults, which are not a RICO predicate offense. *See, e.g.,* Amended Compl., ¶ 727 (alleging that "as a direct and proximate result of Defendant Rubin's battery, Plaintiff suffered monetary as well as non-economic damages. . .").

Thus, even if Plaintiffs could rely on *Pfizer v. Stryker* to establish that damage to an implant is damage to property, Plaintiffs still cannot make out a RICO injury.[4] Furthermore, a review of the Amended Complaint makes it clear that Plaintiffs are seeking damages for their physical injuries, not the value of any damaged implant. *See, e.g.,* ¶ 230 (alleging physical injury resulting from damaged implant); ¶ 420 (alleging physical injury resulting from damaged implant); ¶ 678 (alleging "bruising and damages to Hallman's breasts, including Hallman's breast implants). As such, Plaintiffs lack standing to assert a RICO claim.

  B.  Plaintiffs Fail to Allege That Ms. Schnur Had Any Operational Or Management Control.

All Plaintiffs can allege is that Ms. Schnur did some legal work for Mr. Rubin related to his allegedly improper activities. This does not rise to the level of "operational or management" control necessary to establish liability under the substantive RICO statute, as set forth at length in Ms. Schnur's Memorandum in Support of her Motion to Dismiss. *See* Mem. in Support, pp. 13-

---

[4] *Pfizer v. Stryker*, No. 02-cv-8613. 2003 WL 21660339 (S.D.N.Y. Jul. 15, 2003) is a contract case that has no relevance to RICO or RICO injuries. Nor does it hold that prosthetics are "personal property" sufficient to state a RICO injury. It does not, therefore, stand for the cited proposition. Plaintiffs offer no authority for their argument that damage to an implant, resulting in physical injury, constitutes damage to property sufficient to confer RICO standing.

14. Plaintiffs' response is simply to state that Ms. Schnur "maintained sufficient operational control over the affairs of the Enterprise," with no explanation as to how this might be. Schnur Opp., p. 11. Plaintiffs then advance allegations that Ms. Schnur drafted that stock Confidentiality Agreement, and "attempted to represent Plaintiff Hallman" as evidence her operational or management control. *Id.* at p. 12. It is not clear (because Plaintiffs offer no explanation) how this routine legal work could ever rise to the level of Ms. Schnur having operational or management control. Because all Ms. Schnur is alleged to have done is some routine legal work, Plaintiffs fail to allege that she had operational or management control, and can therefore not maintain a RICO cause of action against her.

      C.      <u>Plaintiffs fail to allege a common purpose and a course of racketeering conduct.</u>

Plaintiffs fail to adequately explain how the Amended Complaint states a common purpose or a course of racketeering activity, both of which are required to state a cause of action under the RICO statute. Plaintiffs simply restate their prior assertion – that the purpose of the "enterprise" was to procure women for Mr. Rubin, and "to cover up Rubin's sexual misconduct and criminal abuse of the women and to serve as a cover for his wide-ranging human trafficking scheme." Rubin Opp., p. 13. Plaintiffs fail to present any explanation as to how such motives can be attributed to Ms. Schnur, based on the facts alleged in the Amended Complaint. The very explicit Confidentiality Agreement and the fact that Ms. Schnur purportedly requested permission from Ms. Hallman's attorney to speak with Ms. Hallman suggest precisely the opposite – that Ms. Schnur had no nefarious motives or any reason to suspect illegal activity. Plaintiffs blithely state the existence of a common motive, but then fail to back it up. Hence, their opposition and the Amended Complaint, fail.

Plaintiffs' opposition suffers from the same defect with regard to a pattern of racketeering activity. Plaintiffs claim that they have alleged the various roles each defendant played in the

alleged organization. This statement, however, is bereft of "any solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise . . . from which [the Court] could fairly conclude that its 'members functioned as a unit." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal citation omitted). Without anything approximating actual information, much less "solid information," the Amended Complaint is nothing more than *ipse dixit* and should be dismissed.

      D.      <u>Plaintiffs fail to allege a RICO Conspiracy.</u>

Having persistently failed to offer any concrete allegations to support a RICO case, Plaintiffs cannot state a claim for RICO conspiracy. Furthermore, to plead that Ms. Schnur joined a RICO conspiracy, Plaintiffs must do more than plead that she was "generally aware of the conspiracy and its reaches beyond her own involvement." Schnur Opp., p. 13. Plaintiffs must show that Ms. Schnur knew the general nature of the conspiracy, not just that one may have existed. *Madanes v. Madanes*, 981 F. Supp. 241, 259 (S.D.N.Y. 1997). Plaintiffs cannot meet this burden by simply stating that Ms. Schnur joined a conspiracy, supported by nothing more than speculation. Plaintiffs' opposition fails to articulate how the few facts alleged in the Amended Complaint, support even an inference that Ms. Schnur had knowledge of anything more than consensual rough sex. Plaintiffs' allegations as to RICO conspiracy therefore fail.

**IV.**      **Ms. Schnur Withdraws Her Opposition to Venue.**

As has been demonstrated in our prior filings, Ms. Schnur believes that she has been unfairly named in this action, and is anxious for a ruling on the merits of her motion to dismiss. For that reason, she withdraws any contention as to proper venue as applied to her alone and consents to adjudication of this matter in the Eastern District of New York.

## CONCLUSION

Plaintiffs' opposition is devoted in large part to argument that has nothing to do with Ms. Schnur. This is more than a bit ironic, since the Amended Complaint she is charged in also has very little to do with Ms. Schnur. The few pages that are directed at Ms. Schnur are little more than a restatement of the allegations in the Amended Complaint. Plaintiffs have failed to offer legal argument to support civil liability, or point to any factual support for the asserted claims. The Amended Complaint fails as a matter of law in all respects. It should be dismissed in its entirety with prejudice.

Dated: March 21, 2018
      Newark, New Jersey

By:   /s/ Eric R. Breslin       .
Eric R. Breslin
Melissa S. Geller
**DUANE MORRIS LLP**
**A Delaware Limited Liability Partnership**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, NJ 07102-5429
Telephone: +1 973 424 2000
Fax: +1 973 424 2001
*Attorneys for Yifat Schnur*