UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON and LAUREN FULLER,

*Plaintiffs*,

-*against*-

HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC, and the DOE COMPANY,

*Defendants*.

Case No.: 1:17-CV-06404 (BMC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OF DEFENDANT HOWARD RUBIN**

Howard Rubin respectfully submits this Reply Memorandum of Law in further support of his Motion to Dismiss. For the reasons set forth in Rubin's opening and supplemental briefs ("Opening Br." and "Supp. Br."), it is abundantly clear that this case cannot proceed. There is no venue in the Eastern District of New York because none of the conduct that allegedly gave rise to the claimed injuries occurred in this District, and no Defendant lives or transacts business in the District. None of the causes of action set forth in the Amended Complaint can survive Defendants' Motions to Dismiss. The RICO causes of action are not sustainable because, among other things, the alleged damages were not proximately caused by any of the alleged racketeering acts, and they are the result of alleged *bodily* injuries, not injury to "business or property," as the RICO statute requires. The causes of action premised on a violation of 18 U.S.C. § 1591(a) fail because no Plaintiff is alleged to have engaged in a commercial sex act as a result of force, fraud, or coercion. The claims arising under 18 U.S.C. § 1030(a) fail because the pleadings are utterly devoid of factual allegations to support them. And the state law causes of action fail because the pleadings, in conjunction with documents that may be considered on a motion to dismiss, make clear that Plaintiffs consented to their encounters with Rubin.

*The Amended Complaint Does Not Establish Venue*

In his briefing, Rubin demonstrated that Plaintiffs failed to establish that venue lies in the Eastern District for any of the counts in the Amended Complaint because Plaintiffs do not, and cannot, allege that any Defendant "resides, is found, has an agent, or transacts his affairs" in the Eastern District, or that a "substantial part of the events or omissions giving rise to [any] claim" occurred in this District. Plaintiffs respond by noting that they allegedly travelled through airports in this District for their encounters with Rubin, and that the mere fact that they did so establishes venue. Plaintiffs' Opposition to Rubin's MTD ("Opp.") at 6. This is not sufficient.

Title 28 U.S.C. § 1391(b) requires that for venue to be found in this district a "substantial part" of the events giving rise to Plaintiffs' cause of action must have occurred here. The Second Circuit has observed that the use of the word substantial is to be "take[n] seriously." *See Daniel v. Am. Bd. Of Emergency Medicine*, 428 F.3d 408, 431-32 (2d Cir. 2005). Plaintiffs fall far short of this threshold because, as Rubin made clear in his briefing, **none** of the events giving rise to the claims allegedly occurred in the Eastern District. Opening Br. at 8-10; Supp. Br. at 1.

Faced with this, Plaintiffs argue that their trips through airports "directly resulted" in numerous predicate acts, all of which occurred outside the Eastern District. Opp. at 5; Plaintiffs' Opposition to Schnur's MTD at 6. But that is not the standard. Incidental travel through this District to and from events (in another District) that give rise to the claim does not suffice under § 1391(b) to base venue here. Not surprisingly, Plaintiffs cite no authority whatsoever for this proposition that, if accepted, would expand the federal venue requirement beyond recognition. Under Plaintiffs' position, venue could lie virtually anywhere through which a party travels before arriving in a district where substantial events actually took place.

Plaintiffs also argue that, even if they cannot satisfy § 1391(b), there is still venue over their RICO claims under 18 U.S.C. § 1965(a), which allows for venue over RICO claims in any district in which a Defendant "transacts his affairs." But the Amended Complaint does not allege that any Defendant conducted any business at all in this District – and certainly not that they did so at the time Plaintiffs' action was commenced, as is required under § 1965(a). *See Welch Foods, Inc. v. Packer*, No. 93-CV-0811E(F), 1994 WL 665399, at *3 (W.D.N.Y. Nov. 22, 1994) ("both the language of the statute (which is written in the present tense) and interpretative case law make clear that venue will not lie on these bases unless the defendant is transacting his affairs in the district . . . on the day the complaint is filed.").

Given the futility of their effort to establish venue in the Eastern District, Plaintiffs resort to mischaracterizing their own pleadings. On page 8 of their Opposition to Schnur's MTD, Plaintiffs state: "Rubin specifically chose an airport located in this District." Plaintiffs cite to paragraph 327 of the Amended Complaint for this proposition. However, paragraph 327 of the Amended Complaint contains no assertion whatsoever about Rubin or, for that matter, about the purchase of plane tickets. It simply alleges that one of the Plaintiffs took a cab from an unspecified airport to the apartment in Manhattan where the relevant events occurred. Plaintiffs provide no authority for their contention that purchasing or arranging for the purchase of airline tickets while outside of a district – even if an actual purchase were alleged – can confer venue in that district.

*The Fatal Defects In Each of the Causes of Action*

*RICO* – Plaintiffs' efforts to invoke the civil RICO statute and its treble damages provision to ratchet up straightforward state law tort claims of assault and battery must fail for at least two independent reasons,[1] each dispositive.

(a) <u>Causation</u>: As the Second Circuit has repeatedly held, a RICO plaintiff must establish that a predicate act directly caused injury. *See* Opening Br. at 12-13 (citing authority). Assault and battery are not RICO predicates. Rubin's opening and supplemental briefs showed that the predicate acts identified in the pleadings (wire fraud, money laundering, obstruction of justice, witness tampering, and narcotics distribution) are not alleged to have proximately caused Plaintiffs' injuries; rather, Plaintiffs' injuries occurred because of alleged physical attacks by Rubin. Those alleged attacks are, at most, assault and battery, which are not RICO predicate acts. Therefore the RICO causes of action must be dismissed. *See id.*; Supp. Br. at 2.

---

[1] Rubin demonstrated in his earlier papers that Plaintiffs' RICO claims also failed for other reasons, *see* Opening Br. at 10-18, which we do not address here.

3

Plaintiffs' only response is to attempt to link their injuries to the purported violations of the sex trafficking statute, 18 U.S.C. § 1591(a). *See* Opp. at 22 ("Plaintiffs injuries arose from all Defendants' participation in the sex trafficking venture which allowed Rubin to use threats of force and force – i.e., assault and battery – to cause Plaintiffs to engage in commercial sex acts. This link is sufficiently direct to constitute proximate cause."). This muddled argument must be rejected.

First, it is not sufficient that an alleged sex trafficking venture "allowed" the force that directly caused the claimed injuries to occur. The injury must be the ***direct result*** of racketeering acts. Second, as explained in Rubin's opening and supplemental briefs and below, absent from the Amended Complaint are any allegations that Rubin used force or threats of force to cause Plaintiffs to engage in commercial sex acts. The only fair reading of the Amended Complaint is that each Plaintiff willingly travelled to New York for the purpose of engaging in commercial sex acts with Rubin (and signed the Releases stating as much). Each Plaintiff now complains to have been subjected to more force than anticipated during those encounters. This does not constitute a violation of § 1591(a).

(b)     Injury to their "business or property": In addition, Plaintiffs do not allege injury to their business or property, but, rather, bodily injury. This type of injury does not satisfy the requirements of RICO. In his opening brief, Rubin cited ample authority establishing that physical and emotional injuries "personal in nature," and losses "derivative" of such injury, cannot support a RICO claim. Opening Br. at 10-11. Plaintiffs cite no authority to the contrary. Instead, Plaintiffs seek to now transform their claim by asserting that each was a "sole proprietor" engaged in the modelling business whose meetings with Rubin were "business trips." Opp. at 20-21. There is no reference in the Amended Complaint to the manner in which any Plaintiff allegedly structured a

4

business operation or to "business trips." And the fact remains that the alleged injuries were cuts, tears, bruises, and other bodily injuries. Am. Compl. at ¶¶ 164-68, 226-31, 257-61, 294-301, 470-78, 487-505. Injuries of this type, and their attendant consequences, are not within the scope of the RICO statute.

Plaintiffs also assert that their implants constitute property that was damaged by Rubin. Injuries to items that are effectively part of one's body are not injuries to "property" as that term is used in RICO. If Plaintiffs' argument were accepted, then any fist fight could support a RICO action based on a lost filling or damaged lip fillers. This is not an appropriate use of RICO.[2]

*18 U.S.C. § 1591(a)* – Rubin demonstrated that there is no venue for the Third Cause of Action because the only connection between the acts underlying this cause of action and this District were coincidental. *See* Opening Br. at 21; Supp. Br. at 3. Plaintiffs respond by pointing yet again to their trips through airports in the District, but that is not enough.

Rubin also demonstrated that his alleged behavior simply did not fall within the ambit of § 1591(a) because that statute makes it a crime to cause someone to travel in interstate commerce knowing that the person will be forced to engage in commercial sex. The Amended Complaint, however, does not allege that any Plaintiff was forced to engage in commercial sex; rather, the Amended Complaint and the Releases incorporated by reference make plain that the Plaintiffs were quite willing to engage in commercial sex. Their complaint is that they were allegedly forced to engage in certain sexual practices, or experienced more force than they had anticipated

---

[2] The case on which Plaintiffs rely, *Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613, 2003 WL 21660339, at *2 (S.D.N.Y. July 15, 2003), provides them no support. It arose out of a dispute between the buyer and the seller of a prosthetics business, and involved questions of breach of contract and tort arising out of the negotiations of the purchase and sale agreement. It is not a RICO case, and it says nothing that would support the proposition that injuries to prosthetics are injuries to property rather than bodily injuries.

5

while they were engaged in commercial sex, which is not a violation of § 1591(a). *See* Opening Br. at 20-22; Supp. Br. at 2-3.

Plaintiffs do not answer this argument. They contend that "Rubin does not dispute that Plaintiffs adequately pleaded that Rubin coerced them to engage in commercial sex acts." Opp. at 23. But as just stated, Rubin emphatically disputes that the Amended Complaint alleges that the Plaintiffs were coerced to engage in commercial sex. That they allegedly did not agree to engage in some of the particular sexual practices does not make out a claim under 18 U.S.C. § 1591(a).

Rubin also pointed out that § 1591(a) is "part of a comprehensive regulatory scheme that criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain," Opening Br. at 21 (quoting and citing *United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015)), and that the Complaint and Amended Complaint did not allege any actions implicating those practices, *see id.*; Supp. Br. at 3. Plaintiffs do not contest that the purpose of § 1591(a) is to prevent sex slavery, but point out that 18 U.S.C. § 1595(a) provides a cause of action against the "perpetrator" of a violation of § 1591. *See* Opp. at 23 & n.6. Plaintiffs' position begs the question. As demonstrated above, Rubin has not properly been alleged to be a "perpetrator" of a violation of § 1591, and therefore, there is no cause of action properly pled against him.[3]

*18 U.S.C. § 1030(a)* – Rubin demonstrated in his opening brief that Plaintiffs' claims arising under 18 U.S.C. § 1030(a) ("CFAA") are venued in the wrong district, and that there were no facts alleged in the Complaint or the Amended Complaint that would fairly give rise to

---

[3]   Plaintiffs point out that the authority cited by Rubin, *United States v. Walls*, 784 F.3d 543 (9th Cir. 2015), is not binding (Opp. at 23 n.6), but Plaintiffs do not dispute its correctness.

6

the inference that Rubin, or any other Defendant, directed the hacking of Plaintiffs' accounts that is described in the Amended Complaint. *See* Opening Br. at 18-20; Supp. Br. at 3-5.

Plaintiffs do not rebut this. They point out that the Amended Complaint alleges that Defendants engaged in hacking, or encouraged others to do so, and they assert that this is sufficient. *See* Opposition to Powers' MTD at 20. It isn't. The naked assertion that the Defendants hacked into Plaintiffs' accounts – when there is no factual allegation that any of them had hacked into anyone's account ever before, or that makes Plaintiffs' position more than speculation – cannot withstand a motion to dismiss. *See* Supp. Br. at 4 (citing authority).

*State law causes of action* – Consent is a defense to each of the state law causes of action, and in his opening brief, Rubin demonstrated that the Plaintiffs' consent was established as a matter of law from the pleadings already filed in this case. In support of his position, Rubin pointed out that the Amended Complaint establishes that six of the seven Plaintiffs returned *multiple times*, some of them over periods of months or even years, to engage in sexual relations with Rubin.[4] Opening Br. at 22-24; Supp. Br. at 5-7.

Plaintiffs do not address the fact that their repeated return visits with Rubin to engage in commercial sexual relations completely undermine any notion that they did not consent. *See* Opp. at 24-25. Plaintiffs argue that the Releases are not enforceable, *see id.*, but that is beside the point: Rubin is not now endeavoring to enforce the Releases (other than the separate release

---

[4] Rubin also demonstrated that Caldwell signed a General Release, separate and apart from the documents Plaintiffs refer to as an NDA, in which she released and discharged the causes of action she asserts against Rubin in the Amended Complaint. Opening Br. at 5 & n.2. Plaintiffs' Opposition does not address this issue and appears to concede that Caldwell's claims have been released. Rubin expects, therefore, that Caldwell will voluntarily dismiss her claims. Rubin also demonstrated that the text messages that Hathaway sent, and each Plaintiff's signed Release, established Plaintiffs' consent incontrovertibly

executed by Caldwell, referenced in footnote 4), but submits that they are dispositive on the matter of consent. When added to the already overwhelming allegations of Plaintiffs' own behavior as set forth in the Amended Complaint, the conclusion that Plaintiffs consented to their encounters with Rubin is inevitable. Plaintiffs thus cannot credibly or fairly assert state law causes of action arising from those encounters.

Plaintiffs propose that, even though the encounters started consensually, the sexual activity may eventually have exceeded the scope of any particular Plaintiff's consent. *See* Opp. at 25. Even if this were true, it would not explain why the Plaintiffs would have returned time and time again. Nor does it explain why six of the seven Plaintiffs repeatedly sent text messages, emails, and explicit photographs in an attempt to see Rubin again, even after their encounters with him. *See* Supp. Br. at 6 & Ex. 1 to Rose Decl. filed in support thereof; Powers Opening Br. at 3-12, 18-20 & Exs. 1-3 to Powers Decl. filed in support thereof; Powers Supp. Br. at 3-4, 6, 8 & Exs. 1-3 to Powers Decl. in support thereof.

The Amended Complaint should be dismissed.

| | |
|---|---|
| Date: March 21, 2018<br>New York, NY | Respectfully submitted,<br><br>/s/ Edward A. McDonald<br>Edward A. McDonald<br>Benjamin E. Rosenberg<br>Michael J. Gilbert<br>Benjamin M. Rose<br><br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036<br>Phone: (212) 698-3672<br>Fax: (212) 698-3599<br><br>*Attorneys for Howard Rubin* |