

| | | |
|---|---|---|
| NEW YORK | **FIRM and AFFILIATE OFFICES** | SHANGHAI |
| LONDON | | ATLANTA |
| SINGAPORE | | BALTIMORE |
| PHILADELPHIA | | WILMINGTON |
| CHICAGO | | MIAMI |
| WASHINGTON, DC | | BOCA RATON |
| SAN FRANCISCO | ERIC R. BRESLIN | PITTSBURGH |
| SILICON VALLEY | DIRECT DIAL: +1 973 424 2063 | NEWARK |
| SAN DIEGO | PERSONAL FAX: +1 973 556 1552 | LAS VEGAS |
| LOS ANGELES | E-MAIL: ERBreslin@duanemorris.com | CHERRY HILL |
| TAIWAN | | LAKE TAHOE |
| BOSTON | www.duanemorris.com | MYANMAR |
| HOUSTON | | OMAN |
| AUSTIN | | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | | *OF DUANE MORRIS* |
| HO CHI MINH CITY | | |
| | | ALLIANCES IN MEXICO |
| | | AND SRI LANKA |

April 10, 2018

VIA ECF

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: Re: Hillary Lawson, et al v. Rubin, et al, 1:17-cv-06404

Dear Judge Cogan:

  We are the attorneys for Yifat Schnur.

  We write to request a pre-motion conference on our proposed motion for sanctions against plaintiffs' counsel Balestriere Fariello (hereinafter "Balestriere") pursuant to Rule 11 of the Federal Rules of Civil Procedure. The Amended Complaint and RICO Statement against Ms. Schnur were filed in violation of Rule 11 because Balestriere filed these pleadings despite knowing that they lacked any legal basis to claim relief against Ms. Schnur, and included and relied upon facts known by Balestriere to be false. Accordingly, as to Ms. Schnur, we contend that this matter is being brought for an improper purpose as defined by Rule 11(b)(1), such as harassment or some other prohibited aim.

  On March 9, 2018, we served the required Rule 11 "safe harbor" letter on plaintiffs' counsel.

  A frivolous argument is one in which "the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Star Mark Mgt, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F. 3d. 170, 177 (2d Cir. 2012) (quoting *Fishoff v. Coty Inc.*, 634 F 3d. 647, 654 (2d Cir. 2011). Neither the Initial Complaint, the Amended Complaint or accompanying RICO Statements allege anything more than that Ms. Schnur performed routine legal services in her role as an attorney. As pled, these services

DUANE MORRIS LLP *A DELAWARE LIMITED LIABILITY PARTNERSHIP*  GREGORY R. HAWORTH, RESIDENT PARTNER

ONE RIVERFRONT PLAZA, 1037 RAYMOND BLVD., SUITE 1800  PHONE: +1 973 424 2000 FAX: +1 973 424 2001
NEWARK, NJ 07102-5429
DM1\8612809.3

DuaneMorris

Honorable Brian M. Cogan
April 10, 2018
Page 2

included the alleged drafting of a confidentiality agreement, the alleged drafting of a release of liability and an assertion that Ms. Schnur considered meeting with a potential client in a case in which she had no conflict of interest.  (Initial Compl., ¶¶ 64, 199, 280).  None of these actions, even if real, is illegal or improper under any conceivable theory and none of these actions constitutes a RICO predicate.

Further, the Amended Complaint includes an alleged RICO violation against Ms. Schnur claiming physical and emotional damages, despite a wealth of case law holding that such damages do not and cannot confer RICO standing.  (ECF No. 59-1, pp. 8-10).  Nor does the Amended Complaint make a credible allegation that Ms. Schnur had some operational or management control such that she could be liable on a RICO cause of action.  *See Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993).

Even more deserving of sanctions are the knowingly false "facts" alleged in the Amended Complaint. Plaintiffs concede that Ms. Schnur never had any personal contact, any meetings, or any communications of any manner, at any time with the three original named plaintiffs.  This has now been confirmed by the original three plaintiffs in their answers to Ms. Schnur's requests to admit, which requests were served and answered before the discovery stay order.  There is likewise no averment of any contact of any kind between Ms. Schnur and the four new plaintiffs—Ms. Hathaway, Ms. Speight, Ms. Peterson and Ms. Fuller.  There is no allegation in the Amended Complaint or the RICO Statement of any such contact. In fact, the vast majority of the incidents complained of in the Amended Complaint took place before Ms. Schnur even met Mr. Rubin.

Because Ms. Schnur had no contact with any of the plaintiffs, the allegations in the Amended Complaint cannot, as a matter of logic, be possible. For example, the Amended Complaint alleges that Ms. Schnur "attempted to persuade" plaintiff Hallman to hire her as a lawyer (Am. Compl. at ¶ 549 (e)).  The pleadings also assert that Ms. Schnur threatened and coerced the plaintiffs (Am. RICO Statement, p. 4), that Ms. Schnur issued threats (*id.*, p 47), that Ms. Schnur threatened plaintiffs with legal action (*id.*, p. 48) and that Ms. Schnur "attempted to convince" plaintiffs "to sign agreements," and that she made them sign Confidentiality Agreements (*id.*, pp. 46, 55).

In the absence of any contact, we will demonstrate that none of these assertions qualifies as a good faith pleading and will demonstrate to the Court that Balestriere knew of the falsity of these claims.  These defects were explicitly communicated in writing by Ms. Schnur to plaintiffs' counsel before the filing of the Initial Complaint, again after the filing of the Initial Complaint, and certainly before the Amended Complaint was filed.

The record reflects that Balestriere filed the Amended Complaint on February 20, 2018, after Ms. Schnur filed her motion to dismiss, and almost contemporaneously with the serving of the responses to Ms. Schnur's request to admit.   Nonetheless, Balestriere persisted in alleging



Honorable Brian M. Cogan
April 10, 2018
Page 3

even more exaggerated false facts in the Amended Complaint and added a new, equally groundless, cause of action under the TVRA/TVPRA.

      Balestriere did not confine its misconduct to the Amended Complaint. Rather than address Ms. Schnur's motion to dismiss the Third Cause of Action substantively (the TVRA/TVPRA claim), Balestriere argued falsely that Ms. Schnur had not moved to dismiss the claim, but had waived it. (ECF 84, p. 13). It even misrepresented its own filings. On page four of its opposition, Balestriere argued that Ms. Schnur "had the enterprise offer Ms. Hallman $80,000…" This assertion is not in the Amended Complaint which states instead that it was the "*Enterprise*" that sought to pay Hallman, with no mention at all of Ms. Schnur as the person who actuated the payment. (ECF No. 66, ¶ 522).

      We submit that there has been ample conduct to justify both the bringing of this motion and its ultimate success. There is more at work here than just energetic advocacy. We believe the conduct of counsel reflects an improper purpose as defined by Rule 11. We ask the Court to schedule a pre-motion conference at its convenience.

      Respectfully submitted,

      s/Eric R. Breslin
      Eric R. Breslin

ERB
Cc: All Counsel Via ECF