UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON and LAUREN FULLER,

*Plaintiffs*,

-against-

HOWARD RUBIN, JENNIFER POWERS, YIFAT SCHNUR, STEPHANIE SHON, JOHN DOE, BLUE ICARUS, LLC, and the DOE COMPANY,

*Defendants*.

Case No.: 1:17-CV-06404 (BMC)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR RECONSIDERATION OF DEFENDANT HOWARD RUBIN**

Howard Rubin respectfully submits this Reply Memorandum of Law in Further Support of his Motion for Reconsideration. For the reasons set forth in Rubin's opening brief, and in light of Plaintiff Caldwell's unpersuasive response, all of Caldwell's claims are barred by the General Release she executed. It is appropriate for the Court to reconsider its Memorandum and Decision Order (Docket No. 105) to address this fundamental issue.

Rubin raised the General Release as a basis for dismissal of Caldwell's claims multiple times, including in both the body of the brief and footnote included on page 5 of his Memorandum of Law in Support of Motion to Dismiss (Docket No. 61-1; "Motion to Dismiss"). The General Release was also attached as an exhibit to the Motion to Dismiss. The cases cited by Plaintiff Caldwell urging the Court to disregard the General Release argument because it appears in a footnote are not only inapposite, they also indicate the Court has discretion either to decide or not decide arguments solely raised in footnotes. For the reasons provided below, the Court should exercise its discretion to resolve this issue now, before judicial and party resources are expended in discovery related to Caldwell and any attendant disputes. Upon review, Rubin submits, the Court will find that the General Release constitutes a valid contract, supported by consideration and mutual assent, unambiguously releasing Caldwell's claims against Rubin. Caldwell's attempts to inject issues of fact as to her and Rubin's subjective understanding of the contract are neither relevant nor determinative. And Caldwell's assertion that Rubin failed to perform are belied by Caldwell's concessions in the Amended Complaint and by the terms of the General Release itself. The Motion for Reconsideration should be granted, and Caldwell's claims against Rubin should be dismissed.

### *Rubin's Argument for Dismissal of Caldwell's Claims Based on the General Release Can and Should be Considered by the Court*

Caldwell contends that Rubin "buried" in a footnote (Opposition at 1, 4) his argument that Caldwell's General Release bars her claims, suggesting that she was somehow deprived of the right to respond. Rubin did no such thing.

Rubin addressed the General Release in both the body of the brief and footnote included on page 5 of his Motion to Dismiss, quoting the operative language discharging Caldwell's claims and identifying it as a basis on which Rubin sought dismissal. The Motion to Dismiss noted that, with respect to Caldwell, the General Release "release[d] and forever discharge[d] Mr. Rubin from any and all claims, causes of action . . . that you have or may have to date arising out of your engagement in physical relations with Mr. Rubin on the nights of September 24 & 25, 2016." Motion to Dismiss at 5. The footnote supporting this quote unambiguously stated that Rubin "moves to dismiss all of Caldwell's causes of action based on the release" and referred the Court to the agreement. *Id.* at n.4. Rubin even attached the General Release for the Court's consideration as Exhibit 4 to the Motion to Dismiss. Rubin also noted in his Reply Memorandum of Law (Docket No. 92) that the General Release discharged Caldwell's causes of action against Rubin and that Plaintiffs had failed to address the argument and appeared to concede Caldwell's claims were released. Rubin again raised the argument in his letter of Request for a Pre-Motion Conference (Docket No. 100), to which Plaintiffs again failed to respond.[1]

---

[1] Caldwell's contention that arguments raised only in footnotes are deemed to have been "waived" is similarly unavailing. Release is an affirmative defense to be included in responsive pleadings, and it cannot be deemed waived at this stage on the basis of its treatment in the Motion to Dismiss, before Rubin's Answer is even due. *See* Fed. R. Civ. P. 8(c). Indeed, pursuant to Fed. R. Civ. P. 12(h)(2), such legal defenses to a claim may be raised up to and including at trial.

Rubin's submissions were sufficient to raise the issue of release, as Caldwell's own authorities make clear. In *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 401 (E.D.N.Y. 2013), the court noted that, although it "need not consider" defendants' arguments for dismissal "presented only in a footnote," defendants had "touched on" the relevant causes of action when discussing whether the amended complaint had adequately alleged RICO predicate acts. Accordingly, the court considered defendants' arguments and then dismissed plaintiffs' claims for extortion, fraud and theft because plaintiffs had failed to address defendants' arguments in their opposition. *See id.* So too here. Rubin more than "touched on" the General Release – he set forth the operative language in his brief and annexed the actual agreement – and Caldwell failed to respond.

Other cases cited by Caldwell are entirely distinguishable. In *In re MF Global Holdings Ltd. Inv. Litig.*, No. 11 Civ. 7866, 2014 WL 8184606, at *2 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 611 F. App'x 34 (2d Cir. 2015), reconsideration of dismissal was denied not because the court refused to address arguments only in footnotes, but because plaintiffs had failed to address the defendants' arguments altogether. On the motion for reconsideration, plaintiffs attempted to portray footnotes as having addressed defendants' arguments. *See id.* After noting that reconsideration *could* be rejected because the arguments were solely made in footnotes, the court nevertheless *did* address plaintiffs' arguments and found that the footnotes in question had no bearing whatsoever on the dismissed claims. *See id.* Unlike the *MF Global* plaintiffs, Rubin's request for reconsideration is based on an argument actually raised, not a tortured attempt to salvage a fatal omission after a dispositive decision.

Both *In re Gildan Activewear, Inc. Sec. Litig.*, No. 08 Civ. 5048, 2009 WL 4544287, at *4 & n.4 (S.D.N.Y. Dec. 4, 2009) and *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 8, 2007), are inapposite because they addressed only the specific

3

issue of the court's discretion to implicitly deny leave to amend by not addressing a request for leave made only informally in a motion to dismiss. *Tu Ying Chen v. Suffolk Cty. Community Coll.*, 14-cv-1597, 2017 WL 2116701, at *14 n. 9 (E.D.N.Y. Mar. 31, 2017) dealt not with a threshold issue like release, but a factual argument in opposition to summary judgment made by plaintiffs only in a footnote. Although the court declined to consider the argument, it also noted that the testimony propounded by plaintiffs did not actually support their position in any event. *See id.* And *Tummino v. Hamburg*, 936 F. Supp. 2d 162, 193 (E.D.N.Y. 2013), dealt with the appropriate record for review of an FDA petition denial. The court declined to consider defendants' argument, which was actually drawn from another party's abandoned argument. *See id.* The court passed on the argument because it was "advanced in a single footnote, it relied on a 20,000+ word statutory section with numerous parts and subparts without any pincite to the relevant language," and neither the footnote nor the regulation advanced the argument to which the defendants alluded. *Id.*

In sum, Caldwell offers no valid basis for the Court to disregard Rubin's explicitly asserted argument for dismissal based on the General Release.

### *The General Release is Valid and Compels Dismissal of Caldwell's Claims*

Caldwell chides Rubin for simply asserting the argument about the dispositive force of the General Release in a footnote "without any further explanation or authority." Opposition at 1. However, the General Release, submitted to the Court as Exhibit 4 to Rubin's Motion to Dismiss, plainly speaks for itself and alone carries the day for Rubin. No "further explanation" or reliance on "authority" were necessary. The arguments Caldwell now makes to escape the contract terms to which she agreed are unavailing.

*Consideration* – The General Release is unquestionably supported by consideration. First, the preamble expressly provides that Rubin "agreed to provide a **fixed dollar** amount of Monetary Funds to [Caldwell] **in consideration for** your entering into this agreement which acts as a general

4

release of all liability and any future claim of loss or subsequent physical injury of which you may not be aware of at this time." General Release at 1 (Doc. No. 62-4; second emphasis added). Second, paragraph 4 outlines the ample consideration to which the parties agreed:

> Mr. Rubin has agreed to compensate [Caldwell] for alleged sustained physical injury, lost wages and a medical procedure **in consideration for** [Caldwell's] agreeing to the terms and conditions of this general release, including but not limited to the release of all future claims as defined below.

*Id.* at 1 (emphasis added). Third, the "Final Release of All Claims" set forth in paragraph 5 includes a full release and discharge of Rubin "[i]n exchange for, and as a condition to, receipt of the payments" of $25,000. *Id.* Fourth, paragraph 10 is titled "Payment **In consideration of** the Release set forth in this Agreement," and requires Rubin to pay Caldwell $25,000. *Id.* at 2 (emphasis added).[2]

Attempting to invalidate the unmistakable provisions cited above concerning the parties' consideration, Caldwell grasps on to language in paragraph 4 stating that Rubin agreed to compensate her as "a gesture of good will, and for no other reason." *Id.* at 1. But this language does not convert the parties' agreed upon exchange of consideration into a "gratuitous promise." As a matter of common sense, the references to "good will" and "for no other reason" were included in the General Release to emphasize, as is made explicit in paragraphs 3 and 8 (*id.* at 1-2; "No Admission[s]"), that Rubin was quite simply entering into the agreement without admitting to any liability or wrongdoing.

---

[2]  Caldwell cannot plausibly contend that there was no consideration in the General Release because she "[gave] up no rights that she had not already given up" in the August 24, 2016 Release. Opposition at 6. Whereas the August 24, 2016 Release discharges claims against Rubin, the General Release discharges claims against Rubin *and his agents or assigns*, and requires Caldwell to keep confidential a broader scope of information about Rubin than set forth in the August 24, 2016 Release. *Compare* General Release at 1-2 ("Final Release of All Claims" and "Confidentiality") *with* Release at 1-2 (Doc. No. 62-3; "Mutual Release" and "Confidentiality").

5

*Mutual Assent* – The General Release evidences a meeting of the minds between Caldwell and Rubin. It is well established that "[i]n determining whether parties entered into a contractual agreement . . . it is necessary to look at the parties' objective manifestations of agreement—in this case, the unambiguous language of the contract they signed—not any subjective intent they harbored." *Baum v. Cty. of Rockland*, 337 F. Supp. 2d 454, 469 (S.D.N.Y. 2004), *aff'd*, 161 F. App'x 62 (2d Cir. 2005); *see Sunbelt Rentals, Inc. v. Charter Oak Fire Ins. Co.*, 839 F. Supp. 2d 680, 688 (S.D.N.Y. 2012) (party bound by assent effected in agreement signed by its authorized agent); *McFadden v. Clarkeson Res. Grp., Inc.*, No. CV 09-0112, 2010 WL 2076001, at *5 (E.D.N.Y. May 18, 2010) (signature on form contract sufficient to establish mutual assent to terms). Thus, Caldwell's assertion that there is "strong evidence that Caldwell, a non-attorney, did not share a mutual understanding of the scope of the release" is unavailing. In signing the General Release, Caldwell manifested her objective assent.

Any purported lack of understanding of the General Release on Caldwell's part is no defense to contract formation. *See Josie-Delerme v. Am. Gen. Fin. Corp.*, No. 08-CV-3166, 2009 WL 2366591, at *3 (E.D.N.Y. 2009) (rejecting argument that arbitration agreement lacked meeting of the minds due to plaintiff's misunderstanding because "[u]nder New York law, 'a person who signs a contract is presumed to know its contents and assent to them.' That plaintiff may have misunderstood the meaning of [a term] is no defense to formation . . . ."); *see also I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196 (S.D.N.Y. 2015) (minor conclusively presumed to have assented to terms of agreement, despite her age, because "she who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and assent to them")). For Rubin's part, as Caldwell concedes, he assented by performing under the General Release by "pa[ying] Caldwell

6

until the amount was paid off in December of 2016 or January of 2017" and paying her the final payment of $5,000. Amended Complaint ¶¶ 429-30; Opposition at 7. Any subjective intent of Rubin's on which Caldwell now speculates and wishes to explore in discovery is not relevant. Caldwell has attempted to generate factual issues to avoid application of the General Release, but Caldwell, of course, had no problem accepting Rubin's $25,000. Therefore, the Court should enforce Caldwell's commitment to living up to her side of the bargain.

### *Rubin Fully Performed Under the General Release, and In Any Event, a Purported Delay in Payment Does Not Invalidate the Discharge of Caldwell's Claims*

That Rubin fully performed by timely paying all sums owed under the General Release is apparent on the face of the Amended Complaint and General Release. In the Amended Complaint, Caldwell actually concedes that Rubin "paid Caldwell until the amount was paid off in December 2016 or January 2017." ¶ 429. These payments were made pursuant to a schedule for five payments of $4,000 on dates from October to December 2016. General Release at 2-3 (paragraph 10.i.a., "Schedule of Payments"). The Amended Complaint notes that after the scheduled payments, "there was one payment that remained to be paid directly to Caldwell." ¶ 429. The General Release addresses this final payment, stating:

> There will be an additional payment of $5,000.00 to cover the medical procedure you, [Caldwell], would like to undergo. This $5,000.00 will be paid out for the sole purpose of the payment for a singular breast implant replacement procedure.

General Release at 3 (clause 10.i.b., "Schedule of Payments"). Caldwell's only contention that Rubin failed to perform is that he "initially refused to make the final payment at all, and ultimately did so only after the scheduled time for payment had passed by nearly six months and

7

only after Caldwell wrote an 'apology note' to Rubin." Opposition at 7. Thus, Caldwell concedes Rubin made the final payment but claims it was nearly six months late.[3]

Caldwell's argument is unpersuasive. Although the five initial $4,000 payments were due and paid on dates certain, nowhere in the General Release is there a date upon which the final payment was required. *See generally* General Release at 2-3 (clause 10.i., "Schedule of Payments"). As it is undisputed Rubin paid Caldwell, and there was no deadline that would render the payment untimely – even assuming the final payment was made nearly six months after the last scheduled payment in December 2016 – the timing of that payment cannot be considered a breach of the General Release, much less a material breach that would excuse Caldwell's compliance with the General Release. Indeed, even where contractual payments are late, it generally does not discharge the duties of the other contracting party. *See Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1008-09 (2d Cir. 1991) ("Even if we were to assume, without deciding, that W & M was entitled to the remaining contract balance of $126,000 on December 28, 1988, Whiting-Turner's failure to pay on that date would not justify W & M's abandoning the project unceremoniously," *citing Tri-Mar Contractors, Inc. v. ITCO Drywall, Inc.*, 74 A.D.2d 601, 602 (2d Dept. 1980)); *Carter Steel & Fabricating Co. v. Ajax Constr. Co.*, No. 93-CV-4387, 1997 WL 1048900, at *7 (E.D.N.Y. May 1, 1997). In *Tri-Mar Contractors, Inc.*, the payee was not permitted to abandon the contract due to late payments absent an express contractual provision providing time was of the essence. *See* 74 A.D.2d at 602. The court quoted Restatement of the Law of Contracts § 276, "Unless the nature of a

---

[3] Even though the final $5,000 payment that Caldwell received was, pursuant to the terms of the General Release (at 3), "to cover the medical procedure . . . for a singular breast implant replacement," Plaintiffs concede in the Amended RICO Case Statement that as of the date of the filing, February 20, 2018, Caldwell had "not yet undergone the repair surgery" (Doc. No. 66-1 at 15).

8

contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party." *Id.* At most, Caldwell might have only a claim against Rubin for breach of the General Release limited to damages in the form of interest. *See TIG Ins. Co. v. Newmont Mining Corp.*, No. 04 Civ. 4105, 2005 WL 2446234, at *2 (S.D.N.Y. Oct. 4, 2005) (under New York common law, breach for late payment is limited to interest damages). Rubin fully and timely performed, and in any event, the factual issue Caldwell seeks to inject provides no ground to excuse her from the terms of the General Release.

The Motion for Reconsideration should be granted and Caldwell's claims dismissed.

| | |
|---|---|
| Date: May 18, 2018<br>New York, NY | Respectfully submitted,<br><br>/s/ Edward A. McDonald<br>Edward A. McDonald<br>Benjamin E. Rosenberg<br>Michael J. Gilbert<br>Benjamin M. Rose<br><br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036<br>Phone: (212) 698-3672<br>Fax: (212) 698-3599<br><br>*Attorneys for Howard Rubin* |

9