Jeffrey M. Eilender
Partner

212 612-1212
jeilender@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

June 4, 2018

BY ECF
Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Lawson, et al., v. Rubin, et al.,* Case No.: 17 CV 6404 (BMC)

Dear Judge Cogan:

This firm represents Jennifer Powers. We write to join co-counsel's request on behalf of co-defendant Rubin to move to disqualify the Balestriere Fariello firm from further representation of any of the plaintiffs, and we add the following points.

In the Second Circuit, attorneys are required to call to the Court's attention the existence of actual or potential conflicts of interest between an opposing party and their lawyer. *See, e.g., Dunton v. Suffolk County*, 729 F.2d 903, 909 (2d Cir. 1984), *amended on other grounds*, 748 F.2d 69 (2d Cir. 1984) ("Attorneys are officers of the court and are obligated to adhere to all disciplinary rules and to report incidents of which they have unprivileged knowledge involving violations of a disciplinary rule . . . . The plaintiff's attorney should also have been aware of the problem and should have called it to the attention of the court") (internal citation omitted). Thus, in this Circuit, we have standing to move to disqualify based on such a conflict.

The Balestriere Fariello firm's conflict-of-interest arises from the fact that several plaintiffs have admitted—in the Amended Complaint, in their responses to discovery demands, and in text messages sent to Ms. Powers—that after (allegedly) being assaulted, they accepted money from Mr. Rubin in exchange for persuading other women, including several plaintiffs, to come to New York to meet with him, and that the meetings they "knowingly facilitated" allegedly resulted in further assaults. Whether characterized as aiding and abetting tortious conduct, or recruitment and solicitation under the human trafficking laws, the plaintiffs who engaged in this conduct are potentially liable to other women, including other plaintiffs.

On this basis, any plaintiff who did not engage in recruiting would have a cause of action against any other plaintiff who did. Moreover, even the three new plaintiffs who allegedly were not recruited by any of the original plaintiffs would have a cause of action

Honorable Brian M. Cogan
June 4, 2018
Page 2 of 4

against those original plaintiffs who engaged in recruiting, because such conduct was in furtherance of the alleged conspiracy. In either instance, Balestriere Fariello cannot represent any of them.

We note that plaintiffs' human trafficking claim against Ms. Powers is predicated on the (hotly contested) claim that she persuaded plaintiffs to travel to New York to meet Mr. Rubin, even though she knew that they would be assaulted. As the Court described plaintiffs' allegations in its order dismissing the bulk of the Amended Complaint, plaintiffs claim that Ms. Powers "knowingly recruited and solicited women in interstate commerce to travel to New York to meet with Rubin, that she "benefited financially from this arrangement," and that she "knew or recklessly disregarded the fact that" plaintiffs would be assaulted. (See op. at pp. 39-40, Dkt. No. 105.)[1] Similarly, plaintiffs' intentional infliction of emotional distress claim is premised upon their allegation that Ms. Powers "knowingly aid[ed] Rubin in inflicting emotional distress on plaintiffs" and that "knowingly facilitating these violent encounters, if proven, would be conduct 'outrageous in character' and 'utterly intolerable in a civilized community.'" (See id. at p. 42.)

Under the theory articulated by plaintiffs against Ms. Powers, no express agreement between Ms. Powers and Mr. Rubin is required. Indeed, plaintiffs have argued that all they need to prove is that she should have realized, after speaking to one of the plaintiffs following an encounter with Mr. Rubin, what might happen to any future individual she recruited. Following this same logic, the fact that several of the plaintiffs recruited another plaintiff - knowing that the latter could be assaulted - is sufficient to establish their participation in the alleged conspiracy. See, e.g., *U.S. v. Nusraty*, 867 F.2d 759, 763 (1989) ("proof of [a conspiracy] does not require evidence of a formal or express agreement; it is enough that the parties have a tacit understanding to carry out the prohibited conduct"); see also *United States v. Santos,* 541 F.3d 63, 73 (2d Cir. 2008) ("where there is evidence that the defendant had knowledge of the conspiracy and knowingly took actions advancing the conspiracy's aims, we ordinarily will permit the jury to infer intent and agreement from knowledge"); *United States v. Heras*, 609 F.3d 101, 111 (2d Cir. 2010) (where defendant (1) knew intent of the possession was drug distribution; and (2) when, with that knowledge, agreed to and did facilitate the attempted possession, he adopted the intent to distribute necessary to support convictions for conspiring and attempting to violate 21 U.S.C. § 841(a)(1);) *United States v. Moore*, 365 F. App'x 800, 802 (9th Cir. 2010) (affirming Moore's conviction for conspiracy in fraudulent investment scheme where Moore, after his own firm had been bankrupted by defendant Harrell, who had commenced the scheme, recruited other investors and was paid for doing so). And, of course, under plaintiffs' legal theory any

---

[1] Discovery will show that as opposed to several plaintiffs, Ms. Powers never recruited or solicited anyone. Nor did she receive commissions – as did several plaintiffs - for introducing anyone to Mr. Rubin.

Honorable Brian M. Cogan
June 4, 2018
Page 3 of 4

participant in a conspiracy is liable for all the acts and harm caused by the conspiracy, even the ones that she did not participate in or cause. *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S. Ct. 1180, 1184, 90 L. Ed. 1489 (1946) ("so long as the partnership in crime continues, the partners act for each other in carrying it forward. It is settled that an overt act of one partner may be the act of all without any new agreement specifically directed to that act") (internal quotation marks omitted); *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000), quoting *United States v. Romero*, 897 F.2d 47, 51 (2d Cir. 1990) ("[t]he Pinkerton theory permits criminal liability of a conspirator 'for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes.'"). In short, if this is their theory, it applies to plaintiffs as well, and the conflict between recruiting plaintiffs and non-recruiting plaintiffs is a nonwaivable one.

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *U.S. v. Schwartz*, 283 F.3d 76, 90-91 (2d Cir. 2002) ("Because Louima had consistently maintained that he was assaulted in the bathroom by at least two officers, Schwarz had an obvious strategic interest in implicating another officer . . . . Such a defense, however, could have hampered the PBA in its defense of the Louima civil suit"). Similarly, an "actual" conflict of interest began to develop after the Balestriere Fariello firm commenced this action representing both plaintiffs whose interest lay in placing sole liability on Mr. Rubin and Ms. Powers, and plaintiffs whose interest lay in expanding the pool of potential defendants. And, because the conflict between the plaintiffs' interests will affect the Balestriere Fariello firm's conduct at every subsequent stage of the case—not just in deciding whether to bring cross-claims, but also in deciding how to proceed in depositions and what trial testimony to elicit—it is "so severe as to indicate per se that the rendering of effective assistance will be impeded," and it is, therefore, nonwaivable. *See, e.g., U.S. v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003).

We raise this issue now because information we have learned at the outset of discovery has made us aware of the seriousness of this conflict. The court's "obligation to supervise the members of its Bar" is "continuing," *Dunton*, 729 F.2d at 909, and "[w]hen a potential or actual conflict of interest situation arises, it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests." *Id.*, *citing In re Taylor*, 567 F.2d 1183, 1191 (2d Cir.1977). Moreover, it cannot be said that this motion is being made "on the eve of trial" after an "inordinate delay." *See Thomas Supply & Equipment Co., Ltd., v. White Fathers of Africa, Inc.*, 53 A.D.2d 607, 607, 383 N.Y.S.2d 652, 653 (2d

Honorable Brian M. Cogan
June 4, 2018
Page 4 of 4

Dept. 1976).  Indeed, resolution of the motion to dismiss was only a month ago, and the discovery process has just commenced.  Thus, there can be no credible claim of undue prejudice because of the timing of this application.

Accordingly, we request permission on behalf of Ms. Powers to either join or make a separate motion to disqualify the Balestriere Fariello firm from representing any of the plaintiffs in this case.

Respectfully submitted,

Jeffrey M. Eilender


Copies To:
All counsel of record