UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
HILLARY LAWSON, KRISTINA
HALLMAN, STEPHANIE CALDWELL,
MOIRA HATHAWAY, MACEY SPEIGHT,
ROSEMARIE PETERSON, and LAUREN
FULLER,[1]

                      Plaintiffs,

            - against -

HOWARD RUBIN, JENNIFER POWERS,
and Doe Company,

                      Defendants.
----------------------------------------------------------- X

**MEMORANDUM DECISION & ORDER**

17-cv-6404 (BMC)

**COGAN**, District Judge.

      At a conference held on July 12, 2018, I granted now-dismissed defendant Yifat Schnur's motion for sanctions against plaintiffs' counsel under Federal Rule of Civil Procedure 11. In the order from that conference, I directed Schnur to file a motion for attorney's fees in accordance with Federal Rule of Civil Procedure 54 and the local rules. Schnur has so moved; she seeks a sanction against plaintiffs' counsel equal to the total of her legal fees and costs in the case – $255,687.00 in fees and $1,890.62 in costs.[2] After the briefing on the motion was complete, I provided plaintiffs' counsel the opportunity to submit financial information demonstrating the law firm's ability to pay a sanction. Plaintiffs' counsel submitted, under seal, an account statement from July 2017 through June 2018.[3]

---

[1] The names listed in the caption are pseudonyms adopted by plaintiffs pursuant to a protective order.

[2] Schnur originally sought $256,209.50 in fees and $1,896.92 in costs but reduced these amounts in her reply brief.

[3] The Court deferred ruling on the motion for an additional 10 days after plaintiffs' counsel submitted the account statement in case Schnur wanted to respond to it; nothing else was submitted.

After considering the briefing and the account statement, I conclude that an immediate monetary sanction is appropriate, but that the amount Schnur requests in attorneys' fees is unreasonable. The total amount that she seeks is greater than necessary to deter repetition of the conduct, and more than Rule 11 permits me to impose. Schnur's motion is therefore granted in part.

Once a court determines that Rule 11(b) has been violated, it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Under Rule 11(c), sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," but, if warranted, this may include "directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

Although Rule 11 permits a court to award reasonable attorneys' fees, "[t]he main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 553 (1991); see also Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 266 (2d Cir. 1994). "Rule 11 is not a fee-shifting statute . . . . 'A movant under Rule 11 has no entitlement to fees or any other sanction.'" Bus. Guides, 498 U.S. at 553 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 409 (1990)). Ultimately, the district court has "broad discretion in tailoring appropriate and reasonable sanctions under [R]ule 11." S.E.C. v. Smith, 710 F.3d 87, 98 (2d Cir. 2013) (quoting O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 709 (2d Cir. 1990)).

Plaintiffs' counsel first asks me to delay imposing sanctions until the end of the case. Second, he argues that I should reduce Schnur's award because of her conduct in the case, which

2

he claims prolonged the action against her unnecessarily. Third, he argues that the amount that Schnur seeks is unreasonable and unsupported.

Plaintiffs' counsel's second argument – which I reject – leads to my resolution of his first. Schnur's "refusal to deny the initial allegations against her," upon which plaintiffs' counsel expounds at great length, is immaterial. As I explained at the July 12, 2018 hearing, plaintiffs' counsel "cannot point to any facts that [his] clients gave [him] that would lead [him] to reasonably believe that Schnur did anything other than draft documents [for defendant Rubin]." Under Supreme Court and Second Circuit authority, acting as an attorney for an alleged RICO enterprise, without any further participation in its management or direction, is not enough for the attorney to be considered a member of the enterprise. See Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994); see also Reves v. Ernst & Young, 507 U.S. 170, 177-83 (1993) (reaching this conclusion as to an accounting firm).

Plaintiffs' counsel should have identified these authorities before bringing claims against Schnur. But even if he did not, Schnur brought Reves and similar authorities to his attention in her October 3, 2017 letter to plaintiffs' counsel, a full month before plaintiffs filed their complaint. The problem here was not that Schnur waited to deny that she drafted the non-disclosure agreements, but that, *even assuming that she had drafted them*, plaintiffs' counsel should have known that that was not enough to bring a RICO claim (or the other claims) against her.

The argument by plaintiffs' counsel that I should reduce Schnur's award because she waited to bring her sanctions motion until after I ruled on her motion to dismiss is equally without merit. A party is not obligated to bring a Rule 11 motion at the earliest possible opportunity. To the contrary, as I explained at the July 12, 2018 conference while discussing

3

defendant Rubin's motion for sanctions, it is – for obvious reasons – prudent and efficient for a defendant who thinks the claims against her are meritless to wait to move for sanctions under Rule 11 until after she has been dismissed or has prevailed.

Nor am I persuaded by the argument that Schnur's counsel's time entries are inadequate or inconsistent – nearly all the entries are sufficiently detailed for me to tell exactly what counsel was working on. The few that are somewhat vague (such as "more work and calls re status and strategy") were still clearly attributed to this case and were billed to the client. Furthermore, counsel for Schnur explained in their reply why the inconsistencies plaintiffs' counsel nit-picked in their opposition are completely benign (for example, that, per counsel's billing judgment, the time for a conversation between two of Schnur's counsel about the case was only billed to Schnur once). Schnur's counsel's time sheets, which include the date, amount of time spent, and a description of each billing entry, are sufficiently specific under Second Circuit precedent. See generally Caisse Nationale, 28 F.3d at 266.

The argument of plaintiffs' counsel that this situation is Schnur's fault underscores why monetary sanctions are appropriate and why they should be imposed now, rather than at the end of the case – plaintiffs' counsel clearly has not gotten the message. I generally prefer to measure a Rule 11 violation by comparing it with counsel's conduct throughout an entire litigation, rather than only with respect to the violation. But this case has been going on for nearly a year, so I can evaluate Schnur's motion based on plaintiffs' counsel's conduct over that extended period.

In the eleven or so months since this action was filed, counsel on both sides have demonstrated a regrettable lack of restraint and judgment. The decision of plaintiffs' counsel to bring claims against Schnur is the most serious example of that lack of restraint. Regardless of counsel's conduct going forward, a monetary sanction is appropriate now.

4

However, I decline to grant Schnur the full amount she seeks because the attorneys' fees she claims are unreasonable and because an award of the full amount of what I conclude is a reasonable fee is not necessary to deter future misconduct by plaintiffs' counsel or other attorneys.

When analyzing motions for attorneys' fees, courts in the Second Circuit generally employ the "presumptively reasonable fee" method. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). A court calculates the presumptively reasonable fee by multiplying a reasonable hourly rate by a reasonable number of expended hours. See Finkel v. Omega Commc'n Servs., Inc., 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008). A court establishes the "reasonable hourly rate" by considering, along with any other "case-specific variables,"

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3, 190. "Courts 'should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 493 F.3d at 120).

As an initial matter, the Court concludes that the billing rates for Schnur's counsel, although high for this district, are reasonable based on counsel's qualifications and experience, their customary rates, the level of skill required to perform the legal service properly, and the moderate complexity of this case. See In re Vitamin C Antitrust Litig., No. 05-CV-453, 2013 WL 6858853, at *1 (E.D.N.Y. Dec. 30, 2013) (noting that, as of 5 years ago, the prevailing rates

5

in this district "range roughly from $200-$450 per hour for routine civil and consumer rights litigation to $650 per hour for more complex cases").[4]

However, the amount of time that Schnur's counsel allegedly spent on this case is utterly unreasonable. The counsel on this case billed 510.5 hours for a motion to dismiss, plus a supplemental brief and a motion for Rule 11 sanctions.[5] (The senior partner billed 282.3, or 55%, of those hours). There were, of course, other tasks accounted for, such as engaging in initial discovery and responding to discovery disputes, but those do not make up the difference between a reasonable number of hours and the number claimed here.

The most obvious example of this overbilling is for the reply brief for Schnur's Rule 11 motion, on which counsel allegedly expended a total of approximately 89 hours, including approximately 42 hours spent by the senior partner. That is a ridiculous amount of time for a brief that was eleven pages long and cited two cases. Although a brief's difficulty or complexity cannot be measured solely by its length or the number of citations in it, those are fair metrics for the difficulty and complexity of this particular brief and do not support the amount of time purportedly spent.

Half the total time billed for this case, or 255.25 hours, is a more appropriate amount of time given the length of representation and the number of briefs filed, the complexity of the issues, and the amount of discovery in which defendants' counsel engaged. Multiplying one-half of each attorney's time billed by that attorney's hourly rate yields a presumptively reasonable fee of $127,843.50.

---

[4] Although attorney Melissa Geller is a senior associate rather than a partner, her 10 years of practice (including trial experience) are sufficient to justify the proposed hourly rate of $500.

[5] The time sheets that Schnur submitted do not include the time spent on this Rule 54 motion.

Defendant Schnur's proposed costs of $1,890.62, which include WestLaw charges, PACER fees, attorney travel, and copying expenses, directly resulted from the violation and are reasonable. The billing records show that Schnur's counsel normally bill their paying clients for the cost of online research services, so the fee request for WestLaw charges and PACER fees (which Schnur's counsel have properly demonstrated was for their work in this case) is reasonable. See Arbor Hill, 493 F.3d at 120. Postage, attorney travel, and copying are also the sort of "out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients," U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989), that have frequently been permitted in this district. See Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 287 (E.D.N.Y. 2008) (collecting cases).

The presumptively reasonable fee amount combined with the reasonable costs attributable to the violation yields a total amount of $129,734.12. The Court declines to award the full amount because Rule 11 requires that the sanction be limited to the amount necessary to deter this conduct or comparable conduct in the future and a six-figure sanction is not necessary.

Plaintiffs' counsel's conduct was certainly serious. Plaintiffs' counsel should have realized that the claim against Schnur was meritless; his failure to do so was at least reckless and possibly willful, which is why the Court concluded that Rule 11 sanctions were appropriate. But plaintiffs' counsel's account statement demonstrates that, although the law firm is certainly profitable (particularly for a firm of its size), its revenue and profits are not comparable to, for example, an AmLaw 100 firm, and the amount of the sanction should reflect that difference in ability to pay.

A sanction of $20,000, jointly imposed against John G. Balestriere and Balestriere Fariello, payable to Schnur, reflects the seriousness of the misconduct and should be sufficient to

deter plaintiffs' counsel (and others) from doing anything like this again.⁶ Twenty thousand dollars, although significantly less than what Schnur seeks, is a considerable sum and the appropriate amount to deter future misconduct by this counsel and others.

## CONCLUSION

Schnur's motion for attorneys' fees and costs [153] is granted in part. John G. Balestriere and/or Balestriere Fariello is to pay Schnur a total of $20,000 and to file proof of payment on the docket within 10 days of the date of this order.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       October 4, 2018

---

⁶ Schnur, citing four cases where courts have dismissed civil RICO claims brought by plaintiffs' counsel for failure to state a claim, argues in her reply that a hefty sanction is warranted in part because plaintiffs' counsel has engaged in similar conduct in other litigation. I am unwilling to conclude that this is "similar conduct" at the level of generality of bringing a civil RICO case that is dismissed for failure to state a claim, even where one case was dismissed because the plaintiff failed to adequately plead that the defendants had operational or management control over the enterprise. My decision is also informed by the fact that all four dismissals are seven to ten years old.