```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


HILLARY LAWSON, et al.,        *    Case No. 17-CV-6404(BMC)
                               *
                               *
             Plaintiffs,       *    Brooklyn, New York
                               *    October 17, 2018
    v.                         *
                               *
HOWARD RUBIN, et al.,          *
                               *
             Defendants.       *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

        TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
              BEFORE THE HONORABLE STEVEN M. GOLD
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For the Plaintiff:             BRIAN L. GROSSMAN, ESQ.
                               Balestriere Fariello
                               225 Broadway, Suite 2900
                               New York, NY  10007


For the Defendant,             BENJAMIN ROSENBERG, ESQ.
 Howard Rubin:                 Dechert LLP
                               1095 Avenue of the Americas
                               New York, NY  10036

For Defendant Jennifer         DOUGLAS E. GROVER, ESQ.
 Powers:                       JOLENE LAVIGNE-ALBERT, ESQ
                               Schlam Stone & Dolan LLP
                               26 Broadway, 19th Floor
                               New York, NY  10004

For Defendant Aloi, Pro Se:    MR. ROBERT ALOI

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1 (Proceedings commenced at 10:04 a.m.)

2 THE COURT: Good morning, everybody. This is Judge
3 Gold, and I hope I'm speaking to everyone involved in Lawson
4 v. Rubin, 17-CV-6404.

5 I'd like to get an appearance for plaintiffs,
6 please.

7 MR. GROSSMAN: Good morning, Judge Gold. My name is
8 Brian Grossman, at Balestriere Fariello, for plaintiffs.

9 THE COURT: Thank you, Mr. Grossman. An appearance
10 for Rubin, please?

11 MR. ROSENBERG: Your Honor, this is Benjamin
12 Rosenberg from Dechert. And with me is my colleague, Benjamin
13 Rose.

14 THE COURT: Thank you. I'm just going through the
15 docket getting acquainted with everybody, so bear with me
16 please.

17 An appearance for Powers?

18 MR. GROVER: Your Honor, this is Douglas Grover, at
19 Schlam Stone & Dolan, and I believe my colleague, Jolene
20 Lavigne-Albert is on the phone as well.

21 THE COURT: Is there any confirmation of that belief
22 by Ms. Lavigne-Albert?

23 MS. LAVIGNE-ALBERT: Yes, Your Honor. Good morning.

24 THE COURT: Good morning. Am I correct that
25 defendant Schnur is no longer in the case, Mr. Grossman?

1           MS. LAVIGNE-ALBERT:  Correct.

2           MR. GROSSMAN:  That is correct, Your Honor, although
3   she -- Ms. Schnur is counsel, but not of record, and not
4   appearing in this case for Mr. Rubin, and also Ms. Powers, and
5   I believe she is on the phone.

6           MS. SCHNUR:  Yes, I'm on the phone.  Good morning,
7   Your Honor.

8           THE COURT:  Hello, Ms. Schnur.  I don't --

9           MS. SCHNUR:  Hi.  Good morning.

10          THE COURT:  I mean, I guess if nobody objects you're
11  welcome to remain, but I don't understand you to be either a
12  party or counsel of record at this point.  Is that correct?

13          MS. SCHNUR:  I've been, I've been counsel of record.
14  I haven't entered a notice of appearance.

15          THE COURT:  Well, I think that's what we generally
16  mean by counsel of record, that is someone who's entered a
17  notice of appearance.  But if there's no objection, I'm happy
18  to have you on the line.

19          I take it Ms. Shon is also terminated as a
20  plaintiff, correct?

21          MR. GROSSMAN:  That is correct, from plaintiffs,
22  Your Honor.

23          THE COURT:  And Defendant Blue Icarus, LLC is no
24  longer a defendant, correct?

25          MR. GROSSMAN:  That is correct as well.

1          THE COURT:  All right.
2          MR. GROSSMAN:  Yeah.
3          THE COURT:  Now --
4          MR. ROSENBERG:  Judge Gold, one clarification, Shon
5   is a defendant who is no longer a defendant.
6          THE COURT:  Shon is a defendant who is no longer a
7   defendant.  That --
8          MR. GROSSMAN:  Her case was dismissed.
9          THE COURT:  Yeah, that's what I tried to say, but
10  maybe it didn't come out clearly.  Okay.
11         The sole matter referred to me by Judge Cogan,
12  concerns a motion to quash filed by non-party Robert Aloi.  Is
13  Mr. Aloi on the phone?
14         MR. ALOI:  Good morning, Your Honor.  I am on the
15  phone.
16         THE COURT:  Good.  And you are representing yourself
17  in this connection?
18         MR. ALOI:  Yes, Your Honor.
19         THE COURT:  Let me ask you a few questions, Mr.
20  Aloi.
21         In your submission to the Court, you make reference
22  in paragraph 2 of an ongoing criminal matter in the State of
23  New Jersey.
24         I do not intend to ask you any substantive questions
25  about that matter, but I am interested in knowing the

```
1    following.  Are you represented by an attorney in connection
2    with that matter?
3              MR. ALOI:  Yes.
4              THE COURT:  Is that attorney retained or court
5    appointed?
6              MR. ALOI:  Retained.
7              THE COURT:  Is there any reason then why that
8    retained attorney is not assisting you in connection with this
9    application?
10             MR. ALOI:  He stated it was a different matter and
11   that he was not able to work with me in the State of New York.
12             THE COURT:  I see.
13             MR. ALOI:  He referred me to an attorney which
14   wanted large fees as a retainer, which I cannot afford.
15             THE COURT:  Thank you for the clarification.
16             I'm going to ask you one more question about the
17   case.  I see a complaint number and a police case number.
18             I'm not familiar enough with the way entries are
19   made in the records of the New Jersey state courts to know
20   what stage of the case this has proceeded to.  Are you under
21   indictment there?  Have you been arrested?
22             Can you, without talking about the substance of the
23   case, are you able to say anything about its status?
24             MR. ALOI:  All of the above at this moment, Your
25   Honor.  We filed a motion to dismiss.  That motion to dismiss
```

1     was granted.  The State of New Jersey has filed an appeal and
2     we are waiting for their appeal briefs.
3               THE COURT:  Thank you.
4               MR. ALOI:  Which they just asked for a 30-day
5     extension.
6               THE COURT:  Thank you, Mr. Aloi.
7               What I have read is the August 30th submission from
8     Mr. Aloi, and the September 11th filing by Mr. Rubin.  Have
9     any other papers -- you know, the docket sheet has many
10    entries on it.
11              Has anyone submitted anything other than those two
12    sets of documents to the Court?
13              MR. GROSSMAN:  This is Brian Grossman for plaintiff.
14    We have not submitted anything.  We do not oppose, but we also
15    do not consent.
16              THE COURT:  Thank you.
17              MR. ROSENBERG:  Your Honor, this is Benjamin
18    Rosenberg for Defendant Rubin.
19              There has been another submission which was a
20    subsequent submission by Mr. Aloi, Document No. 175, which is
21    dated -- filed September 17th, 2018.
22              THE COURT:  Thank you.  I --
23              MR. ROSENBERG:  It's an answer to our opposition.
24              THE COURT:  I see that, and I'm opening it right
25    now.  Thank you for bringing it to my attention.  I have not

1       seen it before.
2               MR. ROSENBERG:  Yes, Your Honor.
3               THE COURT:  I'm going to ask --
4               MS. LAVIGNE-ALBERT:  Your Honor, this is --
5               THE COURT:  Go ahead.
6               MS. LAVIGNE-ALBERT:  This is Jolene Lavigne-Albert
7       for Defendant Powers.  We have not filed any papers. However
8       we adjoin in Dechert's submission for Defendant Rubin.
9               THE COURT:  Okay, thank you.
10          (Pause.)
11              THE COURT:  Just bear with me while I take a look at
12      these papers.  Oh, I see now that they're mostly exhibits.
13      All right.
14              So it seems to me that there are three issues, only
15      one of which is serious, but it's quite serious, by which I
16      mean number one, Mr. Aloi objects on the grounds that he
17      wasn't given sufficient time.
18              Mr. Rubin responds, that's not a problem, we'll give
19      Mr. Aloi any reasonable extension of time he needs.  So that
20      takes care of that issue.
21              Number two, there's some reference by Mr. Aloi to
22      perhaps wanting to bring his own civil action.  Mr. Rubin
23      says, well, that would waive any Fifth Amendment privilege if
24      he did.  That may well be correct, but Mr. Aloi has not yet
25      filed such an action so I don't think his speculation about

1  what he might or might not do in the future is sufficient
2  grounds to vitiate a claim of Fifth Amendment privilege.
3          That brings us to the most serious issue, which is
4  the Fifth Amendment invocation by Mr. Aloi, who has identified
5  a specific pending criminal case, which if on appeal I take it
6  is a matter of public record and accessible to counsel.
7          I've reviewed the subpoena that Mr. Rubin seeks to
8  enforce, and I am directing my attention right now to Docket
9  Entry 173-1, and the list of five documents to be produced.
10         These are not documents that would fall within the
11 foregone conclusion exception recognized to active production
12 incrimination.
13         These are doc -- these are broad demands, and it
14 would seem that were I to enforce them, it would be the kind
15 of incriminatory communication that concerned the Court in the
16 cases that, although I had some familiarity with beforehand, I
17 must acknowledge Mr. Rubin very helpfully and candidly put
18 before the Court, *United States against Hubbell*, 530 US 27,
19 and *United States against Greenfield*, 831 F.3d 106, of course,
20 going back to such seminal cases as *Fisher*, from the 1970s.
21         In *Hubbell*, in particular, I recall the language --
22 if I can find it again.  The collection -- the language at
23 page 41 of the opinion, about how collecting and producing the
24 materials demanded would be tantamount to answering a series
25 of interrogatories and asking the witness to disclose the

1    existence and location of particular documents fitting broad
2    descriptions.
3        The assembly of literally hundreds of pages of
4    material in response to a request, which I won't quote, is the
5    functional equivalent of the preparation of an answer to a
6    written interrogatory or a series of oral questions at a
7    discovery deposition.
8        So I'm really uncertain, Mr. Gross -- Mr. Rosenberg,
9    how one would distinguish Mr. Aloi's predicament from the ones
10   that face Mr. Greenfield or Mr. Hubbell in these two cases,
11   and of course there's nobody at this table in a position to
12   grant Mr. Aloi active production immunity.
13       And his Fifth Amendment concerns seem hardly to be
14   speculative, at least assuming as I do, absent any indication
15   to the contrary, that the New Jersey proceeding overlaps
16   somewhat with the issues raised in this case.
17       MR. ROSENBERG:  Your Honor, if I may?  This is
18   Benjamin Rosenberg.
19       THE COURT:  Thank you, sir.
20       MR. ROSENBERG:  I understand the concern, and of
21   course that's why we addressed that and cited the *Hubblell*
22   case, which -- but I believe that this is distinguishable from
23   *Hubbell*, because this request documents many of which -- the
24   existence of which are a foregone conclusion, because it is
25   established through the record in our case, and I don't

1   believe that Mr. Aloi disputes it, that he had communications
2   with the plaintiffs about Mr. Rubin and about this case.
3            So the foregone conclusion as to the existence of
4   those document is satisfied.
5            Now, it is also -- well, as to documents concerning
6   his -- forgive me.  So that's number one.  All documents
7   reflect communications with plaintiffs.  Similarly it's
8   established that there are documents reflecting communications
9   or communications with the defendants.
10           I suppose I should be more precise.  It may be not
11  be the case that documents that reflect the communications,
12  that is in which he may refer to them.  There may not be the
13  foregone conclusion as to those.
14           But as to any communications that he had with
15  defendants, those I believe, are a foregone -- the existence
16  of those is a foregone conclusion.
17           THE COURT:  Well, I'm --
18           MR. ROSENBERG:  Similarly, it's established --
19           THE COURT:  So --
20           MR. ROSENBERG:  Forgive me, Your Honor.
21           THE COURT:  No, no, please proceed.  I thought --
22  your pause led me to think you were finished, but I was
23  mistaken.  So please, continue.
24           MR. ROSENBERG:  Of course, Your Honor.
25           To the extent that there are documents that reflect

1    the criminal case, or that are public documents in the
2    criminal case, I believe those are responsive to the third
3    request, although I would acknowledge that those are generally
4    not as important then we can get those from the public record.
5            But I think I will -- as to, I do not recall, Your
6    Honor, off-hand, whether we have evidence already of documents
7    reflecting communications between Mr. Aloi and Mr.
8    Balestriere, who is along with Mr. Grossman, counsel to the
9    plaintiffs.  But we do have evidence and it's established
10   there were communications between Mr. Aloi and Mr. Salin.
11           So once again, those documents or communications,
12   the existence thereof, is a foregone conclusion.
13           I think that distinguishes the case from *Hubbell*,
14   which -- and I'd submit that this, precisely because our
15   document request is much narrower than the one at issue in
16   that case, and goes to matters -- the existence of which is
17   known to us, although the content is not.  But the content, of
18   course, is not protected by the Fifth Amendment.  Thank you.
19           MS. SCHNUR:  Your Honor, this is Yifat Schnur.  Just
20   to add to that, we do know of a communication between Mr. Aloi
21   and Mr. John Balestriere.
22           THE COURT:  Well, I would imagine you would since
23   Mr. Balestriere is counsel to the parties -- to one of the
24   parties in the case.  I mean, I understand that argument, but
25   I think I'm either confused or we have a different

1       understanding of the foregone conclusion test that maybe you
2       can brief further for me if you're pressing the point.
3                By which I mean, to say that it's a foregone
4       conclusion because you know generally that Mr. Aloi had
5       communications with the plaintiffs about the defendants, and I
6       don't know how you know that, by the way, from your
7       submission, but assume that you -- except for the one exhibit
8       that's attached.
9                But assume -- let's assume you could establish that.
10      My understanding of the "foregone conclusion exception" is,
11      A., that it applies on a document-specific basis, not a
12      subject matter basis.
13               So for example, if the prosecution in *Hubbell* knew
14      that it was a foregone conclusion that Mr. Hubbell conducted
15      financial transactions in the course of his life because they
16      knew he had a credit card, and they knew he received payroll
17      checks from his law firm, would that mean that it was a
18      foregone conclusion such that he would have no Fifth Amendment
19      protection in all of his work papers, and financial statements
20      and, other financial documents that he prepared because it's a
21      foregone conclusion that he had income and expenses?
22               I don't think so.  And that's really all you're
23      telling me.  You're not telling me that it's a foregone
24      conclusion that on such and such a date at such and such a
25      time, from telephone number A, Mr. Aloi sent a text message

1   about Mr. Rubin to plaintiff X.

2            And I think it's that kind of foregone conclusion
3   that the courts are saying might create a narrow exception to
4   the right to invoke the Fifth Amendment.

5            My second concern is that Mr. Aloi's difficulty is
6   with the fact that he's being prosecuted by the authorities in
7   New Jersey.

8            And I don't know that even if, based upon your
9   investigation, Mr. Rosenberg, and information you've developed
10  from your client, Mr. Rosenberg, that the New Jersey
11  prosecutors are aware as a foregone conclusion of all of these
12  communications that you might be able to establish with more
13  detailed submissions, you have a foregone conclusion about.

14           And I'm wondering whether the case law speaks to
15  whose foregone conclusion is at issue. But it seems to me
16  logical to think that if the New Jersey prosecutors don't
17  share the foregone conclusions that you seem to have reached,
18  whether Mr. Aloi's Fifth Amendment rights are still
19  enforceable or assertible, if I can make up a word there.

20           MR. ROSENBERG: But, Your Honor -- oh, forgive me,
21  Your Honor.

22           THE COURT: No, I was going to invite you to
23  respond, Mr. Rosenberg, if you'd like to.

24           MR. ROSENBERG: If I may, Your Honor? As to the --
25  I do not know -- I cannot, as I sit here, Your Honor, cite

1      authority on precisely the questions, and I would appreciate
2      the opportunity to address them, to research them and address
3      them briefly to the Court in a letter or a submission.
4               THE COURT:  Of course.
5               MR. ROSENBERG:  However, as to the -- thank you,
6      Your Honor.
7               THE COURT:  As to the second matter, it seems to me
8      that it's not the New Jersey prosecutor's understanding that
9      matters.
10              It must be the party that subpoenas the material
11     because otherwise anyone could say, well, there could be a
12     prosecutor somewhere who doesn't -- as to whom this is not a
13     foregone conclusion.  So even if it is as to you, I can avoid
14     producing.
15              THE COURT:  Well, I understand the words you've
16     said, but I'm not sure I agree because it's one thing for a
17     person invoking the Fifth Amendment to say there might be some
18     prosecutor somewhere else who doesn't share this foregone
19     conclusion.
20              It's another thing to say, I am in the midst of
21     criminal litigation with a prosecuting authority that doesn't
22     have the same access to detailed information that Mr. Rubin
23     does.
24              And my disclosure in this case can then be accessed
25     by that prosecutor in furtherance of an ongoing criminal

1    litigation.  That is a far less speculative and more concrete
2    Fifth Amendment concern than the one you hypothesized.
3               And I really don't understand how to -- how I can
4    require Mr. Aloi to turn over documents to you, that then can
5    be reached by a prosecutor who is in the middle of trying to
6    indict him.
7               And, you know, one of the background facts that I
8    haven't made explicit on this record, but that my reading of
9    the pleadings seems to indicate, is that whether the
10   plaintiff's alleged version of the facts is accurate, or Mr.
11   Rubin's is, there is plenty of reason to believe that if Mr.
12   Aloi had the kinds of communications that would be responsive
13   to your subpoena, they would be incriminating in either case.
14              And so it is a very concrete and specific invocation
15   of the Fifth Amendment, not a speculative, well maybe there is
16   some prosecutor somewhere who doesn't know enough to have a
17   foregone conclusion.
18              So I am going to grant the motion to quash without
19   prejudice to a motion to reconsider that addresses the case
20   law questions I've raised during the argument today, which you
21   can submit at any point you think you have enough to persuade
22   me otherwise, Mr. Rosenberg.
23              MR. ROSENBERG:  Very well, Your Honor.  We will do
24   research and if appropriate, file a motion too.
25              THE COURT:  Does anybody want to add anything to

16

1  today's record, Mr. Grossman?  I only wrote down last names.
2  I may have forgotten genders.  I apologize if I misattribute
3  anyone's gender here.  Mr. Grossman?
4         MR. GROSSMAN:  Nothing from plaintiff, Your Honor.
5         THE COURT:  And, Mr. Rosenberg, I think you and I
6  have wrapped up, but if you'd like to add anything I want to
7  give you the opportunity.
8         MR. ROSENBERG:  No, Your Honor.  I appreciate that.
9  Nothing further.
10        THE COURT:  Mr. Grover or Ms. Lavigne-Albert?
11        MR. GROVER:  Nothing further, Your Honor.
12        THE COURT:  And, Mr. Aloi, did you understand and
13 follow everything that we talked about today?
14        MR. ALOI:  Yes, Your Honor.  Thank you.
15        THE COURT:  Mr. Aloi, you seem like a very
16 articulate person, but if you're not trained in the law, and
17 Mr. Rosenberg does, in fact, renew his application with new
18 legal authorities, the questions that that renewed application
19 will raise, I think will be somewhat technical legal
20 questions.
21        And I'm not in a position to evaluate your financial
22 wherewithal, or whether your attorney in New Jersey can be
23 admitted pro hoc vice, which means even though he's not a
24 member of the New York Bar, could be admitted for the limited
25 purposes of representing you in connection with the motion,

```
1    but I would urge you to explore all possibilities to obtain
2    legal assistance if, in fact, Mr. Rubin renews the motion.
3              One other thing I want to say --
4              MR. ALOI:  I understand, Your Honor.
5              THE COURT:  -- Mr. Aloi, I am assuming that you're
6    making this Fifth Amendment invocation in good faith.
7              That means that I'm assuming that you have no
8    intention of providing documents or testimony on behalf of the
9    plaintiffs either.
10             You cannot invoke your Fifth Amendment privilege
11   with respect to Mr. Rubin's requests for information or
12   assistance, and decline to invoke it if the plaintiffs request
13   information or assistance.  There's no cherry picking here.
14   It's one way or the other.  So I want to be clear about that.
15             And should it develop that you've provided
16   documents, or testimony, or affidavits, or information about
17   this to the plaintiffs, that will be a basis for Mr. Rosenberg
18   to renew his motion with a quite compelling argument.
19             Do you follow?
20             MR. ALOI:  Oh, I definitely understand, Your Honor.
21             THE COURT:  Okay, good.  All right.  Have a good
22   day, everybody.
23             MR. GROSSMAN:  Thank you, Your Honor.  You as well.
24             MR. ROSENBERG:  Thank you, Your Honor.
25             MR. ALOI:  Thank you, Your Honor.
```

1        THE COURT:  Good bye.

2     (Proceedings concluded at 10:28 a.m.)

3

4     I, CHRISTINE FIORE, court-approved transcriber and

5  certified electronic reporter and transcriber, certify that

6  the foregoing is a correct transcript from the official

7  electronic sound recording of the proceedings in the above-

8  entitled matter.

9

10   *[signature: Christine Fiore]*

11   _____        October 24, 2018

12   Christine Fiore, CERT