Douglas E. Grover
Partner

212 612-0681
dgrover@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400  Fax: 212 344-7677
schlamstone.com

October 29, 2018

BY ECF
Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Lawson, et al., v. Rubin, et al.,* Case No.: 17 CV 6404 (BMC)

Dear Judge Cogan:

A discovery dispute has arisen between the parties. Pursuant to Your Honor's Individual Practice Rule III(A)(1), defendants' and plaintiffs' respective positions are set forth below.

All parties had a meet and confer in person meeting on October 23, 2018, from 10:15 am until 10:30am, and then a call on October 26, 2018, from 2:30 p.m. to 2:50 p.m. Brian Grossman and Matthew Schmidt participated on behalf of Plaintiffs; Ed McDonald, Ben Rosenberg, and Michael Gilbert for Defendant Rubin; and Doug Grover, Jolene LaVigne-Albert and Niall D. O'Murchadha for Defendant Powers.

**DEFENDANTS' POSITION**

This letter is respectfully submitted on behalf of both defendants in this action to request: an order compelling four of the plaintiffs, Kristina Hallman, Hillary Lawson, Macey Speight, and Moira Hathaway to provide their mobile phones to an electronic discovery vendor so that they can be inspected and imaged pursuant to Fed. R. Civ. P. 34. Defendants further seek a short extension of the fact discovery deadline to continue the depositions of Hallman and Lawson, because Plaintiffs belatedly produced voluminous and critical documents only after the depositions of Hallman and Lawson were concluded, and because defendants anticipate that additional relevant documents may be discovered as a result of the inspection of plaintiffs' phones. With respect to Plaintiffs Speight and Hathaway, Defendants reserve the right to re-open their depositions in the event that inspections of their phones reveal the existence of previously unproduced relevant documents.

Defendants request that the extension of the fact discovery deadline be solely for the purpose of completing the discovery discussed in the prior paragraph, and a handful of other

discovery matters that the parties have already discussed and is already under way,[1] and that the parties not be allowed to undertake any new discovery.

**Hallman and Lawson: Production of Phones and Re-Deposing**

Hallman and Lawson were deposed on September 12 and September 25, respectively. On September 21, 2018, plaintiffs' counsel produced 199 pages of text messages apparently from Lawson's phone, which included multiple communications with Hallman. On October 10, 2018, counsel made a supplemental production of approximately 5,000 pages of documents. These documents consisted of thousands of text messages apparently from Hallman's phone with individuals including Rubin, Powers, Lawson, and a third plaintiff who now appears to have dropped out of the litigation, Stephanie Caldwell. The format of many of plaintiffs' productions of text messages are such that the texts are very difficult to read, and portions of conversations are obviously missing. More importantly, **these productions were made after plaintiffs' counsel had repeatedly assured defendants' counsel throughout July, August, and September 2018 that all available text messages had been produced.** For these reasons, Plaintiffs' productions cannot be trusted. Defendants are entitled to inspect the phones to assure that all relevant text messages have been produced, in a legible format, and with no portions omitted.

These September and October productions constitute the vast majority of relevant documents produced by Hallman and Lawson and should have been produced well in advance of the depositions. Further, buried among text messages that had been produced several weeks before the October 10 disclosures was a conversation between Hallman and Lawson that took place days before the filing of the complaint in this action and that suggested that Lawson and Hallman had deleted text messages. (Lawson writes to Hallman on October 26, 2017: "Ok let's delete the chats. And you do it this time.") Hallman's deposition had already been taken before this conversation was produced, so it was impossible to ask her about the conversation.[2] When Lawson was confronted with the text, she stated that she had no recollection or explanation for it. (Lawson Dep. at 258:3-259:12.)

After Hallman and Lawson testified in their depositions that their mobile phones had relevant communications that had not been produced in this case, defendants asked to inspect Hallman and Lawson's phones. Plaintiffs' counsel refused, which eventually led defendants'

---

[1] The discovery matters that are underway are: the visit of a storage unit by defendants' counsel and report of same to plaintiffs' counsel, agreeing to evidentiary stipulations as to documents already produced and in lieu of certain financial documents that were subpoenaed by plaintiffs, and one additional deposition of a third party who lives in Florida by plaintiffs.

counsel to draft a letter to the court. Plaintiffs' counsel provided to defendants' counsel their position to be inserted in the letter for the court, opposing defendants' request to inspect the phones. Shortly thereafter, plaintiffs' counsel were sanctioned $20,000 by Your Honor in this case (on Oct. 5, 2018), and as a result asked defendants' counsel to withhold the letter. Defendants' counsel agreed, and plaintiffs' counsel eventually agreed to provide Hallman and Lawson's cell phones. On October 19, 2018, the parties agreed to specific parameters and the logistics of providing Hallman and Lawson's phones to defendants' vendor. Later that day, defendants' counsel informed plaintiffs' counsel that replacement phones had already been sent to Hallman and Lawson, and that defendants were about to deliver prepaid FedEx envelopes to enable Hallman and Lawson to send their phones to defendants' vendor. Shortly thereafter plaintiffs' counsel contacted counsel for defendant Powers and asked defendants to allow plaintiffs to bring their phones in person to New York for the extraction, rather than sending them via FedEx, so that plaintiffs would be without their phones for a shorter period of time. Defendants agreed, with the understanding that they would have the phones in New York on the following Monday or Tuesday (October 22-23). Despite a series of follow-up emails from defendants' counsel requesting the status of the production of the phones, plaintiff's counsel never responded. This resulted in defendants requesting a meet and confer which took place in person on October 23. At that time, plaintiffs' counsel stated that they no longer agreed to provide the phones.

**Speight and Hathaway: Production of Phones and Potentially Re-Deposing**

Plaintiffs have failed to produce text messages related to Speight and Hathaway. Again, despite defendants' numerous requests for these documents related to Speight, plaintiffs did not produce any texts sent or received by Speight until September 24, 2018. However, plaintiffs' September 24 production did not contain any WhatsApp messages and contained only a very limited quantity of iMessages and SMS text messages – all of which were exchanged in 2018. Meanwhile, plaintiffs have not produced any text messages sent or received by Hathaway.

In fact, both Speight and Hathaway testified at their depositions that in responding to defendants' requests for production, they only provided their counsel with their laptops and various passwords for their Apple or iCloud accounts, **but they never provided their attorneys with their physical cell phones for retrieval of documents.** (Hathaway Dep. at 32:17-33:5.)[3] But, according to I.T. professionals retained by Defendants, WhatsApp messages cannot be retrieved through this procedure: the actual phone is required to retrieve WhatsApp messages. Thus, it is clear that plaintiffs' production omits all of Speight's and Hathaway's highly relevant text messages during the relevant time period in this action. Both Hathaway

---

[3] Speight's deposition took place on October 23, 2018, and a transcript is not yet available for citation.

and Speight have testified that they have exchanged WhatsApp text messages with Mr. Rubin and Ms. Powers (not all of which defendants have), and Ms. Shon has testified that she has exchanged texts messages with Ms. Speight (which defendants do not have). (See, e.g. Hathaway Dep. at 81:9-19, 83:23-84:10; 136:16-20.) Thus, there are clearly relevant text messages that are being withheld, and defendants are entitled to inspect Speight's and Hathaway's phones.

**Conclusion**

We therefore request an order compelling Hallman, Lawson, Speight, and Hathaway to produce their current mobile phones, and any other mobile phones or electronic devices that they may have used during the period relevant to this case to communicate with one another or with the defendants, to the defendants' e-discovery vendor, who will be instructed to retrieve and produce in a useable form all messages exchanged with defendants and with Stephanie Shon, and, for Hallman and Lawson's phones, all text messages involving plaintiffs Hallman, Lawson and Caldwell since August 1, 2016. Plaintiffs' counsel had originally agreed to these terms as to Hallman and Lawson on October 19, 2018, before recanting on their position. Defendants will pay for the vendor, and for temporary replacement phones for plaintiffs.

Defendants' respectfully request this relief pursuant to Fed. R. Civ. P. 34. Such an order is contemplated under Federal Rule of Civil Procedure 34, and is appropriate given the facts of this case, see, e.g., Freres v. Xyngular Corp., 2014 WL 1320273, at *2 (D Utah Mar. 31, 2014) (granting motion to inspect cell phone pursuant to Fed. R. Civ. P. 34(A)(1)(A) where the discovery sought could not be obtained from any other source and defendant paid for plaintiff's replacement phone).

**PLAINTIFFS' POSITION**

Plaintiffs do not consent to Defendants' request to extend document discovery as it is not proportional, seeking documents which they hope for but cannot claim actually exist, and would not even result in the production of additional documents.

Plaintiffs do, however, consent to depositions limited in time and scope of two Plaintiffs for whom some text messages were produced after Defendants deposed both Plaintiffs for nearly seven full hours (albeit many weeks ago), and for whom Defendants state concerns regarding deleted texts (despite Plaintiffs' counsel's assertions regarding those concerns).

Defendants' counsel repeatedly mischaracterize what has occurred. Unless stated otherwise, Plaintiffs do not accept Defendants' factual assertions. However, most relevant are

(1) that neither Hallman nor Lawson stated that "their mobile phones had relevant communications that had not been produced in this case" (and, in fact, both clients had turned over their phones many months before their depositions to a discovery vendor to follow the procedures detailed below); (2) as soon as Plaintiffs believed some messages had not been produced, Plaintiffs produced them (and again made available for questioning those Plaintiffs for whom some messages were produced late) and, most importantly, (3) providing Plaintiffs' phones will not result in the production of more messages (only harassment of Plaintiffs and a burden for their counsel) as confirmed by Plaintiffs' discovery vendor (please see a letter from such vendor ("the CDS Letter") attached hereto).

**Hallman and Lawson: Plaintiffs' Position: Consent to New Depositions Limited in Time and Scope**

Hallman and Lawson did not delete text messages relevant to this dispute and are prepared to provide declarations or testify to that effect in a deposition. They are also prepared to be questioned in depositions limited in scope (solely regarding those texts produced soon after they were deposed weeks ago) and time (Plaintiffs suggest one hour each, and preferably by video to avoid travel).

Plaintiffs and their counsel discussed Defendants' serious allegation that Plaintiffs deleted texts relevant to this matter after Lawson's deposition, which came after Hallman's. Defendants asked Lawson at her deposition about the "let's delete the chat" texts; at her deposition Lawson did not remember such texts. After Lawson's deposition Plaintiffs' counsel discussed these texts with both Hallman and Lawson who then recalled what the texts were about. Both Plaintiffs confirmed those texts have nothing to do with this case, nor Rubin, nor Powers. The texts are not relevant and would never have been produced if they exist.

Plaintiffs a week ago informed Defendants that both Hallman and Lawson would agree to execute sworn declarations stating as much. Defendants refused such offer. More to the point, even if Hallman's and Lawson's devices were reviewed again, Defendants would not be entitled to the messages they complain of as such messages, if they still exist, are not responsive nor relevant.

**Hathaway and Speight: Plaintiffs' Position: Defendants are Not Entitled to Re-Open Hathaway and Speight's Depositions; Plaintiffs Have Produced All Relevant Documents From Their Devices**

Defendants cannot cite to anything regarding a lack of production of texts from Hathaway and Speight beyond their incorrect understanding of technology. Defendants should

not be permitted to burden both Plaintiffs by deposing them again (in particular when they chose to depose Speight for nearly seven full hours and cut Hathaway's deposition very short). And all Plaintiffs have produced all relevant documents which exist.

As noted above, and as told to Defendants, Plaintiff's counsel has confirmed with its vendor that by providing to the vendor the Plaintiffs' phones and iCloud information, the vendor was capable of pulling all WhatsApp messages. According to Plaintiffs' vendor, as noted in the CDS Letter, WhatsApp messages are stored on iCloud accounts and Plaintiffs' vendor imaged either phones or iClouds for every Plaintiff. Plaintiffs' vendor utilized the most current technology at the time of imaging each device to pull messages, such that everything that was capable of being pulled from the device at the time of imaging was pulled. Providing the phones will not result in the production of more relevant messages.

Even if there were further texts to be obtained—and there are not—Defendants have not even stated what they hope to obtain. Plaintiffs assert that they were raped and sexually assaulted. Defendants respond that Rubin engaged in consensual sex with Plaintiffs. Text messages sent at a time other than when the torts were perpetrated would not resolve this different view of what happened.

*Defendants Have All Text Messages They Seek From Speight and All Plaintiffs*

Defendants do not point to any specific messages they exchanged with Speight or any Plaintiff that they are missing because they cannot. Prior to producing any documents at all (indeed, in the Initial Complaint), Plaintiffs alleged hacking. Speight testified that all of her messages with Rubin and Powers were deleted from her WhatsApp account, was unsure how that occurred, but believed that it occurred through hacking by Defendants. This, and nothing else, is the reason no responsive WhatsApp messages were produced from Plaintiff Speight. And if Defendants seek text messages Plaintiffs exchanged with Defendants, Defendants should have those texts themselves, just as they should have any texts Speight exchanged with one-time Defendant Shon since Rubin admitted at his deposition that he has been paying for Shon's counsel. Indeed, Rubin produced text messages exchanged between third party Taren Cassidy (who recruited Plaintiff Fuller (Second Amended Complaint, dated August 17, 2018, Dkt. No. 161, ¶ 218)) which Fuller no longer had on her phone and, thus, did not and could not produce.

*Plaintiffs (and Not Defendants) Followed Detailed Best Practices
to Produce All Relevant Documents*

Defendants' witch hunt for texts which they hope might exist – but of which they have no evidence – must be placed in context of the tremendous best practices efforts of Plaintiffs in their voluminous document production (especially when contrasting this to Defendants'

apparently inadequate methods). Given Defendants' position, Plaintiffs provide significant detail here regarding the work its counsel and vendors have performed over the last six months.

Plaintiffs' counsel engaged experienced e-discovery vendors (not simply "I.T. professionals") that use the most current software to pull information from devices, and Plaintiffs' staff have devoted approximately 500 hours reviewing more than two million documents, including more than 210,000 text messages alone from Plaintiffs Hallman, Lawson, Speight, and Hathaway. From that review, Plaintiffs have now produced 204,821 pages of documents out of 2,162,130 documents (not pages, and depending on the document, each may contain multiple pages) reviewed.

Defendants, on the other hand, have produced less than 1% as many pages—1,523 pages of documents combined; 780 documents were produced by Powers and 743 produced by Rubin. While Plaintiff hired a vendor to engage in its production, Rubin admitted at his deposition last Thursday that he himself (not a vendor, nor even a lawyer) conducted the searches of his emails, and that he turned over only one—and not both—of his cell phones to his counsel for review and production. Rubin also made no mention of turning over laptops, tablets, or any other devices, nor—highly significantly—passwords to accounts. Plaintiffs have followed the correct procedure and devoted the time to ensure that they already produced all that there is to produce from Plaintiffs' devices.

This is not simply a comparison of how many documents were produced: Plaintiffs followed a document collection procedure adequately configured to ensure that Plaintiffs produced all responsive documents. Before collecting devices or documents, Plaintiffs spoke to their forensic experts regarding such collection to ensure all Plaintiffs and their counsel followed the correct procedure. Despite opinions of unnamed "I.T. professionals" (who may work in information technology yet have absolutely no idea how to gather and produce documents in e-discovery) Plaintiffs' trained and experienced forensic experts confirmed again during discussions regarding Defendants' application that all presently available WhatsApp messages could be—and in fact were in this case—collected from iCloud accounts. Even Defendants admitted in their testimony that virtually all of their communication with Plaintiffs was, in fact, by use of the WhatsApp application.

At the outset of this action, Plaintiffs provided Plaintiffs' counsel with credentials to access all of their electronic accounts that were likely to contain discoverable information. Plaintiffs' counsel provided the information to a third-party discovery vendor who imaged the accounts and uploaded the documents to an online document review platform. Plaintiffs' counsel reviewed the documents and produced over 200,000 responsive pages.

Plaintiffs followed a similarly systematic procedure in producing the text messages that are the subject of this dispute. Prior to receiving any data from Plaintiffs, Plaintiffs' counsel

received confirmation from the vendor that all required text messages and WhatsApp messages could be produced by access either to the physical phone which held the messages, or to the iCloud account connected to the phone. Plaintiffs provided their cell phone or iCloud login credentials to their counsel which arranged for a third-party vendor to collect the text messages. Firm staff reviewed the messages, and produced the responsive text messages.

Contrary to Defendants' contention, WhatsApp messages can—and were—retrieved through this procedure. Indeed, messages sent via WhatsApp were present in many of Plaintiffs' productions. Plaintiffs have complied with their discovery obligations.

Plaintiffs' procedures comply with applicable law. *See Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14–CV–9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)) ("Rule [26] is intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information"); *Assured Guar. Mun. Corp. v. UBS Real Estate Sec. Inc.*, No. 12 CIV. 1579 HB JCF, 2013 WL 1195545, at *4 (S.D.N.Y. Mar. 25, 2013) (quoting *Garcia v. Tyson Foods, Inc.*, Civ. A. No. 06-2198, 2010 WL 5392660 at *14 (D. Kan. Dec. 21, 2010)) (a motion to compel should be denied as duplicative where the movant "produced nothing more than 'mere speculation' that responsive [documents] might exist"); *see also MacNamara v. City of New York*, No. 04CIV.9216RJSJCF, 2007 WL 3238679, at *1 (S.D.N.Y. Nov. 2, 2007) (denying motion where "the requested discovery is cumulative, and the burden that it would impose on the defendants outweighs its likely benefit."). Defendants' offer to pay for the out-of-pocket costs of additional imaging does not mitigate the additional burden. Defendants' request would still require time to negotiate the protocols of additional review; negotiate procedures to protect Plaintiffs' privacy interests; and Plaintiffs' counsel would have to perform any review in order to address privilege concerns (as counsel has been communicating by email, and, at times, text message with Plaintiffs for over 14 months). Plaintiffs have already done all that they are supposed to do in their production of the over two hundred thousand relevant pages they have already provided to Defendants.

**Plaintiffs' Conclusion**

Plaintiffs consent to depositions limited in time and scope for two Plaintiffs for whom some text messages were produced late. But no Plaintiffs should be forced to be without her phone, yet again, nor should Plaintiffs' counsel have to do a review again of all produced document.  Everything relevant has been provided to Defendants – more than 100 times as many pages as what Defendants have provided to Plaintiffs.

Date: New York, New York
      October 29, 2018

By:  /s/Brian L. Grossman
    John G. Balestriere
    Brian L. Grossman
    **BALESTRIERE FARIELLO**
    225 Broadway, 29th Floor
    New York, New York 10007
    Telephone: (646) 912-8462
    Facsimile: (212) 208-2613
    brian.grossman@balestrierefariello.com
    *Attorneys for Plaintiffs*

    /s/Edward A. McDonald
    Edward A. McDonald
    Benjamin E. Rosenberg
    Michael J. Gilbert
    Benjamin M. Rose
    Dechert LLP
    1095 Avenue of the Americas
    New York, NY 10036
    Telephone: (212) 698-3672
    Facsimile: (212) 698-3599
    *Attorneys for Defendant Howard Rubin*

    Douglas E. Grover
    Jeffrey M. Eilender
    Niall D. Ó Murchadha
    Jolène F. LaVigne-Albert
    26 Broadway, 19th Floor
    New York, NY 10004
    Telephone: (212) 344-5400
    Facsimile: (212) 344-7677
    *Attorneys for Defendant Jennifer Powers*