

**JOHN G. BALESTRIERE**
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5401
F: +1-212-208-2613
john.balestriere@balestrierefariello.com
www.balestrierefariello.com

**VIA ECF**                                                                                         November 1, 2018
Honorable Brian M. Cogan
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Lawson et al. v. Rubin et al.*, No. 1:17-cv-06404-BMC
      Pre-Motion Conference Letter Regarding Spoliation Sanctions[1]

Dear Judge Cogan:

  My firm represents Plaintiffs in the above-referenced action and I respectfully submit this Pre-Motion Conference Letter for Plaintiffs' anticipated Motion for Sanctions.

  Shortly after receiving Plaintiffs' draft complaint and litigation hold letter, Defendants threw away bondage items—restraints, ball-gags, and bondage furniture—that Rubin used to restrain and silence Plaintiffs while Rubin sexually assaulted them. Because Defendants' only defense is consent, this evidence would have been highly probative.

  Plaintiffs first learned of the possible spoliation at Powers' deposition on October 16, 2018, and confirmed the spoliation nine days later at Rubin's deposition on October 25, 2018.[2] This misconduct warrants at least an adverse inference for the purposes of summary judgment and trial, striking of Defendants' affirmative defenses, monetary sanctions, and any other sanctions the Court deems appropriate.

     *Rubin and Powers Destroyed Evidence After Finding Out About This Action*

  Rubin testified he terminated his lease because "you sued me." (Deposition of Rubin ("Rubin Dep.") at 120:9–13.) Powers, whom Rubin paid $15,000 a month to handle "day-to-day tasks" that Rubin needed (Deposition of Jennifer Powers ("Powers Dep.") at 29:16–30:12, 39:3–9), admitted that she threw out the bondage items (Powers Dep. at 178:15–20), and "got rid of the BDSM furniture" (Powers Dep. at 188:15–23) "when we decided that we weren't

---

[1] All terms are as defined in Plaintiffs' Second Amended Complaint (Dkt. No. 161) and in Plaintiffs' MTD Opposition (Dkt. No. 84). Plaintiffs provide some definitions for the Court's convenience.

[2] On October 30, at 5:00 p.m., counsel for all parties had a meet and confer call regarding this motion. The call lasted approximately 18 minutes, with Brian L. Grossman, Esq., and I for Plaintiffs, Jolene F. LaVigne-Albert, Esq., and Douglas E, Grover, Esq., for Defendant Powers, Michael J. Gilbert, Esq., and Edward A. McDonald, Esq., for Defendant Rubin, and Yifat Schnur, Esq., on behalf of both Defendants.



going to renew the lease." (Powers Dep. at 180:8–181:7.) The destroyed bondage items and furniture would have shown that Plaintiffs could neither provide nor revoke consent; such items were used to restrain and gag Plaintiffs, preventing use of a "safe word" that Rubin claimed would have stopped his conduct. (Rubin Dep. at 77:12–20.)

*Defendants Destroyed Evidence When They Learned That They Would be Sued*

Rubin and Powers' counsel received a draft complaint on September 19, 2017, and received litigation hold letters by September 21, 2017. Eight days later, Rubin emailed the Penthouse's management company to end his lease. (Email from Rubin to Alexander Glibbery, September 29, 2017.) This is consistent with Powers' testimony that the lease ended in the "end of summer, early fall." (Powers Dep. at 184:19–21.) Rubin also texted Powers that "Im [sic] so pissed these girls made us lose the place" (Text message from Rubin to Jennifer Powers, October 3, 2017), and admitted at his deposition that he ended the lease because "you sued me." (Rubin Dep. at 120:9–13.) Defendants acted in bad faith by deciding to destroy evidence when they knew they may be sued, warranting sanctions.

*Defendants Destroyed Critical Evidence in this Action*

Rubin—with the assistance of Powers—maintained a supply of bondage items and BDSM furniture in a room referred to as the Second Bedroom. (Powers Dep. at 140:8–16.) Powers periodically threw away "vibrators, dildos, [and] sex toys" for "sanitary purposes," but would "replac[e] them with new things." (Powers Dep. at 178:4–14.) Powers destroyed the BDSM items (restraints and sex devices) (Powers Dep. at 178:15–20), as well as the BDSM furniture (items the Plaintiffs were tied to) (Powers Dep. at 188:15–23), and put the non-BDSM items into a storage unit. (Powers Dep. at 189:2–13.) The BDSM furniture was not changed frequently, and there were only six pieces of BDSM furniture in the Penthouse. (Powers Dep. at 161:8–18.) Since Powers disposed of all bondage items that were in the Penthouse, Plaintiffs and their expert witness cannot view the items and the furniture that were used—or their apparently identical replacements—to refute Defendants' defense of consent. (Powers Dep. at 180:8–181:7.)

Rubin testified that he had ball gags in the Penthouse (Rubin Dep. at 98:21–99:2), and claimed that when a ball gag is on someone, that person *can* speak (Rubin Dep. at 218:10–13). However, this is not the case.[3] Powers testified that a participant could "slip out" of the restraints that Rubin used on Plaintiffs. (Powers Dep. at 149:18–152:12.) But Powers destroyed the evidence which would have belied Rubin's testimony. If Plaintiffs had restraints on, including the type that Powers described (Powers Dep. at 150:18–151:21)[4], they could not

---

[3] A website Powers "frequented" to purchase replacement sexual devices (Powers Dep. at 169:5–15), states that ball gags are designed to ensure that a submissive cannot speak. *See Standard Sized Silicone Ball Gag with Leather Strap,* Extreme Restraints, https://www.extremerestraints.com/silicone-ball-gags-with-leather-straps.html (last visited November 1, 2018) ("Keep them quiet with a Silicone Ball Gag . . . they won't be able to say a word").

[4] Purple Passion, "a BDSM store that [Powers] frequented" (Powers Dep. at 158:18–159:4), sold cuffs with a *"long strip of velcro which stops the cuff from slipping." See Fur Lined Wrist Cuffs*, Purple Passion,

www.balestrierefariello.com 225 Broadway, 29th Floor New York, New York 10007



escape, nor could they remove any items that had been placed in their mouths. Defendants destroyed crucially relevant evidence, warranting sanctions.

### Defendants' Conduct Warrants Sanctions

Spoliation sanctions should be awarded where: (1) the controlling party had an obligation to preserve evidence; (2) evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).[5] No later than September 19—when Plaintiffs' counsel initially spoke to counsel for Rubin and Powers—and certainly when all litigation hold letters were received, by September 21, all Defendants and their then-counsel had a duty to preserve evidence. However, in response to a subpoena requesting the restraints and ball gags used on Plaintiffs, Defendants' counsel confirmed that Defendants had disposed of relevant evidence by stating that "Mr. Rubin has nothing responsive to the subpoena to produce." (Email from Benjamin M. Rose, Esq., to Brian L. Grossman, October 16, 2018.)

A defendant who destroys evidence in order to prevent its use in litigation acts in bad faith. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016); *Slovin v. Target Corp.*, No. 12 CV 863(HB), 2013 WL 840865, at *4 (S.D.N.Y. Mar. 7, 2013) ("once the duty to preserve attaches, any destruction [of relevant evidence] is, at a minimum, negligent"). The fact that evidence was destroyed in bad faith is circumstantial proof of the relevance of the missing evidence. *See, e.g., Residential Funding*, 306 F.3d at 108–09. The evidence destroyed was directly relevant to this action: Plaintiffs assert that they were sexually assaulted and raped; Rubin claims that the conduct was consensual. Defendants prevented Plaintiffs and the jury from seeing the most important non-testimonial evidence that existed.

*Requested Relief*

This Court nearly sanctioned Defendants at this suit's initiation (Text Order Vacating Order to Show Cause, December 24, 2017), and should do so here, striking Defendants' affirmative defenses, issuing an adverse inference at summary judgment and trial, awarding monetary sanctions, and other sanctions the Court deems fit. *See, e.g., Remee Products Corp. v. Sho–Me Power Elec. Co-op*, No. 01 Civ. 5554(HB), 2002 WL 31323827, at *8 (S.D.N.Y. Oct. 17, 2002) (district courts have "considerable discretion" in imposing sanction, including dismissal, granting summary judgment for the prejudiced party, precluding testimony regarding the destroyed evidence, or an adverse inference instruction to the jury); *Arista Records LLC v. Usenet.com Inc.*, 633 F. Supp. 2d 124, 142 (S.D.N.Y. 2009) (striking spoliator's affirmative defenses during the remainder of the case); *Gutman v. Klein*, No. 03 Civ. 1570 (BMC) (RML), 2008 WL 5084182, at *1 (E.D.N.Y. Dec. 2, 2008), *aff'd*, 515 F. App'x 8 (2d Cir. 2013) (affirming default judgment despite the "harshness of a terminating sanction" for spoliation).

---

https://purplepassion.com/product/fur-lined-wrist-cuffs/ (last visited November 1, 2018) (the cuffs are "lined, stitched and reinforced for strength).

[5] An attorney that assists their clients in spoliation is also liable. *DeCastro v. Kavadia*, 309 F.R.D. 167, 185 (S.D.N.Y. 2015).

                                                     Respectfully,

                                                     John G. Balestriere

Encls:  Exhibit A, Excerpts from the Deposition Transcript of Howard Rubin
           Exhibit B, Excerpts from the Deposition Transcript of Jennifer Powers
           Exhibit C, Email from Howard Rubin to Alexander Glibbery, September 29, 2017
           Exhibit D, Text message from Howard Rubin to Jennifer Powers, October 3, 2017
           Exhibit E, Email from Benjamin M. Rose, Esq., to Brian L. Grossman, October 16, 2018

cc:     Counsel of record (via ECF)

4