Douglas E. Grover
Partner

212 612-0681

SCHLAM STONE & DOLAN LLP

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

January 24, 2019

BY ECF
Magistrate Judge Steven M. Gold
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Lawson, et al. v. Rubin, et al.*, Index No. 1:17-cv-06404

Dear Magistrate Judge Gold:

We write on behalf of both defendants regarding discovery issues related to Your Honor's December 14, 2018, Order directing plaintiffs to, among other things, provide a privilege log to defendants. We seek (1) the production, by defendants' vendor, of text messages which we recently discovered had been withheld at the instruction of plaintiffs' counsel as non-responsive – despite clear language to the contrary in Judge Cogan's November 1, 2018 Order and (2) an *in camera* review of text messages listed in plaintiffs' privilege log.

**The Privilege Log Plaintiffs Provided Pursuant to this Court's December 14 Order Revealed That Plaintiffs' Counsel Directed the E-Discovery Vendor to Remove Thousands of Text Messages in Direct Violation of Judge Cogan's November 1 Order**

A brief history of plaintiffs' production of text messages is necessary. The parties first produced documents in this case in March 2018. Plaintiffs' production included very few text messages and no texts among the plaintiffs.[1] Further productions were made in June 2018 after four plaintiffs were added to the case. Again, few texts were produced by plaintiffs.[2]

In response to defendants' *multiple* inquiries about the texts, plaintiffs' counsel maintained *for months* that *every* text that they were required to produce had been produced. But on September 12, 2018, plaintiff Hallman testified at her deposition that her phone contained relevant communications that had not been produced in this case. (Hallman Tr. at 27:12-

---

[1] The March 2018 production included four spreadsheets containing less than 800 texts in total. Of those, fewer than 300 involved Rubin, Powers or Shon, and it was apparent that many portions of these conversations were missing. The production included no texts among plaintiffs.

[2] The June 2018 production was essentially a document dump of approximately 200,000 pages. As far as we could tell, it included fewer than 250 pages of texts from two new plaintiffs (Peterson and Hathaway) – nothing new from the original plaintiffs. In any event, the texts were completely incomprehensible, as they were not presented within the context of the full conversation but rather, as one page per text, and the pages were not consecutive.

28:8.)  On September 21, 2018, four days prior to Lawson's deposition, plaintiffs produced 200 pages of text messages from Lawson's phone, and on October 10, 2018, approximately one month *after* Hallman's deposition, plaintiffs produced 5,000 pages of text messages from Hallman's phone (the "September/October Text Productions").  Plaintiffs' counsel's explanation for the late productions was that these texts had been "recently discovered."  The format of these productions, however, made them virtually impossible to utilize because they were out of order, divided into multiple spreadsheets and PDFs, and missing portions of conversations.  Notably, while it appeared that plaintiffs did not withhold as privileged any texts from the September/October Text Productions, if they did, they failed to produce a privilege log.  The tardy and unintelligible September/October Text Productions, coupled with plaintiffs' counsel's conduct throughout the litigation which had resulted in sanctions being imposed on two earlier occasions (*see* docket entries dated 7/12/2018 and 8/29/2018), led Judge Cogan to grant our request that the plaintiffs turn over their phones to defendants' e-discovery vendor to extract data from the phones directly, as this was the only way to ensure a complete and intelligible production.  (*See* Dkt. 199 and Judge Cogan's Nov. 1, 2018 Order.)  Judge Cogan ordered:

> Hallman, Lawson, Speight, and Hathaway are ordered to produce their current mobile phones, and any other mobile phones or electronic devices that they may have used during the period relevant to this case to communicate with one another or with the defendants, to the defendants' e-discovery vendor by November 8, 2018. The defendants' e-discovery vendor will retrieve and produce in a useable form **all messages exchanged with defendants and with Shon, and, for Hallman's and Lawsons phones, all text messages involving plaintiffs Hallman, Lawson, and Caldwell since August 1, 2016**. . . . **Plaintiffs' counsel shall have the opportunity to review any documents retrieved under this order <u>for privilege</u>**.
>
> (Judge Cogan's November 1, 2018, Order (emphasis added).)

Plaintiffs' phones were subsequently delivered to Epiq, defendants' vendor.  Epiq imaged the entirety of the phones.  Then, defendants provided search terms and instructions to Epiq which were aimed at extracting from plaintiffs' phones all text messages encompassed within Judge Cogan's November 1, 2018, Order: that is, *all* texts involving Powers, Rubin or Shon, and *all* texts *since August 1, 2016,* involving two or more of the three original plaintiffs (Hallman, Caldwell, Lawson).  Epiq ran the search terms and produced *to plaintiffs' counsel* all text conversations generated by this search before defendants ever saw them, as per Judge

Cogan's Order. Plaintiffs' counsel dealt directly with Epiq and instructed them to withhold certain texts. Defendants did not know which texts were being withheld or why. When questioned about it by defendants' counsel, plaintiffs' counsel indicated that they were withholding privileged texts, and also certain texts that were irrelevant to the case and otherwise not encompassed within Judge Cogan's order. Plaintiffs' counsel gave as an example texts between Hallman and her boyfriend that they believed were completely irrelevant to the case and had been inadvertently captured by the search terms. Of course, Defendants were not able to confirm this at the time, as they were not able to see the texts being withheld.

When Epiq provided the remainder of the texts to defendants, we became concerned that thousands of texts had been withheld from the Epiq production, something we could see from the simple process of identifying nonsequential numbers in the texts. As an example, while Epiq had extracted over 33,000 texts from Hallman's phone alone – that is, 33,000 texts generated from the agreed upon search terms – plaintiffs' counsel had directed that nearly 12,000 texts be removed from the texts made available to defendants.[3] We assumed plaintiffs would claim that most of these were privileged.

It was only after Your Honor ordered plaintiffs to produce a privilege log that defendants determined that *thousands of messages had been withheld as "non-responsive,"* rather than privileged, since only approximately 700 texts were logged as privileged. Defendants were concerned that many of the texts they were entitled to pursuant to Judge Cogan's November 1, 2018, Order had been withheld. That concern was intensified when defendants compared some of the texts they were able to decipher from the September/October Text Productions to the Epiq production, and realized that many relevant texts had been withheld from the Epiq production. One example is the following message from plaintiff Caldwell to plaintiff Hallman, written on November 3, 2017, one day after the complaint was filed in this case:

---

[3] Metrics provided by the vendor:

|  | Total Messages | Redacted Messages |
|---|---|---|
| Kristina Hallman iPhone7 | 33,487 | 11,778 |
| Kristina Hallman iPhone7 (Missing Date) | 48 | 0 |
| Moira Hathaway iPhone5c | 45 | 27 |
| Moira Hathaway iPhone 8Plus | 29 | 27 |
| Hillary Lawson iPhone X | 2,808 | 98 |



**This text message was withheld from the Epiq production and was not logged as privileged.**[4]  There is no explanation for its removal. It is *clearly* relevant and non-privileged:

Indeed, the November 2, 2017 complaint *repeatedly* asserts that BOTH Hallman and Caldwell were tied up and restrained.  *See* paragraphs 172 ("Rubin took both Hallman and Caldwell to the master bedroom and again tied each female up with rope . . ."); 176 ("Both Hallman and Lawson tried screaming out – as much as they could given their restraints . . ."; 179 ("While Hallman and Caldwell were bound, Rubin took scissors and cut off their clothing.").)

Moreover, since Judge Cogan's November 1, 2018, Order provided that *all* non-privileged text messages exchanged on or after August 1, 2016, between the original plaintiffs had to be produced, there was no excuse for this text being withheld.

Other examples, among many, of texts that were withheld by plaintiffs from the Epiq Productions include:



---

[4] Around the same time that this text was disclosed to defendants, plaintiffs' counsel moved to be relieved from representing Caldwell.  Her case has since been dismissed.



Although the fact of texts being withheld from the Epiq production may appear at first blush to be less troubling because they were included in the September/October Text Productions, that is not the case. *First*, as noted above, those productions were virtually unusable. *Second*, plaintiffs' conduct in withholding different texts at different times calls into question the diligence and accuracy of their review work – indeed, there is no way we can be satisfied that counsel has been performing their duties conscientiously. *Third*, counsel's unilateral decision to redact texts between plaintiffs which were clearly related to this case was in direct violation of Judge Cogan's November 1, 2018 Order.

Accordingly, we seek an order permitting our vendor to generate a new production that will include "all messages exchanged with defendants and with Shon, and, for Hallman's and Lawsons phones, all text messages involving plaintiffs Hallman, Lawson, and Caldwell since August 1, 2016" as per Judge Cogan's November 1, 2018, Order, minus the 700 texts that were included in plaintiffs' privilege log.[5]  In other words, we seek the thousands of text conversations which, even though they were generated from Epiq's searches, were withheld by plaintiffs and not designated as privileged.   Any potential privilege claim over those messages has been waived when plaintiffs failed to log these texts in December 2018 (and likely even earlier, when plaintiffs produced many of these same messages in the September/October Text Productions).

Defendants also request their attorneys' fees (including vendor fees) for this work, since it will be costly and could have been avoided had plaintiffs complied with Judge Cogan's November 1, 2018, Order in the first place.

**Request for *In Camera* Review of Text Messages Included in Plaintiffs' Privilege Log**

On December 20, 2017, plaintiffs provided defendants a log of all texts they had designated privileged from the Epiq Productions.  (Attached hereto as Exhibit A.)  The log included 121 text message strings (approximately 700 individual texts) that were withheld for attorney-client privilege.  Defendants have numerous reasons to dispute the privilege designations.  *First*, it appears that all the withheld text messages involve *plaintiffs only*: *no lawyers*.  While it is possible that some texts include privileged discussions even though no lawyer participated in the discussion, it is implausible that all do so.  *Second*, on their face, many of the entries do not support the privilege designations.  For example, entry "1" references dozens of text messages between plaintiffs Hallman and Caldwell, with the description "communications discussing and *seeking* legal advice from Jeremy Saland and John Balestriere."  A communication that does not involve counsel cannot be seeking legal advice from him.[6]  *Third*, entries 1-4, 7, 9-10, 13-14 on the log are described as reflecting legal advice from Jeremy Saland.  However, Mr. Saland only represented plaintiff Hallman in a criminal assault case in New York County, and these entries include plaintiffs Caldwell and Lawson, waiving any claim of privilege concerning these communications.

Because of these obvious shortcomings in the privilege log and the questions about the reliability of counsel's handling of the discovery process, defendants asked plaintiffs to

---

[5] Plaintiffs' phones do not need to be collected again in order for defendants' vendor to provide these texts.
[6] Multiple other entries use this same description, and therefore also appear to be facially invalid.

reconsider their privilege designations. On January 18, 2019, counsel for plaintiffs indicated that they would not change any of their privilege designations, representing that the log did not contain "any improper assertions of privilege." As a result, defendants request that the Court conduct an *in camera* review of the 700 "privileged" text messages that plaintiffs have withheld. *See, e.g. Ravenell v. Avis Budget Group*, No. 08-CV-2113 (SLT), 2012 U.S. Dist. LEXIS 48658 (E.D.N.Y. Apr. 5, 2012) (Gold, J.).

Respectfully submitted,

Douglas E. Grover

Copies To:
All Counsel of Record (via ECF)