Jeffrey M. Eilender
Partner

212 612-1212
jeilender@schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400   Fax: 212 344-7677
schlamstone.com

February 8, 2019

**BY ECF**

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   <u>Lawson, et al., v. Rubin, et al., Case No.:  17 CV 6404 (BMC)</u>

Dear Judge Cogan:

This firm represents Jennifer Powers in the above-referenced matter.  I write on behalf of both Ms. Powers and Howard Rubin, pursuant to Rule III(A)(2) of Your Honor's Individual Practice Rules, to request permission to file a joint Daubert motion to exclude the expert testimony and report of Park Dietz, MD, dated November 5, 2018 (the "Dietz Report") under FRE Rules 702 and 403.  We ask that the Daubert motion be briefed on the same schedule as the already authorized summary judgment motions, with opening papers due on February 13, 2019; opposition on March 6, 2019; and reply on March 27, 2019.

The Court's order dated April 29, 2018 (the "Dismissal Order") dismissed all but the counts alleging Human Trafficking and intentional infliction of emotional distress against both Mr. Rubin and Ms. Powers,  and assault, battery, and unlawful imprisonment against Mr. Rubin.  The trafficking claims turn on whether "plaintiffs only engaged in commercial sex because they were overpowered by Rubin or sedated past the ability to consent with alcohol or drugs."  (Dismissal Order. at 31).  As for the intentional tort claims: "lack of consent . . .would neutralize at least one of the elements of each[.]"  (Id. at 36).  As will be evident from the summary judgment motions, fact discovery was a disaster for the plaintiffs,  revealing admissions in their depositions and contemporaneous text messages fatally undermining their claims that they did not willingly and knowingly consent to their activities with Mr. Rubin in exchange for payments.

Plaintiffs have proffered Dr. Dietz to address whether plaintiffs engaged in consensual activity, which he attempted to measure against what he divined to be "the norms and safety rules of BDSM subculture."  His report was prepared for plaintiffs "to educate the factfinder about the conventions of the BDSM subculture and the departures from those conventions described in the deposition of Howard Rubin."  (Dietz Report at 1.)  Dr.

The Honorable Brian M. Cogan
February 8, 2019
Page 2 of 4 Pages

Dietz noted, however, that he was instructed by plaintiffs' attorneys to rely only on the Rubin deposition transcript, and was specifically instructed not to speak with plaintiffs, review their depositions or communications with Mr. Rubin, or rely on any information about them.  (Dietz Depo Tr. at 12-16.)  The substance of Dr. Dietz's report is that Howard Rubin supposedly deviated from those "norms and safety rules."  (Dietz Report at 19-20).  We anticipate that plaintiffs will argue in opposition to the summary judgment motions that the Dietz Report creates an issue of fact.  Thus, we respectfully ask that the Court decide the summary judgment and Daubert motions together.

Since nothing in this case turns on "the norms and safety rules of BDSM subculture," whether or not Dr. Dietz has reliably determined them, the only relevance of his proffered testimony is the light, if any, his opinion on that subject might shed on the issue of plaintiffs' consent.  But Dr. Dietz's testimony is inadmissible under Rule 702 because (i) he lacks "specialized knowledge" that will assist the trier of fact; (ii) his testimony is not based on "sufficient facts or data"; (iii) his testimony is not "the product of reliable principles and methods", and (iv) in forming his opinions, Dr. Dietz did not "reliably appl[y] the principles and methods to the facts of the case," most of which he was precluded even from considering.  The fundamental reason why Dr. Dietz's testimony should be excluded is that it is being proffered not to "help the trier of fact … understand the evidence," but instead to distract the trier of fact from the direct evidence of plaintiffs' own words and actions demonstrating beyond doubt their voluntary, indeed eager, consent to BDSM acts with Mr. Rubin.  In this context, plaintiffs' consent is plainly a subject that a jury can assess on its own; and being able to consider plaintiffs' own words and actions, the jury will be much better placed than Dr. Dietz to do so.  On that point, even Dr. Dietz seems to be in agreement: "I try to avoid giving an opinion on [the] issue [of whether consent was given for BDSM activities], **which is I think for the factfinder, not for an expert**."  (Dietz Tr. at 106:10-12)(emphasis added).

Dr. Dietz' conclusion that there are "norms and safety rules of BDSM subculture" that must be followed to establish voluntary consent is based on (i) a hodge-podge of ad hoc statements by proprietors or patrons of BDSM clubs, all in the nature of their subjective views about best practices that should be observed by those engaging in BDSM activity; (ii) books and other publications that he readily concedes have no scientific or authoritative status; and (iii) his survey of BDSM culture in metropolitan New York conducted some 40 years ago.  On its face, that material is inadequate to show the existence of "norms and safety rules of BDSM subculture" that must be followed to establish voluntary consent.  *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F3d 256, 266 (2d Cir. 2002)("When an expert opinion is based on data, methodology or studies that

are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

Among other obvious deficiencies, there is nothing to show that (i) plaintiffs or Mr. Rubin recognized or accepted any such "norms and rules," or (ii) any governmental or medical or other professional organization has accepted such "norms and rules" as authoritative or normative in this (or any other) context. Dr. Dietz did not (and could not) evaluate the parties' views on that subject because he was precluded even from reviewing plaintiffs' testimony or their contemporaneous communications describing their interactions with Mr. Rubin. *Davidov v. Louisville Ladder Grp., LLC,* 2005 WL 486734, at *2 (S.D.N.Y. Mar. 1, 2005) (excluding expert's opinion because "an expert's opinion which is not based on the evidence in the case is little more than speculation and it cannot be the basis of a verdict in conflict with the uncontradicted evidence in the case"), aff'd sub nom. *Davidov v. Louisville Ladder Grp., L.L.C.,* 169 F. App'x 661 (2d Cir. 2006); *Degleman Indus. Ltd v. Pro–Tech Welding & Fabrication, Inc.,* 2011 WL 6754051, *2 (W.D.N.Y.) ("[w]hen an expert witness relies upon invalid assumptions or demonstrates a lack of inquiry into the relevant facts, the expert witness' testimony will be precluded"). That principle is all the more applicable when, as here, the party proffering the expert testimony has intentionally precluded the expert for even having access to the relevant facts. *Gyllenhammer v. Am. Nat'l Red Cross,* 2018 WL 1956426, at *6 (N.D.N.Y. Jan. 23, 2018).

Dr. Dietz's opinion and testimony is also not admissible because he did not use any "reliable principles and methods" to form them, as required by Rule 702(c). Indeed, Dr. Dietz had no identifiable "methodology" at all. He did not claim that his report, or the opinions and conclusions in it, would have any "degree of acceptance within the relevant scientific community." Since Dr. Dietz did not use any "reliable principles and methods" to form his opinions, it is a moot question whether there is "a sufficiently rigorous analytical connection between the expert's methodology and conclusions."

Accordingly, Mr. Rubin and Ms. Powers request permission to move to exclude his testimony and opinion from consideration at either summary judgment or trial.

Respectfully submitted,

Jeffrey M. Eilender

The Honorable Brian M. Cogan
February 8, 2019
Page 4 of 4 Pages

Copies To:
All counsel of record