**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON, and LAUREN FULLER,

                                          *Plaintiffs*,

-*against*-

HOWARD RUBIN and JENNIFER POWERS,

                                          *Defendants.*

**Case No.: 1:17-CV-06404 (BMC)**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HOWARD RUBIN AND JENNIFER POWERS'** *DAUBERT* **MOTION TO EXCLUDE EXPERT TESTIMONY OF PARK DIETZ M.D.**

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Phone: 212-344-5400
Fax: 212-344-7677

**YIFAT V. SCHNUR ESQ. LLC**
22 Prescott Street
Edison, NJ 08817

*Attorneys for Defendant Jennifer Powers*

**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Phone: 212-698-3672
Fax: 212-698-3599

*Attorneys for Defendant Howard Rubin*

Howard Rubin and Jennifer Powers submit this reply memorandum of law, together with the Reply Declaration of Jeffrey M. Eilender ("Eilender Reply Decl."), in further support of their joint motion to exclude the expert testimony and report of Park Dietz, MD, dated November 5, 2018 (the "Dietz Report"), because (a) neither the expert testimony nor the conclusions proffered in the Dietz Report satisfy the requirements of FRE Rule 702; and (b) under FRE Rule 403, the prejudice of admitting the proffered testimony and its conclusions greatly outweighs whatever probative value it might have.

**PRELIMINARY STATEMENT**

Plaintiffs concede that they "did not request that Dr. Dietz consider documentary evidence nor interview the Plaintiffs regarding their consent, **since his purpose was not to determine the ultimate issue of whether each of the Plaintiffs consented.**" (MOL at pg. 2, emphasis added). Apparently appreciating, however, that if Dietz's opinion does not relate to consent it has no relevance, plaintiffs proffer that they "offer Dr. Dietz's testimony regarding the BDSM subculture generally and the issue of consent in the BDSM subculture." (Id. at pg. 1). Thus in the span of these two statements plaintiffs demonstrate their inability to explain why Dr. Dietz's opinion is relevant or why it should be permitted.

To begin with, plaintiffs assume without any basis that there is a BDSM subculture to which the participants in this case subscribe, and that the norms of this purported subculture are relevant to this case. In fact, the norms of the BDSM subculture are not at issue in this case. Plaintiffs do not even attempt to address this deficiency in opposition to defendants' motion. Significantly, none of the plaintiffs testified that they were regular practitioners of BDSM, that they had any expectations based upon any "norms" of BDSM subculture, or that they were even aware of such norms.

1

Even if there were merit to the argument that Mr. Rubin's conduct did not conform to the norms Dr. Dietz described—which there is not—his opinion would nonetheless be inadmissible because of plaintiffs' strategic decision to prohibit him from considering anything other than Mr. Rubin's testimony. Dr. Dietz was specifically instructed to ignore critical facts that negate the alleged seven departures from the purported norms he identified. For example, Dr. Dietz criticizes the absence of "safe gestures," but no plaintiff ever testified that the absence of safe gestures played any role in her alleged injuries. Similarly, his reference to the use of a ball gag inhibiting a participant's ability to communicate is irrelevant, since only one plaintiff testified that a ball gag had been used, and that plaintiff did not testify that it interfered with her ability to communicate. Dr. Dietz also acknowledges that if the plaintiffs were engaging in commercial sex acts, which was his understanding, his point that Mr. Rubin somehow violated a norm by not sufficiently considering the "pleasure of the submissive" would be moot. Dr. Dietz opines that the conduct was not negotiated in advance, but in fact it was, both in writing and in person. And finally, he admits to having no idea whether and to what extent the plaintiffs read and understood the Releases—which he did not review—or whether and to what extent any of the plaintiffs were intoxicated. In short, he rendered an opinion with no factual basis or relationship to the events in this case.

Plaintiffs' misguided mischaracterization of the *Valle* case does not establish Dr. Dietz's expertise for this case. Significantly, *Valle* did not concern BDSM or a BDSM subculture at all. There, Dr. Dietz was offering an opinion that the defendant, who had a psychological condition known as paraphilia, did not necessarily have an intention to act on the vivid violent sexual fantasies he discussed on internet chats.[1] The court's decision in *Valle* permitting Dr. Dietz to

---

[1] "Dr. Dietz will offer testimony designed to assist the jury in understanding Valle's highly unusual psychiatric condition, which causes him to experience sexual arousal from discussing, or viewing scenes of, imagined

2

testify did not turn on the existence of a BDSM subculture with established norms, or that Dr. Dietz was an expert in such a subculture's norms.

Defendants' opening brief demonstrated why this testimony does not satisfy the requirements of Rule 702 or 403, and nothing in plaintiffs' unfocused opposition undermines that conclusion.

## ARGUMENT

### I. Compliance With Vague BDSM "Norms" Is Not Relevant To Plaintiffs' Consent.

Defendants' opening brief established that the question whether plaintiffs consented to the BDSM activities at issue is a subject well within a factfinder's ability to determine without the aid of expert testimony. Plaintiffs' only response is their own *ipse dixit* – that the norms of BDSM subculture are not apparent to the finder of fact and are relevant to whether the plaintiffs consented to BDSM activities. This argument relies on the premise that there is a BDSM subculture, that the subculture operates with established norms, that the parties here subscribed to such norms (or were at a minimum aware of them), that Dr. Dietz has the appropriate expertise to identify said norms, and that he can opine about purported departures during encounters between plaintiffs and Mr. Rubin, about which he has no information.

Initially we note that the only argument plaintiffs make in support of Dr. Dietz's qualifications as an expert in the BDSM subculture is that the court in *United States v. Valle* qualified him as an expert on this very issue. The statement, however, is simply not true. In fact, the court in *Valle* allowed Dr. Dietz to opine on whether a criminal defendant who wrote on the internet about his violent fantasies of kidnapping and harming women was therefore likely to carry

---

psychological or physical suffering of women, particularly in a sexual context. Dr. Dietz will further testify that Mr. Valle's internet communications and related actions in this case are consistent with the modus operandi of fantasy role-play and storytelling engaged in by people who have Paraphilia." *Valle*, 2013 WL 440687 at *9.

3

out such fantasies in real life.[2] His testimony there was focused on a psychiatric condition called paraphilia, and whether it necessarily indicated an intention to act on impulses. He did not testify about norms of behavior in BDSM relationships, how people engaging in BDSM become subject to such norms, or why observance of such norms is required to establish consent to engage in BDSM practices. There was no finding in *Valle* that a distinct BDSM subculture existed, that participants in such a subculture subscribed to recognized "norms," or that compliance with such norms was relevant to whether consent had been given for specific sex acts.

More importantly, even if such a subgroup with established norms existed, neither Dr. Dietz nor plaintiffs' opposition papers explain why testimony about it would be relevant in this case. Dr. Dietz plainly lacked access to the facts bearing on whether any particular plaintiff actually consented to any specific act, and a person can consent to sexual activity without adherence to a list of vague "best practices" about which none of the participants here was ever aware. The "norms" Dr. Dietz divined are simply not admissible evidence on the question of actual consent.

Accordingly, Dr. Dietz's testimony is both unsupported and irrelevant.

## II. **Dr. Dietz Is Not A Qualified Expert In Any Relevant Field, And His Opinion Is Not Supported By Any Accepted Methodology**

Defendants' opening papers established that Dr. Dietz's expertise is in psychiatry, but he admitted that his report was not, in any relevant sense, based on psychiatric principles or methods and was not a psychiatric report. Our opening papers further showed that Dietz's opinion was based on a non-scientific sample of statements from BDSM participants, many taken decades ago,

---

[2] Attached to the Eilender Reply Declaration as Exhibits 1-3 are the government's motion seeking to exclude Dr. Dietz's opinion, his opinion in the case and the Court's order, all showing that the *Valle* case is wholly inapposite.

4

and non-scientific books and publications about BDSM. Thus, his analysis was nothing more than a form of amateur cultural anthropology.

Plaintiffs have no answer to any of this, other than to argue that his extensive academic and practical experience in the "closely related" field of sociology might help. (MOL at pg. 15.) But nothing in his report or his deposition establishes Dr. Dietz as a qualified expert in some area of sociology, or addresses the principles and methods defining an accepted methodology followed in any such field to arrive at the types of conclusions he offers. Dietz did not cite any sociological texts or well-established sociological criteria to support his conclusions. Certainly, there is nothing to suggest that, in whatever field of sociology plaintiffs have in mind, a hodge-podge of interviews conducted over 40 years ago, plus a review of websites of unknown provenance and sex manuals chosen at random, is an accepted basis for reaching conclusions about the norms and practices of some subgroup of the general population. Even less is there anything to show that such 'norms' are of such universality as to be presumptively binding. This is not the stuff from which an admissible expert opinion is made. *See, e.g., Nimely v. City of New York*, 414 F.3d 381, 396, 399 (2d Cir. 2005) ("In addition to setting forth these criteria for testing an expert's methodology, the Supreme Court has also stated that reliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions" and courts are obliged to exclude "unverifiable subjectivity, amounting to the sort of *ipse dixit* connection between methodology and conclusion that the district court has the duty to exclude under Rule 702"); *R.F.M.A.S. Inc., v. So*, 748 F.Supp.2d 244, 274 (S.D.N.Y. 2010) ("The minimal data that Smith and Hansen relied upon and plaintiff's clear failure to demonstrate that its damages experts' testimony rests on sufficiently reliable factual and methodological bases provide ample reason to exclude their testimony on damages"); *Morritt v. Stryker Corp.*, 973 F.Supp.2d 177, 190 (E.D.N.Y.

5

2013) (excluding proposed expert testimony that does not reflect "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *compare, e.g., Linde v. Arab Bank, PLC*, 922 F.Supp.2d 316, 325 (E.D.N.Y. 2013) (admitting testimony of terrorism expert whose "methodology has been recognized as the 'gold standard in the field of international terrorism'").[3]

### A. Dr. Dietz's Opinion Is Inadmissible Because It Failed To Consider Highly Relevant Facts.

Defendants' moving papers showed that Dr. Dietz failed to consider—or was affirmatively prevented from considering— numerous relevant facts before reaching his ultimate conclusion. In our opening brief (pp. 12 – 15), we explained in detail why the seven supposed deviations from the purported norms of BDSM culture identified by Dr. Dietz did not comport with the facts as established through discovery, particularly in plaintiffs' admissions. Plaintiffs never address this point at all. For example, plaintiffs never explain how Dr. Dietz could criticize Mr. Rubin for not catering to plaintiffs' own sexual pleasure even though Dr. Dietz himself acknowledges that that factor is not relevant to commercial sexual transactions. Plaintiffs never explain why, in light of the absence of testimony that any plaintiff had a medical condition that might have prevented her from giving consent to BDSM activities, Mr. Rubin's failure to obtain a medical history is relevant to the question of plaintiffs' consent. Plaintiffs never explain how Dr. Dietz could opine on the significance of intoxicants before BDSM activities, when he admitted that he had no information as to how much alcohol the plaintiffs consumed or whether they were impaired to any extent. And plaintiffs never explain how Dr. Dietz could opine that preliminary negotiations were inadequate when he failed to review any of the electronic communications between Mr. Rubin and plaintiffs.

---

[3] Notably, even the expert in *Linde* was not permitted to testify "about the state of mind of an entity," *id*. at 325, which is exactly what plaintiffs want to do here i.e. use Mr. Rubin's non-compliance with their BDSM norms as evidence of his state of mind regarding consent.

6

Instead, plaintiffs' only response is to state that "consideration of external evidence, such as interviewing plaintiffs or reviewing their depositions, would have not added anything to the analysis, because Dr. Dietz was determining *Rubin's* departures from the norms of the subculture." (MOL at p. 17, emphasis in original).[4] But the only issue in dispute is *plaintiffs'* consent. Plaintiffs' bizarre response aptly illustrates the fundamental problem: plaintiffs (despite their assertions to the contrary) appear to be proffering Dr. Dietz to opine as to *their* consent but asking him to ignore all the evidence concerning them, and to focus only on Mr. Rubin whose consent is not at issue. The Court is being asked to accept an opinion that deliberately ignores all reality.

## III. THE OPINION TESTIMONY IS INADMISSIBLE UNDER FRE 403

Defendants have established that Dr. Dietz's testimony is irrelevant, and the prejudice is clear—the only conceivable purpose of the Dietz report is to focus the Court at this juncture, or a jury, on plaintiffs' insinuations concerning Mr. Rubin rather than the on the facts establishing their consent. Dr. Dietz's testimony would only confuse the jury as to the issues they are being asked to decide, leading them to believe, incorrectly, that the existence of a BDSM subculture and violation of its supposed norms is at issue in this case.

## CONCLUSION

For the reasons set forth above, the motion to exclude the purported expert report and testimony of Dr. Park Dietz should be granted. For the same reasons, neither his report nor any proffered testimony by him should be considered on the summary judgment motions by Ms. Powers and Mr. Rubin.

Dated: New York, New York
        March 27, 2019

---

[4] Unlike his engagement in this case, in *Valle* Dr. Dietz not only reviewed "pertinent scientific literature," but also reviewed documents in the court record, the defendant's internet conversations and pornographic writings, and FBI reports of interviews with both the defendant and the women whose photographs he used. He also personally interviewed Valle, his friends, and his immediate family (Ex. 2 at ¶¶1, 9, fn. 1).

7

Respectfully,

**SCHLAM STONE & DOLAN LLP**

/s/ Douglas E. Grover
Douglas E. Grover
Jeffrey M. Eilender
Niall D. Ó Murchadha
Jolène F. LaVigne-Albert
26 Broadway, 19th Floor
New York, NY 10004
Phone: 212-344-5400
Fax: 212-344-7677

**YIFAT V. SCHNUR ESQ. LLC**

/s/ Yifat V. Schnur
Yifat V. Schnur
22 Prescott Street
Edison, NJ 08817
Phone: 347-268-5347

*Attorneys for Defendant Jennifer Powers*

**DECHERT LLP**

By: /s/ Edward A. McDonald
Edward A. McDonald
Michael J. Gilbert
Benjamin E. Rosenberg
1095 Avenue of the Americas
New York, NY 10036
Phone: 212-698-3672
Fax: 212-698-3599

*Attorneys for Defendant Howard Rubin*