John G. Balestriere
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:  (212) 374-5401
Facsimile:  (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON,** and **LAUREN FULLER,**<br><br>                              Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN, JENNIFER POWERS,** and the **DOE COMPANY,**<br><br>                              Defendants. | Case No.: 1:17-cv-06404 (BMC)(SMG)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**<br><br>**ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 5

    I.    THE BREACH OF CONTRACT COUNTERCLAIM AND AFFIRMATIVE DEFENSE MUST BOTH BE DISMISSED ................................................................ 5

        A.  Rubin's Breach of Contract Affirmative Defense Must Be Dismissed as Rubin Fails to Oppose Plaintiffs' Motion ....................................................................... 5

        B.  Rubin Acknowledged in his Summary Judgment Papers That "Defendants are Not Attempting to Enforce" the NDAs, Further Waiving Any Claim or Defense Based on the NDAs ............................................................................................................. 5

        C.  The NDAs are Void as Against Public Policy .......................................................... 7

        D.  Rubin Did Not Give Any Consideration in Exchange for Confidentiality, and the NDAs Have an Unenforceable Penalty Provision, Such that No Portion of the NDA is Enforceable ............................................................................................................. 8

        E.  Powers is Not Mentioned Anywhere in the NDA, Nor is She an Anticipated Beneficiary ................................................................................................................ 8

    II.   PLAINTIFF HALLMAN IS NOT LIABLE TO ANY OTHER PLAINTIFFS AS SHE DID NOT CONTRIBUTE TO DEFENDANTS' HUMAN TRAFFICKING VENTURE ..................................................................................................................... 9

        A.  Defendants Are Judicially Estopped From Arguing About a Broad Conspiracy When They Have Successfully Limited the Scope of Discovery to a Limited Sex Trafficking Venture Affecting Only Plaintiffs .......................................................... 10

        B.  Hallman is Not Liable for Lawson's December 2016 Trip Merely Because She Messaged with Rubin Before and After the Trip ....................................................... 11

        C.  While Hallman is Not Liable to Former Plaintiff Caldwell, Even if She Were, Caldwell is No Longer a Party In This Action, Mooting Any Contribution Claim .... 12

    III.  THE MOTION TO DISMISS ORDER REQUIRES DISMISSAL OF OTHER DEFENSES ............................................................................................................... 12

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**

*Amusement Indus., Inc. v. Stern*,
 693 F. Supp. 2d 319 (S.D.N.Y. 2010)................................................................................... 9

*Andrulonis v. United States*,
 26 F.3d 1224 (2d Cir. 1994).................................................................................................. 12

*Ann-Par Sanitation, Inc. v. Town of Brookhaven*,
 23 A.D.3d 380 (2d Dep't 2005) ............................................................................................. 7

*Aretakis v. Caesars Entm't*,
 No. 16 CIV. 8751 (KPF), 2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018) .................................. 8

*Armstrong v. Virgin Records, Ltd.*,
 91 F. Supp. 2d 628 (S.D.N.Y. 2000)..................................................................................... 13

*Athineos v. Andromeda Investments Co.*,
 No. 13 CIV. 5076 CM, 2015 WL 6467842 (S.D.N.Y. Oct. 23, 2015) ....................................... 9

*Bakalar v. Vavra*,
 No. 05 CIV. 3037 (WHP), 2006 WL 2311113 (S.D.N.Y. Aug. 10, 2006).............................. 13

*Basile v. Walt Disney Co.*,
 717 F. Supp. 2d 381 (S.D.N.Y. 2010)................................................................................... 14

*Crossland Sav. FSB v. Rockwood Ins. Co.*,
 700 F. Supp. 1274 (S.D.N.Y. 1988)...................................................................................... 13

*In re Agape World, Inc.*,
 467 B.R. 556 (Bankr. E.D.N.Y. 2012).................................................................................. 11

*In re Bernard L. Madoff Inv. Sec. LLC*,
 721 F.3d 54 (2d Cir. 2013).................................................................................................... 9

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
 28 F. Supp. 2d 126 (S.D.N.Y. 1998)..................................................................................... 13

*Kulkarni v. Arredondo & Co., LLC*,
 151 A.D.3d 705 (2d Dep't 2017) ......................................................................................... 13

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
 285 A.D.2d 101 (1st Dep't 2001) .......................................................................................... 9

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) .................................................................................................... 9

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ...................................................................................................... 5

*Nielsen v. Van Leuven*,
    No. 3:15-CV-1154 (MPS), 2017 WL 3925412 (D. Conn. Sept. 7, 2017) ................................ 13

*Nobel Ins. Co. v. City of New York*,
    No. 00-CV-1328 KMK, 2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) ............................ 12, 13

*O'Hearn v. Spence-Chapin Servs. to Families & Children, Inc.*,
    929 F. Supp. 136 (S.D.N.Y. 1996) ................................................................................. 7

*Perry v. S.Z. Rest. Corp.*,
    45 F. Supp. 2d 272 (S.D.N.Y. 1999) ............................................................................ 13

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) .......................................................................................... 8

*Sears, Roebuck & Co. v. Sears Realty Co.*,
    No. 89-CV-1350, 1993 WL 260677 (N.D.N.Y. July 8, 1993) ....................................... 13

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (1992) .................................................................................................... 9

*Soper v. Simmons Int'l, Ltd.*,
    632 F. Supp. 244 (S.D.N.Y. 1986) ............................................................................... 14

*Urr v. Tesalona*,
    No. CV072513ADSAKT, 2008 WL 11449112 (E.D.N.Y. Apr. 10, 2008) ...................... 5

## Other Authorities

29 Samuel Willison, *Williston on Contracts* § 73:10 (4th ed.) ................................................... 13

## Rules

CPLR § 215 ................................................................................................................................. 13

NY Penal Law § 230.00 ................................................................................................................ 2

18 U.S.C § 1595(c)(1) ................................................................................................................. 13

18 U.S.C. § 1595 .................................................................................................................... 9, 10

# **PRELIMINARY STATEMENT**[1]

Defendants have made conflicting statements throughout this litigation depending on what argument best suits their needs at any given time. Defendants should not be permitted to change their position such that Plaintiffs' Motion for Partial Summary Judgment, (Dkt. No. 234-1, February 13, 2019 ("P's MSJ Brief")) should be granted, both awarding Plaintiffs judgment on Defendants' counterclaims of contribution, Defendant Powers's counterclaim for breach of contract, and dismissing the affirmative defenses of statute of limitations (Powers's fourth affirmative defense; Rubin's fourth affirmative defense), laches (Powers's fifth affirmative defense; Rubin's fifth affirmative defense), settlement and release (Powers's tenth affirmative defense; Rubin's eleventh affirmative defense), improper venue (Powers's twenty-second affirmative defense; Rubin's twenty-third affirmative defense), breach of contract (Powers's twenty-third affirmative defense and Rubin's twenty-fourth affirmative defense), and contribution (Rubin's eighteenth affirmative defense).

Rubin now argues in his Memorandum of Law in Support of Defendant Howard Rubin's Opposition to Plaintiffs' Motion for Partial Summary Judgment as to Defendants' Affirmative Defenses and Counterclaims (Dkt No. 256, March 6, 2019 (the "Rubin Opp.")), that he has no breach of contract affirmative defense. Rubin cites to his non-operative Answer and Counterclaims (Dkt. No. 130, June 13, 2018) and to Plaintiffs' non-operative First Amended Complaint (Dkt. No. 66, February 20, 2018) for the proposition that, "[a]s a threshold matter, Plaintiffs' Motion with respect to Rubin's 'breach of contract affirmative defense . . . fails on its face because Rubin does not assert that purported defense." But Rubin does. After Plaintiffs filed the operative Second Amended Complaint on August 17, 2018, Rubin filed his operative Answer and Counterclaims

---

[1] All terms are as defined in Plaintiffs' Second Amended Complaint (Dkt. No. 161, August 17, 2018) and in P's MSJ Brief unless otherwise defined herein. Plaintiffs provide some definitions for the Court's convenience.

(Dkt. No. 168, September 6, 2018) asserting a Twenty Fourth Affirmative Defense, in a section entitled, "Plaintiffs' Breach," pleading "Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' breaches of relevant contractual provisions." Rubin presents a different story in his papers now to serve his needs and in any event fails to oppose Plaintiffs' Motion regarding Rubin's breach of contract affirmative defense warranting judgment to Plaintiffs on that defense.

To the extent either Defendant argues that they can maintain a breach of contract affirmative defense, or, as Powers argues, that she can maintain a breach of contract counterclaim, that argument is undermined by Rubin's footnote 14 in his Memorandum of Law in Support of Summary Judgment, (Dkt. No. 231–1, February 13, 2019 ("Rubin MOL")) where Rubin (who has admitted under oath that he is paying for all defense counsel in this litigation) now states "*Defendant*s are not attempting to enforce the Releases." (*Id* (emphasis added).) Defendants have taken the position that they will not be enforcing the NDAs, such that Rubin's twenty-fourth affirmative defense and Powers's twenty-third affirmative defense should be dismissed and Plaintiffs awarded judgment on Powers's counterclaim.

In any event, any defense or claim based on the NDAs fails as the NDAs are void as against the public policy against prostitution. The second paragraph of the NDA provides, "[i]n return for the payment of an agreed upon fee, I have voluntarily agreed to engage in sexual activity with (Rubin) . . ." The NDA mirrors NY Penal Law § 230.00. And, as argued in Plaintiffs' Opposition to Defendant Powers's Motion for Summary Judgment, Dkt. No. 258, March 6, 2019 ("P's Opp. to Powers MSJ"), the penalty provision of the NDA is also unenforceable, such that even if, as Powers contends, the severability provision saves the non-disclosure elements of the NDA were the Court to find the prostitution provision void, the penalty provision goes to the heart of the non-disclosure language such that the non-disclosure provision is also void. No claim or defense of

2

Defendants may proceed based on the unenforceable NDAs.

Powers in particular may not rely on the NDAs as she is not mentioned anywhere in the NDAs, and Rubin did amend the NDAs when he sought to cover a third party. Rubin did this with ███████████, who has an NDA with Plaintiff Peterson. Powers is not a third-party beneficiary of the NDA, further warranting dismissal of Powers's twenty-third affirmative defense and counterclaim for breach of contract.

Defendants also make contrary statements in regards to their contribution claims against Hallman, warranting dismissal of that counterclaim, which also fails on the merits. Powers claims that Hallman is liable for contribution as to Plaintiff Hathaway[2] despite Hallman and Hathaway never meeting, never communicating, and Hathaway having met Rubin years before Hallman met Rubin. Even if Powers's contribution counterclaim made sense—which it does not—both Defendants have already taken a position limiting the litigation so as to undermine this contribution counterclaim. Specifically, in the August 24, 2018 (Dkt. No. 163), Joint Discovery Letter (the "Joint Discovery Letter"), Defendants made the argument that "[n]on-parties who were uninvolved in, and did not communicate about, the instances when Plaintiffs allege they were subjected to intentional torts, or when they allege they were trafficked in order to engage in commercial sex acts, have no bearing on Plaintiffs' claims." Taking a contrary position, Defendants now argue that "[t]o the extent that she argues that there was a conspiracy to deceive, trick and assault unsuspecting women, Hallman's role as a recruiter lands her squarely in the middle of" the venture, thereby making her liable under a contribution theory according to Defendants' current position. The Court relied on Defendants' prior position in the August 24, 2018, Joint Discovery Letter to

---

[2] Had Hathaway and Hallman brought separate lawsuits against Defendants, Defendants would not be permitted to claim contribution as to Hallman for Hathaway, much the same way Defendant Rubin has not impleaded Plaintiff Hallman into the state court action where Rubin (being represented by the same counsel as this action) is being sued by yet another woman for the same acts. *See Parker v. Rubin*, Index No.: 650126/2018 (N.Y. Cnty Sup. 2018).

3

deny Plaintiffs' request for discovery as to other members of Rubin's venture and to impose costs on Plaintiffs. Defendants' previous position, relied on by this Court, further undermines the contribution claim, for which judgment must be awarded to Plaintiffs.

This Court's finding in the April 29, 2018 Memorandum Decision & Order regarding a since dismissed party also requires judgment for Plaintiffs on the contribution counterclaims. (Dkt. No. 105 ("MTD Order").) In dismissing Plaintiffs' claims against former Defendant Shon, this Court held that "plaintiffs have not alleged any facts to show that Shon knew or acted in reckless disregard of the fact that Rubin would use force, fraud, or coercion to cause plaintiffs to engage in commercial sex acts with him" and that the Amended Complaint "does not allege that Shon was present for any of the alleged assaults, was told about them before or after they occurred, or knew that any of the plaintiffs were afraid of Rubin; nor does it allege anything similar, which might show knowledge or reckless disregard." (MTD Order, 25.) Similarly, here, Hallman could not have known anything about Hathaway's interactions with Rubin—as Hallman has never met or interacted with Hathaway—nor was Hallman present for Lawson's only interaction with Rubin that fell within the statute of limitations on December 21, 2016. Defendants' assertion that Hallman is somehow responsible for this December 21, 2016, meeting where Rubin assaulted Lawson simply "by texting with Mr. Rubin before the meeting and by texting with Mr. Rubin afterwards to make sure Lawson got paid" is not enough to confer liability on Hallman for Defendants' violations of law. Hallman's texts—which is all Powers relies upon—do not demonstrate that Hallman contributed to Lawson's injuries.

Finally, for the reasons set forth in Plaintiffs' opening brief, the affirmative defenses of statute of limitations, laches, settlement and release, improper venue, breach of contract, and contribution all fail. Plaintiffs' Motion should be granted in its entirety. (P's MSJ Brief, 12–19.)

4

**ARGUMENT**

**I. THE BREACH OF CONTRACT COUNTERCLAIM AND AFFIRMATIVE DEFENSE MUST BOTH BE DISMISSED**

Rubin declines to oppose Plaintiffs' argument, and now admits that no Defendants seek to enforce the NDAs, warranting partial summary judgment on any claim or defenses based on the NDAs. In any event, the NDAs are unenforceable as they are against the public policy as a contract for prostitution and contain an impermissible penalty provision, and Powers may not enforce the NDAs as she is not a third-party beneficiary.

**A. Rubin's Breach of Contract Affirmative Defense Must Be Dismissed as Rubin Fails to Oppose Plaintiffs' Motion**

Rubin fails to oppose the portion of Plaintiffs' motion seeking to dismiss Rubin's breach of contract affirmative defense, warranting dismissal of Rubin's twenty-fourth affirmative defense. Where a party fails to oppose a portion of a motion, the "Court assumes that the [d]efendant waives any objection." *Urr v. Tesalona*, No. CV072513ADSAKT, 2008 WL 11449112, at *3 (E.D.N.Y. Apr. 10, 2008). Here, Rubin failed to oppose Plaintiffs' Motion as to Rubin's twenty-fourth affirmative defense for breach of contract. Rather, Rubin incorrectly guessed that Plaintiffs meant to move on Rubin's counterclaim of breach of contract, which was only against former Plaintiff Caldwell and, as such, the existing Plaintiffs did not move on it. (Rubin Opp., 7 n.4.) The Court should grant Plaintiffs' motion as unopposed.

**B. Rubin Acknowledged in his Summary Judgment Papers That "Defendants are Not Attempting to Enforce" the NDAs, Further Waiving Any Claim or Defense Based on the NDAs**

Rubin now acknowledges that neither he nor Powers are seeking to enforce to the NDAs. Judicial estoppel prevents a party to a lawsuit from taking one position when it benefits them and then taking a contrary position at a later time. *New Hampshire v. Maine*, 532 U.S. 742, 742 (2001) (finding judicial estoppel where parties agreed in a prior case as to state boundary line). In the

5

Rubin MOL, Rubin asserts that "Defendants are not attempting to enforce the Releases." (Rubin MOL, 43 n.14.) Despite this, Powers's first argument header in her opposition to Plaintiffs' Motion is that "The Confidentiality and Release Agreements are Enforceable and Provide a Basis for Liability Against the Plaintiffs." (Powers' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Dkt. No. 255, March 6, 2019 ("Powers Opp. to P's PMSJ"), 4.) However, Powers incorporated Rubin's position regarding the releases by reference in her papers in opposition to Plaintiffs' Motion such that Powers adopted that position. (*Compare* Rubin MOL, 43 n.14, *with* Memorandum of Law in Support of Jennifer Powers' Motion for Summary Judgment, Dkt. No. 233-1, February 13, 2019 ("Powers MOL") ("Ms. Powers incorporates by reference the arguments made by defendant Howard Rubin in his summary judgment motion").) Moreover, Rubin is making decisions for both Defendants: he admitted under oath that he is paying not only for Powers's defense counsel (Deposition Transcript of Howard Rubin, October 25, 2018, Exhibit V ("Rubin Dep."), 197:3–5 attached to the Declaration of John G. Balestriere in Further Support of Plaintiffs' Motion for Partial Summary Judgment as to Defendants Affirmative Defenses and Counterclaims ("Balestriere Reply Decl.")),[3] and their joint general counsel Yifat Schnur (Rubin Dep., Exhibit V, 196:18–24), but even the lawyer hired by Schnur who has collectively sued Plaintiffs, Plaintiff's counsel, and even non-equity and non-lawyer employees of Plaintiffs' counsel in *Schnur et ano. v. Balestriere et al.*, Index No.: 160095/2018 (N.Y. Cnty Sup., 2018). (Rubin Dep., Exhibit V, 214:7–18.)[4] Plaintiffs' Motion

---

[3] All exhibits are attached to either the Grossman Declaration in Support of Plaintiffs' Motion for Partial Summary Judgment as to Defendants Affirmative Defenses and Counterclaims, Dkt. No. 234-3, February 13, 2019 (Exhibits A through U) or the Balestriere Reply Decl. (Exhibits V though W.)

[4] Rubin paid for Schnur's counsel to sue on October 31, 2018. *See Schnur v. Balestriere et ano, Index No.: 160095/2018 (N.Y. Cnty Sup. 2018)*. Pursuant to a schedule agreed to by the parties in that suit, Plaintiffs and Plaintiffs' counsel's employees filed motions to dismiss on February 28, 2019, just after Schnur filed a motion to disqualify Plaintiffs' counsel on February 27, 2019. Such motions remain pending as of this filing.

regarding Defendants' affirmative defense and Powers's counterclaim based on the NDAs must be granted since Defendants do not seek to enforce the NDAs upon which they originally based such affirmative defenses and claim.

### C. The NDAs are Void as Against Public Policy

As discussed in more detail in P's MSJ Brief, 20–21 and P's Opp. to Powers MSJ, 24–26 the NDAs are void as against the public policy against prostitution. A contract is void if it directly violates a statutory prohibition. *O'Hearn v. Spence-Chapin Servs. to Families & Children, Inc.*, 929 F. Supp. 136, 142 (S.D.N.Y. 1996) (finding "contracts are void as contrary to the public policy of the State of New York"). The NDA provides, "In return for an agreed upon fee, I have voluntarily agreed to engage in sexual activity with (Rubin)." (Plaintiff's 56.1 Statement of Undisputed Facts, Dkt. No. 234-2, February 13, 2019 ("P's 56.1 Statement"), ¶ 9; Plaintiffs' NDAs, Exhibits J, K, L, M, N, and O.) The NDA is, on its face, a contract for prostitution, and is thus void as against public policy.

Moreover, and as elaborated in the P's Opp. to Powers MSJ, 25, the NDA is also void as the penalty provision is invalid. "While the parties to a contract may agree as to the damages in the event of a breach, the imposition of penalties or forfeitures for a breach of contract is not permitted in the absence of statutory authority." *Ann-Par Sanitation, Inc. v. Town of Brookhaven*, 23 A.D.3d 380, 382 (2d Dep't 2005) (liquidated damages provision of contract unenforceable due to insufficient relationship between injury and liquidated damages). The NDAs contain a provision that the Plaintiffs "agree that in the event [they] disclose Confidential Information covered by this Agreement, [they] will return to Rubin all monies previously received in connection with this Agreement, and will pay Rubin an additional **Five-Hundred Thousand (500,000.00)** as a penalty." (P's 56.1 Statement, ¶ 9; Plaintiffs' NDAs, Exhibits J, K, L, M, N, O (emphasis in original).) Public policy warrants voiding the NDAs such that Plaintiffs deserve judgment on any

claim based on them, and any affirmative defenses based on them must be dismissed.

### D. Rubin Did Not Give Any Consideration in Exchange for Confidentiality, and the NDAs Have an Unenforceable Penalty Provision, Such that No Portion of the NDA is Enforceable

Rubin did not give any consideration in exchange for confidentiality, making the confidentiality provision alone unenforceable. In order for a contract to be enforceable, there must be consideration. *Aretakis v. Caesars Entm't*, No. 16 CIV. 8751 (KPF), 2018 WL 1069450, at *7 (S.D.N.Y. Feb. 23, 2018) (contract void for lack of consideration). Powers claims that "Mr. Rubin gave consideration in exchange for a lawful promise not to disclose legal activities" but fails to point to any consideration (or contractual provision granting consideration) that Rubin gave in order to make the confidentiality provision enforceable. (Powers Opp. to P's PMSJ, 6–7.) Indeed, the only portion of the NDA that mentions any consideration is "In return for an agreed upon fee, I have voluntarily agreed to engage in sexual activity with (Rubin)." (P's 56.1 Statement, ¶ 9; Plaintiffs' NDAs, Exhibits J, K, L, M, N, and O.) As such, any monies paid to the Plaintiffs was "[i]n return" for agreeing "to engage in sexual activity" and *not* for confidentiality. (P's 56.1 Statement, ¶ 9; Plaintiffs' NDAs, Exhibits J, K, L, M, N, and O.) However, as discussed *supra* in Section I(B), and in P's MSJ Brief, 18, the "sexual activity" portion of the NDA is void as against public policy. Rubin gave no consideration in exchange for any confidentiality, such that no portion of the NDA is enforceable.

### E. Powers is Not Mentioned Anywhere in the NDA, Nor is She an Anticipated Beneficiary

Powers is not mentioned anywhere in the NDA and Rubin's practice of naming others whom he intended to be covered by the NDA shows that Powers is not a third-party beneficiary under the NDA. An individual who does not sign a contract "lacks standing to enforce the agreement." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). In order

8

for a third-party to enforce a contract, the third-party has the heavy burden of showing "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for its benefit, and (3) that the benefit to it is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). Powers is not mentioned anywhere in the NDAs. (P's 56.1 Statement at ¶ 9; Plaintiffs' NDAs, Exhibits J, K, L, M, N, and O.) When Rubin did intend for someone other than him to be covered by the NDA, he created a new NDA with that person's name on it in place of his. (*See e.g.*, Confidentiality Agreement and Release of Rosemarie Peterson with ███████, September 26, 2014, Exhibit W.) Yet, neither Defendant has produced an NDA with Powers's name on it. (Balestriere Reply Decl., ¶ 4.) The NDAs' broad statement that it applies to Rubin's "friends" and associates" is not enough to meet the heavy burden of demonstrating third party beneficiary status. *Athineos v. Andromeda Investments Co.*, No. 13 CIV. 5076 CM, 2015 WL 6467842, at *13 (S.D.N.Y. Oct. 23, 2015) (citing *LaSalle Nat'l Bank v. Ernst & Young LLP*, 285 A.D.2d 101 (1st Dep't 2001) (it is "difficult to establish" third party beneficiary status in New York). Powers is not a third-party beneficiary of the NDA.

## II. PLAINTIFF HALLMAN IS NOT LIABLE TO ANY OTHER PLAINTIFFS AS SHE DID NOT CONTRIBUTE TO DEFENDANTS' HUMAN TRAFFICKING VENTURE

Hallman deserves judgment on the contribution claim. "Contribution is a remedy available 'to [a]ny tortfeasor who pays more than its fair share of a judgment—as apportioned by the factfinder in terms of relative culpability' against other joint tortfeasors." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010) (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 556 (1992)). Contribution is only available for the state law tort claims and not the TVPA claims. *See In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 65 (2d Cir. 2013) ("there is no claim for contribution unless the operative federal statute provides one"); *see also* 18 U.S.C.

9

§ 1595 (no language providing for a right to contribution). Hallman is not liable to anyone else for Defendants' acts.

### A. Defendants Are Judicially Estopped From Arguing About a Broad Conspiracy When They Have Successfully Limited the Scope of Discovery to a Limited Sex Trafficking Venture Affecting Only Plaintiffs

Defendants cannot argue that Hallman is part of a broad conspiracy when they have sought (and succeeded) to limit this action solely to Plaintiffs. In a Joint Discovery Letter on August 24, 2018, Defendants made the argument that "[n]on-parties who were uninvolved in, and did not communicate about, the instances when Plaintiffs allege they were subjected to intentional torts, or when they allege they were trafficked in order to engage in commercial sex acts, *have no bearing on* Plaintiffs' claims." (Joint Discovery Letter, 4 (emphasis added).) Yet, Defendants now want to argue that "[t]o the extent that she argues that there was a conspiracy to deceive, Hallman's role as a recruiter lands her squarely in the middle of" the venture (Powers Opp. to P's PMSJ, 9), thereby attempting to make her liable under a contribution theory to Plaintiff Hathaway, who Hallman never met, and who met Rubin years before Hallman met Rubin. (Powers Opp. to P's PMSJ, 9.) This argument is undermined by Defendants previous position in the August 24, 2018, Joint Discovery Letter that the Court relied on not only to deny Plaintiffs' request for discovery as to other members of Rubin's venture, but also to impose costs on Plaintiffs in the amount of $1,000. (Text Order Denying [163], August 29, 2018.) Defendants cannot now argue that Hallman is part of a broad conspiracy when they have already successfully argued to limit the scope of this litigation.

Indeed, Defendants' argument that Hallman can somehow be liable on a contribution theory for Defendants' trafficking of individuals she never met directly contradicts the MTD Order where the Court dismissed claims brought against Powers after finding that Powers did not have sufficient interactions with certain Plaintiffs to be liable for the TVPA claims brought by those

10

Plaintiffs. (*See* MTD Order, 39 n.21) (dismissing Plaintiff Peterson's TVPA claim against Powers as "Peterson does not allege any interaction with Powers.") In the same way, Hallman cannot be found liable on a contribution theory for the claims brought by Plaintiffs (or unidentified third-parties) she has never met, warranting dismissal of Defendants' contribution affirmative defense, and judgment in Plaintiffs' favor on Powers's contribution counterclaim.

### B. Hallman is Not Liable for Lawson's December 2016 Trip Merely Because She Messaged with Rubin Before and After the Trip

Hallman is not liable to Lawson for Lawson's December 2016 trip simply on the basis that she messaged Defendant Rubin before and after the encounter where Rubin beat and raped her. Powers falsely claims that "Hallman testified she convinced her friend Lawson to join Hallman for her first meeting with Mr. Rubin," but includes no citation to anything from Hallman's deposition. (Powers Opp. to P's PMSJ, 9.) However, even if this were true, which it is not, Lawson's first encounter on August 22, 2016, was anyway found by this Court to be outside the statute of limitations of the state law tort claim for which there might be a right of contribution (MTD Order, 43), such that even if Hallman did contribute to that encounter (which she did not), it would be irrelevant as such encounter is not actionable. *In re Agape World, Inc.*, 467 B.R. 556, 563 (Bankr. E.D.N.Y. 2012) (dismissing contribution claim where trustee failed to "adequately plead each element of the underlying claim giving rise to the right of contribution"). Hallman should be awarded judgment on the contribution claim regarding the August 22, 2016, encounter.

Hallman should also be awarded judgment on the contribution counterclaim regarding the December 21, 2016, encounter, as Powers argues Hallman "facilitated Lawson's second meeting with Mr. Rubin in December 2016—the very meeting which is alleged to be the basis of Lawson's claim against Ms. Powers for intentional infliction of emotional distress—by texting with Mr. Rubin before the meeting and by texting with Mr. Rubin afterwards to make sure Lawson got

11

paid." (Powers Opp. to P's PMSJ, 9.) However, the text messages show that Hallman neither facilitated nor asked Rubin to pay Lawson: Hallman texted Rubin the same day that Lawson was to see him "Guess your [sic] seeing my [Lawson] today." (Powers Opp. to P's PMSJ, 9; Powers Opp. To P's PMSJ Exhibit 75, LAWSON-0203391.) Moreover, Hallman did not text Rubin "to make sure Lawson got paid" as Powers claims, but rather messaged Rubin, "Well that went good I heard 😈." (Powers Opp. to P's PMSJ, 9; Powers Opp. To P's PMSJ Exhibit 75, LAWSON-0203391.) That is all Powers cites to. These messages are not enough for Powers to claim contribution, and as such, Hallman should be awarded judgment on Powers's contribution claim.

### C. While Hallman is Not Liable to Former Plaintiff Caldwell, Even if She Were, Caldwell is No Longer a Party In This Action, Mooting Any Contribution Claim

Caldwell was dismissed from this action on November 9, 2018 (Dkt. No. 204), and there can be no contribution claim based on claims that have already been dismissed, warranting Powers's contribution claim in relation to any of Caldwell's previous claims to also be dismissed. *See Andrulonis v. United States*, 26 F.3d 1224, 1234 (2d Cir. 1994) ("underlying right to contribution is necessarily conditioned upon the defendant's satisfaction of the primary judgment").

## III. THE MOTION TO DISMISS ORDER REQUIRES DISMISSAL OF OTHER DEFENSES

The MTD Order warrants dismissal of several of Defendants' affirmative defenses, as argued in P's MSJ Brief, 12–19. Despite this, Defendants maintained these defenses in their Answer and Counterclaims (Dkt. No. 168, September 6, 2018), filed over six months after this MTD Order. A court need not reconsider "legal conclusions which are not in any way altered by discovery, or by subsequent developments in the law." *Nobel Ins. Co. v. City of New York*, No. 00-

12

CV-1328 KMK, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006).⁵ As there has been no discovery that would alter this Court's prior determination, nor have there been any subsequent developments in the law, the Court should dismiss the following affirmative defenses:

**Statute of Limitations and Laches** (P's MSJ Brief, 13–15): Plaintiffs brought their TVPA claims within the ten-year statute of limitations (18 U.S.C § 1595(c)(1)) and the remaining intentional torts within one year. CPLR § 215. (MTD Order, 43.) Defendants' statute of limitations and laches defenses should be dismissed.

**Settlement and Release** (P's MSJ Brief, 15): Plaintiffs did not settle and release their claims with Defendants before such claims even accrued. *See* 29 Samuel Williston, *Williston on Contracts* § 73:10 (4th ed.) (releases "ordinarily release all present, but not future, claims"). The NDA, signed before the acts occurred, does not override Plaintiffs' lack of consent to specific events. (MTD Order, 37.) Moreover, and as discussed in more detail above, the NDAs are void such that even if the NDAs were enough for Defendants to base their settlement and release defenses on, the NDAs would not release Defendants from Plaintiffs claims.

**Improper Venue** (P's MSJ Brief, 16–17): Plaintiffs claims were properly brought in the

---

⁵ All of Defendants' authorities in support of their position regarding these defenses are inapposite. *See e.g.* [third-party beneficiary] *Crossland Sav. FSB v. Rockwood Ins. Co.*, 700 F. Supp. 1274, 1283 (S.D.N.Y. 1988) (unlike Powers, third-party beneficiary specifically known as assignee); [contracts against public policy void] *Nielsen v. Van Leuven*, No. 3:15-CV-1154 (MPS), 2017 WL 3925412, at *2 (D. Conn. Sep. 7, 2017) (court invalidated contract for prostitution just as this Court should do here); [contracts against public policy void] *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.*V., 28 F. Supp. 2d 126, 138–39 (S.D.N.Y. 1998) (the court did "no more than raise these related questions now, leaving their resolution for another day" regarding issues of contracts being void); [frivolous claims] *Perry v. S.Z. Rest. Corp.*, 45 F. Supp. 2d 272, 274 (S.D.N.Y. 1999) (claim frivolous where plaintiff knew he was not permitted to use bathroom because it was out of order not because of his race); [laches] *Bakalar v. Vavra*, No. 05 CIV. 3037 (WHP), 2006 WL 2311113, at *3 (S.D.N.Y. Aug. 10, 2006) (unlike here, there was no statute of limitations defense); [laches] *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 643 (S.D.N.Y. 2000) (unlike here, awaiting reciprocal discovery before ruling on laches defense); [failure to state a claim] *Sears, Roebuck & Co. v. Sears Realty Co.*, No. 89-CV-1350, 1993 WL 260677, at *7 (N.D.N.Y. July 8, 1993) (denied summary judgment on failure to state a claim because, unlike here, action was equitable and court would need to evaluate the equities of the parties and the public); [settlement and release] *Kulkarni v. Arredondo & Co., LLC,* 151 A.D.3d 705, 706 (2d Dep't 2017) (unlike here, claims were settled after they occurred and plaintiff attempted to re-litigate those same claims).

Eastern District of New York because Defendants transported Plaintiffs into and out of this district. (MTD Order, 14–17.) Even if the Court determines Plaintiffs TVPA claims are not viable—which it should not—the Court should transfer venue to the Southern District of New York in lieu of dismissing the action in its entirety for the remaining claims, as Defendant Powers has conceded the Southern District would have venue over such claims. (Powers Opp. to P's PMSJ, 10 ("claims founded upon assault, as well as intentional infliction of emotional distress, do not turn on whether and how the plaintiffs traveled through a particular airport, but rather, the situs of the alleged misconduct, which was Manhattan, or the Southern District of New York").) If the Court finds that any of the Plaintiffs did not travel through the Eastern District of New York, the Court still may exercise pendent jurisdiction over those claims (MTD Order, 17 (citing *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 387 (S.D.N.Y. 2010)) warranting dismissal of Defendants' improper venue affirmative defense.

**Failure to State a Claim and Frivolous Claims** (P's MSJ Brief, 17–18): As this Court found in the MTD Order (MTD Order, 43), Plaintiffs properly pleaded their claims in their Second Amended Complaint. (Dkt. No. 161, August 17, 2018.) "[A]rguing on a motion for summary judgment of the same legal issue which has already been denied on a motion to dismiss for failure to state a claim potentially may be barred under the 'law of the case' doctrine." *Soper v. Simmons Int'l, Ltd.*, 632 F. Supp. 244, 246 n.1 (S.D.N.Y. 1986). Plaintiffs amended their complaint since the MTD Order but made no substantive changes to any of the allegations that the Court upheld. There is no basis for Defendants' failure to state a claim and frivolous claims affirmative defenses which should be dismissed.

## CONCLUSION

Plaintiffs must be awarded judgment for the contribution counterclaim, and any defenses on which Defendants move should be dismissed as a matter of law. Defendants make contradictory

statements throughout this litigation, including regarding their enforcement of the NDAs and the scope of this litigation, warranting dismissal of Defendants' affirmative defenses and counterclaims of breach of contract and contribution. Moreover, Defendants' breach of contract affirmative defense and counterclaim should be dismissed as the NDA is void as against public policy, has an impermissible penalty provision, and provides inadequate consideration. The contribution affirmative defense and counterclaim also fail as Hallman may not be held liable for acts committed before Hallman even met Rubin, and Hallman is not liable for Lawson's second encounter with Rubin as Hallman had nothing to do with that encounter. Defendants' affirmative defenses of statute of limitations, laches, settlement and release, improper venue, failure to state a claim, and frivolous claims should all also be dismissed as this Court has already made determinations on them in the MTD Order, and nothing in discovery has changed those rulings.

Defendants' counterclaims of breach of contract and contribution, and their affirmative defenses of statute of limitations, laches, settlement and release, improper venue, failure to state a claim, and frivolous claims should be dismissed.

Dated: New York, New York
March 27, 2019

By: _____
John G. Balestriere
Matthew W. Schmidt
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
john.balestriere@balestrierefariello.com
*Attorneys for Plaintiffs*

15