**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON, and LAUREN FULLER,

                                *Plaintiffs*,

-against-

HOWARD RUBIN and JENNIFER POWERS,

                                *Defendants.*

---

**Case No.: 1:17-CV-06404 (BMC)**

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JENNIFER POWERS' MOTION FOR SUMMARY JUDGMENT**

---

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Phone: 212-344-5400
Fax: 212-344-7677

**YIFAT V. SCHNUR ESQ. LLC**
22 Prescott Street
Edison, NJ 08817

*Attorneys for Defendant Jennifer Powers*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    THERE IS NO FACTUAL DISPUTE ABOUT POWERS' LACK OF KNOWLEDGE OF COERCION OR DECEPTION. ................................................... 2

        A.    BDSM sex is not per se coercive. .................................................................. 2

        B.    Confidentiality agreements about BDSM sex are not coercive. ...................... 6

        C.    The "benefitted financially from participating in a venture" prong of 18 U.S.C. 1591 requires knowledge of coercion, which is absent here. ............ 7

        D.    Powers' assistance in providing plaintiffs with financial and other support does not amount to coercion. .............................................................. 8

    II.    NOTHING SUPPORTS THE CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ....................................................................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                     **Page(s)**

*Camporeale v Airborne,*
   *Frgt. Corp.,* 923 F.2d 842 (2d Cir 1990) .............................................................................. 1

*Lyons v. Lyons*,
   734 N.Y.S.2d 734 (3d Dep't 2001)........................................................................................ 7

*Mariani v. Consolidated Edison Co. of New York, Inc.*,
   982 F.Supp. 267 (S.D.N.Y. 1997) ....................................................................................... 10

*People v. Battease*,
   74 A.D.3d 1571 (3d Dep't 2010).................................................................................... 3, 4

*Russell v. Aid to Developmentally Disabled, Inc.*,
   2018 WL 5098819 (2d Cir. Oct. 18, 2018)............................................................................ 4

*United States v. Calimlim*,
   538 F.3d 706 (7th Cir. 2008) .................................................................................................. 7

*United States v. Jones*,
   909 F.2d 533 (D.C. Cir. 1990).............................................................................................. 9

*United States v. Marcus*,
   487 F. Supp. 2d 289 (E.D.N.Y. 2007), *aff'd in part, vacated in part,
   remanded on other grounds*, 628 F.3d 36 (2d Cir. 2010)................................................. passim

*United States v. River*a,
   799 F.3d 180 (2d Cir. 2015) .............................................................................................. 6, 9

*United States v. Williams*,
   714 F. App'x 917 (11th Cir. 2017) ............................................................................. 3, 4, 8, 9

*Walker v. City of New York*,
   63 F.Supp.3d 301 (E.D.N.Y. Dec. 5, 2014)............................................................................ 4

**Statutes**

18 U.S.C. 1591................................................................................................................... 7, 8

18 U.S.C. 1591(e)(2)............................................................................................................ 2, 6

**Rules**

Fed. R. Evid. 401, 403 and 802................................................................................................ 1

Jennifer Powers submits (i) this reply memorandum of law ("Reply"), (ii) her reply to Plaintiffs' Counterstatement to her Rule 56.1 Statement of Undisputed Facts (the "Powers 56.1 Reply") and (iii) the Jolene LaVigne-Albert Reply Declaration (the "JLA Reply Decl."), in further support of her motion for summary judgment dismissing the claims against her.[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition shows there is no issue of fact as to Powers, and that she is entitled to summary judgment dismissing all claims against her. Plaintiffs ignore hundreds of *their own* text messages conclusively proving that Powers reasonably understood that the encounters between plaintiffs and Rubin were knowing, voluntary and consensual. This concession by silence in and of itself establishes Powers' entitlement to judgment. Consisting only of rhetorical,[2] irrelevant,[3] unsupported,[4] and disingenuous[5] statements, none of which ever comes to grips with their own fatal admissions, plaintiffs' opposition does not create an issue of fact as to Powers' lack of knowledge of coercion. Left with an overwhelming undisputed factual record against them, plaintiffs are reduced to arguing that BDSM sex is *per se* coercive as are confidentiality agreements pertaining to BDSM sex; and that consumption of alcohol or drugs automatically renders a sexual interaction nonconsensual. These are all misstatements of law and must be rejected.

---

[1] Powers incorporates by reference the arguments made by defendant Howard Rubin in his reply in further support of his motion for summary judgment and related filings.

[2] Use of terms like "victim," "assault" and "rape."

[3] *See, e.g.* Opp. at 5-6 and similar language at 17-18 (allegations as to 10 to 30 non-plaintiff women); Opp. at 4, 9-10, 17, 22 (allegations pertaining to now-dismissed plaintiff Caldwell); Opp. at 17, 19 (facts pertaining to Peterson who has no claims against Powers). These would be inadmissible against Powers at trial pursuant to Fed. R. Evid. 401, 403 and 802. *See Camporeale v Airborne Frgt. Corp.,* 923 F.2d 842 (2d Cir 1990) ("on a motion for summary judgment, [the Court] may only consider facts that would ordinarily be admissible at trial").

[4] *See, e.g.* Opp. at 4 (allegation that Powers' duties included "consoling women after Rubin's attacks after she learned about how they were injured") (no cite to the record; this statement is unsupported and false).

[5] *See, e.g. infra* fn. 6 (allegation that Powers gave drugs to plaintiffs is unsupported by record).

1

**ARGUMENT**

I. **THERE IS NO FACTUAL DISPUTE ABOUT POWERS' LACK OF KNOWLEDGE OF COERCION OR DECEPTION.**

Our opening brief described the undisputed evidence of Powers' knowledge that each plaintiff knowingly and voluntarily agreed to have BDSM sex with Rubin in exchange for money, including contemporaneous text messages demonstrating plaintiffs' willingness and often eagerness to do so; plaintiffs' desire for repeat experiences; plaintiffs' introduction of others to Rubin; and the lack of *any* suggestion of *any* non-consensual activity having taken place. **Plaintiffs do not address any of these admissions.** Their failure to dispute these (authenticated) texts concedes Powers' motion. As part of the strategy of ignoring what cannot be challenged, plaintiffs' opposition devotes pages describing Powers' duties as Rubin's assistant (opp. at 5-8; 11-21), none of which is disputed or relevant to the issue of Powers' knowledge. Plaintiffs then offer fantasy-based legal arguments and disingenuous record cites that are all debunked below.

A. **BDSM sex is not per se coercive.**

Plaintiffs argue that (i) the language of the Confidentiality Agreement and Release (the "Agreement"), stating that plaintiffs "voluntarily agreed to engage in . . . Sadomasochistic (SM) [sexual] activity" with Rubin, combined with (ii) Powers' purchase of BDSM toys and equipment, show "threats of serious harm to or physical restraint against any person," 18 U.S.C. 1591(e)(2), which, they say, amounts to knowledge of coercion within the meaning of the sex trafficking statute. (Opp. at 3; 8-9, 21-22.) But there is no dispute about the Agreement's language or Powers' purchases; the only issue is whether those undisputed facts would have led a reasonable person to doubt plaintiffs' consent. Plaintiffs' argument is that BDSM is by nature so coercive that no adult could validly consent to engage in it as a matter of law. The Second Circuit has flatly rejected plaintiffs' argument, holding that "**BDSM activities alone [cannot] constitute the basis for a**

**conviction under the sex trafficking charge**." *United States v. Marcus*, 628 F.3d 36, 45 (2d Cir. 2010). In that case the Second Circuit specifically approved the trial court's instruction to the jury:

> Throughout the trial, you have heard evidence about sexual practices called Bondage, Discipline/Domination, Submission/Sadism, Masochism, or "BDSM," that may involve actual physical restraint, such as being tied up or placed in a cage. **The mere fact that a person was physically restrained during the course of such acts does not necessarily mean that the statute was violated. For example, if the physical restraint was consensual, then it would not constitute a violation of the statute.** *Id.* at 45 n. 11 (emphasis added).

Plaintiffs cite only one, plainly irrelevant case to support their argument, *United States v. Williams*, 714 F. App'x 917, 919 (11th Cir. 2017). *Williams* did not involve BDSM sex but instead concerned violence and threats used to force *minors* to prostitute themselves. As *Marcus* makes clear, plaintiffs need to show more than Powers' knowledge of the occurrence of BDSM sex to defeat summary judgment. The additional facts cited by plaintiffs, none of which are disputed, do not show an issue of fact as to Powers' knowledge. We address each below.

*First*, that Powers was aware that plaintiffs sometimes consumed alcohol or drugs before engaging in sexual activities with Rubin (opp. at 3, 9-10, 26) does not create an issue of fact as to Powers' lack of knowledge of coercion. Contrary to plaintiffs' argument, the consumption of drugs or alcohol does not automatically render a sexual interaction non-consensual. *See e.g. People v. Battease*, 74 A.D.3d 1571, 1573–74 (3d Dep't 2010) (victim's drug consumption did not render her incapable of consent). Not one plaintiff testified that she was so intoxicated as to be incapable of consenting to BDSM sex with Mr. Rubin. In addition, plaintiffs grossly distort the factual record on Powers' knowledge of plaintiffs' drug consumption.[6]

---

[6] Plaintiffs cite texts regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the totality of the texts show that Speight did not have sex with Mr. Rubin during this trip. As she told Powers: "H and I didn't get to have fun. I hate that." *Id. See also* Ex. 88 at JP_0000033 (Rubin to Powers: "Boring. No sex."). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

*Second*, Plaintiffs' reliance on the January 27, 2016, text from Powers to Rubin—"You beat a hot girl and got laid!"—does not support an inference of knowledge of coercion: based on Speight's texts, Powers knew that Speight was not coerced that day or any day; and Powers' use of the word "beat" in this context was banter, borrowed from the BDSM jargon. Plaintiffs chose not to confront Powers with this text message (or *any* text messages) during her deposition. (JLA Reply Decl. at ¶5.) The undisputed[7] record includes: (1) Speight's mundane texts to Powers, after she had been with Rubin on January 27, 2016, asking about ordering food, but not otherwise suggesting any discontent (Plaintiffs Opp. to Powers 56.1 Stmt. ("Dkt. 258-1") at ¶¶198-200); (2) Speight's six subsequent voluntary trips to New York to see Rubin (*id.* at ¶¶203-206; 216-223; 231-234; 243-246; 255-257; 265-269); and (3) Rubin's texts with Powers about Speight— "wonderful time [with Speight], she just wanted to take a bath" (Rubin to Powers); "Everyone is happy" (Powers to Rubin); and multiple allusions to the playful nature of the conversation ("Lmaoooo!!"; "Joke!" "you're funny!!!")—all showing that Powers' use of "beat" was an allusion to BDSM culture, not a statement regarding lack of consent. (*Id.* at 201; Ex. 88 at

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████ .

---

[7] Throughout their Opposition to Powers' Rule 56.1 Statement, plaintiffs try to limit or modify particular statements without pointing to any contrary evidence. For example, in response to "Ms. [Speight] and Ms. Powers had no communications regarding the specific events of Ms. [Speight's] January 27, 2016, encounter with Mr. Rubin," (*id.* at 200, plaintiffs replied: "Undisputed that Speight and Powers did not communicate *via WhatsApp* regarding the January 27, 2016, encounter with Rubin."). Such equivocations are deemed to admit the stated fact. *See, e.g., Russell v. Aid to Developmentally Disabled, Inc.*, 2018 WL 5098819 at *1 (2d Cir. Oct. 18, 2018) (statements that the party "lacks sufficient knowledge or information to admit or deny [or] statements of denial that were not supported by citations to record evidence, or . . . responses where Russell stated she could not admit or deny as worded" are all deemed to be admissions); *Walker v. City of New York*, 63 F.Supp.3d 301, 306 n.4 (E.D.N.Y. Dec. 5, 2014) (facts alleged must be "specifically controvert[ed]" or they are deemed admitted).

JP_0000025-26.)[8]

*Third*, Plaintiffs' assertion that Powers' duties included "consoling women after Rubin's attacks after she learned about how they were injured . . . again showing her knowledge of Rubin's assault" (opp. at 4) is **unsupported** (plaintiffs offer no record cite for it) **and false**.

*Fourth,* plaintiffs rely heavily (citing the same text four times, see opp. at 4; 9-10; 22; 28) on a text between Powers and Hallman discussing bruises that now-dismissed and never-deposed-former-plaintiff Caldwell allegedly had suffered during a BDSM encounter with Rubin and Hallman. Putting aside the fact that no evidence regarding Caldwell should be considered because she refused to pursue this case after expressing concern about false allegations in the complaint,[9] this evidence is irrelevant. That Powers was aware that BDSM sex involving Rubin left a non-party with bruises is irrelevant to her knowledge of whether those BDSM sex acts were coerced, or whether BDSM sex acts between Rubin and *other women* were coerced. *United States v. Marcus*, 487 F. Supp. 2d 289, 305-306 (E.D.N.Y. 2007) (consensual application of force during BDSM sex does not come within the ambit of the sex trafficking statute), *aff'd in part, vacated in part, remanded on other grounds*, 628 F.3d 36 (2d Cir. 2010).

[REDACTED]

---

[8] Unless stated otherwise, all exhibits cited herein are those attached to the Declarations of Jolene LaVigne-Albert, "JLA Decl." The exhibits attached to the JLA Reply Decl. submitted with these papers have been numbered continuously from those attached to the JLA Decl. submitted with our opening brief, and those submitted with our opposition to the plaintiffs' motion for summary judgment.

[9] Ex. 89, Epiq Productions, Caldwell to Hallman on November 3, 2017: "Our reputations will be ruined for life for nothing I talked to John [Balestriere] Me and you need to talk Over the phone Be on the same page Nothing can be done today We have to go on stand and Infront of a judge F what the tabloids say" (text #7027); "I told John we both weren't tied up . . . I was protecting us because we're gonna get deposed" (#7031); **"My dad's questions scared me. That's exactly how they're gonna ask us. And me saying uh uh uh makes no sense. I feel uncomfortable now." (#7035, originally withheld by plaintiffs as privileged but later produced to defendant as a result of court order after in-camera review)**; **"I'm not gonna fabricate the whole story and I want to be on the same page as you so we're ready for anything they give us. (#7040, originally withheld by plaintiffs as privileged but later produced to defendant as a result of court order after in-camera review**).)

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

B. **Confidentiality agreements about BDSM sex are not coercive.**

Plaintiffs argue that, in asking four plaintiffs to sign the Agreement, Powers "abuse[d] or threatened abuse of law or the legal process" and thus coerced them within the meaning of the sex trafficking statute. 18 U.S.C. 1591(e)(2).[10] (Opp. at 4, 23-27.) But confidentiality agreements are neither illegal nor coercive in themselves, and there was no "threat" in the Agreement that might have caused a reasonable person to feel coerced to engage in a commercial sex act. *United States v. River*a, 799 F.3d 180, 187 (2d Cir. 2015). Plaintiffs cite an undisputed text from Powers to Hallman and Caldwell on August 18, 2017: "please keep in mind that both of you have violated the NDA agreement." (Opp. at 23-24.) Plaintiffs argue that this was "coercive behavior" making "Powers liable under the TVPA" because it was a "barely veiled threat that she and Rubin would (wrongfully) sue Plaintiff Hallman and former Plaintiff Caldwell *in order to attempt to prevent them from revealing the trafficking venture*." (Opp. at 24 (emphasis added).) First, the record is clear that Powers sent this message to Hallman and Caldwell in an attempt to prevent them for revealing further information to indicted extortionist Robert Aloi, not because of some concern that Hallman and Caldwell would speak to law enforcement. (Powers 56.1 Reply at 16.) Second, threatening to bring a lawsuit for violating a confidentiality agreement is not coercion under 18 U.S.C. 1591, which requires an act "to cause the person to engage in a commercial sex act." Neither is such a "threat" illegal. *Lyons v. Lyons*, 734 N.Y.S.2d 734, 737 (3d Dep't 2001) ("A mere threat to do that which one has the legal right to do does not constitute duress") (internal

---

[10] By making this argument, Plaintiffs necessarily concede that they understood the Agreement, contrary to some of the plaintiffs' (implausible) testimony to the contrary.

6

citations and quotes omitted). It is undisputed that Powers was not trying to have Hallman engage in a commercial sex act when she sent that text in August 2017 (or at any time).[11] Plaintiffs admit that the goal of Powers' text was to keep Hallman and Caldwell from revealing their sexual encounters with Rubin. That is not what the sex trafficking statute's prohibition against "abuse of . . . legal process" is aimed at. *Cf. United States v. Calimlim*, 538 F.3d 706, 710 (7th Cir. 2008) (using immigration laws to threaten victim with deportation was "abuse of legal process").

Perhaps plaintiffs' *most* disingenuous statement (admittedly, a close contest on this record) is that "Powers used the threat of the $500,000 penalty provision to make Plaintiffs think that **if they stopped** coming to see Rubin . . .then Plaintiffs would owe Rubin and Powers half a million dollars . . ." (Opp. at 26-27 (emphasis added).) Nothing in the Agreement threatens *any* adverse consequences if plaintiffs *stopped* seeing Rubin. (Exs. 9, 20, 27, 58.) The Agreement provided for liquidated damages only "in the event that [signatory] **disclose[d] Confidential Information** covered by this Agreement" (emphasis added). Plaintiffs also fail to cite a single statement by Rubin or Powers threatening any plaintiff if she did not return (whereas there are many statements by plaintiffs expressing eagerness to return). Finally, this Court already rejected the argument that liability can be imposed on the basis of the Confidentiality Agreement alone.[12]

C. **The "benefitted financially from participating in a venture" prong of 18 U.S.C. 1591 requires knowledge of coercion, which is absent here.**

---

[11] The record shows that in August 2017, Powers was trying to organize a meeting between herself, Hallman, Caldwell and counsel (Schnur) to discuss Robert Aloi's extortionate scheme against Rubin, after Hallman herself sought Powers' help in that regard. (Ex. 86.) Powers told Hallman that Rubin was "trying to free up" to be at the meeting, but it was not clear whether he was going to be present. *Id*. Aloi has since been arrested and charged for extortion and his case is ongoing. (Sup. Ct. of New Jersey, Law Division, Middlesex County, Indictment No. 18-02-0295.)

[12] Ex. 90, July 12, 2018 Court Conference (regarding former defendant's Schnur Rule 11 Motion for Sanctions against plaintiffs), at 7-8 ("Even if the agreement was invalid, that doesn't make it illegal. I invalidate agreements lawyers draft all the time but that doesn't mean that the lawyer can be sued for that. . . . Every lawyer who drafts an agreement containing a nondisclosure clause is trying to prevent someone from disclosing something. That's the purpose of the clause. What's wrong?")

7

Plaintiffs argue that (i) Powers' annual salary of $120,000-$180,000 (opp. at 3, 4, 11, 20), and (ii) Powers' having "nothing left to do" for Rubin after plaintiffs filed this lawsuit (opp. at 6, 20-21), support an inference that Powers had knowledge of coercive sex. The argument defies logic, and not surprisingly, it finds no support in the caselaw (and plaintiffs cite none). Plaintiffs' vague and unintelligible definition of the *mens rea* requirement of 18 U.S.C. 1591—that Powers knew "the once hidden venture was engaged in wrongdoing" (opp. at 20-21)—is an unsupported invention. Liability under 18 U.S.C. 1591 <u>always</u> requires knowledge or reckless disregard "of the fact, that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act."

### D. **Powers' assistance in providing plaintiffs with financial and other support does not amount to coercion.**

Plaintiffs' last effort is to argue that Powers' conduct in sending thousands of dollars to plaintiffs, sending money to Speight when she was stranded in Dallas, helping Speight for a modeling event, providing plaintiffs with the WiFi password when they were at Rubin's apartment, purchasing a birthday gift and arranging a spa day for Speight[13] – all undisputed facts–amounted to coercion. (Opp. at 26-27.) Plaintiffs again rely on the inapposite *Williams* case, but that case involved use of violence and threats of violence to force *minor* victims to prostitute themselves where the victims' particular life circumstances and defendant's manipulative use of emotional, psychological and financial support, *along with violence*, amounted to coercion. *Williams*, 714 F. App'x at 919-920. To the contrary, plaintiffs were all adults who willingly travelled to New York to engage in BDSM sex with Rubin; while in New York they were free to come and go as they pleased; and they always had a return plane ticket in hand before they arrived in New York. (Dkt.

---

[13] Every time Powers sent money to any plaintiff, or paid anything for the plaintiffs, she used Rubin's money. (Ex. 3, Payment Stipulation.)

8

258-1 at ¶¶19, 40, 57; 108; 158, 178, 188, 195, 203, 219, 223, 234, 246, 258, 269, 279, 283; 328). Plaintiffs had at most a handful of encounters with Rubin per year, lived far away, and Rubin's support was rare. (*Id.* at ¶¶289-294; Ex. 3.) These circumstances fall short of the manipulative use of emotional, psychological and financial support in *Williams*. That Powers facilitated Rubin's support of plaintiffs would not cause "reasonable people of the same background and in the same circumstances to feel coerced." *River*a, 799 F.3d at 187 (2d Cir. 2015); *United States v. Jones*, 909 F.2d 533, 541 (D.C. Cir. 1990) ("ordinary usage . . . does not treat an offer of money (or support services), made to a competent adult, as tantamount to coercion, regardless of how attractive its terms"). To hold otherwise would turn the aim of the sex trafficking statute on its head, suggesting that defendants should have *refused* to provide food or internet access or cash gifts to plaintiffs.

## II. NOTHING SUPPORTS THE CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

As the Court held in its Dismissal Order, plaintiffs' consent negates an essential element of the intentional infliction of emotional distress claim. (Dismissal Order at 36.) Thus, these claims fail for the same reason as the trafficking claims. Only two non-time-barred tort claims remain against Powers: Lawson's claim pertaining to her December 21, 2016 encounter with Rubin, and Hathaway's claim pertaining to her June 12, 2017 encounter with Rubin. Plaintiffs' opposition does not address these two claims with any specificity. Rather, plaintiffs cite evidence pertaining to Speight and now-dismissed plaintiff Caldwell (not Hathaway or Lawson), and vaguely argue that Powers should have "fully articulate[d] what would happen to the Plaintiffs" and that she should have specified that injuries occurred "more than just on occasion" when she had plaintiffs sign the Agreements (opp. at 27-28).

*First*, regardless of what Powers may have told Lawson and Hathaway when they signed the Agreement, consent negates this tort, and the record shows that Lawson consented to the

9

December 21, 2016, encounter, while Hathaway knowingly and voluntarily came to New York on June 12, 2017, to engage in BDSM sex with Rubin but ended up not having sex with Rubin during that trip. (Dkt. 258-1 at ¶¶ 124-135; 351-361.) Hathaway's belated, self-serving affidavit completely contradicts her deposition testimony that she did not remember her last encounter with Rubin other than she and Rubin "did not get along." (*Id*. at 357.) Nor does the affidavit allege Powers' knowledge of any events described therein.

*Second*, it is undisputed that Powers did not have any involvement with Lawson and Hathaway's decisions to see Rubin on the two relevant dates, nor did she buy plane tickets for these encounters. (Dkt. 258-1 at ¶¶ 124-134; 349-361.) According to plaintiffs, Powers' "extreme and outrageous conduct" was only her failure to "fully articulate" what would happen to them when they signed the Agreement. Our opening brief showed that this conduct does not meet the legal threshold of "extreme and outrageous" (Powers Op. Br. at 33-35). And it is undisputed that Lawson signed the Agreement in August 2016 (Ex. 20), and Hathaway signed it in January 2015 (Ex. 58), such that both events are excluded from consideration as time-barred. *Mariani v. Consolidated Edison Co. of New York, Inc.*, 982 F.Supp. 267, 273-74 (S.D.N.Y. 1997) ("When applying the one year statute of limitations to claims of intentional infliction of emotional distress, all acts occurring before the limitations period are excluded from consideration"). Plaintiffs also argue that medical evidence is not required to prevail on this tort claim but fail to refute the many cases cited by Powers for this proposition. (Opp. at 27; Powers Op. Br. at 32-33).

## **CONCLUSION**

Plaintiffs' opposition is based on disingenuous and misleading statements and untenable legal positions. The truth matters in federal court, and the truth is that plaintiffs have no grounds to keep Powers in this case. For the foregoing reasons, Powers' motion for summary judgment dismissing the complaint against her should be granted.

Dated: New York, New York
March 27, 2019

**SCHLAM STONE & DOLAN LLP**

By:   /s/Douglas E. Grover
Richard H. Dolan
Douglas E. Grover
Jeffrey M. Eilender
Niall D. Ó Murchadha
Jolène F. LaVigne-Albert

26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-mail: rdolan@schlamstone.com
E-mail: dgrover@schlamstone.com
E-mail: jeilender@schlamstone.com
E-mail: nomurchadha@schlamstone.com
E-mail: jlavignealbert@schlamstone.com

**YIFAT V. SCHNUR ESQ. LLC**

    /s/ Yifat V. Schnur
Yifat V. Schnur
22 Prescott Street
Edison, NJ 08817
(347) 268-5347

*Attorneys for Defendant Jennifer Powers*

11