**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**HILLARY LAWSON, KRISTINA HALLMAN, STEPHANIE CALDWELL, MOIRA HATHAWAY, MACEY SPEIGHT, ROSEMARIE PETERSON**, and **LAUREN FULLER**,

*Plaintiffs*,

-against-

**HOWARD RUBIN, JENNIFER POWERS** and the **DOE COMPANY**,

*Defendants*.

Case No. 17-cv-06404 (BMC)

**DEFENDANT POWERS' RESPONSES TO PLAINTIFFS' COUNTER 56.1 STATEMENTS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Civil Rule 56.1, Defendant Jennifer Powers, by her undersigned counsel, respectfully submits the following responses to the Plaintiffs' Counter 56.1 Statements of Material Facts, in support of her motion for summary judgment, and in opposition to Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

**PLAINTIFFS' COUNTERSTATEMENT NO. 1**

Powers was Rubin's assistant from 2011 until 2017.  (Powers Dep., Ex. A at 29:2-20, 32:10–18.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTERSTATEMENT NO. 1**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 2**

Powers' duties included gift shopping, making reservations, any day-to-day tasks, booking flights for victims, and paying the Plaintiffs.  (Powers Dep., Ex. A at 29:19–30:6., 39:3– 9, 90:3–13.)

1

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 2**

Disputed.  The reference to "victims" is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts, and Ms. Powers does not know whom this statement refers to.  Ms. Powers did not make all payments to the plaintiffs. (JLA Decl. Ex. 78,[1] Deposition of Howard Rubin, "Rubin Depo." at 64:13-15; Ex. 3 (Payment Stipulation).)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 3**

Powers purchased Rubin's bondage equipment and put it in the Penthouse.  (Powers Dep., Ex. A at 144:13–21, 146:13–21.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 3**

Disputed.  In addition to Ms. Powers, Ms. Hathaway also purchased items to be used in BDSM play with Mr. Rubin. (Ex. 82, Deposition of Moira Hathaway, "Hathaway Depo." at 85:19-86:14.) Mr. Rubin may also have purchased BDSM equipment. (Ex. 78, Rubin Depo. at 80:11-14.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 4**

Rubin would tell Powers how much money to send to the victims, including Plaintiffs, after a sexual encounter.  (Powers Dep., Ex. A at 194:9–14.)

---

[1] Unless stated otherwise, all exhibits cited in Ms. Powers' Responses to the plaintiffs' Rule 56.1 Counter Statements, and Ms. Powers' Reply Memorandum of Law in Further Support of her Motion for Summary Judgment are those attached to the Declarations of Jolene LaVigne-Albert, "JLA Decl." The exhibits attached to the JLA Declaration submitted with these papers have been numbered continuously from those attached to the JLA Declaration submitted with Ms. Powers' Motion for Summary Judgment, dated February 13, 2019, and the JLA Declaration submitted with Ms. Powers' opposition to the plaintiffs' Motion for Summary Judgment, dated March 6, 2019.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 4**

Disputed.  The reference to "victims" is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts, and Ms. Powers does not know whom this statement refers to.  Ms. Powers did not make all payments to the plaintiffs. (Ex. 78 Rubin Depo. at 64:13-15; Ex. 3 (Payment Stipulation).)  For those plaintiffs Ms. Powers did make payments to, acknowledged that Rubin would tell her how much money to send.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 5**

All of the money that Powers used to book flights and pay Plaintiffs came from Rubin.  (Powers Dep., Ex. A at 73:10–17.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 5**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 6**

Powers booked flights for Plaintiffs to and from New York to meet Rubin.  (Powers Dep., Ex. A at 39:3–9.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 6**

Disputed.  Ms. Powers booked only one flight for Ms. Hathaway, but Ms. Hathaway did not take the flight. (Ex. 77, Deposition of Jennifer Powers, "Powers Depo." at 200:14-23; Ex. 78, Rubin Depo. at 161:7-18; Ex. 59, Hathaway-Powers WhatsApp Chat, at JP_0000273, p. 1 (see 5/24/2015-6/1/2015 messages).)  Ms. Powers never booked any flights for Ms. Fuller or Ms. Peterson. (Ex. 78, Rubin Depo. at 161:7-18; Ex. 84, Deposition of Rosemarie Peterson, "Peterson Depo." at 60:10-16; Ex. 83, Deposition of Lauren Fuller, "Fuller Depo." at 197:5-15.)  Ms. Powers did not book flights for Ms. Lawson's December 2016 trip. (Ex. 78, Rubin Depo. at 164:9-12; Ex. 80,

Deposition of Hillary Lawson, "Lawson Depo." at 327:18-328:6.)  Ms. Powers did not book Ms. Speight's flight on the following dates: June 18, 2016 (Ex. 40, Speight 6/23/16 Email; Ex. 29, Speight-Powers WhatsApp Chat, at JP_0000153, p. 8); and August 30, 2017 (Ex. 30, Speight-Powers WhatsApp Chat, at JP_0000152, p. 1; Ex. 6 at JP_0000019).  At least one of the flights Ms. Powers booked for plaintiffs was to or from New Jersey.  (Ex. 45, Speight 9/26/16 Email.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 7**

Powers provided Plaintiffs an apartment to stay in while in New York.  (JLA Decl. Ex. 17, 36, 39, 41, 43, 46, 48, 50, 52, 54, and 62.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 7**

Disputed.  The Apartment was paid for by Mr. Rubin. (Ex. 78, Rubin Depo. at 157:2-4.) Ms. Powers was not on the lease.  (Ex. 77, Powers Depo. at 115:7-10; Ex. 78, Rubin Depo. at 119:12-13.)  Although Ms. Powers sometimes gave Mss. Lawson, Hallman, Hathaway, and Speight access to the Apartment Mr. Rubin had rented, following Mr. Rubin's instructions and with his permission, she never gave any such access to Ms. Fuller.  (Ex. 83, Fuller Depo. at 196:4-8; Ex. 84, Peterson Depo. at 357:20-358:2).  While at the Apartment, plaintiffs had complete freedom to come and go. (Ex. 79, Hallman Depo. at 103:21-104:12, 204:15-205:11; 231:23-232:6; Ex. 81, Deposition of Macey Speight, "Speight Depo." at 293:10-23; Ex. 29 at JP_0000153, p. 10; Ex. 82, Hathaway Depo. at 82:21-83:5, 129:3-22; Ex. 59, Hathaway-Powers WhatsApp Chat at JP_0000273, p. 5; Ex. 83, Fuller Depo. 108:5-19.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 8**

Powers was "always with" the Plaintiffs "when they signed the release" and related non- disclosure agreements (Powers Dep., Ex. A, 116:25–118:13.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 8**

Disputed.  Ms. Powers presented Mss. Hallman, Lawson, Hathaway, and Speight with a document titled "Confidentiality Agreement and Release" to read and sign, but she did not present such a document to either Ms. Fuller or Ms. Peterson. (Ex. 83, Fuller Depo. at 122:12-15; Ex. 84, Peterson Depo. at 360:13-15.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 9**

Powers booked flights for victims beyond just the Plaintiffs to come to New York to meet Rubin. (Powers Dep., Ex. A, 95:7–12., 95:21–96:10, 96:18–24.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 9**

Disputed.  The reference to "victims" is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts, and Ms. Powers does not know whom this statement refers to.  Ms. Powers booked flights for women other than the plaintiffs to come to New York to meet Mr. Rubin, including women introduced to Mr. Rubin by Ms. Hallman and Ms. Speight.  (Ex. 77, Powers Depo. at 95:7-12, 95:21-96:10, 96:18-24; Ex. 81, Speight Depo. at 137:9-22 140:12-15; 143:17-22; Ex. 29 at JP_0000153, pp. 8-9.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 10**

Between 2011 and 2015, Powers booked flights for more than 10 but less than thirty victims to travel to New York to meet Rubin.  (Powers Dep., Ex. A, 92:25–93:21.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 1**

Disputed.  The reference to "victims" is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts, and Ms. Powers does not know whom this statement refers to.

Between 2011 and 2015, Ms. Powers booked flights for approximately 10 to 30 women to come to New York to meet Mr. Rubin. (Ex. 77, Powers Depo. at 92:25-93:21.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 11**

Powers also paid those victims between $1,000 and $5,000 per encounter on behalf of Rubin. (Powers Dep., Ex. A, 97:3–22; (Joint Stipulation Regarding the Production of Electronic Communications, JLA Decl., Ex. 2.))

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 11**

Disputed. The reference to "victims" is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts, and Ms. Powers does not know whom this statement refers to. As to plaintiffs, they were sometimes paid by Mr. Rubin directly, and were sometimes paid even if they had not seen Mr. Rubin (namely Speight and Hallman). (Ex. 3.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 12**

Powers believed that if Rubin asked Powers to send $5,000 to a victim, including Plaintiffs, that meant that Rubin had sexual intercourse with the victim. (Powers Dep., 194:22–195:3.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 12**

Disputed. The reference to "victims" is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts, and Ms. Powers does not know whom this statement refers to. The statement is acknowledged as to plaintiffs.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 13**

Between 2011 and 2014 Powers was paid ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for her work as Rubin's assistant. (Powers Dep., Ex. A at 32:2–4.)

6

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 13**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 14**

In 2014, Powers' pay ███████████████████████████, for her role as Rubin's assistant.  (Powers Dep., Ex. A, 33:12–18.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 14**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 15**

In 2017, Powers stopped working for Rubin because of "this lawsuit" as "there was nothing left to do" once the lawsuit was filed.  (Powers Dep., Ex. A, 32:19–33:2.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 15**

Disputed.  Ms. Powers testified that the lawsuit "was a big part" of the reason she stopped working for Mr. Rubin. (Ex. 77, Powers Depo. at 32:19-22.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 16**

On August 14, 2017, Powers told Hallman that Hallman had violated the non-disclosure agreement.  (Epiq Production Commissioned by Defendants ("Epiq Production"), Ex. B, Line 557.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 16**

Disputed.  On August 18, 2017, Ms. Powers told Ms. Hallman and Ms. Caldwell that they had violated the Confidentiality Agreement by providing information about Mr. Rubin to indicted extortionist Robert Aloi. (Ex. 85, Powers-Hallman-Caldwell Chat at JP_0000745 at pp. 3-4; Ex. 86, Hallman-Powers Chat at JP_0000162 at p. 7 (Ms. Hallman admitting that Mr. Aloi had gotten

information he used in his attempted blackmail attempt from her); Ex. 87, Caldwell-Powers Chat at JP_0000252 at p. 3 (Ms. Caldwell describing her interactions with Mr. Aloi).)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 17**

Powers gave Lawson access to the Penthouse apartment that Rubin rented for his encounters with women, including Plaintiffs.  (Lawson Dep., Ex. C, 93:13-15.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 17**

Disputed.  Ms. Powers opened the door to the Apartment when Ms. Lawson knocked on August 22, 2016, but Ms. Powers did not provide any "access" to Ms. Lawson in December 2016 as she was unaware that Ms. Lawson was even in New York. (Ex. 80, Lawson Depo. at 70:14-18; 327:13-328:6.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 18**

████████████  contacted and recruited Fuller.  (Fuller Dep., Ex. D, 76:16–20.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 18**

Disputed as to the use of the term "recruited," which is argumentative and not appropriate for a Rule 56.1 Statement of Undisputed Facts: such act does not fall within the scope of 18 U.S.C. 1591 without coercion, which was not present here.  Acknowledged that ████ contacted Fuller and invited her to New York. (Ex. 85, Fuller Depo. at 78:12-21, 91:15-25; Ex. 65, ████-Fuller Text Messages at HR000578.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 19**

████  assisted Fuller on booking her travel from Las Vegas to New York to meet Rubin.  (Fuller Dep., Ex. D, 91:15–19.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 19**

Disputed.  Ms. Fuller testified that she could not recall whether Ms. ███ assisted her in booking her travel or if she booked her travel herself. (Ex. 83, Fuller Depo. at 94:16-21.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 20**

███ assisted Fuller on booking her travel to New York as Fuller traveled from Las Vegas to New York to meet Rubin.  (Fuller Dep., Ex. D, 91:15–19.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 20**

Disputed.  Ms. Fuller testified that she could not recall whether Ms. ███ assisted her in booking her travel or if she booked her travel herself. (Ex. 83, Fuller Depo. at 94:16-21.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 21**

Defendant Rubin and ███ had Fuller sign the non-disclosure agreement, and not Powers. (Fuller Dep., Ex. D, 113:9–22.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 21**

Disputed.  The use of "had" is argumentative and inappropriate for a Rule 56.1 Statement of Undisputed Facts.  Acknowledged to the extent Rubin and ███ presented a Confidentiality Agreement and Release to Fuller and Fuller voluntarily signed it because she wanted to stay. (Ex. 83, Fuller Depo. at 129:10-14.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 22**

9

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 22**

██████████████████████████████████████████████████████████

████████████████████████████████████████

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 23**

Powers purchased Rubin's bondage equipment and put it in the Penthouse.  (Powers Dep., Ex. A at 144:13–21 ("Q.  Now, the sex toys, the BDSM objects and so forth that were in the second bedroom, how did they get in there? A. I put them there.  Q. So did you make the purchases? A. Yes, sir, I did."), 146:13–21 (Powers "bought certain restraints").)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 23**

Disputed.  In addition to Ms. Powers, Ms. Hathaway also purchased items to be used in BDSM play with Mr. Rubin. (Ex. 82, Hathaway Depo. 85:19-86:14.)  Mr. Rubin may also have purchased BDSM equipment. (Ex. 78, Rubin Depo. at 80:11-14.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 24**

The BDSM furniture that Powers purchased for Rubin's dungeon had restraints on it.  (Powers Dep., Ex. A at 147:3–13, 148:4–14, 153:16–18, 154:8–14, 161:22–24.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 24**

Acknowledged that some BDSM furniture had restraints, but not all the furniture had restraints. (Ex. 77, Powers Depo. at 152:22-153:2; Ex. 78, Rubin Depo. at 115:19-22.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 25**

Powers thought that a woman could pull her hands out of the restraints, but also admitted that she was never present when Rubin engaged in BDSM activity.  (Powers Dep., Ex. A at 163:24– 164:4, 190:9–17.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 25**

Disputed.  Ms. Powers knew that a person could pull their hands out of the restraints because they were custom-made fur-lined restraints. (Ex. 77, Powers Depo. at 149:18-152:8.)  Acknowledged that she was never present when Rubin engaged in BDSM activity.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 26**

In April of 2016 Powers messaged Rubin, "I'm very disappointed. . . nothing is fun or 'funny' anymore.  No one can drink for 6 hours straight... ▇▇▇▇▇▇▇ you were egging her on." (Excerpts of the WhatsApp Chat between Rubin and Powers, ("Rubin & Powers' WhatsApp Chat"), Ex. E, JP_0000034.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 26**

Acknowledged.   Speight did not have sex with Mr. Rubin during the trip referenced in this statement.  (Ex. 29 at JP_0000153, p. 7; Ex. 88 at JP_0000033.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 27**

In July of 2017, Powers messaged Rubin: "[Hallman] is too close for comfort...she was a basket case and the root of all of our problems.  She also knows about [Caldwell] and what we paid to 'remedy' the situation."   (Rubin & Powers' WhatsApp Chat, Ex. B, JP_0000002 (emphasis added).)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 27**

Acknowledged.


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 28**

Following former Plaintiff Caldwell's encounter with Rubin, Hallman sent Powers a picture of Caldwell's breasts, to which Powers responded by asking for Caldwell's address to send her some things that would help with the bruising.  (JLA Decl. Ex. 10, 3.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 28**

Disputed.  Ex. 10, 3 does not include a picture, nor does it mention bruising.  Ms. Powers does not know what picture is referenced here, but no picture has been authenticated as being Caldwell's breasts in this litigation.


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 29**

In January of 2016 Powers messaged Rubin: "You beat a hot girl and got laid! What's there to be upset about!!"  (JLA Decl. Ex. 6 at JP_0000025–JP_0000026.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 29**

Acknowledged.


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 30**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 30**

Disputed.  ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████  those same texts show that Ms. Speight did not have sex with Mr.

Rubin during this trip.  (Speight to Powers: ""H and I didn't get to have fun.  I hate that.")  *See*

*also* Ex. 88 at JP_0000033 (Rubin to Powers: "Boring. No sex.").  ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████  but no plaintiff claims she had sex with Mr. Rubin  ████████████████████

████████████████████████████████

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 31**

On one occasion, Rubin threw money at Hallman when he was done with her.  (Lawson Dep., Ex.

C, 89:9–15.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 31**

Disputed.  Ms. Lawson testified that Rubin threw cash "at us," and Ms. Hallman testified that she

did not recall how they got paid. (Ex. 80, Lawson Depo. at 89:11; Ex. 79, Hallman Depo. at 134:23–

135:11.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 32**

Powers threatened Hallman on August 14, 2017, that Hallman had violated the NDA by revealing to her then criminal defense attorney that Rubin had beat and raped her.  (Epiq Production, Ex. B, Line 557.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 32**

Disputed.  On August 18, 2017, Ms. Powers told Ms. Hallman and Ms. Caldwell that they had violated the Confidentiality Agreement by providing information about Mr. Rubin to indicted extortionist Robert Aloi. (Ex. 85 at JP_0000745, pp. 3-4; Ex. 86 at JP_0000162, p. 7 (Ms. Hallman admitting that Mr. Aloi had gotten information he used in his attempted blackmail attempt from her); Ex. 87 at JP_0000252, p. 3 (Ms. Caldwell describing her interactions with Mr. Aloi).)


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 33**

On one occasion, Hallman became so ill on her way to the Penthouse that once she arrived, she needed to go to the hospital; however, Powers sought "other ways" to help Hallman.  (Hallman Dep., Ex. B, 233:5–21.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 33**

Disputed.  Ms. Hallman recalled that Ms. Powers offered to call a doctor to the Apartment, but did not know whether it was Ms. Powers who called the ambulance that took her to the hospital. (Ex. 79, Hallman Depo. at 233:18-21; 239:14-17.)  Ms. Powers was in fact the one who called that ambulance.  (Ex. 6 at JP_0000068).

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 34**

On one occasion, Rubin told Plaintiff Lawson to hit Plaintiff Hallman.  (Lawson Dep., Ex. C, 88:6–24.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 34**

Disputed.  Ms. Hallman did not recall Mr. Rubin making this statement. (Ex. 79, Hallman Depo. at 140:10-16.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 35**

When Lawson instead hit her own leg to make it look like she had hit Hallman, Rubin smacked her in the face.  (Lawson Dep., Ex. C at 88:6–24.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 35**

Disputed.  Ms. Hallman did not recall Ms. Lawson striking her leg. (Ex. 79, Hallman Depo. at 140:19-22.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 36**

Powers messaged Hallman, "I'm not sure who's going to fund what you're doing with Jeremy [Saland, Hallman's criminal defense lawyer for whom Rubin was paying]."  (Epiq Report, Ex. B, Line 32491.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 36**

Acknowledged.  Mr. Rubin, through Ms. Powers, paid a $3,500 retainer fee to Saland in December 2016.  (Ex. 79, Hallman Depo. at 367:21-370:18; Ex. 10 at JP_0000163, p. 10-12; Ex. 86 at JP_0000162, p. 19.)  No other payments were made to Saland by Mr. Rubin or Ms. Powers.  (Ex. 10 at JP_0000163, p. 10-12; Ex. 86 at JP_0000162, p. 19.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 37**

Powers provided Plaintiffs with housing, food and connection to the Internet while they were in New York.  (Rubin & Powers' WhatsApp Chat, Exhibit E, JP_0000019, JP_0000042.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 37**

Disputed.  On many instances, plaintiffs were in New York without Ms. Powers' contemporaneous knowledge or involvement. (Ex. 82, Hathaway Depo. at 90:21-91:8; Ex. 83, Fuller Depo. at 107:16-108:19, 156:22-157:17, 196:4-8, 197:5-15; Ex. 84, Peterson Depo. at 357:13-358:6; Ex. 88 at JP_0000092).  Everything in the Apartment was paid for and "provided" by Mr. Rubin. (Ex. 78, Rubin Depo. at 186:22-187:21.)


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 38**

Powers purchased the Plaintiffs gifts.  (Powers Dep., Ex. A, 29:19–30:6.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 38**

Disputed.  The cited material does not mention Ms. Powers buying gifts for any of the Plaintiffs, and Mr. Rubin testified that he only gave gifts to Ms. Speight.  (Ex. 78, Rubin Depo. at 132:24-133:15.)


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 39**

It became mentally difficult for Lawson to get jobs as she is "not as confident as [she] used to be," due to ███████████████████████████████████████ Lawson Dep., Ex. C, 189:2–5, 206:3–11.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 39**

Disputed.  Ms. Lawson attributed ████████████████████████ and could not identify any jobs she had lost as a result, nor did she seek medical attention for ██████████



**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 40**

Hathaway was ████████████████ as a result of the sex trafficking venture.  (Hathaway

Dep., Ex. F, 149:19–25.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 40**

Disputed.  The reference to "the sex-trafficking venture" is argumentative and not appropriate for

a Rule 56.1 Statement of Undisputed Facts. ████████████████████████████

████████████████ and Ms. Hathaway has not provided any medical evidence as to why

████████████████████████████████

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 41**

Hallman did not recall when exactly she was contacted by ████ (Hallman Dep., Ex. B, 61:7–19.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 41**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 42**

Hallman travelled to New York on August 22, 2016 using a first-class round-trip plane ticket with

a return ticket for August 23, 2016, purchased for Hallman by Ms. Powers, using money that came

from Rubin, on August 18, 2016.  (JLA Decl. Ex. 15; Ex. 10 at p. 1 (8/22/16 messages); (Rubin

Dep., Ex. L, 64:19–65:4, 159:7–167:8.).

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 42**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 43**

Hallman does not recall the terms of the contract that she signed and was not familiar with non-disclosure agreements at the time she signed, and does not typically sign her name ███████

████████ as is the case on the document presented by Defendant Powers.  (Hallman Dep., Ex. B, 106:11–25, 108:18–109:14.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 43**

Disputed.  Ms. Hallman testified that she had previously signed her name ███████████

███ and that she had no reason to think that the document presented by Ms. Powers' attorneys was not the document she admittedly signed on August 22, 2016. (Ex. 79, Hallman Depo. at 109:16–21.)  Ms. Hallman had previously agreed to sign an NDA in the course of her dealings with a potential customer in 2015. (Ex. 79, Hallman Depo. at 122:14-23.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 44**

On August 22, 2016 at 11:28 p.m., Mr. Rubin wrote to Ms. Powers on WhatsApp about Ms. Hallman and Ms. Lawson: "They were great, fun and sexual" and, that, Hallman and Lawson were "Not ''repeats'" and "They're not pretty, but fun and nice and sexually."  (JLA Decl. Ex. 6 at JP_0000048.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 44**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 45**

Hallman could not remember anything that she said to Powers concerning her August 22– 23, 2016 encounter with Rubin.  (Hallman Dep., Ex. B, 355:8–15.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 45**

Disputed.  Although Ms. Hallman claimed that she did not remember sending any of the WhatsApp messages to Ms. Powers, in fact she told Ms. Powers in writing that she felt "great," that her encounter with Mr. Rubin was "so much fun," and that it was "unreal crazy wild fun stuff." (Ex. 79, Hallman Depo. at 160:2-12; 161:4-17; Ex. 10 at JP_0000163, pp. 1-2.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 46**

Hallman does not recall writing or leaving a note that Powers claims she found in the apartment after Hallman's August 22–23, 2016 trip.  (Hallman Dep., Ex. B at 168:2–172:10.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 46**

Disputed.  Hallman testified that she might have written the note, and she acknowledged that the note was written in what looked like her handwriting. (Ex. 79, Hallman Depo. at 168:12-169:20.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 47**

On September 19-20, 2016, Powers volunteered to make travel arrangements for Ms. [Hallman] and Ms. [Caldwell] to travel to New York and was not instructed by Rubin to do so.  (JLA Decl. Ex. 6 at JP_0000051 (". . .  I'll reach out to [REDACTED] and [Hallman] and [Caldwell]").)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 47**

Disputed.  On September 19, 2016, Mr. Rubin instructed Ms. Powers that he was going to see "[Hallman] fri[day]."  Ms. Powers replied "Ok!  I will reach out to . . . [Hallman]!"  On September

20, 2016, at 12:34 PM, Mr. Rubin against instructed Ms. Powers, via texts: "sat – [Hallman] and [Caldwell]," and Ms. Powers replied "Check!" and "I'll reach out to . . . [Hallman] and [Caldwell]." It was only after these two texts from Mr. Rubin that at 12:45 PM on September 20, 2016 Ms. Powers reached out to Ms. Hallman, saying "Hi there!! I hear you're coming back to NY Sat!!" (Ex. 88 at JP_0000051; Ex. 10 at JP_0000163, p. 2.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 48**

Hallman texted Powers on September 25, 2016, at 12:52 p.m.  "crazy night lol" and Powers responded, "HA!!!  Sounds fun, but yeah a crazy shit show!!"  (JLA Decl. Ex. 10 at p. 2-3.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 48**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 49**

On September 25, 2016, Rubin wrote to Powers on WhatsApp: "[Caldwell's] boobs were bruised" and Powers responded that "Oh noooo, [Hallman's] been sick all night.  [Caldwell] has been taking care of her…no sleep."  (JLA Decl. Ex. 6 at JP_0000055.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 49**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 50**

On September 26, 2016, Hallman sent Powers a picture and commented "She's worried," to which Powers responded, "[emoji][emoji][emoji] I know.  Speaking to her now Thank you for being a good friend . . . She'll be OK, don't worry.  [emoji] . . .  Are you with [Caldwell] now? . . .  I need her address, want to send her some stuff I've found to be helpful."  (JLA Decl. Ex. 10 at p. 3.)

**<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 50</u>**

The texts are acknowledged, but Ex. 10, 3 does not include a picture.  Ms. Powers does not know

what picture is referenced here, but no picture has been authenticated as being Caldwell's breasts

in this litigation.


**<u>PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 51</u>**

Lawson believed that if Rubin "liked us, we'd get paid." (Lawson Dep., Ex. C, 305:3–7.)

**<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 51</u>**

Acknowledged.


**<u>PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 52</u>**

Speight believes she may have told Powers about injuries caused by Rubin.  (Speight Dep., Ex. J

at 289:4–8.)

**<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 52</u>**

Disputed.  Ms. Speight testified that she could not remember ever telling Ms. Powers about any

injuries, but added the self-serving testimony that she "might have."  She could not remember

when she "might have" told Ms. Powers about an injury—even the year in which she might have

told Ms. Powers—or what particular injury she "might have" told Ms. Powers about. (Speight

Depo. at 288:25-289:16.)  All text messages between Powers and Speight were produced in this

litigation, and Speight never told Ms. Powers about being injured via text, despite texting her after

almost every encounter with Rubin.  (*See generally* Ex. 29 at JP_0000153, Ex. 30 at JP_0000152.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 53**

Rubin also asked Powers to ███████████████████████████████████ and Powers
responded ████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████ Rubin responded asking ██████████████████████████████

███████████████████████ to which Powers responded.██████████████████

███████████████████████████████ Rubin responded that ███████████

██████████████████████████████████ (JLA Decl. Ex. 6 at JP_0000076.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 53**

Acknowledged. ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 54**

On April 26, 2016, Speight told Powers, "I ████████████ last night with H and I am super
messed up. I am not sure what happened.  I made it to the airport.  I did not want to miss my flight,"
to which Powers responded, "You ███████ ████████████████████ !!!!!!!!! Do you
remember speaking to me?"  (JLA Decl. Ex. 29 at p. 7.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 54**

Acknowledged.  Speight did not have sex with Mr. Rubin during this trip.  (Ex. 29 at JP_0000153,
p. 7; Ex. 88 at JP_0000033.)


**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 55**

Rubin and Powers maintained and harbored Hathaway by permitting her to stay at the apartment
or otherwise paying for her to stay in a hotel.  (Hathaway Dep., Ex. F, 91:21–92:6.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 55**

Disputed.  The words "maintained and "harbored" are legal conclusions not appropriate for a Rule 56.1 Statement of Undisputed Fact: such acts do not fall within the scope of 18 U.S.C. 1591 without coercion, which was not present here.  And because the Apartment was rented by Mr. Rubin, and he was paying for any hotel rooms, Ms. Powers did not "permit" or "pay for" Ms. Hathaway to do anything. (Ex. 78, Rubin Depo. at 156:7-157:4.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 56**

████ assisted in transporting Fuller from Las Vegas to New York, and then to Florida, where Fuller was originally planning on traveling.  (Fuller Dep., Ex. D, 91:15–19, 94:8-17.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 56**

Disputed.  The word "transporting" is a legal conclusion not appropriate for a Rule 56.1 Statement of Undisputed Fact: such act does not fall within the scope of 18 U.S.C. 1591 without coercion, which was not present here.  More importantly, Ms. Fuller testified that she could not recall whether Ms. ████ assisted her in booking her travel. (Ex. 83, Fuller Depo. at 94:16-21.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 57**

Powers paid Plaintiff Fuller in 2016 on behalf of the sex trafficking venture and even though Powers did not book Fuller to travel to New York or have Fuller sign the non-disclosure agreement. ████████ another of Rubin's workers in the trafficking venture, contacted and recruited Fuller.  (Fuller Dep., Ex. D, 76:16–20.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 57**

Disputed.  The references to "the sex-trafficking venture," "Rubin's workers in the trafficking venture," and "recruited" are argumentative statements not appropriate for a Rule 56.1 Statement

of Undisputed Facts.  The act of "recruiting" does not fall within the scope of 18 U.S.C. 1591 without coercion, which was not present here.  Acknowledged that █████ contacted Fuller and invited her to New York. (Ex. 83, Fuller Depo. at 78:12-21, 91:15-25; Ex. 65, █████-Fuller Text Messages at HR000578.)  Acknowledged that Powers sent $2,500 to Fuller via PayPal on March 11, 2016.  (Ex. 3).

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 58**

█████████, another of Rubin's workers in the trafficking venture, contacted and recruited Fuller.  (Fuller Dep., Ex. D, 76:16–20.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 58**

Disputed.  The references to "Rubin's workers in the trafficking venture" and "recruited" are argumentative statements not appropriate for a Rule 56.1 Statement of Undisputed Facts.  The act of "recruiting" does not fall within the scope of 18 U.S.C. 1591 without coercion, which was not present here.  Acknowledged that █████ contacted Fuller and invited her to New York. (Ex. 83, Fuller Depo. at 78:12-21, 91:15-25; Ex. 65, █████-Fuller Text Messages at HR000578.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 59**

Defendant Rubin and █████ had Fuller sign the non-disclosure agreement, and not Powers. (Fuller Dep., Ex. D, 113:9–22.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 59**

Disputed.  The use of "had" is argumentative and inappropriate for a Rule 56.1 Statement of Undisputed Facts.  Acknowledged to the extent Rubin and █████ presented a Confidentiality Agreement and Release to Fuller and Fuller voluntarily signed it because she wanted to stay. (Ex. 83, Fuller Depo. at 129:10-14.)

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 60**

Rubin and his associates transported Peterson from Los Angeles to New York.  (Deposition of

Rosemarie Peterson ("Peterson Dep."), Ex. G, 60:7–16.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 60**

Disputed.  The references to "Rubin and his associates" and "transported" are argumentative

statements not appropriate for a Rule 56.1 Statement of Undisputed Facts.  Ms. Peterson testified

that her travel to New York in 2011 was arranged by ███████████ Ex. 84, Peterson Depo.

at 60:10-16.)  Neither Mr. Rubin nor Ms. Powers were asked about Ms. Peterson's travels.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 61**

Powers aided Rubin in patronizing Peterson by arranging for her payment.  (Peterson Dep., Ex. G,

369:3–15, 374:19–375:8.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 61**

Disputed.  The words "aided" and "patronizing" are legal conclusions not appropriate for a Rule

56.1 Statement of Undisputed Fact: such acts do not fall within the scope of 18 U.S.C. 1591

without coercion, which was not present here.  The only payment made by Ms. Powers on Mr.

Rubin's behalf was $2000 on June 13, 2017, but Mr. Rubin did not have any sexual encounters

with Ms. Peterson after October 2014, (Ex. 78, Rubin Depo. at 206:7-209:15), or at the very latest

after November 2014. (Ex. 84, Peterson Depo. at 317:16-22.)

**<u>PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 62</u>**

Powers booked flights for at least ██████████████████████████████

██████████████████████████████████████ in addition to the Plaintiffs and

former Plaintiff Caldwell.  (Powers Dep., Ex. A, 85:7–12, 95:7–12., 95:21–96:10, 96:18–24.)

**<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 62</u>**

Disputed.  Ms. Powers did not book any flights for Ms. Peterson or Ms. Fuller, and did not book

all of the flights for the other plaintiffs. *See* Powers' response to statement No. 6 above.

Although Powers booked flights for ████████████████ and former plaintiff

Caldwell, it was Hallman who introduced them to Rubin and coordinated their travels. (Ex. 79,

Hallman Depo. at 183:22-184:11, 224:6-18, 403:11-17, 406:16-407:6, 408:19-23).

**<u>PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 63</u>**

Indeed, between 2011 and 2015, Powers booked flights for between 10 and 30 women to travel to

New York to meet Rubin.  (Powers Dep., Ex. A, 92:25–93:21.)

**<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 63</u>**

Acknowledged.

**<u>PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 64</u>**

Rubin and his associates paid Peterson through PayPal and communicated with Peterson through

Internet-based platforms, like Instagram and WhatsApp.  (Peterson Dep., Ex. G, 61:10– 62:12.)

**<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 64</u>**

Disputed.  The reference to "Rubin and his associates" is an argumentative statement not

appropriate for a Rule 56.1 Statement of Undisputed Facts.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 65**

For her one encounter with Rubin, Fuller was transported from Las Vegas to New York and then Fuller then returned to Florida.  Fuller Dep., Ex. D, 76:16–20, 94:8–17.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 65**

Disputed.  The use of the word "transported" is a legal conclusion not appropriate for a Rule 56.1 Statement of Undisputed Fact: such act does not fall within the scope of 18 U.S.C. 1591 without coercion, which was not present here.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 66**

Powers did not know if she reported the income that she earned from Rubin on her tax returns. (Powers Dep., Ex. A, 31:21–23.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 66**

Acknowledged.

**PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 67**

Powers did not want to hit Hallman with "a ton of bricks" while signing the release and Lawson did not have any questions so Powers did not tell her anything extra.  (Powers Dep., Ex. A, 120:21–122:4.)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COUNTER 56.1 STATEMENT NO. 67**

Disputed.   The phrase "ton of bricks" is taken grossly out of context.   Ms. Powers used to expression to mean that Hallman was already aware she would be signing such a document and therefore it was not a surprise.  Ms. Powers testified: "[Hallman] didn't have any questions.  She actually was very knowledgeable about the release. She understood that she would be signing a release, I didn't hit her with a ton of bricks. She wasn't surprised. And she had no questions for me

in regards to that release." Rather, Ms. Hallman was "very knowledgeable" about the document.

(Ex. 77, Powers Depo. at 120:21-121:7.)

Dated: New York, New York
       March 27, 2019

                          Respectfully submitted,

                          **SCHLAM STONE & DOLAN LLP**

                          By: ___/s/ Douglas E. Grover_____
                              Douglas E. Grover
                              Jeffrey M. Eilender
                              Niall D. Ó Murchadha
                              Jolène F. LaVigne-Albert
                              26 Broadway
                              New York, New York 10004
                              Telephone: (212) 344-5400
                              Facsimile: (212) 344-7677
                              E-mail: dgrover@schlamstone.com
                              E-mail: jeilender@schlamstone.com
                              E-mail: nomurchadha@schlamstone.com
                              E-mail: jlavignealbert@schlamstone.com
                              *Attorneys for Defendant Jennifer Powers*

28