UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
HILLARY LAWSON, KRISTINA :
HALLMAN, MOIRA HATHAWAY, :
MACEY SPEIGHT, ROSEMARIE : **ORDER**
PETERSON, and LAUREN FULLER,[1] :
: 17-cv-6404 (BMC)
:
Plaintiffs, :
- against - :
:
HOWARD RUBIN, JENNIFER POWERS, :
and DOE COMPANY, :
Defendants. :
:
----------------------------------------------------------- X

**COGAN**, District Judge.

Defendant Jennifer Powers has moved for reconsideration of the portion of the Court's July 29, 2019 order that denied her motion for summary judgment on plaintiffs' claims under the Trafficking Victims Protection Act (the "TVPA"). For the reasons stated below, Powers's [294] motion for reconsideration is denied.

1. A motion for reconsideration may be granted where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

---

[1] The names listed in the caption are pseudonyms adopted by plaintiffs pursuant to a protective order. An additional plaintiff, Stephanie Caldwell, initially filed claims in this case too, but the Court dismissed all of her claims for non-prosecution.

2. Powers fails to meet this strict standard. Instead of identifying any decisions or data that the Court overlooked, Powers primarily rehashes arguments that Court already rejected in its July 29, 2019 order. But even if the Court considered the arguments again *de novo*, it would deny this motion.

3. Powers contends that even if she knew that women sustained injuries during their encounters with Rubin, she did not know that these women, including plaintiffs, did not consent to these encounters. The problem with Powers's argument is that it requires the Court to draw inferences in her favor, which is the opposite of what the Court must do in adjudicating her summary judgment motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Upon reviewing the evidence that plaintiffs adduced, a reasonable juror could conclude that Powers knew– or recklessly disregarded – or was willfully blind to the fact – that plaintiffs did not consent to their encounters with Rubin. See 18 U.S.C. § 1591(a) (providing for liability for "[w]hoever know[s]" or "reckless[ly] disregard[s] … the fact, that means of force, threats of force, fraud, coercion … , or any combination of such means will be used to cause the person to engage in a commercial sex act").

4. Powers also reiterates her view that the Second Circuit's decision in United States v. Marcus, 628 F.3d 36 (2d Cir. 2010), required the Court to grant her motion for summary judgment. In Marcus, the Second Circuit held that "consensual BDSM activities alone could not constitute the basis for" a violation of the TVPA. Id. at 45. Plaintiff relied on Marcus in her summary judgment motion as well, and the Court even cited Marcus in its July 29, 2019 summary judgment order. Thus, Marcus is not a "decision[] … that the court overlooked," Shrader, 70 F.3d at 257, and is not a proper basis for a motion for reconsideration. Nonetheless, the Court will consider Powers's argument on the merits.

5.  Marcus does little to advance Powers's position here because the Court did not hold – and plaintiffs have not argued – that consensual BDSM activities may form the basis for a TVPA violation. Rather, the issue here is whether plaintiffs consented to their encounters with Rubin, and, if they did not consent, whether Powers had notice of their lack of consent. To the extent Powers contends that her knowledge of the injuries that women sustained cannot constitute evidence that she violated the TVPA, her argument has no support in Marcus or in the plain language of the TVPA, which provides for liability for reckless, as well as knowing, participation in sex trafficking. See 18 U.S.C. § 1591(a).

6.  Further, Powers denies that two text messages that the Court cited in its July 29, 2019 order support the proposition that Powers had knowledge of plaintiffs' injuries. First, in one of these messages, Powers tells Rubin that he "beat a hot girl [Speight] and got laid," which Powers interprets as "banter borrowing from BDSM jargon" rather than an acknowledgement of Speight's injuries. But her argument requires the Court to interpret the text message in the light most favorable to Powers, which it cannot do here. See Liberty Lobby, Inc., 477 U.S. at 255. Powers's use of "BDSM jargon" does not preclude a reasonable juror from finding that this text message shows Powers was aware that Rubin was injuring women during their encounters.[2]

7.  Second, in another text message, Powers informs Hallman that Powers would provide "some stuff [Powers] found helpful" to treat injuries that former plaintiff Stephanie Caldwell sustained after an encounter with Rubin. Powers again contends that her knowledge of injuries does not support the inference that the women did not consent to the BDSM activities that led to these injuries. Powers also notes that Caldwell is no longer a party to this action,

---

[2] Powers also disputes whether Speight was actually injured during the encounter with Rubin that Powers referenced in her text message. But this text message is relevant to show Powers's state of mind, i.e. she believed there was a "beat[ing]," regardless of what injuries Speight incurred during this particular encounter.

3

apparently inviting the Court to make the inference that, even if she knew Caldwell was injured, she did not know or recklessly disregard the fact that plaintiffs were injured when engaging in similar encounters with Rubin. Powers's argument fails because it again requires the Court to draw inferences in her favor. See Liberty Lobby, Inc., 477 U.S. at 255.

8. Plaintiff also raises two evidentiary objections related to the text message in which Powers indicates that she found "some stuff [Powers] found to be helpful" for Caldwell. Powers claims that she raised these evidentiary objections by briefly noting the objections in a footnote in her reply in support of her motion for summary judgment. As the Court indicated in its June 11, 2018 order, a cursory reference to an argument in a footnote does not preserve it for a motion for reconsideration since "[f]ederal courts routinely decline to consider issues raised only in a footnote and in a perfunctory manner." Wandering Dago Inc. v. N.Y. State Office of Gen. Servs., 992 F. Supp. 2d 102, 134 (N.D.N.Y. 2014) (internal quotation marks and citation omitted) (collecting cases).

9. Even assuming Powers has not waived these evidentiary objections, the Court rejects them on the merits. First, Powers claims this text message is inadmissible hearsay, but this text message would be excluded from the rule against hearsay under Federal Rule of Evidence 801(d)(2)(A) as a statement by an opposing party. Second, Powers claims that the probative value of this text message would be substantially outweighed by the risk of confusing the issues and unfair prejudice.

10. This text message has high probative value because a reasonable juror could infer from the message that women were injured during their encounters with Rubin, which makes it more likely that Powers knew about or recklessly disregarded plaintiff's lack of consent than if she did not send this text message. See Federal Rule of Evidence 401 ("Evidence is relevant if

… it has any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence … ."). This high probative value is not substantially outweighed by any danger identified in Federal Rule of Evidence 403. To the extent this message is prejudicial, it is only prejudicial because of its probative value. See Costantino v. David M. Herzog, M.D., P.C., 203 F.3d 164, 174-75 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*. The unfairness contemplated involves some adverse effect beyond tending to prove a fact or issue that justifies admission.") (internal citation omitted).

**SO ORDERED.**

                                                                                               _____
                                                                                                                 U.S.D.J.

Dated: Brooklyn, New York
      September 5, 2019