# EXHIBIT A2

Reyes - direct - Balestriere   315

1  A    Yes.
2  Q    Were you at Mr. Rubin's deposition?
3  A    No.
4  Q    What about Ms. Powers, were you at her deposition?
5  A    No.
6  Q    Did you read over any of the deposition testimony of any
7  of the plaintiffs?
8           MR. GROVER:  I object to all of this.
9           THE COURT:  I agree.  Let's get onto the case.
10          MR. BALESTRIERE:  That was my last question.  Thank
11 you.
12 Q    When you met Mr. Rubin, did you have any understanding
13 as to how much money he had?
14 A    No.
15 Q    What about Ms. Powers?
16 A    No.
17 Q    So let's talk about when you met Mr. Rubin.
18          How do you first learn who Mr. Rubin was?
19 A    Through an ex friend named Taren Cassidy.
20 Q    What year was that?
21 A    2016.
22 Q    You called her an ex friend.
23          Were you friends with her in 2016?
24 A    Yes.
25 Q    Do you remember what Ms. Cassidy told you about Mr.

Reyes - direct - Balestriere                316

1   Rubin?
2   A    That it was her friend.  That she wanted me to meet him.
3   Q    Did she tell you why she wanted you to meet him?
4   A    So that I could get some money and -- yeah.
5   Q    What did she tell you would happen when you met him, if
6   anything?
7   A    That he had a dungeon, and that was pretty much how the
8   conversation went.
9   Q    Okay.
10              MR. BALESTRIERE:  Actually, if I can ask that
11  Defendants' 4, which is in evidence, page 3, be put up, Ms.
12  Saydah.
13  Q    You see this is the top text.  At least it begins
14  March 6, 2016, at 9:42 p.m.
15              Do you see that in front of you?
16  A    Yes.
17  Q    There is a name there Taren.
18              Is that the Taren you were just discussing?
19  A    Yes.
20  Q    Then below in the back and forth you see Brittany Reyes.
21              That is you?
22  A    Yes.
23  Q    So, do you see the second text begins, So, I will
24  confirm and get the flight situated if he says yes, and it
25  will be 5K.  It is a little different.  This is the guy that

Reyes - direct - Balestriere                317

1  has a -- I think that is supposed to be dungeon.
2              Is that the conversation or the text exchange that
3  you were just testifying regarding?
4  A    Yes.
5              MR. ROSENBERG:  Your Honor, objection.  This
6  exhibit has not yet been moved in.
7              MR. BALESTRIERE:  Forgive me, your Honor.
8              MR. ROSENBERG:  But we do not object.
9              THE COURT:  What is the exhibit number?
10             MR. BALESTRIERE:  DX04, your Honor.
11             THE COURT:  Received.
12             (Defendant's Exhibit DX04 was marked in evidence as
13 of this date.)
14             MR. BALESTRIERE:  Thank you, Mr. Rosenberg.
15 Q    I will repeat the question.
16             You had talked about some communication or
17 conversation with Taren.  Is this the conversation that you
18 were just testifying regarding?
19 A    Yes.
20 Q    What did you understand "it will be 5K" to mean?
21 A    It would be $5,000.
22 Q    And what about this is the guy --
23             MR. MCDONALD:  Your Honor, can we get this blown
24 up?  We cannot read it.
25             THE COURT:  He is questioning.  You have the

```
                Reyes - Cross/Mr. Rosenberg              359
```

1  A    Yes.
2  Q    And isn't it also true that you went out for walks on
3  several occasions?
4  A    I believe it was just once, but yes.
5  Q    Okay.  And there came a time, then, that Mr. Rubin
6  arrived; correct?
7  A    Yes.
8  Q    And you said he arrived and he brought some food with
9  him; is that right?
10 A    Yes.
11 Q    You said he provided you with the NDA.
12          MR. ROSENBERG:  Withdrawn.
13 Q    You said he provided you with an agreement that you've
14 identified here; correct?
15 A    Yes.
16 Q    And that was, I believe, it's Plaintiff's Exhibit 40?
17          MR. BALESTRIERE:  Yes.
18          MR. ROSENBERG:  Can we put that up?  It's the same
19 as my defense exhibit.  Well, Plaintiff's Exhibit 40 would be
20 fine.
21 Q    ==Now, you testified, this says, if you go, Ms. Palmore,==
22 ==to the second paragraph and highlight it, please.  That's==
23 ==great.==
24          ==It states, In return for the payment after==
25 ==agreed-upon fee, I voluntarily agree to engage in sexual==

Reyes - Cross/Mr. Rosenberg                                360

1  activity with Rubin including sadomasochistic activity that
2  can be hazardous and, on occasion, cause injury to my person.
3              Do you see that?
4  A    Yes.
5  Q    You read that at the time, did you not?
6  A    Yes.
7  Q    Okay.  And so you understood that that could cause the
8  activity you were about to engage in with Mr. Rubin could
9  cause injury to you, correct?
10 A    Could.
11 Q    Could.  Exactly right.  You understood that?
12 A    Could, yes.
13 Q    And you understood that it was sexual activity that you
14 would be engaging in; correct?
15 A    Yes.
16 Q    And you signed that document?
17 A    Yes.
18 Q    You testified also that you had -- you signed it because
19 Mr. Rubin told you that if you didn't sign it you would have
20 to leave; correct?
21 A    Yes.
22 Q    So is it correct that he said that, in substance, if you
23 want to engage in this activity with me you have to sign it.
24 If you don't, you can't stay here; correct?
25 A    That's not what he said.

```
                    Reyes - Cross/Mr. Rosenberg              361
```

1  Q    Isn't that -- okay.
2            I'm not asking you, just so I'm clear, the exact
3  words that he used.  I'm asking you if, in fact, he gave you
4  a choice:  Stay here but sign this or leave; correct?
5  A    Yes.
6  Q    And, in fact, you were free to leave; correct?
7  A    Yes.
8  Q    No one was holding you?
9  A    No.
10 Q    No one was insisting that you stay?
11 A    No.
12 Q    You wanted to stay; correct?
13 A    I don't know.
14 Q    You wanted to make $5,000, didn't you?
15 A    Yes.
16 Q    That's why you come to New York, correct?
17 A    Yes.
18 Q    Just to take a step back.  When you've flown to New
19 York, you've done that voluntarily; correct?
20 A    Yes.
21 Q    And you've done that, no one forced you to do that
22 either?
23 A    No.
24           (Continued on the next page.)
25

Reyes - cross - Rosenberg                              362

1  EXAMINATION CONTINUES
2  BY MR. ROSENBERG:
3  Q    So, you chose to fly to New York and then you chose to
4  sign this agreement, correct?
5  A    Yes.
6  Q    And then you chose to remain in the apartment, correct?
7  A    Yes.
8  Q    And you chose to engage in certain activities with
9  Mr. Rubin, correct?
10 A    Kind of, yes.
11 Q    You testified on your direct examination that you had
12 nowhere to go, do you recall that?
13 A    Yes.
14 Q    And you testified that you were -- that you weren't able
15 to go to a certain apartment in Washington Heights, correct?
16 A    Yes.
17 Q    That's in Manhattan, correct?
18 A    Yes.
19            MR. ROSENBERG:  Could we, please, put up and show to
20 the witness Exhibit D -- Defense Exhibit S as in Sam, 4?
21 BY MR. ROSENBERG:
22 Q    And please tell me, do you see it?
23 A    Yeah.
24 Q    Okay, good.  And do you see that it is an e-mail from you
25 to -- to somebody else named Greg Embitio?