**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

MICHAEL J. GILBERT
mgilbert@sheppardmullin.com
212.896.0611 Direct

March 30, 2022

**VIA ECF**

The Honorable Brian M. Cogan
United States District Court Eastern District of
New York 225 Cadman Plaza
East Brooklyn, New York 11201

Re:  *Moore, et al. v. Rubin, et al.*, 17-cv-06404 (BMC)

Dear Judge Cogan:

On behalf of Howard Rubin, we write to address the arguments we made in support of Mr. Rubin's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 (the "Rule 50 Motion").[1]  For the reasons stated yesterday, there is no evidence in the record to support Plaintiffs' Trafficking Victims Protection Act (the "TVPA") claims.

The TVPA requires proof that a defendant knew that force, fraud, or coercion would be used to cause a plaintiff to engage in commercial sex.  Plaintiffs "must allege that [Mr. Rubin] had an awareness or understanding that 'if things go as he has planned, force, fraud or coercion will be employed to cause his victim[s] to engage in a commercial sex transaction". *Eckhart v. Fox News Network, LLC*, No. 20-CV-5593 (RA), 2021 WL 4124616, at *10 (S.D.N.Y. Sept. 9, 2021) (internal citations omitted) (finding that defendant defrauded the plaintiff by falsely promising her career advancement in exchange of sex).  Plaintiffs simply cannot do that.  The evidence presented in Plaintiffs' case-in-chief, even if viewed in the light most favorable to them, simply does not support a claim that they are victims of sex trafficking.

Plaintiff Natasha Tagai testified that she voluntarily travelled to New York repeatedly, over a seven-year period, to engage in BDSM sex encounters.  It is implausible that she is a victim of sex trafficking within the meaning of the statute.  Her testimony that, on three specific occasions, Rubin engaged in certain activities to which she had not consented (Tr. 236:18-24; 239:2-6) does nothing to alter the conclusion that she was a willing participant in commercial sex.  Mr. Rubin specifically told Plaintiff Amy Moore that the purpose of her trip to New York in August 2016 was to have BDSM sex (Tr. 472:18-474:24).  There is no evidence that Mr. Rubin tricked or defrauded her.  With regard to Ms. Lytell, her testimony, if credited, was that she travelled to New York in August 2016 believing she was only going to have dinner and drinks with Mr. Rubin  (Tr. 694:1-4).  However, there is no evidence in the record—as the TVPA requires—to show that Mr. Rubin knew she was under this misimpression or that he caused her

---

[1] Mr. Rubin adopts the arguments set forth in Jennifer Powers' Rule 50 Letter (ECF Dkt. No. 384), to the extent applicable to him.

Page 2

to be.  Just the opposite.  Just like Mr. Rubin informed Ms. Moore of the specific nature of the trip to New York, he told Ms. Lytell, before she travelled to New York, that it was "total BDSM" and that he looked forward to "beat[ing]" her (Tr. 702:16-24).  Plaintiff Brittany Reyes (Tr. 360:7-15; 374:6-22), Plaintiff Emma Hopper (Tr.981:10-12; 1046:22-1047:14; 1048:6-18), and Plaintiff Brittany Hassen (Tr. 1123:10-1124:4; 1127:2-4; 1127:18-19) all admitted to voluntarily engaging in commercial sex with Mr. Rubin.

Moreover, the evidence establishes that the particular type of commercial sex in which the Plaintiffs agreed to participate was BDSM, which, by its very nature, involves force.

Plaintiffs' testimony that certain of the specific activities that occurred during their BDSM commercial sex encounters went beyond the level or type of force to which they consented, does not support a claim that they were "trafficked."  To the extent such non-consensual activities occurred, they did not constitute "commercial sex" since the Plaintiffs did not agree to be paid for those activities to which they did not consent.

Put simply, the TVPA does not apply to the evidence Plaintiffs have produced.  The TVPA imposes liability on those who force victims into prostitution.  The statute is designed to punish "traffickers" in sex trade, not mere solicitants of consensual prostitution.  *See, e.g.*, *Fierro v. Taylor*, No. 11 CIV. 8573 (BSJ), 2012 WL 13042630, at *3 (S.D.N.Y. July 2, 2012) (finding that the TVPA is inapplicable to a defendant who merely is an individual purchaser of sex—even if he is a purchaser of sex from trafficked victims—and not an actual trafficker).  "[I]t can be inferred that 'trafficking is a form of servitude, which means the reach of the statute extends to the traffickers who habitually enslave children, not the one-time purchaser of the trafficked person's services." *Id.*  "The term 'traffickers' is used often to refer to individuals who lure and entice women and children from underdeveloped countries to become slaves or prostitutes in America." *Id.*, *see also Lundstrom v. Choice Hotels Int'l Inc.*, 2021 WL 5579117 at *1 (D. Colo. Nov. 30, 2021) (the TVPA was applicable because "plaintiff was 'forced to provide sexual services to strangers for her traffickers' financial gains' for over two years"); *H.G. v. Inter-Continental Hotels Inc.*, 489 F.Supp.3d 697, 700 (E.D. Mich. 2020) (finding sex trafficking under the TVPA because "at all times that [plaintiff] was 'kept' at the hotels, 'her trafficker or one of his partners was stationed downstairs in the lobby in public view, standing surveillance as [plaintiff] repeatedly serviced buyers of commercial sex'").

Mr. Rubin cannot be held liable under the statute.  There is no evidence that he forced Plaintiffs into prostitution.  As a matter of law, the plaintiffs were not victims of sex trafficking.  Plaintiffs' TVPA claims must be dismissed pursuant to Federal Rule of Civil Procedure Rule 50.

Page 3

Respectfully submitted,

Michael J. Gilbert, Partner
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza, Floor 39 New York, NY 10112-0015
Tel.: 212.896.0611 direct
E-mail: mgilbert@sheppardmullin.com

CC: All Counsel of Record (via ECF)