1804

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK

2
     ------------------------------x
3                                        17-CV-6404(BMC)
     AMY MOORE, MIA LYTELL,
4    NATASHA TAGAI, EMMA HOPPER,
     BRITTANY HASSEN and BRITTANY
5    REYES,
                                         United States Courthouse
6            Plaintiffs,                 Brooklyn, New York

7            – versus –                  April 2, 2022
                                         2:00 p.m.
8    HOWARD RUBIN and JENNIFER
     POWERS,
9
             Defendants.
10
     ------------------------------x
11
                  TRANSCRIPT OF CIVIL CAUSE FOR TRIAL
12                BEFORE THE HONORABLE BRIAN M. COGAN
                  UNITED STATES SENIOR DISTRICT JUDGE
13                        BEFORE A JURY

14   APPEARANCES

15   Attorney for Plaintiffs: BALESTRIERE FARIELLO
                              225 Broadway
16                            29th Floor
                              New York, New York 10007
17                            BY:  JOHN G. BALESTRIERE, ESQ.

18
     Attorney for Defendant:  DECHERT LLP
19   Howard Rubin             1095 Avenue of the Americas
                              New York, New York 10036-6797
20                            BY:  BENJAMIN E. ROSENBERG, ESQ.
                                   KATHERINE BOY-SKIPSEY, ESQ.
21

22

23

24

25

                    *LINDA D. DANELCZYK, RPR, CSR, CCR*
                        *Official Court Reporter*

1805

```
 1   APPEARANCES (CONTINUED)

 2   Attorney for Defendant:    SHEPPARD MULLIN RICHTER
     Howard Rubin              & HAMPTON, LLP
 3                             30 Rockefeller Plaza
                               New York, NY 10112
 4                             BY:  MICHAEL J. GILBERT, ESQ.

 5
     Attorney for Defendant:    SCHLAM STONE & DOLAN LLP
 6   Jennifer Powers           26 Broadway
                               New York, New York
 7                             BY:  RICHARD DOLAN, ESQ.
                                    JOLENE LAVIGNE-ALBERT, ESQ.

 8

 9

10   Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                               Phone:  718-613-2330
11                             Fax:    718-804-2712
                               Email:  LindaDan226@gmail.com

12

13   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25
```

CHARGE CONFERENCE                                          1806

1          In open court; all present via videoconference.)

2          THE COURT:  Okay.  We are here for our charging

3    conference.  I just want to make sure, Linda, you're there?

4          Let me say couple of things about what we're going

5    to do this afternoon that might shorten it.

6          First of all, I think the major disagreement on the

7    law that we have has been covered both orally in the

8    Defendants' Rule 50 motion, and in the submissions of proposed

9    jury instructions and briefing on those instructions that have

10   been exchanged most recently within the last ten minutes.

11         The proposed charge that I sent around last night is

12   my view of the law on that, and I know in most ways it's in

13   opposition to the defendants here.

14         Because everything that's been discussed on that

15   issue, whether orally or in writing is in the record and is in

16   the proposed markups, everyone should assume that to the

17   extent I have not adopted that which you wanted me to adopt,

18   that means I have rejected it.  Okay?

19         As far as I'm concerned, you have fully preserved

20   your rights on those issues by having submitted the proposed

21   jury instructions and having the arguments that you've made

22   rejected.  So I don't think we need to rehash that again.

23         On the other hand, if, particularly the defendants,

24   but anyone wants to take one last shot of talking me out of

25   it, I won't stop you, I'm just saying for purposes of

1    preserving the objection, I think you're already fully

2    protected and so we don't have to do that.

3              One thing I will do, because we just got this a few

4    minutes ago, is with regard to letter a few minutes ago from

5    Mr. Rubin's counsel, let me just go through the line items on

6    that to confirm what I think we all understand is the Court's

7    position on where this comes out.

8              First, going by the numbers in that letter, I'm

9    talking about the April 2nd, 2022 letter that was filed at --

10   just a few minutes ago, I'm rejecting proposed addition or

11   objection number one.

12             I'm rejecting proposed addition number two because I

13   think it's way overbroad.  There are certainly some things you

14   can offer people money for that would still amount to coercion

15   notwithstanding the offer of money.  So I'm rejecting that.

16             I'm rejecting the objection at paragraph number

17   three for the same reason.

18             And I'm just looking at this a second.  Yes, I'm

19   rejecting the proposed addition at paragraph 4 for what I

20   think is the same reason.  I just think that's not part of

21   this particular statute.  I think as a general mens rea

22   statute, intending to do the act is enough.

23             With regard to number five on this letter, I'm

24   inclined to add that with the following modification.

25             Because BDSM may involve the use of harmful or

CHARGE CONFERENCE                    1808

1    offensive bodily contact, the fact that there was such contact

2    during a BDSM encountered, adding, comma, by itself, comma,

3    does not mean that there was an assault.

4             And I would do the same thing, the same modification

5    with regard to proposed paragraph 6.  That deals with the

6    battery charge.  So I would add that in there as well.

7             Now, that's the procedure I want to use.  I don't

8    want people to feel they have to object to every line in the

9    instructions when we all know where we're coming out on this

10   and it's on the record.

11            If anybody disagrees with that procedure, tell me

12   now.

13            (No audible response heard.)

14            THE COURT:  Okay.

15            All right.  Then what I'd like to do is just for the

16   sake of good order, go through the charge I sent you last

17   night and make sure we're all on the same page with regard to

18   any additional objections you might have that we have not gone

19   over or you haven't had a chance to put in because it's been,

20   you know, as usually the case with a charging conference, a

21   somewhat hurried process.

22            So the first question I'll ask is, as to the

23   preliminary instructions, which go up through the middle of

24   page 10, any further errors or modifications I need to make to

25   that?

CHARGE CONFERENCE                     1809

1          MR. BALESTRIERE:  Not from plaintiffs, Your Honor.

2          MR. ROSENBERG:  None from Defendant Rubin, Your

3   Honor.

4          MR. DOLAN:  For Defendant Powers, we just asking for

5   a standard falsus in uno charge.

6          THE COURT:  Well, that's a good question.

7          How does the plaintiff feel about that?

8          MR. BALESTRIERE:  I think it's -- I really defer to

9   the Court.

10         I'm not the biggest fan of that charge, just it's so

11  and lawyerly and legal, if we're giving let's say like the PJI

12  charge.  But I certainly -- both sides are going to argue that

13  witnesses on the other side lied regarding the particular

14  thing and thus we're going to make the argument that because

15  they lied about X or Y, they lied about other relevant things,

16  so I really just defer to the Court.

17         I simply don't like it in the charge in general,

18  Your Honor, having sat there and seen many glazed eyes of

19  jurors over the years, but I defer to the Court.

20         THE COURT:  All right.  Mr. Dolan, I'm going to

21  reject the request for the same reason that I'll tell you in a

22  minute I'm rejecting the plaintiffs' proposed spoliation

23  request.

24         To the extent it's not ambiguous, and I really think

25  the Circuit has -- it hasn't prohibited it but it said it's

CHARGE CONFERENCE                    1810

1   really not appropriate in every case.

2            I think it would focus the jury here on something

3   they're already focused on, so there's no reason to do that.

4            While -- sorry, go ahead.

5            MR. ROSENBERG:  No, Your Honor, I apologize.  I

6   didn't mean to interrupt.  I think I missed -- I've misspoken

7   or I remembered something when Your Honor talked about the

8   general rules.

9            There's one point I do want to make.  I do not know

10  if it should be here or later, but that's about the deposition

11  testimony and the propriety of having a defendant attend a

12  deposition.

13           I think we proposed earlier language to that, I'll

14  find that, and we would request that that be included.

15           THE COURT:  Well, I'll put in something on that, but

16  I'm also going to include in it the words "by itself"; that is

17  to say, the parties have the right to attend each other's

18  deposition, and there is no impropriety in doing that by

19  itself or something like that.  I'll put that in.

20           Because I don't want the jury to think there's

21  anything wrong with the parties being there when they're

22  expressly allowed to be there, and I don't think the jury

23  knows that as a matter of course.

24           MR. ROSENBERG:  Right.

25           THE COURT:  Okay.  Let me just mention, with regard

CHARGE CONFERENCE

1  to the spoliation instruction, the reason I'm not getting into

2  that, again I think it's a discretionary charge, is because

3  while I think the plaintiff has made a possible, maybe even a

4  plausible case of spoliation, for the Court to put its

5  imprimatur on it, would emphasize that issue in the case to a

6  degree that I think is not appropriate.

7          That's particularly the case, because if there was a

8  spoliation of the kind that Mr. Balestriere discussed in his

9  last questioning of Ms. Powers, it's not that the plaintiffs

10  have been inherently prejudiced by it.  I think we all know

11  exactly what that room looked like before the furniture and

12  the implements were taken away.

13          So the fact that even if Ms. Powers did something

14  that she shouldn't have done in an overall protective way, I

15  don't think the plaintiffs have been prejudiced by it.  So

16  that's why I'm not giving that instruction.

17          MR. BALESTRIERE:  Thank you for your consideration,

18  Your Honor.

19          THE COURT:  Okay.  And then having gotten through

20  the preliminary part of the instruction, I will go page by

21  page through the legal elements, just in case there's

22  something I missed, but pardon me for emphasizing, again,

23  please don't feel compelled to repeat what you've ever told

24  me, because I know it and I've rejected it, and your objection

25  is preserved, as far as I'm concerned.

CHARGE CONFERENCE                          1812

1        Okay, anything else on the bottom of page 10?

2        Instead of giving a negative response from each

3   party, I'll wait a few seconds, and if I don't hear anything,

4   I'll just go on to the next page.

5        So my understanding is no further objections on

6   page 10.

7        MR. DOLAN:  Hold on -- one minute.

8        For Ms. Powers, I think at the bottom of page 10.

9   As I understand it, the claim against her is on the second

10  prong of 1591, the benefiting financially prong.  And I think

11  what it should say is that she committed sex trafficking by,

12  and inserting the words "participating in a venture knowing

13  that force, fraud, and coercion will be used," et cetera.

14       THE COURT:  All right, Mr. Balestriere, what do you

15  think of that?

16       MR. BALESTRIERE:  No objection, Your Honor.

17       MR. DOLAN:  Your Honor, you want us to submit a

18  redline proposing it, or how do you want to handle it?

19       THE COURT:  I'm going to rely on my law clerk's fast

20  pen, and then also on the court reporter's fast transcript, so

21  I don't think that's necessary.

22       We'll distribute the charge again tomorrow, and

23  there will not be a chance to get another bite at the apple,

24  but if you think there's something in this conversation that I

25  said I would do and that charge doesn't do it, then you can

CHARGE CONFERENCE                    1813

1    write me a letter and tell me why.

2              MR. DOLAN:  Sure.

3              THE COURT:  Okay.

4              Anything on page 11?

5              MR. DOLAN:  Again, yes, Judge, under the first

6    element when you're talking about -- talking about the

7    benefiting financially thing.  I think it should say after

8    one, two, three -- third line on the first, where it says --

9    paragraph meaning first, "in a venture that" and I would

10   insert "has engaged in," and then the verbs all become I-N-G

11   as opposed to E-D.  And that just tracks the statute.

12             THE COURT:  I assume you have no objection to that,

13   Mr. Balestriere?

14             MR. BALESTRIERE:  I do not, Your Honor.

15             THE COURT:  Okay.  Anything else on page 11?

16             (No audible response heard.)

17             THE COURT:  Page 12.

18             MR. BALESTRIERE:  Yes, Your Honor, at the bottom, I

19   think -- and this is probably, given how Your Honor begins the

20   charge conference, pretty much the only thing I will be

21   talking about, I do think there are times where the language

22   doesn't exactly track the statute, specifically with the

23   listing of force, threat of force, fraud or coercion.

24             So here at bottom of page 12, after that force, I

25   think what should be listed is threat of force.  And that's

CHARGE CONFERENCE                    1814

1    the paragraph that begins "third".  I think it's line 20.

2              THE COURT:  I see it.

3              So you're suggesting that that clause should read

4    force, threat of force, fraud or coercion?

5              MR. BALESTRIERE:  Yes, Your Honor, I think as we go

6    through, there's a couple of times I will ask for something

7    similar.

8              THE COURT:  Okay.  What's the threat of force that

9    you see here?  I'm not sure I see the fraud, but you can argue

10   it, and I'm not sure I see the coercion, but you can argue it.

11             But what's the threat of force?

12             MR. BALESTRIERE:  The threat of force would be, at

13   least specifically with regards to Ms. Moore in the

14   August 2016 encounter, as we've been using that term, where

15   she testified that she was told to assault Mia Lytell.

16             She pretended to do so, did not do so, but then

17   Mr. Rubin hit her and then threatened to hit her more unless

18   she actually did assault Ms. Lytell.

19             THE COURT:  I really don't recall that testimony so

20   specifically, which is not surprising.

21             Do any of the defendants have a different

22   recollection of that testimony?

23             MR. ROSENBERG:  Your Honor, I'm afraid I don't have

24   a specific recollection of that testimony.

25             THE COURT:  Okay.  I'm going to put it in, and if

CHARGE CONFERENCE                    1815

1    the defendants believe that it mischaracterizes the testimony

2    as just described to us by Mr. Balestriere, then you'll send

3    me a letter tomorrow and I'll look at the testimony.

4           I assume Mr. Balestriere is properly characterizing

5    it, but I recognize we can't all start reading transcripts, so

6    you'll let me know tomorrow if that's wrong.

7           MR. BALESTRIERE:  Mr. Rosenberg and I can talk.  If

8    I stand corrected, then we'll so note.

9           THE COURT:  That's fine.

10          MR. DOLAN:  Judge, for Ms. Powers on the same

11   paragraph.  And your comments may have meant to reject this,

12   I'm really not sure.

13          There's a required timeline connection between the

14   recruiting and enticing, et cetera, and the knowledge saying

15   that this is addressing.

16          And that element is completely missing.  I addressed

17   it in my letter.

18          THE COURT:  Here was my thinking on it, and you tell

19   me why I'm wrong.

20          I think you're right that there's a timeline

21   requirement, and at some point the time will become so

22   attenuated that the Court has to take it away from the jury.

23          But I think because I'm giving it to the jury here,

24   it's for you to argue that the time connection is not there,

25   rather than for me to instruct.

CHARGE CONFERENCE                                1816

1          Why is that wrong?

2          MR. DOLAN:  Because the jury has to find as a fact

3    that at the time the recruiting was going on, the defendant

4    already knew the prohibited stuff.

5          Because in this statute, all the work is being done

6    by the clause that begins "knows or in reckless disregard of

7    the fact that," and it goes on.

8          Recruiting -- I mean, they could be recruiting to

9    join the Girl Scouts.  That's not a crime.  All the real work

10   is being done in this one phrase, "knows or in disregard of

11   the fact that force will be used to cause someone to engage in

12   a commercial sex act."

13         And that's what's missing here.  It's really the

14   connection being that the defendant has to know this to make

15   the recruiting itself a crime.

16         And particularly with my client, the reality is

17   she's not -- I don't see the evidence.  I mean we'll certainly

18   argue this, whether there is or isn't evidence, but the jury

19   has to know that this is an element that's part of the

20   plaintiffs' burden to establish, and it's just totally missing

21   from this charge.

22         THE COURT:  Tell me the language that you would put

23   in and where you would put it?

24         MR. DOLAN:  Sure.  You can do it either here or in

25   the first element.  I think here is the more logical place,

1   frankly, and what I would stick in is, after the word "third",

2   quote, at the time the defendant engaged in the recruiting --

3   and how many of those verbs you want to repeat there -- or

4   benefited financially from participating -- again, how long

5   you want to make that phrase -- the defendant must have known

6   or recklessly disregarded the fact that, and then it goes on

7   force, fraud, et cetera will be used blah, blah, blah.

8           THE COURT:  So it's really just "at the time" that

9   you're adding.

10          MR. DOLAN:  Yes, it's adding the time element.

11          THE COURT:  Mr. Balestriere, what do you think?

12          MR. BALESTRIERE:  If I can ask Mr. Dolan to say it

13  again.  I understand this is would be at the bottom of page 12

14  after "third".

15          Can you say it, again, Mr. Dolan?

16          MR. DOLAN:  Sure.  I will go slow.  It's not my

17  norm.

18          At the time that a defendant engaged in the

19  recruiting, et cetera -- how many verbs you want to use -- or

20  benefited financially from participating in the venture, the

21  defendant must have known, or recklessly disregarded the fact

22  that force, fraud -- and using your word -- threats of force

23  or coercion will be used to cause the plaintiff to engage in a

24  commercial sex act, in which the plaintiff would not have

25  willing engaged.

CHARGE CONFERENCE                    1818

1          MR. BALESTRIERE:  I think I'm fine with that, Your

2    Honor.  And I know Mr. Dolan said it depends how many of those

3    adjectives you want, but I do think, you know, here there's an

4    argument that, well, I think the evidence shows that

5    Ms. Powers knew even at the time of the transporting, there

6    was also payment made afterwards, which I think we would argue

7    is part of the recruiting.

8          So I think which verbs are used there are important.

9    I don't want to overload that sentence with all of those as

10   well, so that is my concern.  Meaning the "at the time" I

11   don't have a problem with, it's just ensuring that we're

12   talking about any time at the time.

13         THE COURT:  Right, and I think the way to do that is

14   to, instead of repeating the various words, just to say "any

15   of the acts just mentioned," okay, and then I won't have to

16   repeat them.

17         MR. BALESTRIERE:  That's fine with plaintiffs, Your

18   Honor.

19         THE COURT:  Okay.  Anything else on 12?

20         (No audible response heard.)

21         THE COURT:  Okay, 13?

22         MR. BALESTRIERE:  Yes, Your Honor, I would want to

23   add in the fraud provision where -- and, again, maybe my lines

24   might be slightly off, but I think this is still line 20,

25   where, before this it begins:  "To the extent any plaintiff

1    claims that a defendant used fraudulent means, she must prove

2    that the allegedly fraudulent statement," I would want to add

3    "or the omission" was material.

4           Omission is, of course -- an omission of a material

5    statement could be part of fraud and, in fact, Your Honor even

6    includes it in the fraud definition earlier.

7           THE COURT:  I'm inclined to do that, because I don't

8    think the jury understands that legally making a fraudulent

9    statement, and the omission of something that makes the

10   statement fraudulent, are legally equivalent.

11          Any objection from defendants?

12          Okay.

13          MR. ROSENBERG:  We do not object.

14          MR. DOLAN:  We don't either, Judge.

15          We have a couple on this page as well.

16          Throughout the charge, Your Honor, you have

17   substituted the verb "would" but the statute uses the verb

18   "will", that's kind of a universal, and we think fidelity of

19   the text requires using what the statute uses.  I think

20   there's actually a difference in meaning between the two.  I

21   could go into that, but I think you understand it, and so

22   that's one.

23          And the -- and this is really on the -- at least on

24   the version I'm looking at, on the top of 13.

25          And, two, in the reckless disregard charge here, I

1    think what Your Honor's picked up is a definition of reckless

2    disregard that's frequently used in a negligence kind of case,

3    where foreseeability and those kind of concepts are in play.

4            Here what the statute talks about is reckless

5    disregard of what the statute calls "the fact," and so I think

6    what this should simply say is reckless disregard the act --

7            THE COURT:  Slow down.

8            MR. DOLAN:  Sure.

9            Reckless disregard here means -- and I continue just

10   with your words -- until in disregard of a known, I'd strike

11   what's comes next and just stick in the word "fact".  Because

12   that's what the statute says.

13           THE COURT:  Sounds right.

14           Mr. Balestriere?

15           MR. BALESTRIERE:  Just reading it, Your Honor.

16           I prefer what you have here, Your Honor, because I

17   do think it embraces what I think the statute talks about.  I

18   think a known fact or obvious risk, I think I would be fine

19   with.  But I do think the obvious risk --

20           MR. DOLAN:  If I could respond briefly, Judge.

21           Again, that's not what the statute says.  It defines

22   what the fact it, and it doesn't define it in terms of risk or

23   foreseeability or probability or anything else.

24           THE COURT:  Okay.  I'm going to go with the language

25   of the statute and, therefore, accept Mr. Dolan's proposed

1   amendment.

2          I'm also going to change the "woulds" to "will"

3   because "would" is almost equivalent to "might," and might is

4   not good enough for the statute.

5          MR. BALESTRIERE:  I made an error of omission, Your

6   Honor.  There's also threat of force that should be added at

7   the top of 13.

8          So, again, just tracking the change I wanted at the

9   bottom of 12, force, threat of force, fraud, or coercion.  Top

10  of 13, force, threat of force, fraud, or coercion.  Same logic

11  as before.

12         THE COURT:  In the statutory charge, we will do a

13  global search and replace "force, comma, fraud" and insert

14  "threat of force" between them.

15         MR. BALESTRIERE:  Thank you, Your Honor.

16         THE COURT:  Okay.

17         Anything else on 13?

18         MR. DOLAN:  One more for us.

19         On that page, you have a definition of force, and

20  it's just a short one.  This is more, a little bit of

21  organizing what you said.

22         In the consent charge, which comes a little bit

23  later, you have a discussion about BDSM is not itself

24  necessarily a violation.

25         I think that actually belongs here, because the

1  distinction with BDSM involving force doesn't particularly

2  relate to the concept of consent.  It clearly relates to the

3  concept of force, as you're defining it here.  And I think it

4  just works better here.  And I would change the wording of it

5  slightly, only a couple of words, but that's my first point.

6        And on the -- and when you talk about the BDSM

7  thing, and I think there is mostly from the *Marcus*,

8  M-A-R-C-U-S, case, it says -- you give a definition of

9  bondage, discipline, domination, submission, sadomasochism and

10 then, in quotes, "BDSM that" -- the current text says "may

11 involve".  I would change it, particularly in light of this

12 case, "to often involves the use of force or actual physical

13 restraint," and then get rid of the next three words and

14 insert "as well as the infliction of physical pain."

15       And then two lines down from that, you say "a BDSM

16 act does not automatically mean", I would drop the word

17 "automatically".

18       THE COURT:  Well, I would put in "by itself," as

19 opposed to "automatically".

20       MR. DOLAN:  That's fine.

21       THE COURT:  Okay.  What do you think of that change,

22 Mr. Balestriere?

23       MR. BALESTRIERE:  First of all, I think the BDSM

24 should stay where it is.  Because I think it's too much to

25 insert into what is really just statutory language and listing

1    what's going on, something that's been raised in this case.

2            And I do object to "often involves" because for,

3    frankly, similar logic to what the Court noted before about

4    the Court commenting on, you know, frankly lying under oath or

5    destroying evidence that the Court, in essence, opining on a

6    position.

7            I think it's hardly clear from this record, and from

8    I've learned about BDSM and this case, that BDSM often

9    involves use of physical force.  There's all kind of things

10   that are part of BDSM.

11           And, in fact, that's almost part of the plaintiffs'

12   point is when they see "total BDSM," that text that we saw

13   about 50 times in the last two weeks, it was interpreted

14   differently, to the extent that it was even paid attention to.

15           And so for the Court to say "BDSM often involves," I

16   think is giving too much, as you put it before, Your Honor, of

17   the Court's imprimatur on the idea that is, in fact, what BDSM

18   is.  They can argue, I don't think it should be in the charge.

19           THE COURT:  I agree with that.

20           I'm going to reject your proposed change, Mr. Dolan.

21           Anything else on 13?

22           (No audible response heard.)

23           THE COURT:  How about 14?

24           (No audible response heard.)

25           THE COURT:  15?

CHARGE CONFERENCE                                    1824

1          MR. DOLAN:  15, Judge, we have one.  I don't know if

2     anybody else does.

3          It's -- I think this is mostly addressing the

4     benefits financially prong.

5          And then there's a paragraph that begins "a

6     defendant can also be liable."

7          Do you have that one?

8          THE COURT:  Yes.

9          MR. DOLAN:  Okay.  On the next line, "In a venture

10    which the defendant," and I would change what comes next

11    "knows, has engaged in using force, threats of force," et

12    cetera "to cause the plaintiff to engage in commercial sex

13    act."

14         Again, I'm simply tracking the language of the

15    statute, which I think that's what the statute requires.

16         THE COURT:  Say it, again, please, Mr. Dolan?

17         MR. DOLAN:  Sure.

18         It's on the second line of that paragraph, after the

19    words "in a venture which the defendant," and then I would

20    just substitute this new text, "knows, has engaged in using

21    force, threats of force, fraud, or coercion to cause a

22    plaintiff to engage in a commercial sex act," period.

23         THE COURT:  Okay, Mr. Balestriere, that does seem

24    more loyal to the language of the statute.

25         MR. BALESTRIERE:  I'm fine with most of it, but I

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

CHARGE CONFERENCE                                    1825

1    think the word "should have known" remains, because it would

2    seem, as I at least hear it, of course, I haven't seen the

3    page, as I hear it, it would almost seem to excise the

4    reckless disregard prong, make the allegation be that a

5    plaintiff has a burden under what we've been calling the

6    second element of the sex trafficking, to show that the person

7    knew all of these things, knew or reckless disregard is more

8    correct.

9            THE COURT:  I think this "should have known"

10   subsumes both reckless disregard and eliminates willful

11   blindness.  So I'm going to leave that in, otherwise, I'll

12   take your modification, Mr. Dolan.

13           MR. DOLAN:  Thank you, Judge.

14           And I have one more on that page.  At the very end

15   of that same paragraph we say, it currently reads:

16   "Defendants' actions would assist the venture's conduct."  I

17   would change the last bit of that to say "would assist," and

18   I'd insert this, "a violation by the venture."

19           Because that's what the statute is talking about.

20   And that prong of 1592(a)(2), they have to know it was a

21   violation by the venture.

22           MR. BALESTRIERE:  No objection to that, Your Honor.

23           THE COURT:  Okay, fine.

24           Okay, anything else on 15?

25           (No audible response heard.)

CHARGE CONFERENCE                                    1826

1          THE COURT:  How about 16?

2          MR. BALESTRIERE:  On 16, the main change that I

3    would seek, Your Honor, is to where you have, what I think

4    here is the -- it's on present page 14, present line 14, where

5    you begin "consent is not permanent," I think that should be

6    moved up to after the sentence that ends on line 10.

7          So it would read -- I'm not going to read the whole

8    thing -- that is "consent is a complete defense to this cause

9    of action," and then say "consent is not permanent, if a

10   person willing agrees."  So that's the first change.

11         Here then, Your Honor, there is also the -- this

12   time threats of force, fraud, and coercion are included

13   presently on line 17, change to what we discussed before, I

14   think that should be ending on line 16, "against her will by

15   force, threats of force, fraud, coercion".  Meaning if Your

16   Honor doesn't move it, I think we should include that.

17         And this, forgive me, Your Honor, you may believe, I

18   just want to be sure, that this is part of the changes that

19   you rejected when it says "commercial sex act", say, on line 6

20   there were a couple of times, I believe you've already created

21   a particular commercial sex act and you've rejected it.

22         THE COURT:  Yes.

23         MR. BALESTRIERE:  Okay.

24         THE COURT:  We've done that.  Correct, I rejected

25   that.

CHARGE CONFERENCE                          1827

1           MR. BALESTRIERE:  Thank you, Your Honor.

2           So then on the -- on 15, though, I would say, and

3    this is more in line with the statute, "if a person willing

4    agrees to perform the commercial sex act," I do think that

5    should be "a commercial sex act."

6           The two times where it says "the," I think it should

7    be "a," because that is what the statute says.

8           THE COURT:  Let me start with that.

9           Changing "the" to "a" is fine.  I really don't think

10   it makes any difference, but it's fine.

11          Then you want to change the "threats of force,

12   fraud, or coercion", to insert "force" before "threats of

13   force."

14          MR. BALESTRIERE:  Just like the other, Your Honor.

15          THE COURT:  Got it.  That's fine.

16          And then you want to move that last sentence in the

17   second full paragraph on that page to become the last sentence

18   of the preceding paragraph, right?

19          MR. BALESTRIERE:  Yes.  The sentence which begins

20   "consent is not permanent."  That gets moved up.

21          THE COURT:  All right, let me hear from the

22   defendants on that.  Any problem?

23          MR. ROSENBERG:  No, we have no objection to that.

24          MR. DOLAN:  Not to that, Judge.

25          MR. ROSENBERG:  We have one on this as well.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

CHARGE CONFERENCE                          1828

1          MR. DOLAN:  Go ahead.

2          MR. ROSENBERG:  Mine is quite small.  In the very,

3    what I believe is the first line, that is page 16, line 1, it

4    says "to cause a person to be part of a commercial sex act."

5          I think the statute says "to engage in a commercial

6    sex act."  And simply for fidelity of the statute, we would

7    ask that that be changed.

8          THE COURT:  I think that's okay.

9          MR. BALESTRIERE:  No objection by plaintiffs, Your

10   Honor.

11         THE COURT:  You can leave off Mr. Dolan's remarks,

12   his turn will come.

13         And Mr. Rosenberg said, the one change, which I

14   think you got, right?

15         THE COURT REPORTER:  Yes.

16         THE COURT:  And we all said that's okay.

17         MR. ROSENBERG:  Your Honor, if I may, I neglected to

18   note that on page 13, I believe, this instruction is -- it

19   refers to "perform a commercial sex act."  Once again, for

20   fidelity to the statute, I think that should say "to engage in

21   a commercial sex act."

22         THE COURT:  Agreed.

23         MR. BALESTRIERE:  You mean line 2 of page 13?

24         MR. ROSENBERG:  Let me check, I believe it's line --

25   line 5, but I'm not looking at a different version.  Let me

1    look, I'll confirm that.

2              THE COURT:  Okay.

3              MR. BALESTRIERE:  I don't object to the concept,

4    though, Your Honor.

5              THE COURT:  Okay.

6              All right, so back to 15.

7              Mr. Dolan, you had something else.

8              MR. DOLAN:  On the consent thing, Judge, it's really

9    an addition.  It's down on the fourth paragraph of the consent

10   charge beginning "you all are familiar."

11             THE COURT:  Yes.

12             MR. DOLAN:  I have no problem with the words you

13   have, it's really an insertion, and it's to tell the jury that

14   in determining consent, they are to look at this from the

15   perspective of a reasonable person in the defendants'

16   position, and I can give you the wording I would like to

17   suggest on that.

18             THE COURT:  Go ahead.

19             MR. DOLAN:  Let me just find it, Your Honor.

20             Where was it?  Here it is.  And this is --

21             THE COURT:  Slowly.

22             MR. DOLAN:  -- you have a sentence ending

23   "subsequent conduct and statements."  Do you see that?  It's

24   on the fourth line of that paragraph, "subsequent conduct and

25   statements," period.

1          THE COURT:  I'm looking.  I'm looking.

2          MR. DOLAN:  Okay.

3          After that I would insert the following:  "Consent

4    for this purpose is evaluated as a reasonable person in

5    defendants' position would have understood the words, actions,

6    or inactions by the plaintiff, dash, taken together would a

7    reasonable person have understood them to communicate

8    consent."

9          THE COURT:  Mr. Balestriere?

10          MR. BALESTRIERE:  No, I certainly object to that.

11          I think that that is not consistent with the

12    statutory language, with any interpretation on that language

13    that I see in any Court of Appeals or in the district courts

14    with, frankly, what Your Honor wrote in your summary judgment

15    order.

16          That is even inconsistent with what Your Honor has

17    in present page 14 at 12 where you're defining serious harm,

18    where we talk about, in essence, a reasonable plaintiff, not a

19    reasonable defendant.  So I think this is a switching of

20    reasonableness when they can argue what they want on consent,

21    but I don't think that the charge should be modified the way

22    they're asking.

23          THE COURT:  Mr. Dolan, I think it goes back to my

24    point of what's required of the defendant to violate the

25    statute is really more of a general mens rea than a specific

1   mens rea, and I don't think the phrasing of that is an

2   objective standard.  It gets around the fact that you are

3   introducing something that really isn't the statute, so I'm

4   going to overall that objection.

5           MR. DOLAN:  Okay, Judge, the word "objective" is not

6   key, it's that it has to be judged as a reasonable person

7   would.

8           THE COURT:  I got you.  That's part of the statute,

9   that's why I'm not allowing it.

10          MR. DOLAN:  Okay.

11          THE COURT:  All right, anything else on 16?

12          (No audible response heard.)

13          THE COURT:  17?

14          (No audible response heard.)

15          THE COURT:  I just want to point out to

16  Mr. Balestriere.  We did drop one of the incidents, based on

17  the evidence, right?  I effectively granted the directed

18  verdict on that.

19          MR. BALESTRIERE:  Yes, Your Honor.

20          THE COURT:  18?

21          (No audible response heard.)

22          THE COURT:  19?

23          (No audible response heard.)

24          THE COURT:  20?

25          (No audible response heard.)

CHARGE CONFERENCE                    1832

1         THE COURT:  21?

2             (No audible response heard.)

3         THE COURT:  22?

4             (No audible response heard.)

5         THE COURT:  23?

6             (No audible response heard.)

7         MR. BALESTRIERE:  Your Honor, I think you

8    actually -- I was going to ask for a change, but I think

9    you're going to include this.

10            I want to make sure on 23 -- I think the language

11   you said that you're going to add "by itself" with regard to

12   the BDSM encounters.

13            So, for example, on -- I want to make sure I'm

14   looking at the right page here.  Yes, this is 23 present,

15   line 5, which begins "the defense of consent."

16            So I think Your Honor's going to end this on line 7,

17   "during a BDSM encounter does not by itself mean there was

18   false imprisonment."

19        THE COURT:  Or encounter, comma, by itself, comma.

20        MR. BALESTRIERE:  Yes, forgive me, Your Honor, yes.

21   The commas, yes.

22        THE COURT:  I am going to add that.

23        MR. BALESTRIERE:  Thank you.

24        THE COURT:  Okay.

25            Anything else on 23?

CHARGE CONFERENCE                    1833

1              (No audible response heard.)

2         THE COURT:  24?

3              (No audible response heard.)

4         THE COURT:  25?

5              (No audible response heard.)

6         THE COURT:  26?

7         MR. BALESTRIERE:  I think this is, if I'm on the

8    right page, Your Honor, I'm sorry it's actually the bottom of

9    page 25.

10        THE COURT:  Okay.

11        MR. BALESTRIERE:  Same thing that we just discussed.

12             So let me see here.  This is present line 17,

13   "during the course of BDSM encounters, it does not by itself

14   mean that there were," comma, "by itself, comma, mean that

15   there was intentional infliction of emotional distress."

16        THE COURT:  I'm not seeing where you are.

17             Is this right before the damages section?

18        MR. BALESTRIERE:  It is right before the damages

19   section, I'm sorry, Your Honor.  I hope everything's on the

20   right page.  I think it's, what we well be sent over, saying

21   25 -- page 25, line 17 the sentence, begins, "once again,

22   because BDSM may involve conduct that is disturbing, the fact

23   that there was conduct during the course of the BDSM

24   encounters does not by itself mean that there was intentional

25   infliction of emotional distress."

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

CHARGE CONFERENCE                          1834

1          THE COURT:  We will add that.

2          MR. BALESTRIERE:  Thank you.

3          THE COURT:  Okay, anything on the causation

4    instruction on page 26?

5          (No audible response heard.)

6          THE COURT:  Okay.

7          Anything on 27, the damages instruction?

8          (No audible response heard.)

9          THE COURT:  And then I'll just go quickly to the

10   standard instructions at the end, 28 through 30, anything

11   there?

12         (No audible response heard.)

13         THE COURT:  Okay.

14         Let's talk now about the verdict form, with again

15   the same understanding that, you know, if you already made the

16   objection, you don't have to make it again.

17         MR. ROSENBERG:  Your Honor --

18         THE COURT:  Yes.

19         MR. ROSENBERG:  -- I apologize.  I had been looking

20   for one other change that I mentioned earlier.

21         Going to the language, and I found it on page 12 on

22   line 21, where it says, "would be used to cause the plaintiff

23   to perform a commercial sex act," and the statute says, "to

24   engage in a commercial sex act."

25         THE COURT:  I see.

CHARGE CONFERENCE                                    1835

1              MR. ROSENBERG:  For the reasons stated, we'd ask

2    that change be made.

3              THE COURT:  You have it.  Okay.

4              All right, then to the verdict form.  Let me pull it

5    out, please.

6              Okay.  I think we might as well just start at the

7    beginning.  Let me know if there's anything you have, other

8    than what you've already told me you have.

9              MR. BALESTRIERE:  Your Honor, really just a question

10   about those now two plaintiffs that have the tort claims,

11   about what Your Honor thought of the other day when we

12   discussed -- when defendants moved pursuant to Rule 50, I

13   would just ask what Your Honor was doing here.

14             We have a total compensatory damages saying

15   Plaintiff Tagai, it's question 2 on page 2.  She's the first

16   plaintiff that's listed.

17             And then on the second page, there are -- there's a

18   further --

19             (Court reporter interrupts for clarification.)

20             MR. BALESTRIERE:  I'm sorry.  On page 3 for

21   Plaintiff Tagai, there's another total compensatory damages.

22             And I can see it does say, "To which Plaintiff Tagai

23   is entitled for assault, battery and false imprisonment."  I

24   am fine with it as it is, but nonetheless I have a little bit

25   of concern that the jury may not understand, even though you

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

CHARGE CONFERENCE                          1836

1    instruct them on this, about the no double counting.  And I

2    really wanted to raise the concern more than I had specific

3    language.

4              THE COURT:  Right.  You're quite correct, and here's

5    what we're going to do about that.

6              We're going to take out the word "total" from

7    question 2, and then before "total compensatory damages" at

8    the end, we're going to put in a parenthetical instruction

9    that says something like, I'll get the words later, "please

10   note, that the plaintiff cannot recover under any -- or all

11   causes of action more than one time," or something like that.

12             You see where I'm going?

13             MR. BALESTRIERE:  Yes.

14             THE COURT:  Okay.  And then that will be the one

15   that says "total compensatory damages."

16             MR. BALESTRIERE:  Understood, Your Honor.

17             THE COURT:  Okay.  Anything else?

18             MR. DOLAN:  Judge, on that one, I just want to --

19   since Ms. Powers is only on the sex trafficking, not on any of

20   the -- I'm concerned about the "total".  I think they really

21   have to be kept separate.  (Indiscernible) and sex

22   trafficking.  She's only on one of them.

23             THE COURT:  Well, I think they are separate; aren't

24   they?

25             MR. DOLAN:  Yes, but you were talking about at the

CHARGE CONFERENCE                                1837

1  end saying "total compensatory damages."

2           THE COURT:  Oh, yes.  Right, for the one that

3  Ms. Powers is on, we'll only have one damage.  We won't have

4  at that instruction.

5           That's what you're saying, right?

6           MR. DOLAN:  Yes, Judge.  And it's really two

7  different categories.  You have the damages and the sex

8  trafficking, and then damages for the common law stuff.  And

9  they really have to be kept separate for that reason.

10          THE COURT:  I agree with that.

11          Okay.  Anything else on the verdict form?

12          MR. BALESTRIERE:  Nothing from plaintiffs, Your

13  Honor.

14          THE COURT:  All right.  And then last, let's talk

15  about, as we had briefly in court, the length of time that the

16  parties want for closing.

17          I'll start with you, Mr. Balestriere.

18          If there's an agreement, just tell me.

19          MR. BALESTRIERE:  I don't think, we just haven't had

20  the time to talk, so I'll take the Court's direction.

21          I tend towards the Mark Twain edict that:  "Few

22  souls are saved after the 20th minute of any sermon."  Meaning

23  I'm for shorter rather than longer, but I also understand that

24  there's an argument that we kind of have six case in one here.

25  I prefer shorter, but I want to hear what defendants say

CHARGE CONFERENCE                    1838

1    before in say I believe that's too long or anything like that.

2            THE COURT:  Well, since it's clear the defendants

3    are going to want longer than the plaintiffs are going to

4    want, let me hear from defendants as to what they want?

5            MR. ROSENBERG:  Your Honor, Defendant Rubin asks for

6    two-and-a-half hours for the summation.

7            THE COURT:  Mr. Dolan?

8            MR. DOLAN:  I won't be giving it, Judge, but I think

9    Mr. Grover is looking for about 45 minutes.

10            THE COURT:  I'm just thinking of the timing, because

11   I really want to finish all of this on Monday.  You know, it's

12   not that the jury has to start deliberating on Monday, they

13   can start Tuesday, but I want to make sure we have enough

14   time.

15            So if give three hours and 15 minutes of total to

16   the defendants, and we start at, we call it for 9:30, but more

17   likely we'll start at a quarter to 10, and that's three hours

18   and 15 minutes, stopping at 1:00, go to lunch, come back at 2.

19            Mr. Balestriere, based on what the defendants have

20   said, you think you can limit yourself to two hours?

21            MR. BALESTRIERE:  Yes, Your Honor.

22            THE COURT:  Okay.  And that would give us time to

23   give the charge.  So I think that works, maybe I have to keep

24   the jury a little longer than I'd like to, but we'll try to do

25   that.  Okay.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

1          I will say, I thought, what Mr. Balestriere said is

2    very unusual for me to hear from a lawyer, but the Mark Twain

3    quote absolutely true, and I would urge you, Mr. Rosenberg, to

4    try to get in, you know, shorter than that two-and-a-half

5    hours.

6          MR. ROSENBERG:  Your Honor, it will be Mr. McDonald,

7    and I will urge him -- we just wanted to be safe.  I expect it

8    will be less, Your Honor.  And I will -- I'll quote Mark Twain

9    to him.

10         THE COURT:  Okay, good.

11         All right, anything else we need to cover?

12         MR. BALESTRIERE:  Yes, Your Honor, if I may on

13   something.

14         Probably for good order, but also somewhat renewing

15   an application, which I understand the Court may reject, but

16   simply for the record.  I don't believe Your Honor has

17   actually issued a written order with regards to the Rule 15

18   application.  You squarely rejected it from the bench,

19   certainly.

20         So what I wanted to do, Your Honor, was put in a

21   letter where I ask for some direction as to, hey, you want me

22   is say this.  I, frankly, not want to withdraw and bring the

23   motion to amend with regards to the 18 U.S.C. claim that we

24   were talking about there, but I do think defendants continue

25   to press this idea that, in fact, these are torts.  So, again,

CHARGE CONFERENCE                                    1840

1   even if Your Honor may reject it, I would want to move to

2   amend assault and battery for any of those plaintiffs where

3   the statute of limitations would be extended under 213-C.

4           I would really make it a short letter, again, mostly

5   just for the record because, again, I understand.  While I do

6   think it should be granted, otherwise, I wouldn't write the

7   letter, I understand Your Honor will likely reject it.

8           THE COURT:  Well, you're certainly welcome to write

9   a letter, if you like.  I previously said the reason why I'm

10  not letting you add, not only crafting the extra federal claim

11  to the extra state claims as well --

12          MR. BALESTRIERE:  Understood.

13          THE COURT:  -- and those were basically that the

14  defendants simply did not gear their case in order to address

15  incidents that they believe, based on your pleading, were

16  time-barred.  So that's pretty much why I did it.  I just

17  thought it would be unfairly prejudicial to the defendants,

18  but I'll refer you back to what I said then.

19          Besides me saying "that is so ordered" right here on

20  the record, you also need a letter in which I say "denied,"

21  then you can send a letter, too.

22          MR. BALESTRIERE:  Very short letter, Your Honor.

23  It's frankly easier for the appellate record, if we ever get

24  to that point, that's all.

25          THE COURT:  No problem.

CHARGE CONFERENCE                    1841

1              Okay, anything else?

2              MR. DOLAN:  And, Judge, in the same spirit of

3    preserving everything that's probably already well preserved,

4    everything we've said in the Rule 50 letter, and in the

5    March 21 letters, we repeat all those objections.

6              I know you've already ruled on them.  I just want to

7    make sure everyone understands, particularly your friends on

8    the 17th Floor, if we ever get there, but that's what's

9    happened.

10             THE COURT:  It is true that it's not up to me to say

11   what's preserved and what's not preserved, but as far as I'm

12   concerned, and I hope this carries at least a little weight

13   with the Circuit, the arguments have been fully made as to the

14   defendants' points in the Rule 50 motion, not only there, but

15   in their letters, and also in this charge conference.  And to

16   the extent I have not adopted them, it's because I have

17   rejected them.  And that's an express rejection.  I can't be

18   any clearer about it than that.

19             MR. DOLAN:  Thank you, Your Honor.

20             THE COURT:  All right, thank you all for calling in.

21   We'll see you on Monday.

22             MR. BALESTRIERE:  Thank you very much, Your Honor.

23                  *     *     *     *     *

24             (Proceedings adjourned at 2:50 p.m. to resume on

25   April 4, 2022 at 9:30 a.m.)

```
MR. BALESTRIERE: [47]
MR. DOLAN: [34]
MR. ROSENBERG: [15]  1809/2
 1810/5 1810/24 1814/23
 1819/13 1827/23 1827/25
 1828/2 1828/17 1828/24
 1834/17 1834/19 1835/1
 1838/5 1839/6
THE COURT: [102]

–

----------------------------
-x [2]  1804/2 1804/10

1

10 [6]  1808/24 1812/1 1812/6
 1812/8 1826/6 1838/17
10007 [1]  1804/16
10036-6797 [1]  1804/19
10112 [1]  1805/3
1095 [1]  1804/19
11 [2]  1813/4 1813/15
12 [7]  1813/17 1813/24
 1817/13 1818/19 1821/9
 1830/17 1834/21
13 [8]  1818/21 1819/24
 1821/7 1821/10 1821/17
 1823/21 1828/18 1828/23
14 [4]  1823/23 1826/4 1826/4
 1830/17
15 [8]  1823/25 1824/1
 1825/24 1827/2 1829/6
 1838/15 1838/18 1839/17
1591 [1]  1812/10
1592 [1]  1825/20
16 [5]  1826/1 1826/2 1826/14
 1828/3 1831/11
17 [4]  1826/13 1831/13
 1833/12 1833/21
17-CV-6404 [1]  1804/3
17th [1]  1841/8
18 [1]  1831/20
18 U.S.C [1]  1839/23
19 [1]  1831/22
1:00 [1]  1838/18

2

20 [3]  1814/1 1818/24
 1831/24
2016 [1]  1814/14
2022 [3]  1804/7 1807/9
 1841/25
20th [1]  1837/22
21 [3]  1832/1 1834/22 1841/5
213-C [1]  1840/3
22 [1]  1832/3
225 [1]  1804/15
23 [4]  1832/5 1832/10
 1832/14 1832/25
2330 [1]  1805/10
24 [1]  1833/2
25 [4]  1833/4 1833/9 1833/21
 1833/21
26 [3]  1805/6 1833/6 1834/4
27 [1]  1834/7
```

```
2712 [1]  1805/11
28 [1]  1834/10
29th [1]  1804/16
2:00 [1]  1804/7
2:50 [1]  1841/24
2nd [1]  1807/9

3

30 [2]  1805/3 1834/10

4

45 [1]  1838/9

5

50 [5]  1806/8 1823/13
 1835/12 1841/4 1841/14

6

6404 [1]  1804/3
6797 [1]  1804/19

7

718-613-2330 [1]  1805/10
718-804-2712 [1]  1805/11

9

9:30 [2]  1838/16 1841/25

A

a.m [1]  1841/25
absolutely [1]  1839/3
accept [1]  1820/25
act [17]  1807/22 1816/12
 1817/24 1820/6 1822/16
 1824/13 1824/22 1826/19
 1826/21 1827/4 1827/5 1828/4
 1828/6 1828/19 1828/21
 1834/23 1834/24
action [2]  1826/9 1836/11
actions [2]  1825/16 1830/5
acts [1]  1819/15
actual [1]  1822/12
add [8]  1807/24 1808/6
 1818/23 1819/2 1832/11
 1832/22 1834/1 1840/10
added [1]  1821/6
adding [3]  1808/2 1817/9
 1817/10
addition [4]  1807/10 1807/12
 1807/19 1829/9
additional [1]  1808/18
address [1]  1840/14
addressed [1]  1815/16
addressing [2]  1815/15
 1824/3
adjectives [1]  1818/3
adjourned [1]  1841/24
adopt [1]  1806/17
adopted [2]  1806/17 1841/16
afraid [1]  1814/23
afternoon [1]  1806/5
afterwards [1]  1818/6
ago [3]  1807/4 1807/4
 1807/10
agree [2]  1823/19 1837/10
Agreed [1]  1828/22
```

```
agreement [1]  1837/18
agrees [2]  1826/10 1827/4
ahead [3]  1810/4 1828/1
 1829/18
aided [1]  1805/13
ALBERT [1]  1805/7
allegation [1]  1825/4
allegedly [1]  1819/2
allowed [1]  1810/22
allowing [1]  1831/9
almost [3]  1821/3 1823/11
 1825/3
ambiguous [1]  1809/24
amend [2]  1839/23 1840/2
amendment [1]  1821/1
Americas [1]  1804/19
amount [1]  1807/14
AMY [1]  1804/3
apologize [2]  1810/5 1834/19
Appeals [1]  1830/13
APPEARANCES [2]  1804/14
 1804/21
appellate [1]  1840/23
apple [1]  1812/23
application [2]  1839/15
 1839/18
appropriate [2]  1810/1
 1811/6
April [3]  1804/7 1807/9
 1841/25
April 2nd [1]  1807/9
April 4 [1]  1841/25
argue [8]  1809/12 1814/9
 1814/10 1815/24 1816/18
 1818/6 1823/18 1830/20
argument [3]  1809/14 1818/4
 1837/24
arguments [2]  1806/21
 1841/13
assault [5]  1808/3 1814/15
 1814/18 1835/23 1840/2
assist [2]  1825/16 1825/17
assume [3]  1806/16 1813/12
 1815/4
attend [2]  1810/1 1810/17
attention [1]  1823/14
attenuated [1]  1815/22
audible [20]
August [1]  1814/14
August 2016 [1]  1814/14
automatically [3]  1822/16
 1822/17 1822/19
Avenue [1]  1804/19

B

BALESTRIERE [16]  1804/15
 1804/17 1811/8 1812/14
 1813/13 1815/2 1815/4
 1817/11 1820/14 1822/22
 1824/23 1830/9 1831/16
 1837/17 1838/19 1839/1
barred [1]  1840/16
based [3]  1831/16 1838/19
 1840/15
battery [3]  1808/6 1835/23
 1840/2
```

**B**

**BDSM [19]**  1807/25 1808/2 1821/23 1822/1 1822/6 1822/10 1822/15 1822/23 1823/8 1823/8 1823/10 1823/12 1823/15 1823/17 1832/12 1832/17 1833/13 1833/22 1833/23
**because [27]**
**beginning [2]**  1829/10 1835/7
**begins [8]**  1813/19 1814/1 1816/6 1818/25 1824/5 1827/19 1832/15 1833/21
**belongs [1]**  1821/25
**bench [1]**  1839/18
**benefited [2]**  1817/4 1817/20
**benefiting [2]**  1812/10 1813/7
**benefits [1]**  1824/4
**BENJAMIN [1]**  1804/20
**biggest [1]**  1809/10
**bit [4]**  1821/20 1821/22 1825/17 1835/24
**bite [1]**  1812/23
**blah [3]**  1817/7 1817/7 1817/7
**blindness [1]**  1825/11
**BMC [1]**  1804/3
**bodily [1]**  1808/1
**bondage [1]**  1822/9
**bottom [7]**  1812/1 1812/8 1813/18 1813/24 1817/13 1821/9 1833/8
**BOY [1]**  1804/20
**BOY-SKIPSEY [1]**  1804/20
**BRIAN [1]**  1804/12
**briefing [1]**  1806/9
**briefly [2]**  1820/20 1837/15
**BRITTANY [2]**  1804/4 1804/4
**Broadway [2]**  1804/15 1805/6
**Brooklyn [1]**  1804/6
**burden [2]**  1816/20 1825/5

**C**

**cannot [1]**  1836/10
**carries [1]**  1841/12
**case [13]**  1808/20 1810/1 1811/4 1811/5 1811/7 1811/21 1820/2 1822/8 1822/12 1823/1 1823/8 1837/24 1840/14
**categories [1]**  1837/7
**causation [1]**  1834/3
**causes [1]**  1836/11
**CCR [1]**  1805/10
**certainly [6]**  1807/13 1809/12 1816/17 1830/10 1839/19 1840/8
**cetera [5]**  1812/13 1815/14 1817/7 1817/19 1824/12
**chance [2]**  1808/19 1812/23
**change [16]**  1821/2 1821/8 1822/4 1822/11 1822/21 1823/20 1824/10 1825/17 1826/2 1826/10 1826/13 1827/11 1828/13 1832/8 1834/20 1835/2

**changed [1]**  1828/7
**changes [1]**  1826/18
**Changing [1]**  1827/9
**characterizing [1]**  1815/4
**charge [21]**
**charging [2]**  1806/2 1808/20
**check [1]**  1828/24
**Circuit [2]**  1809/25 1841/13
**CIVIL [1]**  1804/11
**claim [3]**  1812/9 1839/23 1840/10
**claims [3]**  1819/1 1835/10 1840/11
**clarification [1]**  1835/19
**clause [2]**  1814/3 1816/6
**clear [2]**  1823/7 1838/2
**clearer [1]**  1841/18
**clearly [1]**  1822/2
**clerk's [1]**  1812/19
**client [1]**  1816/16
**closing [1]**  1837/16
**coercion [12]**  1807/14 1812/13 1813/23 1814/4 1814/10 1817/23 1821/9 1821/10 1824/21 1826/12 1826/15 1827/12
**COGAN [1]**  1804/12
**coming [1]**  1808/9
**comma [7]**  1808/2 1808/2 1821/13 1832/19 1832/19 1833/14 1833/14
**commas [1]**  1832/21
**commenting [1]**  1823/4
**comments [1]**  1815/11
**commercial [14]**  1816/12 1817/24 1824/12 1824/22 1826/19 1826/21 1827/4 1827/5 1828/4 1828/5 1828/19 1828/21 1834/23 1834/24
**committed [1]**  1812/11
**common [1]**  1837/8
**communicate [1]**  1830/7
**compelled [1]**  1811/23
**compensatory [5]**  1835/14 1835/21 1836/7 1836/15 1837/1
**complete [1]**  1826/8
**completely [1]**  1815/16
**computer [1]**  1805/13
**computer-aided [1]**  1805/13
**concept [3]**  1822/2 1822/3 1829/3
**concepts [1]**  1820/3
**concern [3]**  1818/10 1835/25 1836/2
**concerned [4]**  1806/19 1811/25 1836/20 1841/12
**conduct [5]**  1825/16 1829/23 1829/24 1833/22 1833/23
**conference [4]**  1806/3 1808/20 1813/20 1841/15
**confirm [2]**  1807/6 1829/1
**connection [3]**  1815/13 1815/24 1816/14
**consent [13]**  1821/22 1822/2 1826/5 1826/8 1826/9 1827/20

1829/8 1829/9 1829/14 1830/3 1830/8 1830/20 1832/15
**consideration [1]**  1811/17
**consistent [1]**  1830/11
**contact [2]**  1808/1 1808/1
**continue [2]**  1820/9 1839/24
**CONTINUED [1]**  1805/1
**conversation [1]**  1812/24
**correct [3]**  1825/8 1826/24 1836/4
**corrected [1]**  1815/8
**counsel [1]**  1807/5
**counting [1]**  1836/1
**couple [5]**  1806/4 1814/6 1819/15 1822/5 1826/20
**course [5]**  1810/23 1819/4 1825/2 1833/13 1833/23
**Court's [3]**  1807/6 1823/17 1837/20
**Courthouse [1]**  1804/5
**courts [1]**  1830/13
**cover [1]**  1839/11
**covered [1]**  1806/7
**crafting [1]**  1840/10
**created [1]**  1826/20
**crime [2]**  1816/9 1816/15
**CSR [1]**  1805/10
**current [1]**  1822/10
**CV [1]**  1804/3

**D**

**damage [1]**  1837/3
**damages [10]**  1833/17 1833/18 1834/7 1835/14 1835/21 1836/7 1836/15 1837/1 1837/7 1837/8
**DANELCZYK [1]**  1805/10
**dash [1]**  1830/6
**deals [1]**  1808/5
**DECHERT [1]**  1804/18
**defendant [19]**  1804/18 1805/2 1805/5 1809/2 1809/4 1810/11 1816/3 1816/14 1817/2 1817/5 1817/18 1817/21 1819/1 1824/6 1824/10 1824/19 1830/19 1830/24 1838/5
**Defendant Powers [1]**  1809/4
**Defendant Rubin [2]**  1809/2 1838/5
**defendants [16]**  1804/9 1806/13 1806/23 1814/21 1815/1 1819/11 1827/22 1835/12 1837/25 1838/2 1838/4 1838/16 1838/19 1839/24 1840/14 1840/17
**defendants' [5]**  1806/8 1825/16 1829/15 1830/5 1841/14
**defense [2]**  1826/8 1832/15
**defer [3]**  1809/8 1809/16 1809/19
**define [1]**  1820/22
**defines [1]**  1820/21
**defining [2]**  1822/3 1830/17
**definition [4]**  1819/6 1820/1

**D**

definition... **[2]**  1821/19 1822/8
degree **[1]**  1811/6
deliberating **[1]**  1838/12
denied **[1]**  1840/20
deposition **[3]**  1810/10 1810/12 1810/18
described **[1]**  1815/2
destroying **[1]**  1823/5
determining **[1]**  1829/14
difference **[2]**  1819/20 1827/10
different **[3]**  1814/21 1828/25 1837/7
differently **[1]**  1823/14
directed **[1]**  1831/17
direction **[2]**  1837/20 1839/21
disagreement **[1]**  1806/6
disagrees **[1]**  1808/11
discipline **[1]**  1822/9
discretionary **[1]**  1811/2
discussed **[5]**  1806/14 1811/8 1826/13 1833/11 1835/12
discussion **[1]**  1821/23
disregard **[11]**  1816/6 1816/10 1819/25 1820/2 1820/5 1820/6 1820/9 1820/10 1825/4 1825/7 1825/10
disregarded **[2]**  1817/6 1817/21
distinction **[1]**  1822/1
distress **[2]**  1833/15 1833/25
distribute **[1]**  1812/22
district **[4]**  1804/1 1804/1 1804/12 1830/13
disturbing **[1]**  1833/22
DOLAN **[12]**  1805/5 1805/7 1809/20 1817/12 1817/15 1818/2 1823/20 1824/16 1825/12 1829/7 1830/23 1838/7
Dolan's **[2]**  1820/25 1828/11
domination **[1]**  1822/9
done **[4]**  1811/14 1816/5 1816/10 1826/24
double **[1]**  1836/1
down **[3]**  1820/7 1822/15 1829/9
drop **[2]**  1822/16 1831/16

**E**

E-D **[1]**  1813/11
easier **[1]**  1840/23
EASTERN **[1]**  1804/1
edict **[1]**  1837/21
effectively **[1]**  1831/17
either **[2]**  1816/24 1819/14
element **[6]**  1813/6 1815/16 1816/19 1816/25 1817/10 1825/6
elements **[1]**  1811/21
eliminates **[1]**  1825/10
Email **[1]**  1805/11
embraces **[1]**  1820/17

EMMA **[1]**  1804/4
emotional **[2]**  1833/15 1833/25
emphasize **[1]**  1811/5
emphasizing **[1]**  1811/22
encounter **[3]**  1814/14 1832/17 1832/19
encountered **[1]**  1808/2
encounters **[3]**  1832/12 1833/13 1833/24
engage **[7]**  1816/11 1817/23 1824/12 1824/22 1828/5 1828/20 1834/24
engaged **[6]**  1813/10 1817/2 1817/18 1817/25 1824/11 1824/20
ensuring **[1]**  1818/11
enticing **[1]**  1815/14
entitled **[1]**  1835/23
equivalent **[2]**  1819/10 1821/3
error **[1]**  1821/5
errors **[1]**  1808/24
ESQ **[6]**  1804/17 1804/20 1804/20 1805/4 1805/7 1805/7
essence **[2]**  1823/5 1830/18
establish **[1]**  1816/20
et **[5]**  1812/13 1815/14 1817/7 1817/19 1824/11
evaluated **[1]**  1830/4
evidence **[5]**  1816/17 1816/18 1818/4 1823/5 1831/17
exactly **[2]**  1811/11 1813/22
example **[1]**  1832/13
exchanged **[1]**  1806/10
excise **[1]**  1825/3
expect **[1]**  1839/7
express **[1]**  1841/17
expressly **[1]**  1810/22
extended **[1]**  1840/3
extent **[5]**  1806/17 1809/24 1818/25 1823/14 1841/16
extra **[2]**  1840/10 1840/11
eyes **[1]**  1809/18

**F**

fact **[17]**  1808/1 1811/13 1816/2 1816/7 1816/11 1817/6 1817/21 1819/5 1820/5 1820/11 1820/18 1820/22 1823/11 1823/17 1831/2 1833/22 1839/25
false **[2]**  1832/18 1835/23
falsus **[1]**  1809/5
familiar **[1]**  1829/10
fan **[1]**  1809/10
far **[3]**  1806/19 1811/25 1841/11
FARIELLO **[1]**  1804/15
fast **[2]**  1812/19 1812/20
Fax **[1]**  1805/11
federal **[1]**  1840/10
few **[5]**  1807/3 1807/4 1807/10 1812/3 1837/21
fidelity **[3]**  1819/18 1828/6 1828/20

filed **[1]**  1807/9
financially **[5]**  1812/10 1813/7 1817/4 1817/20 1824/4
fine **[11]**  1815/9 1818/1 1818/17 1820/18 1822/20 1824/25 1825/23 1827/9 1827/10 1827/15 1835/24
finish **[1]**  1838/11
first **[12]**  1806/6 1807/8 1808/22 1813/5 1813/8 1813/9 1816/25 1822/5 1822/23 1826/10 1828/3 1835/15
five **[1]**  1807/23
Floor **[2]**  1804/16 1841/8
focus **[1]**  1810/2
focused **[1]**  1810/3
following **[2]**  1807/24 1830/3
force **[36]**
foreseeability **[2]**  1820/3 1820/23
forgive **[2]**  1826/17 1832/20
form **[3]**  1834/14 1835/4 1837/11
fourth **[1]**  1829/9 1829/24
frankly **[6]**  1817/1 1823/3 1823/4 1830/14 1839/22 1840/23
fraud **[16]**  1812/13 1813/23 1814/4 1814/9 1817/7 1817/22 1818/23 1819/5 1819/6 1821/9 1821/10 1823/13 1824/21 1826/12 1826/15 1827/12
fraudulent **[4]**  1819/1 1819/2 1819/8 1819/10
frequently **[1]**  1820/2
friends **[1]**  1841/7
full **[1]**  1827/17
fully **[3]**  1806/19 1807/1 1841/13
furniture **[1]**  1811/11

**G**

gear **[1]**  1840/14
general **[4]**  1807/21 1809/17 1810/8 1830/25
GILBERT **[1]**  1805/4
Girl **[1]**  1816/9
given **[1]**  1813/19
glazed **[1]**  1809/18
global **[1]**  1821/13
gmail.com **[1]**  1805/11
granted **[2]**  1831/17 1840/6
Grover **[1]**  1838/9

**H**

half **[2]**  1838/6 1839/4
HAMPTON **[1]**  1805/2
hand **[1]**  1806/23
handle **[1]**  1812/18
hardly **[1]**  1823/7
harm **[1]**  1830/17
harmful **[1]**  1807/25
HASSEN **[1]**  1804/4
heard **[20]**
hit **[2]**  1814/17 1814/17
Hold **[1]**  1812/7

**H**

Honor **[59]**
Honor's **[2]**  1820/1 1832/16
HONORABLE **[1]**  1804/12
hope **[2]**  1833/19 1841/12
HOPPER **[1]**  1804/4
hours **[5]**  1838/6 1838/15
 1838/17 1838/20 1839/5
HOWARD **[3]**  1804/8 1804/19
 1805/2
hurried **[1]**  1808/21

**I**

I-N-G **[1]**  1813/10
idea **[2]**  1823/17 1839/25
implements **[1]**  1811/12
important **[1]**  1818/8
imprimatur **[2]**  1811/5
 1823/17
imprisonment **[2]**  1832/18
 1835/23
impropriety **[1]**  1810/18
inactions **[1]**  1830/6
incidents **[2]**  1831/16
 1840/15
inclined **[2]**  1807/24 1819/7
include **[3]**  1810/16 1826/16
 1832/9
included **[2]**  1810/14 1826/12
includes **[1]**  1819/6
inconsistent **[1]**  1830/16
Indiscernible **[1]**  1836/21
infliction **[3]**  1822/14
 1833/15 1833/25
inherently **[1]**  1811/10
insert **[7]**  1813/10 1821/13
 1822/14 1822/25 1825/18
 1827/12 1830/3
inserting **[1]**  1812/12
insertion **[1]**  1829/13
instead **[2]**  1812/2 1818/14
instruct **[2]**  1815/25 1836/1
instruction **[8]**  1811/1
 1811/16 1811/20 1828/18
 1834/4 1834/7 1836/8 1837/4
instructions **[6]**  1806/9
 1806/9 1806/21 1808/9
 1808/23 1834/10
intending **[1]**  1807/22
intentional **[2]**  1833/15
 1833/24
interpretation **[1]**  1830/12
interpreted **[1]**  1823/13
interrupt **[1]**  1810/6
interrupts **[1]**  1835/19
introducing **[1]**  1831/3
involve **[3]**  1807/25 1822/11
 1833/22
involves **[4]**  1822/12 1823/2
 1823/9 1823/15
involving **[1]**  1822/1
issue **[2]**  1806/15 1811/5
issued **[1]**  1839/17
issues **[1]**  1806/20
items **[1]**  1807/5
itself **[12]**  1808/2 1810/16

 1810/19 1816/15 1821/23
 1822/18 1832/11 1832/17
 1832/19 1833/13 1833/14
 1833/24

**J**

JENNIFER **[2]**  1804/8 1805/6
JOHN **[1]**  1804/17
join **[1]**  1816/9
JOLENE **[1]**  1805/7
JUDGE **[14]**  1804/12 1813/5
 1815/10 1819/14 1820/20
 1824/1 1825/13 1827/24
 1829/8 1831/5 1836/18 1837/6
 1838/8 1841/2
judged **[1]**  1831/6
judgment **[1]**  1830/14
jurors **[1]**  1809/19
jury **[15]**  1804/13 1806/9
 1806/21 1810/2 1810/20
 1810/22 1815/22 1815/23
 1816/2 1816/18 1819/8
 1829/13 1835/25 1838/12
 1838/24

**K**

KATHERINE **[1]**  1804/20
keep **[1]**  1838/23
kept **[2]**  1836/21 1837/9
key **[1]**  1831/6
knowing **[1]**  1812/12
knowledge **[1]**  1815/14
known **[6]**  1817/5 1817/21
 1820/10 1820/18 1825/1
 1825/9
knows **[5]**  1810/23 1816/6
 1816/10 1824/11 1824/20

**L**

language **[12]**  1810/13
 1813/21 1816/22 1820/24
 1822/25 1824/14 1824/24
 1830/12 1830/12 1832/10
 1834/21 1836/3
LAVIGNE **[1]**  1805/7
LAVIGNE-ALBERT **[1]**  1805/7
law **[4]**  1806/7 1806/12
 1812/19 1837/8
lawyer **[1]**  1839/2
lawyerly **[1]**  1809/11
learned **[1]**  1823/8
least **[4]**  1814/13 1819/23
 1825/2 1841/12
leave **[2]**  1825/11 1828/11
legal **[2]**  1809/11 1811/21
legally **[2]**  1819/8 1819/10
length **[1]**  1837/15
less **[1]**  1839/8
letter **[15]**  1807/4 1807/8
 1807/9 1807/23 1813/1 1815/3
 1815/17 1839/21 1840/4
 1840/7 1840/9 1840/20
 1840/21 1840/22 1841/4
letters **[2]**  1841/5 1841/15
letting **[1]**  1840/10
liable **[1]**  1824/6

lied **[3]**  1809/13 1809/15
 1809/15
light **[1]**  1822/11
likely **[2]**  1838/17 1840/7
limit **[1]**  1840/3
limitations **[1]**  1840/3
LINDA **[2]**  1805/10 1806/3
LindaDan226 **[1]**  1805/11
line **[24]**
line 1 **[1]**  1828/3
line 10 **[1]**  1826/6
line 14 **[1]**  1826/4
line 16 **[1]**  1826/14
line 17 **[3]**  1826/13 1833/12
 1833/21
line 2 **[1]**  1828/23
line 20 **[2]**  1814/1 1818/24
line 21 **[1]**  1834/22
line 5 **[2]**  1828/25 1832/15
line 6 **[1]**  1826/19
line 7 **[1]**  1832/16
lines **[2]**  1818/23 1822/15
listed **[2]**  1813/5 1835/16
listing **[2]**  1813/23 1822/25
LLP **[3]**  1804/18 1805/2
 1805/5
logic **[2]**  1821/10 1823/3
logical **[1]**  1816/25
looked **[1]**  1811/11
loyal **[1]**  1824/24
lunch **[1]**  1838/18
lying **[1]**  1823/4
LYTELL **[3]**  1804/3 1814/15
 1814/18

**M**

M-A-R-C-U-S **[1]**  1822/8
main **[1]**  1826/2
major **[1]**  1806/6
March **[1]**  1841/5
March 21 **[1]**  1841/5
Marcus **[1]**  1822/7
Mark **[3]**  1837/21 1839/2
 1839/8
markups **[1]**  1806/16
material **[2]**  1819/3 1819/4
matter **[1]**  1810/23
McDonald **[1]**  1839/6
mean **[10]**  1808/3 1810/6
 1816/8 1816/17 1822/16
 1828/23 1832/17 1833/14
 1833/14 1833/24
meaning **[5]**  1813/9 1818/10
 1819/20 1826/15 1837/22
means **[3]**  1806/18 1819/1
 1820/9
meant **[1]**  1815/11
mechanical **[1]**  1805/13
mens **[3]**  1807/21 1830/25
 1831/1
mention **[1]**  1810/25
mentioned **[2]**  1818/15
 1834/20
MIA **[2]**  1804/3 1814/15
MICHAEL **[1]**  1805/4
middle **[1]**  1808/23

**M**

**might [6]**  1806/5 1808/18 1818/24 1821/3 1821/3 1835/6
**Mine [1]**  1828/2
**minute [3]**  1809/22 1812/7 1837/22
**minutes [7]**  1806/10 1807/4 1807/4 1807/10 1838/9 1838/15 1838/18
**mischaracterizes [1]**  1815/1
**missed [2]**  1810/6 1811/22
**missing [3]**  1815/16 1816/13 1816/20
**misspoken [1]**  1810/6
**modification [1]**  1807/24 1808/4 1825/12
**modifications [1]**  1808/24
**modified [1]**  1830/21
**Monday [3]**  1838/11 1838/12 1841/21
**money [2]**  1807/14 1807/15
**MOORE [2]**  1804/3 1814/13
**most [3]**  1806/10 1806/12 1824/25
**mostly [3]**  1822/7 1824/3 1840/4
**motion [3]**  1806/8 1839/23 1841/14
**move [3]**  1826/16 1827/16 1840/1
**moved [3]**  1826/6 1827/20 1835/12
**Mr. Balestriere [14]**  1811/8 1812/14 1813/13 1815/2 1815/4 1817/11 1820/14 1822/22 1824/23 1830/9 1831/16 1837/17 1838/19 1839/1
**Mr. Dolan [10]**  1809/20 1817/12 1817/15 1818/2 1823/20 1824/16 1825/12 1829/7 1830/23 1838/7
**Mr. Dolan's [2]**  1820/25 1828/11
**Mr. Grover [1]**  1838/9
**Mr. McDonald [1]**  1839/6
**Mr. Rosenberg [3]**  1815/7 1828/13 1839/3
**Mr. Rubin [1]**  1814/17
**Mr. Rubin's [1]**  1807/5
**Ms. Lytell [1]**  1814/18
**Ms. Moore [1]**  1814/13
**Ms. Powers [7]**  1811/9 1811/13 1812/8 1815/10 1818/5 1836/19 1837/3
**MULLIN [1]**  1805/2
**must [3]**  1817/5 1817/21 1819/1

**N**

**NATASHA [1]**  1804/4
**necessarily [1]**  1821/24
**necessary [1]**  1812/21
**need [4]**  1806/22 1808/24 1839/11 1840/20
**negative [1]**  1812/2

**neglected [1]**  1828/17
**negligence [1]**  1820/2
**next [5]**  1812/4 1820/11 1822/13 1824/9 1824/10
**night [2]**  1806/11 1808/17
**None [1]**  1809/2
**nonetheless [1]**  1835/24
**norm [1]**  1817/17
**note [3]**  1815/8 1828/18 1836/10
**noted [1]**  1823/3
**Nothing [1]**  1837/12
**notwithstanding [1]**  1807/15
**number [4]**  1807/11 1807/12 1807/16 1807/21
**numbers [1]**  1807/8
**NY [1]**  1805/3

**O**

**oath [1]**  1823/4
**object [5]**  1808/8 1819/13 1823/2 1829/3 1830/10
**objection [12]**  1807/1 1807/11 1807/16 1811/24 1812/16 1813/12 1819/11 1825/22 1827/23 1828/9 1831/4 1834/16
**objections [3]**  1808/18 1812/5 1841/5
**objective [2]**  1831/2 1831/5
**obvious [2]**  1820/18 1820/19
**offensive [1]**  1808/1
**offer [2]**  1807/14 1807/15
**often [4]**  1822/12 1823/2 1823/8 1823/15
**omission [5]**  1819/3 1819/4 1819/4 1819/9 1821/5
**open [1]**  1806/1
**opining [1]**  1823/5
**opposed [2]**  1813/11 1822/19
**opposition [1]**  1806/13
**orally [2]**  1806/7 1806/15
**order [5]**  1808/16 1830/15 1839/14 1839/17 1840/14
**ordered [1]**  1840/19
**organizing [1]**  1821/22
**otherwise [2]**  1825/11 1840/6
**overall [2]**  1811/14 1831/4
**overbroad [1]**  1807/13
**overload [1]**  1818/9

**P**

**p.m [2]**  1804/7 1841/24
**page 10 [2]**  1812/6 1812/8
**page 11 [2]**  1813/4 1813/15
**page 12 [4]**  1813/17 1813/24 1817/13 1834/21
**page 13 [2]**  1828/18 1828/23
**page 14 [2]**  1826/4 1830/17
**page 2 [1]**  1835/15
**page 25 [2]**  1833/9 1833/21
**page 26 [1]**  1834/4
**page 3 [1]**  1835/20
**paid [1]**  1823/14
**pain [1]**  1822/14
**paragraph [13]**  1807/16

1807/19 1808/5 1813/9 1814/1 1815/11 1824/5 1824/18 1825/15 1827/17 1827/18 1829/9 1829/24
**paragraph 4 [1]**  1807/19
**paragraph 6 [1]**  1808/5
**pardon [1]**  1811/22
**parenthetical [1]**  1836/8
**part [10]**  1807/20 1811/20 1816/19 1818/7 1819/5 1823/10 1823/11 1826/18 1828/4 1831/8
**participating [3]**  1812/12 1817/4 1817/20
**particular [3]**  1807/21 1809/13 1826/21
**particularly [6]**  1806/23 1811/7 1816/16 1822/1 1822/11 1841/7
**parties [3]**  1810/17 1810/21 1837/16
**party [1]**  1812/3
**payment [1]**  1818/6
**pen [1]**  1812/20
**perform [3]**  1827/4 1828/19 1834/23
**period [2]**  1824/22 1829/25
**permanent [3]**  1826/5 1826/9 1827/20
**person [8]**  1825/6 1826/10 1827/3 1828/4 1829/15 1830/4 1830/7 1831/6
**perspective [1]**  1829/15
**Phone [1]**  1805/10
**phrase [2]**  1816/10 1817/5
**phrasing [1]**  1831/1
**physical [3]**  1822/12 1822/14 1823/9
**picked [1]**  1820/1
**PJI [1]**  1809/11
**place [1]**  1816/25
**plaintiff [16]**  1809/7 1811/3 1817/23 1817/24 1818/25 1824/12 1824/22 1825/5 1830/6 1830/18 1834/22 1835/15 1835/16 1835/21 1835/22 1836/10
**Plaintiff Tagai [3]**  1835/15 1835/21 1835/22
**plaintiffs [11]**  1804/6 1804/15 1809/1 1811/9 1811/15 1818/17 1828/9 1835/10 1837/12 1838/3 1840/2
**plaintiffs' [3]**  1809/22 1816/20 1823/11
**plausible [1]**  1811/4
**play [1]**  1820/3
**Plaza [1]**  1805/3
**pleading [1]**  1840/15
**point [7]**  1810/9 1815/21 1822/5 1823/12 1830/24 1831/15 1840/24
**points [1]**  1841/14
**position [4]**  1807/7 1823/6 1829/16 1830/5

**P**

possible [1]   1811/3
POWERS [10]   1804/8 1805/6
  1809/4 1811/9 1811/13 1812/8
  1815/10 1818/5 1836/19
  1837/3
preceding [1]   1827/18
prefer [2]   1820/16 1837/25
prejudiced [2]   1811/10
  1811/15
prejudicial [1]   1840/17
preliminary [2]   1808/23
  1811/20
present [6]   1806/1 1826/4
  1826/4 1830/17 1832/14
  1833/12
presently [1]   1826/13
preserved [5]   1806/19
  1811/25 1841/3 1841/11
  1841/11
preserving [2]   1807/1 1841/3
press [1]   1839/25
pretended [1]   1814/16
pretty [2]   1813/20 1840/16
previously [1]   1840/9
probability [1]   1820/23
problem [4]   1818/11 1827/22
  1829/12 1840/25
procedure [2]   1808/7 1808/11
Proceedings [2]   1805/13
  1841/24
process [1]   1808/21
produced [1]   1805/13
prohibited [2]   1809/25
  1816/4
prong [5]   1812/10 1812/10
  1824/4 1825/4 1825/20
properly [1]   1815/4
proposed [12]   1806/8 1806/11
  1806/16 1806/20 1807/10
  1807/12 1807/19 1808/5
  1809/22 1810/13 1820/25
  1823/20
proposing [1]   1812/18
propriety [1]   1810/11
protected [1]   1807/2
protective [1]   1811/14
prove [1]   1819/1
provision [1]   1818/23
pull [1]   1835/4
purpose [1]   1830/4
purposes [1]   1806/25
pursuant [1]   1835/12
put [11]   1808/19 1810/15
  1810/19 1811/4 1814/25
  1816/22 1816/23 1822/18
  1823/16 1836/8 1839/20

**Q**

quarter [1]   1838/17
questioning [1]   1811/9
quickly [1]   1834/9
quite [2]   1828/2 1836/4
quote [3]   1817/2 1839/3
  1839/8
quotes [1]   1822/10

**R**

raise [1]   1836/2
raised [1]   1823/1
rather [2]   1815/25 1837/23
rea [3]   1807/21 1830/25
  1831/1
read [3]   1814/3 1826/7
  1826/7
reading [2]   1815/5 1820/15
reads [1]   1825/15
real [1]   1816/9
reality [1]   1816/16
really [22]
reason [7]   1807/17 1807/20
  1809/21 1810/3 1811/1 1837/9
  1840/9
reasonable [6]   1829/15
  1830/4 1830/7 1830/18
  1830/19 1831/6
reasonableness [1]   1830/20
reasons [1]   1835/1
recently [1]   1806/10
reckless [9]   1816/6 1819/25
  1820/1 1820/4 1820/6 1820/9
  1825/4 1825/7 1825/10
recklessly [2]   1817/6
  1817/21
recognize [1]   1815/5
recollection [2]   1814/22
  1814/24
record [7]   1806/15 1808/10
  1823/7 1839/16 1840/5
  1840/20 1840/23
recorded [1]   1805/13
recover [1]   1836/10
recruiting [8]   1815/14
  1816/3 1816/8 1816/8 1816/15
  1817/2 1817/19 1818/7
redline [1]   1812/18
refer [1]   1840/18
refers [1]   1828/19
regard [6]   1807/4 1807/23
  1808/5 1808/17 1810/25
  1832/11
regarding [1]   1809/13
regards [3]   1814/13 1839/17
  1839/23
rehash [1]   1806/22
reject [2]   1809/21 1815/11
  1823/20 1839/15 1840/1
  1840/7
rejected [8]   1806/18 1806/22
  1811/24 1826/19 1826/21
  1826/24 1839/18 1841/17
rejecting [6]   1807/10
  1807/12 1807/15 1807/16
  1807/19 1809/22
rejection [1]   1841/17
relate [1]   1822/2
relates [1]   1822/2
relevant [1]   1809/15
rely [1]   1812/19
remains [1]   1825/1
remarks [1]   1828/11
remembered [1]   1810/7
renewing [1]   1839/14

**R** (continued)

repeat [4]   1811/23 1817/3
  1818/16 1841/5
repeating [1]   1818/14
replace [1]   1821/13
reporter [3]   1805/10 1828/15
  1835/19
reporter's [1]   1812/20
request [2]   1809/21 1809/23
  1810/14
required [2]   1815/13 1830/24
requirement [1]   1815/21
requires [2]   1819/19 1824/15
respond [1]   1820/20
response [21]
restraint [1]   1822/13
resume [1]   1841/24
REYES [1]   1804/5
RICHARD [1]   1805/7
RICHTER [1]   1805/2
rid [1]   1822/13
rights [1]   1806/20
risk [3]   1820/18 1820/19
  1820/22
Rockefeller [1]   1805/3
room [1]   1811/11
ROSENBERG [4]   1804/20 1815/7
  1828/13 1839/3
RPR [1]   1805/10
RUBIN [6]   1804/8 1804/19
  1805/2 1809/2 1814/17 1838/5
Rubin's [1]   1807/5
Rule [5]   1806/8 1835/12
  1839/17 1841/4 1841/14
Rule 15 [1]   1839/17
Rule 50 [4]   1806/8 1835/12
  1841/4 1841/14
ruled [1]   1841/6
rules [1]   1810/8

**S**

sadomasochism [1]   1822/9
safe [1]   1839/7
sake [1]   1808/16
sat [1]   1809/18
saved [1]   1837/22
saw [1]   1823/12
SCHLAM [1]   1805/5
Scouts [1]   1816/9
search [1]   1821/13
second [6]   1809/18 1812/9
  1824/18 1825/6 1827/17
  1835/17
seconds [1]   1812/3
section [2]   1833/17 1833/19
seek [1]   1826/3
seem [3]   1824/23 1825/2
  1825/3
SENIOR [1]   1804/12
sent [3]   1806/11 1808/16
  1833/20
sentence [7]   1818/9 1826/6
  1827/16 1827/17 1827/19
  1829/22 1833/21
separate [3]   1836/21 1836/23
  1837/9
serious [1]   1830/17

**S**

**sermon [1]**   1837/22
**sex [19]**   1812/11 1816/12 1817/24 1824/12 1824/22 1825/6 1826/19 1826/21 1827/4 1827/5 1828/4 1828/6 1828/19 1828/21 1834/23 1834/24 1836/19 1836/21 1837/7
**SHEPPARD [1]**   1805/2
**short [3]**   1821/20 1840/4 1840/22
**shorten [1]**   1806/5
**shorter [3]**   1837/23 1837/25 1839/4
**shot [1]**   1806/24
**side [1]**   1809/13
**sides [1]**   1809/12
**similar [2]**   1814/7 1823/3
**simply [6]**   1809/17 1820/6 1824/14 1828/6 1839/16 1840/14
**six [1]**   1837/24
**SKIPSEY [1]**   1804/20
**slightly [2]**   1818/24 1822/5
**slow [2]**   1817/16 1820/7
**Slowly [1]**   1829/21
**small [1]**   1828/2
**somewhat [2]**   1808/21 1839/14
**souls [1]**   1837/22
**Sounds [1]**   1820/13
**specific [3]**   1814/24 1830/25 1836/2
**specifically [3]**   1813/22 1814/13 1814/20
**spirit [1]**   1841/2
**spoliation [4]**   1809/22 1811/1 1811/4 1811/8
**squarely [1]**   1839/18
**stand [1]**   1815/8
**standard [3]**   1809/5 1831/2 1834/10
**start [8]**   1815/5 1827/8 1835/6 1837/17 1838/12 1838/13 1838/16 1838/17
**state [1]**   1840/11
**statement [4]**   1819/2 1819/5 1819/9 1819/10
**statements [2]**   1829/23 1829/25
**STATES [3]**   1804/1 1804/5 1804/12
**statute [28]**
**statutory [3]**   1821/12 1822/25 1830/12
**stay [1]**   1822/24
**stenography [1]**   1805/13
**stick [2]**   1817/1 1820/11
**STONE [1]**   1805/5
**stop [1]**   1806/25
**stopping [1]**   1838/18
**strike [1]**   1820/10
**stuff [2]**   1816/4 1837/8
**submission [1]**   1822/9
**submissions [1]**   1806/8
**submit [1]**   1812/17

**submitted [1]**   1806/20
**subsequent [2]**   1829/23 1829/24
**substitute [1]**   1824/20
**substituted [1]**   1819/17
**subsumes [1]**   1825/10
**suggest [1]**   1829/17
**suggesting [1]**   1814/3
**summary [1]**   1830/14
**summation [1]**   1838/6
**surprising [1]**   1814/20
**switching [1]**   1830/19

**T**

**TAGAI [4]**   1804/4 1835/15 1835/21 1835/22
**talks [2]**   1820/4 1820/17
**ten [1]**   1806/10
**tend [1]**   1837/21
**term [1]**   1814/14
**terms [1]**   1820/22
**testified [1]**   1814/15
**testimony [6]**   1810/11 1814/19 1814/22 1814/24 1815/1 1815/3
**text [4]**   1819/19 1822/10 1823/12 1824/20
**therefore [1]**   1820/25
**thinking [2]**   1815/18 1838/10
**third [4]**   1813/8 1814/1 1817/1 1817/14
**threat [10]**   1813/23 1813/25 1814/4 1814/8 1814/11 1814/12 1821/6 1821/9 1821/10 1821/14
**threatened [1]**   1814/17
**threats [7]**   1817/22 1824/11 1824/21 1826/12 1826/15 1827/11 1827/12
**three [5]**   1807/17 1813/8 1822/13 1838/15 1838/17
**Throughout [1]**   1819/16
**time-barred [1]**   1840/16
**timeline [2]**   1815/13 1815/20
**timing [1]**   1838/10
**together [1]**   1830/6
**tomorrow [3]**   1812/22 1815/3 1815/6
**top [3]**   1819/24 1821/7 1821/9
**tort [1]**   1835/10
**torts [1]**   1839/25
**total [9]**   1823/12 1835/14 1835/21 1836/6 1836/7 1836/15 1836/20 1837/1 1838/15
**totally [1]**   1816/20
**towards [1]**   1837/21
**track [1]**   1813/22
**tracking [2]**   1821/8 1824/14
**tracks [1]**   1813/11
**trafficking [5]**   1812/11 1825/6 1836/19 1836/22 1837/8
**transcripts [1]**   1815/5
**transporting [1]**   1818/5

**TRIAL [1]**   1804/11
**true [2]**   1839/3 1841/10
**Tuesday [1]**   1838/13
**turn [1]**   1828/12
**Twain [3]**   1837/21 1839/2 1839/8
**two [12]**   1807/12 1813/8 1819/20 1819/25 1822/15 1823/13 1827/6 1835/10 1837/6 1838/6 1838/20 1839/4

**U**

**U.S.C [1]**   1839/23
**understood [4]**   1830/5 1830/7 1836/16 1840/12
**unfairly [1]**   1840/17
**UNITED [3]**   1804/1 1804/5 1804/12
**universal [1]**   1819/18
**unless [1]**   1814/17
**uno [1]**   1809/5
**unusual [1]**   1839/2
**urge [2]**   1839/3 1839/7
**uses [2]**   1819/17 1819/19

**V**

**various [1]**   1818/14
**venture [7]**   1812/12 1813/9 1817/20 1824/9 1824/19 1825/18 1825/21
**venture's [1]**   1825/16
**verb [2]**   1819/17 1819/17
**verbs [4]**   1813/10 1817/3 1817/19 1818/8
**verdict [4]**   1831/18 1834/14 1835/4 1837/11
**version [2]**   1819/24 1828/25
**versus [1]**   1804/7
**via [1]**   1806/1
**videoconference [1]**   1806/1
**view [1]**   1806/12
**violate [1]**   1830/24
**violation [3]**   1821/24 1825/18 1825/21

**W**

**wait [1]**   1812/3
**wants [1]**   1806/24
**ways [1]**   1806/12
**weeks [1]**   1823/13
**weight [1]**   1841/12
**welcome [1]**   1840/8
**whole [1]**   1826/7
**willful [1]**   1825/10
**willing [3]**   1817/25 1826/10 1827/3
**withdraw [1]**   1839/22
**witnesses [1]**   1809/13
**word [7]**   1817/1 1817/22 1820/11 1822/16 1825/1 1831/5 1836/6
**wording [2]**   1822/4 1829/16
**words [10]**   1810/16 1812/12 1818/14 1820/10 1822/5 1822/13 1824/19 1829/12 1830/5 1836/9

```
W
works [2]   1822/4 1838/23
woulds [1]   1821/2
write [3]   1813/1 1840/6
 1840/8
writing [1]   1806/15
written [1]   1839/17
wrote [1]   1830/14

Y
years [1]   1809/19
YORK [9]   1804/1 1804/6
 1804/16 1804/16 1804/19
 1804/19 1805/3 1805/6 1805/6
yourself [1]   1838/20
```