John G. Balestriere
Rebecca Gonzalez*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone:     (212) 374-5421
Facsimile:     (212) 208-2613
john.balestriere@balestrierefariello.com
rebecca.gonzalez@balestrierefariello.com
*Admitted in California & Pending Admission in New York
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **AMY MOORE, MIA LYTELL, NATASHA TAGAI, EMMA HOPPER, BRITTANY HASSEN and BRITTANY REYES,**<br><br>Plaintiffs,<br><br>– against –<br><br>**HOWARD RUBIN,**<br><br>Defendant. | Case No.: 1:17-cv-06404-BMC<br><br>**DECLARATION OF JOHN G. BALESTRIERE IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS** |

I, John G. Balestriere, an attorney duly admitted to practice law in the Eastern District of New York, of legal age and under penalty of perjury, pursuant to 28 U.S.C. § 1746, declare the following:

1. I am an attorney at the law firm Balestriere Fariello (the "Firm," or "Plaintiffs' Counsel"). We represent Plaintiffs Amy Moore ("Moore"), Mia Lytell ("Lytell"), Natasha Tagai ("Tagai"), Emma Hopper ("Hopper"), Brittany Hassen

("Hassen"), and Brittany Reyes ("Reyes") (collectively, "Plaintiffs") in the above-referenced action against Defendant Howard Rubin ("Rubin").

2. I submit this declaration in support of Plaintiffs' Motion for Attorney's Fees and Reimbursement of Costs.

*Plaintiffs' Fees and Costs*

3. Plaintiff's Counsel spent approximately 12,006.9 hours successfully litigating this action for a total of $8,793,940.80 in attorney's fees, incurring $2,035,386.10 in expenses.

4. The Firm began billable work on this action on August 16, 2017.

5. Prior to accepting the engagement, the Firm had no prior professional relationship with any of the Plaintiffs.

*Plaintiffs' Counsel's Rates and Hours Billed*

6. The below table indicates the current benchmark hourly rates for Firm attorneys and staff members, as applied to those who worked on the matter over the 7 years of this action:

| TITLE | HOURLY RATES (USD) |
|---|---|
| Partner | 1,670; 1,290; 1,200; 1,089 |
| Sr. Attorney | 715 |
| Mid-level Attorney | 650 |
| Jr. Attorney | 450 |
| Law Clerk | 417 |
| Non-attorney Analyst | 385 |
| Legal Apprentice/Law Student | 385 |

7. The Firm occasionally "no-charged" or discounted its fees on any given billing statement in this matter, consistent with the Firm's practice. Plaintiffs do not seek to recover fees that the Firm no-charged in its billing statements, and thus have excluded those hours from the total hours the Firm spent on this action. What would have been billed for the no-charged hours are not included in the total fees Plaintiffs seeks here.

8. Although a total of 36 staff members contributed to the Plaintiffs' efforts over seven years, a relatively small number of staff members constituted a high percentage of time and fees in this matter. The primary case team, composed of four attorneys (John G. Balestriere, Matthew Schmidt, Jillian L. McNeil, and Brian Grossman) and two non-attorney legal analysts (Jin Lee and Emily Shlafmitz), accounted for over 77% of the fees billed to this action. The four attorneys listed account for over 66% of the fees billed.

9. Consistent with the Firm's practice, other attorneys, non-attorney legal analysts, and law student apprentices performed work on an as needed basis.

10. Rubin marshaled a large team of lawyers and had plentiful resources to fight every step of this litigation.

11. All time spent on counseling, investigation, discovery, trial, and motions— by a relatively small law firm, which has many paying clients to devote time to—was necessary and was not duplicative.

*The Firm Maintains Contemporaneous Time Records and Costs*

12. The Firm follows a detailed, internally audited policy for maintaining time contemporaneous records and costs.

13. Throughout the action, Plaintiffs' Counsel maintained records that specify, for each attorney or timekeeper, the date, the hours expended, and the nature of the work performed. Plaintiffs' Counsel's practice is to enter time records contemporaneously in every matter in which it is engaged, including the matter before this Court.

14. Specifically, Firm staff must record all time spent working on matters handled by the Firm and must, on a daily basis, input their time into the Firm's electronic case management software. Attorneys may designate an individual with knowledge of the matters to record hours entries on his or her behalf, but all attorneys must personally review such entries on a daily basis to ensure accuracy. The Firm's policy is that all hours recorded and accrued working on the Firm's matters during a day must be entered into the Firm's electronic case management software by 10:30 a.m. of the following workday.

15. On at least a monthly basis, Firm staff again review hours entries for accuracy. Also, on at least a monthly basis, the Firm partner overseeing each matter reviews staff hours entries to ensure accuracy and reasonableness.

*Plaintiffs' Counsel Does Not Seek Fees or Costs Associated with the Litigation of Dismissed Defendant Yifat Schnur's Motions for Sanctions or Attorney's Fees*

16. One time defendant Yifat Schnur ("Schnur") moved to dismiss, succeeded, and also successfully moved for sanctions against the Firm for $20,000, which the Firm paid in 2018. Plaintiffs do not seek fees or costs associated with litigation of Schnur's motion for sanctions (Dkt. No. 110) or motion for attorney's fees (Dkt. No. 153), which the Firm estimates to be $175,419.30.

4

17.     Schnur moved for sanctions on May 17, 2018, and for attorney's fees on July 26, 2018. Litigation of these motions occurred contemporaneously with discovery in this action (including paper discovery production, issuing demands, and litigating contentious discovery disputes) and litigating Defendant Rubin's Motion for Reconsideration of the Order on Motion to Dismiss (Dkt. No. 107). My colleagues at my direction reviewed the individual time entries of all staffers to estimate the hours performed related to Schnur's motion for sanctions. Those estimates are listed by day in the attached Exhibit 3. The totals of those estimated hours, broken down by the timekeeper who performed them, are included in the table below.

| ESTIMATED HOURS LITIGATING SCHNUR'S MOTIONS FOR SANCTIONS AND FEES, NOT SOUGHT HERE | | | |
|---|---|---|---|
| **STAFFER** | **TOTAL HOURS ESTIMATED** | **RATE (USD)** | **TOTAL BILLED (USD)** |
| John Balestriere | 25.3 | 1670 | 42251 |
| Karen Bubelnik | 11.7 | 385 | 4504.5 |
| Erin Cole | 23.8 | 385 | 9163 |
| Nathan Gibbs | 5.1 | 385 | 1963.5 |
| Brian Grossman | 61.7 | 450 | 27765 |
| Jin Lee | 22.9 | 385 | 8816.5 |
| Jillian McNeil | 68.4 | 650 | 44460 |
| Haroon Mian | 51.8 | 385 | 19943 |
| Matthew Schmidt | 15.2 | 1089 | 16552.8 |
| | | **TOTAL** | **$175,419.3** |

*Plaintiffs' Counsel's Experience*

18.     John G. Balestriere ("Balestriere"), the senior lawyer on the matter, who dedicated 1,699.7 hours representing the victims in this matter, is a graduate of Columbia College and Yale Law School and has been practicing law since 1998. Prior to starting the Firm, Balestriere spent years as a prosecutor, including for the New York

5

County District Attorney's Office under Robert Morgenthau and in the New York State Attorney General's Office under Eliot Spitzer, and has a substantial investigation background. At the District Attorney's office, amongst others, his duties included investigating and prosecuting domestic violence and sex crimes matters. In the New York State Attorney General's Office, Balestriere directed teams of former police detective investigators, financial auditors, and investigative analysts in long term investigations of organized crime, insurance fraud, human trafficking, and large identity theft rings.

19. After work as a criminal prosecutor and investigator, Balestriere joined a boutique class action firm where he prosecuted securities, antitrust, false claims and consumer fraud cases in the district court and federal courts of appeal against some of the largest banks and public companies in the world. Following his time at the class action firm, Balestriere started the Firm, where he works with colleagues to represent company and individual clients in all types of complex disputes, including commercial and business matters, from investigation through trial or arbitration and appeal. He also represents clients in intense negotiations and directs internal investigations into alleged misconduct within companies, institutions, and government entities.

20. Here, Balestriere was the primary client contact, and supervised the work of all case team members. Balestriere regularly practices in New York's Commercial Division, the Court of Appeals, district courts in New York and elsewhere, and in arbitrations.

21. Matthew Schmidt ("Schmidt"), a former partner at the Firm, dedicated

1,537.1 hours advocating for the Plaintiffs in this matter. Schmidt graduated from Georgetown University and then New York University School of Law in 2009. Schmidt represents clients in federal court, and the state courts of New York and California. Throughout his time as a partner at the Firm, Schmidt advocated for clients in complex business disputes, class action lawsuits, and sex trafficking cases.

22. Under the supervision of Balestriere, Schmidt assisted in completing discovery, drafted the papers for pre-trial motions, prepared witnesses, and assisted during trial.

23. Jillian L. McNeil ("McNeil") was the primary non-partner attorney working on this matter. She dedicated 940.1 hours to litigating this matter. McNeil graduated from the University of California at Los Angeles and worked at the Firm as a law student apprentice before her third year of law school at the Benjamin N. Cardozo School of Law. After graduating from law school in 2011 and returning to the Firm as a lawyer in the same year, she represented plaintiffs and defendants in federal and state courts, as well as in arbitrations and mediations, involving complex commercial matters, defamation, and violation of the False Claims, Dodd-Frank, and Lanham Acts. McNeil regularly practices in New York's Commercial Division, federal court, and in arbitrations.

24. Under the supervision of Balestriere, McNeil assisted in the drafting of the initial and amended complaints, developed weekly case plans to determine workflow for the case team, completed discovery, drafted the papers for the motions for summary judgment, argued at conferences, and prepared witnesses.

25.     Brian L. Grossman ("Grossman") was the primary junior attorney working on this matter, advocating for the Plaintiffs for a total of 1,651.1 hours. He graduated from Pennsylvania State University and JD at the Benjamin N. Cardozo School of Law at which he was the Executive Editor of the *Cardozo Journal of Law and Gender*. Before starting at the Firm, Grossman maximized his time as a law clerk, conducting research and drafting motions for a large bankruptcy claw back case. While working at the Firm on this action Grossman conducted legal research, drafted pre-trial motions, completed discovery, researched case law, and prepared witnesses.

26.     Consistent with the Firm's practices, other attorneys, non-attorney legal analysts, and law student apprentices performed work on an as needed basis, stepping in at times for depositions, document review, editing of papers, or trial preparation.

27.     The non-attorney legal analysts' work on the matter included assisting with motion preparation and filing, assisting at court appearances, compiling and organization of all documents, assisting in managing client relationships, maintaining the court file, maintaining necessary calendaring, coordinating with third parties (including during discovery), and providing support at trial.

*Plaintiffs' Expenses*

28.     Over the course of this action, Plaintiffs incurred $195,962.18 in out-of-pocket expenses. These expenses were contemporaneously recorded in Counsel's time management software, reviewed and approved by senior lawyers, and were based on invoices and receipts.

29.     These expenses are entered by a staff member assigned to the case

generally on a daily basis, but always within a month of incurring the expense. All expense entries are accompanied by a description of the expense. On a monthly basis, the Firm partner assigned to the case reviews all the expenses to ensure all entries are accurate and in accordance with the Firm's procedures.

| Necessary Expenses Incurred by the Firm to Successfully Litigate Over Seven Years ||
| YEAR | EXPENSES (USD) |
| --- | --- |
| 2017 | 9,470.35 |
| 2018 | 254,253.71 |
| 2019 | 83,235.89 |
| 2020 | 27,968.54 |
| 2021 | 11,969.13 |
| 2022 | 105,074.62 |
| 2023 | 2,070.24 |
| 2024 | 1,919.70 |
| **TOTAL** | **495,962.18** |

30. The detailed expense reports are contained within the itemized time records and expenses for Plaintiffs' Counsel from August 16, 2017 to April 30, 2024, attached to this declaration as Exhibit 1.

*Plaintiffs' Relied Upon Crucial Legal Funding to Pursue this Outcome*

31. As the Firm is small, to obtain resources for out-of-pocket expenses, the Firm entered into a Legal Funding Contract and Security Agreement ("Legal Funding Agreement") with litigation funder Pravati Capital, LLC on behalf of Pravati Credit Fund III, LP ("Pravati") on March 27, 2018.

32. Under the Legal Funding Agreement, the Net Advanced Amount to the Firm was $300,000 used in whole to pay for out-of-pocket expenses. This was a non-recourse high interest loan, whereby if, and only if, there is a recovery, the litigation

9

funder would receive the return of its initial loan plus interest and expenses. On March 30, 2018, Pravati wired the Firm $300,000 pursuant to this Legal Funding Agreement.

33. Pravati requires an interest reserve of $345,600, indicating this was prepayment of a minimum of 24 months of interest, which was applied against monthly accruals which would be due under the loan.

34. The total Gross Advanced Amount under the Legal Funding Agreement was $669,600, including the Net Advanced Amount and the interest reserve.

35. The interest accrued on the Gross Advanced Amount of $669,600 at 3% simple interest per month, for 73 months (March 2018 through April 2024), sums to $1,466,424.00.

36. Taking this total accrued interest of $1,466,424.00, and subtracting the interest reserve of $345,600, equals the amount of interest owed to Pravati of $1,120,824.00 if there is a recovery.

37. The closing costs and fees under the Legal Funding Agreement included an advance origination fee of $15,000.00 (which was 5% of the Net Amount Advanced, $300,000), a due diligence fee of $6,000.00, the legal document preparation fee of $3,000.00, and a service fee of $25,000 (quarterly $1,000.00 for 25 quarters), which sums to $49,000.

38. The sum of (i) the interest on this loan owed to Pravati through April 30, 2024 in the amount of $1,120,824.00, (ii) the closing costs in the amount of $49,000, and (iii) the repayment of the gross amount advanced, $669,600, sums to $1,839,424.00.

39. Thus, repayment of the principal and interest on the non-recourse loan

through April 30, 2024, which was necessary to prosecute this action against the well-resourced defendant, Rubin, on behalf of six plaintiffs, results in a total cost of in the amount of $1,839,424.00.

40. The Firm's expenses in this action include both $1,839,424.00 in principal and interest on the non-recourse loan and the remaining $195,962.18 in out-of-pocket expenses, advanced by the Firm, which totals $2,035,386.10 in expenses.

*Exhibits*

41. Attached to this declaration as Exhibit 1 is a true and correct copy of the detailed, itemized time records and expenses for Plaintiffs' Counsel from August 16, 2017 to April 30, 2024.

42. Attached to this declaration as Exhibit 2 is a true and correct copy of the March 27, 2018 Legal Funding Contract and Security Agreement between litigation funder Pravati Capital, LLC and the law firm Balestriere Fariello.

43. Attached to this declaration as Exhibit 3 is a spreadsheet showing the individual time estimates of the work done by the Firm related to litigating Schnur's Motions for Sanctions and Attorney's Fees.

44. Attached to this declaration as Exhibit 4 is a true and correct copy of the March 30, 2022 Trial Transcript at 1533 – 1538.

Dated: New York, New York
         May 2, 2024

By: _____
John G. Balestriere
Rebecca Gonzalez*
**BALESTRIERE FARIELLO**
225 Broadway, 29th Floor
New York, New York 10007
Telephone: (212) 374-5421
Facsimile:  (212) 208-2613
john.balestriere@balestrierefariello.com
rebecca.gonzalez@balestrierefariello.com
*Admitted in California & Pending Admission in New York
*Attorneys for Plaintiffs*