# Exhibit 2

4400 North Scottsdale Rd. Suite 9277
Scottsdale, AZ 85251
Tel. 844.772.8284
Fax 480.648.0971



## Law Firm Legal Funding Contract & Security Agreement

This Law Firm Legal Funding Contract & Security Agreement (as may be amended from time to time, including all Exhibits and Schedules hereto, this "Agreement") is made and entered into by and between Pravati Credit Fund III, LP, a Delaware limited partnership (including its successors and assigns and each affiliate or partner providing funding under this Agreement, "PRAVATI"), and Balestriere PLLC, a New York Professional Limited Liability Corporation (including its successors and permitted assigns, "LAW FIRM"). PRAVATI and LAW FIRM are each herein sometimes referred to as a "Party" and collectively as the "Parties".

**By this Agreement, PRAVATI is making a legal funding to LAW FIRM secured by the contingency fees and expense reimbursements earned in connection with the outcomes of Rubin Cases in a Portfolio of Rubin Cases. If LAW FIRM is unsuccessful and receives no Proceeds of any kind on the Portfolio of Rubin Cases and is not in Default under this Agreement (excepting a Default under clause "(xiii)" of the definition thereof), then LAW FIRM will owe no money to PRAVATI under this Agreement. As collateral security, LAW FIRM is granting to PRAVATI, among other protections, a perfected first priority security interest in and to all potential future Proceeds from the Portfolio of Rubin Cases, but PRAVATI has absolutely no right to and will not make any decisions with respect to LAW FIRM's services or counseling provided or the strategy in representing its Clients in connection with the Portfolio of Rubin Cases. The right and responsibility to make all such legal and strategic decisions relating to the handling and/or settlement of the Rubin Cases in the Portfolio of Rubin Cases remains solely with LAW FIRM and its lawyers. This Agreement defines all the terms and conditions of the legal funding between LAW FIRM and PRAVATI.**

## RECITALS

Whereas, LAW FIRM has been retained (and/or will be retained) as legal counsel with respect to the Rubin Cases included in the Portfolio of Rubin Cases and has signed and/or will sign a Contingent fee agreement with each of its Clients in connection with each such Rubin Case in the Portfolio of Rubin Cases; and

Whereas, LAW FIRM has reviewed and considered the terms and conditions of this Agreement and is aware of the various fees associated with the legal funding arrangement hereunder, and LAW FIRM has considered all other alternative avenues of commercial funding for operating its law practice and prosecuting the Rubin Cases, including loans from banks and other entities that lend money; and

Whereas, LAW FIRM desires, on behalf of its clients, to obtain the legal funding hereunder from PRAVATI pursuant to the terms of this Agreement in connection with litigating the Rubin Cases, and LAW FIRM has determined that it can and desires to encumber the Collateral in favor of PRAVATI pursuant to this Agreement; and

Whereas, PRAVATI has agreed to provide legal funding to LAW FIRM in consideration of the fees and protections hereunder, including, without limitation the lien on, security interest in, and assignment of, the Collateral, the Proceeds and any and all payment intangibles that arise from time to time in connection with any settlement, judgment or other resolution of any Rubin Case in the Portfolio of Rubin Cases and/or any Relating Proceedings being represented by LAW FIRM.

PRAVATI acknowledges that the outcome of any future settlement, judgment or other resolution of the Portfolio of Rubin Cases is uncertain, unpredictable, and involves risks beyond the Parties' control and could result in no payment or recovery of Proceeds by LAW FIRM against any Defendant or others arising out of the Portfolio of Rubin Cases or Related Proceedings.

## COVENANTS AND AGREEMENTS

1.  <u>CONSIDERATION:</u> Now, therefore, in consideration of the sums advanced to LAW FIRM hereunder (as described in <u>Schedule A),</u> and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, PRAVATI and LAW FIRM do hereby agree to the terms, provisions and conditions of this Agreement (including the Exhibits and Schedules hereto and thereto).

2.  <u>DEFINITIONS:</u> Supplementing the terms defined elsewhere in this Agreement, the following terms
    (including other forms of such terms) used throughout this Agreement shall have the following meaning:

    "<u>Account</u>" means a right to payment of a monetary obligation, whether or not earned by performance, and any "account" as defined in the applicable version of Article 9 of the Uniform Commercial Code.

    "<u>Assignment</u>" means the total and immediate transfer of all of LAW FIRM's rights, title and interest in and to any and all Proceeds from any and all Rubin Cases in the Portfolio of Rubin Cases and all Related Proceedings.

    "<u>Rubin Case" or "Rubin Cases</u>" means any Lawsuits, Proceedings, Things in Action, and/or any other claims for damages that is now or hereafter included (or that is deemed to be included) on <u>Schedule B</u> and all derivative or related claims of any Client of LAW FIRM arising from or relating to the injury/incident/event directly or indirectly involving any Defendant. Notwithstanding anything else in this Agreement, PRAVATI is providing funding for, and the LAW FIRM is only providing PRAVATI an interest in, the Rubin Case and any Related Proceedings, if any.

    "<u>Client</u>" means any individual and/ or business who signs (or has signed) a retainer agreement with LAW FIRM relating to the Rubin Case.

    "<u>Collateral</u>" means all Accounts, instruments, chattel paper, contract rights, General Intangibles, Payment Intangible  (all as defined in the applicable version of Article 9 of the Uniform Commercial Code, and as supplemented under this Agreement), all bank accounts (<u>other</u> than LAW FIRM's client trust accounts) holding any Collateral or Proceeds, and all similar rights that LAW FIRM may have of every nature and kind in connection with any Client and/or any Rubin Case (including specifically and without limitation, all of LAW FIRM's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that LAW FIRM may have in and with respect to each and every Client and each and every Rubin Case).

    "<u>Default</u>" means the occurrence of any one or more of the following:

    i.  (a) Non-disclosure or concealment to PRAVATI by LAW FIRM or any of its lawyers of any material information about a Rubin Case or any other information material to a Rubin Case about LAW FIRM or any of its lawyers that could reasonably have a material adverse effect on the outcome of any Rubin Case; or

2

ii. (a) LAW FIRM, voluntarily or involuntarily, transfers or encumbers in favor of anyone (other than PRAVATI,) LAW FIRM's interest in any Rubin Case (including, without limitation, its right to any fees in connection with any Rubin Case) or (b) if anyone other than PRAVATI, otherwise obtains any right, title or interest in or to LAW FIRM's interest in any Rubin Case (including, without limitation, its right to any fees in connection with any Rubin Case), provided, however, it will not constitute a Default under clause "(b)" of this section to the extent that a Client grants another law firm (unrelated and unaffiliated with LAW FIRM and/or any of its partners) a contingency fee with respect to such Client's Rubin Case after LAW FIRM abandons such Rubin Case or after such Client terminates the attorney-client relationship with LAW FIRM relating to such Rubin Case so long as LAW FIRM continues thereafter in good faith and in a commercially reasonable manner to pursue collection of the contingency fee earned by LAW FIRM in connection with such Rubin Case prior to such abandonment or termination; or

iii. LAW FIRM (or any of its lawyers), directly or indirectly, takes any action (or fails to take appropriate action the effect of which is) to waive, compromise, reduce, discount, negate, settle or otherwise forego LAW FIRM's interest (including, without limitation, its right to any fees in connection with any Rubin Case) in (a) Rubin Cases representing in the aggregate ten percent (10%) or more of the Proceeds in the Portfolio of Rubin Cases as estimated by LAW FIRM as of the Effective Date, provided however, it will not constitute a Default of this section to the extent that a Client waives, compromises, reduces, discounts, negates, settles or otherwise foregoes its claim and such action thereby results in a reduction of the dollar amount of LAW FIRM's Proceeds associated with such Rubin Case (for the avoidance of doubt, nothing in this section (iii) shall prevent LAW FIRM from engaging in settlement discussions or other settlement work on behalf of Clients); or

iv. (a) Failure of LAW FIRM to deposit all proceeds and other payments received by LAW FIRM in connection with any Rubin Case into LAW FIRM's client trust account within three (3) business days after receipt thereof by LAW FIRM or (b) failure of LAW FIRM to remit to PRAVATI its share of the Proceeds received by LAW FIRM within three (3) business days after Receipt of Proceeds by LAW FIRM (as Receipt of Proceeds is defined in Section 6), provided that such failure to deposit or remit will not constitute a Default under this section if (a) the failure results from an administrative oversight or mistake in processing by LAW FIRM , (b) the respective deposit or remittance is made within ten (10) business days, and (c) no more than two (2) such failures occur within any twelve (12) month period; or

v. Failure of LAW FIRM to timely and promptly make or remit any payment in accordance with the provisions of this Agreement, provided that such failure to remit will not constitute a Default under this section if (a) the failure results from an administrative oversight or mistake in processing the payment, (b) the respective payment is made within ten (10) business days, and (c) no more than two (2) such failures occur within any twelve (12) month period; or

vi. (a) The commencement of any bankruptcy or insolvency proceeding by or against LAW FIRM or any of its partners, or (b) LAW FIRM or any of its partners otherwise become insolvent, or (c) the appointment of a receiver to manage any assets of LAW FIRM or any of its partners; or

vii. Any judgment is entered against LAW FIRM or any of its partners in excess of $250,000.00; or

viii. (a) PRAVATI, for any reason, at any time does not have a perfected, first priority security interest in all of the Collateral, or (b) LAW FIRM fails, refuses or is otherwise unable to grant PRAVATI a perfected, first priority security interest in all of LAW FIRM 's personal property and other assets upon any conversion of Nonrecourse Advances into Recourse Obligations; or

ix.   LAW FIRM or any of its partners does not hold a valid license to practice law in the relevant jurisdiction(s) or fails to maintain sufficient malpractice insurance in the amount of at least $500,000.00 per partner in LAW FIRM; or $1,000,000.00 in the aggregate;

x.   LAW FIRM or any of its partners is suspended or disbarred from the practice of law; or

xi.   (a) The indictment, conviction or arrest of any partner of LAW FIRM or (b) LAW FIRM or any of its partners is found by a court of competent jurisdiction to have engaged in any fraudulent activity or that of any deceit; or

xii.   LAW FIRM ceases to operate the practice of law; or

xiii.   Any breach of any covenant, agreement, or warranty contained in this Agreement by LAW FIRM or any inaccuracy as to any representation or statement in this Agreement or in any report in connection herewith by LAW FIRM that is not cured or corrected by LAW FIRM within  thirty (30) days after the earlier of (a) the date on which LAW FIRM or any of its partners become aware of such breach or non-compliance and (b) the date on which PRAVATI notifies LAW FIRM in writing of the occurrence of such breach or non-compliance.

"Defendant" means any and all defendants in the cases listed in Schedule B - LAW FIRM LIST OF RUBIN CASES AND RELATED PROCEEDINGS of this agreement, including successors, assignees and/or other third-party (including any trust and any insurer) who is obligated to make any payments in connection therewith.

"General Intangible" means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter of credit rights, letters of credit, money, oil, gas, or other minerals before extraction. The term includes payment intangibles and software.

"Guarantor" means, individually and collectively, each person (if any) identified on Schedule A as a Guarantor of the Recourse Obligations (if any) under this Agreement.

"Lawsuit" means a claim for damages that any Client possesses against any Defendant or the action that Client has filed to collect damages from any Defendant or any Related Proceedings.

"Legal Funding" means all money paid or otherwise advanced to or on behalf of LAW FIRM (including any expenses incurred by or on behalf of PRAVATI, as specifically identified in the Term Sheet attached as Schedule A) in anticipation of LAW FIRM's recovery of certain future and pending Proceeds that may arise from any settlement, judgment or other resolution resulting from any Proceedings or Lawsuit relating to the Rubin Cases.

"Monetary Obligation" means an obligation to pay or receive money.

"Nonrecourse Advances" means the obligations of LAW FIRM under this Agreement as to which PRAVATI's only recourse under this Agreement is to the Proceeds and the Collateral relating to the Rubin Cases.

"Payment Intangible" means a general intangible under which the account debtor's principal obligation is a monetary obligation and the contractual right to payment is sufficiently liquidated.

"Portfolio of Rubin Cases" means the collection of Rubin Cases that are now or hereafter included (or that are deemed to be included) on Schedule B.

"Proceeds" means all money or other things of value that LAW FIRM hereafter recovers (or has the right to recover), with the right to retain, directly or indirectly from any Defendant (or any trust, insurer or other third party) in connection with any Rubin Case in the Portfolio of Rubin Cases or any Related Proceeding. For avoidance of doubt, the term "Proceeds" does not include

any portion of a recovery collected by LAW FIRM from any Defendant in connection with a Rubin Case that is owed (a) to the associated Client for such Rubin Case, (b) to any unrelated external referring attorney or law firm for such Rubin Case, or (c) to any unrelated third-party consultant for such Rubin Case that provided services therefore on a Contingent fee basis.

"Proceedings" means any legal or civil claim for damages that any Client of LAW FIRM possesses against any Defendant, including any action LAW FIRM files on behalf of any Client to collect damages from any Defendant and/or otherwise in connection with any Rubin Case in the Portfolio of Rubin Cases or any Related Proceedings

"Related Proceedings" means any claim, case, or causes of action with the same or substantially the same operative facts or allegations arising out of the events, Lawsuit, or Proceedings under any Rubin Case, including without limitation, the filing in a different jurisdiction, adding additional parties, and/or asserting a claim for malpractice, fraud, or breach arising from the handling or mishandling of the underlying Rubin Case.

"Recourse Obligations" means any and all obligations of LAW FIRM under this Agreement (including all Nonrecourse Advances) as to which LAW FIRM is fully liable and PRAVATI has recourse to all assets of LAW FIRM beyond just the Proceeds and the Collateral, but if, and only if, there occurs any Default under this Agreement (other than a Default under clause "(xiii)" of the definition thereof).

"Thing In Action" means any claim or debt upon which a future recovery may be made in a Lawsuit, including any causes of action.

3.   ADVANCES AND PAYMENTS. All advances of Legal Funding by PRAVATI to LAW FIRM under this Agreement will be made by PRAVATI as provided on Schedule A, subject to the terms and conditions otherwise set forth in this Agreement. All payments and repayments to PRAVATI under this Agreement (a) will be made by LAW FIRM as and when provided on Schedule A, subject to the terms and conditions otherwise set forth in this Agreement, and (b) in all instances, will be made by LAW FIRM to PRAVATI unconditionally and in full in immediately available funds of U.S. dollars (without any setoff or deduction). So long as no Default occurs under this Agreement (other than a Default under clause "(xiii)" of the definition thereof), the advances, and other obligations of LAW FIRM under this Agreement will be Nonrecourse Advances; and if any Default occurs under this Agreement (other than a Default under clause "(xiii)" of the definition thereof), all advances, and other obligations of LAW FIRM under this Agreement will be Recourse Obligations.

4.   USE OF FUNDS: LAW FIRM acknowledges and agrees that the Legal Funding provided herein shall be used by LAW FIRM (a) to pay costs and expenses associated with operating a law practice, and/or (b) to refinance all or a portion of LAW FIRM's existing indebtedness, which indebtedness was incurred to finance costs and expenses associated with operating a law practice, and/or (c) to pay federal, state and/or local taxes owed by LAW FIRM or its principals, and/or (d) to make one or more arms' length loans to one or more partners of LAW FIRM, in an aggregate amount collectively not to exceed $25,000.00, and/or (e) to make distributions to one or more shareholders of LAW FIRM in an aggregate amount collectively not to exceed $25,000.00 (provided that such distributions are made in accordance with LAW FIRM's organic documents and applicable law, are made at a time that LAW FIRM is not insolvent and do not result in LAW FIRM becoming insolvent or having insufficient capital to operate LAW FIRM).

5.   SECURITY INTEREST:   LAW FIRM hereby also grants to PRAVATI a security interest (which shall have a first lien priority) in all Collateral (including all Accounts and Payment Intangibles), whether now or hereafter existing, associated with or arising from each Rubin Case

in the Portfolio of Rubin Cases, any Related Proceedings, and all future Rubin Cases or Related Proceedings as collateral and security for the full and timely repayment and performance of all obligations of LAW FIRM under this Agreement. In the event LAW FIRM is engaged to represent or otherwise acquires any additional future Rubin Cases or Related Proceedings, LAW FIRM shall revise Schedule B to set forth each such newly acquired Rubin Cases or Related Proceedings and shall notify PRAVATI of the revisions to Schedule B in a timely manner. LAW FIRM hereby authorizes PRAVATI to file a UCC 1 Financing Statement (and any amendments thereto) as may be desired by PRAVATI to perfect or further protect PRAVATI's security interest in all such Rubin Collateral. LAW FIRM acknowledges and agrees that this Agreement creates a contractual right for PRAVATI to receive payment of the future Proceeds (including Accounts and Payment Intangibles) from the Portfolio of Rubin Cases or other Related Proceedings whenever any such Rubin Case or Proceeding settles or is reduced to a judgment and, as such, at that time, automatically and immediately becomes a perfected security interest in such Proceeds (including Accounts and Payment Intangibles) regardless of whether any UCC-1 Financing Statement is filed.

LAW FIRM understands the above-mentioned legal funding provided by PRAVATI to be a prepayment of LAW FIRM's possible recovery of future Proceeds and Collateral. PRAVATI acknowledges it is providing legal funding for certain future Proceeds that may arise from the Portfolio of Rubin Cases or other Related Proceedings and, as such, PRAVATI understands that if there is no recovery of Proceeds or Collateral by LAW FIRM against any Defendant in the Portfolio of Rubin Cases or other Related Proceedings and LAW FIRM is not in Default under this Agreement (other than a Default under clause "(xiii)" of the definition thereof), then, and only then, LAW FIRM shall not owe PRAVATI any repayment of the funds advanced under this Agreement.

LAW FIRM also understands, acknowledges and agrees that LAW FIRM shall not assign, dispose of, encumber, or pledge as security or otherwise all or any portion of the Proceeds or Collateral, or any other interest in any Rubin Case in the Portfolio of Rubin Cases or other Related Proceedings unless and until PRAVATI is first unconditionally and finally paid in full in immediately available funds of U.S. dollars (without any setoff or deduction) with respect to all amounts owed to PRAVATI under this Agreement.

Notwithstanding anything else in this Agreement, PRAVATI understands, agrees, and acknowledges that pursuant to the LAW FIRM's engagement agreements with the Clients in the Rubin Case, Crotty Saland, LLP shall receive 30% of any success fee received by LAW FIRM in the Rubin Case. PRAVATI agrees that such rights of Crotty Saland, LLP do not constitute a Default or any other breach under this Agreement.

6.  DEPOSIT & DISTRIBUTION OF PROCEEDS: LAW FIRM agrees, covenants and warrants that all payments (including the payment of all Proceeds) made by or on behalf of any Defendant (including any payments made by the settlement claims administrator) in connection with any Rubin Case will be delivered directly to LAW FIRM and will be immediately deposited by LAW FIRM (within three (3) business day after receipt thereof by LAW FIRM) into LAW FIRM's client trust account. LAW FIRM also agrees, covenants and warrants that LAW FIRM will not at any time make any payment to any Client, to LAW FIRM or to any other person or party from LAW FIRM's client trust account relating to any Rubin Case unless LAW FIRM also concurrently therewith pays and remits to PRAVATI its portion of the Proceeds with respect to such Rubin Case (as such portion owed to PRAVATI is determined in accordance with this section).

So long as no Default has occurred, then LAW FIRM will be entitled to retain fifty percent (50%) of the Proceeds earned on each Rubin Case and shall remit to PRAVATI the remaining

fifty percent (50%) of such Proceeds earned on each Rubin Case until PRAVATI has been paid in full within three (3) business days after Receipt of Proceeds by LAW FIRM.

The foregoing notwithstanding, if a Default has occurred or if a Material Adverse Litigation Development (defined below) occurs, then (a) LAW FIRM will not be entitled to retain any of the Proceeds earned on any Rubin Case unless and until PRAVATI has been paid in full in immediately available funds of U.S. dollars the entire amount owed to PRAVATI under this Agreement, and (b) LAW FIRM shall remit to PRAVATI one hundred percent (100%) of such Proceeds earned on each Rubin Case within three (3) business days after Receipt of Proceeds by LAW FIRM until such payment in full of the amounts owed to PRAVATI, provided that, if a Material Adverse Litigation Development has occurred but no Default has otherwise occurred, then LAW FIRM may nevertheless retain a portion of such Proceeds (not to exceed twenty five percent (25%)) with respect to any Rubin Case for which LAW FIRM owes and pays an internal referral fee to an attorney employed by LAW FIRM other than Balestriere Fariello, John G. Balestriere.

For purposes of this Section 6, the term "Receipt of Proceeds" shall mean the date on which any payment received by LAW FIRM in connection with any Rubin Case has been deposited by LAW FIRM and recognized by LAW FIRM's financial institution as available funds.

For purposes of this Section 6, the term "Material Adverse Litigation Development" means any holding, order or ruling by a court of competent jurisdiction after the effective date of this Agreement  that PRAVATI determines (acting in good faith and in a commercially reasonable manner) is likely to have a material adverse effect on the collectability of or the likelihood of LAW FIRM collecting the Proceeds estimated by LAW FIRM with respect to a portion of the Rubin Cases in the Portfolio of Rubin Cases deemed meaningful by PRAVATI.

7.   AUTHORIZATION TO SHARE RUBIN CASE INFORMATION WITH PRAVATI: LAW FIRM hereby represents and warrants to PRAVATI that LAW FIRM is authorized to release to PRAVATI any/all information, files, records and documents for the duration of this Agreement regarding the subject matter and status of each Client's Rubin Cases and other Related Proceedings. PRAVATI shall treat such information as confidential and shall receive and review these materials solely in the limited capacity necessary for the initial review and underwriting process as well as the ongoing execution and maintenance of this Agreement. LAW FIRM shall make available to PRAVATI, within forty-eight (48) hours after any request by PRAVATI, the files for all of the Rubin Cases so that PRAVATI can perform an onsite audit of each Rubin Case.

8.   REPORTING: Within five (5) days after the end of each month during the term of this Agreement, LAW FIRM shall send a report to an attorney of PRAVATI's choice detailing all the pledged Rubin Cases in the Portfolio of Rubin Cases and other Related Proceedings, which monthly report shall accurately identify the following information as of the end of the immediately preceding month: (a) the current status of each Rubin Case, including without limitation, the eligibility and approval of all Rubin Cases and Client claims submitted by LAW FIRM or otherwise on behalf of any Client, and (b) any other information regarding the Rubin Cases that PRAVATI may reasonably request from time to time. LAW FIRM further agrees to provide PRAVATI annual financial statements (audited or unaudited) within ten (10) days after LAW FIRM's receipt thereof for each year during the term of this Agreement. Within fourteen (14) days after receipt of any request by PRAVATI, LAW FIRM will provide PRAVATI with

copies of all related bank statements and trust accounts for each month that legal funding is outstanding under this Agreement.

9. <u>RETAINER AGREEMENTS; CONTROL OVER RUBIN CASES:</u> LAW FIRM warrants, represents and covenants (a) that it has (and at all times during the term of this Agreement, will have) a valid and legally enforceable retainer agreement with each Client, and (b) that it has (and at all times during the term of this Agreement, will have) an enforceable lien on the proceeds of each Rubin Case in the Portfolio of Rubin Cases identified on <u>Schedule B</u> or otherwise pledged to PRAVATI under this Agreement, and (c) that all amounts owed to LAW FIRM by each Client are valid. The Parties acknowledge and agree that this Agreement is expressly intended to transfer, convey, Assign, encumber and relinquish control over the Proceeds and Collateral that may result from the Rubin Cases in the Portfolio of Rubin Cases and other Related Proceedings necessary to enforce this Agreement. PRAVATI, however, shall have no right to and will not make any decisions with respect to the conduct of the underlying civil actions or Claims or make any decisions with respect to any settlements or resolution thereof; the right and obligation to make those decisions remains solely with LAW FIRM and its lawyers.

10. <u>DISCHARGES:</u> LAW FIRM understands and agrees that if it is (a) discharged, (b) acquires co-counsel with or without PRAVATI's written permission, and/or (c) is otherwise relieved of its responsibilities with respect to any Client(s) in any of the Rubin Cases or other Related Proceedings, LAW FIRM's obligations under this Agreement shall remain in full force and effect. PRAVATI's security interest in the Collateral shall also continue unaffected by any such discharge of LAW FIRM. Within three (3) business days after LAW FIRM being informed that it is being discharged or relieved of its responsibilities, LAW FIRM shall provide written notice thereof by certified mail to PRAVATI, which notice shall include (to the extent known by LAW FIRM) the name, address, telephone number, facsimile number and email of the replacement attorney. PRAVATI shall have the right to protect its interest in this Agreement through all legal remedies, including, without limitation, by notifying any attorneys or parties involved in the continuation of the Client's Rubin Case ensuring that PRAVATI automatically and immediately receives any fees and costs payable to LAW FIRM. LAW FIRM shall also take any action and sign any document reasonably requested by PRAVATI to enable PRAVATI to protect and enforce PRAVATI's rights under this Agreement with respect to any new attorney or creditor of any such Client(s). LAW FIRM irrevocably agrees to associate as counsel Lowell Finson, Esq. on all Rubin Cases listed in <u>Schedule B</u> in the form provided by such counsel, provided that from time to time, upon written notice to LAW FIRM, PRAVATI may substitute other counsel as the associated counsel hereunder. The association of such counsel will only become effective or operative in the event LAW FIRM is disbarred, suspended or is otherwise unable or unavailable to represent Clients in connection with the Cases or to practice law for any reason.

11. <u>ERRORS AND OMISSIONS COVERAGE BY LAW FIRM</u>: LAW FIRM shall maintain errors and omissions insurance coverage, commonly known as malpractice insurance, applicable to the services to be rendered in association with or arising from the Portfolio of Rubin Cases, and any Related Proceedings, in a minimum amount of at least $500,000.00 per partner in LAW FIRM and at least $1,000,000.00 in the aggregate (or such other minimum amount as may be expressly provided in <u>Schedule A).</u>

12. <u>FEES AND EXPENSES:</u> Any fees or expenses paid pursuant to this Agreement by PRAVATI on behalf of LAW FIRM shall accrue interest under this Agreement at the same rate as any additional money paid directly to LAW FIRM. PRAVATI's fees shall also accrue interest on

the aggregate amount of all monies, directly or indirectly, received by or otherwise paid on behalf of LAW FIRM. Fees and expenses paid on behalf of LAW FIRM may include, without limitation, legal fees and costs, independent consultants, other funding companies or lien holders, cashier's checks or other banking fees, and any other fees paid as outlined in <u>Schedule A</u> of this Agreement. LAW FIRM shall pay PRAVATI per the terms of this Agreement as reflected on <u>Schedule A.</u>

13. <u>INDEPENDENT CONSULTANTS:</u> To the extent that any advisor, broker or consultant has assisted either LAW FIRM or PRAVATI in obtaining the legal funding pursuant to this Agreement, LAW FIRM agrees that such advisor, broker or consultant is an independent contractor and not an employee of PRAVATI, has no right or authority to bind PRAVATI, and PRAVATI is not liable for any statements made by such advisor, broker or consultant. All commissions due to any such advisor, broker or consultant engaged by LAW FIRM are the responsibility of and owed independently by LAW FIRM, not PRAVATI. If so directed by LAW FIRM, so long as LAW FIRM is not in Default hereunder, PRAVATI will pay LAW FIRM's obligations owed to such advisor, broker or consultant by adding it to and/or deducting it from the total legal funding hereunder, and such payment shall be included in the total amount owed and to be funded to LAW FIRM.

14. <u>INCORPORATION BY REFERENCE:</u> Each of the Recitals to this Agreement is hereby incorporated herein by reference as if fully set forth herein. Moreover, all schedules attached hereto (as such schedule may be amended and supplemented from time to time) are hereby incorporated herein by reference and made a part of this Agreement. LAW FIRM and PRAVATI also agree to execute and deliver each such Schedule where indicated and required and each Party does so voluntarily, freely, and without duress.

15. <u>BANKRUPTCY:</u> LAW FIRM warrants, represents, and covenants to PRAVATI that (a) neither LAW FIRM nor any of its partners has filed a personal or business bankruptcy within the previous two years; (b) neither LAW FIRM nor any of its partners is currently contemplating the filing for relief under any chapter of the Bankruptcy Code; and (c) neither LAW FIRM nor any of its partners has consulted with a bankruptcy practitioner within the previous 180 days regarding the filing of relief under any chapter of the Bankruptcy Code. In the event that LAW FIRM or any of its partners files any bankruptcy proceeding subsequent to entering into this Agreement, LAW FIRM shall promptly notify PRAVATI of that fact in writing. In addition, if LAW FIRM files bankruptcy proceedings prior to the payoff of all amounts required to be paid to PRAVATI pursuant to this Agreement, LAW FIRM agrees to notify the bankruptcy court that the LAW FIRM previously assigned the Proceeds and Collateral in the Portfolio of Rubin Cases to the extent of the maximum amount referenced in Schedule A, that LAW FIRM no longer owns those Proceeds, and that those Proceeds and Collateral relating to the Rubin Cases, to the extent of the maximum amount referenced in Schedule A, are not available as part of any bankruptcy estate, and that PRAVATI is a secured creditor and has a first priority perfected security interest in the Collateral superior to any other creditor as a result of this Agreement. LAW FIRM acknowledges and agrees that PRAVATI has provided legal funding and LAW FIRM's assignment of the Proceeds relating to the Rubin Cases in the Portfolio of Rubin Cases and obligations to PRAVATI pursuant to this Agreement shall not be discharged, voided, or reduced in any way as a result of any bankruptcy proceeding.

16. <u>CONSTRUCTION:</u> LAW FIRM acknowledges and agrees that, while PRAVATI may have prepared the initial drafts of this Agreement (and all supporting documentation) (collectively, the <u>"Documents"),</u> LAW FIRM is a law firm with resources and legal knowledge much greater

than PRAVATI. LAW FIRM also acknowledges and agrees that all terms of the Documents were subject to negotiation in good faith between the Parties, with the final terms representing a mutual meeting of the minds. PRAVATI thus is not to be deemed the drafter of the Documents and the rule of construction that ambiguities be resolved against the drafter do not apply to any of the Documents between PRAVATI and LAW FIRM.

17.   <u>GOOD FAITH NATURE OF CLAIMS AND LAW FIRM REPRESENTATIONS:</u> LAW FIRM represents, warrants, and covenants unto PRAVATI that, as of the date of this Agreement, (a) LAW FIRM believes the Portfolio of Rubin Cases and other Related Proceedings to be meritorious and filed in good faith; and (b) LAW FIRM has complete right, title and interest in and to the Proceeds with respect to the Portfolio of Rubin Cases and other Related Proceedings, that all of the Rubin Cases including on <u>Schedule B</u> are pending in the settlement process and LAW FIRM has received no money, anything else of value, entered into an undisclosed agreement or taken any undisclosed action that would diminish the value of the Rubin Cases; and (c) LAW FIRM has not and shall not assign or encumber the Proceeds or Collateral or any other similar rights or assets from the Portfolio of Rubin Cases or other Related Proceedings, except as expressly permitted in this Agreement; and (d) LAW FIRM stipulates that no amounts required to be paid to PRAVATI pursuant to this Agreement are, and shall not be, subordinated to any other liens or claims of any other party; and (e) all current liens, assignments, encumbrances or security interest of any kind or nature in or relating to the Proceeds, Collateral, or any other similar rights or assets relating to the Portfolio of Rubin Cases or other Related Proceedings are listed on <u>Schedule C;</u> and (f) LAW FIRM has paid all of its federal, state, and local taxes through the date of execution of this Agreement or has made provisions for the payment; and (g) there are no bankruptcy or insolvency in progress or contemplated involving LAW FIRM or any of its partners; and (h) all financial disclosure made to PRAVATI are true, accurate, complete and fairly characterize the financial position of LAW FIRM; and (i) LAW FIRM and all of its partners hold a valid license to practice law and are not aware of any disciplinary proceedings commenced or about to be commenced by any State Bar Association; and (j) LAW FIRM (and the representative of LAW FIRM who signs this Agreement) has full power and authority to make, execute, and perform this Agreement.

18.   <u>WAIVER:</u> LAW FIRM hereby waives any defenses to payment of ANY amounts required to be paid to PRAVATI pursuant to this Agreement. LAW FIRM understands its instructions regarding payments due PRAVATI under this Agreement are irrevocable without which PRAVATI would not have agreed to provide the legal funding. LAW FIRM hereby agrees not to seek to avoid payment of any such amounts by encouraging, cooperating with, instructing, or authorizing any party to pay or distribute any proceeds from the Portfolio of Rubin Cases or other Related Proceedings to any party except in full and complete compliance with this Agreement. LAW FIRM agrees to cooperate with PRAVATI in good faith and to use all best efforts in procuring payment of all amounts required to be paid to PRAVATI under this Agreement.

19.   <u>LIQUIDATED DAMAGES:</u> In the event that LAW FIRM terminates, defaults or otherwise breaches the covenants, conditions or terms of this Agreement, in addition to the usual contract damages, LAW FIRM shall pay liquidated damages to PRAVATI in the amount of twenty percent (20%) of the outstanding amount of the principal and interest of the Legal Funding provided to LAW FIRM pursuant to this Agreement. LAW FIRM expressly acknowledges that in the event of termination or other breach of the covenants, conditions and terms of this Agreement, the anticipated loss to PRAVATI in such an event will be estimated to be the

amount set forth in this liquidated damages provision and such estimated value is reasonable and not imposed as a penalty.

20. <u>DEFAULT RATE:</u> During the occurrence of any Default by LAW FIRM under this Agreement, to the maximum extent not prohibited by applicable law, all amounts owed to PRAVATI hereunder will accrue interest at a rate of 6% per annum (i.e., 0.5% per month) in excess of the rate otherwise applicable to Nonrecourse Advances hereunder.

21. <u>DISPUTED CLAIMS — MANDATORY ARBITRATION:</u> To the maximum extent not prohibited by applicable law, any and all claims, counterclaims, demands, causes of action, disputes, or other controversies under this Agreement or the alleged breach of any provision hereof (each, a <u>"Disputed Claim"),</u> whether any such Disputed Claim arises at law or in equity, under state or federal law, or the law of any other nation, for damages or any other relief, shall be resolved in the manner set forth below:

DISPUTE RESOLUTION PROCEDURES:

(a) Each Party to this Agreement agrees that all Disputed Claims, which shall include any dispute, controversy or claim that may arise between or among them in connection with, arising out of, or otherwise relating to this Agreement or the application, implementation, validity or breach of this Agreement or any provision of this Agreement (including, without limitation, claims based on contract, tort or statute), shall be finally, conclusively and exclusively settled by binding arbitration in the State of Arizona in accordance with the arbitration rules (the "Rules") of the American Arbitration Association (AAA) or any successor thereto then in effect. **Each Party hereby expressly waives its right to seek remedies in court, including the right to a trial by jury, with respect to any matter subject to arbitration pursuant to this Agreement. Each Party agrees that there shall be no authority for any claims to be arbitrated on a class action or private attorney general basis.**

Furthermore, arbitration can only decide each Party's claims and may not consolidate or join the claims of other persons that may have similar claims. Any Party may bring an action, including, without limitation, a summary or expedited proceeding in any court having jurisdiction, to compel arbitration of any dispute, controversy or claim to which the provisions hereof apply. The initiation and conduct of arbitration shall be as set forth in the Rules, which Rules are incorporated in this Agreement by reference with the same effect as if they were set forth in this Agreement.

(b) The arbitration shall be administered by the AAA. If the AAA is unable or legally precluded from administering the arbitration, then the Parties shall agree upon an alternative arbitration organization, provided that, if the Parties cannot agree, such organization shall be selected by a judge of the United States District Court in the State of Arizona.

(c) All arbitration hearings shall be commenced within thirty (30) days after arbitration is initiated pursuant to the Rules, unless, upon a showing of good cause by a Party to the arbitration, the arbitrator permits the extension of the commencement of such hearing; provided, however, that any such extension shall not be longer than thirty (30) days.

(d) All claims presented for arbitration shall be particularly identified and the Parties to the arbitration shall each prepare a statement of their position with recommended courses of action. These statements of position and recommended courses of action shall be

submitted to the arbitrator. The arbitrator shall not be empowered to make decisions beyond the scope of the position papers

(e)    The arbitration proceeding will be governed by the substantive laws of the State of Delaware and will be conducted in accordance with such procedures as shall be fixed for such purpose by the arbitrator. Each Party shall preserve its right to assert and to avail itself of the attorney-client and attorney-work product privileges, and any other privileges to which it may be entitled pursuant to applicable law. No Party to the arbitration or any arbitrator may compel or require mediation and/or settlement conferences without the prior written consent of all such Parties and arbitrator.

(f)    The arbitrator shall make an arbitration award as soon as possible after the later of the close

of evidence or the submission of final briefs, and in all cases the award shall be made not later than thirty (30) days following submission of the matter. The finding and decision of the arbitrator shall be final and shall be binding upon the Parties. Judgment upon the arbitration award or decision may be entered in any court having jurisdiction thereof or application may be made to any such court for a judicial acceptance of the award and an order of enforcement, as the case may be. The arbitrator shall have the authority to assess liability for pre-award and post-award interest on the claims, attorneys' fees, expert witness fees and all other expenses of arbitration as such arbitrator shall deem appropriate based on the outcome of the claims arbitrated. Unless otherwise agreed by the Parties to the arbitration in writing, the arbitration award shall include findings of fact and conclusions of law.

(g)    Each Party understands that this Agreement contains an agreement to arbitrate with respect

to any dispute or need of interpretation of this Agreement. After signing this Agreement, each Party understands that it will not be able to bring a lawsuit. There shall be no authority for any claims to be arbitrated on a class action or private attorney general basis. Furthermore, arbitration can only decide the Parties' claims and may not consolidate or join the claims of other persons that may have similar claims.

(h)    LAW FIRM understands that the "choice of laws", "forum", and "venue" clauses are critical

in nature, and are essential to this Agreement, and have not been entered into this Agreement as mere "form" insertions and recitals.

In the event of a dispute under the terms of this Agreement, LAW FIRM agrees to retain all Proceeds from the Collateral within its trust account going forward. The prevailing party in the dispute shall be entitled to recover reasonable attorney fees, filing fees and costs associated with litigating the dispute.  The proceeds retained within the trust account pursuant to this section shall be distributed in accordance with this Agreement.

22.   ASSIGNMENT: PRAVATI's rights and obligations under this Agreement may be assigned in its sole discretion without the consent of LAW FIRM. LAW FIRM's rights and obligations under this Agreement may not be assigned or transferred (whether voluntarily, by operation of law or otherwise) without the written consent of PRAVATI, except for transfer by intestate due to LAW FIRM'S death in which case LAW FIRM's heirs, estate, executors and personal representatives will be bound by this Agreement. LAW FIRM agrees that PRAVATI may share information that PRAVATI obtained about LAW FIRM (whether from LAW FIRM or any other person or entity) with potential assignees to whom PRAVATI may assign its rights and obligations under this

12

Agreement, where such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from PRAVATI, provided that PRAVATI enters into an appropriate confidentiality agreement with any such potential assignee.

23.　　USURY SAVINGS: Notwithstanding any provision of this Agreement, LAW FIRM shall not and will not be required to pay interest at a rate or any fee or charge in an amount prohibited by applicable law. If interest or any fee or charge payable on any date would be in a prohibited amount, then such interest, fee or charge will be automatically reduced to the maximum amount that is not prohibited, and any interest, fee or charge for subsequent periods (to the extent not prohibited by applicable law) will be increased accordingly until PRAVATI receives payment of the full amount of each such reduction. To the extent that any prohibited amount is actually received by PRAVATI, then such amount will be automatically deemed to constitute a repayment of principal indebtedness hereunder.

24.　　CHOICE OF LAW; VENUE & JURISDICTION: LAW FIRM understands and agrees that this Agreement and the relationship established hereby will be governed, interpreted and enforced under the laws of the State of Delaware (excluding the conflicts of law rules thereof) and that absent LAW FIRM's agreement to Delaware law as governing, PRAVATI would not have entered into this Agreement. Any litigation in any way related to this Agreement, or any course of conduct, course of dealing, statements (whether verbal or written), actions or inactions of PRAVATI or LAW FIRM shall be brought and maintained exclusively in the courts of the State of Delaware or in a United States District Court in the State of Delaware; provided, however, that any suit seeking enforcement hereof against LAW FIRM or any property may also be brought (at PRAVATI's option) in the courts of any other jurisdiction where such property may be found or where LAW FIRM may be subject to personal jurisdiction. LAW FIRM and PRAVATI each hereby expressly and irrevocably submits to the jurisdiction of the courts of the State of Delaware and of the United States District Courts in the State of Delaware for the purpose of any such litigation as set forth above and irrevocably agrees to be bound by any final and non-appealable judgment rendered thereby in connection with such litigation. LAW FIRM and PRAVATI each further irrevocably consents to the service of process by registered or certified mail, postage prepaid, or by personal service within or outside the State of Delaware. LAW FIRM and PRAVATI each hereby expressly and irrevocably waives (to the fullest extent permitted by law) any objection that it at any time may have to the laying of venue of any such litigation brought in any such court referred to above and any claim that any such litigation has been brought in an inconvenient forum. PRAVATI and LAW FIRM each hereby knowingly, voluntarily and intentionally waives any rights it may have to a trial by jury in respect of any litigation (whether as claim, counter-claim, affirmative defense or otherwise) in any way related to this Agreement or any course of conduct, course of dealing, statements (whether verbal or written), actions or inactions of PRAVATI or LAW FIRM.

25.　　INDEMNITY: LAW FIRM agrees to protect, hold harmless, defend and indemnify PRAVATI, and its partners, equity holders, members, managers, officers, directors, employees, financing sources, agents and assigns (each, an "Indemnified Party"; collectively, the "Indemnified Parties") from and against any and all liability, penalties, costs, losses, damages, expenses, causes of action, claims and/or judgments (including each Indemnified Party's attorney's fees, costs and expenses), directly or indirectly, resulting from, arising out of or is in any way connected with the transactions contemplated or the relationship established by this Agreement, or any act, omission or event occurring in connection therewith. LAW FIRM's indemnity obligations under this section shall apply, without limitation, to any and all third-party claims and all other clams

against any Indemnified Party but shall not apply with respect to any Indemnified Party to the extent such liability was caused by the gross negligence, willful misconduct or fraud of such Indemnified Party. With respect to any claim, action or proceeding as to which LAW FIRM is required to protect, hold harmless, defend and indemnify an Indemnified Party under this section, PRAVATI shall be entitled to control the defense thereof and to select counsel to represent the Indemnified Party. In addition, subject to LAW FIRM's receipt from each applicable Indemnified Party of an undertaking to reimburse should any such claim, action or proceeding ultimately be determined by a court of competent jurisdiction not to be covered by the indemnification required under this section, then LAW FIRM shall fully and timely advance to the Indemnified Parties the costs and expenses of any such claim, action or proceeding during the pendency thereof. These indemnification obligations under this section shall survive any termination of this Agreement, regardless of the reason for any such termination.  Notwithstanding the foregoing, Law Firm shall not be responsible for any claims related to the origination of this advance.

26. <u>LITIGATION TO ENFORCE CONTRACT:</u> In the event that litigation or other legal process, including arbitration, or any other action is necessary to enforce or interpret the terms of this Agreement, the prevailing Party in such action shall be entitled to attorney's fees and costs incurred in connection therewith. In addition, interest on any and all outstanding balances determined to be due hereunder will accrue at the rate provided for pursuant to this Agreement until all such outstanding amounts are paid in full in immediately available funds.

27. **<u>LIMITATION ON LIABILITY:</u> LAW FIRM agrees that PRAVATI (and its directors, officers, employees, agents, counsel and affiliates) shall have no liability to LAW FIRM (whether sounding in tort, contract or otherwise) for losses or cods suffered or incurred by LAW FIRM in any way related to the transactions contemplated or the relationship established by this Agreement, or any act, omission or event occurring in connection therewith, except for foreseeable actual losses resulting directly from PRAVATI's own gross negligence, willful misconduct or fraud. Moreover, whether or not such damages relate to a claim that is subject to the waiver effected above and whether or not such waiver is effective, PRAVATI (and its directors, officers, employees, agents, counsel and affiliates) shall have no liability with respect to any special, indirect, consequential, punitive or non-foreseeable damages suffered by LAW FIRM (or any of its partners or clients) that are in any way related to the transactions contemplated or the relationship established by this Agreement, or any act, omission or event occurring in connection herewith or therewith.**

28. <u>AMENDMENT.</u> No term or provision of this Agreement shall be amended, modified, altered, waived, or supplemented except by an agreement in writing signed by LAW FIRM and PRAVATI.

29. <u>NOTICE.</u> All notices or other written communications hereunder shall be deemed to have been properly given (a) upon delivery, if delivered in person or by facsimile transmission with confirmation of transmission received by sender, and (b) one (1) Business Day after having been deposited for overnight delivery with any reputable overnight courier service, and (c) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to the addresses set forth below in this section or as such party may from time to time designate by written notice to the other parties. Either Party by notice to the other in the manner provided herein may designate additional or different addresses for subsequent notices or communications Any notice to legal counsel or a Person other than the

primary addressee for LAW FIRM or PRAVATI below shall be a courtesy copy only and shall not affect the timeliness or effectiveness of delivery to LAW FIRM or PRAVATI.

To LAW FIRM:    Balestriere Fariello
                Attn: John G. Balestriere
                225 Broadway, 29th Floor
                New York, NY 10007


To PRAVATI:     Pravati Credit Fund III, LP
                Attn: Alexander Chucri
                4400 N. Scottsdale Rd., Ste. 9277
                Scottsdale, AZ 85251

30. ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between the Parties. There are no representations, warranties, covenants, or obligation except as set forth herein. This Agreement supersedes all prior agreements, understandings, negotiations and discussions, written or oral, of the Parties, relating to any transaction contemplated by this Agreement. This Agreement shall be binding on and inure to the benefit of the Parties, their heirs, trustees, executors or any other successor-in-interest including co-counsel who may obtain or assert control over the LAW FIRM's assets for any reason including but not limited to disability (physical or mental), a decline in health or death. Also by executing this agreement, LAW FIRM, at the request of PRAVATI, agrees at the request of PRAVATI to exercise a Power of Appointment with which LAW FIRM and/or any representative of LAW FIRM will be empowered to the extent necessary to complete the Transfer that is the subject of this agreement. In the event one or more of the covenants, terms or conditions of this Agreement shall for any reason be held to be invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect the validity, ability, or enforceability of any other covenant, term or condition in this Agreement.


    **Do not sign this Agreement before you read it completely or if it contains any blanks spaces. You are entitled to a completely filled in version of this Agreement. Before you sign this Agreement, you should obtain the advice of an attorney or legal counsel. Depending on your circumstances, you may also want to consult a tax, public or private benefit planning, or financial professional. LAW FIRM and PRAVATI each has reviewed this Agreement in its entirety prior to signing and hereby acknowledges that it (and its authorized representative who is signing on behalf of it) understands all of the terms and provisions of this Agreement.**

In witness whereof, PRAVATI and LAW FIRM hereby execute and deliver this Law Firm Legal Funding Contract & Security Agreement effective immediately upon the receipt of Legal Funding by LAW FIRM from PRAVATI as set forth herein.

Balestriere Fariello ("Law Firm")

By: _____

Name: JOHN G. BALESTRIERE

Title: PARTNER

Date: March 27 , 2018

PRAVATI CAPITAL, LLC ON BEHALF OF PRAVATI CREDIT FUND III, LP ("Pravati")

By: _____

Name: _____

Title: _____

Date: _____, 2018

State Of NEW YORK

County Of NEW YORK

On this 27th day of MARCH , 2018, before me, came John G. Balestriere the Partner of LAW FIRM and known to me personally to be such, and personally executed the foregoing Law Firm Legal Funding Contract & Security Agreement on behalf of LAW FIRM, and acknowledged that the above execution is his/her fully authorized act and deed on behalf of LAW FIRM, and that the facts stated herein are true, accurate and complete.

Notary Public

My Commission Expires: April 3, 2021

JIN LEE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LE6356583
Qualified in Kings County
Commission Expires April 3, 2021

16

**Schedule A — TERM SHEET**

The following fully executed Term Sheet attached hereto is subject to the Law Firm Legal Funding Contract & Security Agreement (as may be amended from time to time, including all Exhibits and Schedules thereto, the "Agreement") between Pravati Credit Fund III, LP and LAW FIRM:  **Total Advanced To Law Firm Per This Agreement:  $669,600.00**

4400 North Scottsdale Rd. Suite 9277
Scottsdale, AZ 85251
Tel. 844.772.8284
Fax 480.648.0971



## CONFIDENTIAL NONRECOURSE TERM SHEET

**Funder:**          Pravati Credit Fund III LP ("Funder" or "Pravati").

**Client:**          Balestriere Fariello, 225 Broadway, 29th Floor New York, NY 10007; 212-374-5400 ("Firm").

**Advance Type:**      Nonrecourse Advance against the Firm's existing case captioned, *Lawson et al. v. Ruben et al.*, Case No.: 1:17-cv-06404, currently pending in the United States District Court, Eastern District of New York, and all related proceedings thereto ("Rubin Case"). Firm will provide this case as collateral constituting all fees, distributions, payments, proceeds, preferences and other benefits which Firm now is or may hereafter become entitled to receive from Rubin Case.

**Advance Amount:**    Net Advance Amount to Firm of $300,000.00. This amount may be increased by mutual consent.

**Fees and Costs:**     Closing cost fees payable to Pravati by Firm shall be as follows:
a). Advance Origination Fee will be 5% of the net amount advanced;
b). Due Diligence Fee will be $6,000.00;
c). Legal Document Preparation Fee will be $3,000.00;
d). Service Fee will be $1,000.00 every quarter of a year. This Service Fee will not be subject to Interest. Additionally, this Service fee shall be paid from Distribution of Rubin Case.

**Interest:**          The interest rate shall be 3% per month simple interest of the Gross Advance Amount, accrued monthly until paid in full. Funder is due a minimum of 6 month's interest.

**Interest Reserve:**    Pravati has considered the necessary increase in funding so borrower can make monthly interest payments and will prepay a minimum of 24 months, at a rate of 3% per month or 36% per annum on the Gross Advance Amount, equaling $345,600.00. The Interest Reserve will be deducted from the Gross Advance Amount and wired into Funder's Bank interest retention account. Interest will be paid monthly from the Interest Reserve and applied against Firm's monthly accruals. See Exhibit A for a detailed Amortization Schedule. If Firm repays the funding in full prior to full use of the Interest Reserve payments, the amount remaining will be credited against the reserve reimbursement.

| | |
|---|---|
| **Distribution of Funds:** | Re payment of the Outstanding Amount will be from recoveries on Rubin Case. Recoveries from Rubin Case will be split as follows: 50% for Funder and 50% for Firm, until all amounts owing have been repaid in full. If covenants are not maintained (defined below) the split will be 100/0 in favor of the Funder. If the Outstanding Amount at any time exceeds 50% of the estimated Firm fees from the Rubin Case, Funder shall be entitled to 100% of the recoveries until the Outstanding Amount falls below 25% of estimated Firm fees from Rubin Case. |
| **Deposit of Firm Proceeds:** | Firm shall deposit Funder's share of Firm Proceeds into Firm's client trust account dedicated to funder within ten (10) business days after receipt thereof by Firm. Thereafter, Firm shall remit to Funder its share of the Proceeds received by Firm within ten (10) business days after deposit of Proceeds by Firm until the Outstanding Amount is paid in full. Failure of Firm to deposit all proceeds recovered and other payments received by Firm in connection with the Rubin Case or failure of Firm to deposit or remit will constitute a Default. Funder will provide detail on this account. |
| **Outstanding Amount:** | All monies actually owed Funder by the Firm but not repaid will be defined as the "Outstanding Amount". |
| **Use of Capital:** | Expenses relating to the Rubin Case. |
| **Collateral:** | All of the Firm's receivables from the Rubin Case. |
| **Other Terms:** | a). Standard covenants, terms and conditions, including but not limited to financial and other reporting requirements, maintenance of insurance, cash management, compliance with Bar Association Rules of Professional Responsibility, State and Federal laws, and indemnification; <br> b). Standard representations and warranties in the event of default; <br> c). Covenants are: <br>    i. Firm must be in compliance with all terms and conditions of the contract; <br>    ii. Key Employee John G. Balestriere, Esq. will remain in his current capacity at the Firm or remain majority owner of the Firm; <br>    iii. Firm is not in breach of any other material terms; <br>    iv. Funder in good faith does not believe itself insecure; and <br>    v. Funder has a right of first refusal over any additional funding to Firm for the Rubin Case. |
| **Future Funding:** | Funder shall retain a right of first refusal regarding any additional litigation funding to Firm related to the Rubin Case as set forth herein. Funder has a lien on Rubin Case. |
| **Default:** | In the event of an uncured default by Firm, the Outstanding Amount will immediately convert from a Nonrecourse Advance to a Recourse Loan. Repayment will be 100% of all recoveries on Rubin Case and against all other assets of Firm until Funder is repaid ("Recourse Loan"). Funder will be granted a Security Interest in all of Firms' Assets. |

**Exclusivity:**    Firm agrees that they will not negotiate with, provide information, or enter into any transaction with another Nonrecourse Advance entity or Recourse Loan funding entity for a period of 30 days from the date this term sheet is signed, to permit Funder to perform due diligence, complete documentation, and fund transaction. This period will automatically renew to 15 days if the Funder is proceeding in good faith.

The exclusivity section of this term sheet is binding on Firm and the financial terms included are subject to the Mutual Confidentiality and Consulting Agreement between Funder and Firm.

**First Lien:**    **Funder requires a fully perfected, first lien security interest in Rubin Case to protect its investments**. If any liens against Firm prevent Funder from taking a first lien security interest in all assets of Firm, all prior liens will be paid by Funder from the Advance.

**Guarantor**    John G. Balestriere, Esq. shall sign and guarantee Firm's obligations in accordance with the terms of the Agreement upon execution of the Law Firm Legal Funding Contract & Security Agreement. The guarantee will outline the Recourse Obligations of the contract which only become effective upon a default of the Agreement. The guarantee is essentially a "bad boy clause" and is not to be considered a personal guarantee of the funding.

**Governing Law:**    This Term Sheet and all transaction documents to follow shall be governed by Arizona law without resort to any principles of conflict laws and shall be deemed made in the State of Arizona and venue for any court proceedings shall be in Maricopa County, Arizona.

**Arbitration:**    Firm and Funder agree any dispute, claim or controversy arising out of or relating to this term Sheet, and any later Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration before one arbitrator held in Phoenix, Arizona according to American Arbitration Association ("AAA") Arbitration Clause for Domestic Commercial Contracts using the expedited rules. Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

**Due Diligence:**    Firm agrees to cooperate with Funder's due diligence and shall comply with all reasonable requests of Funder in connection with the due diligence and preparation of Funding Documents.

**Confidentiality:**    The Parties further agree this Term Sheet shall remain confidential between the Parties hereto and may not be disclosed without the express written consent of Pravati or in violation of any Non-Disclosure Agreements ("NDAs") between the Parties.

3

**Successors and Assigns:**   This Term Sheet shall be binding upon and for the benefit of the Parties, their Affiliates, and their respective successors and assigns. Failure to enforce any provision of this Term Sheet shall not constitute a waiver of any term hereof.

**Entire Agreement:**   This Term Sheet supersedes all prior agreements, understandings, negotiations and discussions, written or oral, of the Parties, relating to any transaction contemplated by this Term Sheet.

**The Parties hereto understand and acknowledge that Pravati Credit Fund III LP is providing the terms set forth herein as a result of information provided to Pravati Credit Fund III LP by Firm regarding the value of claims filed, referral fees, ratio of claims using cash to accrual accounting, ratio of the value of paid claims to their value as submitted by Firm, and the Firm's stated intention to use the funds to increase the portfolio of the claims filed by the Firm.  Any future transactions between the Parties and the terms thereof are subject to due diligence and the execution of funding documents to be provided by Pravati Credit Fund III LP, including a Funder Agreement. If, upon investigation, the information provided by Firm is inaccurate, or if the status of the Rubin Case changes, Pravati Credit Fund III LP reserves the right to reevaluate the terms of the proposed transaction.**

**ACCEPTED AND AGREED:**

**PRAVATI CAPITAL, LLC**
**ON BEHALF OF**
**PRAVATI CREDIT FUND III LP**

By: _____

Name: _Craxcpf et'Ej wetk_____

Its:__CEO_____

Date:___March 13, 2018_____

**BALESTRIERE FARIELLO**

By: _____

Name: _John G. Balestriere_____

Its: _Partner_____

Date: _March 12, 2018_____

## Schedule B – LAW FIRM LIST OF RUBIN CASES AND RELATED PROCEEDINGS

The following Rubin Cases and Related Proceedings attached hereto are subject to the Law Firm Legal Funding Contract & Security Agreement (as may be amended from time to time, including all Exhibits and Schedules thereto, the "Agreement") between Pravati Credit Fund III, LP and LAW FIRM:

| NAME OF ACTION | TYPE OF ACTION |
|---|---|
| **Lawson et al. v. Rubin et al., Eastern District of New York Case No. 1:17-cv-06404 (BMC)** | **RICO** |

18

## Schedule C - LAW FIRM LIST OF ENCUMBRANCES AND LIENS

The following Encumbrances and Liens attached hereto are an accurate listing of "all current liens, assignments, encumbrances or security interest of any kind or nature in or relating to the Proceeds, Collateral, or any other similar rights or assets relating to the Portfolio of Cases or other Related Proceedings," as set forth in Section 17(e) of the Law Firm Legal Funding Contract & Security Agreement (as may be amended from time to time, including all Exhibits and Schedules thereto, the "Agreement") between Pravati Credit Fund III, LP and LAW FIRM:

**None**

I, ___JOHN  G.  BALESTRIERE___, on behalf of Law Firm, declare under penalty of perjury the above mentioned list of encumbrances and liens are true and accurate to the best of my knowledge as of the execution of this Agreement.

Balestriere Fariello ("Law Firm")

By: _____

Name: ___JOHN  G.  BALESTRIERE___

Title: ___PARTNER___

Date: ___MARCH  27___, 2018

STATE OF ___NEW YORK___

County of ___NEW YORK___

On this __27th__ day of __March__, 2018, before me, came __John G. Balestriere__ the __Partner__ of Law Firm and known to me personally to be such, and personally executed the foregoing Law Firm List of Encumbrances and Liens on behalf of Law Firm, and acknowledged that the above execution is his/her fully authorized act and deed on behalf of Law Firm, and that the facts stated herein are true, accurate and complete.

Notary Public

JIN LEE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LE6356583
Qualified in Kings County
Commission Expires April 3, 2021

My Commission Expires: __April 3, 2021__

19

## SCHEDULE D - LIMITED GUARANTEE AGREEMENT

This Limited Guarantee Agreement (as may be amended from time to time, "Guarantee") dated as of the __27ᵗʰ__ day of __MARCH__, 2018 is made and entered into by John G. Balestriere ("GUARANTOR"), in favor Pravati Credit Fund III LP, a Delaware limited partnership ("PRAVATI").

WHEREAS Balestriere PLLC, aNew York Professional Limited Liability Corporation, and having its principal place of business located at 225 Broadway, 29ᵗʰ floor, New York, NY 10007 ("LAW FIRM") has entered into an agreement dated __March  27__, 2018, with PRAVATI wherein PRAVATI agreed to provide legal funding to LAW FIRM secured by the contingency fees and expense reimbursements earned in connection with the outcomes of Rubin Cases in a Portfolio of Rubin Cases (such agreement, as amended from time to time, being herein called the "Agreement"); and

WHEREAS PRAVATI has requested that GUARANTOR guarantee LAW FIRM's Recourse Obligations under and as defined in the Agreement (the "Guaranteed Obligations") in accordance with the terms of the Agreement and this Guarantee.

NOW THEREFORE, in consideration of the premises, the agreement of PRAVATI to provide Legal Funding to LAW FIRM pursuant to the Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by GUARANTOR, GUARANTOR hereby covenants and agrees with PRAVATI as follows:

1.       GUARANTEE. Subject to the provisions hereof, GUARANTOR hereby absolutely, irrevocably and unconditionally guarantees the due and punctual satisfaction, payment and discharge of the Guaranteed Obligations to PRAVATI in accordance with the Agreement. If LAW FIRM fails to pay any Guaranteed Obligations, GUARANTOR shall forthwith pay to PRAVATI the amount due in the same currency and manner provided for in the Agreement. This Guarantee shall constitute a guarantee of payment and not of collection. GUARANTOR shall have no right of subrogation with respect to any payments it makes under this Guarantee until all of the Guaranteed Obligations have been indefeasibly paid in full in immediately available funds. GUARANTOR's liability hereunder shall be and is specifically limited to payments of Recourse Obligations expressly required to be made in accordance with the Agreement (even if such payments are deemed to be damages) and, except to the extent specifically provided in the Agreement, in no event shall GUARANTOR be subject hereunder to consequential, exemplary, equitable, loss of profits, punitive, tort or any other damages or, subject to this Guarantee, costs. GUARANTOR's obligations under this Guarantee hereunder shall be absolute and unconditional, shall not be subject to any counterclaim, set-off, reduction or defense based upon any claim GUARANTOR may have against PRAVATI and shall remain in full force and effect without regard to, and shall not be released, discharged or in any way affected for any reason whatsoever until the complete performance of the Guaranteed Obligations, including without limitation by reason of:

(a)      Any amendment or modification of any provision of the Agreement or any of the Guaranteed Obligations or any assignment or transfer thereof, including any extension of the time for payment of or compliance with any of the Guaranteed Obligations, whether or not consented to by GUARANTOR;

(b)      Any waiver, consent, extension, granting of time, forbearance, indulgence, renewal or other action or inaction under or in respect of the Agreement or any of the Guaranteed Obligations, or any exercise or non-exercise of any right, remedy or power in respect thereof, whether or not consented to by GUARANTOR;

(c)      Any informality in, omission from, invalidity or unenforceability of, or any misrepresentation, irregularity or other defect in, the Agreement, any of the Guaranteed Obligations or any other agreement or instrument;

20

(d)      Any lack or limitation of capacity, status, power or authority of GUARANTOR or LAW FIRM, and/or any defect or failure to comply with a formal legal requirement in the execution or delivery of any document;

(e)      Any transfer of any assets to or from GUARANTOR or LAW FIRM, or any consolidation, amalgamation or merger of GUARANTOR or LAW FIRM with or into any person, or any change whatsoever in the name, objects, capital structure, corporate or other legal existence, membership, constitution, or business control of GUARANTOR or LAW FIRM;

(f)      Any failure on the part of GUARANTOR or LAW FIRM or any other person to perform or comply with any terms of the Agreement, any of the Guaranteed Obligations or any other agreement or instrument;

(g)      The assignment of all or any of the part of the benefits of this Guarantee, the Agreement or any other agreement or instrument; and

(h)      Any other circumstance which might otherwise constitute a defense available to or a discharge of GUARANTOR or LAW FIRM or any other person in respect of the Guaranteed Obligations, or GUARANTOR in respect of this Guarantee.

2.      <u>DEMAND.</u> If LAW FIRM at any time and/or from time to time fails to pay or cause to be paid all or any portion of the Guaranteed Obligations, as and when the same shall become due and payable pursuant to the Agreement, then PRAVATI shall be entitled, by notice to GUARANTOR, to make a demand upon GUARANTOR for the payment of the Guaranteed Obligations or that portion thereof which GUARANTOR has failed to pay (hereinafter referred to as a "Payment Demand"). A Payment Demand shall be in writing and shall briefly specify in reasonable detail what amount LAW FIRM has failed to pay and an explanation of why such payment is due, with a specific statement that PRAVATI is calling upon GUARANTOR to pay under this Guarantee. A Payment Demand satisfying the foregoing requirements shall be deemed sufficient notice to GUARANTOR that it must pay the Guaranteed Obligations. A single written Payment Demand shall be effective as to any specific failure to pay during the continuance of such failure to pay, until LAW FIRM or GUARANTOR has cured such failure to pay, and additional written Payment Demands concerning such failure to pay shall not be required until such failure to pay is cured. The amount specified in a Payment Demand shall become immediately due and payable by GUARANTOR under this Guarantee upon delivery of such Payment Demand to GUARANTOR.

3.      <u>RECOURSE.</u> PRAVATI may, at its option, proceed against GUARANTOR to enforce any of the Guaranteed Obligation when due without first proceeding against any other person and without first resorting to any other remedy.

4.      <u>TERM.</u> This Guarantee shall remain in full force and effect so long as there may be any obligations outstanding by LAW FIRM under the Agreement or until they are earlier terminated by the written agreement of PRAVATI. When this Guarantee is terminated in accordance with the foregoing, GUARANTOR shall have no further liability hereunder, except as provided in the last sentence of this section. No such termination shall affect GUARANTOR's liability with respect to any Guaranteed Obligations arising prior to the effective date of such termination.

5.      <u>REPRESENTATIONS AND WARRANTIES.</u> GUARANTOR represents and warrants to PRAVATI that:

(a)      It has the power and authority to execute, deliver and carry out the terms and provisions of this Guarantee;

(b)      None of the execution, delivery and performance of this Guarantee violates or conflicts with any law applicable to it, any order or judgment of any court or other agency of government applicable to it or any of its assets or any contractual restriction binding on or affecting it or any of its assets;

(c)     This Guarantee has been duly authorized by all necessary action on the part of GUARANTOR and no authorization, approval, consent or order of, or registration or filing with, any court or other governmental body having jurisdiction over GUARANTOR is required on the part of GUARANTOR for the execution and delivery of this Guarantee or for the performance by GUARANTOR of its obligations hereunder;

(d)     This Guarantee constitutes a valid and legally binding agreement of GUARANTOR enforceable against GUARANTOR in accordance with its terms, subject to any applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting creditors' rights generally and by general principles of equity;

(e)     There is not pending or, to its knowledge, threatened against it any action, suit or proceeding at law or in equity or before any court, tribunal, governmental body, agency or official or any arbitrator that is likely to affect the legality, validity or enforceability against it of this Guarantee or its ability to perform its obligations under this Guarantee; and

(f)     GUARANTOR is familiar with the business of LAW FIRM.


6.     <u>SETOFFS.</u> PRAVATI may at any time set-off and apply indebtedness owing by PRAVATI to or for the credit of GUARANTOR against that portion of the Guaranteed Obligations owing pursuant to a Payment Demand. The rights of PRAVATI in this section are in addition to any rights and remedies, including other rights of set-off, that it may have.


7.     <u>EFFECT OF BANKRUPTCY.</u> GUARANTOR's obligations under this Guarantee shall not be prejudiced or affected in any way by the bankruptcy or insolvency of LAW FIRM or GUARANTOR or by any bankruptcy, reorganization, moratorium or similar insolvency proceeding relating to LAW FIRM or GUARANTOR or other relief sought or obtained in respect of LAW FIRM or GUARANTOR under any bankruptcy or insolvency law affecting creditor's rights or a petition for LAW FIRM's or GUARANTOR's winding-up or liquidation, including any discharge of any of the Guaranteed Obligations as a result of any bankruptcy or insolvency proceeding. In the case of liquidation, winding-up or bankruptcy of LAW FIRM (whether voluntary or compulsory) or any composition with creditors or scheme or arrangement relating to LAW FIRM, PRAVATI shall have the right to rank in priority to GUARANTOR for its full claims in respect of the Guaranteed Obligations and receive all dividends and other payments in respect thereof until its claims in respect of the Guaranteed Obligations have been paid in full, and GUARANTOR shall continue to be liable for any balance which may be owing to PRAVATI by LAW FIRM or GUARANTOR in respect of the Guaranteed Obligations.


8.     <u>AMENDMENT.</u> No term or provision of this Guarantee shall be amended, modified, altered, waived, or supplemented except by an agreement in writing signed by GUARANTOR and PRAVATI.


9.     <u>WAIVERS.</u> GUARANTOR hereby unconditionally waives:

(a)     Notice of acceptance of this Guarantee and, except as otherwise specifically provided in this Guarantee, any other notices whatsoever;

(b)     Presentment and demand concerning the liabilities of LAW FIRM and/or GUARANTOR, except as set forth in section 2;

(c)     Any right to require that any action or proceeding be brought against LAW FIRM, GUARANTOR or any other person or against the assets of any person, or except as expressly hereinabove set forth, to require that PRAVATI seek enforcement of any performance against LAW FIRM, GUARANTOR or any other person, prior to any action against GUARANTOR under the terms hereof. Without limiting the foregoing, GUARANTOR hereby expressly waives any and all surety ship defenses affecting the enforcement of this Guarantee and the right to require marshalling of assets with respect to the assets of LAW FIRM, GUARANTOR or any other person.

Except as to applicable statutes of limitation relevant to the enforcement of this Guarantee against GUARANTOR, no delay of PRAVATI in the exercise of, or failure to exercise, any rights or remedy hereunder shall operate as a waiver of such right or remedy, or a waiver of any other rights or a release of GUARANTOR from any obligations hereunder. Nor shall any single or partial exercise of any right or remedy under this Guarantee preclude any other or further exercise thereof or the exercise of any right or remedy, nor shall any waiver of one provision be deemed to constitute a waiver of any other provision. No waiver of any of the provisions of this Guarantee shall be effective unless it is in writing duly executed by the waiving party.

GUARANTOR consents to the renewal, compromise, extension, acceleration or other changes in the time of payment of or other changes in the terms of the Guaranteed Obligations, or any part thereof or any changes or modifications to the terms of the Agreement, and none of the foregoing shall in any way release GUARANTOR from any obligations hereunder.

10.    EXPENSES. GUARANTOR shall pay for or reimburse PRAVATI for any and all reasonable fees and expenses (including without limitation all legal fees) incurred in connection with the successful enforcement of its rights under this Guarantee.

11.    INTEREST. Any obligation of GUARANTOR not paid when due will bear interest at the rate set forth in the Agreement payable on demand from the date it becomes due to the date of payment in full, unconditionally and in immediately available funds.

12.    ASSIGNMENT. GUARANTOR shall not assign this Guarantee without the express written consent of PRAVATI. PRAVATI shall be entitled to assign its rights under this Guarantee in its sole discretion.

13.    NOTICE. Any Payment Demand, notice, request, instruction, correspondence or other document to be given hereunder by any party to another (herein collectively called "Notice") shall be in writing and delivered personally or mailed by certified or registered mail, postage prepaid and return receipt requested, or by facsimile, as follows:

        To PRAVATI:         Pravati Credit Fund III, LP
                            Attn: Alexander Chucri
                            4400 N. Scottsdale Rd., Ste. 9277
                            Scottsdale, AZ 85251


        To GUARANTOR:       Balestriere Fariello
                            Attn: John G. Balestriere
                            225 Broadway, 29th Floor
                            New York, NY 10007

Notice given by personal delivery or mail shall be effective upon actual receipt.

14.    GOVERNING LAW. This Guarantee shall in all respects be governed by, and construed in accordance with, the laws of the State of Delaware. GUARANTOR hereby attorns and irrevocably submits to the non-exclusive jurisdiction of the courts of the State of Delaware in respect of any legal action or proceeding commenced in respect of this Guarantee. GUARANTOR, to the fullest extent permitted by law, hereby waives its rights to a trial by jury.

23

15.    MISCELLANEOUS.

(a)    This Guarantee shall be binding upon GUARANTOR, its successors and assigns and inure to the benefit of and be enforceable by PRAVATI, its successors and assigns.

(b)    Notwithstanding the terms of the Agreement, this Guarantee embodies the entire Guarantee and understanding between GUARANTOR and PRAVATI and supersedes all prior agreements and understandings relating to the subject matter hereof.

(c)    The headings in this Guarantee are for purposes of reference only, and shall not affect the meaning hereof.

(d)    The rights, remedies and recourse of PRAVATI under this Guarantee are cumulative and do not exclude any other rights, remedies and recourse that it may have.

(e)    If any payment of GUARANTOR or LAW FIRM in respect of Guaranteed Obligations is rescinded or must otherwise be returned for any reason whatsoever, GUARANTOR shall remain liable hereunder in respect of such Guaranteed Obligations as if such payment had not been made.

(f)    The provisions of this Guarantee are intended to be severable. If any provision of this Guarantee shall be held invalid or unenforceable in whole or in part in any jurisdiction, such provision shall, as to such jurisdiction be ineffective only to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability thereof in any other jurisdiction or the remaining provisions hereof in any jurisdiction.

IN WITNESS WHEREOF this Guarantee has be executed by GUARANTOR as of the day and year first above written.

GUARANTOR:

By: _____

Name: _____JOHN Q. BALESTRIERE_____

Title: _____PARTNER_____

Date: _____MARCH 27_____, 2018

24

## Schedule E - NON-DISCLOSURE AGREEMENT

The following Non-Disclosure Agreement attached hereto is subject to the Law Firm Legal Funding Contract & Security Agreement (as may be amended from time to time, including all Exhibits and Schedules thereto, the "Agreement") between Pravati Credit Fund III, LP and LAW FIRM:

This agreement is entered into the March 27, 2018 between and among PRAVATI CREDIT FUND III, LP located at 4400 N Scottsdale Rd # 9277 Scottsdale, Arizona 85251 and its related entities ("Pravati"), and Balestriere Fariello (together with its officers, directors, employees, assigns, affiliates, advisors, investors, potential financing sources and related funds, "Interested Parties").

**Introduction:** In connection with a contemplated business relationship between Pravati and Interested Parties, Pravati may disclose certain Proprietary Information and Confidential Information as defined below. Interested Parties agree to make no other use of such Proprietary Information and Confidential Information or any portion thereof for any purpose other than as expressly set forth herein. All Proprietary Information will be and will remain the sole property of Pravati and the Interested Parties.

Interested Parties agree to maintain mutual confidentiality that is shared to determine future business relationships.

In consideration of any disclosure and any negotiations concerning the contemplated business relationship, Pravati and Interested Parties agree as follows:

1. **Confidential Information**. PRAVATI and Interested Parties entities acknowledge and confirm that certain data from and other information that comes into its possession or knowledge and which was obtained from Pravati or Interested Parties (the "Confidential Information") is secret, confidential property. This Confidential Information includes, but is not limited to:

   (a) Lists or other identification of sources or prospective sources of capital, plaintiffs and law firms.

   (b) The identity of the clients with whom Pravati & Interested Parties do business and with whom both entities have entered into confidentiality agreements.

Notwithstanding the foregoing, the term Confidential Information shall not consist of any data or other information which has been made publicly available or otherwise placed in the public domain.

2. Interested Parties understand that this writing does not obligate either party to disclose any information or to negotiate or enter into any agreement or relationship.

3. The parties acknowledge that Proprietary Information and Confidential Information is unique and valuable, and that disclosure in breach of this agreement may result in irreparable injury to both parties for which monetary damages alone would not be an adequate remedy.

4. The terms of this agreement will remain in effect with respect to any particular Proprietary Information or Confidential Information for one (1) year after the date hereof.

5.  This agreement is governed by the internal laws of the State of Arizona and may be modified or waived only in writing. If any provision is found to be unenforceable, such provision will be limited or deleted to the minimum extent necessary so that the remaining terms remain in full force and effect.

6.  This agreement is the complete and exclusive statement of the understanding of the parties and supersedes and cancels all previous written and oral agreements and communications with respect to the subject matter of this agreement.

7.  This agreement can only be changed or modified if it is in writing and signed by both parties.

In witness whereof, Pravati and Law Firm hereby execute and deliver this Non-Disclosure Agreement effective immediately as set forth herein.

Balestriere Fariello
("Law Firm")

By: _____

Name: JOHN G. BALESTRIERE

Title: PARTNER

Date: MARCH 27 , 2018

Pravati Capital, LLC
on behalf of Pravati Credit Fund III LP ("Pravati")

By: _____

Name: _____

Title: _____

Date: _____, 2018


STATE OF NEW YORK
County of NEW YORK


On this 27th day of March , 2018, before me, came John G. Balestriere, the Partner of Law Firm and known to me personally to be such, and personally executed the foregoing Non-Disclosure Agreement on behalf of Law Firm, and acknowledged that the above execution is his/her fully authorized act and deed on behalf of Law Firm, and that the facts stated herein are true, accurate and complete.

_____
Notary Public

My Commission Expires: Apr 3, 2021

JIN LEE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01LE6356583
Qualified in Kings County
Commission Expires April 3, 2021

27