Peter B. Foster, Esq. (Bar No. PF0851)
Foster & Wolkind, P.C.
80 Fifth Avenue, Suite 1401
New York, New York 10011
Email: pfoster@foster-wolkind.com
Phone: (212) 691-2313
*Attorney for Pravati*

Benjamin Pierce (Bar No. 035096)
1787 Legal Group
4400 North Scottsdale Road, Suite 9277
Scottsdale, Arizona 85251
Email: ben@1787legalgroup.com
Phone: (602) 284-3130
*Attorney for Pravati Investment Fund IV, LP*

## UNITED STATES DISTRICT COURT OF NEW YORK

| | |
|---|---|
| AMY MOORE, MIA LYTELL, NATASHA TAGAI, EMMA HOPPER, BRITTANY HASSEN AND BRITTANY REYES, Plaintiffs, <br><br> v. <br><br> HOWARD RUBIN <br><br> Defendant. | Case No.: 1:17-CV-06404-BMC <br><br> MOTION TO QUASH <br><br><br> HON. BRIAN M. COGAN |

Under a limited notice of appearance, non-parties Pravati Investment Fund III, LP, Pravati Investment Fund IV, and Pravati Capital LLC (collectively, "Pravati") pursuant to Federal Rules of Civil Procedure 45, hereby requests an order quashing Plaintiffs' Subpoena Duces Tecum served upon Pravati on June 5, 2024. In support of this request, Pravati states the following:

### *Relevant Background*

1. Having sanctioned Plaintiffs' attorneys on multiple occasions, the Court is well-aware of their behavior. *See* Text Order on ECF 163 (fining Plaintiffs for counsel's "fishing expeditions" in discovery); *see also* ECF 189 (personally assessing Plaintiffs' attorneys

1

$20,000 in Rule 11 sanctions). Plaintiffs' attorneys—John Balestriere and the Balestriere Fariello firm (together "Balestriere")—are at it again.[1]

2. Bluntly, Balestriere appears to be renewing his client-harming campaign by delaying Plaintiffs' recovery and/or harming their damages recovery to save himself in another litigation. As discussed below, the outrageousness of this behavior is compounded by the futility of the request: Pravati cannot be compelled to respond to the Subpoena.

3. Specifically, Balestriere's Subpoena omits that he and Pravati are currently in litigation with each other in a case captioned *Pravati Investment Fund IV, LP v. Balestriere PLLC*, CV2024-008391 (Maricopa County, Arizona).

4. That case is an action to confirm an arbitration award Pravati secured against Balestriere of several million dollars.[2]

5. Balestriere is currently seeking vacatur of the arbitration award. One of his central theories is that Pravati committed fraud concerning the accounting for the interest reserve. He goes

---

[1] Balestriere has a record of harming his clients beyond this litigation. Specifically, in a matter captioned *Reply All v. Gimlet Media, Inc.*, 1:15-CV-04950 (E.D.N.Y. 2015), Judge Kuntz found Mr. Balestriere acted "in **bad faith** by bringing **objectively unreasonable** and **frivolous** claims … and by attempting to **extort a nuisance settlement** from Defendant by advancing unsubstantiated and legally incognizable damages theories." Exh. A. This resulted in the client in that matter being held jointly and severally liable for the defendant's attorney's fees of $903,000 alongside Mr. Balestriere and his firm. Exh. B at pp. 1-2, 12. In another matter, Balestriere engaged in "unethical behavior" by taking their clients' funds without permission. Exh. C at p. 1, 3-4.

[2] The arbitration award is under a confidentiality order, so it has not been attached hereto. The briefing in that matter is the basis for the supposedly inconsistent "statements" made by undersigned counsel which Balestriere vaguely refers to in the 6th "Whereas" recital in the Subpoena. Because these "statements" form the entirety of the basis for the request now, Pravati only references the arbitration award to the extent necessary to rebut the argument.

so far as to argue Pravati's refusal to provide him documents in this matter (discussed below) is further evidence of fraud in that case.

6. However, at arbitration, Balestriere made the same arguments in an attempt to void other funding agreements, but was denied.

7. There, the arbitrator (the former Chief Justice of the Arizona Supreme Court, Scott Bales) affirmatively found Pravati *did* maintain an interest reserve and the funding agreements were valid.

8. More recently, Pravati provided Balestriere with a detailed breakdown of the amount owed in the funding for this matter on May 1, 2024.

9. The next day, Balestriere filed his application for attorney's fees.

10. While drafting his Motion to Vacate in the Arizona case, on May 9, 2024, Balestriere wrote demanding—not an affidavit from Pravati or any other proof—but the documents he sought at arbitration, which he now requests in his Subpoena, and which (he believes) will support one of his central arguments in Arizona.

11. Seeing this request for what it was—i.e., an attempt to secure documents Balestriere is not entitled to, concerning a conspiracy which the tribunal has found does not exist, to be used in the Arizona case—Pravati refused.

12. Subsequently, Balestriere served upon non-party Pravati the Subpoena Duces Tecum ("Subpoena") attached hereto as Exhibit D on June 5, 2024.

13. The Subpoena seeks documentation concerning the interest reserve which Balestriere was either denied or did not seek at arbitration.

14. Specifically, the Subpoena seeks:

- "All documents relating to the interest and/or 'interest reserve'" generally, and also the same as to documentation specifically relating to the funding in this matter.
- "Any" record of bank wire receipts from Pravati to its bank starting on March 1, 2018. Pravati applied to the funding provided to Plaintiffs' counsel.
- All reports from Pravati to the SEC concerning the financing in this case.
- The Subpoena also seeks the videoconferencing deposition of Ivan Mora.

*See* Exhibit D.

15. Balestriere could (and still can) prove his attorney's fees several ways including, but not limited to: (1) showing his own bank records showing his receipt of the funds; (2) showing the arbitration award wherein the arbitrator found the interest reserve existed and was kept; (3) showing his own records of his expenses; or (4) showing Pravati's calculations which were sent to him via email. Indeed, had he asked without blatantly attempting to bolster his Arizona case, Pravati would have been willing to work with him. Instead, Balestriere created a controversy where none existed, created an argument on an interest calculation the defendant would have no evidentiary basis to challenge (and which has already been disproven), then allied with the human-trafficking defendant to extend briefing deadlines (ECF 432), which just delays his clients' recovery even longer than it already has been. All this appears to have been done just help Balestriere escape liability in Arizona.

## *Law and Argument*

16. Pravati lodged its objections to the Subpoena on June 18, 2024.
17. Pravati is a nonparty to this litigation.

4

18. Pravati is not headquartered in New York, maintains no office in New York, does not regularly conduct business in New York, none of its employees or officers live in New York, and no action by Pravati has given rise to the litigation in this case. Exh. E.

19. The at-issue litigation funding occurred within Arizona pursuant to a series of funding agreements, the choice of law for which is Arizona law. Exh. E.

20. Accordingly, respectfully, this Court has no jurisdiction over Pravati. *Gucci Am. v. Bank of China*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court, however, must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45."); *see also United States ex rel. Staggers v. Medtronic*, Inc., No. 1:15-cv-392-TSC-RMM, 2022 U.S. Dist. LEXIS 160493, at *7 (D.D.C. Sep. 6, 2022) (same).

21. Moreover, the Subpoena violates Rule 45's 100-mile limitation. *See* FRCP 45(c)(1)(A), (d)(3)(A)(ii); *United States ex rel. Fischer v. Cmty. Health Network, Inc.*, No. 1:14-cv-01215-RLY-MKK, 2023 U.S. Dist. LEXIS 235613, at *11 (S.D. Ind. Oct. 19, 2023) ("The Rule's mandate is clear: a third party cannot be commanded to produce 'documents, electronically stored information, or tangible things' at a location that is more than 100 miles of where the third party 'resides, is employed, or regularly transacts business in person.'") ; *see also Broumand v. Joseph*, 522 F. Supp. 3d 8, 22 (S.D.N.Y. 2021) (even if a court has personal jurisdiction over a nonparty, Rule 45's geographical limit still prohibits the court from enforcing a subpoena beyond 100 miles); *see also In re Corrugated Container Antitrust Litig.*, 644 F.2d 70, 74 n.6 (2d Cir. 1981) (the court could not compel a nonparty witness to testify beyond Rule 45's geographical limit). Again, all Pravati entities are headquartered in Arizona and incorporated in Delaware, and none of

its officers or employees live in New York. The 100-mile limitation extends to depositions, including remote depositions, like the one Plaintiffs' counsel requests. *Id* at 23-24; *see also Kirkland v. United States Bankr. Court for the Cent. Dist. of Cal. (In re Kirkland)*, 75 F.4th 1030, 1043 (9th Cir. 2023). It is Plaintiffs' burden to show their Subpoena is appropriate and they cannot do so. *Cmty. Health Network, Inc.*¸ 1:14-cv-01215-RLY-MKK, 2023 U.S. Dist. LEXIS 235613, at *11. Accordingly, the Court here "must" grant this motion. *See* FRCP 45(d)(3)(A).

22. Balestriere was repeatedly told Pravati does not maintain any office in New York and is outside the 100-mile limitation. Indeed, Balestriere appears to understand this fact given his attempts to serve Pravati at its Arizona headquarters instead of the alleged New York office. When asked for their legal authority to issue the Subpoena when Pravati is not subject to jurisdiction in New York, Balestriere refused to do so stating "[w]e are not here to do research for you."

23. The Subpoena itself requests disclosure of privileged or confidential information. Exh. E. Specifically, Pravati's confidential banking information and non-public reports to the SEC. The banking records themselves contain attorney-client privileged information reflecting funding for plaintiffs across the country.

24. The Subpoena requests information that is either irrelevant to the litigation, is within their own possession, or goes to an allegation they can prove via other means. Specifically, Plaintiffs' counsel alleges the information sought is to support their calculation for their attorney's fees application. However, Pravati's accounting procedures are irrelevant to that inquiry. If Balestriere were actually concerned with his representations to this court (as opposed to apparently looking after his own interests), he could prove his fees in any

of the ways described above and may still do so. The amount of costs Balestriere incurred as costs is the relevant inquiry, not Pravati's accounting procedures.

25. The Subpoena also seeks information that does not go to the merits of the underlying case. This is not a discovery dispute between the Plaintiffs and Defendant: liability has already been assessed against the defendant and discovery closed years ago. This is a dispute between Balestriere and Pravati and Balestriere is attempting to use this court's authority to conduct what is essentially a mini-trial against Pravati (a nonparty) which has not had the benefit of defending itself in this action.

26. The Subpoena's request is also overbroad and burdensome. Exh. E. The Subpoena requests "all" of Pravati's banking records relating to the interest reserve starting in March 1, 2018, "all" statements to its auditors concerning the financing agreement, all SEC reports "relating" to the financing agreement. Indeed, the Subpoena, by its terms demands documents even from unnamed parties. *See* Subpoena, at p. 5, "Pravati." The Subpoena therefore demands records of nonparty investors and clients. Along with Pravati, parties have an independent privacy interest in these records. *Sky Med. Supply Inc. v. SCS Support Claim Servs.*, No. CV 12-6383 (JFB) (AKT), 2017 U.S. Dist. LEXIS 43668, at *25 (E.D.N.Y. Mar. 24, 2017) ("In this Circuit, courts are generally in agreement that financial records (including banking records) fall within the scope of information to which a party enjoys a personal right or privilege."); *see also Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009) ("As a general matter, courts are more sensitive to the burdens of discovery when they would be placed on third parties."). Other avenues exist for Balestriere to prove his fee application.

27. "In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied." *Nicholas v. Poughkeepsie Sav. Bank/FSB*, No. 90 Civ. 1607 (RWS), 1991 U.S. Dist. LEXIS 8083, at *5 (S.D.N.Y. June 13, 1991) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978)). Here, as discussed above, Balestriere plainly seeks information to support his personal case in another suit. It is important to remember Balestriere raised this argument, not the defendant. The Court should independently quash the request on these grounds alone.

28. Pravati provided Balestriere with its objections via formal objections and via email. *See* Exh. F. Because Balestriere has issued the Subpoena for improper purpose, in bad faith, and in a manner inconsistent with existing law, Pravati requests its attorney's fees and costs incurred in responding to the Subpoena. *See Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2023 U.S. Dist. LEXIS 228374, at *3 (D. Or. Dec. 22, 2023).

**ACCORDINGLY,** for the reasons stated above, Pravati requests:

1. An order quashing Balestriere's Subpoena.
2. Leave to file a motion for sanctions against Balestriere.

An Order is filed contemporaneously herewith.

Respectfully submitted this 20th day of June 2024.

*/s/ Peter Foster*
Peter B. Foster, Esq.
*Attorney for Petitioner*

*/s/ Benjamin Pierce*
Benjamin Pierce, Esq,
*Attorney for Petitioner*

## CERTIFICATE OF SERVICE

The foregoing has been electronically served to Plaintiffs' and Defendant's counsel via ECF. Copies have also been sent to Plaintiff's counsel at john.balestriere@balestrierefariello.com, as well as Defendant's counsel at may.chiang@dechert.com.

*Peter Foster*

Peter B. Foster

*Benjamin Pierce*

Benjamin Pierce

## CERTIFICATE OF GOOD FAITH MEET AND CONFER

Pursuant to Local Rule 37.3, Counsel for Pravati has attempted confer in good faith with Balestriere in this matter and provided written objections to Balestriere's Subpoena.

*Benjamin Pierce* (signature)

Benjamin Pierce