**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

AMY MOORE, et al.

*Plaintiffs*,

-*against*-

HOWARD RUBIN, et al.,

*Defendants*.

Case No.: 1:17-CV-06404
(BMC)(CLP)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.     PLAINTIFFS' CLAIMED FEES ARE EXCESSIVE AND
          UNREASONABLE ................................................................................................... 3

          A.     PLAINTIFFS' MOTION FAILS TO DISCLOSE THEIR
                    CONTINGENCY ARRANGEMENT WITH BALESTRIERE
                    FARIELLO AND SEEKS EXCESS FEES.  AS SUCH, THE
                    MOTION IS DEFECTIVE AND SHOULD BE DENIED IN ITS
                    ENTIRETY. ............................................................................................... 3

          B.     PLAINTIFFS SHOULD ONLY RECOVER FEES FOR THE
                    FOUR ATTORNEYS ON THE PRIMARY CASE TEAM. .................... 4

          C.     PLAINTIFFS' REQUESTED HOURLY RATES ARE
                      UNREASONABLE AND FAR EXCEED THE PREVAILING
                    RATE IN THIS DISTRICT. ........................................................ 6

          D.     THE LODESTAR SHOULD BE FURTHER REDUCED BY 40%.
                    .............................................................................................. 11

    II.    PLAINTIFFS' CLAIMED COSTS ARE EXCESSIVE AND
          UNREASONABLE ............................................................................................... 14

          A.     ANY COSTS THAT MAY BE AWARDED ARE LIMITED BY
                    28 U.S.C. § 1920 AND LOCAL RULE 54.1(C). ................................... 14

          B.     OVER 90% OF PLAINTIFFS' EXPENSES ARE NOT
                    RECOVERABLE. ....................................................................... 16

                1.     LITIGATION FUNDING IS NOT RECOVERABLE. ............... 16

                2.     NEARLY ALL PLAINTIFFS' EXPENSES ARE
                      INADEQUATELY DESCRIBED AND DOCUMENTED
                    WHICH PREVENTS THEIR RECOVERY. ........................... 18

                  3.     THE COURT SHOULD REJECT PLAINTIFFS' OTHER
                      CLAIMED EXPENSES THAT DO NOT FALL WITHIN
                    28 U.S.C. § 1920 OR LOCAL RULE 54.1. ............................... 20

          C.     PERMITTED EXPENSES. ...................................................... 25

CONCLUSION ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
  522 F.3d 182 (2d Cir. 2008).................................................................................................1, 2, 3

*Balance Point Divorce Funding, LLC v. Scrantom*,
  305 F.R.D. 67 (S.D.N.Y. 2015) ...........................................................................................15

*Balestriere PLLC v. CMA Trading Inc.*,
  No. 11 CIV. 9459 MHD, 2014 WL 7404068 (S.D.N.Y. Dec. 31, 2014) .......................5, 9, 10

*Barrella v. Vill. of Freeport*,
  43 F. Supp. 3d 136 (E.D.N.Y. 2014), *aff'd*, 814 F.3d 594 (2d Cir. 2016)....................21, 2, 23

*Bucalo v. E. Hampton Union Free Sch. Dist.*,
  238 F.R.D. 126 (E.D.N.Y. 2006) .........................................................................................23

*Cao v. Wedding in Paris LLC*,
  No. 1:20-CV-02336, 2024 WL 1518847 (E.D.N.Y. Mar. 29, 2024).......................................5

*Chrysafis v. Marks*,
  No. 21CV2516GRBAYS, 2023 WL 6158537 (E.D.N.Y. Sept. 21, 2023)............................11

*Chuzhou Jincheng Metal Work Co. v. AT-SAF Inc.*,
  No. 20-CV-745 (LDH), 2020 WL 13581669 (E.D.N.Y. Aug. 20, 2020)...............................24

*Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*,
  No. 09-CV-5251, 2014 WL 1514235 (E.D.N.Y. Apr. 16, 2014) .............................................5

*Conners v. Connecticut Gen. Life Ins. Co.*,
  No. 98 CIV. 8522 (JSM), 2003 WL 1888726 (S.D.N.Y. Apr. 15, 2003)................................3

*Dattner v. Conagra Foods, Inc.*,
  458 F.3d 98 (2d Cir. 2006).....................................................................................................16

*DCH Auto Grp. (USA) Inc. v. Fit You Best Auto., Inc.*,
  No. CV-05 2973(NG)(JMA), 2006 WL 279055 (E.D.N.Y. Jan. 10, 2006) ...........................24

*Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. M-02-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ....................................17

*Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc.*,
  350 F. Supp. 3d 199 (E.D.N.Y. 2018) ..........................................................................4, 8, 20

*Francois v. Mazer*,
  523 F. App'x 28 (2d Cir. 2013) .................................................................................2, 11

*G & P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc.*,
  No. 15 CV 6174 (NG)(CLP), 2016 WL 5802747 (E.D.N.Y. Aug. 12, 2016),
  *report and recommendation adopted*, No. 15-CV-6174 (NG)(CLP), 2016 WL
  5716819 (E.D.N.Y. Sept. 30, 2016)..............................................................18, 20, 22

*Hamptons Locations, Inc. v. Rubens*,
  No. 01 Civ. 5477, 2010 WL 3522808 (E.D.N.Y. Sept. 2, 2010)...........................23

*Hemant Patel, M.D., P.C. v. Bandikatla*,
  No. 18-cv-10227 (JSR), 2024 WL 1509238 (S.D.N.Y. Apr. 5, 2024) .....................6

*Houston v. Cotter*,
  234 F. Supp. 3d 392 (E.D.N.Y. 2017) .....................................................................1

*JCDecaux Airport, Inc. v. Tom Sawyer Prods., Inc.*,
  16 Civ. 5067 (NRB), 2020 WL 4226589 (S.D.N.Y. July 22, 2020) .....................23

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .......................................................................*passim*

*Karmel v. City of New York*,
  No. 00-CV-9063, 2008 WL 216929 (S.D.N.Y. Jan. 9, 2008) ................................23

*King v. JCS Enters., Inc.*,
  325 F. Supp. 2d 162 (E.D.N.Y. 2004) ...............................................................13, 2

*Lawson v. Rubin*,
  No. 17-CV-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018)...............13

*Lawson v. Rubin*,
  No. 17-CV-6404 (BMC), 2018 WL 4861380 (E.D.N.Y. Oct. 5, 2018) ................7, 9

*Lawson v. Rubin*,
  No. 17-CV-6404 (BMC), 2018 WL 7958928 (E.D.N.Y. June 11, 2018)...............13

*Lewis v. Coughlin*,
  801 F.2d 570 (2d Cir. 1986).....................................................................................3

*Lilly v. City of New York*,
  934 F.3d 222 (2d Cir. 2019)..............................................................................2, 10

*Lochren v. County of Suffolk*,
  344 F. App'x 706 (2d Cir. 2009) .........................................................................2, 4

*Lucky Brand Dungarees, Inc. v. Ally Apparel Res.*, LLC,
No. 05 CIV. 6757 LTS/MHD, 2009 WL 466136 (S.D.N.Y. Feb. 25, 2009) .........................22

*Matusick v. Erie Cnty. Water Auth.*,
757 F.3d 31 (2d Cir. 2014)...................................................................................................11

*Mhany Mgmt. Inc. v. County of Nassau*,
No. CV 05-2301, 2018 WL 11605900 (E.D.N.Y. Dec. 13, 2018) ...........................................5

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
No. 1:17-cv-01302-NG-CLP, 2022 WL 6564755 (E.D.N.Y. Apr. 7, 2022) ......................6, 10

*Perdue v. Kenny A. ex rel Winn*,
559 U.S. 542 (2010)................................................................................................................2

*Perez v. Rash Curtis & Assocs*,
No. 4:16-CV-03396-YGR, 2021 WL 4503314  (N.D. Cal. Oct. 1, 2021)........................17, 18

*Ravina v. Columbia Univ.*,
No. 16-CV-2137 (RA), 2020 WL 1080780 (S.D.N.Y. Mar. 6, 2020)....................................21

*Reply All Corp. v. Gimlet Media Inc*, No. 15-CV-4950 (WFK) (PK), 2021 WL
1291103 (E.D.N.Y. Apr. 5, 2021) ...........................................................................................9

*Rimini St., Inc. v. Oracle USA, Inc.*,
139 S. Ct. 873 (2019)............................................................................................................22

*Rodriquez v. It's Just Lunch Int'l*,
No. 07-CV-09227, 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) .............................................7

*Shukla v. Sharma*,
No. 07 CV 2972 CBA, 2010 WL 8435857 (E.D.N.Y. Dec. 15, 2010), *report
and recommendation adopted*, No. 07-CV-2972 CBA CLP, 2012 WL 607667
(E.D.N.Y. Feb. 24, 2012) .......................................................................................................19

*Solnin v. Sun Life & Health Ins. Co.*,
776 F. App'x 731 (2d Cir. 2019) ...........................................................................................8

*Stay Pet Services Inc. v. Hoffman*,
No. 17-CV-00116-LJV-JJM, 2019 WL 719825 (W.D.N.Y. 2019)...........................................4

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
566 U.S. 560 (2012)...............................................................................................................18

*Tatum v. City of New York*,
No. 06-CV-4290 PGG GWG, 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010)............................21

*To-Am Equipment v. Mitsubishi Caterpillar*,
   953 F. Supp. 987 (N.D. Ill. 1997) ....................................................................................7

*Toussie v. County of Suffolk*,
   Nos. 01–CV–6716 (JS), 05–CV–1814 (JS),
   2012 WL 3860760 (E.D.N.Y. Sept. 6, 2012) ..................................................................4

*White Lilly LLC v. Balestriere*,
   No. 18-cv-12404 (ALC), 2022 WL 4365615 (S.D.N.Y. Sept. 21, 2022)..............................9

*Zacharias v. Shell Oil Co.*,
   627 F. Supp. 31 (E.D.N.Y. 1984) ..........................................................................4, 18, 24

**Statutes**

18 U.S.C. § 1595...............................................................................................................1, 15

28 U.S.C. § 1920..................................................................................................................15

**Other Authorities**

Local Rule 54.1 ................................................................................................... *passim*

## INTRODUCTION

Plaintiffs' nearly $11 million fee request boggles the mind. It ignores the prevailing rates in this District, instead seeking rates that are wildly inflated and several times larger than the rates awarded in other TVPA cases. It seeks to recover for *36* timekeepers—even though it provides no information about 32 of them and 21 of them billed less than 100 hours over a 7-year period. It includes as costs mostly expenses that are not recoverable as a matter of law—including (incredibly) nearly $2 million in litigation financing charges. The request clearly seeks a windfall—an attorneys' fee award that is *14 to 16 times* greater than what the jury awarded each Plaintiff.

This Court should deny Plaintiffs' request for an extraordinary and unjustified reward, and instead apply this District's rates to the attorneys for whom there is information and who did substantive work on this case. It should refuse Plaintiffs' invitation to award unjustified expenses. Applying well-established principles and appropriate scrutiny to the motion, the Court should award Plaintiffs' counsel no more than $1,057,223 in attorneys' fees and $15,114.90 in expenses.

## LEGAL STANDARD

Under the TVPA, a plaintiff who succeeds at establishing liability "may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a). The statute is silent with respect to any costs and expenses that may be awarded, but it is well-established that the fees and costs awarded can be no more than are reasonable. The movant bears the burden of establishing the reasonableness of the fees. *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017). When awarding statutory attorneys' fees, the district court has "considerable discretion" to determine the attorneys' "presumptively reasonable fee." *See Arbor Hill Concerned Citizens Neighborhood*

1

*Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "The reasonable hourly rate is the rate a paying client would be willing to pay." *Id*. To determine that rate, the district court should consider, among other things, the twelve factors identified in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), to the extent that they are applicable:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019). Courts in the Second Circuit apply a presumption in favor of the forum rule: courts should award attorneys' fees at the going rate for similarly situated attorneys in similar cases in the district in which it sits. *See Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009).

After determining the reasonable hourly rate, courts multiply that rate by the number of hours reasonably expended to determine the presumptively reasonable fee (often referred to as the "lodestar"). *See Lilly*, 934 F.3d at 230 (discussing *Arbor Hill* and *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542 (2010)). Where a party claims "excessive, redundant, or otherwise unnecessary" billing items, courts retain discretion to "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013).

2

## ARGUMENT

I.   **Plaintiffs' Claimed Fees Are Excessive And Unreasonable**

   A.   **Plaintiffs' Motion Fails To Disclose Their Contingency Arrangement With Balestriere Fariello And Seeks Excess Fees.   As Such, The Motion Is Defective And Should Be Denied In Its Entirety.**

At the outset, the Court should reject Plaintiffs' motion in its entirety for two reasons. First, despite acknowledging that "the Firm engaged the Plaintiffs on a contingency fee basis," Pls.' Mem. 24, Plaintiffs fail to provide any details as to their contingency arrangement with their attorneys, making it entirely possible that Plaintiffs' attorneys may recover from both Defendant Rubin *and* their clients.  While Plaintiffs' exhibits refer to a "30% success fee" owed to another lawyer, Jeremy Saland, Balestriere Decl. Ex. 2, at 6, ECF No. 428-3, Plaintiffs did not attach their engagement letters with Balestriere Fariello to their motion.

Plaintiffs' failure to disclose the terms of their contingency arrangement directly contradicts long-standing precedent in this Circuit, which holds that any statutory award of attorneys' fees "should be offset" by any contingency fee. *Lewis v. Coughlin*, 801 F.2d 570, 576 (2d Cir. 1986) (remanding for determination of "what kind of fee arrangement was in fact entered into"); *Conners v. Conn. Gen. Life Ins. Co.*, No. 98 CIV. 8522 (JSM), 2003 WL 1888726, at *2 (S.D.N.Y. Apr. 15, 2003) (requiring offset where attorneys had been retained on a contingency basis to ensure Plaintiffs' attorneys did not recover twice).  In addition, the terms of the engagement letter could also provide other bases for determining the reasonable rate that clients would be "willing to pay." *Arbor Hill*, 522 F.3d at 190.

Second, Plaintiffs' fee application seeks *more* than the amounts reflected in their billing records.  This case began in 2017.  Over the last seven years, the billing records attached to Plaintiffs' fee application show gradual rate increases for many of the timekeepers on the case. But Plaintiffs apply the 2024 rate to all hours billed to the case going back to 2017.  For

3

example, even though the billing records quote Mr. Balestriere's 2017 billing rate as $1,085, and then quote a $1,520 hourly billing rate for him in 2022 (the year of the trial), Plaintiffs apply the 2024 $1,670 rate to all hours Mr. Balestriere billed.  If one used the appropriate billing rate (that is, the 2017 rate for work in 2017, the 2018 rate for work in 2018, etc.), for each of the attorneys for whom Plaintiffs seek payment, the total would be $7,409,026.50—approximately $1.4 million less than the fee application.[1]   (To be clear, Mr. Rubin does not concede that the amount on the invoices is the correct amount that should be awarded.  As set forth below, there are numerous other problems with the Plaintiffs' submission.)

Given these defects in Plaintiffs' Motion, the Motion should be rejected in its entirety and Plaintiffs should be required to resubmit an accurate application.  *See Toussie v. Cnty. of Suffolk*, Nos. 01–CV–6716 (JS)(ARL), 05–CV–1814 (JS)(ARL), 2012 WL 3860760, at *9 (E.D.N.Y. Sept. 6, 2012) (denying all attorney's fees where counsel "grossly inflated their fee application"); *Sit n' Stay Pet Services Inc. v. Hoffman*, 17-CV-00116-LJV-JJM, 2019 WL 719825, at *6 (W.D.N.Y. Feb. 1, 2019) ("[H]ours [*sic*] not properly billed to one's client also are not properly billed to one's *adversary* pursuant to statutory authority.").

### B.   Plaintiffs Should Only Recover Fees For The Four Attorneys On The Primary Case Team.

While Plaintiffs seek payment for 36 individuals who billed time to the case, they utterly fail to justify 32 of the timekeepers.  Mr. Balestriere's Declaration deems the "primary" case team to have consisted of just four attorneys and two non-attorney legal analysts: attorneys Mr.

---

[1]    Plaintiffs argue that the Second Circuit's decision in *Lochren* support the proposition that they should receive their 2024 rates across the entire duration of the litigation, but that is not what *Lochren* held; nor is it sensible: Plaintiffs cannot seek greater fees than what would have been charged if their attorneys had been billing them during the entire litigation.  The Second Circuit directed the district court to "determine and apply current rates *in the Eastern District*," *Lochren*, 344 F. App'x at 710 (emphasis added), not the current rate allegedly charged by the attorney.  As demonstrated below, counsel's rates are wildly out of line with those used in the Eastern District. (*Lochren* further affirmed the district court's 25% fee reduction.)

Balestriere, Matthew Schmidt, Jillian McNeil, and Brian Grossman, and analysts Jin Lee and Emily Shlafmitz.   Balestriere Decl. ¶ 8.   And Mr. Balestriere's Declaration provides the background and experience information for only those four attorneys, giving no information as to the legal analysts.

Plaintiffs' counsel has been warned about such omissions before.  In *Balestriere PLLC v. CMA Trading Inc.*, the court found that Balestriere Fariello's fee application was "entirely inadequate" where it failed to provide any information to justify the rates it was seeking for attorneys and non-lawyer personnel "titled variously as 'legal analyst,' 'legal apprentice' or 'chief of staff'"—precisely the same terms it uses here.  2014 WL 7404068, at *1 (S.D.N.Y. Dec. 31, 2014).   In addition, both here and in the earlier case, counsel fails entirely "to identify what the non-lawyer titles are intended to signify in terms of the responsibilities of the individuals as well as their education, training, and skills."  *Id*. at *9.  While the *CMA Trading* court allowed Balestriere Fariello to recover fees despite the obvious deficiencies in its application, the rates awarded were "on the bottom end of whatever spectrum might be available."  *See* 2014 WL 7404068, at *9.

Plaintiffs' failure to provide information as to the background or experience for 32 timekeepers means that they should not recover fees for any of them.  *Cao v. Wedding in Paris LLC*, No. 1:20-CV-02336, 2024 WL 1518847, at *27 (E.D.N.Y. Mar. 29, 2024) (fees excluded where application had no information as to certain timekeepers' backgrounds or credentials).

Even if Plaintiffs had met their burden to justify the remaining 32 timekeepers, many of them should still be excluded.  The exclusion of time below a certain threshold is reasonable.  *See Mhany Mgmt. Inc. v. Cnty. of Nassau*, CV 05-2301, 2018 WL 11605900, at *3–5, 15 (E.D.N.Y. Dec. 13, 2018).  Twenty-one of the timekeepers appearing in Plaintiff's chart billed

less than 100 hours to this case over a seven-year period.  Plaintiffs even seek to recover for a "mid-level attorney" who billed just 12 minutes to the case (.2 hours), another "mid-level attorney" who billed 42 minutes (.6 hours), and a partner who billed 30 minutes.  It is a reasonable inference that those who billed below 100 hours on this matter did not make substantial contributions, and so, for this reason as well, there should be no fees paid for them.

### C. Plaintiffs' Requested Hourly Rates Are Unreasonable And Far Exceed The Prevailing Rate In This District.

In calculating the lodestar, the Court should look to the rates awarded in this District in TVPA cases.  *See Paguirigan v. Prompt Nursing Emp. Agency LLC*, 1:17-cv-01302-NG-CLP, 2022 WL 6564755, at *7–8 (E.D.N.Y. Apr. 7, 2022).  The rates employed by the Eastern and Southern Districts in TVPA cases fall within the same range, and so we reference those cases below as well. [2]

Those rates are: $550 for exceptionally qualified partners, $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff.  *See, e.g.*, *Paguirigan*, 2022 WL 6564755, at *7–8 (approving hourly rates of $550 and $450 for "uniquely qualified" attorneys in a TVPA case); *Hemant Patel, M.D., P.C. v. Bandikatla*, 18-cv-10227 (JSR), 2024 WL 1509238, at *11 (S.D.N.Y. Apr. 5, 2024) (relying in part on *Paguirigan* to approve hourly rates of $450 for a partner, $350 for counsel, $275 for senior associates, $250 for associates, and $100 for paralegals and law clerks in a TVPA case and

---

[2]   Plaintiffs suggest Southern District rates are relevant because Defendant Rubin's counsel, Dechert, is located in the Southern District and it charges high rates.  Pls.' Mem. 16 (citing to Dechert's fee application in a SDNY bankruptcy case).  What Rubin paid his attorneys is not relevant to what Rubin should be ordered to pay Plaintiffs' attorneys.  In any event, rates charged in a complex commercial bankruptcy matter by a global firm with overhead costs for more than 1000 attorneys have no relevance to Plaintiffs' case here.  Plaintiffs are essentially arguing that because Rubin can afford lawyers with high rates, the Court should award high rates to Balestriere Fariello.  But that is not the law in this Circuit.

*reject* hourly rates of $475 for partners, $425 for counsel, $375 for senior associates, and $320 for junior associates as unreasonable).[3]

Plaintiffs' proposed hourly rates bear no resemblance to the prevailing rates awarded in this District.  Plaintiffs' proposed rates range from $417 for junior attorneys to $1,670 for the most senior (Mr. Balestriere).  Plaintiffs offer no justification for this extraordinary inflation. The inflation of Mr. Balestriere's rate ($1,670 per hour) is especially egregious.  Not only does it far exceed the prevailing rate for partners in this District, but it does not take into account the *Johnson* factors relevant here.

- *Johnson factor 1 – The time and labor required* – This factor is neutral.

- *Johnson factor 2 – The novelty and difficulty of the questions* – While counsel tries to analogize the case to "complex commercial actions" in the New York area, Pls.' Mem. 15, the analogy is not well-founded:  This case is obviously not a complex commercial case involving securities law, antitrust issues, or business torts.  Plaintiffs cannot deem their case to involve complex commercial issues simply because the TVPA has an interstate commerce component.  This is not a case with "difficulty of the questions."[4]

---

[3]   Such rates are consistent with the Court's ruling that levied sanctions on Plaintiffs' counsel. There, the Court found hourly rates ranging from $395 to $525 to be reasonable "although high for this district."  *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 4861380, at *3 (E.D.N.Y. Oct. 5, 2018); *see also* Schnur's Mem., ECF No. 153-1, at 4 (listing the applicable hourly rates).

[4]   Mr. Balestriere himself has conceded that his top rate for commercial clients should not apply to cases where complex commercial issues do not predominate.  In a consumer rights class action in the Southern District, Mr. Balestriere conceded that his top rate for commercial clients should not apply, even though the class claims there actually involved claims of business fraud.  *See* Balestriere Decl. ¶ 30, *Rodriguez v. It's Just Lunch*, No. 07-CV-09227, 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) (ECF No. 451) (noting Mr. Balestriere had a "standard rate of $1,300 per hour" billed to commercial clients but that he would calculate the lodestar based on a rate of $690 per hour).  Ultimately, Mr. Balestriere's $690 hourly rate was reduced even further in *It's Just Lunch*, because the actual fee recovery was just a fraction of the lodestar calculation: $1.5 million.  No. 07-CV-09227, 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020).

- *Johnson factor 3 – The level of skill required* – It is notable Mr. Balestriere did not attend the depositions of any of his clients, and did not prepare them for their depositions.  The case did not require special skills, such as might be involved in patent or similar complex commercial cases.

- *Johnson factor 4 – The preclusion of the attorney from doing other work* – There has been no allegation that Plaintiffs' firm turned down work on account of this case.

- *Johnson factor 5 – The attorneys' customary rate* – This is addressed above.

- *Johnson factor 6 – Fixed or contingent fee* – As noted above, Mr. Balestriere had a contingent fee agreement with his clients, but he has not disclosed that agreement.

- *Johnson factor 7 – Time limitations* – While this case has taken a great deal of time, much of the delay was on account of the COVID-19 pandemic.  The case was scheduled for trial twice, but each time trial was delayed.

- *Johnson factor 8 – Amounts involved and results obtained* – Although Plaintiffs obtained a verdict in their favor on the TVPA count, one may infer that it was not nearly as much as they, or their attorneys, thought it would be.  Most importantly, counsel received litigation funding on which he originally said he owes over $1.8 million.  Plaintiffs obviously expected an award well in excess of the $3.8 million jury award.  Plaintiffs' requested hourly rates would result in a windfall for their attorneys that far exceeds what Plaintiffs themselves won in damages—a result that the Second Circuit has found unreasonable.  *See Solnin v. Sun Life & Health Ins. Co.*, 776 F. App'x 731 (Mem), 732 (2d Cir. 2019) (reducing hourly rate because the Court was "not convinced that a 'reasonable, paying client' . . .  would be willing to pay an hourly rate resulting in attorneys' fees so far in excess of the amount of recovery[.]").  Plaintiffs' requested

8

hourly rates would result in a fee award that is 14 to 16 times greater than what was awarded to each Plaintiff.  The award is more fitting for a victory several times larger than what the jury awarded here.

■ *Johnson factor 9 – Experience, reputation and ability of the attorneys* – While counsel describes his experience with international commercial disputes, antitrust matters, and False Claims Act litigations, Pls.' Mem. 23–25, as well as securities and consumer fraud cases, Balestriere Decl. ¶ 18, , nowhere does he suggest that he or anyone else in his firm was "uniquely qualified" for the case.  Indeed, it appears that the firm never before handled a TVPA suit, or one for sexual misconduct.  Counsel's reputation is also significant.  Counsel has been the subject of several published decisions finding that he pursued "frivolous and objectively unreasonable" actions and his performance "left much to be desired."[5]  And, of course, this Court imposed sanctions on counsel because "plaintiffs' counsel should have known" that he lacked a basis to bring a RICO claim (or any other claim) against dismissed defendant Yifat Schnur.  *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 4861380, at *2 (E.D.N.Y. Oct. 5, 2018), and also fined counsel for discovery abuse, *see* Order Denying ECF. No. 163, Aug. 29, 2018.

---

[5]  *See, e.g., Reply All Corp. v. Gimlet Media Inc*, No. 15-CV-4950 (WFK) (PK), 2021 WL 1291103, at *2, 3 (E.D.N.Y. Apr. 5, 2021) (requiring Plaintiffs' law firm to pay the legal fees of the defendant, and finding that "[t]he underlying action was frivolous and objectively unreasonable," "plaintiff advanced multiple baseless damages theories in bad faith with the sole aim of extracting a settlement," "[counsel's] increasingly tortured attempts to create a viable damages theory indicate bad faith and extortionary motives," and "[c]ounsel knew of the claim's futility yet continued to impose costs on Defendant under increasingly fanciful theories");  *White Lilly LLC v. Balestriere*, No. 18-cv-12404 (ALC), 2022 WL 4365615, at *1 (S.D.N.Y. Sept. 21, 2022) (affirming an arbitration award and finding that Mr. Balestriere "dipped into escrow funds, retrieving $1.4 million to partially satisfy outstanding fees," and that Mr. Balestriere did not dispute "the Arbitrator's finding that Balestriere's conduct was violative of New York's Disciplinary Rules"); *Balestriere*, 2014 WL 7404068, at *9, *10 (criticizing counsel for defects in its fee application, finding that the firm's "performance left much to be desired," and stating that the court was "generally unimpressed with the quality of legal work from the individuals whom we have seen in this case").

The *Johnson* factors are not exclusive.  *Lilly*, 934 F.3d at 230.  Courts have also taken into consideration the size of the firm seeking fees, which is relevant because smaller firms have lower overhead costs than larger firms.  *CMA Trading*, 2014 WL 7404068, at \*9.  Plaintiffs have repeatedly emphasized that Balestriere Fariello is a small firm.[6]

Applying the prevailing rates in TVPA cases in the Eastern District, the Court should order rates that range from $400–550 for partners (with the top rate reserved for an attorney with over 30 years' experience), $300–400 for counsel, $200–275 for associates, and $100 for paralegals and clerks.[7]  The *Johnson* factors justify a further $50 reduction in each timekeeper's rate.  For the primary case team, a reasonable rate would be $450 per hour for Mr. Balestriere, $350 for Mr. Schmidt, $225 for Ms. McNeil (who had about 6–8 years of experience when she worked on the case) and $150 for Mr. Grossman (who had 1–2 years of experience when he worked on the case).  Defendant's proposed lodestar calculation for the primary case team is thus as follows:

| Name | Position and Experience | Years on Case | Proposed Rate | Hours | Amount |
|---|---|---|---|---|---|
| John G. Balestriere | Partner, 26 years' experience | 2017 to present | $450 | 1699.7 | $764,865 |
| Matthew Schmidt | Associate and Junior Partner, 13 years' experience (Class of 2009) | 2017 to 2024 | $350 | 1537.1 | $537,985 |
| Jillian McNeil | Associate, 6–8 years' experience (Class of 2011) | 2017 to 2019 | $225 | 940.1 | $211,522.50 |
| Brian Grossman | Junior Associate, 1–2 years' experience | 2017 to 2019 | $150 | 1651.1 | $247,665 |

---

[6]   Plaintiffs' counsel should be required to show that they regularly collected in other cases the rates billed on paper here, given that Plaintiffs had a contingency arrangement with counsel.  This showing could be made to the Court under seal or in camera.

[7]   The *Paguirigan* and *Banditkala* cases are particularly apt not only because they involved claims under the TVPA, but also because they were filed in 2017 and 2018 (around the same time as this case) and were vigorously litigated over a number of years.

The lodestar amounts to $1,762,038.

### D.    The Lodestar Should Be Further Reduced By 40%.

"A court [*sic*] must use its experience to exclude hours that are 'excessive, redundant, or otherwise unnecessary,' and in dealing with such surplusage, [courts] have discretion simply to deduct a reasonable percentage of the number of hours claimed." *Chrysafis v. Marks*, No. 21-CV-2516 (GRB)(AYS), 2023 WL 6158537, at *6 (E.D.N.Y. Sept. 21, 2023) (applying 50% reduction); *see also Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64–65 (2d Cir. 2014) (affirming 50% reduction); *Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (affirming 40% reduction).  The Court should use that discretion here to further reduce Plaintiffs' lodestar for fees, as Plaintiffs' invoices include a number of entries that are excessive, redundant, vague, or reflect work that is unrelated to Plaintiffs' TVPA claims.

***Block billing***.  Courts routinely reduce hours due to vague and block-billed entries "'because they limit courts' ability to decipher whether the time expended has been reasonable.'" *Chrysafis*, 2023 WL 6158537, at *8 (quoting *Congregation Rabbinical College v. Village of Pomona*, No. 07-CV-6304 (KMK), 2021 WL 1222159, at *9 (S.D.N.Y. Mar. 31, 2021)).  Here, not only do the primary case attorneys routinely use block billing, their entries include work that had no bearing on their TVPA claims.  These include work on a separate case filed by three of the Plaintiffs in Queens County that was discontinued voluntarily in 2018,[8] discussions with the litigation funder,[9] discussions about additional litigation funding,[10] and administrative work.[11]

---

[8]    *See, e.g.*, Balestriere Decl. Ex. 1, at 43, ECF No. 428-2, entry on 12/28/2017 (JLM): Correspond with opposing counsel regarding case management plan; discuss plans for next steps in Queens County action with JGB: research statute of limitations issues regarding withdrawal of complaint. (1.10 hours, $665.50 sought.)

[9]    *See, e.g.*, *id.* at 48, entry on 1/8/2018 (MWS): Discuss litigation funding and related issues with JGB, JLM, BLG, JL, and potential funder; review and revise litigation funding agreement; draft language for clients re: litigation financing offer; gather and coordinate gathering of information requested by funder. (3.60 hours, $2,250 sought.)

Moreover, while Plaintiffs aver that they excluded fees associated with Ms. Schnur's motion, Balestriere Decl. ¶ 17, they obviously did not do so thoroughly, as the block billed entries include work opposing Ms. Schnur's sanctions motion.[12]

**_Withdrawal of Stephanie Caldwell/Katrina Rico._** Though Plaintiffs initially filed this case with the participation of Katrina Rico, she stopped cooperating with counsel and her claims were dismissed. Order, Nov. 9, 2018, ECF No. 204. Plaintiffs' billing records include entries noting that in 2020, she signed a new engagement letter and contemplated rejoining the case, but ultimately did not do so. Plaintiffs should not recover fees for any investigation or other work on Rico's claims.

**_Work regarding dismissed defendants and rejected theories_**. Plaintiffs' counsel spent considerable time investigating and asserting claims against certain defendants who were eventually dismissed by the Court: Schnur, Shon, and Blue Icarus.[13] Fees generated for investigating and pursuing claims against these individuals and entity should not be borne by Mr.

---

[10]  *See, e.g., id.* at 384, entry on 5/12/2022 (MWS): Review and analyze defendant brief; discuss opposition brief with team and HTLegal; email to client with thoughts; outline opposition brief; discuss payoff letter with Pravati Capital relating to client request for assistance with post-verdict funding; discuss same with potential funders. (8.40 hours, $8,316 sought.)

[11]  *See, e.g., id.* at 11–12, entry on 9/20/2017 (BLG): Research filing under seal and begin drafting documents; draft letter to Defendants regarding litigation hold; call with clients; finalize litigation hold letter and FedEx same to defendants. (5.90 hours, $2,301 sought.)

[12]  *See, e.g., id.* at 91, entry on 5/17/2018 (BLG) (7.40 hours, $3,071 sought) ("Meet with JGB and JLM to discuss status of discovery; meet with JLM to determine best deposition dates and times for all deponents and attorneys; review prior discovery responses from Defendants for meet and confer call tomorrow; call Apple regarding subpoena; call Katrina regarding her witness list; **review motion for sanctions from Schnur**; email Apple subpoena.") (emphasis added); 5/31/2018 (BLG) (10.90 hours, $4,523 sought) ("Research and draft reply to motion to reconsider; **assist as needed with finalizing opposition to Schnur Rule 11 letter; file Schnur Rule 11 letter**; discuss drafting of responses to document demands with HNM.") (emphasis added).

[13]  *See, e.g., id.* at 20, entry on 10/20/2017 (BLG): Draft memorandum regarding Schnur's letters and authority; discuss memorandum regarding Ortoli communications and authority; draft response email to Marc Gottlieb; discuss Defendants moving out of apartment with JGB; call Schnur with JGB; edit litigation hold letter and send same to Rose and Associates and Macklowe properties as associated with the building. (7.70 hours, $3,195.50 sought.)

Rubin.  *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 167 (E.D.N.Y. 2004) (unsuccessful claims that are severable should be omitted from fee award).

Plaintiffs' counsel also expended considerable time developing the RICO claims against Defendant Rubin and Defendant Powers, which this Court rejected.  *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 2012869, at *21 (E.D.N.Y. Apr. 29, 2018).  The Court also excluded certain state-law claims as time-barred, and then denied Plaintiffs' motion to reconsider that decision.  *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 7958928, at *3–4 (E.D.N.Y. June 11, 2018).  The Court should reduce the lodestar to account for the Court's ruling against Plaintiffs on these issues.

*Pravati Capital*.  As the Court is now well aware, Plaintiffs' counsel is in litigation with its litigation funder for this case, Pravati Capital.  Plaintiffs' billing records include a number of discussions with Pravati Capital which presumably developed into the dispute between Balestriere Fariello and Pravati Capital.  Plaintiffs' counsel has provided no rationale for why his dispute with Pravati is properly attributable to any fee award under the TVPA.

*Lack of preparation for depositions.*  Plaintiffs testified to preparing only for a few hours for their depositions with Brian Grossman and Matthew Schmidt.  *See, e.g.*, Reyes Dep. Tr. 11:18-12:7; Hopper Tr. 6:6-6:10.  At the time Plaintiffs were deposed, Mr. Grossman had only 1–2 years of legal experience and Mr. Schmidt was still an associate.

*Defendant prevailed on motions in limine*.  While Plaintiffs purport to have excluded work on Schnur's sanctions motion, they did not exclude any time associated with Defendant's successful motions in limine.  *See* Order on Motions in Limine, Jan. 31, 2020, ECF No. 326.

\*          \*          \*

13

***Proposed overall reduction of 40%.***  In light of the myriad issues identified in Plaintiffs' application, the Court should exercise its discretion to impose a 40% reduction on the lodestar. Applying a 40% reduction results in a fee award of **$1,057,223**.

## II.   PLAINTIFFS' CLAIMED COSTS ARE EXCESSIVE AND UNREASONABLE

Plaintiffs' request for costs and expenses is similarly inflated, unsupported, and unreasonable.  Plaintiffs seek more than *two million dollars* in costs.  Incredibly, they are asking the Court to award $1.8 million in principal and interest on a litigation funding arrangement in the absence of authority finding the loan is a recoverable expense.  Nor can Plaintiffs recover for their own travel and meal costs, their attorneys' travel and meal costs, Plaintiffs' counsel overtime expenses, or "expert witness fees" (which include an invoice for the Eastern District mediation that occurred shortly before trial). Further, Plaintiffs' failure to provide proper descriptions for almost all of the claimed expenses renders those expenses not recoverable as well.  In total, Plaintiffs should only be able to recover $15,114.90 for certain deposition transcripts and exhibits used at trial.

### A.   Any Costs That May Be Awarded Are Limited By 28 U.S.C. § 1920 and Local Rule 54.1(c).

The TVPA does not expressly provide for an award of costs. It only allows for "reasonable attorneys fees."  18 U.S.C. § 1595(a).  "[A] district court must find authority to award costs or out-of-pocket expenses in a federal statute, rule of court or in the practice, custom and usage of a particular court."  *Zacharias v. Shell Oil Co.*, 627 F. Supp. 31, 36 (E.D.N.Y. 1984).  Rule 54(d)(1) of the Federal Rules of Civil Procedure provides the authority for costs here.  The costs recognized by Rule 54(d)(1) are set forth in 28 U.S.C. 1920 and Local Rule 54.1(c).  *See Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc.*, 350 F.

Supp. 3d 199, 236 (E.D.N.Y. 2018).  In relevant part, Section 1920 provides that the following

may be taxed as costs in federal court:

- fees of the clerk and marshal;

- fees for transcripts necessarily obtained for use in the case;

- fees and disbursements for printing and witnesses; and

- fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.

28 U.S.C. § 1920.  Local Rule 54.1 "further outlines those costs which are taxable."  *Balance*

*Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 69–70 (S.D.N.Y. 2015).  The relevant

taxable costs under Local Rule 54.1 are:

- "[T]he original trial transcript that was necessarily obtained for use in this Court . . . [c]onvenience of counsel is not sufficient."

- "[T]he original transcript of a deposition, plus one copy, . . . if the deposition was used or received in evidence at the trial . . . [or if it was] used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion . . . "*[c]ounsel's fees and expenses in attending the taking of a deposition are not taxable except as provided by statute, rule . . ., or order of the Court*."

- "Witness fees and travel expenses authorized by 28 U.S.C. § 1821 [] if the witness testifies," but "*[n]o party to the action may receive witness fees, travel expenses, or subsistence.*"

- "A copy of an exhibit is taxable if the original was not available and the copy was used or received in evidence," but "*[t]he cost of copies used for the convenience of counsel or the Court are not taxable.*"

- "The cost of photographs, 8" x 10" in size or less, is taxable if used or received in evidence," but "*[e]nlargements greater than 8" x 10" are not taxable except by order of the Court*."

- "Attorney fees and *disbursements and other related fees and paralegal expenses are not taxable except by order of the Court*."

Local Rule 54.1(c)(1)–(7) (emphasis added).  "The fee applicant bears the burden of adequately

documenting and itemizing the costs requested."  *Claudio v. Mattituck-Cutchogue Union Free*

*Sch. Dist.*, No. 09-CV-5251, 2014 WL 1514235, at \*17 (E.D.N.Y. Apr. 16, 2014) (internal

citations omitted).  The decision to award costs is within the discretion of the Court.  *See Dattner*

*v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006).

> **B.      Over 90% of Plaintiffs' Expenses Are Not Recoverable.**

> **1.      Litigation Funding Is Not Recoverable.**

The vast majority of expenses derive from a litigation funding loan that Plaintiffs'

counsel obtained in March of 2018.  Balestriere Fariello entered into a legal funding contract

with Pravati Capital which advanced the firm $300,000 in principal and $345,600 in prepaid

interest for a period of 24 months.  *See* Balestriere Decl. Ex. 2, at 17.  Because the funding

arrangement allowed for monthly 3% interest to accrue, Plaintiffs now seek approximately $1.8

million in principal and interest in connection with their litigation financing.[14]  Pls.' Mem. 23–

25, ECF No. 429-1.  While a schedule attached to the contract appears to authorize the principal

payment to be used for expenses for this case, the terms of the contract allow Balestriere Fariello

to use the funds to pay costs and expenses associated with operating a law practice, to refinance

the firm's existing indebtedness, to pay federal/state, or local taxes, or to make an arms' length

loan or distributions to one of the partners at Balestriere Fariello.  Balestriere Decl. Ex. 2, at 5

¶ 4.  In return, Balestriere Fariello granted Pravati a security interest in the Rubin case as

"collateral and security for the full and timely repayment and performance of all obligations"

under the agreement.  *Id.* at 5–6 ¶ 5.

Balestriere Fariello and Pravati are currently in litigation over the litigation funding

arrangement but their dispute over the proper calculation of the amount owed has no relevance

here.  Counsel's litigation funding arrangement is not recoverable as a cost or expense.  Simply

---

[14]     The loan was for $300,000, but at a "3% simple interest per month"—*i.e.*, an annual rate of *36%*—Plaintiffs now owe $1.8 million.  Balestriere Decl. ¶¶ 32-35.

put, the advanced amount, the interest accruing, and the security interest that Balestriere Fariello granted to Pravati Capital in any potential judgment are not among the recognized expenses set forth in 28 U.S.C. § 1920 or Local Rule 54.1.   Indeed, Plaintiffs themselves acknowledge litigation financing costs are not "typical litigation costs."   Pls.' Mem. 31 ("These include the typical litigation costs . . ., as well as costs pursuant to a litigation financing agreement.").   Nor do Plaintiffs make any attempt at arguing that the complex funding arrangement their counsel entered into somehow falls within the limited expenses recognized by the statute or the rule.

Plaintiffs cite no authority finding that litigation funding is recoverable as a cost or expense.[15]   And the one federal court that has passed on this question expressly rejected the notion that litigation financing could be recovered as an expense in a fee award.   In *Perez v. Rash Curtis & Assocs.*, class counsel sought to recover $300,000 to a broker for brokering a litigation funding agreement and $5,000,000 to a litigation funder that had invested in the case.   No. 4:16-CV-03396-YGR, 2021 WL 4503314, at *4 (N.D. Cal. Oct. 1, 2021).   The court determined that litigation funding amounts "are not recognized statutorily" and noted that approving such expenses would allow attorneys to request reimbursement "for their own financing arrangements" or "lines of credit with financial institutions."   *Id.*   The court deemed these costs as "fundamentally relat[ing] to the cost of doing business" and therefore not recoverable.   *Id.*

Indeed, a "[defendant's] responsibility is not increased by the difficulties [a plaintiff] encountered in financing the litigation."   *To-Am Equipment v. Mitsubishi Caterpillar Forklift*

---

[15]   While Plaintiffs cite *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007), there is no evidence from the court's order or class counsel's motion that the expenses included an award for litigation financing.   Notice of Mot. & Mem. for Fees & Expenses, *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH (N.D. Cal. Aug. 16, 2007) (Dkt. 1648), 2007 WL 2416513.   And while there is a reference to interest in the court's order, that was simply an acknowledgment that expenses would be paid from the settlement fund, which had been accruing interest after it had been set aside— not an expense for interest that had been accruing from a loan.   *Dynamic Random*, 2007 WL 2416513, at *1.

*Am., Inc.*, 953 F. Supp. 987, 998-99 (N.D. Ill. 1997) ("[d]ifficulties unique to a particular plaintiff or case do not justify imposing extra costs on defendants").  It is well-established that costs under 28 U.S.C. § 1920 are a narrow category.  "Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts."  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

Here, Plaintiffs' counsel's decision to obtain a loan with a *36%* annual interest rate does not increase Mr. Rubin's responsibility to cover the costs that are actually permitted under the law.  And even if any portion of the litigation funding were recoverable, Plaintiffs have failed to submit any proof that the initial $300,000 advance was in fact used to cover expenses for this action, instead of the other recognized uses of capital provided by the contract (such as taxes, distributions to other partners, or refinancing of a loan to the firm).  Accordingly, the Court should reject any award of expenses in connection with the funding arrangement with Pravati. *See Zacharias*, 627 F. Supp. at 37; *Perez*, 2021 WL 4503314, at *4.

### 2.    Nearly All Plaintiffs' Expenses Are Inadequately Described and Documented Which Prevents Their Recovery.

Plaintiffs failed to provide proper descriptions for the expenses they are seeking to recover, requiring denial of their request.  *See Equal Emp. Opportunity Comm'n*, 350 F. Supp. 3d at 236 ("[f]ailure to adequately document costs may result in the denial or reduction of those costs").  Supporting documentation, such as invoices or receipts, generally must be submitted with an application for costs. *See G & P Warehouse, Inc. v. Cho's Church Ave Fruit Mkt. Inc.*, No. 15 CV 6174 (NG)(CLP), 2016 WL 5802747, at *12 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, No. 15-CV-6174 (NG)(CLP), 2016 WL 5716819 (E.D.N.Y. Sept. 30,

2016) ("[i]n order to recover [] costs, plaintiff is [] required to provide the Court with adequate documentation that it actually incurred the costs").  Indeed, a "[c]ourt cannot base an award upon amounts requested where the requesting party has not provided adequate documentation," such as "invoices or receipts."  *Shukla v. Sharma*, No. 07 CV 2972 CBA, 2010 WL 8435857, at *14–15 (E.D.N.Y. Dec. 15, 2010), *report and recommendation adopted,* No. 07-CV-2972 CBA CLP, 2012 WL 607667 (E.D.N.Y. Feb. 24, 2012) (finding application for costs was unsupported as it "include[d] charges that ha[d] very little, if any, supporting documentation or explanation . . .. While counsel ha[d] include[d] a breakdown of the[] costs, some with supporting invoices, many of the charges lack[ed] sufficient documentation").

As an example, the *Shukla* court found insufficient an exhibit in support of an award of costs application that "simply has numerous repetitive entries with vague titles such as "Facsimile," "Pacer," "Postage," "Duplication," "Meals," and "Transportation," without indicating, for instance, "how many pages were faxed or duplicated, or who was transported where." *Id.*

That is exactly what Plaintiffs have done here.  They are seeking more than $2 million in costs by submitting invoices with close to 1,700 claimed expenses with generic short, vague, and repetitive descriptions that do nothing to identify what each expense was for or why it was necessary.  Plaintiffs have submitted *no* back-up documentation for these expenses either.  And Mr. Balestriere's Declaration is of no assistance as it is devoid of details regarding expenses (other than briefly summarizing the nature of the litigation loan).  Therefore, Plaintiffs cannot recover any of these inadequately documented and vaguely described expenses.

### 3. The Court Should Reject Plaintiffs' Other Claimed Expenses That Do Not Fall Within 28 U.S.C. § 1920 or Local Rule 54.1.

Even after excluding the litigation financing expenses, Plaintiffs' expenses include a number of costs that are not recoverable under the narrow costs recognized by 28 U.S.C. § 1920 or Local Rule 54.1. The Court should reject the following categories of expenses.

*Plaintiffs' travel expenses and incidentals*. Local Rule 54.1(c)(3) expressly prohibits any party from receiving witness fees, travel expenses, or subsistence. *Equal Emp. Opportunity Comm'n*, 350 F. Supp. 3d at 236 (citing Local Rule 54.1(c)(3)). Plaintiffs' billing records include flights for Plaintiffs "to come to New York," hotel costs while in New York, flights for their attendance at jury selection and trial, and meals during trial. Such costs are prohibited by Local Rule 54.1(c)(3) and the Court should therefore exclude $40,293.97 from Plaintiffs' claimed costs. Chiang Decl., Ex. A.

*Attorneys' travel and meal expenses*. Plaintiffs similarly seek travel and meal expenses for their counsel, including flights and hotels in New York for Mr. Schmidt, who lives in California. Specifically, their billing records list approximately 865 "[m]eals while discussing and/or working on case;" 330 expenses for "[t]ransportation" with no other description; air fares—one for the deposition of Taren Cassidy in Florida, and one, inexplicably, for a flight for Mr. Balestriere from Milan to New York; hotel booking and cancellation fees (with no other description), and over $13,000 in flights and lodging for Mr. Schmidt to be in New York for trial.

But "Local Civil Rule 54.1 . . . *exclude[s] counsel's travel*.'" *G & P Warehouse, Inc.*, 2016 WL 5802747, at *12. And to the extent these expenses are related to counsel's day-to-day work, they are similarly not recoverable. Nothing in Section 1920 or Local Rule 54.1 allows for reimbursement for attorneys' travel to/from the office or the trial—which would be particularly

20

unwarranted in this case given that Balestriere Fariello is located in New York and almost all the depositions and the trial took place there.

Courts have also found that "meals that are not required by out-of-town travel are not compensable." *Tatum v. City of New York*, No. 06-CV-4290 PGG GWG, 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010). Here, as noted, virtually all meals were not required by out-of-town travel as the case was almost entirely litigated in New York. And while "[s]ome courts [] have found that reasonable costs for meals are reimbursable 'so long as the costs are not typically absorbed within the attorney's hourly rates,'" Plaintiffs here do not explain how the cost of their attorneys' meals are not absorbed within their hourly rates. *See Ravina v. Columbia Univ.*, No. 16-CV-2137 (RA), 2020 WL 1080780, at *15 (S.D.N.Y. Mar. 6, 2020). Accordingly, these expenses cannot be recovered. The Court should exclude $56,143.59 in such costs. Chiang Decl., Ex. B.

***Overtime fees for non-lawyer staff.*** Plaintiffs' fee request also seeks $29,768.57 in "analyst overtime" and "legal apprentice/independent contractor" charges with no further description as to which analyst, why the person was required to stay overtime, and what function that person performed. Chiang Decl., Ex. C. As noted, many of the non-attorney analysts and apprentices did not make substantial contributions to the case (as evidenced by the hours they billed) and Plaintiffs fail to explain how these overtime charges are properly recoverable here.

That is because none of this overtime can be recovered as an expense. Under Rule 54.1(c)(7), "paralegal expenses are not taxable except by order of the Court." Similarly, "secretarial overtime" is also not recoverable, as "clerical and secretarial services are part of overhead and are not generally charged to clients." *See Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 193 (E.D.N.Y. 2014), *aff'd*, 814 F.3d 594 (2d Cir. 2016). Further, "all

21

administrative costs must be fully documented, 'including a description of the work performed, how the work is related to the instant case, and the name and title of the person performing the work,' to show that the costs are reasonable and necessary." *Lucky Brand Dungarees, Inc. v. Ally Apparel Res.*, LLC, No. 05 CIV. 6757 LTS/MHD, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009).  Plaintiffs fail to do so here.

*Expert witness fees*.  Plaintiffs seek $33,314.01 in "expert witness fees."  Chiang Decl., Ex. D.[16]  Notably, the Court excluded Plaintiffs' proposed expert witness, *see* Mem. Decision & Order, July 29, 2019, ECF No. 290, and Plaintiffs called no expert during the trial.

The TVPA and "Rule 54(d) . . . do[] not expressly refer to expert witness fees . . . [and] [i]n defining what expenses qualify as 'costs,' §§ 1821 and 1920 likewise do not include expert witness fees." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 540–41 (2019).  "[T]herefore [] the prevailing party c[an] not obtain expert witness fees: When 'a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the [statutory limits], absent contract or explicit statutory authority to the contrary.'" *Id.*  As such, recovery of these expenses related to "experts" is also impermissible.

*Research costs*.   Plaintiffs seek more than $30,936.72 in research charges mostly described as "Westlaw research charge" and "PACER research charge."  Chiang Decl., Ex. E. The Court should exclude legal research expenses.  *See G & P Warehouse, Inc.*, 2016 WL 5802747, at *12.  "It is well-established that 'computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost.'" *Barrella*, 43 F. Supp. 3d at 193; *see also King*, 325 F. Supp. 2d at 172

---

[16]   Among those expert witness fees is Plaintiffs' share of the mediator retained by the parties through this District's Mediation Program, calling into question the "expert" categorization.

("[p]rivate market attorney fee rates reflect overhead costs like electronic research"). Thus, these expenses also must be denied.

*Transcripts*. Plaintiffs also seek costs seemingly associated with same-day trial transcripts, but fail to explain why such transcripts were necessary and not simply for the convenience of counsel as required under Local Rule 54.1(c). As such, these transcripts costs should be denied. *See Hamptons Locations, Inc. v. Rubens*, No. 01 Civ. 5477, 2010 WL 3522808, at *4 (E.D.N.Y. Sept. 2, 2010) (denying "request to tax the costs of the trial transcripts" because "[p]laintiffs [did] not demonstrate[] that they needed the transcripts and the [c]ourt did not order them to be procured"); *Karmel v. City of New York*, No. 00-CV-9063, 2008 WL 216929, at *2 (S.D.N.Y. Jan. 9, 2008) (denying daily trial transcripts costs in 22-day trial noting there was "[n]o reason [] proffered as to why it was actually necessary-and not merely convenient . . . to obtain a daily transcript of the trial); *Bucalo v. E. Hampton Union Free Sch. Dist.*, 238 F.R.D. 126, 129 (E.D.N.Y. 2006) (denying the taxing of daily trial transcripts costs in 11-day trial, stating "counsel's use of the trial transcript during summation and cross-examination is not sufficient to justify taxing the costs of the transcript;" there was "no evidence that counsel was unable to take notes throughout the trial").

Plaintiffs also seek costs associated with transcripts for pre-trial proceedings, but fail to demonstrate that such transcripts were "authorized in advance or ordered by the Court" under Local Rule 54.1(c)(1). *See JCDecaux Airport, Inc. v. Tom Sawyer Prods., Inc.*, 16 Civ. 5067 (NRB), 2020 WL 4226589, at *4 (S.D.N.Y. July 22, 2020). The Court should therefore exclude a total of $32,105.99 in transcript fees from the claimed expenses. Chiang Decl., Ex. F.

*Copying, mailing, firm overhead expenses*. Plaintiffs' request for copying, mailing, and firm overhead expenses are similarly not recoverable. *See Barrella*, 43 F. Supp. 3d at 193

("charge for miscellaneous supplies for trial, binders, and exhibit tabs," as well as "memory stick[s]" "are considered non-compensable general office overhead"); *DCH Auto Grp. (USA) Inc. v. Fit You Best Auto., Inc.*, No. CV-05 2973(NG)(JMA), 2006 WL 279055, at *5 (E.D.N.Y. Jan. 10, 2006) ("[p]laintiff's expenses for word processing [] are not compensable because they are part of routine overhead); *Chuzhou Jincheng Metal Work Co. v. AT-SAF Inc.*, No. 20-CV-745 (LDH), 2020 WL 13581669, at *11 (E.D.N.Y. Aug. 20, 2020) ("neither generic mailing costs nor service fees are enumerated in section 1920, and therefore, should not be recovered").

Here, Plaintiffs seek to have Rubin foot the bill for firm supplies, telephone/conference call charges, and USB drives ($1,673.16), Chiang Decl., Ex. G, as well as copying, service, and mailing costs ($13,273.72).  Chiang Decl., Exs. H, I.  These amounts should also be excluded.

***Other non-recoverable costs***.  Plaintiffs seek $203,472.32 in discovery collection and hosting fees; $6,114.81 in interest charges, including credit card interest; and $24,241.67 in other expenses of an unknown nature, described only as "Fonte and Gelormino Invoice" "Richard M. Maltz call with client re: anti-contact, invoice # 19567;" and "LoPreto & Levy LLP."  Chiang Decl., Exs. J, K, L.  Once again, the vagueness of these descriptions makes unclear what the expenses were for and why they were necessary in the course of providing legal services.  *See Zacharias,* 627 F. Supp. at 37.  Nevertheless, nothing in 18 U.S.C. § 1920 or Local Rule 54.1 supports the recovery of discovery fees, interest charges of any kind, or invoices for unidentified services, and Plaintiffs provide no legal authority to the contrary.  As such, Plaintiffs' request to recover these costs also must be denied

### C.    Permitted Expenses.

The only expenses that Plaintiffs may recover are for court fees, trial demonstratives, and transcripts for depositions that were received in evidence.  These total $15,114.90.  Chiang Decl., Ex. M.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs should only recover $1,057,223 in attorneys' fees and $15,114.90 in expenses.

Dated:  New York, New York                     Respectfully Submitted,
            July 22, 2024
                                                              DECHERT LLP

                                                              By: */s/ Edward A. McDonald*
                                                              Edward A. McDonald
                                                              Benjamin E. Rosenberg
                                                              May K. Chiang
                                                              Three Bryant Park
                                                              1095 Avenue of the Americas
                                                              New York, New York 10036-6797
                                                              Tel.: (212) 698-3500
                                                              Fax: (212) 698-3599

                                                              SHEPPARD, MULLIN, RICHTER &
                                                              HAMPTON LLP

                                                              Michael J. Gilbert
                                                              Katherine Anne Boy Skipsey
                                                              30 Rockefeller Plaza, 39th Floor
                                                              New York, NY 10112
                                                              Tel.: (212) 653-8700
                                                              Fax: (212) 653-8701