2094

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                   :
AMY MOORE, MIA LYTELL,             : 17-CV-06404 (BMC)
NATASHA TAGAI, EMMA HOPPER,        :
BRITTANY HASSEN AND BRITTANY       :
REYES,                             :
                                   : United States Courthouse
         Plaintiffs,               : Brooklyn, New York
                                   :
                                   :
    -against-                      : Tuesday, April 5, 2022
                                   : 9:15 a.m.
                                   :
                                   :
HOWARD RUBIN AND JENNIFER          :
POWERS,                            :

         Defendants.


- - - - - - - - - - - - - - - X


              TRANSCRIPT OF CIVIL CAUSE FOR JURY TRIAL
                BEFORE THE HONORABLE BRIAN M. COGAN
                UNITED STATES SENIOR DISTRICT JUDGE



                     A P P E A R A N C E S:

For the Plaintiffs:    BALESTRIERE FARIELLO
                         225 Broadway
                         29th Floor
                         New York, New York 10007
                       BY:  JOHN G. BALESTRIERE, ESQ.
                            MANDEEP S. MINHAS, ESQ.


For the Defendants:    DECHERT, LLP
                         Three Bryant Park
                         1095 Avenue of the Americas
                         New York, New York 10036-6796
                       BY:  EDWARD A. McDONALD, ESQ.
                            BENJAMIN E. ROSENBERG, ESQ.
                            CHRISTINE ISAACS, ESQ.
                            MAY K. CHIANG, ESQ.

2095

A P P E A R A N C E S:   (Continued)


For the Defendants:     SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                             30 Rockefeller Plaza
                             New York, New York 10112
                        BY:  MICHAEL J. GILBERT, ESQ.
                             KATHERINE ANNE BOY SKIPSEY, ESQ.


For the Defendant:      SCHLAM STONE & DOLAN, LLP
                             26 Broadway
                             19th Floor
                             New York, New York  10004
                        BY:  DOUGLAS E. GROVER, ESQ.
                             JOLENE F. LAVIGNE-ALBERT, ESQ.
                             ANGELA LI, ESQ.










Court Reporter:   Stacy A. Mace, RMR, CRR
                  Official Court Reporter
                  E-mail:  SMaceRPR@gmail.com

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

SAM       OCR       RMR       CRR       RPR

Proceedings                                                2096

1               (In open court - jury not present.)

2               THE COURTROOM DEPUTY:  All rise.  Judge Cogan

3     presiding.

4               (Judge BRIAN M. COGAN entered the courtroom.)

5               THE COURT:  Good morning, Have a seat, please.

6               And just a minute, let me catch up with where we

7     are.

8               (Pause.)

9               THE COURT:  Okay, so I've given you the final final

10    jury charge, the one that resolves most of the issues that we

11    discussed last night, and I'll hear from you on that.

12              I am going to grant plaintiffs' request for

13    Exhibit 126, to reopen the record so that that is received.

14    It is hereby received.

15              (Plaintiff's Exhibit 126 was received in evidence.)

16              THE COURT:  I will note that Mr. Grover specifically

17    referred to it as being in evidence and it was the subject of

18    testimony, so I am giving plaintiff the same oversight leeway

19    that I did to the defendants during the trial.

20              MR. BALESTRIERE:  Thank you, Your Honor.

21              THE COURT:  Now, I think the parties agree that, at

22    least, three pieces of evidence that Mr. Balestriere

23    referenced in his closing were not, in fact, admitted, and

24    that is DX T-4-1, DX S-3-6 and PX 83.

25              Now, the question I have for the defendants, I am

SAM     OCR     RMR     CRR     RPR

Proceedings                                    2097

1    going to give an instruction saying that certain exhibits were

2    not received, although referenced, and they shouldn't expect

3    to see those or consider them.

4            But do the defendants really want me to identify

5    those documents rather than wait for a request from the jury?

6            MR. ROSENBERG:  Your Honor, on behalf of defendant

7    Rubin, no, we do not.  We simply don't want them identified.

8            If I might make one point, just so the record is

9    clear.

10           Your Honor said T-4-1 was not admitted.  To be

11   precise, it was, but certain lines that the plaintiff has

12   shown were -- were not admitted.

13           THE COURT:  Okay.

14           MR. ROSENBERG:  I just want to be clear, so down the

15   road there's no question about that.

16           THE COURT:  Okay.  So, I'm asking, is there a

17   specific request for me to highlight the --

18           MR. ROSENBERG:  No -- forgive me, Your Honor.

19           THE COURT:  You're emphatically saying no?

20           MR. ROSENBERG:  Correct, Your Honor.

21           MS. LAVIGNE-ALBERT:  Same here, Your Honor.

22           THE COURT:  Okay.  So, I'll just make a general

23   reference that there were some exhibits and that will take

24   care, also, Mr. Rosenberg, of what you just said.

25           Okay, I am also I think, although I'll hear from

SAM      OCR      RMR      CRR      RPR

Proceedings                                              2098

1   defendants on this, on PX 211 I am inclined to re-open and

2   receive that as well.  It, again, as an oversight.  The

3   foundation is there in the record and I don't want to make it

4   a game to see if somebody slipped up in saying, I request this

5   be received, when we all know it would have been received.

6              Any problem with that?

7              MR. ROSENBERG:  Yes, Your Honor, we, respectfully,

8   would object.

9              I think that that was, if I recall correctly, was a

10  Federal Express letter from Mr. Balestriere to the apartment.

11  The argument was that it was -- seemed to be that it was seen

12  and received and after that there was destruction of evidence.

13             There was no evidence, however, that it was seen and

14  received; and reason to believe it was not.

15             Ms. Powers noted she did not live at the residence

16  and there's no evidence that anyone, any of the defendants or

17  any one of their agents saw it.

18             So, we would, respectfully, object to that.

19             THE COURT:  She was there that same morning, though,

20  right?

21             MR. ROSENBERG:  That, Your Honor, I don't recall.  I

22  don't recall.

23             MR. BALESTRIERE:  May I, Your Honor?

24             MR. ROSENBERG:  I don't remember the dates.  There

25  was some testimony about when she was there, I don't know if

Proceedings                                            2099

1    it was the next day or exactly when it was.

2            MR. BALESTRIERE:  I think Mr. Rosenberg is right

3    there.  So, there's the 20th, it's sent.  The 21st, it's

4    received.  That's what 211 shows.  And then she testifies that

5    she was there on the 22nd.

6            THE COURT:  I see.

7            MR. BALESTRIERE:  And that is all in the record.

8            THE COURT:  Okay.

9            MS. LAVIGNE-ALBERT:  And maybe Mr. Balestriere has a

10   page number, but the testimony that I have in my hand, it's

11   page 1776.

12           THE COURT:  I think you're all in agreement.  Okay?

13   Mr. Balestriere said her testimony was she was there on a

14   different day --

15           MS. LAVIGNE-ALBERT:  Right.

16           THE COURT:  -- in which case I am going to exclude

17   it --

18           MS. LAVIGNE-ALBERT:  Okay.

19           THE COURT:  -- and she doesn't check the mail every

20   day.  So, that's okay.

21           MS. LAVIGNE-ALBERT:  Thank you, Your Honor.

22           THE COURT:  Okay.

23           And then, now that's the curative instructions and,

24   like I said, I am going to do that generally.

25           Is there anything in the revised witness charge that

SAM      OCR      RMR      CRR      RPR

Proceedings                                          2100

1    I need to modify?

2           I mean I know not everyone is happy with it, but

3    that's what I want to do.

4           Any specific record you need to make about that?

5           Okay.  And I am talking specifically about page 10

6    of what I have handed you this morning, the instructions on

7    witness availability and deposition on page 10 going into 11.

8           I will entertain if anyone wants to propose a change

9    that we didn't discuss last night, as it was rather hurried.

10   So, this is your chance to look at that and tell me.

11          MR. BALESTRIERE:  May I, Your Honor?

12          THE COURT:  Yes.

13          MR. BALESTRIERE:  So, we didn't discuss, but this

14   was the subject of a letter.  So, it's the second bullet point

15   that both parties can petition the Court.  This is at the top

16   of page 11.

17          As noted, Your Honor, I, respectfully, request that

18   that not be included.  Just speaking very plainly, Your Honor

19   made very clear that we should keep discovery disputes to a

20   minimum.  I had not seen as many lawyers ever at a deposition,

21   but I didn't think I would really, frankly, be in a position

22   to say, Your Honor, please ask Mr. Rubin not to sit in a

23   certain place or limit the number of lawyers.  Had I known

24   what Your Honor said yesterday, obviously, it's hard to look

25   back exactly at what we would have done, but I think we might

Proceedings                                    2101

1    have made some different decisions.

2            I think there was one phone call to you during all

3    the depositions here regarding the scope of questioning at

4    Mr. Rubin's deposition, so we really did keep it to a minimum.

5    And for that reason I would, respectfully, request that that

6    one not be included.

7            But this was in my letter last night, Your Honor.

8    Thank you.

9            THE COURT:  Well, I think most, if not every federal

10   judge tries to discourage discovery disputes, and that's what

11   I did in this case, like I do in all my cases.

12           But because you made the argument, Mr. Balestriere,

13   that this was such an intimidating environment and the

14   implication was there's nothing that you could have done about

15   it.  While I am not going to say specifically what I think you

16   could have done or how it would have come out, I think the

17   jury needs to know that that is not really accurate.  There

18   are things a party can do in an oppressive deposition

19   environment to limit it.  And like I said yesterday, I think

20   that would have been done here.

21           MR. BALESTRIERE:  Thank you for your consideration,

22   Your Honor.

23           THE COURT:  Okay.

24           All right, so I think that's all I've got.

25           MS. LAVIGNE-ALBERT:  Your Honor.

Proceedings                                    2102

1          THE COURT:  Yes.

2          MS. LAVIGNE-ALBERT:  The curative instruction about

3    the closing, is it already in the charge or Your Honor will

4    add it?

5          THE COURT:  No, I am going to extemporaneously say

6    it to the jury when they come in first, okay, because that's a

7    reference to Mr. Balestriere's closing; and then I will get to

8    the main charge.

9          MS. LAVIGNE-ALBERT:  Understood, thank you.

10         And there's the matter of PX 102-B, but I don't know

11   if that's where Your Honor was going next.

12         THE COURT:  I was done going.  So, what is 102-B?

13         MS. LAVIGNE-ALBERT:  Okay.  That was the subject of

14   my letter filed last night.

15         Setting aside the issue of closing, which I think

16   the Court has dealt with, there seems to be a dispute among

17   the parties, unless I'm wrong, whether or not that document,

18   PX 102-B should be sent back to the jury room.

19         Our argument is that certainly it was not moved into

20   evidence.  PX 102-B was the letter from Yivat Schnur -- sorry,

21   from Mr. Balestriere to Yivat Schnur that Ms. Powers was asked

22   about, cross-examination where she said:  I'm not on the

23   letter.  And we objected to its admission.  The Court

24   granted -- you know, sustained the objection.  It was not

25   moved in.

SAM      OCR      RMR      CRR      RPR

Proceedings                                      2103

1          I believe that plaintiffs' position is that because

2     it was listed in a list of admitted exhibits that was

3     exchanged between the parties over the weekend, that somehow

4     it was admitted.

5          Certainly, we take the position that that is not

6     correct and that it should not be sent back to the jury room

7     because it was never admitted.

8          THE COURT:  It's amazing, all the slip-ups that have

9     been made by really good lawyers here, but I do think based on

10    your description of the timeline, that Mr. Balestriere had

11    notice that that was not an admitted exhibit.  That was right,

12    it was not an admitted exhibit, so I am not going to let that

13    in.

14         MS. LAVIGNE-ALBERT:  Thank you, Your Honor.

15         THE COURT:  All right, anything else before we bring

16    in the jury?

17         Oh, I should note because we are all being so

18    disclosure friendly, when I was leaving in the public elevator

19    last night, the doors opened, Ms. Powers was there.  I stepped

20    out, said:  I think I'll wait.  And then I waited for the next

21    elevator, and when that one came some of Ms. Powers's lawyers

22    were in that one, so I said:  I think I'll wait.  Eventually,

23    I did get home last night, but I thought I should put on the

24    record that I almost encountered Ms. Powers and her lawyer.

25         Okay, let's have the jury, please.

Charge of the Court                                    2104

1        And they're not lined up, so you can take a minute.

2   In fact, I don't even know if they're here yet, so everyone

3   should sit down.

4              (Pause in the proceedings.)

5              (Jury enters.)

6              THE COURT:  All right, good morning.  Everyone be

7   seated.   Good morning, ladies and gentlemen.

8              THE JURY:  Good morning.

9              THE COURT:  Before I give you the closing

10  instructions, I just want to mention that with regard to

11  Mr. Balestriere's closing argument yesterday, he referenced

12  certain exhibits that were not received in evidence and,

13  therefore, you may not consider those exhibits.

14        We are going to send back to the jury room with you

15  all the exhibits that were admitted in evidence, but I just

16  wanted you to know if you see something that was missing that

17  he referenced in his closing, there is a reason for that.  If

18  you have any doubt about it, you can ask us and we'll let you

19  know if that exhibit is something that should be given to you.

20  Okay.

21        Now that the evidence in the case has been presented

22  and the attorneys have concluded their closing arguments, it's

23  my job to instruct you on the law that will govern your

24  deliberations.  The instructions I am going to give you break

25  into three parts.

1          First, I am going to give you the general rules that

2     govern your duty as jurors in a civil case.

3          Second, I am going to instruct you on the legal

4     elements of the plaintiffs' claims.

5          And then third, and the third part is very short,

6     I'll give you some important principles that you will use

7     during your deliberations.

8          You are about to enter your final duty, which is to

9     decide the fact issues in this case.  It's been very obvious

10    to me and to counsel that you have faithfully discharged your

11    duty to listen carefully and observe each witness who

12    testified.  Your interest never lagged and you followed the

13    testimony with close attention.  I want to express my

14    gratitude to the attorneys for their conscientious efforts on

15    behalf of their clients.

16         Please continue to give me the same careful

17    attention now.  You are going to get a copy of these

18    instructions when you go into the jury room, so don't feel,

19    again, that you have to write everything down.  But, again, if

20    you want to write anything down, you are free to do that.

21         Now, you've heard all the evidence in this case, as

22    well as the final arguments.  It's your duty to accept the

23    instructions I am about to give you and apply them to the

24    facts as you determine them, just as it has been my duty to

25    preside over the trial and decide what testimony and evidence

Charge of the Court                              2106

1    is relevant under the law for your consideration.

2          Please note that it would violate your sworn duty as

3    jurors to base a verdict on any other view of the law than the

4    one that I am about to give you.  This means that you have to

5    follow these instructions, regardless of any opinion you might

6    have as to what the law might be or should be, and regardless

7    of whether any attorney has stated a legal principle

8    differently from how I might state it now.

9          You also have to consider these instructions as a

10   whole during your deliberations.  Don't single out any one of

11   them alone as stating the law.

12         Now, let me assure you, I have no opinion on the

13   verdict that you should reach.  If you think I made some

14   expression or asked a question or made some ruling that seemed

15   to indicate I have an opinion about this case, you're wrong.

16   Please disregard it.  Either you're wrong or I did something

17   that is being misinterpreted.  Also, don't worry about any

18   discussions I had with counsel at the sidebar when you heard

19   that horrible white noise.

20         As members of the jury, you are the sole and

21   exclusive judges of the facts.  You could be wearing black

22   robes for the job that you are about to do.  You are the ones

23   who are going to pass on the evidence, determine the

24   credibility of witnesses, resolve such conflicts as there is

25   in the testimony.  And you are going to draw whatever

Charge of the Court                                    2107

1   reasonable inferences you decide to draw from the facts as you

2   have determined them, and you are going to determine the

3   weight of the evidence.  In determining those issues, no one

4   may invade your province or function as jurors.  Please

5   remember that you took an oath to render judgment fairly and

6   impartially without prejudice or sympathy and without any

7   fear.  You took an oath to base your verdict solely on the

8   evidence in the case and these instructions that I am giving

9   you.

10            Now, note that it's the duty of the attorneys

11   representing each party in the case to object when the other

12   side offers testimony or other evidence that the attorney

13   believes isn't admissible.  Don't concern yourselves or

14   speculate about any discussion I had with the attorneys about

15   those issues.  Don't hold it against any attorney because that

16   attorney objected to the admissibility of evidence or asked me

17   for a conference out of your hearing.

18            In reaching your verdict, as I said, you can't be

19   swayed by sympathy nor by what the reaction of the parties or

20   the public to your verdict might be, whether your verdict will

21   please or displease anybody, whether it will be popular or

22   unpopular, or, indeed, by any consideration outside of the

23   case as it has been presented to you in this courtroom.  You

24   have to consider only the evidence, find the facts from what

25   you consider to be the believable evidence, and apply the law

1   as I now give it to you.  Your verdict is going to be

2   determined by the conclusion you reach, no matter who it helps

3   or hurts.

4          Now, in deciding the case, it would be improper for

5   you to consider any personal feelings you may have about any

6   of the parties' race, religion, national origin, sex or age.

7          It would be equally improper for you to allow any

8   feelings you might have about the nature of the claims or

9   defenses to influence you in any way.

10          The parties to this case are entitled to a trial

11   that is free from prejudice.  Our judicial system can't work

12   unless you reach your verdict through a fair and impartial

13   consideration of the evidence.

14          In deciding the case, you can only consider the

15   exhibits which have been admitted in evidence and the

16   testimony of the witnesses that you heard in this courtroom.

17   As I told you, the opening and closing arguments of the

18   attorneys are not evidence, nor is anything that I may have

19   said with regard to the facts of this case.  Anything you may

20   have seen or heard about this case outside the courtroom,

21   despite what I know were your best efforts to avoid any such

22   exposure, that's also not evidence and you have to disregard

23   everything outside the courtroom in reaching your verdict.

24          Now, at times during the trial I sustained

25   objections to questions asked without allowing the witness to

1   answer or where the witness was too quick for me, I instructed

2   that the answer be stricken from the record and that you

3   disregard it.  Don't draw any inference or conclusions from an

4   unanswered question, nor can you consider testimony which has

5   been stricken from the record in reaching your decision.

6          As I told you at the beginning of the case, there's

7   two kinds of evidence that you've heard.  One type of evidence

8   is called direct evidence.  Direct evidence is a witness'

9   testimony or the contents of a document about what the witness

10  saw, heard or observed.  In other words, when a witness

11  testifies about what's known to that witness by virtue of the

12  witness' own senses -- what the witness sees, feels, touches

13  or hears -- that's direct evidence.

14         Circumstantial evidence is evidence that tends to

15  prove a fact by proof of other facts.  And there's a simple

16  example we use to illustrate this principle.  As you're

17  sitting here right now, you've got one window behind you, the

18  shade is drawn.  You don't know if it's sunny or raining

19  outside.  If somebody walked in here, though, wearing a

20  raincoat and carrying an umbrella that were dripping wet, you

21  could draw the inference that it's raining outside.  By the

22  same token, if somebody comes in and they're not wearing a

23  coat, they're not carrying an umbrella, and they're totally

24  dry, you could draw the inference that it's not raining

25  outside.

Charge of the Court                    2110

1           That's all there is to circumstantial evidence.  You

2     infer on the basis of your reason and experience and common

3     sense from an established fact, the existence or nonexistence

4     of some other fact.  Keep in mind that circumstantial evidence

5     is of no lesser value than direct evidence.  You, alone, are

6     going to decide what weight to give to each piece of evidence,

7     whether direct or circumstantial.

8           Now, I think it's pretty obvious to you that the law

9     does not require you to accept all the evidence that I admit.

10    In deciding what you're going to accept, you have to make your

11    own evaluation of the testimony given by each witness and

12    decide how much weight to give that testimony.  In your

13    everyday affairs, you decide for yourselves the reliability or

14    unreliability of things that people say to you.  The same

15    tests that apply in your everyday dealings with people apply

16    to your deliberations.  You can consider the interest or lack

17    of interest of any witness in the outcome of the case; the

18    bias or prejudice of a witness, if there is any; the

19    appearance, the manner in which the witness gives testimony on

20    the stand; the opportunity that the witness had to observe the

21    facts about which the witness testifies; and the probability

22    or improbability of the witness' testimony when considered in

23    light of all the other evidence in the case.  These are all

24    items to be considered by you in deciding how much weight, if

25    any, you are going to give to the witness' testimony.

Charge of the Court                    2111

1          There are discrepancies in the evidence here, and

2    that means you are going to have to consider whether those

3    discrepancies can be reconciled by fitting two stories or more

4    stories together.  But if that's not possible, then you have

5    to decide which of the conflicting stories you are going to

6    accept.

7          Now, all parties to an action are what we call

8    interested witnesses.  An interested witness is not

9    necessarily less believable than a disinterested witness.  The

10   fact that a witness is interested in the outcome of the case

11   doesn't mean that the witness hasn't told the truth.  It's for

12   you to decide from the demeanor of the witness on the stand,

13   and such other tests as you have experience with, whether or

14   not the testimony has been influenced intentionally or

15   unintentionally by the witness' interest.  You may, if you

16   consider it proper under all of the circumstances, not believe

17   the testimony of such a witness, even though it's not

18   otherwise challenged or contradicted.  However, you are not

19   required to reject the testimony of such a witness, and you

20   can accept all or such part of the witness' testimony as you

21   find reliable and reject the part that you find unworthy of

22   acceptance.

23         Now, you've heard me say that the plaintiffs have to

24   prove their case by a preponderance of the evidence.  The

25   question naturally is, what does a preponderance of the

SAM      OCR      RMR      CRR      RPR

Charge of the Court                    2112

1    evidence mean?

2              To establish a fact by a preponderance of the

3    evidence means to prove that something is more likely true

4    than not true.  In other words, a preponderance of the

5    evidence means such evidence that when considered and compared

6    with the evidence opposed to it, has more convincing force and

7    produces in your mind the belief that what's sought to be

8    proved is more likely so than not so.

9              A preponderance of the evidence means the greater

10   wait of the evidence.  It refers to the quality and

11   persuasiveness of the evidence, not the number of witnesses or

12   documents produced by either party.

13             Now, the burden of proving the plaintiffs' claims

14   rests on the plaintiffs.  That means that in order for the

15   plaintiffs to prevail, the evidence that supports their claims

16   must appeal to you as more nearly representing the truth than

17   the evidence opposed to their claims.  If it doesn't, or if it

18   weighs so evenly that you're unable to say that there's a

19   preponderance on either side, then you have to decide that

20   question you're considering in favor of the defendant.  It's

21   only if the evidence favoring the plaintiffs' claims outweighs

22   the evidence opposed to those claims that you can find in

23   favor of the plaintiffs.

24             Now, while this case concerns a group of plaintiffs,

25   you have to consider each plaintiff's claim against defendants

Charge of the Court                    2113

1    Howard Rubin and Jennifer Powers individually.  As you

2    consider the instructions I am giving you, consider each

3    question as it applies to the case presented for each

4    individual plaintiff and for each individual defendant.  This

5    means that you can decide one way on a claim for one plaintiff

6    and decide another way on that claim for another plaintiff.

7    You need not consider all of the claims together.  It doesn't

8    follow from that fact alone that if one defendant is liable to

9    the plaintiffs, both defendants are liable.  Each defendant is

10   entitled to a fair and separate consideration of the evidence.

11          Now, there are persons whose names you have heard

12   during the course of the trial, but who didn't appear here to

13   testify and one or more of the attorneys may have referred to

14   their absence from the trial.

15          I instruct you that each party had an equal

16   opportunity or lack of opportunity to call any of these

17   witnesses.  Therefore, don't draw any inferences or reach any

18   conclusions as to what they would have testified to had they

19   been called.  Their absence should not affect your judgment in

20   any way.

21          Now, also during the trial certain testimony was

22   presented to you by the reading and video of depositions.  A

23   deposition is a procedure where, prior to trial, the attorneys

24   for both parties may question a witness or an adversary party

25   under oath before a court stenographer, just like we have

Charge of the Court                                2114

1    here.  Either side may designate portions of the deposition

2    testimony of any witness or any opposing party, and each side

3    had equal opportunity to object to the designations, and to

4    itself designate portions of the deposition to provide

5    context.

6              You should give deposition testimony the same

7    consideration you would give it had it been taken here in open

8    court.

9              Note the following about depositions:

10             First, a plaintiff or defendant has the right to be

11   present at any deposition taken in the case.  A party has the

12   right to attend the deposition of that party's adversary.  In

13   addition, both parties can petition the Court, either during

14   or after a deposition, to modify the circumstances under which

15   a deposition is being taken, and the Court has the discretion

16   to grant that request.  Also know that the opportunity for a

17   party in consultation with the party's lawyer to prepare to

18   give testimony at a deposition is no different than the

19   opportunity for that party in consultation with the party's

20   lawyer to prepare to give testimony at trial.

21             Now, again, you heard some testimony, some

22   deposition testimony from witnesses that did not appear.  Both

23   sides had the opportunity to examine and cross-examine these

24   witnesses prior to trial and to admit into evidence those

25   portions of those depositions that each party selected.

Charge of the Court                    2115

1    However, neither party had the ability to subpoena certain

2    witnesses to come to trial who were beyond the subpoena power

3    of this Court, which is, basically, the State of New York and

4    a hundred miles from this courthouse.

5              All right, those are the preliminary instructions.

6              Now, let me turn to the second part of my

7    instructions.  In this part, I am going to instruct you on the

8    legal elements of the plaintiffs' claims, what each plaintiff

9    must prove and the law of damages.  As you listen to these

10   instructions, please keep in mind that there are five claims

11   in this case.  As I define and explain the claims to you, you

12   have to structure your decision based on what I tell you.  You

13   cannot use your own opinion of what the law should be or what

14   these terms should mean.

15             First, let me talk about the charge of sex

16   trafficking by force, threat of force, fraud, or coercion.

17             All six plaintiffs claim that Mr. Rubin committed

18   sex trafficking by use of force, threat of force, fraud or

19   coercion, against them, and this violates certain statutes

20   contained at Title 18 of the United States Code, Section 1591

21   and 1595.

22             All the plaintiffs, except Ms. Hassen, claim that

23   Ms. Powers is liable because she participated in and received

24   something of value for participating in a venture that

25   committed sex trafficking by use of force, threat of force,

Charge of the Court                                          2116

1    fraud or coercion against them, in violation of those same

2    statutes.  Again, you have to evaluate each plaintiff's claim

3    independently against each defendant.

4           In order to find that a defendant committed sex

5    trafficking by force, threat of force, fraud or coercion, as

6    to any plaintiff, you have to find that the plaintiff you are

7    considering has proven each of the following three elements by

8    a preponderance of the evidence:

9           First, that the defendant enticed, harbored,

10   transported, provided, obtained, advertised, maintained,

11   patronized or solicited the plaintiff, or that the defendant

12   knowingly benefited financially or by receiving something of

13   value from participating in a venture that engaged in

14   enticing, harboring, transporting, providing, obtaining,

15   advertising, maintaining, patronizing or soliciting the

16   plaintiff.

17          Now, I threw a whole bunch of verbs at you, let me

18   define what those are.

19          To recruit a person means to seek the services of

20   that person.

21          To entice a person means to attract, induce or lure

22   by offering pleasure or advantage.

23          To harbor a person means to provide shelter to that

24   person.

25          To transport a person means to transfer or convey

Charge of the Court                          2117

1    from one place to another.

2           To obtain a person means to acquire control or to

3    possess that person.

4           To maintain a person means to pay for the upkeep of

5    that person or to put care and work into that person.

6           A venture means any group of two or more individuals

7    who are, in fact, associated.

8           Participation in a venture means knowingly

9    assisting, supporting or facilitating a violation of this sex

10   trafficking law.

11          Now, a person acts knowingly if he acts voluntarily

12   and intentionally and not inadvertently or because of

13   ignorance, mistake, accident or carelessness.  Whether a

14   defendant acted knowingly may be proved by that defendant's

15   conduct and by all of the facts and circumstances surrounding

16   the case.  In your everyday affairs, you're frequently called

17   upon to determine a person's state of mind from that person's

18   words and actions in given circumstances.  That's what you do

19   here.

20          Second, the plaintiffs have to prove by a

21   preponderance of the evidence that the defendants' contact was

22   in or affected by interstate commerce.  To meet that element,

23   a plaintiff only needs to show that interstate commerce was

24   affected.

25          Interstate commerce here means, for example, using

Charge of the Court                              2118

1    advertising that reached across state lines or methods of

2    interstate communication, such as cell phones, e-mails, social

3    media, or bringing someone across state lines.

4              Two examples.  If a person uses a telephone in

5    New York to call a person in Louisiana to place an order for a

6    car, for example, they've acted in a way that affects

7    interstate commerce.

8              Another example:  If a person harbors or maintains a

9    car at the Brooklyn Army Terminal over here that came off a

10   ship from New Orleans, they've acted in a way that affects

11   interstate commerce.

12             Note that there's no knowledge requirement for this

13   element of interstate commerce.  To meet this element, a

14   plaintiff only needs to show that interstate commerce was

15   affected.

16             In determining whether a defendant's trafficking

17   activity affected interstate commerce, you may consider

18   whether the defendant used means, instrumentalities or

19   facilities of interstate commerce.

20             Now, the third element that the plaintiffs have to

21   prove, and by a preponderance, to support their claim for sex

22   trafficking is that the defendant engages in any of the acts

23   that I mentioned to you, that long list of words before, and

24   that the defendant knows or recklessly disregards the fact

25   that force, the threat of force, fraud or coercion, will cause

Charge of the Court                    2119

1    the plaintiff to engage in a commercial sex act in which the

2    plaintiff would not otherwise have willingly engaged.  In

3    other words, the defendant's actions must show that the

4    defendant knows or recklessly disregards the fact that the

5    conduct in which the defendant engages will, through force,

6    threat of force, fraud or coercion, cause a person to engage

7    in a commercial sex act against their will.

8         Reckless disregard here means that the defendant

9    intentionally committed an act of an unreasonable character in

10   disregard of a known fact.  And I told you what knowingly

11   means above.

12        A commercial sex act is any sex act on account of

13   which anything of value is given to or received by any person.

14   The thing of value may be money, or it may be any other

15   tangible or intangible thing of value.  Anything of value

16   means anything that a person places or may be place value on.

17   It's defined extremely broadly.  The opportunity for a sexual

18   encounter or a sexual encounter, itself, or the receipt of

19   photographs of a sexual nature are enough to constitute

20   anything of value.

21        Force means use of violence, compulsion, or

22   constraint upon a party to cause the party to engage in a

23   commercial sex act.

24        Fraud means that the defendant knowingly made a

25   misstatement or omission of a material fact in order to entice

Charge of the Court                    2120

1    the plaintiff into engaging in a commercial sex act.  A

2    material fact is one that a reasonable person would expect to

3    rely on when making a decision.  To the extent that any

4    plaintiff claims that a defendant used fraudulent means, that

5    plaintiff must prove that the allegedly fraudulent statement

6    or omission was material; that is, important enough to a

7    reasonable plaintiff to be relied upon and was specifically

8    used to cause that plaintiff to engage in a commercial sex

9    act.

10             Coercion means the threat of serious harm to or

11   physical restraint against the plaintiff to cause the

12   plaintiff to engage in a commercial sex act, or any scheme,

13   plan or pattern intended to cause the plaintiff to believe

14   that the failure to engage in a commercial sex act would

15   result in serious harm or physical restraint against that

16   person.

17             Serious harm here means any harm, physical or

18   non-physical, including psychological harm, financial harm, or

19   reputational harm, that is sufficiently serious in light of

20   all the surrounding circumstances to compel a reasonable

21   person who has the same background and was under the same

22   circumstances to engage in or to continue engaging in

23   commercial sex acts in order to avoid experiencing that harm.

24             Now, as I said, the term serious harm includes both

25   physical and non-physical types of harm.  Therefore, a threat

 1    of serious harm need not involve any threat of physical

 2    violence.  However, the threats must be improper and must

 3    involve consequences that are sufficient under all the

 4    surrounding circumstances to compel or coerce the plaintiff

 5    into engaging in a commercial sex act in which that plaintiff

 6    would not otherwise have willingly engaged.

 7         A defendant's behavior may be coercive when it's

 8    sufficiently serious to cause both the victim and reasonable

 9    people of the same background and in the same circumstances to

10    feel coerced.  The fact that a person may have had an

11    opportunity to escape is irrelevant if the defendant placed

12    that person in such fear or circumstances that the person did

13    not reasonably believe that they could leave.  A person who

14    has been placed in such fear or circumstances is not under an

15    affirmative duty to try to escape.  On the other hand, if a

16    person reasonably believes that they were able to leave, then

17    that person has an obligation to leave rather than expose

18    themselves to the conduct that the person wishes to avoid.

19         Now, to find a defendant that you are considering

20    liable, you have to unanimously agree, that is all of you have

21    to agree, on which incident or incidents the defendant engaged

22    in sex trafficking by force, threat of force, fraud or

23    coercion.

24         A defendant can also be liable if that defendant

25    knowingly benefited financially from participating in a

Charge of the Court                    2122

1   venture which the defendant knows or should have known would

2   use force, the threat of force, fraud or coercion, to cause

3   the plaintiff to engage in a commercial sex act.  But

4   liability cannot be established by association alone.  Each

5   plaintiff must prove by a preponderance of the evidence that

6   the defendant undertook specific conduct with the knowledge or

7   in reckless disregard of the fact that the conduct will assist

8   in the venture's causing a plaintiff to engage in a commercial

9   sex act through force, the threats of force, fraud or

10  coercion.  Namely, the defendant knows, or recklessly

11  disregarded, that the defendant's actions would assist in a

12  violation by the venture.

13          Stated differently, to establish this kind of

14  liability, plaintiff must show that a defendant had some

15  participation in the sex trafficking act, itself, which was

16  undertaken with the knowledge, or in reckless disregard of the

17  fact, that the defendant's act was furthering the alleged sex

18  trafficking venture.

19          Now, let me talk to you about consent.

20          If a person proves by a preponderance of the

21  evidence that a plaintiff consented to engage in a commercial

22  sex act, then the defendants are not liable under this

23  statute.  Unlike the three elements that I just discussed

24  above that the plaintiff has to prove by a preponderance, on

25  the matter of consent, it's the defendant, not the plaintiff,

Charge of the Court                            2123

1   that bears the burden of proving by a preponderance of the

2   evidence, that the plaintiff you are considering consented to

3   engage in a commercial sex act.

4           The defendant's burden on the issue of consent is

5   different from the plaintiff's requirement to prove that the

6   defendant engaged in conduct that the defendant knows, or

7   recklessly disregards, through force, threat of force, fraud

8   or coercion, would cause a person to engage in a commercial

9   sex act against their will.

10          If you find that plaintiff has not shown this by a

11  preponderance of the evidence, then you do not reach the issue

12  of whether the plaintiff consented, because plaintiff has

13  failed to meet the burden of proof and that plaintiff's claim

14  would fail.  However, if you find that the plaintiff has met

15  that burden, only then can the defendant avoid liability by

16  proving the defense of consent by a preponderance of the

17  evidence.

18          If you find that a plaintiff consented to a

19  commercial sex act, then the defendant doesn't have the

20  requisite knowledge for liability under this sex trafficking

21  law.  In other words, if the plaintiff you're considering

22  consented to engage in a commercial sex act about which you've

23  heard evidence, then her claim under this cause of action

24  fails.  That is, consent is a complete defense to this cause

25  of action.

Charge of the Court                    2124

1        Consent isn't permanent; if a person willingly

2   agrees to engage in a commercial sex act, but later changes

3   her mind, and then is forced to continue to engage in a

4   commercial sex act against her will by force, threat of force,

5   fraud or coercion, then a commercial act becomes involuntary,

6   not with consent.

7        Now, you all have a basic understanding of what

8   consent is.  It is simply the willingness for conduct to

9   occur.  It may be manifested by words and also by action, or

10  by in action.  In determining whether a plaintiff's words,

11  silence, or conduct manifests consent, you have to consider

12  the surrounding facts and circumstances, including subsequent

13  conduct and statements.

14       Consent, whether expressly given or implied in fact,

15  is not a defense if such consent is obtained by fraud or

16  duress.  Additionally, consent can be deemed invalid for

17  numerous reasons, including the lack of capacity to consent or

18  coercion or mistake.  Consent has boundaries.  A person can

19  give consent as to certain type of activities or touching and

20  not as to others that might occur during the same encounter.

21       Now, throughout the trial you heard evidence about

22  practices called bondage, discipline, domination, submission,

23  sadism, masochism or BDSM, that may involve the use of force

24  or actual physical restraint, as well as the infliction of

25  physical pain.  The fact that force or physical restraint was

Charge of the Court                    2125

1   used during the course of a BDSM act does not, by itself, mean

2   that the statute was violated.  Moreover, if you find that the

3   plaintiff you are considering consented to the BDSM act, then

4   by definition, neither force nor coercion were used.

5          Now, that completes the instruction on the sex

6   trafficking act, which is the longest instruction.

7          Let me go over the other claims.

8          Plaintiff Ms. Tagai and Ms. Moore have a claim for

9   assault against Mr. Rubin.  They actually have a claim for

10  assault, battery, and false imprisonment.  And let me go

11  through each one of those.

12         These pertain to two encounters.  Ms. Moore's

13  encounter with Mr. Rubin in December 2016, and Ms. Tagai's

14  encounter with Mr. Rubin on June 12th, 2017.

15         Assault is the intentional placing of another person

16  in apprehension of immigrant harmful or offensive contact.

17  This means that a defendant is liable for assault when he

18  intentionally causes another person to become concerned that

19  the defendant is about to cause a harmful or offensive bodily

20  contact.  To commit an assault, the defendant must have the

21  real or apparent ability to bring about that harmful or

22  offensive bodily contact.  Ordinarily, threatening words

23  without some action are not enough to constitute an assault.

24  There must be some menacing act or gesture that causes the

25  plaintiff to reasonably believe that a harmful or offensive

1   bodily contact is about to occur.  It is not necessary that

2   there be any contact, just that it's about to occur.

3           Notice that I used the word intentionally in

4   defining an assault.  Intent involves the state of mind with

5   which an act is done.  If a person acts voluntarily with a

6   desire to bring about a result, he is said to have intended

7   that result.  So, if a defendant voluntarily caused the

8   plaintiff to fear imminent harmful or offensive contact, he

9   intended to do so.

10          Further, even if he has no desire to bring about the

11  result, that is the apprehension of imminent harmful or

12  offensive contact, if he does the act knowing with substantial

13  certainty that the result will follow, he is also said to have

14  intended that result.

15          Now, to prove this assault claim, the plaintiffs

16  have to demonstrate by a preponderance of the evidence, that

17  is that it's more likely than not, that:

18          First, the defendant made intentional attempts or

19  threats to inflict injury on that plaintiff;

20          Second, that the defendant had the real or apparent

21  ability to cause harm;

22          And third, that the plaintiff felt apprehension of

23  imminent bodily harm or offensive contact.

24          Let me go over each one of those individually.

25          First, you have to determine whether the defendant

Charge of the Court                    2127

1    intentionally attempted to inflict injury on the plaintiff or

2    threatened to inflict injury on the plaintiff.  If you

3    determine the defendant did not intend that, then you need not

4    proceed any further on the assault claim.

5          Second, if you determine that the defendant did

6    intend to attempt to or threaten to inflict injury on the

7    plaintiff, you have to determine whether the defendant had the

8    actual ability at the time of his meetings with the plaintiff

9    to cause harm to her.  If you determine that the defendant did

10   not have this ability, you need not proceed further on the

11   assault claim.

12         Third, if you determine the defendant did have the

13   ability to cause harm to the plaintiff, you must determine

14   whether the plaintiff felt a reasonable apprehension of

15   imminent bodily harm or offensive contact.

16         If you decide that the defendant intended,

17   attempted, or threatened to inflict injury on a plaintiff and

18   had the ability to cause them harm, and that the plaintiff

19   felt a reasonable apprehension of bodily harm or offensive

20   contact, you must determine that the defendant committed

21   assault against the plaintiff.  However, if any one of those

22   three elements are not met, then you have to find that an

23   assault was not committed.

24         Now, the defense of consent, which I talked to you

25   about in the sex trafficking context, also applies to a cause

Charge of the Court                    2128

1   of action for assault.  But a consent defense for assault is a

2   little bit different from a consent defense for sex

3   trafficking by force, fraud or coercion.  The defense of

4   consent here applies when the defendant proves, by a

5   preponderance of the evidence, that the plaintiff you are

6   considering consented to engage in the activity or led the

7   defendant to reasonably believe that she consented to engage

8   in the activity.  If you find that a plaintiff consented or

9   that a defendant reasonably believed that the plaintiff

10   consented, then the defendant doesn't have the requisite

11   knowledge for liability under the law -- even if that belief

12   was wrong.  In other words, if the plaintiff you're

13   considering consented, then her claim under this cause of

14   action fails.  That is, consent is a complete defense to this

15   cause of action.

16        Reasonable means taking into consideration all of

17   the circumstances at the time and place of the incident.  That

18   is, that under those circumstances it was reasonable for a

19   person to feel a certain way or believe a certain thing.

20   Reasonableness is based on what you think an average person of

21   sound mind would feel or believe under the circumstances.

22        Again, you have a basic understanding of the word

23   consent.  It's simply the willingness for conduct to occur.

24   Again, it may be manifested by words and also by action, or by

25   in action.  In determining whether a plaintiff's words,

1    silence, or conduct manifested consent, you have to consider

2    the surrounding facts and circumstances, including subsequent

3    conduct and statements.  Here, the standard is an objective

4    one:  Would a reasonable person in the position of the

5    defendant that you are considering, and having that

6    defendant's knowledge of the plaintiff's words, silence, or

7    conduct, have reasonably concluded that the plaintiff had

8    communicated consent.  Again, consent isn't permanent.  Even

9    if a person at first gives consent to a sexual encounter, they

10   can freely withdraw that consent at any time, for any reason,

11   even in the middle of such an encounter, and it's the

12   responsibility of the other person to stop acting once consent

13   is withdrawn.

14          Consent, whether expressly given or implied by the

15   facts or circumstances, is not a defense if such consent is

16   obtained by fraud or duress.  Additionally, consent can be

17   deemed invalid for numerous reasons, including lack of

18   capacity to consent, coercion, or mistake.  Consent has

19   boundaries and it's not a permanent state of mind.  A person

20   can give consent as to certain types of activities or touching

21   and not as to others that might occur during the same

22   encounter.

23          For example, if you consent to engage in a boxing

24   match with a sparring partner, you can agree to the rules and

25   agree to the point at which the boxing match has to stop.  To

Charge of the Court                                        2130

1   continue the example, if your sparring partner doesn't follow

2   those rules or stop as agreed, that person has exceeded your

3   consent.  Moreover, even if you agreed to three rounds with

4   your sparring partner, if you let that person know after the

5   second round that you don't want to go for a third, you've

6   revoked your consent for the boxing match.

7           Defendant's burden on the issue of consent is

8   different from plaintiff's requirement to prove the elements

9   of assault by a preponderance of the evidence.  If you find

10  that plaintiff has not shown by a preponderance of the

11  evidence that the elements required for assault exist, then

12  you won't reach the issue of whether plaintiff consented.

13

14          (Continued on the following page.)

15

16

17

18

19

20

21

22

23

24

25

SAM      OCR      RMR      CRR      RPR

Charge of the Court                    2131

1    (Continuing)

2          THE COURT:  Because a BDSM encounter may cause a

3    party to have apprehension of imminent harmful offensive

4    contact, that does not by itself mean there was an assault.

5          All right.  The next claim is a battery claim.

6    That's different than assault.  It's brought by Ms. Tagai and

7    Ms. Moore against Mr. Rubin.

8          One of the main differences between an assault and a

9    battery is the battery involves actual touching.  Whereas, an

10   assault involves the threat and expectation of touching.

11         With regard to battery, a person who intentionally

12   touches another person without that person's consent, and

13   causes an offensive bodily conduct commits a battery and is

14   liable for all damages resulting from that act.

15         Intent involves the state of mind with which an act

16   is done.  The intent required for battery is intent to cause a

17   bodily contact that a reasonable person would find offensive.

18   An offensive bodily contact is one that is done for the

19   purpose of harming another or one that offends a reasonable

20   sense of personal dignity, or one that is otherwise wrongful.

21   Intent to harm or cause injury is not required so long as the

22   act was done with the intent to make the contact and the

23   contact was offensive.  A defendant is liable not only for

24   physical contacts that do serious harm, but for trifling ones

25   as well, such as an offensive shove in the playground or a

1    forceful removal of plaintiff's hat.

2           Reasonable here, again, means taking into

3    consideration all the circumstances at the time and place of

4    the incident and finding that it was reasonable for a person

5    to feel a certain way or believe a certain thing.

6    Reasonableness is based on what you think an average person of

7    sound mind would feel or believe under the circumstances.

8           To demonstrate a battery by a preponderance of the

9    evidence a plaintiff has to show that it's more likely than

10   not that:  First, the defendant intentionally touched the

11   plaintiff; that second, the defendant touched the plaintiff in

12   a harmful or offensive manner; and third, that the defendant

13   touched the plaintiff without the plaintiff's consent.

14          First, you have to determine whether a defendant

15   intends to physically touch the plaintiff or cause her to be

16   touched by an object under his control.

17          Second, you have to determine whether a defendant

18   touched or caused to be touched the plaintiff in a manner that

19   would be considered harmful or offensive to the average

20   person.

21          Third, you have to consider -- you have to decide

22   whether a defendant touched the plaintiff in an harmful or

23   offensive manner without their consent.

24          The defense of consent applies to the cause of

25   action for battery just as it does in connection with assault,

1   which I have just described for you.  Because a BDSM encounter

2   may cause a party to be subject to harmful or offensive

3   contact, that encounter does not, by itself, mean that there

4   was a battery.

5          Now, the next claim is what we call a false

6   imprisonment claim, and Ms. Tagai and Ms. Moore have brought

7   that against Mr. Rubin.

8          A person falsely imprisons another person if he

9   intentionally confines that person to a bounded area, for any

10  length of time, and that person is aware of being confined and

11  doesn't consent to it.  Any physical detention, even if it's

12  only for a few minutes, is enough.  Confinement may result

13  although no physical force is employed; the display of force

14  sufficient to dominate the situation and submission thereto by

15  plaintiff is enough, as in any other act -- as is any other

16  act which deprives the plaintiff of her liberty.  A claim for

17  false imprisonment doesn't require a showing of physical

18  injuries apart from the plaintiffs' involuntary confinement.

19         To show false imprisonment, a plaintiff must

20  demonstrate by a preponderance of the evidence each of the

21  following three factors; that is, that each of these are more

22  likely than not:  First, that the defendant intended to

23  confine the plaintiff; second, that the plaintiff was

24  conscious of the confinement; and third, that the plaintiff

25  did not consent to the confinement.

1          The first question you will be asked to decide with

2     respect to false imprisonment is whether the defendant

3     intended to confine the plaintiff.  If you determine that

4     plaintiff did not intend to confine -- I'm sorry, if you

5     determine that the defendant did not intended to confine the

6     plaintiff, then you cannot proceed further on the false

7     imprisonment claim.

8          Intent involves the state of mind with which an act

9     is done.  If a person acts voluntarily with a desire to bring

10    about a result, then he is said to have intended that result.

11         Furthermore, even if he has no desire to bring about

12    the result, if he does the act knowing with substantial

13    certainty that the result will follow, he's also said to have

14    intended that result.  Here, the relevant intent is the intent

15    to confine.

16         Second, if you do find that the defendant intended

17    to confine the plaintiff, you have to decide whether the

18    plaintiff was conscious of the confinement.  If you determine

19    that the plaintiff was not conscious that she was confined,

20    then you cannot proceed further on the false imprisonment

21    claim.

22         Third, if you determine that the plaintiff was

23    conscious of the confinement, you have to decide whether the

24    plaintiff consented to the confinement.  The defense of

25    consent applies to the cause of action for false imprisonment,

Charge of the Court                    2135

1    just as it does in connection with the assault and battery,

2    which I have just described.  So I'm not going to repeat that

3    here.  You can just use that defendant physician.

4            Because BDSM may involve the use of confinement, the

5    fact that there was confinement during a BDSM encounter does

6    not by itself mean that there was false imprisonment.

7            All right.  The next claim that Ms. Moore has

8    against Mr. Rubin is what we call intentional infliction of

9    severe emotional distress.  Intentional infliction of

10   emotional distress provides recovery against someone who

11   provides extreme and outrageous conduct intentionally and

12   recklessly causes severe emotional distress to another person.

13           This claim recognizes a person's interest to be free

14   from mental disturbance that is intentionally caused.  The

15   claim of intentional infliction of emotional distress doesn't

16   prohibit any specific conduct but imposes liability based upon

17   after-the-fact judgments regarding the defendant's behavior

18   and its ability to produce a severe emotional disturbance.

19           Mere insults, annoyances, or hurt feelings are not

20   enough to constitute extreme and outrageous conduct.  There

21   must be more.  Conduct is considered extreme and outrageous

22   when it is so shocking that it exceeds all reasonable bounds

23   of decency as measured by what the average member of the

24   community would tolerate.  It is regarded as atrocious and

25   utterly intolerable in a civilized community.

Charge of the Court                          2136

1          If a defendant is aware that the plaintiff is

2    peculiarly susceptible to emotional distress by reason of some

3    physical or mental condition or peculiarity, then the

4    defendant's conduct is to be evaluated in light of that

5    knowledge and may be held outrageous under those circumstances

6    even though, absent such knowledge, it could not be so

7    considered.

8          For the claim of false imprisonment, the plaintiff

9    must demonstrate by a preponderance of the evidence four

10   elements:  First, the defendant's conduct was extreme and

11   outrageous; second, that the defendant acted with the intent

12   to cause or with the willful or reckless disregard of a

13   substantial likelihood of causing severe emotional distress;

14   third, that there was a causal connection, that is, the

15   defendant's conduct caused the plaintiff's injury; and fourth,

16   that the plaintiff suffered severe emotional distress.

17         First, you have to determine whether the defendant's

18   conduct with respect to plaintiff was extreme and outrageous.

19   Emotional distress is severe when it is of such intensity and

20   duration that no reasonable person should be expected to

21   ensure it.  This must be considered in light of the individual

22   plaintiff and whether she was particularly susceptible to

23   emotional distress.  If she was and defendant knew that his

24   conduct would be received differently by the defendant

25   specifically -- hang on.  If she was and the defendant knew

1    that his conduct would be perceived differently by that

2    plaintiff specifically, even conduct that might otherwise

3    might not be considered outrageous becomes outrageous in the

4    face of such knowledge.

5            Second, you have to determine whether the defendant

6    intentionally caused or acted with willful or reckless

7    disregard of the substantial likelihood of causing severe

8    emotional distress. Intentionally here, again, means that the

9    defendant was acting under circumstances known to the

10   defendant, which made it substantially certain that severe

11   emotional distress would follow. Reckless disregard here means

12   that although the defendant was or should have been aware that

13   the likelihood of -- of the likelihood that his actions would

14   cause emotional distress engaged in the conduct anyway,

15   disregarding the consequences that might follow.

16           Third, you have to determine whether there was a

17   causal connection between the defendant's conduct and the

18   plaintiffs' injury.  That means whether the defendant's

19   actions caused plaintiff's emotional distress.  There is no

20   liability if a plaintiff has suffered -- hang on one second.

21   There is no liability where the plaintiff has suffered

22   exaggerated and unreasonable emotional distress, unless it

23   results from a peculiar susceptibility to such distress of

24   which the defendant knew.

25           Fourth, if you determine that the defendant's

1   conduct was extreme and outrageous, that defendant acted with

2   intent or disregard and that the defendant caused the

3   plaintiffs' injury, you have to next determine whether the

4   plaintiff suffered severe emotional distress.  Emotional

5   distress is severe when it is of such intensity and duration

6   that no reasonable person should be expected to endure it.

7   The distress suffered must be what a reasonable person would

8   experience under the circumstances.  You need not find that

9   any physical damage occurred, mental damage alone is enough.

10  If you decide in the affirmative on the above elements, you

11  also have to decide that the defendant is liable for the

12  intentional infliction of emotional distress.

13          Now, again, the defense of consent applies to the

14  cause of action for intentional infliction of emotional

15  distress, just as it does in connection with assault, battery

16  and unlawful confinement that I just told you about, so I'm

17  not going to repeat that.

18          Once again, because BDSM may involve conduct that's

19  disturbing, the fact that there was conduct during the course

20  of a BDSM encounter does not by itself mean that there was

21  intentional infliction of emotional distress.  If you find

22  that the plaintiff you're considering consented to participate

23  in the disturbing conduct as part of the BDSM, then there was

24  no intentional infliction of emotional distress.

25          Now, let me briefly talk to you about damages.  I'm

1    going to tell you about damages, but don't think that just

2    because I'm telling you about damages means that I think you

3    should or will find liability against either defendant.  This

4    is my chance to give you all the instructions and that's why

5    I'm getting to damages.  Obviously, if you don't find

6    liability, you can't find damages.  So you have to decide on

7    liability first.

8            If a plaintiff has proven by a preponderance of the

9    evidence that either defendant is liable, then you have to

10   next consider whether the defendant's conduct giving rise to

11   liability caused the plaintiff to suffer any damages.  An act

12   or omission is regarded as a cause of a plaintiff's damages if

13   it was a substantial factor in bringing about the injury.

14   That is, if it had such an effect in producing the injury that

15   reasonable people would regard it as a cause of the injury.

16   To establish causation, a plaintiff has to prove as to each

17   defendant that the conduct giving rise to that defendant's

18   liability caused the plaintiff's damages.

19           Your consideration on the issue of causation will be

20   affected by your determination on the issues of consent and

21   knowledge.  If, for example, you find that a plaintiff

22   consented to a certain type of activity, but then withdrew at

23   that consent at a later time or certain events went beyond

24   what was consented to, the conduct giving rise to liability,

25   and the resulting damages, happened after the consent was

Charge of the Court                    2140

1   withdrawn or exceeded.

2          Returning to the boxing example that I mentioned

3   earlier, let's say two people agree to a three-round boxing

4   match.  After two rounds, both people have cuts and bruises.

5   But neither is liable to the other because both agreed to

6   engage in that type of activity.  In the third round, one of

7   the participants breaks the rules and injures the other, they

8   think it's like a mixed-martial arts match instead of a boxing

9   match, so they kick somebody.  The participant that broke the

10  rules is only on the hook for the damages caused by the

11  activity that broke the rules, not all the agreed upon boxing

12  injuries from the first two rounds.  Similarly, if two people

13  agree to box for three rounds and at the end of the second

14  round one wants to stop but the other won't listen, well, then

15  the participant that didn't listen is only on the hook for the

16  damage caused after that person said stop.

17         If you find that a plaintiff on any count against

18  either -- if you find for a plaintiff on any count against

19  either defendant, then you have to consider the actual damages

20  and award that plaintiff a sum of money as you believe will

21  fairly and justly compensate her for any injury you believe

22  was sustained, actually sustained as a direct consequence of

23  the wrongful conduct of the defendants.

24         That's what we call compensatory damages.

25  Compensatory damages seek to make the plaintiff whole, that

1   is, to compensate the plaintiff for the damage suffered.  A

2   prevailing plaintiff is entitled to compensatory damages for

3   the physical pain -- physical injury, pain and suffering,

4   mental anguish, shock and discomfort that she suffered because

5   of the defendant's conduct.

6           You should award compensatory damages only for those

7   injuries which you find that the plaintiff you are considering

8   has proven by a preponderance of the evidence.  Moreover, let

9   me remind you that you may award compensatory damages only for

10  injuries that a plaintiff proves were proximately caused by

11  either defendant's allegedly wrongful conduct.  That is, you

12  may not simply award compensatory damages for any injury

13  suffered by the plaintiff you are considering.  You have to

14  award actual damages only for those injuries that are a direct

15  result of actions by these defendants and that are a direct

16  result of conduct by the defendants in violation of the law as

17  I have just described it to you.

18          The damages that you award as compensatory damages

19  must be fair and reasonable, neither inadequate nor excessive.

20  You should not award compensatory damages for speculative

21  injuries.  In awarding compensatory damages, if you decide to

22  award them, you have to be guided by dispassionate commonsense

23  and not based on sympathy.  They have to be based on the

24  evidence presented at trial and only on that evidence.

25          Computing these kind of damages may be difficult,

Charge of the Court                    2142

1  but you can't let that difficulty to lead you to engage in

2  arbitrary guesswork.  On the other hand, the law doesn't

3  require a plaintiff to prove the amount of her losses with

4  mathematical precision, but only with as much definiteness and

5  accuracy as the circumstances permit.

6          You can't award compensatory damages more than once

7  for the same injury.  For example, if you were to find against

8  a defendant on assault and battery and they sustain the same

9  injury to that plaintiff, because of both, then you only award

10  one amount of damages.

11          The plaintiff is entitled to be made whole again,

12  not to recover more than she has lost.  Of course, if

13  different injuries are attributed to separate claims, then you

14  have to compensate her fully for each of the injuries.  In all

15  instances, you have to use your sound discretion in fixing an

16  award of damages, drawing reasonable inferences that you deem

17  appropriate from the facts and circumstances in evidence.

18          All right.  That completes my instructions to you on

19  the elements of the plaintiffs' claim, I just have very short

20  remarks now to tell you about how to go about deliberating.

21          No member of the jury should attempt to communicate

22  with me or any court personnel by any means other than a

23  signed writing from your foreperson.  Therefore, the first

24  thing you're going to do when you start deliberating is pick a

25  foreperson.  That foreperson will sign all the notes to the

Charge of the Court                    2143

1    Court and hand them to Mr. Jackson for me to read.

2          I would not fight over who gets to be foreman or

3    foreperson.  There is no more money in it if you are appointed

4    foreperson.  It's just serving as the contact point with the

5    Court.  No money, no power, just the contact point.  So you

6    should get through that quickly.

7          If I get a note from the foreperson, I will have you

8    return to the courtroom so we can speak in person, or if it is

9    something simple, I will confer with the lawyers and get you

10   anything you think you're missing to which you are entitled.

11         If you do send a note or if we bring you back into

12   the courtroom during deliberations, do not tell us numerically

13   how you stand on the issue of whether a plaintiff has proven a

14   claim.  That is, you know, we have this many people voting one

15   way, we have this many people voting another way.  Even if you

16   come into court, don't put it in a note and don't tell us in

17   court until after a unanimous verdict is reached.

18         Now, your function is to reach a fair conclusion

19   from the law and the evidence is an important one.  Your

20   verdict has to be unanimous.  That is, as to each plaintiff

21   and each claim, you have to reach the same conclusion.

22         Each juror is entitled to their opinion.  Each

23   should, however, exchange views with your fellow jurors.

24   That's the very purpose of jury deliberations, to discuss and

25   consider the evidence, to listen to the arguments of fellow

Charge of the Court                    2144

1  jurors, to present your individual views, to consult with one

2  another, and to reach an agreement based solely and wholly on

3  the evidence.

4          Each of you has to decide the facts of the case for

5  yourself, but after consideration of the evidence in the case

6  with your fellow jurors.  Don't hesitate to change an opinion

7  which, after discussion with your fellow jurors, appears

8  erroneous.  However, if after carefully considering all the

9  evidence and arguments of your fellow jurors you entertain a

10 conscientious view that differs from the others, you can't

11 yield your conviction simply because you're outnumbered.  Your

12 final vote has to represent your conscientious conviction as

13 to how the issues should be decided.

14          Now, as I said at the beginning, we're going to try

15 to send back with you all the documents that were admitted

16 into evidence.  If you think something is missing, send us out

17 a note and we will let you know if you're right.  And if

18 you're right, we will find it and send it back to you.

19          If you find that you want to hear some testimony

20 read back to you, that can also be done because we have had

21 the stenographer here writing down the proceedings.  However,

22 in a trial this length, keep in mind that it could take us

23 some time to find a particular portion of testimony that

24 you're looking for.  So please be as specific as you can in

25 requesting the testimony that you want to hear read back to

1    you.

2          The way it's going to work when you've reached a

3    verdict is this:  Your foreperson will sign a note saying we

4    have reached a unanimous verdict.  Don't tell us in that note

5    what the verdict is.  Then, you will have with you in there

6    what we call a verdict sheet.  It's a form that asks for the

7    specific findings you're going to make for each plaintiff and

8    for each claim.  So, you know, there's a claim for each

9    plaintiff who has brought a claim for sex trafficking, assault

10   and battery, and you just answer yes or no and you fill in a

11   damage amount if you think they're entitled to damages if you

12   answer yes.  So you will have filled out that form.  Don't

13   sent that out with the note.  Just send out the note and the

14   note will say again we have unanimously reached a verdict.

15         When I get that note, I will bring you into the

16   courtroom and I will ask the foreperson if, in fact, you have

17   reached a unanimous verdict as to each plaintiff on each

18   count.  And if I'm told yes, then you will hand the verdict

19   form to Mr. Jackson.  He'll give it to me.  I'll look it over

20   to make sure there's no -- that it has been filled out the way

21   it is supposed to be filled out and then I will read the form

22   to the jury, in front of all of you.

23         Now, your oath that you took at the beginning of

24   this case sums up your duty, and that is, you will, without

25   fear or favor to any persons, conscientiously and truly try

Charge of the Court                              2146

1    the issues before you according to the evidence given to you

2    in court and under the law.

3            All right.  Let me talk to the attorneys at sidebar.

4    That's the last sidebar you're going have to put up with.

5    We're going to turn on the noise for just one minute and then

6    we will give you the case.

7            (Sidebar.)

8

9

10            (Continued on the following page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sidebar                                                                 2147

1          THE COURT:  This is not an opportunity to re-assert

2   or come up with any new objections; it is simply to ask

3   whether I read anything incorrectly.

4          MR. BALESTRIERE:  Respectfully, Your Honor, I

5   believe that you did, and forgive us for not catching this.

6          THE COURT:  That's all right.

7          MR. BALESTRIERE:  On 26.

8          THE COURT:  If you didn't catch it, I'm not sure I

9   read it incorrectly.

10         MR. BALESTRIERE:  You were reading about the

11  intentional infliction of emotional distress claim, but it

12  said here false imprisonment, and you said that out loud.

13         THE COURT:  I will mention that to the jury.

14         Anything else I need to cure.

15         MR. GROVER:  Very small, Your Honor did deviate very

16  slightly from the charge, and I appreciate that, but this is

17  the charge that is going to go into the jury room with the

18  additional words are there.

19         THE COURT:  Is there any inconsistency?

20         MR. GROVER:  There is no inconsistency.

21         THE COURT:  Then don't worry about it.

22         MR. GROVER:  There was one word on page 16, Your

23  Honor.  I wrote it in and I'll hand it up to Mr. Balestriere.

24  It's page 16 where it says -- Your Honor said each plaintiff

25  must prove, and the word "each" isn't there, and I would

Sidebar                                                    2148

1   prefer for the jury to get the words "each plaintiff."  It is

2   not substantially different.

3            THE COURT:  That is the way we distributed the

4   charge, right?

5            MR. GROVER:  That's correct.

6            THE COURT:  And, so, you passed on that.

7            MR. GROVER:  I did.

8            THE COURT:  I said it verbally and I think the

9   instructions say enough to the jury about how they'd have to

10  consider each claim.  So I'm going to stick to what we agreed

11  to before.

12           MR. GROVER:  It's not an objection, Your Honor, it's

13  just a comment.

14           THE COURT:  Understand.

15           Anything else?

16           MR. BALESTRIERE:  Just one thing, Your Honor, after

17  hearing your charge, with regards to the compensatory for

18  those two plaintiffs, we have the compensatory damages for

19  this violation.

20           THE COURT:  Yes.

21           MR. BALESTRIERE:  Maybe just clarity at the end of

22  the tort claims, compensatory damages for claims two to four

23  or two to five is appropriate, so that it is that clear that

24  these are --

25           THE COURT:  That was also passed, but we will

```
                           Sidebar                        2149

1    discuss it once I put the jury in before we give them the jury

2    charge.

3              MR. BALESTRIERE:  Thank you, Your Honor.

4              (Sidebar concluded.)

5

6

7              (Continued on the following page.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Proceedings                                    2150

1              (In open court.)

2              THE COURT:  All right.  Ladies and gentlemen, the

3    only correction I need to make is when I was explaining to you

4    the charge, what we call IIED, intentional infliction of

5    emotional distress, I mentioned false imprisonment instead of

6    intentional infliction of emotional distress.  That was my

7    confusion, but you will see it in the instruction.

8              All right.  Can we have the Court officer come

9    forward, please?

10             THE COURTROOM DEPUTY:  Please raise your right hand.

11             You do solemnly swear or affirm that you shall keep

12   the jury together in a private and convenient place and shall

13   let no one speak to them nor shall you speak with them without

14   direction from this Court.

15             COURT SECURITY OFFICER:  I will.

16             (Court Security Officer sworn.)

17             THE COURT:  All right.  Ladies and gentlemen, you

18   may begin your deliberations.

19             (Jury exits to begin deliberations at 10:43 a.m.)

20             THE COURT:  Okay.  What I would like to have happen

21   is this:  The parties should put together a set of the

22   admitted exhibits and also we will send that in with the jury

23   charge and the verdict form.

24             If there are agreed modifications to the

25   instructions consistent with what I said, then we will change

Proceedings                                            2151

1   it.  If there are not, we are going to leave it the way we all

2   agreed it would be done.  Reach those agreements very promptly

3   because I want to send in the exhibits and the instructions

4   right away.  Okay.

5            All right.  Thank you all for your very hard work on

6   behalf of your clients.  I know how you all sweat blood over

7   this case.  This is not an easy case even to my experience, so

8   I appreciate that.

9            All right.  We will be in touch.

10           MS. LAVIGNE-ALBERT:  Your Honor, is the requirement

11  that we stay in the courtroom?  Ten minutes from the

12  courtroom?

13           THE COURT:  I think you need to stay close but not

14  in.  If you want to wander around, that's fine.  Make sure

15  that Mr. Jackson has your contact information that we can get

16  you back here within five minutes if there is a request from

17  the jury.

18           MS. LAVIGNE-ALBERT:  Thank you, Your Honor.

19           (Recess taken.)

20           (Continued on next page.)

21

22

23

24

25

Proceedings                                              2152

1   (Continuing.)

2              (In open court - jury not present.)

3              THE COURTROOM DEPUTY:  All rise.

4              (Judge BRIAN M. COGAN entered the courtroom.)

5              THE COURT:  Have a seat.  Nothing terribly

6   exciting,.

7              I probably didn't have to call you all in here, but

8   the jury conveyed orally court security officer standing

9   outside the door that they'd like eight more copies of the

10  jury charge.

11             Anybody have an objection?

12             MR. BALESTRIERE:  No objection.

13             MR. McDONALD:  No objection.

14             MR. GILBERT:  No objection.

15             MR. GROVER:  No objection.

16             THE COURT:  We will proceed.

17             (Judge BRIAN M. COGAN exited the courtroom.)

18             (Recess taken.)

19             (In open court - jury not present.)

20             (Judge BRIAN M. COGAN entered the courtroom.)

21             THE COURT:  Have a seat, please.

22             We have received a note from the jury that we'll

23  mark as Court Exhibit 1, and the note says as follows:

24             Is BDSM without actual sexual contact considered

25  commercial sex?

Proceedings                                              2153

1         How would the plaintiffs like me to respond to that
2    note?

3         (Court's Exhibit 1 was received in evidence.)
4         MR. BALESTRIERE:  I believe under 1591, Your Honor,
5    any of the courts that we've seen have interpreted a
6    commercial sex act very broadly.

7         I do think in someone's letter in the last week
8    there was discussion how in the -- in Mr. Dolan's letter,
9    there was a Noble against Weinstein how fondling was
10   considered a sex act.

11        18 U.S.C. 2246 is more -- restrictive definition of
12   sexual act is not that which I've seen used by the courts.

13        So, I think a individual BDSM act could be deemed a
14   commercial sex act if there's money.

15        MR. GROVER:  Your Honor, candidly, I'm not sure I
16   agree, but what I'm concerned about is if it is merely an
17   assault, is it, in fact, considered a commercial sex act?

18        And I don't know the answer as I sit here.  I'm
19   thinking about it.

20        MR. ROSENBERG:  Your Honor, I would, respectfully,
21   request that you would reread the note.

22        THE COURT:  Is BDSM without actual sexual contact
23   considered commercial sex?

24        MR. ROSENBERG:  I think our answer would be no, Your
25   Honor.  Without sexual contact, there's no commercial sex.

Proceedings                                                    2154

 1            MR. BALESTRIERE:  May I, Your Honor?

 2            I think we could try to get just some cases that

 3  I've seen over the last week, not to burden the Court, but we

 4  could get this, of course, to defendants.  That everything

 5  we've seen, that I've seen, not pretending to have read

 6  everything, but there is a <u>Rivera</u> decision from the Court of

 7  Appeals that, I believe, defines it expansively.

 8            I think the district court case there does as well,

 9  that was out of the Southern District.  And I can remember, at

10  least, another case, I've asked my colleague to find these,

11  where what I call the more restrictive 18 U.S.C. 2246

12  definition of sexual act, which requires genitalia to somehow

13  be involved unless you're dealing with someone underage, the

14  courts that I've seen have said that it's not that

15  restrictive.  That anything, in essence, for sexual pleasure

16  or involved in sex can be deemed a sex act.

17            THE COURT:  Well, you are kind of going where I've

18  been thinking.

19            I think the right answer to this question --

20  frankly, I don't think the caselaw is going to help us much

21  because it's not going to answer the specific question -- but

22  I think the right answer is if the purpose of the BDSM is

23  sexual gratification, then it can be considered commercial

24  sex.

25            MR. BALESTRIERE:  I think that makes sense to

Proceedings                                              2155

1   plaintiffs, Your Honor.

2          THE COURT:  It's got to be right, right?  You can't

3   say that's wrong.

4          MS. LAVIGNE-ALBERT:  Your Honor, I would just note

5   that at 18 U.S.C. 2246 there are definitions of sexual acts

6   and sexual contact, but I'm just reading them now.

7          MR. BALESTRIERE:  May, Your Honor?

8          THE COURT:  Sure.

9          MR. BALESTRIERE:  What Ms. Lavigne-Albert is

10  referencing is where I was looking, I think, a couple weeks

11  ago, just trying to education myself better.

12         And the district court decisions, and I think

13  Rivera, though I need to confirm that, that have interpreted

14  what sex act means under 1591 have specifically declined to

15  not rely simply on 2246.

16         And my colleague has gotten something for me.  This

17  is from Noble against Weinstein.

18         Is this the Second Circuit case?

19         Just one moment, Your Honor.

20         Okay.  So, there's a district court case.  Again, we

21  can pass this along to the Court and counsel.  This is -- I am

22  trying to get the cite.

23         So, it's Noble against Weinstein, 335 F Supp. 3d

24  504.  I don't have the pin right now, but in that decision the

25  Court wrote because 18 U.S.C. 2246's definition does not

Proceedings                                        2156

1   include the modifier "any" before "sex act" nor the

2   Congressional intent to enhance protection for victims, see

3   discussion infra, it is rejected as contrary to and

4   incompatible with Section 1591's plain language.

5           I think we have more that I could pass along, my

6   colleague just got that for me quickly.  But I don't think --

7   22 -- 2246 is -- does, and any interpretation of what is

8   covered by that, I do not think is the outer limit of sex act

9   under 1591 based on any authority that I've seen.

10          THE COURT:  How can it not be?

11          Well, right, I agree it's not the outer limit of sex

12  act, but there is an express definition of sexual contact.

13  Now, if you take that definition, which says, that's 2246(3),

14  subparagraph 3, then I don't think there's any question that

15  it can be considered commercial sex, the things that are

16  specified in that definition.

17          MR. BALESTRIERE:  Absolutely.  I'm sorry, maybe I

18  wasn't clear.

19          I think everything under 2246 can be a sex act under

20  1591.  But I don't believe a sex act is restricted to the

21  conduct that is covered by 2246.

22          THE COURT:  They didn't ask us about a sex act.

23  They asked us about without actual sexual contact.

24          Sexual contact is a term of art.  It means the

25  intentional touching of various body parts with an intent to

SAM     OCR     RMR     CRR     RPR

Proceedings                                                    2157

1  abuse, humiliate, harass, degrade or arouse or gratify the

2  sexual desire of any person.  But it does say touching,

3  intentional touching.  And sex act may be different.  It may

4  be broader, although I don't really think it is,

5  Mr. Balestriere.

6          MR. BALESTRIERE:  I think we may be on the same

7  page, Your Honor, that I think what you said earlier is that

8  the focus, if there's the contact with the intent to arouse or

9  gratify the sexual desire of any person.

10          THE COURT:  Right.  I think that's right, but the

11  part I didn't have before, which I now have from the statute,

12  is intentional touching.

13          MR. BALESTRIERE:  Well, I think -- I think there's,

14  at least, BDSM as the Court instructed the jury on it includes

15  intentional touching.

16          So, I think we're on the same page, Your Honor.  I

17  think if I had a point, and forgive me if I've been a little

18  muddled about it, is that it's what is listed above for sexual

19  act under 2246 is more restrictive than sex act under 1591.

20          THE COURT:  Okay, not much.

21          MR. GROVER:  Your Honor.

22          THE COURT:  Yes.

23          MR. GROVER:  Sorry.  Your Honor, if I may, and I'm

24  reading, so, if you don't mind I'm going to stay seated.

25          THE COURT:  Take your mask off, please.

Proceedings                                          2158

1          MR. GROVER:  I'm looking at the Weinstein case at

2     the district court level, I believable it's Judge Sweet, and

3     he's focusing very closely at page 523 on the underlying

4     facts.

5          And so, after they talk -- after he writes about the

6     plain meaning of any sex act interpreted in the broadest

7     statutory context of 1591 and 95, he continues to describe

8     what is at issue in that case, which is forcibly rubbing her

9     vagina and forcing Noble, among other things, to masturbate

10    him, to ejaculate and other words, things that clearly involve

11    the sexual organs of Weinstein or her sexual organs.

12         So, it's very focused and he doesn't seem to expand

13    it beyond that.  But candidly, I haven't reread this decision

14    in a while.

15         THE COURT:  I'm not sure what we're discussing

16    really.  We have an express and very definite statutory

17    definition of sexual contact.

18         MR. GROVER:  Okay.

19         THE COURT:  And I think under that definition there

20    can't be any question that it can be a commercial sex act.

21    It's just, there's no way around that.

22         So, I think what I need to do is define sexual

23    contact for the jury, and then say sexual contact defined in

24    this way is within the definition of commercial sex.  I think

25    it has to be.

Proceedings                                              2159

1              Okay, let's have the jury, please.

2              (Pause in the proceedings.)

3              MR. GROVER:  Your Honor, if I may, before the jury

4    returns to the courtroom.  Just one other comment that I want

5    to place on the record.

6              The key to the word commercial is it should not be

7    treated as a sex act standing alone.  The note focuses on --

8    well, let me put it this way:  We think that the Court needs

9    to straighten out the confusion between commercial and the sex

10   act.  Commercial means, by definition, it is consensual

11   because it is a contract relationship.  It is not parsing

12   particular forms of sexuality.  If it is not consensual -- if

13   it's not consensual, it cannot be commercial.

14             THE COURT:  The jury hasn't asked me to define what

15   commercial means.  They've asked me if sexual contact is

16   considered commercial sex.  And under the statutory definition

17   of sexual contact, the answer is it certainly can be.

18             (Pause.)

19             THE COURT:  I am going to revisit that.

20             Off the record.

21             (Discussion held off the record.)

22             MR. BALESTRIERE:  May I say something then, Your

23   Honor?

24             THE COURT:  Yes.  The problem is what I overlooked

25   was the without actual sexual contact.  Without.  Without

Proceedings                                                    2160

1   touching, without intentional touching.  If it's without

2   intentional touching, I think the answer is still yes if it's

3   done -- I'm back to where I started -- if it's done for

4   purposes of sexual gratification.

5            MR. BALESTRIERE:  Okay.

6            MS. LAVIGNE-ALBERT:  Your Honor, if --

7            MR. ROSENBERG:  I'm sorry, how can that be

8   without -- I'm sorry, how can that be without touching, if

9   it's without touching?

10           THE COURT:  Because BDSM, for example, can include

11  verbal humiliation.  It's not sexual contact, but it is BDSM.

12  And if that's what someone is paying for, that would be

13  commercial sex.

14           MS. LAVIGNE-ALBERT:  Your Honor, if --

15           MR. ROSENBERG:  Well --

16           MS. LAVIGNE-ALBERT:  Sorry, Ben, go ahead.

17           MR. ROSENBERG:  I'm just trying to understand that

18  and think about it.  Go right ahead.

19           MS. LAVIGNE-ALBERT:  It seems to me, Your Honor, if

20  the question is, is BDSM without actual sexual contact

21  considered commercial sex, and the definition of sexual

22  contact includes at the end of the definition for the purpose

23  of sexual gratification, and I think we need that for there to

24  be commercial sex, it seems to me the answer to the jury's

25  question would be no.

SAM      OCR      RMR      CRR      RPR

Proceedings                    2161

1          BDSM without what's defined in the statute as sexual

2     contact, which includes the intent to gratify a person's

3     desire, would not be commercial sex.

4          THE COURT:  I disagree.  I mean sexual contact is

5     defined to include an attempt to abuse or humiliate, for

6     example.  If you're without that, that is, there is no

7     intentional touching, but your intent is still to abuse and

8     humiliate or arouse or gratify the sexual desire of any

9     person, there is no sexual contact without intentional

10     touching, but there is still the potential for commercial sex.

11          MS. LAVIGNE-ALBERT:  I understand, Your Honor.

12          THE COURT:  All right, I am ready for them now.

13          (Pause in the proceedings.)

14          MR. BALESTRIERE:  Your Honor, before they're here,

15     may I put something on the record?

16          THE COURT:  What?

17          MR. BALESTRIERE:  I'm sorry, once -- I didn't want

18     to slow up the jury getting here.

19          May I just put something on the record once

20     they're --

21          THE COURT:  Here and gone?

22          MR. BALESTRIERE:  Yes.

23          THE COURT:  Okay.

24          MR. BALESTRIERE:  Thank you.

25          (Pause.)

Proceedings                                              2162

1          (Jury enters courtroom at 1:20 p.m.)

2          THE COURT:  Okay, ladies and gentlemen, we have --

3     everyone be seated.  Sorry.

4          We have your note and it asks the following

5     question:

6          Is BDSM without actual sexual contact considered

7     commercial sex?

8          Now, to make sure we're on the same page in

9     answering that question, I first want to read you the

10    definition of what the law defines as sexual contact in this

11    context.

12         The term sexual contact means the intentional

13    touching, either directly or through the clothing, of the

14    genitalia, anus, groin, breast, inner thigh or buttocks of any

15    person with the intent to abuse, humiliate, harass, degrade or

16    arouse or gratify the sexual desire of any person.

17         Now, your note asks what if there is no actual,

18    which I interpret as intentional, sexual contact.  And the

19    answer to that question is if BDSM involving no sexual -- no

20    actual sexual contact is performed with an intent to abuse,

21    humiliate, harass, degrade or arouse or gratify the sexual

22    desire of any person, then it can be the subject of a

23    commercial sex act.

24         That's the best answer I can give you.  Please

25    continue your deliberations.

SAM      OCR      RMR      CRR      RPR

Proceedings                                        2163

1          (The jury exits to resume deliberations at

2    1:23 p.m..)

3          THE COURT:  Okay, Mr. Balestriere, please.

4          MR. BALESTRIERE:  Yes, Your Honor, thank you.

5          I did want to note that in 2246 it does have the

6    restrictive use at the very beginning of as used in this

7    chapter.  Meaning I think even the definition Your Honor

8    provided, which I think works for now, notes that this is a

9    more restrictive definition.

10         And I was wrong, there was not a Court of Appeals

11   case on this that I was thinking of.  Noble against Weinstein

12   is the district court; and so is the Ardolf, A-R-D-O-L-F,

13   against Weber, which I'm not going to read it all in, but I

14   think maybe it would be easy to just send to the Court and the

15   parties.  It's at 332 FRD, 467, 2019, and it's at 468, I

16   believe, where there's an analysis by Judge Daniels about how

17   the definition of sex act under 1591 is not to be as

18   restrictive as that under 2246.

19         THE COURT:  Okay.  I'm not sure that's relevant to

20   this question.

21         I will also note that the procedure I follow when I

22   get a question from the jury is that I read it to the lawyers.

23   The lawyers give me their views as to how I should answer it.

24   I either accept or reject those views.  I respond to the

25   question.  And at that point anything what you want to put on

Proceedings                                    2164

1  the record doesn't really matter because I've already

2  instructed the jury.

3          MR. BALESTRIERE:  Understood.  I'm thinking I could

4  see this coming up again, so that's why I was talking

5  about maybe --

6          THE COURT:  When it does, remind me because I won't

7  remember.

8          MR. BALESTRIERE:  Understood, Your Honor.

9          THE COURT:  Okay.  Thank you very much.  We're in

10 recess.

11         MS. LAVIGNE-ALBERT:  Your Honor, I just want to put

12 another thing on the record.

13         I heard what the Court just said, but in the Marcus

14 case, which is the only case I think we're aware of that

15 involved BDSM, the jury instruction in that case defined

16 commercial sex act using subsections A through C of the sexual

17 act definition at 18 U.S.C. 2246, without the sexual

18 contact --

19         THE COURT:  Right.

20         MS. LAVIGNE-ALBERT:  -- portion of that.

21         THE COURT:  That's why I said can be, not

22 necessarily is commercial sex.  If they give us another

23 question about commercial sex, we'll address that question

24 when they give it.

25         MS. LAVIGNE-ALBERT:  Understood.  Thank you, Your

Proceedings                                                 2165

1   Honor.

2            THE COURT:  Thanks.

3            MR. BALESTRIERE:  Thank you.

4            (Judge BRIAN M. COGAN exited the courtroom.)

5            (Recess taken.)

6            (In open court - jury not present.)

7            (Judge BRIAN M. COGAN entered the courtroom.)

8            THE COURT:  Okay, have a seat, please.

9        We have a note from the jury, which we have marked

10  as Court Exhibit 2, and the note says as follows:

11           Re: Sex trafficking.  If a person is not present

12  when consent is withdrawn, is consent still a defense for that

13  person?

14           (Court's Exhibit 2 was received in evidence.)

15           MR. BALESTRIERE:  Good afternoon, Your Honor.

16       I think we're interpreting person to mean defendant,

17  and I think that we can agree that that almost certainly

18  regards Ms. Powers.

19       And I'm not sure how to answer or what I would

20  suggest to the Court.

21           THE COURT:  Let me read it again because I think

22  it's pretty ambiguous.

23       If a person is not present when consent is

24  withdrawn, is consent still a defense for that person?

25           MR. GROVER:  Your Honor, may I speak?

Proceedings                                          2166

1              THE COURT:  I'm sorry?

2              MR. GROVER:  My answer is yes, and the reason my

3     answer is yes is because if the defense is based on what

4     information is being imparted to the individual, as far as the

5     individual is concerned, in our case, Ms. Powers, she has no

6     knowledge that someone isn't engaging in consensual activity.

7     And so, if the question is being asked, what if someone says

8     no, she has no way of knowing.  And, therefore, it's a defense

9     for her.

10             THE COURT:  Well, I think that's right, but I don't

11    think it's as concisely responsive to the note as we need to

12    be.

13             Let's go back and look at the sex trafficking

14    instruction on consent.

15             I think what I'd like to say to the jury is to be

16    liable for sex trafficking in a situation involving withdrawal

17    of consent, the defendant must know that consent has been

18    withdrawn.

19             What do you all think about that?

20             MR. ROSENBERG:  We agree with that instruction.

21             MR. BALESTRIERE:  Your Honor.

22             THE COURT:  Yes.

23             MR. BALESTRIERE:  Again, my concern if we now look

24    back at Mr. Rubin, is that this would seem to -- this goes to

25    an issue that's been before the Court a lot with this jury

SAM       OCR       RMR       CRR       RPR

Proceedings                                                    2167

1    charge, that it goes to the defendant's state of mind, right?

2          Putting, again, the specific intent and general

3    intent mens rea discussion that we had on Saturday.  I don't

4    think that the defendant has to know that consent has been

5    withdrawn.

6          THE COURT:  I think if it's been given, if you start

7    from the proposition that it's consensual, okay, and the jury

8    so finds it's consensual, then the only way for the defendant

9    to still be liable is for the defendant to know, or --

10         MR. BALESTRIERE:  Recklessly disregard.

11         THE COURT:  -- recklessly disregard, the fact that

12   the consent has been withdrawn.

13         MS. LAVIGNE-ALBERT:  Your Honor, on the sex

14   trafficking --

15         THE COURT:  That's all they're asking about.

16         MS. LAVIGNE-ALBERT:  Right, which is a little

17   confusing because the statute requires the requisite knowledge

18   of force, that's force or coercion or the other things will --

19   will be used -- will be used to -- to cause the plaintiffs to

20   engage in prostitution.

21         And so, I don't -- what's confusing to me about this

22   question is how can we get to a situation of withdrawal of

23   consent?

24         THE COURT:  Here's what I propose.  First of all,

25   the fact that you're confused, that doesn't help me all that

Proceedings                                    2168

1    much, I still have to respond to the note.  Okay?

2               MS. LAVIGNE-ALBERT:  Well, I think my point, Your

3    Honor, is that we should probably repeat the -- what I call

4    the mens rea requirement of the sex trafficking first, and

5    then get to the defense of consent.

6               THE COURT:  Refer me in the instructions to where

7    that appears.

8               MS. LAVIGNE-ALBERT:  It is the point that starts the

9    third -- I don't know if I have Your Honor's most recent.

10              Okay, page 14:

11              Third:  At the time the defendant engages in any of

12   the acts mentioned in the first element of this claim above,

13   the defendant knows, or recklessly disregards, the fact that

14   force, threat of force, fraud or coercion, will cause the

15   plaintiff to engage in a commercial sex act.

16              I think this needs to be repeated to the jury and --

17   and clarify that this comes before they ever get to the

18   defense of consent.  And that they don't get to the defense of

19   consent unless they've concluded that these things have

20   happened.

21              And -- and then when we get to the specific

22   withdrawal of consent issue, I think what Your Honor said

23   before is accurate, that the defendant must know that consent

24   has been withdrawn.

25              THE COURT:  But that's not really -- I mean the

SAM      OCR      RMR      CRR      RPR

Proceedings                                                    2169

1   jury's note assumes a situation where there has been consent.

2   Okay?  There has been consent and then it's withdrawn.  And

3   the defendant either knows or doesn't know it's withdrawn.

4            I think that's what we've got to address, and I

5   don't think going back to square one about knowing about

6   whether they're going to engage in a commercial sex act is

7   responsive to the jury's note.  That's why I like my

8   formulation better.

9            Let me read it one more time because I modified it

10  slightly.

11           To be liable for sex trafficking in a situation

12  where consent has been given and then withdrawn, the person

13  must know, or recklessly disregard, the fact that consent has

14  been withdrawn.

15           MS. LAVIGNE-ALBERT:  But the person would have had

16  to know before.

17           THE COURT:  Well, but consent has been given, right?

18  Okay, let me change it.

19           MS. LAVIGNE-ALBERT:  If the defendant learns after

20  the fact --

21           THE COURT:  Wait, wait, wait, I am going to revise

22  it again to accommodate your concern.

23           MS. LAVIGNE-ALBERT:  Thank you.

24           THE COURT:  To be liable for sex trafficking in a

25  situation where a defendant reasonably believes that consent

Proceedings                                          2170

1    has been given and then the consent is withdrawn, the person

2    must know, or recklessly disregard, that the consent has been

3    withdrawn.

4            MR. BALESTRIERE:  May I, Your Honor?

5            THE COURT:  Sure.

6            MR. BALESTRIERE:  So, two things.

7            First, I don't -- I don't think it should be

8    reasonably believed.  I think it's just to be liable for sex

9    trafficking in a situation where consent has been given.

10   Because, again, we're supposed to be looking at the state of

11   mind of the plaintiff.

12           But I also think of the -- the jury note, just

13   looking at the language of that which begins, if a person is

14   not present.  So, I would ask that that be part of the answer.

15           If a person is not present or if a defendant is not

16   present, for that defendant to be liable for sex trafficking

17   in a situation where a defendant believes that consent has

18   been given, and then the consent is withdrawn, the defendant

19   must know, or recklessly disregard, that the consent has been

20   withdrawn.

21           THE COURT:  All right.

22           (Pause.)

23           MS. LAVIGNE-ALBERT:  I suppose, Your Honor, our

24   position, and we'll state it for the record, in the question

25   from the jury:

Proceedings                                    2171

1    If a person is not present when consent is

2    withdrawn, is consent still a defense for that person?

3    We would say that if the defendant is not present

4    when the consent is withdrawn, which assumes that there was

5    consent, there cannot be liability for sex trafficking.

6    THE COURT:  Well, no, that's not right because, in

7    fact, the person may not be present, but they may obtain

8    information from another source making it clear that the

9    consent has been withdrawn.

10   MS. LAVIGNE-ALBERT:  But the statute requires

11   knowledge before, that's why the language in the statute is

12   will -- that's the argument that Mr. Dolan made at the charge

13   conference for changing the woulds for will.  There's a

14   timeline requirement in the statute.

15   THE COURT:  Right, but I think this covers it.  Let

16   me read it one more time.

17   Where consent has been given and then a person is

18   not present when the consent is withdrawn, that person must

19   know, or recklessly disregard, the withdrawal of the consent

20   in order to be liable for sex trafficking.

21   MS. LAVIGNE-ALBERT:  We don't believe that's right,

22   Your Honor.

23   THE COURT:  So, what is your request, that I just

24   re-read the paragraph dealing with the giving of consent that

25   you cited before?

Proceedings                                              2172

1          MS. LAVIGNE-ALBERT:  I'm sorry, Your Honor.

2     Correct.

3          MR. BALESTRIERE:  And plaintiffs would object to

4     that, Your Honor, for the reasoning you noted before.  We

5     don't need to go back to square one.

6          I think this is somewhat precise where, remember how

7     the question began, if a person is not present, which I'll say

8     if a defendant is not present when consent is withdrawn, is

9     consent still a defense for that defendant?

10          So, I think it's very specific to that about someone

11     not being present.  I think Your Honor had a specific answer

12     or -- yeah, answer to the -- the jury question which you just

13     noted.

14          THE COURT:  Okay.

15          All right, I am going to overrule Ms. Powers's

16     objection to my proposed instruction because I think the

17     substitution that's been offered is not at all responsive to

18     the jury's note.

19          So, what I am going to say, just one more time:

20          Where consent has been given and then a person is

21     not present when the consent is withdrawn, the person must

22     know, or recklessly disregard, the withdrawal of the consent

23     to be liable for sex trafficking.

24          Okay.

25          MR. GROVER:  Your Honor, just one point to preserve

SAM      OCR      RMR      CRR      RPR

Proceedings                                2173

1    for the record -- and I apologize, I'll be quick -- is that

2    the way this case has developed and the questions being asked

3    to the Court, we think that this highlights the

4    inappropriateness of even permitting the jury to consider the

5    withdrawal of consent by a plaintiff.

6             It does not apply to sex trafficking.  It may apply

7    to other claims, such as rape or assault, but it does not

8    apply to sex trafficking once someone has agreed to engage in

9    commercial sex activity.

10            But I appreciate Your Honor's ruling, I just want to

11   make it clear that we object to all of this for that reason.

12            THE COURT:  Mr. Grover, I don't think you could have

13   been any clearer as to your position.  You have been, you

14   preserved it eight ways from Sunday, and you are raising again

15   the same argument that I have previously rejected, which I

16   also don't think is what's going on here with this question,

17   but that's besides the point.  You have your record.

18            MR. GROVER:  Thank you, Your Honor.

19            THE COURT:  And unless there's anything further,

20   I'll bring the jury back in and read this answer to the

21   question.

22            MR. GILBERT:  On the topic of making the record, we

23   will join in Ms. Powers's objection.

24            THE COURT:  Okay.

25            MR. BALESTRIERE:  And you don't need to hear from me

Proceedings                                                2174

1   regarding what Mr. Grover said?

2             THE COURT:  No, I don't think so.

3             MR. BALESTRIERE:  Thank you, Your Honor.

4             THE COURT:  All right, let's have the jury, please.

5             (Pause in the proceedings.)

6             THE COURT:  I am going to add a little something

7   that I think will further accommodate defendant Powers's

8   concern.

9             I am going to say:  Where consent has been given and

10  then a person is not present when the consent is withdrawn,

11  the person must know, or recklessly disregard, the withdrawal

12  of the consent during the commercial sex act to be liable for

13  that act of sex trafficking.

14            My theory being that if you learn three weeks later

15  that there was a withdrawal of consent, and you thought

16  reasonably that there was consent during, then it doesn't

17  matter that you learned about it three weeks later.  That's

18  why I'm adding those words.

19            MR. BALESTRIERE:  May I, Your Honor?

20            THE COURT:  Yes.

21            MR. BALESTRIERE:  No objection to the addition.  I

22  agree with the logic, but just for clarity when you say that

23  person must know --

24            THE COURT:  Yes.

25            MR. BALESTRIERE:  -- may I ask that person who is

SAM      OCR      RMR      CRR      RPR

Proceedings                                                2175

1    not present must know?

2              THE COURT:  Okay.

3              MS. LAVIGNE-ALBERT:  Your Honor, if Ms. Powers

4    bought a plane ticket thinking everything was consensual, that

5    they were coming, they agreed to come for a BDSM for sex, and

6    at some point during the session that happens four days later

7    they withdraw their consent and she learns that some days

8    later, our position is that that could not ever be sex

9    trafficking.

10             THE COURT:  I think that's what this says.

11             MR. BALESTRIERE:  May I make a suggestion, Your

12   Honor, that could address Ms. Lavigne-Albert's?

13             So, you have that person, who is not present, must

14   know, or recklessly disregard, of the withdrawal of consent

15   during the commercial sex act.  I think it makes it even more

16   clear.

17             THE COURT:  I don't think that's good English.

18             MR. BALESTRIERE:  Understood.  Then I certainly

19   defer to the Court.

20             (Jury enters the courtroom at 3:49 p.m..)

21             THE COURT:  All right, everyone be seated.

22             Ladies and gentlemen, we have your note, which says:

23             Re:  Sex trafficking.  If a person is not present

24   when consent is withdrawn, is consent still a defense for that

25   person?

SAM      OCR      RMR      CRR      RPR

Proceedings                                      2176

1           Now, I'll say at the outset, we're not a hundred

2    percent sure what you're asking, but let me tell you this in

3    response to what we think you're asking:

4           Where consent has been given and then a person is

5    not present when the consent is withdrawn, the person who is

6    not present must know, or recklessly disregard, the withdrawal

7    of the consent during the commercial sex act to be liable for

8    that act of sex trafficking.

9           Think about that.  If you have other questions,

10   don't hesitate to send them out.

11          Thank you.

12          (The jury exits to resume deliberations at

13   3:50 p.m..)

14              THE COURT:  Okay, we will wait for the next note.

15              MR. GROVER:  Thank you, Your Honor.

16              MR. BALESTRIERE:  Thank you.

17          (Judge BRIAN M. COGAN exited the courtroom.)

18          (Recess taken.)

19          (In open court - jury not present.)

20          (Judge BRIAN M. COGAN entered the courtroom.)

21              THE COURT:  Okay, be seated, please.

22          Court Exhibit Number 3, a note from the jury that

23   says:  Can we have Brittany Reyes's testimony?

24          (Court's Exhibit 3 was received in evidence.)

25              THE COURT:  I guess, yes.  You know, generally, I

Proceedings                                              2177

1    only have readbacks when they are fairly short, like ten or

2    fifteen minutes.  This is hours.  This is a day.

3              So, I propose that the parties work with the court

4    reporter, get together a transcript of Brittany Reyes's

5    testimony, and then Mr. Jackson will just bring it in to the

6    jury.

7              Nothing else to do, right?

8              MR. ROSENBERG:  Your Honor, there were some

9    deposition testimony played during her testimony.  And I guess

10   the question is, how will that be handled in sending it back

11   to the jury?

12             THE COURT:  I guess that's the question.

13             MR. ROSENBERG:  Forgive me.

14             THE COURT:  I am saying you raised a good question.

15   What's the answer?

16             MR. ROSENBERG:  We have -- I think the best thing to

17   do is we have reports of her -- the clips, the testimony, the

18   transcripts, and somehow ident -- mark those in the trial

19   transcript to say this is what is played here and this is what

20   is played there.

21             THE COURT:  Sounds right.

22             MR. GROVER:  Well, Your Honor, I don't know the

23   answer to this question, perhaps, the court reporter can

24   answer it.

25             But were the court reporters taking down the

Proceedings                                          2178

1  testimony as it was being --

2           THE COURT:  No.

3           MR. GROVER:  Okay, so the answer is no, and I guess

4  we have to do what you suggested.

5           MR. McDONALD:  Judge, I would just cite to your

6  charge, and I'm paraphrasing, but I think you said something

7  to the effect that the deposition testimony should be given

8  the same weight as the testimony at trial.

9           THE COURT:  Well, we are going to give them the

10 depositions.

11          MR. McDONALD:  Okay.

12          THE COURT:  That's fine.  It's no problem.  Okay,

13 we'll do that.

14          Before we break, I did want to mention one thing

15 that I've wanted to mention throughout the trial.  We haven't

16 talked about what's going to happen if there's a plaintiffs'

17 verdict, right, with regard to punitive damages.

18          And you don't have to decide right now, but my

19 inclination is I would give the plaintiffs a half hour to

20 present evidence; I would give the defendants a half hour to

21 present evidence; and then I would give the charge that we

22 have agreed on after five minutes per side of closing on that

23 issue.

24          I don't want to make more of it than is necessary.

25          Think about it, we'll talk more about it, but that's

Proceedings                                                    2179

1   my proposal for now.

2            Okay, we're in recess.  Work with the court

3   reporter.

4            Oh, and I will also say, if this comes up again

5   where we get a request for substantial portions of the

6   testimony, I am not going to reconvene here in court.

7   Mr. Jackson will just give you that note and we'll follow the

8   same procedure of putting the testimony together.  If there's

9   a dispute about that, then I'll come in and resolve the

10  dispute.

11           Okay, thanks.

12           (Judge BRIAN M. COGAN exited the courtroom.)

13           (Recess taken.)

14           (In open court - jury not present.)

15           (Judge BRIAN M. COGAN entered the courtroom.)

16           THE COURT:  Be seated, please.

17           Court Exhibit Number 4 is a note from the jury that

18  says:

19           Can we have Post-Its?

20           The answer is yes.

21           Next they say:  We are not reaching a decision

22  today.  At what point will you allow us to reconvene tomorrow?

23           I think what they're saying is they want to go home,

24  and will I let them go home, which, of course, I will.

25           So, let's bring them back in and we'll dismiss them

Proceedings                                          2180

1    for the day.

2                 (Court's Exhibit 4 was received in evidence.)

3                 (Pause in the proceedings.)

4                 THE COURT:   I think tomorrow morning you all can be

5    in by 10:00.   I think we will give the jury a half an hour to

6    come up with more questions or a verdict or whatever they want

7    to do, but you all don't have to be here when they start.

8                 (Pause.)

9                 (Jury enters the courtroom at 5:05 p.m..)

10                THE COURT:   All right, everyone be seated.

11                Ladies and gentlemen, we have your note asking for

12   Post-Its and, of course, we'll have Post-Its for you.

13                I infer from the rest of your note that you want to

14   go home now, right?   That's what you're saying, you'll come

15   back tomorrow?

16                That's fine.   Please remember the admonitions about

17   not speaking to anyone, not doing any research, not doing

18   anything on social media.   You've come this far, please keep

19   up the good adherence to your oath that you've demonstrated.

20                The only thing I want to tell you about tomorrow is

21   I'm not going to bring you into the courtroom.   You can just

22   go right into the jury room, but do not start deliberating

23   until all eight of you are there, okay, because no one can

24   miss anything.

25                So, you are, again, not talking about the case until

SAM      OCR      RMR      CRR      RPR

Proceedings                                              2181

1    you're there.  You've been a very prompt jury, I expect

2    everyone will be there by 9:30, but if one or two people are

3    late, please wait until they get there.

4            Thanks again for your hard work.  Have a great

5    evening.

6            See you tomorrow.

7            (The jury exits the courtroom at 5:07 p.m..)

8            THE COURT:  Okay, recess until tomorrow at

9    10 o'clock.

10           (Judge BRIAN M. COGAN exited the courtroom.)

11

12

13   (Matter adjourned to Wednesday, April 6th, 2022 at 10:00 a.m.)

14

15

16

17

18                           ooo0ooo

19

20

21

22

23

24

25

                SAM      OCR      RMR      CRR      RPR

2182

<u>I N D E X</u>

<u>Page</u>

CHARGE OF THE COURT                                    2104


<u>E X H I B I T S</u>

<u>Page</u>


Plaintiff's Exhibit 126                                2096


Court's Exhibit 1                                      2153


Court's Exhibit 2                                      2165


Court's Exhibit 3                                      2176


Court's Exhibit 4                                      2180