2183

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                    :
AMY MOORE, MIA LYTELL,              : 17-CV-06404 (BMC)
NATASHA TAGAI, EMMA HOPPER,         :
BRITTANY HASSEN AND BRITTANY        :
REYES,                              :
                                    : United States Courthouse
          Plaintiffs,               : Brooklyn, New York
                                    :
                                    :
     -against-                      : Wednesday, April 6, 2022
                                    : 9:30 a.m.
                                    :
                                    :
HOWARD RUBIN AND JENNIFER           :
POWERS,                             :

          Defendants.

- - - - - - - - - - - - - - - X

            TRANSCRIPT OF CIVIL CAUSE FOR JURY TRIAL
            BEFORE THE HONORABLE BRIAN M. COGAN
            UNITED STATES SENIOR DISTRICT JUDGE


                    A P P E A R A N C E S :

For the Plaintiffs:    BALESTRIERE FARIELLO
                       225 Broadway
                       29th Floor
                       New York, New York 10007
                       BY:  JOHN G. BALESTRIERE, ESQ.
                            MANDEEP S. MINHAS, ESQ.


For the Defendants:    DECHERT, LLP
                       Three Bryant Park
                       1095 Avenue of the Americas
                       New York, New York 10036-6796
                       BY:  EDWARD A. McDONALD, ESQ.
                            BENJAMIN E. ROSENBERG, ESQ.
                            CHRISTINE ISAACS, ESQ.
                            MAY K. CHIANG, ESQ.

2184

```
 1                  A P P E A R A N C E S:   (Continued)
 2

 3
    For the Defendants:     SHEPPARD MULLIN RICHTER & HAMPTON, LLP
 4                               30 Rockefeller Plaza
                                 New York, New York 10112
 5                          BY:  MICHAEL J. GILBERT, ESQ.
                                 KATHERINE ANNE BOY SKIPSEY. ESQ.
 6

 7   For the Defendant:     SCHLAM STONE & DOLAN, LLP
                                 26 Broadway
 8                               19th Floor
                                 New York, New York  10004
 9                          BY:  DOUGLAS E. GROVER, ESQ.
                                 JOLENE F. LAVIGNE-ALBERT, ESQ.
10                               ANGELA LI, ESQ.

11

12

13

14

15

16   Court Reporter:  Stacy A. Mace, RMR, CRR
                       Official Court Reporter
17                     E-mail:  SMaceRPR@gmail.com

18   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
19

20

21

22

23

24

25
```

SAM      OCR      RMR      CRR      RPR

Proceedings                                          2185

1              (In open court - jury not present.)

2              THE COURTROOM DEPUTY:  All rise, Judge Cogan

3    presiding.

4              (Judge BRIAN M. COGAN entered the courtroom.)

5              THE COURT:  Be seated, please.

6              We have a note from the jury marked as Court

7    Exhibit 5.

8              (Court's Exhibit 5 was received in evidence.)

9              THE COURT:  It says:  We are all here.  Still

10   waiting for Brittany Reyes' testimony.

11             That's moot.  They have been given that testimony.

12             Can we have Brittany Hassen's testimony?  That, I'll

13   ask you to put together.

14             And then they asked:  Is it possible to receive the

15   slide show from the plaintiffs' closing arguments?

16             What's the plaintiffs' position on that?

17             MR. BALESTRIERE:  We are fine with it, Your Honor.

18   Though, I think to make sure -- good morning, Your Honor.

19   Sorry.

20             THE COURT:  I think you can stop because the

21   defendant is not going to be fine with it.

22             MR. BALESTRIERE:  No, the one thing I would say is

23   the references -- if they're actually going to have it, then I

24   think the references to it, it's like maybe one line here, six

25   lines there, of those exhibits, which are not in evidence.

Proceedings                                              2186

1          I see the Court smiling because I know what

2     defendants are going to say, I just want to put on the record,

3     of course, we would want those taken out, Your Honor.

4          THE COURT:  Thank you.  Let me hear from the

5     defendants.

6          MR. ROSENBERG:  It's not in evidence.  We -- no.

7          MR. GROVER:  Same position for defendant Powers.

8          THE COURT:  Okay.  I agree.  It's not evidence, it

9     can't go back to the jury.  The only question I have is do I

10    bring the jury in to tell them that or do I just have

11    Mr. Jackson say to them the judge and the parties say -- well,

12    the judge says it's not evidence and, therefore, the answer is

13    no.

14         Do you want me to tell them or do you want

15    Mr. Jackson to tell them?

16         MR. BALESTRIERE:  We're fine with Mr. Jackson, Your

17    Honor.

18         MR. McDONALD:  We are as well, Your Honor.

19         MS. LAVIGNE-ALBERT:  Same here.

20         THE COURT:  All right, we are in recess.  Stand by.

21         MR. GROVER:  Your Honor.

22         THE COURT:  Yes, something else?

23         MR. GROVER:  Just if I may, we're all sort of --

24    we've always gotten notes that come from the jury and been

25    able to look at them, and we've been scrambling and,

Proceedings                                            2187

1    obviously, Your Honor wants to get back to the jury quickly.

2            Could we get copies of the notes or could

3    Mr. Jackson hold it so we can, at least, be looking at it at

4    some point?

5            THE COURT:  Yes.  He has all the notes, and happy to

6    give you copies.  I don't know if they're filed on the docket,

7    but no problem giving you copies.

8            MR. GROVER:  Thank you, Your Honor.

9            THE COURT:  I do get to see them first before you.

10   And, quite frankly, I want to see them first before you and

11   then we can all decide together what to do.

12           MR. GROVER:  Thank you, Your Honor.

13           THE COURT:  Okay.

14           (Judge BRIAN M. COGAN exited the courtroom.)

15           (Recess taken.)

16

17

18

19

20

21

22

23

24

25

Proceedings                                                    2188

1              **AFTERNOON SESSION**

2              (In open court - jury not present.)

3              (Judge BRIAN M. COGAN entered the courtroom.)

4              THE COURT:  Have a seat, please.

5              We have a note from the jury, which we've marked as

6       Court's Exhibit 6.

7              (Court's Exhibit 6 was received in evidence.)

8              THE COURT:  Which says:  We have reached a unanimous

9       verdict.

10             The only thing I want to ask you before I bring the

11      jury in to deliver the verdict is if it's a plaintiffs'

12      verdict, the jury is not going to like the idea of having to

13      determine another issue, but I kind of think we should do the

14      punitive damages argument tonight and get them out of here.

15             Anyone have a different feeling?

16             MR. BALESTRIERE:  We're ready to go forward if

17      that's what it is, Your Honor.

18             MR. McDONALD:  We are, as well, Your Honor.

19             THE COURT:  Okay.

20             All right, let's have the jury, please.

21             (Pause in the proceedings.)

22             (Jury enters the courtroom at 4:07 p.m..)

23             THE COURT:  All right, have a seat, ladies and

24      gentlemen.

25             We have your note saying that you have reached a

Proceedings                                                2189

1    unanimous verdict.

2           Who is your foreperson?

3           All right, is it correct that you have reached a

4    unanimous verdict?

5           THE FOREPERSON:  Yes, Your Honor, it is.

6           THE COURT:  All right, will you please give the form

7    to Mr. Jackson.

8           THE COURTROOM DEPUTY:  Thank you.

9           (Pause.)

10          THE COURT:  Okay, ladies and gentlemen, what I'm

11   going to do now is referred to as publishing the verdict.

12   That simply means that I am going to read it out loud.

13          Please listen carefully because when I'm done,

14   either side has the ability to ask me to ask each one of you

15   individually whether it represents your true and accurate

16   verdict.

17          All right, as to plaintiff Natasha Tagai on Claim 1:

18          Did the defendant in at least one instance engage in

19   sex trafficking?

20          And I will abbreviate the rest of the question.

21          As to Mr. Rubin, the jury checked yes.

22          As to Ms. Powers, the jury checked no.

23          Question 2:  Is plaintiff Tagai entitled to

24   compensatory damages for this claim?

25          The jury checked yes.  They then listed the amount

SAM      OCR      RMR      CRR      RPR

Proceedings                                           2190

1    of compensatory damages of 500-thousand dollars.

2             Claim 2:  Did defendant Howard Rubin assault

3    plaintiff Tagai?

4             The jury answered no.

5             Claim 3:  Battery?

6             The jury answered no.

7             Claim 4:  False imprisonment?

8             The jury answered no.  And so no additional damages

9    were listed.

10            As to plaintiff Brittany Reyes against both

11   defendants:

12            Did the defendant in at least one instance engage in

13   sex trafficking?

14            As to defendant Rubin, the jury checked yes.

15            As to defendant Powers, the jury checked no.

16            As to Question 2:  Is plaintiff Reyes entitled to

17   compensatory damages for this claim?

18            The jury wrote yes, and put in an amount of

19   500-thousand dollars.

20            As to plaintiff Brittany Hassen, Claim 1:

21            Did the defendant in at least one instance engage in

22   sex trafficking, et cetera?

23            That is as to defendant Rubin only, and the jury

24   checked yes.

25            Question 2:  Is plaintiff Hassen entitled to

Proceedings                                                     2191

1   compensatory damages for this claim?

2            The jury checked yes, and filled in the amount of

3   500-thousand dollars.

4            As to plaintiff Emma Hopper, Question 1:

5            Did the defendant in at least one instance engage in

6   sex trafficking, et cetera?

7            As to defendant Rubin, the jury checked yes.

8            As to defendant Powers, the jury checked no.

9            Question 2:  Compensatory damages, the jury checked

10  yes, plaintiff Hopper is entitled to them, and put in an

11  amount of 500-thousand dollars.

12           As to plaintiff Lytell, Question 1:

13           Did the defendant engage in sex trafficking?

14           The jury as to defendant Rubin checked yes.

15           As to defendant Powers, check no.

16           Question 2:  Is plaintiff Lytell entitled to

17  compensatory damages?

18           The jury checked yes, and put in the amount of

19  500-thousand dollars.

20           As to plaintiff Amy Moore, Question 1:

21           Did the defendant engage in at least one instance of

22  sex trafficking?

23           As to defendant Rubin, the jury checked yes.

24           As to defendant Powers, the jury checked no.

25           As to Question 2:  Is plaintiff Moore entitled to

SAM      OCR      RMR      CRR      RPR

Proceedings                                          2192

1    compensatory damages?

2              The jury checked yes, 500-thousand dollars.

3              As to Claim 2, the assault claim, the jury checked

4    no.

5              As to Claim 3, the battery claim, the jury checked

6    yes.

7              As to Claim 4, false imprisonment, the jury checked

8    no.

9              As to Claim 5, intentional infliction of emotional

10   distress, the jury checked no.

11             And then as compensatory damages for Claims 2 to 5,

12   the jury wrote in zero dollars.

13             All right.

14             Either side want me to poll the jury?

15             MR. BALESTRIERE:  We do not need that, Your Honor.

16             MR. McDONALD:  Yes, Your Honor.

17             THE COURT:  All right.

18             Juror Number One, is the verdict as I have read it,

19   does it represent your true and accurate verdict?

20             JUROR NUMBER ONE:  Yes, Your Honor.

21             THE COURT:  All right.

22             Juror Number Two, how about you?

23             JUROR NUMBER TWO:  Yes, Your Honor.

24             THE COURT:  Juror Number Three?

25             JUROR NUMBER THREE:  Yes, Your Honor.

Proceedings                                                    2193

1          THE COURT:  Juror Number Four?

2          JUROR NUMBER FOUR:  Yes, Your Honor.

3          THE COURT:  Juror Number Five?

4          JUROR NUMBER FIVE:  Yes, Your Honor.

5          THE COURT:  Juror Number Six?

6          JUROR NUMBER SIX:  Yes, Your Honor.

7          THE COURT:  Juror Number Seven?

8          JUROR NUMBER SEVEN:  Yes, Your Honor.

9          THE COURT:  And Juror Number Eight?

10         JUROR NUMBER EIGHT:  Yes, Your Honor.

11         THE COURT:  All right, thank you, ladies and

12    gentlemen.

13         Now, as a result of the verdict, there is one more

14    short issue we need you to determine.

15         The parties have a short window, like no more than

16    half an hour each to put evidence on this issue before you and

17    then have you deliberate again and decide what you want to do

18    with it.

19         This is called the issue of punitive damages.  When

20    someone is awarded compensatory damages in a case like this,

21    the plaintiff has the right to ask for an additional award of

22    punitive damages.

23         I will give you instructions on how you determine if

24    the plaintiffs are entitled to punitive damages, but for now

25    let me start with the plaintiffs and hear from them as to the

Proceedings                                     2194

1   additional evidence.

2            MR. BALESTRIERE:  Thank you, Your Honor.

3            I'd like to call Mr. Rubin to the stand please, Your

4   Honor.

5            THE COURT:  All right.

6            All right, Mr. Rubin, you are still under oath.

7            (Witness takes the stand.)

8            You may proceed.

9            MR. BALESTRIERE:  Thank you, Your Honor.

10

11

12           (Continued on the following page.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Rubin - direct (punitive damages) - Balestriere    2195

1  **HOWARD RUBIN**,

2      called as a witness by the Plaintiff, having been

3      previously duly sworn/affirmed by the Courtroom Deputy,

4      was examined and testified further under oath as follows:

5  DIRECT EXAMINATION

6  BY MR. BALESTRIERE:

7  Q    Good afternoon, sir.

8          Sir, I had the opportunity to depose you on

9  October 25th, 2018, correct?

10  A    I believe that was the date, yes.

11  Q    At the time you testified under oath that your financial

12  net worth was $50 million, is that correct?

13  A    I did, yes.

14  Q    I asked you, as well, some questions about what your

15  actual income was in the years prior to that.

16          Do you remember that, sir?

17  A    Vaguely.

18  Q    I think your testimony was that in the years leading up

19  to that, your salary, your income, was in the neighborhood of

20  $1 million plus bonuses, at least while you worked for Soros;

21  is that correct?

22  A    That's correct.

23  Q    And what is Soros or what is the full name of Soros?

24  A    Soros Fund Management.

25  Q    The jury maybe knows what this is, but what's a fund

Rubin - direct (punitive damages) - Balestriere    2196

1    manager?

2    A    It's -- it's somebody who manages other people's money.

3    Q    And you were, bluntly, one of the top managers at Soros

4    Fund Management for a while, is that correct?

5    A    I was one of twenty managers at the firm.

6    Q    And you were a very high performing manager, correct?

7    A    I mean, I'm not sure how to answer that question.

8    Q    You did a good job when you worked at Soros, right?

9    A    Yes, I did.

10   Q    There's been some recent discovery, I can show you this

11   information if need be, but beyond what you testified to as

12   your financial net worth in 2018, isn't it correct that your

13   income in 2017 was about one-and-a-half million dollars?

14   A    That would sound approximately right, but, you know, I

15   don't have a document in front of me, but it would sound

16   approximately in the neighborhood.

17        MR. BALESTRIERE:  Your Honor, may I ask, shown to

18   counsel and the court and to Mr. Rubin --

19        THE WITNESS:  Could I have some water?

20        THE COURT:  We'll get you some water.

21        MR. BALESTRIERE:  Sure.  May I approach, Your Honor?

22        THE COURT:  Yes.

23        MR. BALESTRIERE:  Here you go, sir.  It's not

24   opened.

25        THE WITNESS:  Thanks.

SAM      OCR      RMR      CRR      RPR

Rubin - direct (punitive damages) - Balestriere   2197

1           MR. BALESTRIERE:  So, Your Honor, I was asking that

2   Exhibit 302 be shown to the Court and counsel and to

3   Mr. Rubin, of course.

4           THE COURT:  Where is it?

5           THE COURTROOM DEPUTY:  Are you connected, sir?

6           MR. MINHAS:  Yes, I am connected.

7           MR. BALESTRIERE:  It doesn't look like it's coming

8   up yet, but we are --

9           THE COURT:  I think it's coming up now.  Okay,

10  witness only.

11          THE COURTROOM DEPUTY:  Yes, sir.

12  BY MR. BALESTRIERE:

13  Q    Sir, do you see --

14          MR. BALESTRIERE:  And counsel should this see this

15  as well.

16  Q    -- this one page, it says Tax Reform Impact Summary, but

17  it lists your income, correct, in the yellow highlight?

18  A    That's correct.

19  Q    And then it has your taxes in the neighborhood of 359,000

20  on an income of 1.54 million, is that correct?

21  A    Yes.

22          MR. BALESTRIERE:  Your Honor, I'd move for the

23  admission of, and I'm fine with counsel if they want to

24  restrict this to, at least, this page, which I represent is

25  part of Mr. Rubin's tax return.

Rubin - direct (punitive damages) - Balestriere    2198

1          MR. ROSENBERG:  No objection.

2          THE COURT:  Received.

3          (Defense Exhibit 302 was received in evidence.)

4   BY MR. BALESTRIERE:

5   Q    Similar questions then, sir, regarding the next.

6          MR. BALESTRIERE:  And to move it along, I don't want

7   to take too much time with the jury here.

8          (Exhibit published.)

9          MR. BALESTRIERE:  Mr. Minhas, can you show -- so,

10  Mr. Jackson, this is going to be just right now to Mr. Rubin,

11  it's not in evidence yet, 303.

12         I am just going to stand near my colleague, if

13  that's okay, Judge?

14         THE COURT:  Okay.

15         MR. BALESTRIERE:  Thank you.

16  Q    Now you see in front of you 303.  Do you see that, sir?

17  A    Yes, I do.

18  Q    And so, in 2018, your income was about $2.1 million with

19  taxes of about $477,000; correct, sir?

20  A    That's correct.

21         MR. BALESTRIERE:  I move for the admission, again,

22  of just this page.

23         MR. ROSENBERG:  No objection.

24         THE COURT:  Received.

25         THE COURTROOM DEPUTY:  Publish, Judge?

SAM     OCR     RMR     CRR     RPR

Rubin - direct (punitive damages) - Balestriere   2199

1           THE COURT:  Yes.

2           (Defense Exhibit 303 was received in evidence.)

3           (Exhibit published.)

4           MR. BALESTRIERE:  Thank you.

5           So, actually we can take that down.

6           Mr. Jackson, this is going to be just to Mr. Rubin

7    and to counsel.

8              Two more of these.

9    BY MR. BALESTRIERE:

10   Q    In 2019, sir, do you see it in front of you there, your

11   income was 1.75 million, with taxes of approximately 398,000;

12   correct?

13   A    That's correct.

14          MR. BALESTRIERE:  So, this is 304, Your Honor.  I

15   move for the admission of 304, please.

16          MR. ROSENBERG:  No objection.

17          THE COURT:  Received.

18          (Defense Exhibit 304 was received in evidence.)

19          MR. BALESTRIERE:  And just for the record, since I

20   may not have said this, I'm sorry, the two prior were 302 and

21   303.

22          THE COURT:  Yes.

23          MR. BALESTRIERE:  Obviously, defense has a copy of

24   this.

25          THE COURT:  Yes.

Rubin - direct (punitive damages) - Balestriere    2200

1      MR. BALESTRIERE:  Mr. Jackson, now I'm going to show

2  something just for Mr. Rubin again.

3      Okay, so now I'd ask Mr. Minhas to put up 305 for

4  the witness and the Court and counsel.

5  BY MR. BALESTRIERE:

6  Q    Sir, in 2020 your income was 830,000 with taxes of about

7  137,000, right?

8  A    That's correct.

9      MR. BALESTRIERE:  I move for the admission, Your

10  Honor, of 305.

11      MR. ROSENBERG:  No objection.

12      THE COURT:  Received.

13      (Defense Exhibit 305 was received in evidence.)

14      MR. BALESTRIERE:  Thank you.

15      (Exhibit published.)

16      MR. BALESTRIERE:  Again, this next one is going to

17  be just for Mr. Rubin and counsel; 301, please.

18  BY MR. BALESTRIERE:

19  Q    So, sir, let me ask you, I guess just about six weeks ago

20  you swore that the gross value of your financial net worth was

21  $51,485,179, is that correct?

22  A    Yes, I did.

23  Q    And you see in front of you here what I've marked 301 --

24      MR. BALESTRIERE:  The Court and counsel can see

25  this.

SAM    OCR    RMR    CRR    RPR

Rubin - direct (punitive damages) - Balestriere   2201

1  Q    -- which is a document which you signed under oath;

2  correct, sir?

3  A    That's correct.

4       MR. BALESTRIERE:  May I ask that this -- I move for

5  this, this is 301 into evidence.

6       MR. ROSENBERG:  No objection.

7       THE COURT:  Received.

8       (Defense Exhibit 301 was received in evidence.)

9       MR. BALESTRIERE:  Thank you.

10      (Exhibit published.)

11      MR. BALESTRIERE:  May I ask that Defendants' Exhibit

12  A be shown?  This is in evidence.

13      (Exhibit published.)

14      MR. BALESTRIERE:  So, I'm sorry, you know what, I

15  had it 307.  It's the same one.  So, maybe just for a moment,

16  show the Court and counsel, 307.

17      This is Defendants' Exhibit A; Mr. Rosenberg, Ms.

18  Lavigne-Albert, if you'd agree?  I guess, Mr. Rosenberg.

19      MR. ROSENBERG:  I see Defense Exhibit A on the

20  screen.

21      MR. BALESTRIERE:  Yes.

22      THE COURT:  Okay, that's in, right?

23      MR. BALESTRIERE:  Yes, it is, Your Honor, I believe.

24  So, this can be published as well.

25      Thank you, Mr. Jackson.

SAM      OCR      RMR      CRR      RPR

Rubin - direct (punitive damages) - Balestriere     2202

1              (Exhibit published.)

2    BY MR. BALESTRIERE:

3    Q    And this lists all of the payments that you made to the

4    plaintiffs in this case, correct?

5    A    That -- yes, that is correct.  You know, there were some

6    payments to Natasha Tagai pre-2015 that aren't on this

7    document.

8    Q    Right.  So, the first one we have for Ms. Tagai is from

9    February of 2015, correct, sir?

10   A    That's correct.

11   Q    And I'm not going to ask you or anyone to do the math,

12   but this -- besides this what I would represent is in the

13   neighborhood of over 140,000, you also paid for flights for

14   different plaintiffs for them to come, correct?

15   A    For some of the plaintiffs, correct.

16   Q    And you also were paying $15,000 a month to Jennifer

17   Powers, correct?

18   A    That is correct.

19   Q    And then, of course, you had the penthouse where you

20   brought the plaintiffs, correct?

21   A    That is correct.

22           MR. BALESTRIERE:  So, I ask, Mr. Jackson, this is

23   just for Court and counsel, this is Defendants' -- excuse me,

24   Plaintiffs' Exhibit 308.  This is an e-mail which the Court

25   has seen before, Your Honor, but in the bottom yellow

Rubin - direct (punitive damages) - Balestriere     2203

1   highlight it was redacted previously.  It's now unredacted.

2            I move for the admission of this.

3            MR. ROSENBERG:  Objection, relevance.

4            THE COURT:  Tell me the bottom part.

5            No, the objection is overruled, the document is

6   admitted.

7            (Plaintiffs' Exhibit 308 was received in evidence.)

8            MR. BALESTRIERE:  So, this can be published.

9            Thank you, Your Honor.

10           (Exhibit published.)

11  BY MR. BALESTRIERE:

12  Q    So, this here, sir, do you remember seeing this, it came

13  up, but it was redacted, during Jennifer Powers's testimony;

14  do you remember that, sir?

15  A    I do remember.

16  Q    And there --

17           MR. BALESTRIERE:  Can you below up, Mr. Minhas, on

18  the bottom a little bit, this 76A?

19           Thank you.

20  Q    So there --

21           MR. BALESTRIERE:  And just move it up a little bit,

22  I want the jury to see, again, to remember who this is from.

23  Just a little more, please.  There we go.  Thank you.

24  Q    So, this is from Alexander Glibbery, who was somehow

25  associated with the building, The Metropolitan Tower, correct?

SAM      OCR      RMR      CRR      RPR

Rubin - direct (punitive damages) - Balestriere    2204

1    A    I believe he's associated with the owner, not the -- the

2    person who rented me the apartment.

3    Q    And so, he's associated with the owner of 76A, which is

4    the penthouse we heard so much about, correct, Your Honor --

5    correct, Mr. Rubin?

6    A    That's correct.

7    Q    And here, while you did not purchase the penthouse, at

8    this point Mr. Glibbery is saying that it would be available

9    for sale of over 6 million dollars, correct?

10   A    That's what he's saying, correct.

11          MR. BALESTRIERE:  Now, can you move up a little bit,

12   Mr. Minhas, please?

13   BY MR. BALESTRIERE:

14   Q    And Ms. Powers you didn't buy it, but Ms. Powers does

15   write to Mr. Glibbery:  I will run all the following by Boss

16   Man, right?

17   A    She does say that, correct.

18   Q    Thank you.

19          MR. BALESTRIERE:  May I ask that -- that can be

20   taken down.  Exhibit 309 shown.  Just -- thank you,

21   Mr. Jackson.  Just to counsel and the Court.

22          I'm sorry, I may have said the wrong one, 3 -- no,

23   309?

24          THE COURT:  All right, we need to take a convenience

25   break, ladies and gentlemen.

Rubin - direct (punitive damages) - Balestriere   2205

1            Let's adjourn for just five to ten minutes, please.

2   Use the convenience and then line right back up in the hall.

3            (Jury exits.)

4            THE COURT:  All right, I am going to ask Mr. Jackson

5   to stay out in the hall.  As soon as they're ready, we'll

6   bring them back in.  We'll be in recess until then.

7            All right, Mr. Rubin, you may step down.

8            (Witness steps down.)

9            (Recess taken.)

10           (In open court - jury not present.)

11           (Jury enters.)

12           THE COURT:  Be seated.

13           Please continue.

14           MR. BALESTRIERE:  Thank you, Your Honor.

15           So, I've shown to counsel, I'm actually not sure

16   their view on Exhibit 308.

17           Mr. Rosenberg.

18           MR. ROSENBERG:  I believe it's 309.

19           MR. BALESTRIERE:  309, he's right.

20           MR. ROSENBERG:  We object.

21           THE COURT:  I agree.  Sustain that.

22           MR. BALESTRIERE:  We can move on.

23           Then maybe even before I ask questions of Mr. Rubin,

24   310, Mr. Rosenberg?

25           MR. ROSENBERG:  We would also object to 310.

SAM     OCR     RMR     CRR     RPR

Rubin - direct (punitive damages) - Balestriere    2206

1          MR. BALESTRIERE:  Okay, we can take that down and

2    then I'll maybe just ask some questions.  Actually, no, keep

3    that up for Mr. Rubin.

4          THE COURT:  You're maintaining the offer?

5          MR. BALESTRIERE:  Right now, but I want to ask some

6    questions of Mr. Rubin first.

7          THE COURT:  Okay.  So, at this point you're not

8    offering it?

9          MR. BALESTRIERE:  Not yet, I'd like to ask some

10   questions.

11         THE COURT:  Go ahead.

12         MR. BALESTRIERE:  Thank you.

13   BY MR. BALESTRIERE:

14   Q    So, sir, you actually took the job at Soros because, I

15   believe you testified at your deposition, that it was a good

16   financial opportunity because it was the beginning of the

17   financial crisis in 2008, correct?

18   A    That's correct.

19   Q    And certainly high net worth investors had found the last

20   couple of years to be a good financial opportunity, isn't that

21   true?

22   A    It's -- you're asking me about --

23   Q    My question is you did a good job at Soros, right?

24         THE COURT:  He said that.  What's the next question?

25   Q    So, then you know how investing works, right?

Rubin - direct (punitive damages) - Balestriere    2207

1   A     I do.

2   Q     You know what the S&P 500 is?

3   A     Yes, I do.

4   Q     And are you aware that since you testified in October

5   2018, the S&P 500 alone has gone up 60 percent?

6                MR. ROSENBERG:  Objection.

7                THE COURT:  Sustained.

8   BY MR. BALESTRIERE:

9   Q     Do you know how much it's gone up?

10               MR. ROSENBERG:  Same objection.

11  A     No --

12               THE COURT:  He answered no.

13  Q     You said no, you don't.

14               So, even though you have -- you're still an investor

15  right now, right?

16  A     Correct.

17  Q     You make a lot of your money through investments, right?

18  A     I try to, yes.

19  Q     And your testimony is that you don't know how much this

20  basic stock index, the S&P 500, has gone up since 2018; is

21  that your testimony?

22               MR. ROSENBERG:  Objection.

23               THE COURT:  Overruled.

24  A     It sounds like your --

25  Q     Sir, I want to know what your testimony is.

SAM      OCR      RMR      CRR      RPR

Rubin - direct (punitive damages) - Balestriere    2208

1           Are you saying you -- do you -- you have no idea how

2    much the S&P 500 has gone up --

3           MR. ROSENBERG:  Objection.

4    Q    -- since October 2018, is that correct?

5           THE COURT:  Overruled.

6    A    I know the S&P 500 is higher.

7           Does that answer your question?

8    Q    Not completely.

9    A    I do not know the exact number as you seem to be

10   implying.

11   Q    Well, you're an investor, this is what you do.

12          What is your estimate as to how much the S&P 500 has

13   gone up since October 2018 when you testified that your

14   financial net worth was $50 million, what is your estimate,

15   sir?

16   A    You've now colored my feeling --

17   Q    Sir, can you please answer the question, please.

18          What is your estimate?

19          That's what I'm asking.  I see you looking at your

20   counsel, I'm just asking your estimate.

21   A    (No response.)

22   Q    That's the question, sir, your estimate?

23          MR. ROSENBERG:  Objection.

24          THE COURT:  If you're able to estimate reasonably

25   how much the S&P 500 has gone up since October 2018, you can

Rubin - cross (punitive damages) - Rosenberg    2209

1   do that.  If you're unable to estimate, just tell him.

2   A    I am unable to estimate because I don't have the dates in

3   front of me.

4   Q    That's fine, sir.

5   A    I'm unable to answer.

6          MR. BALESTRIERE:  I'm done then, Your Honor.  Thank

7   you.

8          THE COURT:  All right.

9          MR. BALESTRIERE:  Thank you, Mr. Rubin.

10         THE COURT:  Any cross?

11         MR. ROSENBERG:  Briefly.

12         THE COURT:  All right, do you want me to waive scope

13   restriction and that will be it?

14         MR. ROSENBERG:  Yes, Your Honor.

15         THE COURT:  Okay.

16         MR. ROSENBERG:  Thank you.

17         THE COURT:  All right, ladies and gentlemen, this is

18   both cross-examination of the witness and direct examination,

19   so that the defendant doesn't have to recall him during its

20   case.

21         MR. ROSENBERG:  Your Honor, if I may just grab one

22   exhibit.

23   CROSS-EXAMINATION

24   BY MR. ROSENBERG:

25   Q    Mr. Rubin, you were shown Exhibit 301, which is your Net

Rubin - cross (punitive damages) - Rosenberg      2210

1   Worth Statement.

2   A    Correct.

3   Q    Just in order to keep this short, it has two columns;

4   one, gross value, and the other liquidation or sale value.

5          Can you explain the difference between those two?

6   A    Sure.  It's fairly straightforward.  You own something.

7   You sell it.  You owe taxes.  How much you have left after you

8   sell it.

9   Q    Okay, and so the gross value is the amount that you have

10  before selling it?

11  A    Correct.

12  Q    Okay.  And the liquidation, of course, is -- takes into

13  account all the taxes that would be applied if you were to

14  sell it to make a payment, correct?

15  A    That's correct.

16  Q    Okay.  And a liquidation value is approximately

17  21.5 million?

18  A    That's correct.

19  Q    Okay.  Now, Mr. Rubin, do you recall there were a series

20  of questions from Mr. Balestriere about how much money you

21  made in the last several years and how much money you have

22  now?  Do you recall?

23  A    Yes, I do.

24  Q    Now, during those years from 2017 until today, have you

25  had significant expenses that you've had to pay?

Rubin - cross (punitive damages) - Rosenberg      2211

1   A    I have.

2   Q    Okay.  And did those include family expenses and upkeep

3   expenses for homes and family members?

4   A    Those do include them.

5   Q    Okay.  Now, sir, turning to a different matter.

6        Did you ever intend in your encounters with each of

7   the plaintiffs to exceed their consent?

8   A    No, not at all.  Never.

9   Q    And beyond the bruises that you knew you would inflict

10  upon the plaintiffs in the BDSM, did you ever intend to harm

11  them in any other way?

12  A    No, never.

13  Q    Now, we saw a number of devices and sex devices, things,

14  there's been a lot of testimony about that.

15       Did you buy those from -- where did you buy those

16  devices?

17  A    Either from specialty sex stores in Manhattan or, as I

18  mentioned previously, on -- specialty online sex stores.

19  Q    Okay.  And did you understand the practices that you

20  engaged in with the plaintiffs were commonly engaged in by

21  others in the BDSM community?

22  A    I did.

23  Q    Okay.  And did you understand that those sex devices were

24  meant for BDSM?

25  A    Yes, exactly.

Rubin - cross (punitive damages) - Rosenberg    2212

1  Q    And the same question with respect to the equipment that

2  we heard so much about.

3          Were those also purchased from sex stores or online

4  sex stores?

5  A    Correct.

6  Q    Okay.  And did you understand that they were also to be

7  used, and attempt to be used, in BDSM?

8  A    Exactly right.

9  Q    Okay.  Sir, did you ever, other than in -- during the

10  BDSM encounters, did you ever threaten any of the plaintiffs

11  in any instance?

12  A    I -- I never threatened them outside BDSM or threatened

13  them during BDSM.

14  Q    And did you always understand that the activities you

15  were engaged in were engaged in with consent of your partner?

16  A    A hundred percent.

17  Q    Okay.

18          MR. ROSENBERG:  Your Honor, if I may just have one

19  moment to confer with my colleagues?

20          THE COURT:  Yes.

21          MR. ROSENBERG:  Okay.

22          (Pause.)

23          MR. ROSENBERG:  Nothing further, Your Honor.  Thank

24  you.

25          THE COURT:  Any further evidence from plaintiff?

Punitive Damages Summation - Balestriere          2213

1          MR. BALESTRIERE:  No, Your Honor; no questions.

2          THE COURT:  Plaintiff has rested.

3          Any further evidence from defendants?

4          MR. ROSENBERG:  No further evidence.

5          THE COURT:  All right, both sides have rested.

6          Closing argument, five minutes, Mr. Balestriere.

7          MR. BALESTRIERE:  Thank you, Your Honor.

8          May I move this, Your Honor?

9          THE COURT:  Sure.

10   PLAINTIFFS' PUNITIVE DAMAGES SUMMATION:

11          MR. BALESTRIERE:  May I ask Mr. Minhas and

12   Mr. Jackson to put up a slide deck.

13          Good afternoon, everyone.  Thank you for all the

14   time that you put into this and given the plaintiffs a fair

15   hearing.

16          I said at the opening, I said it a few days ago,

17   that's all I wanted.  I will not take a lot of your time.

18          Next slide, please.

19          The judge is going to instruct you on how to proceed

20   here, but I think the evidence you've seen in this trial, not

21   this afternoon, this was just about what -- I hate the term

22   net worth when we're talking about money like that's all

23   people are is their money -- financial net worth, that's all

24   today was about.  But the conduct you saw by Mr. Rubin was

25   reckless and malicious.  He wanted to hurt vulnerable women.

Punitive Damages Summation - Balestriere          2214

1          Next slide please.

2          He showed an utter disregard for their safety.  I

3    mean he just -- he didn't care.  That's what the evidence that

4    you saw over the last more than two weeks has shown you.  He

5    hurt them physically, emotionally, and psychologically.

6          And I ask you to keep in mind, this is a very bright

7    guy.  He knew what he was doing.  Right?  He said he did a

8    very good job at this fund manager.  He went to Harvard

9    Business School.  And we see him laughing in those texts, many

10   times.  You may have been looking at this the last couple of

11   days.  He knew what he was doing.  The only rights that he

12   cared about were his own.

13         Next slide please.

14         And the evidence shows that he deserves to be

15   punished for his shocking and offensive conduct.  He viewed

16   the victims as objects, not people.  I mean this is a civil

17   case.  You awarded some money already.  I'm asking you to

18   award something more to punish him.

19         It kind of stinks in some ways that we're just

20   talking about money here, but you do need to award some or,

21   rather, it's up to you, but if you do award something you have

22   to come up with a number.  And I ask you to keep this in mind:

23   He viewed the victims here as objects.

24         Next slide please.

25         And so, you can set an example so that others think

SAM      OCR      RMR      CRR      RPR

Punitive Damages Summation - Balestriere          2215

1    twice before they do what Mr. Rubin did here.

2            Next, please.

3            So, the evidence shows that his financial net worth

4    is, at least, $50 million.  You heard some parsing about that

5    this afternoon, but I ask you to keep in mind that he's made

6    millions in income since October 2018 and that he is a smart,

7    successful investor.

8            A lot of people maybe are not as well off as they

9    were in October 2018, but, quite frankly, it's hard to believe

10   that he is not in a much, much better situation.  And I'm,

11   frankly, saying since the evidence has showed he's lied to you

12   before, he probably lied right now.

13           Next slide.

14           He said that he wanted to go to the deposition so

15   that he could hear what lies the women were going to say about

16   him.

17           Next slide.

18           But the evidence showed that he lied.  And he lied

19   right here before you.  He lied about Natasha Tagai on

20   October 1st, this says 2017, my error, it's 2015.  That's when

21   said he didn't even meet her because he's smart.  He looked at

22   the texts and thought:  Oh, I can make an argument.  But, in

23   fact, he'd admitted years before that he did meet her then.

24   He lied about that.

25           He got caught in a lie about what safe words he

SAM      OCR      RMR      CRR      RPR

Punitive Damages Summation - Balestriere          2216

1   used.

2          He -- he, working with his lieutenant, as I call her

3   here, destroyed evidence.  She may not be liable, but he was

4   her boss man and it's very hard to believe she would have done

5   what she did without getting direction from him.

6          Next slide.

7          He lied about the women, the victims, not being able

8   to speak through ball gags or that they could pull their hands

9   through the tapes or the cuffs.  Where you saw where Mr. Rubin

10  is sitting right now on the first day of trial, Natasha Tagai,

11  I had to go up to her and wrap her wrists up, she could not

12  pull them through.

13         He also had this lie that the -- the non-stick tape

14  or cuffs somehow caused injuries that were visible.  When I

15  made the argument that no, he did that on purpose so the women

16  getting on and off planes, they wouldn't be visible.

17         Next slide.

18         He lied about making a payment to the victim in cash

19  the first time.  He lied when he said that he never called

20  Jennifer Powers a psychologist.

21         Next slide.

22         He lied about texting Brittany Hassen in

23  September 2014.  Ms. Powers confirmed that those NDAs you

24  heard way too much about in the last couple of weeks were

25  always kept in the safe, at the penthouse, or she has copies

Punitive Damages Summation - Balestriere          2217

1   at her house.  Yet, he said they were out at this Rick's

2   Cabaret, let's text Brittany Hassen for her to come.  Yet, she

3   signed answer NDA.  He said he didn't remember any injuries.

4   That was a lie when he was shown that he had texts where he

5   acknowledged injuries.

6            He was an expert liar for years.

7            Next slide.

8            So, what he said today about his financial net

9   worth, it's got to be more, quite frankly.  I think the

10  evidence showed it's probably even more than the 50 million

11  because he's trying to downplay it with his liquidation value

12  and so forth.

13           I said to you when it came to compensatory damages

14  it's up to you, and I thank you for all the consideration

15  you've given.  It's the same thing here.  You know, I'm not

16  going to give you a number, X is the number you should choose.

17  The eight of you, again, if you do choose a number, to punish

18  him, but it should be enough to punish him and enough to deter

19  others like him.

20           Thank you again very much for your consideration on

21  behalf of the plaintiffs.

22           Thank you, Your Honor.

23           THE COURT:  Mr. Rubin, I should have had you step

24  down.

25           THE WITNESS:  Oh, sorry.

1          (Witness steps down.)

2          THE COURT:  All right.  Please proceed.  Closing

3    argument, Mr. McDonald.

4    DEFENDANTS' PUNITIVE DAMAGES SUMMATION:

5          MR. McDONALD:  Good afternoon.

6          So, the -- Judge Cogan will be instructing you

7    momentarily on what the standard is for your determination of

8    whether or not there should be punitive damages.  And he'll

9    tell you, and the judge will, obviously, interrupt me if I'm

10   saying something I shouldn't be saying, but as I understand

11   it, he will be telling you -- telling you that you have

12   discretion to award punitive damages and that you're not

13   required to reward punitive damages.

14         He will also tell you that the punitive damages are

15   not supposed to be imposed merely for unreasonable -- to show

16   unreasonable conduct, but it has to be for malicious conduct,

17   reckless conduct, conduct that is -- and this is critical --

18   especially shocking.  That will be language that you'll hear

19   from the judge, especially shocking and offensive conduct.

20         So, we ask that you place his conduct, your finding

21   of wrongdoing, we ask that you place it in context, in the

22   context in which you made your finding.

23         As he just told you, he never intended to harm

24   anyone.

25         (Continued on the following page.)

Punitive Damages Summation - Mr. McDonald          2219

1    (Continuing)

2          MR. McDONALD:    Now, obviously, we disagree on our

3    perceptions of the case, but I think that it's clear that you

4    found that he went too far in every instance with all six

5    plaintiffs, but did he go so far in a way that is shocking and

6    so offensive that it showed maliciousness, and I submit to you

7    that it did not.

8          He said that he engaged in practices that he

9    believed to be common, the normal practices in BDSM.    Now,

10   again, you found that he exceeded what he was -- what the

11   women had consented to.    But he understood these to be

12   practices that were common.

13         These were people who were not someone he met in a

14   social setting or in a bar or restaurant.    These people were

15   professional prostitutes and he had every reason to expect

16   that they were knowledgeable in BDSM practices.    And, in fact,

17   they told him, many of them, if not all of them, told him, and

18   led him to believe that they were knowledgeable about BDSM

19   practices.

20         But with respect to shocking and maliciousness, as I

21   said, in every case they were told, at least in some degree,

22   even in the case of Brittany Reyes, there's evidence she was

23   told by Taren Cassidy what to expect and she acknowledged that

24   she knew he was rough with people.

25         In Brittany Raye Hassen, it's clear that when she

Punitive Damages Summation - Mr. McDonald          2220

1    came in, she knew exactly what to expect.  And, again, you

2    found -- I'm not going to argue with you about what you found,

3    but he exceeded what they had consented to.  He had an

4    expectation that they were knowledgeable and they were

5    accepting of what they were about to do.

6              In addition -- and I think this is critically

7    important, the next two things -- after the encounters were

8    over, with the exception of Brittany Reyes, every one of them

9    praised him excessively.  They went on and on about how

10   wonderful it was, what a great time they had.  Now, maybe they

11   were lying to him, maybe they were crazy, or maybe you felt

12   that they were under his spell or something.  But they praised

13   him.  And in the context of his -- his shocking, whether his

14   conduct was shocking, he was praised for what he did.

15             In addition, they came back.  Every one of them,

16   with the exception of Brittany Reyes, came back.  If his

17   conduct was so offensive that it should be punished beyond

18   compensatory damages, if it was so shocking, then they

19   wouldn't have come back, I submit to you.

20             So I ask that when you consider whether he should be

21   penalized beyond what you have already done, I ask that you

22   consider these things.  I also note that the devices -- and I

23   don't know what your findings were.  I don't know what you

24   found with respect to each woman, whether -- you know, whether

25   devices were used that were beyond what he should have done.

Punitive Damages Summation - Mr. McDonald          2221

1  But if you did, the devices, as we just pointed out on his

2  examination, they were devices that were purchased either

3  online for BDSM practice or they were purchased in sex shops

4  in the city.

5          So, I don't -- I submit again, I submit that this is

6  not something that is so shocking, so offensive that it

7  warrants the imposition of additional damages, additional

8  punishment beyond what he has been punished so far with this

9  verdict, this public judgment that he did wrong and the excess

10  -- and the amount of money that he has already been penalized

11  with regard to the compensatory damages.

12          THE COURT:  Mr. McDonald, please wrap up.

13          MR. McDONALD:  Pardon me?

14          THE COURT:  Please wrap up.

15          MR. McDONALD:  Okay.

16          And that's it.  I probably missed a few things.  As

17  you can see, I'm very upset, and I know I have missed some

18  arguments.  If there are other arguments that I could have

19  made and that you could think of that I should have made, I

20  think I ask you to think of that when you go in to deliberate.

21          THE COURT:  All right.  Thank you, Mr. McDonald.

22          Ladies and gentlemen, here's the short instruction

23  on punitive damages.  You have the discretion to award, in

24  addition to compensatory damages, punitive damages.

25          You can award punitive damages if the plaintiffs

Punitive Damages Summation - Mr. McDonald        2222

1   prove by a preponderance of the evidence that the defendant's

2   conduct was malicious and reckless, not merely unreasonable.

3   An act is malicious and reckless if it is done in such manner

4   and such circumstances as to reflect utter disregard for the

5   potential consequences of the act on safety and rights of

6   others.

7           The purpose of punitive damages is to punish a

8   defendant for shocking conduct and to set an example in order

9   to deter him and others from committing similar acts in the

10  future.

11          The awarding of punitive damages is within your

12  discretion.  You are not required to award them.  Punitive

13  damages are appropriate only for especially shocking and

14  offensive misconduct.

15          If you decide to award punitive damages, you have to

16  use sound reason in setting the amount.  It must not reflect

17  bias, prejudice, or sympathy towards any party.  But the

18  amount may be as large you believe necessary to fulfill the

19  purpose of punitive damages.

20          In this regard, you may consider the financial

21  resources of the defendant in fixing the amount of punitive

22  damages and you may -- I think I'll stop there.

23          All right.  We will follow the same procedure.  We

24  have a form, a verdict form that we'll give you.  It simply

25  asks one question as to each plaintiff whether this should be

Punitive Damages Summation - Mr. McDonald        2223

1    an award of punitive damages.  If so, how much.

2            We will ask you to start those deliberations now and

3    let us know by the same process when you have reached an

4    unanimous verdict.

5            All right.  Thank you.  You may continue.

6            (Jury exits the courtroom.)

7            THE COURT:  All right.  We will be in recess pending

8    advice from the jury.  Thank you.

9            (Jury exits to begin deliberations at 4:56 p.m.)

10

11           (Continued on the following page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings                                        2224

1            (In open court - jury not present.)

2            (Judge BRIAN M. COGAN entered the courtroom.)

3            THE COURT:  Have a seat, please.

4            Court Exhibit Number 7 says:  We don't think we will

5    reach consensus tonight.

6            Two:  Can we have Emma Hopper's testimony?

7            (Court's Exhibit 7 was received in evidence.)

8            THE COURT:  What I propose to do is bring them in,

9    because it doesn't really say they want to go home, and say to

10   them:  We're here as late as you want us to be.  On the other

11   hand, if you want to go home and come back tomorrow, you can.

12           Okay?

13           MR. BALESTRIERE:  Fine with plaintiffs, Your Honor.

14           MR. McDONALD:  Fine, as well.

15           THE COURT:  All right, let's have them, please.

16           And I guess you'll start putting together the Hopper

17   testimony.

18           MR. BALESTRIERE:  I think, Your Honor, defendants

19   had a good idea earlier of just going through the plaintiffs,

20   and I think we have that.

21           Mr. Rosenberg, am I right?

22           MS. CHIANG:  It is not yet printed.

23           MR. BALESTRIERE:  Okay, but we've gone through it

24   and we, at least, agree.

25           THE COURT:  Okay, good.

Proceedings                                                    2225

1          Can it be printed fast?

2          Do you have a printer here?

3          MS. CHIANG:  We do not.

4          THE COURT:  We do.

5          MS. CHIANG:  Mr. Jackson, was able to print a copy

6   for us before, so if the jury wants to stay, then we can do

7   that.

8          THE COURT:  Okay.  Is there something you wanted to

9   add?

10         MS. McCLELLAN:  Your Honor, it's printed, but it's

11  in our office.  But it's ready to go if the Court can print

12  for us.

13         THE COURT:  Probably faster from here.

14         (Pause in the proceedings.)

15         (Jury enters the courtroom at 5:57 p.m..)

16         THE COURT:  All right, be seated, please.

17         Ladies and gentlemen, we have your note that says:

18  We don't think we'll reach consensus tonight.  And can we have

19  Emma Hopper's testimony?

20         Let me answer the second question first.

21         Of course, the answer is yes.  It has been prepared,

22  we can have it to you within a few minutes.

23         I can't tell from your first question if you're

24  saying you want to go home now and come back tomorrow morning

25  or you want to try to work through it.

Proceedings                                    2226

1          We will stay here as late as you want us to.  On the

2     other hand, if you want to come back tomorrow morning, we're

3     at your disposal.

4          Juror Number One, does the jury have a view on that?

5          JUROR NUMBER ONE:  Can we have white noise for the

6     courtroom?  Can we have a sidebar?

7          THE COURT:  Yes, you can, as a matter of fact, but I

8     can't turn on the white noise --

9          JUROR NUMBER ONE:  You should all experience it,

10    I'll tell you that.

11         JUROR NUMBER TWO:  I'm mentally tapped out.  I can't

12    think.  I'm sorry.

13         JUROR NUMBER ONE:  Tomorrow.

14         THE COURT:  All right, I certainly understand that.

15         All right, then I am going to send you home with the

16    same directions as always about avoiding publicity.

17         We will see you tomorrow morning at 9:30 a.m., and

18    have a good evening.

19         JUROR NUMBER ONE:  We go right there again and start

20    when everyone's there?

21         THE COURT:  The same thing, right, no deliberating

22    until everyone is there.  A good foreman.

23         (The jury exits for the evening.)

24         THE COURT:  Okay, good night.  I'll see you tomorrow

25    morning.

SAM      OCR      RMR      CRR      RPR

Proceedings                          2227

1          MR. BALESTRIERE:   Thank you, Your Honor.

2          (Judge BRIAN M. COGAN exited the courtroom.)

3

4      (Matter adjourned to Thursday, April 7, 2022 at 9:30 a.m.)

5

6

7                          ooo0ooo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2228

1                          **I N D E X**

2

3   **WITNESS** (Punitive Damages)                    **PAGE**

4

5   HOWARD RUBIN

6      DIRECT EXAMINATION BY MR. BALESTRIERE        2195

7      CROSS-EXAMINATION BY MR. ROSENBERG           2209

8

9

10

11          **PUNITIVE DAMAGES SUMMATIONS**           **PAGE**

12

13   Plaintiffs' Summation - Balestriere            2213

14   Defendants' Summation - McDonald               2218

15

16

17

18

19

20

21

22

23

24

25

2229

1                                    **E X H I B I T S**

2

3

4          Court's Exhibit 5                                    2185

5

6          Court's Exhibit 6                                    2188

7

8          Defense Exhibit 302                                  2198

9

10         Defense Exhibit 303                                  2199

11

12         Defense Exhibit 304                                  2199

13

14         Defense Exhibit 305                                  2200

15

16         Defense Exhibit 301                                  2201

17

18         Plaintiffs' Exhibit 308                              2203

19

20         Court's Exhibit 7                                    2224

21

22

23

24

25