

JOHN G. BALESTRIERE
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5401
F: +1-212-208-2613
john.balestriere@balestrierefariello.com
www.balestrierefariello.com

February 27, 2025

**<u>VIA ECF</u>**
Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Moore, et al. v. Rubin*
1:17-cv-06404-BMC

Judge Cogan:

I write on behalf of Balestriere Fariello, which at one time represented all Plaintiffs in this action and presently remains counsel of record for Plaintiffs Lytell, Moore, and Tagai.

I write to (i) provide proof of compliance with this Court's February 25, 2025 order requiring service by mail of the order denying without prejudice Ms. Moore's February 19, 2021 letter motion for release of funds ("the Order"), (ii) given Ms. Moore's February 21, 2025 letter (Dkt. No. 468), to confirm status of Balestriere Fariello's representation, and (iii) to address certain points in Ms. Moore's letter. If the Court wishes I can provide ex parte documents, including communications with clients, to support what I write below.

<u>Compliance With the Order</u>

Pursuant to the Order on February 25, 2025, at my direction a colleague sent a printed copy of the Order, a copy of Ms. Moore's letter dated February 21, 2025, and a copy of Ms. Moore's letter dated February 24, 2025, via FedEx two-day service, under cover of a transmittal letter identifying the enclosed documents. I emailed a copy of the same documents to Ms. Moore on February 25, 2025. Please see attached the FedEx receipt and copy of the documents.

Status of Balestriere Fariello's Representation of Plaintiffs

Owing to a dispute with litigation funder Pravati Capital, LLC ("Pravati"), and after months of discussion with insolvency, litigation, and ethics counsel, Balestriere Fariello began an orderly wind down in August 2024. I advised Ms. Moore, all Plaintiffs in this action, and all now former contingency fee clients of Balestriere Fariello within days of the wind down beginning, making myself available to answer any questions which any Balestriere Fariello client had[1].

This Court granted Balestriere Fariello's motion to withdraw such that as of November 19, 2024, Balestriere Fariello was counsel of record for Plaintiffs Lytell, Moore, and Tagai. However, on December 4, 2024, Ms. Tagai unexpectedly terminated Balestriere Fariello. Given that the only issue before the Court at that time was this Court's determination of the Plaintiffs' Motion for Attorney's Fees and Reimbursement of Costs (Dkt. No. 429-1) and that pursuant to the engagement letter with Ms. Tagai (and all Plaintiffs) once a final judgment was rendered the engagement would end as a matter of contract, I did not seek to trouble the Court with a motion to withdraw (though I was prepared to if circumstances warranted it).

Before sending her letters to the Court (Dkt. Nos. 468 and 469), Ms. Moore had not formally terminated Balestriere Fariello. However, on December 4, 2024, Ms. Moore told me to take direction from her appellate counsel, Brian Isaac, and, on December 4, 2024, I was given direction by Mr. Isaac that I should not take any steps on her behalf. Again, given the procedural posture of the case, I was able to follow such client direction without moving to withdraw. On the evening of February 25, Ms. Moore emailed me to indicate that she was terminating Balestriere Fariello as counsel.

Relations with the final Plaintiff for whom Balestriere Fariello remains counsel of record, Ms. Lytell, have thankfully been nothing but professional and cordial throughout the seven and a half years that I have represented her, and she at no time indicated to me a desire to terminate Balestriere Fariello, nor did she ever give me cause to consider a motion to withdraw from representation of her. However, as with all Plaintiffs, pursuant to the engagement letter with Ms. Lytell, the engagement ended on February 18, 2025, when this Court issued a final judgment (Dkt. No. 467). As with all Plaintiffs and their newly hired counsel, I have remained available if anyone had questions for me that could be relevant to Plaintiffs' appeal, or anything else related to the matter.

[1] To the extent any attorney-client communications are referenced, this disclosure is permitted under New York Rule of Professional Conduct 1.6(b)(5)(i).



Addressing Ms. Moore's February 21, 2025 Letter

I must respectfully write to correct inaccuracies in Ms. Moore's letter. Ms. Moore, like all Plaintiffs, was a victim of sex trafficking years ago, and I understand Ms. Moore's frustration at how long civil litigation takes. I don't believe she intended to besmirch my reputation. But she is respectfully wrong regarding certain facts, as noted below, and, certainly, I have not contradicted myself in any legal filings, nor am I aware of any contradictions in any writings to Ms. Moore or any Plaintiff.

*The Firm's Contingency Fee Lien Has Been Disclosed Consistently for Years*

I have consistently and repeatedly stated that Balestriere Fariello has a lien on any Plaintiff recovery and provided documents regarding this since I shared with Plaintiffs the fact of Balestriere Fariello's impending wind down and dissolution in August 2024. Indeed, Balestriere Fariello first disclosed this to all Plaintiffs in 2017 when language regarding the lien was included in all engagement agreements which all Plaintiffs signed. Balestriere Fariello also indicated the fact of the lien in the motions to withdraw which Balestriere Fariello filed (see Dkt. Nos. 455-1 at ¶5 and 459-1 at ¶8) and which were shared with all Plaintiffs at the time of filling. And this is consistent with New York law. Moreover, I have stated this to Ms. Moore, and others, in at least one phone call, and as many as a dozen emails since August 2024, including emails I sent to Ms. Moore in the last week.

*No Fees Yet Paid to Balestriere Fariello*

As I believe the Court knows, no fees have been paid by any Plaintiffs, nor has there ever been any expectation whatsoever that any Plaintiffs would pay any fees out of pocket. While perhaps obviously Balestriere Fariello hoped to prevail and be awarded fees by the Court or by way of settlement, Balestriere Fariello initiated this action while using fees paid by business litigation clients to prosecute Plaintiffs' claims consistent with Balestriere Fariello's longtime mission to serve the public in litigation as a private law firm. As the Court noted in a recent order, I had the good fortune early in my career to serve as a prosecutor in multiple offices. I brought my experience in organized crime and sex crimes investigation and prosecution, as well as in complex business litigation, to bear in bringing select actions like this one, while still handling business litigation matters.

*Plaintiffs Sought a Contingency Fee Engagement*

As part of this practice, Plaintiffs contacted Balestriere Fariello to ask us to investigate Mr. Rubin's misconduct and eventually asked us to try to seek a remedy from Mr. Rubin, including being ready to proceed to trial, eventually engaging Balestriere Fariello pursuant to a contingency fee engagement agreement which provided that the fees Balestriere Fariello would receive, if any, would be at Balestriere Fariello's election of either a percentage of any recoveries received by Plaintiffs (again, if any) or fees awarded by the Court and actually received (if any). No fees of any kind



have been paid by anyone to Balestriere Fariello for its seven and a half years work in this matter. And, as I believe the Court knows, due to my executing a personal guaranty on behalf of Balestriere Fariello in favor of Pravati, I have declared personal bankruptcy and do not expect to receive any personal payment for my years of work in this case.

*Any Pravati Assertions of Misconduct Are Not Simply False, Pravati Has Never Shown Any Tribunal Any Evidence of Any Misconduct*

Regarding Ms. Moore's reference to certain filings by litigation funder Pravati (I am not sure which filings from review of Ms. Moore's letter), besides disputing any assertions of Pravati – which contacted Balestriere Fariello after the action began and sought to provide funding for this action, and others, after there had been some reference in the press to this case – I note that Pravati, which I understand has sued multiple law firms and is possibly in financial distress, has never provided any evidence to support its now years of assertions of misconduct by either me, or my former colleagues at Balestriere Fariello. Indeed, Pravati has lost every time it has gone to any tribunal seeking relief based on purported misconduct. There is no question that Pravati has an arbitration award against Balestriere Fariello which has resulted in acceleration of a loan due to them; but Pravati has failed every time it has attempted to prove there was any misconduct of any kind, since there has been none.

*Ms. Moore and Others Provided Information Regarding Ms. Schnur and Authorized Ms. Schnur's Inclusion in Pleadings*

There is also no question that this Court sanctioned me in 2018 because I believed it appropriate to include a lawyer of Defendant Howard Rubin, Yifat Schnur, in the original pleadings filed in this action based on mine and my colleagues' investigation and analysis. I don't seek review of this Court's order, and when before the Court in July 2018, I took full responsibility for any lawyer decision with regards to inclusion of Ms. Schnur. Nor is there any question, as Ms. Moore notes, that Mr. Rubin has paid for years for Ms. Schnur to sue not only Ms. Moore, but also all Plaintiffs, Balestriere Fariello, me, several former employees of Balestriere Fariello - including a paralegal - and another lawyer and law firm in an action still proceeding in New York County Supreme Court ("the Schnur Action"). But Ms. Moore is respectfully wrong in claiming that my colleagues and I did not rely on Plaintiffs, including Ms. Moore, for information which I believed at the time supported my decision to include Ms. Schnur in the initial pleadings in this case. Moreover, documents disclosed in discovery in the Schnur Action show that all Plaintiffs were provided with final copies of the complaints before they were filed to confirm the facts noted therein, all Plaintiffs confirmed the truthfulness of those facts as best as they understood them, and all Plaintiffs authorized the filing of the complaints.



  To be clear, I am not seeking to unsettle this Court's sanctions order, nor overwhelm this Court with details from interactions that now go back over seven years. Nor am I saying Ms. Moore made – or could have made – the decision which I alone made that there was a legal basis to sue Ms. Schnur; but my colleagues and I did rely on what Plaintiffs told us and received their approval before suing anyone in this action.

*Ms. Moore and Plaintiffs Authorized the Pravati Funding and Agreed to Pay Balestriere Fariello for Any Costs If There Was a Recovery*

  Finally, I do not dispute Ms. Moore's recitation of this Court's order on costs, but note that the engagement letters which Ms. Moore and other Plaintiffs signed provided that any out of pocket costs associated with Balestriere Fariello's representation of Plaintiffs would be, if there is a recovery, the responsibility of Plaintiffs. Moreover, Balestriere Fariello only entered into the initial litigation funding agreement with Pravati where it provided $300,000 to pay for out of pocket expenses (no fees) associated with this action (necessary given Rubin's enormous financial resources and the small size of Balestriere Fariello) after receiving authorization from all Plaintiffs, and providing all Plaintiffs with copies of the agreement which Balestriere Fariello executed with Pravati regarding funding for this case.

  Thank you for your courtesy and consideration of this letter.

                 Respectfully submitted,

                 John G. Balestriere

encl: FedEx receipt, dated February 25, 2025;
   Transmittal Letter and Order sent to Ms. Moore, dated February 25, 2025

cc: Counsel of Record (via ECF)



FedEx
Office

6 Barclay Street
New York, NY 10007-2700
212.406.1860

February 25, 2025 4:37 PM
Receipt #: AYZKN00103554

**PACKAGE DROPPED OFF**

**FedEx Express**
772313883976

Total Packages: 1

Tell us how we're doing:
fedex.com/welisten

Terms and conditions apply, including terms that limit FedEx's liability. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions and other factors. Shipment-related terms and conditions and details on how shipping charges are calculated are available upon request or at fedex.com/serviceguide.

Manually Weighed = (M), Weighed by Scale = (S), Taxable Item = T.

Visit us at: fedex.com
Or call 1.800.GoFedEx
(1.800.463.3339)

AYZKN0012025022503554



JOHN G. BALESTRIERE
BALESTRIERE FARIELLO
225 Broadway, 29th Floor
New York, New York 10007
T: +1-212-374-5401
F: +1-212-208-2613
john.balestriere@balestrierefariello.com
www.balestrierefariello.com

February 25, 2025

**VIA FEDEX and EMAIL (amynicolem82@gmail.com):**
Amy Moore
280 Tuscany Chase Dr.
Daytona Beach, FL 32117

Re: *Moore et al. v. Rubin*
Case No. 1:17-cv-06404-BMC

Amy:

Please see the enclosed Order from Judge Cogan, dated February 25, 2025, regarding two documents: your Letter to Judge Cogan, dated February 21, 2025 and received by the Pro Se Office on February 24, 2025 (ECF Dkt. No. 468), and your Letter to Judge Cogan with the subject line "Request for Direct Payment of Funds", dated February 19, 2025 and received by Judge Cogan's chambers on February 25, 2025 (ECF Dkt. No. 469). Pursuant to Judge Cogan's direction in this Order, we mail you a printed copy of the Order and shall file a proof of doing so.

Sincerely,

John G. Balestriere

encl: Order, dated February 25, 2025;
Letter to Judge Cogan from Amy Moore, dated February 21, 2025 (ECF Dkt. No. 468);
Letter Motion re "Request for Direct Payment of Funds", dated February 19, 2025 (ECF Dkt. No. 469).

New filing in Lawson et al v. Rubin et al: ORDER re: [468] and [469] (nyed-1:2017-cv-06404)

DocketBird <do-not-reply@docketbird.com>
Tue 2/25/2025 12:09 PM
To:Matters <matters@balestrierefirm.com>

**Hello,**

The following text notice was just entered in ***Lawson et al v. Rubin et al***. DocketBird has updated the docket sheet for this case accordingly.

Case: ***Lawson et al v. Rubin et al*** **(nyed-1:2017-cv-06404)**

Court: Eastern District of New York

ORDER re: [468] and [469] Motion for Release of Funds is denied without prejudice. This Court has granted John G. Balestriere's motion to withdraw as counsel as to plaintiffs Brittany Reyes, Emma Hopper, and Brittany Hassen. See 11/19/2024 Text Order. Mr. Balestriere has not moved for withdrawal as to Ms. Moore, and Ms. Moore has not advised the Court that she has terminated Mr. Balestriere as her counsel, so he continues in that role for her (as well as counsel for Mia Lytell and Natasha Tagai). Unless and until the Court hears otherwise, all communications from Ms. Moore therefore must be through Mr. Balestriere. However, if Ms. Moore wants to terminate Mr. Balestriere as her attorney and intends to proceed pro se (without a lawyer), she should file a letter informing the Court. Mr. Balestriere is directed to print out a copy of this Order, mail it to Ms. Moore, and file proof that he has done so. No further response will be made to any direct communications from the parties while they are represented by counsel. However, even if counsel withdraws or is discharged, the Court notes that it is unable to advise plaintiffs as to their rights against their attorney or former attorney. Ordered by Judge Brian M. Cogan on 2/25/2025.

This notification was sent to the following email addresses associated with your company: chezliah.osman@balestrierefirm.com, john.balestriere@balestrierefirm.com, matters@balestrierefirm.com, alexis.pudvan@balestrierefariello.com, rebecca.gonzalez@balestrierefariello.com

You can view the docket sheet in this case by clicking the link above.

If you need any help, don't hesitate to let us know.

Thanks,

Team DocketBird

---

DocketBird ID:
2025/02/25/[$LATEST]85ce3f1867684a1db8a8f88e3067cbd5|67mal1khihdnb187d915f623qkq9qb7icv dkgtg1

You are receiving this notification because Balestriere Fariello added you to the DocketBird distribution list for this case.

Made by **Mink LLC**
Las Vegas, NV


RECEIVED IN THE PRO SE OFFICE
FEB 24, 2025

Amy Nicole Moore
280 Tuscany Chase Dr.
Daytona Beach, FL 32117
Email: AMYNICOLEM82@gmail.com
Phone: 386-453-8530

February 21, 2025

Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: Request for Clarification Regarding John Balestriere's Lien Claims**

Dear Judge Cogan,

I apologize if this is not the appropriate way to bring this matter to your attention, but I am unsure how else to proceed. John Balestriere has stated that he maintains a lien on my recovery, despite already having been awarded attorneys' fees. Given the conflicting information I have received and the impact this may have on my case, I am seeking clarification from the court to ensure my rights are protected.

I was under the impression that Pravati had a lien on our recoveries—not John. However, since you awarded attorneys' fees on February 14, emails from Mr. Balestriere thereafter began conflicting with what was previously understood regarding the status of any alleged lien. This has caused significant confusion as to whether his claim has any legal basis.

On August 14, 2024, Mr. Balestriere abruptly announced that he was dissolving his firm, filing for bankruptcy, and withdrawing as our counsel. The truth of the matter is, I do not know whether what Mr. Balestriere says is true or false, but he stated that the contract we signed with him meant that he did not have to represent us on appeal, which caused confusion and chaos to commence amongst plaintiffs over our ongoing representation, which left us scrambling to try to find an appeals lawyer last minute. Now, despite stating that his firm is dissolving, he claims that his firm still maintains a lien on my recovery. This contradiction has caused significant confusion, as it is unclear how a dissolved firm can still claim to maintain a lien.

Mr. Balestriere has not provided any documentation showing that he has a valid lien, even after being asked multiple times. His refusal to provide proof raises serious concerns about whether this claim has any legal basis or if it is being used as leverage to improperly claim additional funds. Given that he was already awarded attorneys' fees, it is unclear on what grounds he is asserting a lien at this stage.

Additionally, Pravati's Motion to Quash raises further concerns about Mr. Balestriere's financial dealings. The motion states that he is delaying plaintiffs' recovery to protect himself in another litigation and that his actions appear to be part of an ongoing effort to shield himself from financial liability elsewhere. Pravati also confirms that its lien was on Mr. Balestriere himself—not the plaintiffs—which directly contradicts what we were led to believe. The filing further reveals that Mr. Balestriere and his firm owe millions due to an arbitration award against them. It also suggests that he is misusing the legal process for his own financial gain rather than acting in the best interests of the plaintiffs.

Furthermore, I understand that this Court previously sanctioned Mr. Balestriere in the amount of $20,000 for naming Howard Rubin's former attorney, Yifat Schnur, as a defendant in the EDNY case when he should not have. Mr. Balestriere stated that he obtained information from his clients that justified naming Ms. Schnur, but that is not true. Because of this, all of the victims have since been sued by Ms. Schnur in a lawsuit that is being funded by Howard Rubin. As a result, I am having to represent myself pro se in that case due to Mr. Balestriere's continued assertion that his clients provided her name.

I also want to reference the February 14, 2025 Memorandum Decision and the February 18, 2025 Amended Judgment, which awarded attorneys' fees in the amount of $4,815,033.25 and finalized the judgment amounts. My individual judgment was set at $750,000 ($500,000 in compensatory damages and $250,000 in punitive damages). The Court clearly ruled that litigation funding costs were not recoverable and that defendants should not be responsible for how attorneys finance their practice. The Court also noted Mr. Balestriere's past sanctions and criticized certain aspects of his litigation conduct. Given these rulings, I do not understand what legal grounds he has to assert a lien on my recovery, and I respectfully seek clarification on this matter.

I want to be clear that I do not know what is true and what is not regarding Mr. Balestriere's claims, as he has repeatedly contradicted himself in emails and legal filings. Because of this, I do not want to make any statements that could be inaccurate. I simply seek guidance from the Court to ensure that I understand what, if any, legal standing Mr. Balestriere has in asserting a lien on my recovery.

I also have documentation, including emails from Mr. Balestriere, that reflect these contradictions and the confusion surrounding his claims. If the Court finds it necessary, I am prepared to provide these records to assist in clarifying this matter.

Given the history of sanctions and the concerns raised in Pravati's filing, I believe there may be grounds for further judicial scrutiny of Mr. Balestriere's financial claims.

I respectfully seek clarification on whether Mr. Balestriere's assertion of a lien is indeed a fact. If his claims are legally unfounded, I would also like to understand whether there is any judicial recourse for addressing the potential misuse of financial claims in this case. For further clarity, I do have an appeals attorney, but my representation is already fully paid for, and my appellate

counsel will not be taking any portion of my recovery. Given that no other legal fees remain outstanding on my end, I respectfully request confirmation that there are no further financial claims on my recovery and that my funds will be released to me once the appeal has been decided.

As my recovery is held in a bond, I want to ensure there is no interference with its proper release. I also want this on the record to protect myself and ensure that my rights as a trafficking survivor are upheld. I appreciate your time and consideration.

**Respectfully,**

**Amy Nicole Moore**

Amy Moore

UNITED STATES POSTAL SERVICE.
USPS APIs
usps.com
US POSTAGE
P
02/21/2025
Mailed from 32117
US POSTAGE PAID
PRIORITY MAIL®
AMY NICOLE MOORE
280 TUSCANY CHASE DR
DAYTONA BEACH FL 32117-5548
SIGNATURE REQUIRED
U.S. DISTRICT COURT, EDNY
HONORABLE BRIAN M. COGAN
225 CADMAN PLAZA E
BROOKLYN NY 11201-1832
USPS SIGNATURE TRACKING # USPS Ship
9210 8903 5958 3300 0148 02
US
MS
RDC 03
02/24/2025

Amy Moore
280 Tuscany Chase Dr.
Daytona Beach, FL 32117
AMYNICOLEM82@gmail.com
386-453-8530

RECEIVED
HON. Brian M. Cogan
FEB 25 2025

February 19, 2025

Honorable Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: Request for Direct Payment of Funds – Case No. 17-cv-6404-BMC

Dear Judge Cogan,

I hope this letter finds you well. I am writing to respectfully request that my portion of the bond in the above-referenced case be released directly to me upon resolution of the appeal. As a prevailing plaintiff, my designated award is $750,000.

I have confirmed with both the U.S. Marshal's Office and the Clerk's Office that there is no court-ordered lien on my recovery. Given this, I would like to ensure that my portion of the bond is disbursed directly to me when the funds are released.

Please let me know if there are any additional steps I need to take to facilitate this process. I would sincerely appreciate written confirmation regarding how and when the funds will be distributed.

Thank you for your time and attention to this matter. I greatly appreciate the Court's consideration.

Sincerely,

Amy Moore

Amy Moore