UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
AMY MOORE, MIA LYTELL, NATASHA    :
TAGAI, EMMA HOPPER, BRITTANY    :
HASSEN and BRITTANY REYES,    :
   :
              Plaintiffs,    :   **MEMORANDUM DECISION AND**
   :   **ORDER**
   :
      -against-    :   17-cv-6404 (BMC)
   :
HOWARD RUBIN,    :
   :
              Defendant.    :
------------------------------------------------------------- X

**COGAN**, District Judge.

After nearly a decade of litigation, including a successful jury trial and unsuccessful

appeal, plaintiffs want their damages award.  But three nonparties have asserted a right to their

damages, such that plaintiffs should not immediately receive them.  For the reasons below, the

Court finds that none of the nonparties have such a right.

## BACKGROUND

The facts of this case are discussed at length in Moore v. Rubin, 724 F. Supp. 3d 93

(E.D.N.Y. 2024), and need not be repeated here.  In short, defendant is a successful bond trader

who entered into contracts with each of the plaintiffs to travel to New York and engage in

sadomasochistic sexual acts with him.  A jury agreed that the acts he inflicted on them exceeded

the limits of their consent.

A jury awarded plaintiffs aggregate damages of $3,850,000 and judgment was entered for

that amount.  Thereafter, the judgment was amended to include attorneys' fees and costs of

$4,830,148.15.  Defendant separately appealed both, and has posted two supersedeas bonds. One

secures the plaintiffs' damage awards, and one secures the attorneys' fees award.  The bond

securing plaintiffs' damages, Supersedeas Bond No. UCSX2X4121, was issued through United

Casualty & Surety Insurance Company and General Reinsurance Corporation (the "Sureties").

His appeal regarding the damages was unsuccessful, see Moore v. Rubin, 160 F.4th 271 (2d Cir. 2025), and his appeal regarding the attorneys' fees is pending, see Lawson v. Rubin, No. 25-613 (2d Cir. Mar. 4, 2026) (proposed hearing calendared for June 2026).

**DISCUSSION**

The following nonparties assert a right to plaintiffs' damages award: plaintiffs' former counsel, Balestriere PLLC ("Balestriere"); a litigation funder, Pravati Investment Fund IV, LP ("Pravati"), that is currently a judgment and lien creditor of Balestriere; and a dismissed co-defendant, Yifat V. Schnur ("Schnur"), who is currently suing plaintiffs in state court for defamation and malicious prosecution.

## I.     **Balestriere & Pravati**

Pravati's asserted right is derivative of Balestriere's asserted right (*i.e.*, because Balestriere owes Pravati money, any money to which Balestriere is entitled is transitively owed to Pravati), so the Court analyzes their asserted rights as one.  Balestriere represented plaintiffs on a contingency fee basis throughout this case until withdrawing as counsel two years ago.  If the case settled "before the trial stage," Balestriere was entitled to up to 40% of the settlement.  If the case proceeded to trial and plaintiffs lost, Balestriere was entitled to nothing.

If the case proceeded to trial and plaintiffs won, as happened here, the agreement provided Balestriere two ways to get paid: (1) enforcing a lien on the damages award equivalent to the reasonable value of services rendered, see N.Y. Judiciary L. § 475, and (2) receiving the entirety of plaintiffs' court-awarded attorneys' fees, see 18 U.S.C. § 1595(a).

There are therefore two questions. The first question is whether a lien and statutory award are mutually exclusive (*i.e.*, whether Balestriere can enforce a lien in addition to the statutory award). If not, the second question is whether Balestriere can enforce a lien here.

**A. Operative Terms**

Before proceeding to the substantive questions, the Court provides an overview of the operative terms necessary to the analysis.

*Lodestar Value.* The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," Millea v. Metro-N. R.R., 658 F.3d 154, 166 (2d Cir. 2011), which is "then adjust[ed] based on case specific considerations, Moore v. Rubin, 766 F. Supp. 3d 423, 427 (E.D.N.Y. 2025). In other words, "the fair value of [an attorney's] services [is determined by] the lodestar analysis." In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987).

*Section 475 Lien.* Judiciary Law § 475 "enlarged [the] common-law [charging] lien" for "services rendered in a particular action or proceeding upon his client's cause of action." Robinson v. Rogers, 237 N.Y. 467, 472, 143 N.E. 647, 648 (1924). The "overriding criterion for determining the amount of a charging lien is that it be 'fair.'" See Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006). The Second Circuit has affirmed courts' application of the "lodestar analysis to" "determine the amount of [a Judiciary Law] § 475 charging lien." See Sequa Corp. v. Gbj Corp., 156 F.3d 136, 148 (2d Cir. 1998) (collecting cases); see also Pettiford v. City of Yonkers, No. 14-cv-6271, 2020 WL 1331918, at *3 (S.D.N.Y. Mar. 20, 2020) ("[T]he proper method of fixing the [amount] of the lien is through a *quantum meruit* analysis, which requires ascertaining the reasonable value of the services rendered." (quotation and alteration omitted)), aff'd, 833 F. App'x 893 (2d Cir. 2020).

***Statutory Award of Attorneys' Fees.*** Statutes creating a private right of action sometimes allow a prevailing plaintiff to recover an award of reasonable attorneys' fees. <u>See, e.g.</u>, 18 U.S.C. § 1595(a) (Trafficking Victims Protection Act); 15 U.S.C. § 1681 *et seq.* (Fair Credit Reporting Act); 29 U.S.C. § 216 *et seq.* (Fair Labor Standards Act); 15 U.S.C. § 15 (Clayton Act). When awarding fees based such a "fee statute . . . [a] district court must calculate [the] fees using the [] 'lodestar' approach[.]" <u>I.B. v. N.Y.C. Dep't of Educ.</u>, 336 F.3d 79, 80 (2d Cir. 2003).

***Contingency Fees.*** Contingency fees, in contrast, are based on the recovery of the attorney's client, usually by settlement, but not uncommonly by damages awarded by a jury. <u>See, e.g.</u>, <u>Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.</u>, 833 F. Supp. 2d 282, 315 (E.D.N.Y. 2011) ("[The attorney] was promised a percentage of [plaintiff's] damages or settlement award; or, in other words, a contingency-based compensation agreement existed."), <u>rev'd on other grounds</u>, 526 F. App'x 988 (Fed. Cir. 2013).

### B. Receiving a Statutory Award of Attorneys' Fees and Enforcing a Lien on a Damages Award are Not Mutually Exclusive

As discussed above, the default calculation for both a statutory award of attorneys' fees and for a Section 475 lien is the lodestar value of the attorney's services. Facially, then, it appears that an attorney can only get one or the other, because courts protect against attorney windfalls. <u>See</u> <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 552 (2010) (The law's "aim is to enforce the [plaintiffs'] rights . . . not to provide a form of economic relief to improve the financial lot of attorneys.").

But there are circumstances in which enforcing a lien on the damages and receiving court-awarded fees are not mutually exclusive. This happens when an attorney takes a case on a contingency fee basis, and the statute in the case permits court-awarded attorneys' fees. In such

cases, the lodestar value is normally lower than the contingency fee value.[1] The attorney is generally entitled to the higher of the two,[2] and strictly applying only one or the other would be inequitable.

Instead, "when a plaintiff has entered into a contingency fee agreement with his or her counsel and also seeks a statutory award [of attorneys' fees], the Court utilizes its supervisory power to formulate a fee award that ensures the amount paid to the attorney would not result in a windful recovery." Anderson v. Osborne, No. 17-cv-539, 2021 WL 2310508, at *3 (S.D.N.Y. June 7, 2021) (citing Wheatley v. Ford, 679 F.2d 1037, 1041 (2d Cir. 1982)).

In Pardovani v. Crown Bldg. Maint. Co., No. 15-cv-09065, 2023 WL 5744283, at *1 (S.D.N.Y. Sept. 6, 2023), for example, the damages award was about $1.8 million, and the lodestar-based statutory fee award was about $250,000, but the attorney's contingency fee would have been about $680,000. So, the court also enforced a Section 475 lien equivalent to the value of the would-be contingency fee, minus the statutory award, *i.e.*, about $430,000. See id. (Finding that "a charging lien on one-third of [plaintiffs'] recovery – including the statutory attorneys' fee –  is fair and reasonable").

In sum, the value of a Section 475 lien or a statutory award of attorneys' fees is determined by the usual lodestar analysis. If an attorney is entitled to a contingency fee that

---

[1] See, e.g., San-Martin v. Blumencranz, No. 18-cv-4997, 2019 WL 13221254, at *3 (E.D.N.Y. Nov. 19, 2019) ("[A] contingency fee [that is] more than twice the size of the lodestar is . . . not unprecedented."); but see Santos v. 227 E 178 Realty Co. LLC, No. 24-cv-9159, 2026 WL 579354, at *1 (S.D.N.Y. Feb. 27, 2026) ("[T]he one-third contingency fee award . . . is less than the lodestar calculation [but] consistent with the retainer agreement, [so it is] fair and reasonable.").

[2] Permitting attorneys to receive the higher value is generally proper because doing otherwise would defeat "the very purpose of a contractual contingency fee arrangement." Almanzar v. Silver Star Props. Corp., 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023) ("[A]ttorneys who take . . . cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended"); see also Fisher v. SD Prot. Inc., 948 F.3d 593, 604 (2d Cir. 2020) ("The Supreme Court, this Court, and district courts in this Circuit have long recognized the significance of attorneys' fees in civil rights cases and have not hesitated to award or approve disproportionate fees to counsel.").

exceeds the lodestar value, the value of the Section 475 lien may be adjusted to account for the difference. Thus, it is conceivable that Balestriere could enforce a lien on the damages, notwithstanding the statutory award of attorneys' fees.

**C. Nonetheless, Balestriere Cannot Enforce a Lien on Plaintiffs' Damages Award**

Whether Balestriere could enforce such a lien here turns on two questions: (1) whether Balestriere is owed a contingency fee, and (2) if so, whether the value of that contingency fee exceeds the lodestar. The Court need not reach the second question because, based on the plain language of the engagement agreement, the answer to the first question is clearly no.

The agreement provided for a contingency fee (coined a "Success Fee") which, at its maximum, constituted 40% of any settlement "before the trial stage." The agreement does not provide for any percentage-based entitlement to a damages award after a jury verdict, ostensibly because Balestriere recognized that the TVPA provided for attorneys' fees. Indeed, the agreement states that Balestriere "shall, at [its] sole discretion, receive <u>either</u> the Success Fee . . . <u>or</u> attorney's fees awarded by the Court[.]" So, because there is an order awarding attorneys' fees, there is no contingency fee. And because there is no contingency fee, Balestriere has no right to plaintiffs' damages.

Balestriere and Pravati urge otherwise because the order awarding attorneys' fees award is on appeal. In their view, because the value of the award could be reduced by the Second Circuit, they should be able to enforce a lien on the damages to account for any difference. But whatever is eventually affirmed by the Second Circuit as a "reasonable" statutory fee award would be the same value as any "fair" Section 475 lien, and there is no contingency fee that would change the calculus. See *supra*; <u>see</u> <u>also</u> <u>Ortiz v. Stambach</u>, 657 F. Supp. 3d 243, 272

(W.D.N.Y. 2023). In other words, the outcome of the pending appeal cannot change the fact that Balestriere, and thus Pravati, have no right to plaintiffs' damages.

## II.    <u>Schnur</u>

Early on in this case, the Court sanctioned Balestriere $20,000 in connection with having included Schnur as a co-defendant. For largely the same reasons that sanctions were warranted then, Schnur has commenced an action against plaintiffs and Balestriere in state court. Most of the claims have been dismissed, but Schnur's claims for defamation and malicious prosecution survived. See <u>Schnur v. Balestriere</u>, 208 A.D.3d 1117, 1119, 175 N.Y.S.3d 50, 53 (1st Dep't 2022). Schnur's asserted right to plaintiffs' damages in this case is essentially a hedged bet on her lawsuit's success. Apparently, Schnur is so confident that she will obtain a substantial monetary judgment against plaintiffs, Schnur believes that it warrants withholding plaintiffs' damages award.

Federal courts are not in the business of predicting the outcome of state court lawsuits. But even if her defamation case were before this Court, Schnur would have no right to encumber plaintiffs' damages award. See <u>Coley v. Vannguard Urb. Improvement Ass'n, Inc.</u>, No. 12-cv-5565, 2016 WL 7217641, at *3 (E.D.N.Y. Dec. 13, 2016) ("[C]ourts consistently refuse to allow preliminary injunctions [that] 'seek[ ] security for a potential future award of money damages' and are requested merely because of a 'feared inability to collect a prospective judgment.'") (quotations omitted). Pending determination of the state court lawsuit and execution on a judgment that Schnur may or may not receive, Schnur is nothing but a contingent, unsecured creditor of plaintiffs, and has no more right to their interest in the bond she does to their bank accounts. Accordingly, Schnur has no right to plaintiffs' damages.

## CONCLUSION

The plaintiffs' combined $3,850,000 damages award was preserved in Supersedeas Bond No. UCSX2X4121 in the value of $4,273,500, with the excess to account for "interest, and damages for delay." According to the Court's calculation, post-judgment interest has accrued to $278,918.78. See 28 U.S.C. § 1961(a). The Court awards *pro rata* the remaining $144,581.22 as damages for delay. See Omaha Hotel Co. v. Kountze, 107 U.S. 378, 392 (1883). Accordingly, it is hereby

> **ORDERED** that the Sureties disburse by check **$832,500.00** from Supersedeas Bond No. UCSX2X4121 to plaintiff **Amy Moore**;

> **ORDERED** that the Sureties disburse by check **$688,200.00** from Supersedeas Bond No. UCSX2X4121 to plaintiff **Mia Lytell**;

> **ORDERED** that the Sureties disburse by check **$688,200.00** from Supersedeas Bond No. UCSX2X4121 to plaintiff **Natasha Tagai**;

> **ORDERED** that the Sureties disburse by check **$688,200.00** from Supersedeas Bond No. UCSX2X4121 to plaintiff **Emma Hopper**;

> **ORDERED** that the Sureties disburse by check **$688,200.00** from Supersedeas Bond No. UCSX2X4121 to plaintiff **Brittany Hassen**;

> **ORDERED** that the Sureties disburse by check **$688,200.00** from Supersedeas Bond No. UCSX2X4121 to plaintiff **Brittany Reyes**;

> **ORDERED** that, only upon receipt of payment by **Amy Moore**, **Mia Lytell**, **Natasha Tagai**, **Emma Hopper**, **Brittany Hassen**, and **Brittany Reyes**, the Sureties' obligations as to Supersedeas Bond No. UCSX2X4121, and defendant's obligation to satisfy the damages judgment, shall be deemed fully and finally released and discharged.

**SO ORDERED.**

Dated: Brooklyn, New York
     April 8, 2026

*Brian M. Cogan*
_____
U.S.D.J.